# **EXHIBIT B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EDGEMARC ENERGY HOLDINGS, LLC, *et al.*, | Case No. 19-——11104 (——BLS) |
| Debtors.[1] | Joint Administration Requested |
| | Re: Docket No. 13 |

**INTERIM ORDER, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, AND 507, (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of EdgeMarc Energy Holdings, LLC and its subsidiaries that are debtors and debtors in possession (the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of interim and final orders, among other things:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: EdgeMarc Energy Holdings, LLC (80-0766900), EM Energy Manager, LLC (30-0745334), EM Energy Employer, LLC (80-0838026), EM Energy Ohio, LLC (80-0846935), EM Energy Pennsylvania, LLC (38-3881541), EM Energy West Virginia, LLC (90-0883771), EM Energy Keystone, LLC (82-0857506), EM Energy Midstream Ohio, LLC (46-3841268), EM Energy Midstream Pennsylvania, LLC (46-3843963). The Debtors' corporate headquarters and mailing address is 1800 Main Street, Suite 220, Canonsburg, PA 15317.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Documents or the Motion, as applicable.

(i)    Authorizing EM Energy Employer, LLC (the "**Borrower**") to obtain, and the other Debtors (collectively, in their capacity as such, the "**Guarantors**" and, together with the Borrower, the "**Loan Parties**") to guaranty, debtor-in-possession credit financing in an aggregate principal amount of up to $107,793,041 million (the "**DIP Financing**") to be funded by the Prepetition Lenders (in their capacity as lenders under the DIP Facilities, the "**DIP Lenders**") under a secured term loan and letter of credit facility (the "**DIP Facility**") consisting of (A) new money term loans (the "**DIP Term Loans**") in an aggregate principal amount of up to $30 million, and (B) roll-up term loans (the "**DIP Roll-Up Loans**" and, together with the DIP Term Loans, the "**DIP Loans**"), which shall be subject and subordinate to the DIP Term Loans, to refinance dollar-for-dollar the Prepetition Secured Debt held by the DIP Lenders in the aggregate principal amount up to $77,793,041.00 million, with such amount depending upon the Letters of Credit Outstanding;

(ii)   deeming all Prepetition Letters of Credit (as defined below) issued and outstanding under the Prepetition Credit Agreement (as defined below) as cancelled and reissued under the DIP Credit Agreement (as defined below) in their full amounts and without modification of their terms (such reissued letters of credit, the "**DIP Letters of Credit**");

(iii)  authorizing the Loan Parties, in connection with the DIP Facility, to (A) execute and enter into the Superpriority Secured Debtor-in-Possession Credit Agreement, among the Loan Parties, the DIP Lenders, and KeyBank National Association ("**KeyBank**"), as administrative agent (solely in such capacity, the "**DIP Agent**") and as the Letter of Credit Issuer (as defined in the DIP Credit Agreement), together with the DIP Agent and DIP Lenders, the "**DIP Secured Parties**"), substantially in the form attached hereto as Exhibit A (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and amendments executed and delivered in connection therewith, including the Approved Budget, the "**DIP Documents**") and (B) to perform all such other and further acts as may be required in connection with the DIP Documents;

(iv)  granting to the DIP Agent, for the benefit of the DIP Lenders, valid, enforceable, non-avoidable and automatically and fully perfected liens and security interests, subject only to the (a) the Carve-Out, and (b) valid, enforceable and non-avoidable Liens or security interests that are (i) in existence on the Petition Date (as defined below), (ii) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (iii) senior in priority to the Prepetition Secured Liens granted the Prepetition Secured Parties under and in connection with the Prepetition Loan in accordance with applicable law (the "**Permitted Prior Liens**"), to secure the DIP

Obligations, which liens and security interests shall have the rankings and priorities set forth herein;

(v)     granting superpriority administrative claims to the DIP Secured Parties payable from, and having recourse to, all prepetition and post-petition property of the Loan Parties' estates and all proceeds thereof (other than Avoidance Actions, but, subject to and effective upon entry of the Final Order, including Avoidance Proceeds), subject to the Carve-Out and the Permitted Prior Liens;

(vi)    authorizing the Loan Parties (A) upon entry of this Interim Order, to incur in a single drawmultiple draws on and after the Closing Date, DIP Term Loans in an aggregate principal amount of up to $15 million (the "**Initial DIP Term Loans**") (the incurrence of such loans upon entry of this Interim Order, the "**Interim Financing**") and (B) subject to and effective upon entry of the Final Order, to incur in multiple draws, additional DIP Term Loans in an aggregate principal amount of $30 million, in each case subject to the terms and conditions set forth in the DIP Documents, this Interim Order, and the Final Order;

(vii)   subject to and effective upon entry of the Final Order, to use the DIP Roll-Up Loans to refinance and discharge dollar-for-dollar Prepetition Secured Debt held by the DIP Lenders in the aggregate principal amount of up to $77,793,041.00 million;

(viii)  authorizing the Debtors' use of the proceeds of the DIP Facility pursuant to the DIP Credit Agreement and the other DIP Documents, including the "Approved Budget" (as defined in the DIP Credit Agreement and including any permitted variances and carry forward amounts, the "**Approved Budget**");

(ix)    authorizing the Debtors to continue to use the Cash Collateral (subject to the Approved Budget) and all other Prepetition Collateral, and the granting of the Adequate Protection Obligations to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral to the extent of diminution in the value of the Prepetition Collateral (including Cash Collateral);

(x)     approving certain stipulations by the Debtors with respect to the Prepetition Loan Documents and the Prepetition Collateral as set forth herein;

(xi)    modifying the automatic stay as set forth herein and the DIP Documents, to the extent necessary, to implement and effectuate the foregoing and the other terms and provisions of the DIP Documents, the Interim Order and Final Order; and

(xii)   scheduling a final hearing (the "**Final Hearing**"), to be held within 30 days after the Petition Date, to consider entry of the Final Order approving the

DIP Facilities and use of Cash Collateral, as set forth in the DIP Motion and the DIP Documents; and

the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the Streeter Declaration and the Ross Declaration; and the Court having held an interim hearing on the Motion (the "**Interim Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and the Court having ~~found~~determined that there is good and sufficient cause ~~exists~~ for the relief ~~requested in the Motion; and the Court having determined that the relief requested in the Motion~~set forth herein, which is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rules 4001 and 6003; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    *Petition Date.*  On May 15, 2019 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "**Court**") commencing the Chapter 11 Cases.

B.    *Debtors in Possession.*  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    *Committee Formation.*  As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed a statutory committee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (if appointed, a "**Committee**").

D.    *Jurisdiction and Venue.*  The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue of the Chapter 11 Cases and related proceedings is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.    *Notice*.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and under the circumstances, no other or further notice of the Motion or the entry of this Interim Order shall be required, except as set forth in paragraph ~~37~~38 below.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

F.    *Debtors' Stipulations Regarding the DIP Facility.*  The Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree (the "**Debtors' DIP Stipulations**") as follows:

(i)    Release of Claims.  Upon entry of this Interim Order, each Debtor and its estate shall be deemed to have forever waived, discharged, and released each of ~~the DIP Secured Parties~~KeyBank, National Association and ~~their~~its respective affiliates, assigns, or successors and the respective members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, employees, and other representatives of the foregoing (each solely in its capacity as such and all of the foregoing, collectively, the "**DIP Secured Party Releasees**") from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights, and other rights of disgorgement or recovery against any and all of the DIP Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with ~~the DIP Obligations, the DIP Liens, or the debtor-creditor relationship between any of the DIP Secured Parties, on the one hand, and any of the Debtors, on the other hand~~entering into and consummating the DIP Term Loans; *provided* that, nothing herein shall relieve the DIP

Secured Party Releasees from fulfilling their obligations or commitments under the DIP

Facility or the rights of parties in interest with respect to the Prepetition Secured Parties set

forth in paragraphs 21~20 and 22.~21.

G.    *Debtors' Stipulations Regarding the Prepetition Credit Agreement.*  After

consultation with their attorneys and financial advisors, and without prejudice to the rights of a

Committee or any other party in interest (subject to the limitations thereon contained in

paragraphs 20 and 21 below), the Debtors acknowledge, admit, stipulate and agree that:

(i)    Prepetition Credit Facility.  Pursuant to that certain Amended and Restated

Credit Agreement, dated as of December 19, 2017 (as amended, supplemented, or

otherwise modified from time to time in accordance with the terms thereof, the

**"Prepetition Credit Agreement"** and, together with the schedules and exhibits attached

thereto and all agreements, documents, instruments, and amendments executed and

delivered in connection therewith, the **"Prepetition Loan Documents"**), among the

Borrower, KeyBank, as administrative agent and collateral agent (in such capacity, the

**"Prepetition Agent"**), and as the Letter of Credit Issuer (as defined in the Prepetition

Credit Agreement) and the lenders party thereto (the **"Prepetition Lenders"** and, together

with the Prepetition Agent and the Letter of Credit Issuer, the **"Prepetition Secured**

**Parties"**), the Prepetition Lenders provided revolving credit and other financial

accommodations to, and issued letters of credit for the account of, the Borrower (the

**"Prepetition Credit Facility"**), which Prepetition Credit Facility has been guaranteed on a

joint and several basis by eachcertain of the Debtors (the **"Prepetition** **Guarantors"**).

(ii)    Prepetition Secured Debt.  As of the Petition Date, the Borrower and the

Prepetition Guarantors were justly and lawfully indebted and liable to the Prepetition

Secured Parties, without defense, counterclaim, or offset of any kind, in respect of (a) outstanding loans in the aggregate principal amount of not less than $41 million, (b) L/C Obligations (as defined in the Prepetition Credit Agreement) (the "**Prepetition Letters of Credit**") in the amount of not less than $37 million, and (c) Hedging Obligations (as defined in the Prepetition Credit Agreement), pursuant to and in accordance with the terms of, the Prepetition Loan Documents (collectively, such indebtedness together with accrued and unpaid interest thereon and fees, expenses, charges, indemnities, and other obligations incurred in connection therewith as provided in the Prepetition Loan Documents, the "**Prepetition Secured Debt**").

       (iii)   <u>Validity of Prepetition Secured Debt</u>.  (a) The Prepetition Secured Debt constitutes legal, valid, binding, and non-avoidable obligations of the Borrower and the Prepetition Guarantors, enforceable in accordance with the terms of the Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and (b) no portion of the Prepetition Secured Debt or any payments made to the Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured Debt prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

       (iv)   <u>Prepetition Liens</u>.  The liens and security interests granted to the Prepetition Secured Parties (the "**Prepetition Liens**"), pursuant to and in connection with the Prepetition Loan Documents, are (a) valid, binding, perfected, enforceable liens and security interests in the Collateral (as defined in the Prepetition Credit Agreement) (the

"**Prepetition Collateral**"), (b) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense, or claim under the Bankruptcy Code or applicable non-bankruptcy law, and (c) as of the Petition Date, subject only to Permitted Prior Liens.

(v)      No Control.  ~~None~~To the extent set forth in paragraph 23, none of the Prepetition Secured Parties controls the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition Loan Documents.

(vi)      No Claims or Causes of Action.  No claims, counterclaims or causes of action of any kind or nature exist against, or with respect to, the Prepetition Secured Parties under any agreements by and among the Debtors and any ~~such party~~of the Prepetition Secured Parties that is in existence as of the Petition Date, whether related to the Prepetition Loan Documents~~,~~ or any other agreement~~,~~ with the Debtors ~~or otherwise~~.

H.      *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(i)      Good and sufficient cause has been shown for the entry of this Interim Order.

(ii)      The Loan Parties have an immediate and critical need to obtain the DIP Financing and to continue to use the Prepetition Collateral (including "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code ("**Cash Collateral**")), in each case on an interim basis, in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, to

administer these Chapter 11 Cases, and to satisfy other working capital and operational

needs. The access of the Loan Parties to sufficient working capital and liquidity through

the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness

under the DIP Documents and other financial accommodations provided under the DIP

Documents are necessary and vital to the preservation and maintenance of the going

concern values of the Loan Parties and to a successful sale process.

(iii)     The Loan Parties are unable to obtain financing on more favorable terms

from sources other than the DIP Lenders and are unable to obtain adequate unsecured

credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative

expense. The Loan Parties are also unable to obtain secured credit allowable under section

364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code without granting to the DIP

Secured Parties the DIP Liens and the DIP Superpriority Claims and incurring the

Adequate Protection Obligations, in each case subject to the Carve-Out and the terms and

conditions set forth in this Interim Order and in the DIP Documents.

(iv)     Based on the Motion, the Streeter Declaration, the Ross Declaration, and

the record presented to the Court at the Interim Hearing, the terms of the DIP Financing

and the terms on which the Loan Parties may continue to use the Prepetition Collateral

(including Cash Collateral) pursuant to this Interim Order and the DIP Documents are fair

and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent

with their fiduciary duties and constitute reasonably equivalent value and fair

consideration.

(v)     Absent order of the court and the provision of adequate protection (if the

Court determined there were grounds for adequate protection under the Bankruptcy Code),

consent of the Prepetition Secured Parties is required for the Loan Parties' use of Cash

Collateral and the other Prepetition Collateral.  The Prepetition Secured Parties have

consented to the Loan Parties' use of Cash Collateral and the other Prepetition Collateral,

and the Loan Parties' entry into the DIP Documents in accordance with and subject to the

terms and conditions in this Interim Order and the DIP Documents.

   (vi) The DIP Financing and the use of the Prepetition Collateral have been

negotiated in good faith and at arm's length among the Loan Parties and the DIP Secured

Parties, and all of the Loan Parties' obligations and indebtedness arising under, in respect

of, or in connection with, the DIP Financing and the DIP Documents, including, without

limitation, all "Obligations" (as defined in the DIP Documents), in each case owing to the

DIP Secured Parties or any of their respective banking affiliates (collectively, the "**DIP**

**Obligations**"), shall be deemed to have been extended by the DIP Secured Parties and their

respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy

Code and in express reliance upon the protections offered by section 364(e) of the

Bankruptcy Code, and the DIP Secured Parties (and the successors and assigns thereof)

shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event

that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal

or otherwise.

   (vii) The Prepetition Secured Parties have acted in good faith regarding the DIP

Financing and the Loan Parties' continued use of the Prepetition Collateral (including Cash

Collateral) to fund the administration of the Loan Parties' estates and continued operation

of their businesses (including the incurrence and payment of the Adequate Protection

Obligations and the granting of the Adequate Protection Liens), in accordance with the

terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of sections 363(m) and 364(e), as may be applicable, of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(viii)    The Prepetition Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363, ~~and~~ 364 and 507(b) of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral; *provided* that nothing in this Interim Order or the other DIP Documents shall (a) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order ~~and in the context of the DIP Financing authorized by this Interim Order,~~ (b) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior), or (c) prejudice, limit, or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different, or additional adequate protection for any diminution in value of their interests in the Prepetition Collateral from and after the Petition Date or assert the interests of any of the Prepetition Secured Parties and the rights of any other party in interest to object to such relief are hereby preserved.

(ix)    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules.  Absent granting the

relief set forth in this Interim Order, the Loan Parties' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use of the Prepetition Collateral (including Cash Collateral) in accordance with this Interim Order and the DIP Documents are, therefore, in the best interests of the Loan Parties' estates ~~and consistent with the Loan Parties' exercise of their fiduciary duties~~.

    I.    *Permitted Prior Liens; Continuation of Prepetition Liens.*  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or a Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien.  ~~The~~<u>Subject to and effective upon entry of the Final Order, the</u> right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the DIP Liens.  The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facilities, the DIP Documents, and the Prepetition Loan Documents.

    J.    *Immediate Entry.*  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).

    **IT IS HEREBY ORDERED THAT:**

    1.    *Interim Financing Approved.*  The interim relief requested in the Motion is granted, and the use of Cash Collateral on an interim basis and the Interim Financing is authorized and approved, in each case in accordance with the terms and conditions set forth in the DIP

Documents, the Approved Budget and this Interim Order.  Any objections to the Motion with

respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all

reservations of rights included therein, are hereby denied and overruled on the merits. The rights of

all parties in interest to object to the entry of a Final Order on the Motion are fully reserved.

      2.    *Authorization of the DIP Financing and the DIP Documents.*

      (a)    The Loan Parties are hereby authorized to execute, deliver, enter into and,

as applicable, perform all of their obligations under this Interim Order and the DIP

Documents and such other and further acts as may be necessary, appropriate, or desirable

in connection therewith, in each case in accordance with and subject to the terms of this

Interim Order and the DIP Documents.  The Borrower is hereby authorized to borrow

money and obtain DIP Letters of Credit pursuant to the DIP Credit Agreement, subject to

any limitations on borrowing under the DIP Documents, which shall be used for all

purposes permitted under the DIP Documents, including, without limitation, to pay certain

costs, fees, and expenses related to the Chapter 11 Cases, to pay the Adequate Protection

Payments, and to fund working capital and for general corporate purposes of the Loan

Parties during the Chapter 11 Cases, in each case, subject to the Approved Budget (except

as to Statutory Fees, as that term is defined in paragraph 6 below, which shall not be subject

to any budget) and in accordance with this Interim Order and the DIP Documents, and the

Guarantors are hereby authorized to guaranty the DIP Obligations.  Notwithstanding

anything in the DIP Credit Agreement, the Borrower may only make Borrowings of DIP

Term Loans that are consistent with and limited to the draws set forth in the Approved

Budget.

(b)      In furtherance of the foregoing and without further approval of the Court,

each Debtor is authorized to perform all acts, to make, execute, and deliver all instruments,

certificates, agreements, and documents (including, without limitation, the execution or

recordation of security agreements, mortgages, and financing statements), and to pay all

fees in connection with or that may be reasonably required, necessary, or desirable for the

Loan Parties' performance of their obligations under or related to the DIP Financing,

including, without limitation:

(i)      the execution and delivery of, and performance under, each of the

DIP Documents;

(ii)      the execution and delivery of, and performance under, one or more

amendments, waivers, consents, or other modifications to and under the DIP

Documents, in each case, in such form as the Loan Parties, the DIP Agent and the

requisite DIP Lenders may agree, it being understood that no further approval of

the Court shall be required for any authorizations, amendments, waivers, consents,

or other modifications to and under the DIP Documents (and any fees and other

expenses, amounts, charges, costs, indemnities, and other obligations paid in

connection therewith) that the Debtors represent are not material or adverse to the

Debtors and that do not (A) shorten the maturity of the extensions of credit

thereunder or increase the aggregate commitments or the rate of interest payable

thereunder, (B) increase existing fees or add new fees thereunder (excluding, for

the avoidance of doubt, any amendment, consent or waiver fee), or (C) shorten the

case Milestones set forth in the DIP Credit Agreement; *provided*, however, that

advance copies of such amendments, waivers, consents, or other modifications will

be provided to the U.S. Trustee and any Committee, both of which shall have three business days to object on grounds that the proposed amendments, waivers, consents, or other modification are material and should be subject to court approval, upon notice to parties in interest.  Notwithstanding the foregoing as of the date hereof, the term Milestone in the DIP Credit Agreement shall be amended to extend the deadline for entry of the Final DIP Order to 35 days after the Petition Date.  The foregoing shall be without prejudice to the Loan Parties' right to seek approval from the Court of any modification or amendment on an expedited basis;

(iii) ~~the non-refundable payment to the DIP Agent, the DIP Lenders, Prepetition Agent and the Prepetition Lenders, as the case may be, of all reasonable and documented fees (which fees shall be, and shall be deemed to have been, approved upon entry of this Interim Order and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Documents and the costs and expenses as may be due from time to time, including, without limitation, reasonable and documented fees and expenses of the professionals retained by any of the DIP Agent, DIP Lenders, Prepetition Agent and the Prepetition Lenders in each case, as provided for in the DIP Documents and Prepetition Loan Documents, whether or not such fees or expenses arose prior to or~~

~~after the Petition Date without the need to file retention motions or fee applications or to provide notice to any party;~~ and

(iii)    ~~(iv)~~ the performance of all other acts necessary, appropriate, or desirable under or in connection with the DIP Documents.

3.    *Roll-Up.* Subject to <u>and effective upon</u> entry of the Final Order, all of the Prepetition Secured Debt shall immediately, automatically and irrevocably be deemed to have been converted into DIP Roll-Up Loans and shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under the Final Order and the DIP Loan Documents, in each case subject to the terms and conditions set forth in the Final Order, DIP Documents and the reservation of rights of parties in interest in paragraph 20 below.

4.    *Release of DIP Secured Party Releasees.* The release set forth in paragraph F hereof in favor of the DIP Secured Party Releasees is hereby approved upon entry of this Interim Order.

5.    *DIP Obligatio*ns. Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and non-avoidable obligations of the Loan Parties, enforceable against each Loan Party thereto in accordance with the terms of the DIP Documents and this Interim Order as of the date of the entry of this Interim Order. No obligation, payment, transfer or grant of security to the DIP Secured Parties under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d), 544, 548, 549 or 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, claim, or counterclaim.

6.      *Carve-Out.*

(a)      As used in this Interim Order, the "**Carve-Out**" shall mean a carve-out

from the DIP Superpriority Claims, the DIP Liens, the 507(b) Claims, the Adequate

Protection Liens and the Prepetition Liens, in an amount equal to the sum of (i) all fees

required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a)

of title 28 of the United States Code plus interest at the statutory rate (without regard to the

Carve-Out Trigger Notice, without being subject to any budget (collectively, the

"**Statutory Fees**"); (ii) all reasonable fees and expenses incurred by a trustee and payable

under section 726(b) of the Bankruptcy Code, in an aggregate amount not to exceed

$50,000 (without regard to the Carve-Out Trigger Notice); (iii) to the extent allowed by

final order of the Court at any time and provided for in the Approved Budget, for the

Debtors' professionals and the Committee's professionals, respectively, all unpaid fees and

expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors

pursuant to section 327, 328, or 363 of the Bankruptcy Code or by a Committee, if any,

pursuant to section 328 and 1103 of the Bankruptcy Code (collectively, the "**Professional**

**Persons**") at any time on or before (a) the date of delivery by the DIP Agent of a Carve-Out

Trigger Notice and (b) the Termination Date (as defined in the DIP Credit Agreement)

(such day, the "**Carve-Out Trigger Date**"), whether allowed by the Court prior to or after

the Carve-Out Trigger Date;  (iv) to the extent allowed by final order of the Court, (a)

Professional Fees incurred after the Carve-Out Trigger Date in an amount not to exceed

$1,000,000 (the "**Post Trigger Date Carve-Out Amount**"); *plus* (b) any completion or

sales fee and any divestiture fee (including, in each case, pursuant to credit bid) that is

earned and payable by the Debtors' pursuant to an engagement letter between the Debtors

and the Debtors' investment banker, Evercore, that is approved by the Court (the "**Evercore Fees**"); *provided* that, other than in the event of a credit bid, such fees shall be payable from the proceeds of the applicable asset sale or other transaction (the "**Completion Fee Carve-Out Reserve**"); and (v) amounts held as of the Petition Date as a retainer by the Professional Persons retained by the Debtors to be used to pay Professional Fees allowed by final order of the Court (clauses (i) through (v), collectively, the "**Carve-Out Amount**"), in each case subject to the limits imposed by the DIP Orders.  For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email by the DIP Agent to the Debtors' lead restructuring counsel, the U.S. Trustee, and counsel to any Committee, which notice may be delivered following the occurrence and during the continuation of an "Event of Default" under the DIP Documents and the acceleration of the DIP Obligations (an "**Event of Default**"), stating that the Post-Trigger Date Carve-Out ~~Trigger Notice Cap~~Amount has been invoked.

(b)    Prior to the occurrence of the Carve-Out Trigger Date, the Debtors are authorized (subject to the Approved Budget), for the Debtors' Professional Persons and the Committee's Professional Persons, respectively, to pay Professional Fees that are authorized to be paid in accordance with the provisions of the Bankruptcy Code and any order entered by the Court establishing procedures for the payment of compensation to Professional Persons in these Chapter 11 Cases, as the same may be due and payable, and such payments shall not reduce the Carve-Out Amount.

(c)    Upon the closing of the DIP Facility (the "**Closing**"), the Debtors shall deposit in a segregated non-interest bearing account (the "**Carve-Out Reserve**") the following amounts: (i) the Post Trigger Date Carve-Out Amount; and (ii) an additional

$1,000,000 for payment of pre-Carve-Out Trigger Date fees and expenses of Professional

Persons as set forth in paragraph 6(a)(iii).  Upon the closing of any sale or other transaction

(i) upon which ~~a completion, sale or divestiture fee described in paragraph 6(a) is~~the

Evercore Fees are earned and payable, the Debtors shall ~~either pay such fee at the~~

~~consummation of the applicable sale or~~ deposit or segregate cash in an amount equal to

~~such fee~~the Evercore Fees in the Completion Fee Carve-Out Reserve and (ii) the Debtors

shall segregate cash into the Carve-Out Reserve in an amount equal to the Carve-Out

Amount at the time of such closing *less* any amounts already in the Carve-Out Reserve. <u>No</u>

<u>fees shall be paid to Evercore or any other professional retained in these cases by the</u>

<u>Debtors or the Committee absent order of this Court approving a fee application on notice,</u>

<u>except as otherwise expressly provided in any order this Court may enter regarding interim</u>

<u>compensation procedures.</u>

    (d)    The Carve-Out Reserve and Completion Fee Carve-Out Reserve shall be

held in a segregated non-interest bearing account maintained by the DIP Agent in trust to

pay the Professional Fees and other obligations ~~benefiting from~~<u>included in</u> the Carve-Out,

and the Carve-Out Reserve and Completion Fee Carve-Out Reserve shall be available only

to satisfy such obligations benefiting from the Carve-Out until paid in full; *provided* that

payment of any <u>Evercore Fees or any other</u> completion, sale or divestiture fees from the

Carve-Out Reserve (other than from the Completion Fee Carve-Out Reserve) shall be

subject and subordinate, and junior to payment of all other Professional Fees from the

Carve-Out Reserve.  The DIP Agent shall allow funds in the Carve-Out Reserve and

Completion Fee Carve-Out Reserve to be released to pay obligations payable from the

Carve-Out Reserve and Completion Fee Carve-Out Reserve, respectively, upon written instruction from the Debtors.

(e)     To the extent the Carve-Out Reserve and/or Completion Fee Carve-Out Reserve have not been reduced to zero after the payment in full of all obligations payable from the Carve-Out Reserve or Completion Fee Carve-Out Reserve, respectively, they shall be used to pay the DIP Agent for the benefit of the DIP Secured Parties until the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated.  Notwithstanding anything to the contrary herein, the Prepetition Agent and the DIP Agent, each on behalf of itself and the relevant secured parties, (y) shall not sweep or foreclose on the Carve-Out Reserve or Completion Fee Carve-Out Reserve and (z) shall have a security interest upon any residual interests in the Carve-Out Reserve and/or Completion Fee Carve-Out Reserve, respectively, available following satisfaction in cash in full of all obligations ~~benefitting from~~included in the Carve-Out, and the priority of such liens on the residuals shall be consistent with this Interim Order.  Further, notwithstanding anything to the contrary herein, (A) the failure of the Carve-Out Reserve to satisfy in full the allowed Professional Fees shall not affect the priority of the Carve-Out and (B) in no way shall the Carve-Out, the Post Trigger Date Carve-Out Amount, the Carve-Out Reserve or Completion Fee Carve-Out Reserve, or any of the foregoing be construed as a cap or limitation on the amount of the allowed Professional Fees due and payable by the Debtors.

(f)     Notwithstanding anything to the contrary herein or in the DIP Documents, the Carve-Out shall be senior to, the DIP Superpriority Claims, the DIP Liens, the 507(b) Claims, the Adequate Protection Liens, the Prepetition Liens, and all other liens and claims

granted under this Interim Order, the DIP Documents, or otherwise securing or in respect of the DIP Obligations or the Adequate Protection Obligations.

7.      *No Direct Obligation to Pay Allowed Professional Fees.*  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties or the DIP Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

8.      *DIP Superpriority Claims.*  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Loan Parties (without the need to file any proof of claim) with priority over any and all administrative expense claims, priority claims and unsecured claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever specified in sections 503(b) and/or 507(b) of the Bankruptcy Code, including, without limitation, all administrative expenses or other claims arising under section 105, 326, 328, 330, 331, 365, 503(b), 507(a) (other than 507(a)(1)), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and post-petition property of the Loan Parties and all proceeds thereof (excluding the Loan Parties' claims and causes of action under sections 502(d), 506(c), 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent

Transfer Act, Uniform Fraudulent Conveyance Act and similar statutes or common law, and any commercial tort claims (collectively, the "**Avoidance Actions**", which, for the avoidance of doubt, excludes Debtors' claims and causes of action under section 549 of the Bankruptcy Code or similar state or other applicable law and the proceeds of each of the foregoing), but including, subject to and effective upon entry of the Final Order, any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement, or otherwise ("**Avoidance Proceeds**"), subject to the Carve-Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise. The DIP Superpriority Claims shall be *pari passu* in right of payment with one another and senior to the Adequate Protection Claims; *provided* that the DIP Superpriority Claims in respect of the DIP Roll-Up Loans shall be subject and subordinate to the DIP Superpriority Claims in respect of the DIP Term Loans.

9.    *DIP Liens.*  As security for the DIP Obligations, effective and perfected upon the date of the Petition Date and without the necessity of the execution, recordation or filing of mortgages, security agreements, control agreements, pledge agreements, financing statements, notations on certificates of title for titled goods or other similar documents, or the possession or control by the DIP Agent of, or over, any and all tangible and intangible prepetition and post-petition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired including, without limitation, any and all cash of the Loan Parties (whether maintained with the DIP Agent or otherwise, except for the Carve-Out Reserve) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles,

documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit

accounts, patents, copyrights, trademarks, trade names, the proceeds of any and all commercial

tort claims of the Debtors of any kind or nature, including, but not limited to, proceeds of claims

and commercial tort claims against ETC Northeast Pipeline LLC and its affiliates, any claim or

rights under section 549 of the Bankruptcy Code, rights under license agreements and other

intellectual property, letter-of-credit rights, investment property and support obligations, all books

and records pertaining to the property described in this paragraph, all property of the Loan Parties

held by any DIP Secured Party, all other goods (including but not limited to fixtures) and personal

property of the Loan Parties, whether tangible or intangible and wherever located, Avoidance

Proceeds (followingsubject to and effective upon entry of the Final Order), capital stock of

subsidiaries, wherever located, and, to the extent not covered by the foregoing, all other assets or

property of the Debtors, whether tangible, intangible, real, personal or mixed, and the proceeds,

products, rents, and profits of the foregoing, whether arising under section 552(b) of the

Bankruptcy Code or otherwise, of all the foregoing, in each case other than the Avoidance Actions,

but including, subject to and effective upon entry of the Final Order, any Avoidance Proceeds

(collectively, the "**DIP Collateral**"), the following security interests and liens are hereby granted

to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all such liens and security

interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant

to this Interim Order and the DIP Documents, the "**DIP Liens**"):

(a)    First Priority Lien on Unencumbered Property.  Pursuant to section

364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully

perfected first priority senior security interest in and lien upon DIP Collateral, that, on or as

of the Petition Date, is not subject to a valid, perfected, and non-avoidable lien as of the

Petition Date or perfected subsequent to the Petition Date as permitted by Section 546(b) of

the Bankruptcy Code (collectively, "**Unencumbered Property**"), including, but not

limited to Avoidance Proceeds, subject to and effective upon entry of the Final Order.

(b)    <u>Priming Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a

valid, binding, continuing, enforceable, fully perfected first priority priming security

interest in and lien upon all DIP Collateral (wherever located and the proceeds, products,

rents and profits thereof), subject and subordinate only to the Permitted Prior Liens, but

senior in all respects to the Prepetition Liens, Adequate Protection Liens and all other liens

that are not Permitted Prior Liens (any such liens primed pursuant to this clause (b), the

"**Primed Liens**");

(c)    <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security

interest in and lien upon all DIP Collateral immediately junior to Permitted Prior Liens.

(d)    <u>Liens Senior to Certain Other Liens</u>. The DIP Liens shall not be (i) subject

or subordinate to (A) any lien or security interest that is avoided and preserved for the

benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B)

unless otherwise provided for in the DIP Documents or in this Interim Order, any liens or

security interests arising after the Petition Date, including, without limitation, but subject

to and effective upon entry of Final Order, any liens or security interests granted in favor of

any federal, state, municipal, or other governmental unit (including any regulatory body),

commission, board, or court for any liability of the Loan Parties, or (C) any intercompany

or affiliate liens or security interests of the Loan Parties or (ii) subordinated to or made *pari*

*passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

(e)    <u>Relative Priority of DIP Liens</u>.  Notwithstanding anything to the contrary herein, the DIP Liens in respect of the DIP Roll-Up Loans shall be subject and subordinate to the DIP Liens in respect of the DIP Term Loans in all respects.

(f)    For the avoidance of doubt, any DIP Liens on DIP Collateral relating to real property of the Debtors granted pursuant to this paragraph 9 shall include, for the ratable benefit of the related DIP Secured Parties, in each case to the extent constituting DIP Collateral, all of each Debtor's right, title and interest now or hereafter acquired in and to all land, together with the buildings, structure, and other improvements thereon, now or hereafter owned by any Debtor, including all easements, rights-of-way, and similar rights relating thereto and all leases, tenancies, and occupancies thereof, and (ai̲) all goods, accounts, inventory, general intangibles, instruments, documents, contract rights and chattel paper, (b̶i̲i̲) all reserves, escrows or impounds and all deposit accounts maintained by each Debtor with respect to such real estate, (e̶)i̲i̲i̲) <u>other than Permitted Prior Liens,</u> all leases, licenses, concessions, occupancy agreements or other agreements (written or oral, now or at any time in effect) which grant to any person a possessory interest in, or the right to use, all or any part of such real estate, together with all related security and other deposits, (d̶i̲v̲) all of the rents, revenues, royalties, income proceeds, profits, accounts receivable, security and other types of deposits, and other benefits paid or payable by parties to the leases for using, leasing, licensing possessing, operating from, residing in, selling or otherwise enjoying such real estate, (e̶v̲) all other agreements, such as construction contracts, architects' agreements, engineers' contracts, utility contracts,

maintenance agreements, management agreements, service contracts, listing agreements, guaranties, warranties, permits, licenses, certificates and entitlements in any way relating to the construction, use, occupancy, operation, maintenance, enjoyment or ownership of such real estate, (fvi) all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, and appurtenances appertaining to the foregoing, (gvii) all property tax refunds payable with respect to such real estate, (hviii) all accessions, replacements and substitutions for any of the foregoing and all proceeds thereof, (iix) all insurance policies, unearned premiums therefor and proceeds from such policies covering any of the above property now or hereafter acquired by each Debtor as an insured party, and (jx) all awards, damages, remunerations, reimbursements, settlements or compensation heretofore made or hereafter to be made to any Debtor by any governmental authority pertaining to any condemnation or other taking (or any purchase in lieu thereof) of all or any such real estate.

10.     *Maintenance of Letters of Credit.*  UponSubject to and effective upon entry of the Final Order, the Prepetition Letters of Credit shall be deemed to have been cancelled and reissued as DIP Letters of Credit in their full undrawn amounts and without modification of the terms of the Prepetition Letters of Credit other than their deemed issuance as DIP Letters of Credit.

11.     *Automatic Stay.*

(a)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the DIP Secured Parties to enforce all of their rights under the DIP Documents and (i) immediately upon the occurrence of an Event of Default, to declare (A) the termination, reduction, or restriction of any further DIP Commitment to the extent any such DIP Commitment remains and (B) all applicable DIP

Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties, and (ii) unless the Court orders otherwise during the Remedies Notice Period (as defined below), upon the occurrence of an Event of Default and the giving by the DIP Agent of five business days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) (the "**Remedies Notice Period**") delivered by email to the Debtors' lead restructuring counsel (with a copy by email to the Committee, if any, and the U.S. Trustee) (the "**Remedies Notice**"), (A) to withdraw consent to the Loan Parties' continued use of any Cash Collateral and/or (B) to exercise all other rights and remedies provided for in the DIP Documents and under applicable law; *provided* that, during the Remedies Notice Period, the Loan Parties shall be permitted to continue to use Cash Collateral in the ordinary course of business (subject to the Approved Budget) and may request an expedited hearing before the Court ~~solely to determine whether an Event of Default has occurred and is continuing and/or seek nonconsensual use of Cash Collateral~~. After delivery of the Remedies Notice and during and after the Remedies Notice Period, any payments proposed to be made by the Debtors in accordance with the Approved Budget shall be subject to prior review by the DIP Agent and its professionals and the DIP Agent may object to any proposed payment solely on the grounds that such payment is not in the ordinary course of business and is not included in the Approved Budget.

(b)     No rights, protections, or remedies of the DIP Secured Parties granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified, or impaired in any way by (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral, (ii) any actual or

purported termination of the Loan Parties' authority to continue to use Cash Collateral, or

(iii) the terms of any other order or stipulation related to the Loan Parties' continued use of

Cash Collateral or the provision of adequate protection to any party.

12.     *Payment of DIP Agent Fees and Expenses.*  The Loan Parties shall make current

cash payments of the reasonable and documented prepetition and post-petition fees and expenses

incurred by the DIP Agent in connection with the Chapter 11 Cases in any manner (limited, in the

case of the advisors to the DIP Agent, to Huron Consulting Group Inc., Hunton Andrews Kurth

LLP, and Connolly Gallagher LLP and including the allocated costs (with no profit margin) of the

DIP Agent's internal counsel in connection with the Chapter 11 Cases) promptly upon receipt of

invoices therefor, which payments (to the extent for fees, expenses, and disbursements incurred

after the Petition Date) shall be made within 10 days (which time period may be extended by the

applicable professional) after the receipt by the Debtors, the Committee, if any, and the U.S.

Trustee (the "**Review Period**") of invoices therefor (the "**Invoiced Fees**") and without the

necessity of filing formal fee applications, including such amounts arising before or after the

Petition Date.  The invoices for such Invoiced Fees shall include a list of professionals who

worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of

hours each professional billed (except for financial advisors compensated on other than an hourly

basis) and, with respect to the invoices of law firms, the year of law school graduation for each

attorney, as well as a summary description of services provided and the aggregatea list of expenses

incurred by the applicable professional firm; *provided*.  Such Invoiced Fees shall not be required to

contain detailed time entries of any professional, provided, however, that the U.S. Trustee reserves

the right to seek copies of invoices containing such detailed time entries; *provided further*,

*however*, that any such invoice (i)Invoiced Fees may be limited and/or redacted to protect

privileged, confidential, or proprietary information ~~and (ii) shall not be required to contain~~ ~~individual time detail (*provided* that such invoice shall contain (except for financial advisors~~ ~~compensated on other than an hourly basis) summary data regarding hours worked by each~~ ~~timekeeper for the applicable professional and such timekeepers' hourly rates)__,_ provided that the U.S. Trustee reserves his right to seek to obtain unredacted copies of such invoices__ . The Debtors, the Committee, if any, and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided* that payment of any undisputed portion of Invoiced Fees shall not be delayed based on any objections thereto.

13.    *Limitation on Charging Expenses Against Collateral*.  Subject only to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral) or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent or the Prepetition Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Secured Parties or the Prepetition Secured Parties to any charge, lien, assessment, or claim against the DIP Collateral or Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise.

14.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Secured Parties pursuant to the provisions of this Interim Order or the DIP Documents shall be received free and clear of any claim, charge, assessment, or other liability, including, without limitation, and subject to and effective upon entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (whether asserted or assessed by, through, or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

15.    *Use of Cash Collateral.*  The Debtors are hereby authorized, subject to the Approved Budget and the terms and conditions of this Interim Order, to use all Cash Collateral.

16.    *Adequate Protection of Prepetition Secured Parties.*  Until entry of a Final Order approving the DIP Roll-Up Loans, the Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1), and 507(b) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties' prepetition security interests in the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, but not limited to, the Debtors' use, sale or lease of Cash Collateral and other Prepetition Collateral, the imposition of the automatic stay and/or the Carve-Out (the "**Adequate Protection Claims**").  In consideration of the foregoing, the Prepetition Secured Parties are hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a)    Adequate Protection Liens.  Until entry of a Final Order approving the DIP Roll-Up Loans, the Prepetition Agent (for itself and for the benefit of the Prepetition Lenders) is hereby granted (effective and perfected upon the Petition Date and without the necessity of the execution of any mortgages, security agreements, pledge agreements,

financing statements, or other agreements), in the amount of its respective Adequate

Protection Claim, a valid, perfected replacement security interest in and lien upon (the

"**Adequate Protection Liens**") the DIP Collateral (including, without limitation, subject

to and effective upon entry of the Final Order, the Avoidance Proceeds), which Adequate

Protection Liens shall secure the Adequate Protection Claims, and subject and subordinate

only to the Carve-Out, the DIP Liens, and the Permitted Prior Liens.

      (b)    507(b) Claims. Until entry of a Final Order approving the DIP Roll-Up

Loans, the Prepetition Agent is hereby granted an allowed superpriority administrative

expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of

its Adequate Protection Claims with, except as set forth in this Interim Order, priority in

payment over any and all administrative ~~expenses~~expense claims, priority claims and

unsecured claims against the Debtors and their estates, now existing or hereafter arising, of

the kind specified ~~or ordered pursuant to any provision~~in section 507(b) of the Bankruptcy

Code, including but not limited to claims specified in sections 105, 328, 330, 331, 365,

503(b), 507(a)(other than section 507(a)(1)), 507(b), 1113 and 1114 (the "**507(b)**

**Claims**"), which 507(b) Claims (subject to DIP Liens and DIP Superpriority Claims) shall

have recourse to and be payable from all of the DIP Collateral (including, without

limitation, subject to and effective upon entry of the Final Order, the Avoidance Proceeds).

The 507(b) Claims shall be subject and subordinate ~~only~~ to the Carve-Out, the DIP

Superpriority Claims, the DIP Liens, and the Permitted Prior Liens.  Except to the extent

expressly set forth in this Interim Order or the DIP Credit Agreement, the Prepetition

Secured Parties shall not receive or retain any payments, property or other amounts in

respect of the 507(b) Claims unless and until the DIP Obligations (other than contingent

indemnification obligations as to which no claim has been asserted) and the DIP Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c)    Adequate Protection Cash Payments.  Until entry of a Final Order approving the DIP Roll-Up Loans, and in each case subject to reallocation or recharacterization as payment of principal under section 506(a) and (b) of the Bankruptcy Code as may be ordered by the Court in connection with a timely and successful Challenge pursuant to paragraph 20 or 21 below, until the indefeasible discharge of the Prepetition Secured Debt, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, shall receive current payment in cash on the last business day of each month in an amount equal to the sum of all post-petition unpaid interest accruing on all outstanding principal, interest, fees, and other amounts owing under the applicable Prepetition Secured Debt (as of the Petition Date), in each case at the applicable default rate (the payments in this subparagraph (c), the "**Adequate Protection Payments**").

(d)    Prepetition Secured Parties Fees and Expenses.  The Loan Parties shall make current cash payments of the reasonable and documented prepetition and post-petition fees and expenses incurred by the Prepetition Agent in connection with the Chapter 11 Cases in any manner (limited, in the case of the advisors to the Prepetition Secured Parties, to Huron Consulting Group Inc., Hunton Andrews Kurth LLP, and Connolly Gallagher LLP, and including the allocated costs (with no profit margin) of the Prepetition Lenders' internal counsel in connection with the Chapter 11 Cases) promptly upon receipt of invoices therefor, which payments (to the extent for fees, expenses, and disbursements incurred after the Petition Date) shall be made in accordance with the

procedures set forth in paragraph 12 hereof with respect to payment of the fees and expenses of the DIP Agent.

      (e)     All Adequate Protection Liens and 507(b) Claims granted by this Interim Order are subject to any appropriate remedy ordered by the Court, if and to the extent that the underlying Prepetition Liens or Prepetition Claims of the Prepetition Secured Parties are successfully challenged pursuant to paragraph 20 of this Interim Order.

17.    *Reservation of Rights of Prepetition Secured Parties.*  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that any of the Prepetition Secured Parties may request further or different adequate protection, and the Debtors or any other party may contest any such request.

18.    *Perfection of DIP Liens and Adequate Protection Liens.*

      (a)     The DIP Agent, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent, on behalf of the DIP Secured Parties, or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control

over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, at the time and on the date of entry of this Interim Order. Upon the request of the DIP Agent, each of the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized (in the case of the Loan Parties) and directed (in the case of the Prepetition Secured Parties) to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve, and enforce the DIP Liens. All such documents shall be deemed to have been recorded and filed as of the Petition Date.

(b)     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over cash, deposit accounts, securities, or other assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Secured Parties to the priorities granted herein. Notwithstanding the foregoing, a certified copy of this Interim Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby

authorized and directed to accept such certified copy of this Interim Order for filing and/or

recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code

shall be modified to the extent necessary to permit the DIP Agent and Prepetition Secured

Parties to take all actions, as applicable, referenced in this subparagraph (b) and the

immediately preceding subparagraph (a).

19.    *Preservation of Rights Granted Under This Interim Order.*

(a)    Other than the Carve-Out, Permitted Prior Liens and other claims and liens

expressly granted by this Interim Order, no claim or lien having a priority superior to or

that is *pari passu* with those granted by this Interim Order to the DIP Secured Parties or the

Prepetition Secured Parties, respectively, shall be permitted while any of the DIP

Obligations or the Adequate Protection Obligations remain outstanding, and, except as

otherwise expressly provided in this Interim Order, the DIP Liens and the Adequate

Protection Liens shall not be (i) subject or junior to any lien or security interest that is

avoided and preserved for the benefit of the Loan Parties' estates under section 551 of the

Bankruptcy Code, (ii) subordinated to or made *pari passu* with any other lien or security

interest, whether under section 364(d) of the Bankruptcy Code or otherwise, (iii)

subordinated to or made *pari passu* with any liens arising after the Petition Date, including,

without limitation, subject to and effective upon entry of the Final Order, any liens or

security interests granted in favor of any federal, state, municipal, or other domestic or

foreign governmental unit (including any regulatory body), commission, board, or court

for any liability of the Loan Parties, or (iv) subject or junior to any intercompany or

affiliate liens or security interests of the Loan Parties.

(b)      Notwithstanding any order that may be entered converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or that otherwise is at any time entered, (i) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and such DIP Superpriority Claims, 507(b) Claims, DIP Liens, and Adequate Protection Liens shall, notwithstanding such dismissal or conversion, remain binding on all parties in interest), (ii) the other rights granted by this Interim Order shall not be affected, and (iii) the Court shall retain jurisdiction, ~~notwithstanding such dismissal,~~ for the purposes of enforcing the claims, liens and security interests referred to in this paragraph 19 and otherwise in this Interim Order.

(c)      If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay or (ii) the validity, priority, or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacatur, or stay of any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Loan Parties to the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP

Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Documents.

(d)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the 507(b) Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by the entry of an order (i) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other act or omission, (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents), or (iii) confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the 507(b) Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights

and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the Commitments have been terminated.

20.    *Effect of Stipulations on Third Parties.*

(a)    The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order (other than releases with respect to the DIP Secured Party Releasees, which releases are binding upon all parties upon entry of this Interim Order) shall be binding upon (i) the Debtors and their estates, in all circumstances and for all purposes and (ii) all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases (including a Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless (A) such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with standing granted by the Court, has timely filed an adversary proceeding (subject to the limitations contained herein, including, *inter alia*, in this paragraph 20) (1) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Secured Debt or the Prepetition Liens or (2) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests, or defenses (collectively, a "**Challenge**") against the Prepetition Secured Parties or their respective

subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and their respective successors and assigns thereof, in each case in their respective capacity as such (each, a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to any claims of the Debtors against the Prepetition Secured Parties, the Prepetition Loan Documents, the Prepetition Secured Debt, the Prepetition Liens, the Prepetition Collateral, or otherwise, *provided* that all pleadings filed in connection with a Challenge shall set forth the basis for such challenge or claim, (B) such Challenge has been filed prior to the latest of (1) (Y) with respect to parties in interest (other than a Committee), 75 calendar days after entry of this Interim Order and (Z) with respect to a Committee, if any, 60 calendar days after the appointment of the Committee, (2) any such later date as has been agreed to, in writing, by the Prepetition Agent, and (3) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable time period set forth in this paragraph 20 (the time period established by the foregoing clauses (1) through (3), the "**Challenge Period**"), provided, however, that if any of the Debtors' cases convert to a Chapter 7, or if a Chapter 11 trustee is appointed, *prior to* the expiration of the Challenge Period, the Challenge Period shall be extended for the Chapter 7 or Chapter 11 trustee to 40 days after their appointment; and (C) there is a final non-appealable order sustaining such Challenge in favor of the plaintiff in such timely filed adversary proceeding or contested matter. Any Challenge not so specified and filed prior to the expiration of the Challenge Period shall be deemed forever, waived, released, and barred. For the avoidance of doubt, any party which believes it is the holder of a Permitted Prior Lien must initiate a Challenge

as to the priority of its lien before expiration of the Challenge Period or its liens and claims shall be deemed junior in priority to the Prepetition Liens and DIP Liens.

(b)    If no such Challenge is filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then (i) the Debtors' stipulations, admissions, agreements, and releases contained in this Interim Order shall be binding on all parties in interest, including, without limitation, the Committee, if any, (ii) the obligations of the Loan Parties under the Prepetition Loan Documents, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset, or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s), (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense, (iv) the Prepetition Secured Debt and the Prepetition Liens shall not be subject to any other or further claim or challenge by a Committee, if any, any non-statutory committees appointed or formed in the Chapter 11 Cases, any trustee or examiner with enlarged powers appointed or elected in any of the Chapter 11 Cases or any subsequent chapter 7 case of the Debtors or any other party in interest acting or seeking to act on behalf of the Debtors' estates, and (v) any defenses, claims, causes of action, counterclaims, and offsets by a Committee, if any, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to the any claims of the Debtors against the Prepetition Secured Parties, the Prepetition Loan Documents or otherwise shall be deemed

forever waived, released, and barred.  If any such Challenge is filed during the Challenge

Period, the stipulations, admissions, agreements, and releases contained in this Interim

Order shall nonetheless remain binding and preclusive (as provided in this subparagraph

(b)) on a Committee, if any, and on any other person or entity, except to the extent that such

stipulations, admissions, agreements, and releases were expressly and successfully

challenged in such Challenge as set forth in a final, non-appealable order of the Court or

any other court of competent jurisdiction.  Nothing in this Interim Order vests or confers on

any Person (as defined in the Bankruptcy Code), including a Committee, if any, or any

non-statutory committees appointed or formed in the Chapter 11 Cases, standing or

authority to pursue any claim or cause of action belonging to the Debtors or their estates,

including, without limitation, Challenges with respect to the Prepetition Loan Documents,

the Prepetition Secured Debt or the Prepetition Liens, or claims, counterclaims or causes of

action of the Debtors against any Prepetition Secured Party.

21.     *Limitation on Use of DIP Financing Proceeds and Collateral.*  Notwithstanding

anything herein or in any other order entered by the Court to the contrary, no proceeds of the DIP

Facility, DIP Collateral, Prepetition Collateral (including Cash Collateral), or the Carve-Out may

be used (a) for Professional Fees incurred for (i) any litigation or threatened litigation (whether by

contested matter, adversary proceeding, or otherwise, including any investigation in connection

with litigation or threatened litigation) against any of the DIP Agent, the DIP Lenders, or the

Prepetition Secured Parties or for the purpose of objecting to or challenging the validity,

perfection, enforceability, extent, amount or priority of any claim, lien, or security interest held or

asserted by any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties or (ii)

asserting any defense, claim, cause of action, counterclaim, or offset with respect to the DIP

Obligations, the Prepetition Secured Debt (including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise), the DIP Liens, or the Prepetition Liens or against any of the Prepetition Secured Parties or their respective Representatives, (b) to prevent, hinder, or otherwise delay any of the DIP Agent's or the Prepetition Secured Parties' assertion, enforcement, or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Interim Order other than to seek a determination that an Event of Default has not occurred or is not continuing, or in connection with a remedies hearing, (c) to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Interim Order or under the DIP Documents or the Prepetition Loan Documents, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole discretion, or (d) to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of the Court (including, without limitation, hereunder); *provided* that notwithstanding anything to the contrary herein, the Committee, if any, may use the proceeds of the DIP Collateral (including Cash Collateral), and/or the Carve-Out to investigate (but not prosecute or initiate the prosecution of, including the preparation of any complaint or motion on account of) prior to (but not after) the delivery of a Carve-Out Trigger Notice, (y) the claims and liens of the Prepetition Secured Parties, and (z) potential claims, counterclaims, causes of action, or defenses against the Prepetition Secured Parties; *provided further* that no more than an aggregate of $50,000 of the proceeds of the DIP Collateral (including Cash Collateral) and/or the Carve-Out may be used by the Committee, if any, in respect of the investigations set forth in the preceding proviso (the "**Investigation Budget**").

22.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Committee, if any, any non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided* that the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall have no obligation to permit the use of the DIP Collateral or Prepetition Collateral (including Cash Collateral) or to extend any financing to any chapter 7 trustee, chapter 11 trustee, or similar responsible person appointed for the estates of the Debtors.

23.     *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent and the DIP Lenders (and the Prepetition Secured Parties in respect of the use of Cash Collateral) shall not (a) be deemed to be in "control" of the operations of the Debtors, (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates, and (c) be deemed to be acting as a "Responsible Person," "Owner," or "Operator" with respect to the operation or management of the Debtors, so long as the DIP Agent's and the DIP Lenders' actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management

or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause

liability to arise to the federal or state government or the status of "responsible person" or

"managing agent" to exist under applicable law (as such terms or similar terms are used in the

United States Comprehensive Environmental Response, Compensation and Liability Act, 42

U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

    24.    *Inapplicability of Bar Date; Master Proof of Claim.*  Any order entered by the

Court establishing a bar date for any claims (including, without limitation, administrative claims)

in any of the Chapter 11 Cases or any subsequent chapter 7 case of any of the Debtors shall not

apply to any DIP Secured Party or any Prepetition Secured Party. The DIP Secured Parties and the

Prepetition Secured Parties shall not be required to file proofs of claim or requests for allowance

and payment of administrative expenses authorized by this Interim Order in any of the Chapter 11

Cases or any subsequent chapter 7 case of any of the Debtors. The provisions of this Interim Order,

and, upon the entry thereof, the Final Order, relating to the amount and/or priority of the DIP

Loans, the Prepetition Secured Debt, the Adequate Protection Claims, the Adequate Protection

Liens, any Adequate Protection Obligations pursuant to this Interim Order, the Prepetition Liens,

the DIP Liens, the DIP Superpriority Claims  and the Adequate Protection Liens shall constitute a

sufficient and timely filed proof of claim and/or administrative expense request in respect of such

obligations and such secured status. However, in order to facilitate the processing of claims, to

ease the burden upon the Court, and to reduce an unnecessary expense to the Debtors' estates, the

Prepetition Agent is authorized to, but not required to, file in the Debtors' lead Chapter 11 Case *In*

*re EdgeMarc Energy Holdings, LLC, et al.,* Case No. 19-~~——— (——),~~11104, a single, master

proof of claim on behalf of the Prepetition Secured Parties, on account of any and all of their

respective claims arising under the applicable Prepetition Loan Documents and hereunder (each, a

"**Master Proof of Claim**") applicable against each of the Debtors. Upon the filing of a Master Proof of Claim, the Prepetition Agent and the Prepetition Secured Parties, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Loan Documents, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of the Chapter 11 Cases. The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. Nothing in this Interim Order shall waive the right of any DIP Secured Party or any Prepetition Secured Party to file its own proof of claim against any of the Debtors. The provisions of this paragraph 24 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in the Chapter 11 Cases. The Master Proofs of Claim shall not be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements, or other documents will be provided upon reasonable written request to counsel to the Prepetition Agent.

25.    *Insurance.* To the extent that the Prepetition Agent or any Prepetition Lender is listed as loss payee or additional insured under any of the Borrower's or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee or additional insured, as applicable,

under such insurance policies and shall act in that capacity and distribute any proceeds recovered

or received in respect of any such insurance policies, *first*, to the payment in full of the DIP

Obligations (other than contingent indemnification obligations as to which no claim has been

asserted), and *second*, to the payment of the applicable Prepetition Secured Debt.

26.    *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions

of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately

upon entry hereof.  Notwithstanding Bankruptcy Rule 4001(a)(3), 6004(h), 6006(d), 7062, or

9014, any Local Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order

shall be immediately effective and enforceable upon its entry and there shall be no stay of

execution or effectiveness of this Interim Order.

27.    *Headings*.  Section headings used herein are for convenience only and are not to

affect the construction of or to be taken into consideration in interpreting this Interim Order.

28.    *Payments Held in Trust for the DIP Agent and DIP Lenders*.  Except as expressly

permitted in this Interim Order or the DIP Documents, in the event that any person or entity

receives any payment on account of a security interest in DIP Collateral, receives any DIP

Collateral or any proceeds of DIP Collateral, or receives any other payment with respect thereto

from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the

DIP Documents, and termination of the Commitments in accordance with the DIP Documents,

such person, or entity shall be deemed to have received, and shall hold, such payment or proceeds

of DIP Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall

immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by the Court, for

application in accordance with the DIP Documents and this Interim Order.

29.     *Disposition of DIP Collateral.* Unless the DIP Obligations and the Prepetition

Secured Debt are indefeasibly paid in full, in cash, upon the closing of a sale or other disposition of

the DIP Collateral or Prepetition Collateral, the Debtors shall not sell, transfer, lease, encumber, or

otherwise dispose of any portion of the DIP Collateral or any Prepetition Collateral (or enter into

any binding agreement to do so) (other than (x) the sale of crude oil, natural gas, or other

hydrocarbons in the ordinary course of business, (y) other transactions permitted under the DIP

Documents or (z) transactions for an aggregate consideration of less than $500,000) without the

prior written consent of the DIP Agent and, solely with respect to the Prepetition Collateral, the

Prepetition Agent, in each case such consent not to be unreasonably withheld (and no such consent

shall be implied from any other action, inaction, or acquiescence by any DIP Secured Party or

Prepetition Secured Party or any order of this Court), except as permitted in the DIP Loan

Documents and/or the Prepetition Loan Documents, as applicable, and/or this Interim Order.

Except to the extent otherwise expressly provided in the DIP Loan Documents or this Interim

Order and subject to the Carve-Out, all proceeds from the sale, transfer, lease, encumbrance, or

other disposition of any DIP Collateral (other than the sale of crude oil, natural gas, or other

hydrocarbons in the ordinary course of business) shall be remitted to the DIP Agent for application

to the DIP Obligations and then to the Prepetition Secured Debt, in each case, in accordance with

the terms of this Interim Order and the DIP Loan Documents or the Prepetition Loan Documents,

as the case may be.

30.     *Credit Bidding.* The DIP Secured Parties shall have the right to credit bid, in

accordance with the DIP Documents and subject to the Carve-Out, up to the full amount of the DIP

Obligations in any sale of the Prepetition Collateral, in each case pursuant to section 363(k) of the

Bankruptcy Code and subject to any successful Challenge, without the need for further Court order

authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code or otherwise.  Subject to paragraph 20 hereof and section 363(k) of the Bankruptcy Code, each of the Prepetition Secured Parties shall have the right to credit bid up to the full amount of the applicable Prepetition Secured Debt.  The Debtors shall pay the fees and expenses of the DIP Secured Parties and Prepetition Secured Parties in connection with any such credit bid, subject to the procedures set forth in paragraph 12 hereof.

31.     *No Marshalling.*  Subject to and effective upon entry of the Final Order, in no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or Prepetition Collateral. Upon entry of this Interim Order, the DIP Secured Parties and the Prepetition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and subject to and effective upon entry of the Final Order, the "equities of the case" exception shall not apply.

32.     *Bankruptcy Rules.*  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

33.     *Necessary Action.*  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

34.     *Retention of Jurisdiction.*  The Court shall retain jurisdiction to implement, interpret and enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

35.    *Final Hearing.*  The Final Hearing is scheduled for ————,June 17, 2019 at ————10 a.m. before the Court.

36.    *Inconsistency.*  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or the Motion on the one hand, and of this Interim Order on the other, the provisions of this Interim Order shall govern and control.

37.    *Objections.*  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon (a) counsel to the Debtors, (i) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (10017, Attention: Darren S. Klein (darren.klein@davispolk.com) and Aryeh Ethan Falk (aryeh.falk@davispolk.com) and (ii) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801 (19801, Attention: Adam G. Landis (landis@lrclaw.com) and Kerri K. Mumford (mumford@lrclaw.com), (b) counsel to the DIP Agent and DIP Lenders, (i) Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, TX 77002 (77002, Attention: Timothy A. "Tad" Davidson (TadDavidson@andrewskurth.com) and Joseph Rovira (JosephRovira@andrewskurth.com) and (ii) Connolly Gallagher LLP, 1201 North Market Street, 20th Floor, Wilmington, DE 19801 (19801, Attention: Jeffrey Wisler (jwisler@connollygallagher.com), (c) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (19801, Attention: Juliet M. Sarkessian (juliet.m.sarkessian@usdoj.gov), and (d) any other party that has filed a request for notices with the Court, in each case to allow actual receipt by the foregoingby no later than ————,June 10, 2019 at 4:00 p.m. (prevailing Eastern Time).

38.     The Debtors shall promptly serve copies of this Interim Order, with notice of entry of the same, and notice of the Final Hearing date and objection deadline (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, including the Debtors' largest 20 unsecured creditors on a consolidated basis, as well as all parties known to the Debtors to be asserting liens against or security interest in, any of the Prepetition Collateral, DIP Collateral or reclamation claims; the Internal Revenue Service; all state taxing authorities in the states in which the Debtors have any tax liabilities; the Environmental Protection Agency and state environmental regulatory authorities in the states in which the Debtors operate, and any other federal or state regulatory authorities governing the Debtors' industry; the U.S. Attorney's Office; the Delaware Attorney General; the United States Trustee; to any party that has filed a request for notices with the Court; and to the Committee after the same has been appointed, or such Committee's counsel, if the same shall have been appointed.

Dated:  _____, 2019
        Wilmington, Delaware


UNDERLINE_JUDGE BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE