**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| | : | Case No.: 19-11104 BLS |
| EDGEMARC ENERGY HOLDINGS, | : | |
| LLC, ET AL. | : | Hearing Date: June 17, 2019 at 10:00 a.m. |
| Debtor | : | |
| _____ | : | Response Deadline: June 10, 2019 at 4:00 p.m. |
| | : | |
| EUREKA MIDSTREAM, LLC f/k/a | : | |
| EUREKA HUNTER PIPELINE, LLC, | : | |
| AND EQM GATHERING OPCO, LLC, | : | |
| | : | |
| Movants, | : | |
| | : | |
| EM ENERGY OHIO, LLC and | : | |
| EDGEMARC ENERGY HOLDINGS, | : | |
| LLC, | : | |
| | : | |
| Respondents. | : | |

**<u>LIMITED OBJECTION AND RESERVATION TO THE MOTION OF DEBTORS FOR
ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO
OBTAIN SENIOR SECURED SUPERPRIORITY POST-PETITION FINANCING (II)
GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS,
(III) AUTHORIZING THE USE OF CASH COLLATERAL, AND (IV) GRANTING
RELATED RELIEF</u>**

AND NOW comes Movants, Eureka Midstream, LLC f/k/a Eureka Hunter Pipeline, LLC

and EQM Gathering OPCO, LLC, by and through its counsel, and files the following Limited

Objection and Reservation to Motion of Debtors for Entry of Orders (I) Authorizing the Debtors

to Obtain Senior Secured Superpriority Post-Petition Financing (II) Granting Liens and

Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, and

(iv) Granting Related Relief (hereinafter referred to as "Debtors' Motion"), averring as follows:

## I.      PARTIES

1.      On May 15, 2019, Debtors Edgemarc Energy Holdings, LLC and EM Energy Ohio, LLC (hereinafter "Debtors") filed for relief under Chapter 11 of the United States Bankruptcy Code.

2.      Eureka Midstream, LLC f/k/a Eureka Hunter Pipeline, LLC ("Eureka") is a Delaware Limited Liability Company and midstream gatherer providing natural gas gathering services and Eureka is a party to a Gas Gathering Services Agreement (hereafter "GGSA") with Debtor, EM Energy Ohio, LLC.  A true and correct copy of the Gas Gathering Services Agreement is attached as **Exhibit A**.

3.      EQM Gathering OPCO, LLC ("EQM) is a Delaware limited liability company which is a subsidiary to the parent of Eureka and which is a party to a Produced Water Sharing and Cooperation Agreement with Debtor, Edgemarc Energy Holdings, LLC. A true and correct copy of the Produced Water Sharing and Cooperation Agreement is attached as **Exhibit B**.

## II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §363 and §365, as well as Amended Standing Order of Reference dated February 29, 2012 and F.R.B.P. 9006(b).

5.      This matter arises in, under, or is related to Debtors' bankruptcy under 28 U.S.C. §157.

6.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.    STATEMENT OF RELEVANT FACTS

7.    On March 27, 2015, Eureka and EM Energy Ohio, LLC entered into the GGSA for a term of 15 years, with automatic yearly renewals thereafter, which provides Eureka with a dedicated real property interest and is a covenant running with the land in certain committed mineral acreage and dry gas produce in Monroe and Washington Counties, Ohio as follows:

> 2.5    Dedication of Committed Mineral Acreage. For the Term of this Agreement, or if the Term of any applicable Individual Transaction Confirmation exceeds the Term of this Agreement, then for the Term of such ITC but only with respect to the Committed Mineral Acreage to be serviced pursuant to such ITC, and subject to the provisions hereof, **Shipper hereby exclusively dedicates and commits to Gatherer for gathering services hereunder (or shall cause to be dedicated and committed to Gatherer for gathering services hereunder), all Dry Gas produced from the Committed Mineral Acreage as shown and defined on Exhibit D.** During the term of any applicable Individual Transaction Confirmation, Shipper agrees not to disconnect or split-connect any wells from Gatherer's Gathering System. **Notwithstanding anything to the contrary, unless such dedication is otherwise waived or released in writing by Gatherer hereunder, any assignment or transfer (in whole or in part, including any farmout agreement or other similar or related arrangement) of any or all of the Committed Mineral Acreage or rights thereto shall include an express provision stating that (a) such assignment or transfer is made subject to the terms of this commitment and this Agreement, and (b) the assignee or transferee agrees to become a party to, and bound by, the terms and conditions set forth in this Agreement, such that all of the Committed Mineral Acreage remain dedicated to this Agreement for the term hereof.** In the event Gatherer declines to extend the Lean Gas Gathering System to a Receipt Point, or fails to provide such facilities or services within any applicable period of time pursuant to an Individual Transaction Confirmation, at Shipper's election and without waiving any other rights or remedies Shipper may have, the associated acreage will be released from the dedicated Committed Mineral Acreage. **The provisions of Article 2.5 shall be covenants running with the land, and Shipper shall ensure that any conveyance, assignment, sale or other transfer of all or a portion of the interests owned by Shipper or its Affiliates covered by this Agreement shall be subject hereto in accordance with applicable law. Shipper shall require any purchaser, assignee or other transferee of any portion of those interests to ratify this Agreement and to expressly assume and agree to the terms hereof to the extent of the portion of those interests acquired from Shipper or its Affiliates by that party.** (emphasis added).

2.6    Committed Mineral Acreage. *"Committed Mineral Acreage"* means all mineral acreage Shipper is dedicating to this Agreement as set forth on Exhibit D attached hereto, and subject to Article 2.5, 2.6, and 2.7, as well as such other mineral acreage that Shipper may from time-to-time add within the boundary identified on Exhibit D hereto.

2.7    Dedicated Gas. **Subject to any existing dedications in favor of third-parties, all Dry Gas produced that is either attributable to interests now owned, controlled or hereafter acquired by Shipper and located within, or is from wells operated by Shipper and located on lands within the area of the Committed Mineral Acreage or, subject to any existing dedications in favor of third-parties, on lands pooled, unitized or communitized wholly or partly within any portion of the Committed Mineral Acreage, or is attributable to third parties that is produced from a well that is operated by Shipper located within the Committed Mineral Acreage and from wells which Shipper have the right to control, market, and deliver Dry Gas for gathering**. For avoidance of doubt, the parties agree that this Agreement shall not cover or apply to any Wet Gas produced by Shipper and, unless expressly provided otherwise herein, any reference to "Gas" or "Natural Gas" shall be deemed to mean Dry Gas only. (emphasis added).

8.    On May 15, 2019, Debtors filed a Motion of Debtors for Entry of Orders (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Post-Petition Financing (II) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, and (iv) Granting Related Relief.

9.    Thereafter, on May 17, 2019, Debtors issued a Notice of Hearing on Debtors' Motion with an objection deadline of June 10, 2019 and a final hearing date of June 17, 2019 at 10:00 a.m.

10.    Movants now file a Limited Objection and Reservation to the Debtors' Motion in furtherance of the protection of their rights and interests under the GGSA.

## IV.    LIMITED OBJECTION AND RESERVATION

### A.  Movants possess a real property interest through covenant which runs with the land

11.    Movants incorporate paragraphs 1-10 as if set forth at length.

12.    The GGSA contains a choice of law provision providing that the GGSA is to be interpreted under the laws of the State of Ohio.

13.    The GGSA dedicates committed mineral acreage and dry gas located therein in certain portions of Washington and Monroe County to Eureka, and that the dedication is explicitly set forth as a covenant running with the land.

14.    In addition to the GGSA explicitly providing that the dedication of committed mineral acreage and dry gas is a covenant running with the land, it provides that any conveyance, assignment, sale or other transfer of any of Debtors' interests shall be subject to applicable law and shall require any purchaser, assignee or transferee to ratify the GGSA and "expressly assume and agree to the terms hereof to the extent of the portion of those interests acquired…" Exhibit "A," sec. 2.5."

15.    The GGSA conditions its assignment or transfer on an express provision stating that such assignment or transfer is made subject to the terms of the GGSA and the running covenant created by the dedication, and that any assignee or transferee to the GGSA agrees to become a party to, and bound by, the terms and conditions set forth in the GGSA, "such that all of the Committed Mineral Acreage remain dedicated to this Agreement for the term hereof." Exhibit "A," sec. 2.5."  *See also* section 17.5 of the GGSA entitled "Assignment."

16.     In Ohio, covenants running with the land have three requirements: 1) intent for the covenant to run with the land; 2) the covenant touches and concerns the land; and 3) privity. *LuMac Dev. Corp v. Buck Point Ltd. Partnership* (1988), 61 Ohio App.3d 558, 562, 57. N.E. 2d

681.  A covenant that runs with the land binds subsequent purchasers of real property so long as the subsequent purchaser has notice of the covenant.  *B.M. Clarence Cardwell, Inc. v. Cocca Dev. Ltd*, 65 N.E. 3d. 829, 2016-Ohio-7751 (5th. Dist. 2016), citing *Emrick v. Multicon Builders, Inc.*, 57 Ohio St. 3d 107 (1991).

17.     The parties explicitly intended to create a covenant running with the land in favor of Eureka through the GGSA and the interest is vested.  Gas continues to remain in and be produced from the committed mineral acreage.

18.     Touching or concerning the land is a determination of whether the property was made more useful or valuable by the covenant.  *Glenmoor Properties Ltd. Partnership v. Josephine Joseph*, 2002 WL 22718929 (5th. Dist. 2003), citing *Lumack Development Corp. v. Buck Point Ltd. Partnership*, 61 Ohio App. 3d 558, 662 (1988).   Here, the covenant touches and concerns the land.  The covenant arises out of the mineral estate and dry gas production and the covenant increases the value of the property and obligations of the parties. See also *In re Energytec, Inc*., 379 F.3d 215 (5th Cir. 2013) (right to transportation fees and right to consent to assignment were covenants running with the land).

19.     Horizontal and vertical privity exists between Debtors and Movants, and vertical privity would exist as to any successor to Debtors.   One is in privity with another if he/she succeeds to an estate or an interest formerly held by the other, and under Ohio law, even relaxed vertical privity is sufficient for a covenant to run with the land. *BM-Clarence Cardwell, Inc., supra*.

20.     Alternatively, an equitable servitude was created by the GGSA. An equitable servitude is a restriction on land use enforceable in equity where (1) the parties agreement demonstrates an intent to bind successors to the land, (2) the agreement is within the statute of

frauds, (3) the party who agreed to burden the land and his or her successors are in vertical privity, (4) the promise touches and concerns the land and (5) successors in interest must take with actual or constructive notice of the burden. *City of Perryburg v. Koenig*, 1995 WL 803592 (6th. Dist. No. WD-95-011, 1995).

21.     Debtors' Motion for Entry of Orders (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Post-Petition Financing (II) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, and (iv) Granting Related Relief seeks to obtain postpetition financing and the granting of superpriority administrative expense claims and postpetition roll-up liens to the DIP Lender / Agent.

22.     Debtors' Motion intends to provide the DIP Agent automatic and perfected security interests in all property, proceeds and products of the Debtors, now owned or hereafter acquired.

23.     Movants do not oppose Debtors obtaining DIP financing for ongoing business concerns and reorganization; however, Movants aver that their real property interest created by the GGSA covenant in the committed mineral acreage and dry gas should be carved out of any interim and final order granting DIP liens upon all of Debtors' property.

24.     Additionally, Movants reserves any and all statutory lien rights they may have with respect to future gas production from the committed mineral acreage and gas which arises from its real property interest, including any rights under Ohio Revised Code §1311.021 (relating to mechanics' liens on oil and gas wells and facilities).

WHEREFORE, Movants respectfully request that if a final Order is entered on Debtors' DIP financing Motion, that Movants' real property rights and future secured rights established by the GGSA and covenant running with the land be unaffected and preserved.

Respectfully submitted,

BURNS WHITE LLC


Date: June 10, 2019

/s/ William M. Buchanan
William M. Buchanan, Esquire
Pa. Id. No. 202843

Burns White Center
48 26th Street
Pittsburgh, PA 15222
T: (412) 995-3088
F: (412) 995-3300
wmbuchanan@burnswhite.com

/s/ Maria R. Granaudo Gesty
Maria R. Granaudo Gesty, Esquire
Delaware Corporate Center I
1 Righter Parkway, Suite 130
Wilmington, DE 19803
T: (302) 295-2260
F: (302) 295-2251
mrgranaudo@burnswhite.com

*Counsel for Eureka Midstream, LLC f/k/a Eureka Hunter Pipeline, LLC and EQM Gathering OPCO, LLC*