## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>EDGEMARC ENERGY HOLDINGS, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-11104 (BLS)<br><br>(Jointly Administered) Re:<br><br>Docket Nos. 13, 62 & 219 |

**FINAL ORDER, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, AND 507, (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of EdgeMarc Energy Holdings, LLC and its

subsidiaries that are debtors and debtors in possession (the "**Debtors**") in the above-captioned

cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2),

364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of title 11 of the United

States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004,

and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "**Local Rules**"), for entry of an interim order and a final order (this

"**Final Order**"), among other things:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: EdgeMarc Energy Holdings, LLC (80-0766900), EM Energy Manager, LLC (30-0745334), EM Energy Employer, LLC (80-0838026), EM Energy Ohio, LLC (80-0846935), EM Energy Pennsylvania, LLC (38-3881541), EM Energy West Virginia, LLC (90-0883771), EM Energy Keystone, LLC (82-0857506), EM Energy Midstream Ohio, LLC (46-3841268), EM Energy Midstream Pennsylvania, LLC (46-3843963). The Debtors' corporate headquarters and mailing address is 1800 Main Street, Suite 220, Canonsburg, PA 15317.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Documents or the Motion, as applicable.

{1239.001-W0055962.}

(i)     Authorizing EM Energy Employer, LLC (the "**Borrower**") to obtain, and the other Debtors (collectively, in their capacity as such, the "**Guarantors**" and, together with the Borrower, the "**Loan Parties**") to guaranty, debtor-in-possession credit financing in an aggregate principal amount of up to $107,793,041 million (the "**DIP Financing**") to be funded by the Prepetition Lenders (in their capacity as lenders under the DIP Facilities, the "**DIP Lenders**") under a secured term loan and letter of credit facility (the "**DIP Facility**"), and pursuant to the terms and conditions of the *Interim Order, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, and 507, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Post-petition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling Final Hearing, and (VII) Granting Related Relief* entered on May 17, 2019 [D.I. 62] (the "**Interim Order**") and this Final Order, consisting of (A) new money term loans (the "**DIP Term Loans**") in an aggregate principal amount of up to $30 million, and (B) roll-up term loans (the "**DIP Roll-Up Loans**" and, together with the DIP Term Loans, the "**DIP Loans**"), which shall be subject and subordinate to the DIP Term Loans, to refinance dollar-for-dollar the Prepetition Secured Debt held by the DIP Lenders in the aggregate principal amount up to $77,793,041.00 million, with such amount depending upon the Letters of Credit Outstanding;

(ii)    deeming all Prepetition Letters of Credit (as defined below) issued and outstanding under the Prepetition Credit Agreement (as defined below) as cancelled and reissued under the DIP Credit Agreement (as defined below) in their full amounts and without modification of their terms (such reissued letters of credit, the "**DIP Letters of Credit**");

(iii)   authorizing the Loan Parties, in connection with the DIP Facility, to (A) execute and enter into the Superpriority Secured Debtor-in-Possession Credit Agreement, among the Loan Parties, the DIP Lenders, and KeyBank National Association ("**KeyBank**"), as administrative agent (solely in such capacity, the "**DIP Agent**") and as the Letter of Credit Issuer (as defined in the DIP Credit Agreement), together with the DIP Agent and DIP Lenders, the "**DIP Secured Parties**") (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" a copy of which is attached hereto as Exhibit A, and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and amendments executed and delivered in connection therewith, including the Approved Budget, the "**DIP Documents**") and (B) to perform all such other and further acts as may be required in connection with the DIP Documents;

2

(iv)   granting to the DIP Agent, for the benefit of the DIP Lenders, valid, enforceable, non-avoidable and automatically and fully perfected liens and security interests, subject only to the (a) the Carve-Out, and (b) valid, enforceable and non-avoidable Liens or security interests that are (i) in existence on the Petition Date (as defined below), (ii) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (iii) senior in priority to the Prepetition Liens granted the Prepetition Secured Parties under and in connection with the Prepetition Loan in accordance with applicable law (the "**Permitted Prior Liens**"), to secure the DIP Obligations, which liens and security interests shall have the rankings and priorities set forth in this Final Order;

(v)    granting superpriority administrative claims to the DIP Secured Parties payable from, and having recourse to, all prepetition and post-petition property of the Loan Parties' estates and all proceeds thereof (other than Avoidance Actions, but including Avoidance Proceeds), subject to the Carve-Out and the Permitted Prior Liens;

(vi)   authorizing the Loan Parties (A) upon entry of the Interim Order, to incur in multiple draws on and after the Closing Date, DIP Term Loans in an aggregate principal amount of up to $15 million (the "**Initial DIP Term Loans**") (the incurrence of such loans upon entry of the Interim Order, the "**Interim Financing**") and (B) to incur in multiple draws, additional DIP Term Loans in an aggregate principal amount of $30 million, in each case subject to the terms and conditions set forth in the DIP Documents and this Final Order;

(vii)  to use the DIP Roll-Up Loans to refinance and discharge dollar-for-dollar Prepetition Secured Debt held by the DIP Lenders in the aggregate principal amount of up to $77,793,041.00 million;

(viii) authorizing the Debtors' use of the proceeds of the DIP Facility pursuant to the DIP Credit Agreement and the other DIP Documents, including the "Approved Budget" (as defined in the DIP Credit Agreement and including any permitted variances and carry forward amounts, the "**Approved Budget**");

(ix)   authorizing the Debtors to continue to use the Cash Collateral (subject to the Approved Budget) and all other Prepetition Collateral, and the granting of the Adequate Protection Obligations to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral to the extent of diminution in the value of the Prepetition Collateral (including Cash Collateral);

3

(x)    approving certain stipulations by the Debtors with respect to the Prepetition Loan Documents and the Prepetition Collateral as set forth in the Interim Order and in this Final Order; and

(xi)    modifying the automatic stay as set forth herein and the DIP Documents, to the extent necessary, to implement and effectuate the foregoing and the other terms and provisions of the DIP Documents, the Interim Order and this Final Order.

the Court having jurisdiction to consider the matters raised in the Motion pursuant to

28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to

hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the

requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C.

§ 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the

Motion having been given to the parties listed therein, and it appearing that no other or further

notice need be provided; and the Court having reviewed and considered the Motion, the Streeter

Declaration and the Ross Declaration; and the Court having held an interim hearing on the

Motion on May 16, 2019 (the "**Interim Hearing**") and a final hearing on the Motion having

been scheduled and noticed for June 17, 2019 (the "**Final Hearing**"); and the Court having

determined that the legal and factual bases set forth in the Motion, the First Day Declaration and

the Ross Declaration and the record presented to the Court at the Interim Hearing and Final

Hearing establish just cause for the relief granted herein; and all objections, if any, to the relief

requested in the Motion for entry of this Final Order having been withdrawn, resolved, or

overruled by the Court; and the Court having determined that there is good and sufficient cause

for the relief set forth herein, which is necessary to avoid irreparable harm to the Debtors and

HW_US:74596792.1
#92083139v11

their estates as contemplated by Bankruptcy Rule 4001; and upon all of the proceedings had

before the Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    *Petition Date.*  On May 15, 2019 (the "**Petition Date**"), each of the Debtors filed

a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United

States Bankruptcy Court for the District of Delaware (this "**Court**") commencing the Chapter 11

Cases.

B.    *Debtors in Possession.*  The Debtors have continued in the management and

operation of their businesses and properties as debtors in possession pursuant to sections 1107

and 1108 of the Bankruptcy Code.

C.    *Joint Administration.*  The Chapter 11 Cases are being jointly administered

pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter*

*11 Cases* [D.I. 42] entered by the Court on May 16, 2019, in each of the Chapter 11 Cases.

D.    *Interim Order.*  On May 17, 2019, the Court entered the Interim Order [D.I. 62].

E.    *Committee Formation.*  The Office of the United States Trustee for the District of

Delaware (the "**U.S. Trustee**") appointed a statutory committee in the Chapter 11 Cases pursuant

to section 1102 of the Bankruptcy Code on May 29, 2019 (the "**Committee**").

F.    *Jurisdiction and Venue.*  The Court has jurisdiction over the Motion pursuant to

28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District*

*Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

5

within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue of the Chapter 11 Cases and related proceedings is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      G.    *Notice*. The Final Hearing was scheduled and noticed pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). Adequate and sufficient notice of the Motion has been provided in accordance with the Interim Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and under the circumstances, no other or further notice of the Motion or the entry of this Final Order shall be required. The final relief granted pursuant to this Final Order is necessary to avoid significant and irreparable harm to the Debtors and their estates.

      H.    *Debtors' Stipulations Regarding the DIP Facility*. The Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree (the "**Debtors' DIP Stipulations**") as follows:

          (i)    <u>Release of Claims</u>. Upon entry of the Interim Order, each Debtor and its estate shall be deemed to have forever waived, discharged, and released each of KeyBank, National Association and its respective affiliates, assigns, or successors and the respective members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, employees, and other representatives of the foregoing (each solely in its capacity as such and all of the foregoing, collectively, the "**DIP Secured Party Releasees**") from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action in the

6

nature of "lender liability"), defenses, setoff, recoupment, other offset rights, and other rights of disgorgement or recovery against any and all of the DIP Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with entering into and consummating the DIP Term Loans; *provided* that, nothing herein shall relieve the DIP Secured Party Releasees from fulfilling their obligations or commitments under the DIP Facility or the rights of parties in interest with respect to the Prepetition Secured Parties set forth in paragraphs 20 and 21.

I.      *Debtors' Stipulations Regarding the Prepetition Credit Agreement.*  After consultation with their attorneys and financial advisors, and without prejudice to the rights of the Committee or any other party in interest (subject to the limitations thereon contained in paragraphs 20 and 21 below), the Debtors acknowledge, admit, stipulate and agree that:

(i)      Prepetition Credit Facility.  Pursuant to that certain Amended and Restated Credit Agreement, dated as of December 19, 2017 (as amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "**Prepetition Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments, and amendments executed and delivered in connection therewith, the "**Prepetition Loan Documents**"), among the Borrower, KeyBank, as administrative agent and collateral agent (in such capacity, the "**Prepetition Agent**"), and as the Letter of Credit Issuer (as defined in the Prepetition Credit Agreement) and the lenders party thereto (the "**Prepetition Lenders**" and, together with the Prepetition Agent and the Letter of Credit Issuer, the "**Prepetition Secured Parties**"), the Prepetition Lenders provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, the Borrower (the

7

"**Prepetition Credit Facility**"), which Prepetition Credit Facility has been guaranteed on a joint and several basis by certain of the Debtors (the "**Prepetition Guarantors**").

      (ii)    <u>Prepetition Secured Debt</u>.  As of the Petition Date, the Borrower and the Prepetition Guarantors were justly and lawfully indebted and liable to the Prepetition Secured Parties, without defense, counterclaim, or offset of any kind, in respect of (a) outstanding loans in the aggregate principal amount of not less than $41 million, (b) L/C Obligations (as defined in the Prepetition Credit Agreement) (the "**Prepetition Letters of Credit**") in the amount of not less than $37 million, and (c) Hedging Obligations (as defined in the Prepetition Credit Agreement), pursuant to and in accordance with the terms of, the Prepetition Loan Documents (collectively, such indebtedness together with accrued and unpaid interest thereon and fees, expenses, charges, indemnities, and other obligations incurred in connection therewith as provided in the Prepetition Loan Documents, the "**Prepetition Secured Debt**").

      (iii)    <u>Validity of Prepetition Secured Debt</u>.  (a) The Prepetition Secured Debt constitutes legal, valid, binding, and non-avoidable obligations of the Borrower and the Prepetition Guarantors, enforceable in accordance with the terms of the Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and (b) no portion of the Prepetition Secured Debt or any payments made to the Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured Debt prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

8

(iv)    <u>Prepetition Liens</u>.  The liens and security interests granted to the Prepetition Secured Parties (the "**Prepetition Liens**"), pursuant to and in connection with the Prepetition Loan Documents, are (a) valid, binding, perfected, enforceable liens and security interests in the Collateral (as defined in the Prepetition Credit Agreement) (the "**Prepetition Collateral**"), (b) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense, or claim under the Bankruptcy Code or applicable non-bankruptcy law, and (c) as of the Petition Date, subject only to Permitted Prior Liens.

(v)    <u>No Control</u>.  To the extent set forth in paragraph 23, none of the Prepetition Secured Parties controls the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition Loan Documents.

(vi)    <u>No Claims or Causes of Action</u>.  No claims, counterclaims or causes of action of any kind or nature exist against, or with respect to, the Prepetition Secured Parties under any agreements by and among the Debtors and any of the Prepetition Secured Parties that is in existence as of the Petition Date, whether related to the Prepetition Loan Documents or any other agreement with the Debtors.

J.    *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(i)    Good and sufficient cause has been shown for the entry of this Final Order.

9

(ii)    The Loan Parties have a critical need for the DIP Financing and to continue to use the Prepetition Collateral (including "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code ("**Cash Collateral**")) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, to administer these Chapter 11 Cases, and to satisfy other working capital and operational needs.  The access of the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Loan Parties and to a successful sale process.

(iii)    The Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Loan Parties are also unable to obtain secured credit allowable under section 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code without granting to the DIP Secured Parties the DIP Liens and the DIP Superpriority Claims and incurring the Adequate Protection Obligations, in each case subject to the Carve-Out and the terms and conditions set forth in the Interim Order, this Final Order and in the DIP Documents.

(iv)    Based on the Motion, the Streeter Declaration, the Ross Declaration, and the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the DIP Financing and the terms on which the Loan Parties may continue to use the

HW_US:74596792.1
#92083139v11

Prepetition Collateral (including Cash Collateral) pursuant to the Interim Order, this Final Order and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment and constitute reasonably equivalent value and fair consideration.

      (v)    Absent an order of the Court and the provision of adequate protection (if the Court determined there were grounds for adequate protection under the Bankruptcy Code), consent of the Prepetition Secured Parties is required for the Loan Parties' use of Cash Collateral and the other Prepetition Collateral. The Prepetition Secured Parties have consented to the Loan Parties' use of Cash Collateral and the other Prepetition Collateral, and the Loan Parties' entry into the DIP Documents in accordance with and subject to the terms and conditions in the Interim Order, this Final Order and the DIP Documents.

      (vi)    The DIP Financing and the use of the Prepetition Collateral have been negotiated in good faith and at arm's length among the Loan Parties and the DIP Secured Parties, and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation, all "Obligations" (as defined in the DIP Documents), in each case owing to the DIP Secured Parties or any of their respective banking affiliates (collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code

11

in the event that this Final Order or any provision hereof or thereof is vacated, reversed, or modified, on appeal or otherwise.

(vii)     The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Loan Parties' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code, as may be applicable, in the event that this Final Order, the Interim Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(viii)     The Prepetition Secured Parties are entitled to the adequate protection provided in the Interim Order and this Final Order as and to the extent set forth herein and therein pursuant to sections 361, 362, 363, 364 and 507(b) of the Bankruptcy Code. Based on the Motion and on the record presented to the Court in connection with the Motion, the Interim Order, and this Final Order, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral; *provided* that nothing in the Interim Order, this Final Order or the other DIP Documents shall (a) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in the Interim Order and this Final Order, (b) be construed as a consent by any party to the

12

terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior), or (c) prejudice, limit, or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different, or additional adequate protection for any diminution in value of their interests in the Prepetition Collateral from and after the Petition Date or assert the interests of any of the Prepetition Secured Parties and the rights of any other party in interest to object to such relief are hereby preserved.

(ix)    Absent granting the relief set forth in this Final Order, the Loan Parties' estates will be significantly and irreparably harmed.  Consummation of the DIP Financing and the use of the Prepetition Collateral (including Cash Collateral) in accordance with the Interim Order, this Final Order and the DIP Documents are, therefore, in the best interests of the Loan Parties' estates.

K.    *Permitted Prior Liens; Continuation of Prepetition Liens.*  Nothing in the Interim Order or this Final Order shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Nothing herein or in the Interim Order shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or the Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the DIP Liens.  The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facilities, the DIP Documents, and the Prepetition Loan Documents.

13

**IT IS HEREBY ORDERED THAT:**

1. *Financing Approved.* The relief requested in the Motion is granted, and the use of Cash Collateral on a final basis and the DIP Roll-Up Loans and additional DIP Term Loans (in addition to the Interim Financing authorized by the Interim Order) are authorized and approved, in each case in accordance with the terms and conditions set forth in the DIP Documents, the Approved Budget, the Interim Order and this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2. *Authorization of the DIP Financing and the DIP Documents.*

(a)     The Loan Parties are hereby authorized to execute, deliver, enter into and, as applicable, perform all of their obligations under the Interim Order, this Final Order and the DIP Documents and such other and further acts as may be necessary, appropriate, or desirable in connection therewith, in each case in accordance with and subject to the terms of the Interim Order, this Final Order and the DIP Documents. The Borrower is hereby authorized to borrow money and obtain DIP Letters of Credit pursuant to the DIP Credit Agreement, subject to any limitations on borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to pay certain costs, fees, and expenses related to the Chapter 11 Cases, to pay the Adequate Protection Payments, and to fund working capital and for general corporate purposes of the Loan Parties during the Chapter 11 Cases, in each case, subject to the Approved Budget (except as to Statutory Fees, as that term is defined in paragraph 6 below, which shall not be subject to any budget) and in accordance with the Interim Order, this Final Order and the DIP Documents, and the Guarantors are hereby

14

authorized to guaranty the DIP Obligations.  Notwithstanding anything in the DIP Credit

Agreement, the Borrower may only make Borrowings of DIP Term Loans that are

consistent with and limited to the draws set forth in the Approved Budget.

(b)    In furtherance of the foregoing and without further approval of the Court,

each Debtor is authorized to perform all acts, to make, execute, and deliver all

instruments, certificates, agreements, and documents (including, without limitation, the

execution or recordation of security agreements, mortgages, and financing statements),

and to pay all fees in connection with or that may be reasonably required, necessary, or

desirable for the Loan Parties' performance of their obligations under or related to the

DIP Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, each of the

DIP Documents;

(ii)    the execution and delivery of, and performance under, one or more

amendments, waivers, consents, or other modifications to and under the DIP

Documents, in each case, in such form as the Loan Parties, the DIP Agent and the

requisite DIP Lenders may agree, it being understood that no further approval of

the Court shall be required for any authorizations, amendments, waivers,

consents, or other modifications to and under the DIP Documents (and any fees

and other expenses, amounts, charges, costs, indemnities, and other obligations

paid in connection therewith) that the Debtors represent are not material or

adverse to the Debtors and that do not (A) shorten the maturity of the extensions

of credit thereunder or increase the aggregate commitments or the rate of interest

payable thereunder, (B) increase existing fees or add new fees thereunder

15

(excluding, for the avoidance of doubt, any amendment, consent or waiver fee), or (C) shorten the case Milestones set forth in the DIP Credit Agreement; *provided*, however, that advance copies of such amendments, waivers, consents, or other modifications will be provided to the U.S. Trustee and the Committee, both of which shall have three business days to object on grounds that the proposed amendments, waivers, consents, or other modification are material and should be subject to court approval, upon notice to parties in interest.  Notwithstanding the foregoing as of the date hereof, the term Milestone in the DIP Credit Agreement shall be amended to extend the deadline for entry of the Final Order to 35 days after the Petition Date and shall be deemed satisfied by entry of this Final Order. The foregoing shall be without prejudice to the Loan Parties' right to seek approval from the Court of any modification or amendment to the DIP Credit Agreement or this Final Order on an expedited basis; and

(iii)    the performance of all other acts necessary, appropriate, or desirable under or in connection with the DIP Documents.

3.    *Roll-Up*.  Upon entry of this Final Order, all of the Prepetition Secured Debt was immediately, automatically and irrevocably deemed to have been converted into DIP Roll-Up Loans and is entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under the Interim Order, this Final Order and the DIP Documents, in each case subject to the terms and conditions set forth in the Interim Order, this Final Order, the DIP Documents and the reservation of rights of parties in interest in paragraph 20 below.  The DIP Roll-Up Loans shall be subject to the Challenge in paragraph 20 below and the effect of any successful Challenge of the DIP Roll-Up Loans shall be determined by the Court.

16

4.      *Release of DIP Secured Party Releasees.*  The release set forth in paragraph H hereof in favor of the DIP Secured Party Releasees is hereby approved on a final basis.

5.      *DIP Obligations.*  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and non-avoidable obligations of the Loan Parties, enforceable against each Loan Party thereto in accordance with the terms of the DIP Documents, the Interim Order and this Final Order as of the date of the entry of the Interim Order.  No obligation, payment, transfer or grant of security to the DIP Secured Parties under the DIP Documents, the Interim Order or this Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d), 544, 548, 549 or 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, claim, or counterclaim.

6.      *Carve-Out.*

(a)      As used in this Final Order, the **"Carve-Out"** shall mean a carve-out from the DIP Superpriority Claims, the DIP Liens, the 507(b) Claims, the Adequate Protection Liens and the Prepetition Liens, in an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the Carve-Out Trigger Notice, without being subject to any budget (collectively, the **"Statutory Fees"**); (ii) all reasonable fees and expenses incurred by a trustee and payable under section 726(b) of the Bankruptcy Code, in an aggregate amount not to exceed $50,000 (without regard to the Carve-Out Trigger Notice); (iii) to the extent allowed by final order

HW_US:74596792.1
#92083139v11

of the Court at any time and provided for in the Approved Budget, for the Debtors'
professionals and the Committee's professionals, respectively, all unpaid fees and
expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors
pursuant to section 327, 328, or 363 of the Bankruptcy Code or by the Committee,
pursuant to section 328 and 1103 of the Bankruptcy Code (collectively, the "**Professional
Persons**") at any time on or before (a) the date of delivery by the DIP Agent of a Carve-
Out Trigger Notice and (b) the Termination Date (as defined in the DIP Credit
Agreement) (such day, the "**Carve-Out Trigger Date**"), whether allowed by the Court
prior to or after the Carve-Out Trigger Date;  (iv) to the extent allowed by final order of
the Court, (a) Professional Fees incurred after the Carve-Out Trigger Date in an amount
not to exceed $1,500,000, of which $500,000 shall be expressly allocated to the
Professional Fees of the Committee incurred after the Carve-Out Trigger Date (the "**Post
Trigger Date Carve-Out Amount**"), *provided that* such Professional Fees of the
Committee shall be first paid from such $500,000 until such amount is exhausted prior to
being paid from the remaining Post Trigger Date Carve-Out Amount; *plus* (b) any
completion or sales fee and any divestiture fee (including, in each case, pursuant to credit
bid) that is earned and payable by the Debtors' pursuant to an engagement letter between
the Debtors and the Debtors' investment banker, Evercore, that is approved by the Court
(the "**Evercore Fees**");  *provided* that, other than in the event of a credit bid, such fees
shall be payable from the proceeds of the applicable asset sale or other transaction (the
"**Completion Fee Carve-Out Reserve**"); and (v) amounts held as of the Petition Date as
a retainer by the Professional Persons retained by the Debtors to be used to pay
Professional Fees allowed by final order of the Court (clauses (i) through (v),

18

collectively, the "**Carve-Out Amount**"), in each case subject to the limits imposed this Final Order. For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email by the DIP Agent to the Debtors' lead restructuring counsel, the U.S. Trustee, and counsel to any Committee, which notice may be delivered following the occurrence and during the continuation of an "Event of Default" under the DIP Documents and the acceleration of the DIP Obligations (an "**Event of Default**"), stating that the Post Trigger Date Carve-Out Amount has been invoked.

(b)     Prior to the occurrence of the Carve-Out Trigger Date, the Debtors are authorized (subject to the Approved Budget), for the Debtors' Professional Persons and the Committee's Professional Persons, respectively, to pay Professional Fees that are authorized to be paid in accordance with the provisions of the Bankruptcy Code and any order entered by the Court establishing procedures for the payment of compensation to Professional Persons in these Chapter 11 Cases, as the same may be due and payable, and such payments shall not reduce the Carve-Out Amount.

(c)     Upon the closing of the DIP Facility (the "**Closing**"), the Debtors shall deposit in a segregated non-interest bearing account (the "**Carve-Out Reserve**") the following amounts: (i) $1 million of the Post Trigger Date Carve-Out Amount; and (ii) an additional $1,000,000 for payment of pre-Carve-Out Trigger Date fees and expenses of Professional Persons as set forth in paragraph 6(a)(iii). Upon the closing of any sale or other transaction (i) upon which the Evercore Fees are earned and payable, the Debtors shall deposit or segregate cash in an amount equal to the Evercore Fees in the Completion Fee Carve-Out Reserve and (ii) the Debtors shall segregate cash into the Carve-Out Reserve in an amount equal to the Carve-Out Amount at the time of such closing *less* any

19

amounts already in the Carve-Out Reserve. No fees shall be paid to Evercore or any other professional retained in these cases by the Debtors or the Committee absent order of this Court approving a fee application on notice, except as otherwise expressly provided in any order this Court may enter regarding interim compensation procedures.

(d)     The Carve-Out Reserve and Completion Fee Carve-Out Reserve shall be held in a segregated non-interest bearing account maintained by the DIP Agent in trust to pay the Professional Fees and other obligations included in the Carve-Out, and the Carve-Out Reserve and Completion Fee Carve-Out Reserve shall be available only to satisfy such obligations benefiting from the Carve-Out until paid in full; *provided* that payment of any Evercore Fees or any other completion, sale or divestiture fees from the Carve-Out Reserve (other than from the Completion Fee Carve-Out Reserve) shall be subject and subordinate, and junior to payment of all other Professional Fees from the Carve-Out Reserve. The DIP Agent shall allow funds in the Carve-Out Reserve and Completion Fee Carve-Out Reserve to be released to pay obligations payable from the Carve-Out Reserve and Completion Fee Carve-Out Reserve, respectively, upon written instruction from the Debtors.

(e)     To the extent the Carve-Out Reserve and/or Completion Fee Carve-Out Reserve have not been reduced to zero after the payment in full of all obligations payable from the Carve-Out Reserve or Completion Fee Carve-Out Reserve, respectively, they shall be used to pay the DIP Agent for the benefit of the DIP Secured Parties until the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated. Notwithstanding anything to the contrary herein, the Prepetition Agent and the DIP Agent, each on behalf of itself and the relevant secured parties,

20

(y) shall not sweep or foreclose on the Carve-Out Reserve or Completion Fee Carve-Out Reserve prior to satisfaction in cash in full of all obligations included in the Carve-Out and (z) shall have a security interest upon any residual interests in the Carve-Out Reserve and/or Completion Fee Carve-Out Reserve, respectively, available following satisfaction in cash in full of all obligations included in the Carve-Out, and the priority of such liens on the residuals shall be consistent with this Final Order. Further, notwithstanding anything to the contrary herein, (A) the failure of the Carve-Out Reserve to satisfy in full the allowed Professional Fees shall not affect the priority of the Carve-Out and (B) in no way shall the Carve-Out, the Post Trigger Date Carve-Out Amount, the Carve-Out Reserve or Completion Fee Carve-Out Reserve, or any of the foregoing be construed as a cap or limitation on the amount of the allowed Professional Fees due and payable by the Debtors.

(f)        Notwithstanding anything to the contrary herein or in the DIP Documents, the Carve-Out shall be senior to, the DIP Superpriority Claims, the DIP Liens, the 507(b) Claims, the Adequate Protection Liens, the Prepetition Liens, and all other liens and claims granted under the Interim Order, this Final Order, the DIP Documents, or otherwise securing or in respect of the DIP Obligations or the Adequate Protection Obligations.

7.        *No Direct Obligation to Pay Allowed Professional Fees.*  Nothing in the Interim Order, this Final Order or otherwise shall be construed to obligate the Prepetition Secured Parties or the DIP Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

HW_US:74596792.1
#92083139v11

8.      *DIP Superpriority Claims.*  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Loan Parties (without the need to file any proof of claim) with priority over any and all administrative expense claims, priority claims and unsecured claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever specified in sections 503(b) and/or 507(b) of the Bankruptcy Code, including, without limitation, all administrative expenses or other claims arising under section 105, 328, 330, 331, 365, 503(b), 507(a) (other than 507(a)(1)), 507(b), 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and post-petition property of the Loan Parties and all proceeds thereof (excluding the Loan Parties' claims and causes of action under sections 502(d), 506(c), 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and similar statutes or common law (collectively, the "**Avoidance Actions**", which, for the avoidance of doubt, excludes Debtors' claims and causes of action under section 549 of the Bankruptcy Code or similar state or other applicable law and the proceeds of each of the foregoing), but including any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement, or otherwise ("**Avoidance Proceeds**"), subject to the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that

22

the Interim Order, this Final Order, or any provision hereof or thereof is vacated, reversed, or

modified, on appeal or otherwise. The DIP Superpriority Claims shall be *pari passu* in right of

payment with one another and senior to the Adequate Protection Claims; *provided* that the DIP

Superpriority Claims in respect of the DIP Roll-Up Loans shall be subject and subordinate to the

DIP Superpriority Claims in respect of the DIP Term Loans.

       9.    *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the

Petition Date and without the necessity of the execution, recordation or filing of mortgages,

security agreements, control agreements, pledge agreements, financing statements, notations on

certificates of title for titled goods or other similar documents, or the possession or control by the

DIP Agent of, or over, any and all tangible and intangible prepetition and post-petition property

of the Loan Parties, whether existing on the Petition Date or thereafter acquired including,

without limitation, any and all cash of the Loan Parties (whether maintained with the DIP Agent

or otherwise, except for the Carve-Out Reserve) and any investment of such cash, inventory,

accounts receivable, other rights to payment whether arising before or after the Petition Date,

contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents,

instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts,

patents, copyrights, trademarks, trade names, the proceeds of any and all commercial tort claims

of the Debtors of any kind or nature, including, but not limited to, proceeds of claims and

commercial tort claims against ETC Northeast Pipeline LLC and its affiliates, any claim or rights

under section 549 of the Bankruptcy Code, rights under license agreements and other intellectual

property, letter-of-credit rights, investment property and support obligations, all books and

records pertaining to the property described in this paragraph, all property of the Loan Parties

held by any DIP Secured Party, all other goods (including but not limited to fixtures) and

personal property of the Loan Parties, whether tangible or intangible and wherever located, Avoidance Proceeds, capital stock of subsidiaries, wherever located, and, to the extent not covered by the foregoing, all other assets or property of the Debtors, whether tangible, intangible, real, personal or mixed, and the proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than the Avoidance Actions, but including any Avoidance Proceeds (collectively, the "**DIP Collateral**"), the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to the Interim Order, this Final Order and the DIP Documents, the "**DIP Liens**"):

      (a)    <u>First Priority Lien on Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon DIP Collateral, that, on or as of the Petition Date, is not subject to a valid, perfected, and non-avoidable lien as of the Petition Date or perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code (collectively, "**Unencumbered Property**"), including, but not limited to Avoidance Proceeds.

      (b)    <u>Priming Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority priming security interest in and lien upon all DIP Collateral (wherever located and the proceeds, products, rents and profits thereof), subject and subordinate only to the Permitted Prior Liens, but senior in all respects to the Prepetition Liens, Adequate Protection Liens and all other

24

liens that are not Permitted Prior Liens (any such liens primed pursuant to this clause (b), the "**Primed Liens**");

(c)    <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all DIP Collateral immediately junior to Permitted Prior Liens.

(d)    <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents, in the Interim Order or this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board, or court for any liability of the Loan Parties, or (C) any intercompany or affiliate liens or security interests of the Loan Parties or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

(e)    <u>Relative Priority of DIP Liens</u>.  Notwithstanding anything to the contrary in the Interim Order or this Final Order, the DIP Liens in respect of the DIP Roll-Up Loans shall be subject and subordinate to the DIP Liens in respect of the DIP Term Loans in all respects.  The DIP Liens in respect of the DIP Roll-Up Loan shall only attach to the DIP Collateral to the extent that DIP Collateral constitutes Prepetition Collateral.  The DIP Liens in respect of the DIP Term Loans shall attach to all DIP Collateral, including, but not limited to, all Unencumbered Property.

25

(f)    For the avoidance of doubt, any DIP Liens on DIP Collateral relating to real property of the Debtors granted pursuant to this paragraph 9 shall include, for the ratable benefit of the related DIP Secured Parties, in each case to the extent constituting DIP Collateral, all of each Debtor's right, title and interest now or hereafter acquired in and to all land, together with the buildings, structure, and other improvements thereon, now or hereafter owned by any Debtor, including all easements, rights-of-way, and similar rights relating thereto and all leases, tenancies, and occupancies thereof, and (i) all goods, accounts, inventory, general intangibles, instruments, documents, contract rights and chattel paper, (ii) all reserves, escrows or impounds and all deposit accounts maintained by each Debtor with respect to such real estate, (iii) other than Permitted Prior Liens, all leases, licenses, concessions, occupancy agreements or other agreements (written or oral, now or at any time in effect) which grant to any person a possessory interest in, or the right to use, all or any part of such real estate, together with all related security and other deposits, (iv) all of the rents, revenues, royalties, income proceeds, profits, accounts receivable, security and other types of deposits, and other benefits paid or payable by parties to the leases for using, leasing, licensing possessing, operating from, residing in, selling or otherwise enjoying such real estate, (v) all other agreements, such as construction contracts, architects' agreements, engineers' contracts, utility contracts, maintenance agreements, management agreements, service contracts, listing agreements, guaranties, warranties, permits, licenses, certificates and entitlements in any way relating to the construction, use, occupancy, operation, maintenance, enjoyment or ownership of such real estate, (vi) all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, and appurtenances appertaining to the foregoing, (vii) all

26

property tax refunds payable with respect to such real estate, (viii) all accessions, replacements and substitutions for any of the foregoing and all proceeds thereof, (ix) all insurance policies, unearned premiums therefor and proceeds from such policies covering any of the above property now or hereafter acquired by each Debtor as an insured party, and (x) all awards, damages, remunerations, reimbursements, settlements or compensation heretofore made or hereafter to be made to any Debtor by any governmental authority pertaining to any condemnation or other taking (or any purchase in lieu thereof) of all or any such real estate.

10.    *Maintenance of Letters of Credit.*  The Prepetition Letters of Credit shall be deemed to have been cancelled and reissued as DIP Letters of Credit in their full undrawn amounts and without modification of the terms of the Prepetition Letters of Credit other than their deemed issuance as DIP Letters of Credit.

11.    *Automatic Stay.*

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the DIP Secured Parties to enforce all of their rights under the DIP Documents and (i) immediately upon the occurrence of an Event of Default, to declare (A) the termination, reduction, or restriction of any further DIP Commitment to the extent any such DIP Commitment remains and (B) all applicable DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties, and (ii) unless the Court orders otherwise during the Remedies Notice Period (as defined below), upon the occurrence of an Event of Default and the giving by the DIP Agent of five business days' prior written notice (which shall run concurrently with any

HW_US:74596792.1
#92083139v11

notice required to be provided under the DIP Documents) (the "**Remedies Notice Period**") delivered by email to the Debtors' lead restructuring counsel (with a copy by email to counsel to the Committee, and the U.S. Trustee) (the "**Remedies Notice**"), (A) to withdraw consent to the Loan Parties' continued use of any Cash Collateral and/or (B) to exercise all other rights and remedies provided for in the DIP Documents and under applicable law; *provided* that, during the Remedies Notice Period, the Loan Parties shall be permitted to continue to use Cash Collateral in the ordinary course of business (subject to the Approved Budget) and the Loan Parties or Committee may request an expedited hearing before the Court.  After delivery of the Remedies Notice and during and after the Remedies Notice Period, any payments proposed to be made by the Debtors in accordance with the Approved Budget shall be subject to prior review by the DIP Agent and its professionals and the DIP Agent may object to any proposed payment solely on the grounds that such payment is not in the ordinary course of business and is not included in the Approved Budget.

(b)     No rights, protections, or remedies of the DIP Secured Parties granted by the provisions of the Interim Order, this Final Order or the DIP Documents shall be limited, modified, or impaired in any way by (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral, (ii) any actual or purported termination of the Loan Parties' authority to continue to use Cash Collateral, or (iii) the terms of any other order or stipulation related to the Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

28

12.  *Payment of DIP Agent Fees and Expenses.* The Loan Parties shall make current cash payments of the reasonable and documented prepetition and post-petition fees and expenses incurred by the DIP Agent in connection with the Chapter 11 Cases in any manner (limited, in the case of the advisors to the DIP Agent, to Huron Consulting Group Inc., Hunton Andrews Kurth LLP, and Connolly Gallagher LLP and including the allocated costs (with no profit margin) of the DIP Agent's internal counsel in connection with the Chapter 11 Cases) promptly upon receipt of invoices therefor, which payments shall be made within 10 days (which time period may be extended by the applicable professional) after the receipt by the Debtors, the Committee, and the U.S. Trustee (the "**Review Period**") of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications, including such amounts arising before or after the Petition Date. The invoices for such Invoiced Fees shall include a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed (except for financial advisors compensated on other than an hourly basis) and, with respect to the invoices of law firms, the year of law school graduation for each attorney, as well as a summary description of services provided and a list of expenses incurred by the applicable professional firm. Such Invoiced Fees shall not be required to contain detailed time entries of any professional, provided, however, that the U.S. Trustee reserves the right to seek copies of invoices containing such detailed time entries; *provided further, however,* that any Invoiced Fees may be redacted to protect privileged, confidential, or proprietary information, provided that the U.S. Trustee reserves his right to seek to obtain unredacted copies of such invoices. The Debtors, the Committee, and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading setting forth the specific objections to

29

the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided* that payment of any undisputed portion of Invoiced Fees shall not be delayed based on any objections thereto.

13.    *Limitation on Charging Expenses Against Collateral.*  Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral) or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent or the Prepetition Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties, and nothing contained in the Interim Order or this Final Order shall be deemed to be a consent by the DIP Secured Parties or the Prepetition Secured Parties to any charge, lien, assessment, or claim against the DIP Collateral or Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise.

14.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Secured Parties pursuant to the provisions of the Interim Order, this Final Order or the DIP Documents shall be received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (whether asserted or assessed by, through, or on behalf of the Debtors) or section 552(b) of the Bankruptcy Code.

15.    *Use of Cash Collateral.*  The Debtors are hereby authorized, subject to the Approved Budget and the terms and conditions of this Final Order, to use all Cash Collateral.

30

16.    *Adequate Protection of Prepetition Secured Parties.*  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1), and 507(b) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties' prepetition security interests in the Prepetition Collateral from and after the Petition Date, excluding diminution in value caused solely as a result of the Prepetition Secured Debt being primed by the DIP Obligations, if any, for any reason provided for under the Bankruptcy Code, including, but not limited to, the Debtors' use, sale or lease of Cash Collateral and other Prepetition Collateral, the imposition of the automatic stay and/or the Carve-Out (the "**Adequate Protection Claims**").  In consideration of the foregoing, the Prepetition Secured Parties are hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a)    Adequate Protection Liens.  The Prepetition Agent (for itself and for the benefit of the Prepetition Lenders) is hereby granted (effective and perfected upon the Petition Date and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements, or other agreements), in the amount of its respective Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon (the "**Adequate Protection Liens**") the DIP Collateral (including, without limitation, the Avoidance Proceeds), which Adequate Protection Liens shall secure the Adequate Protection Claims, and subject and subordinate only to the Carve-Out, the DIP Liens, and the Permitted Prior Liens.

(b)    507(b) Claims.  The Prepetition Agent is granted, as of the Petition Date, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of its Adequate Protection Claims with, except as

31

set forth in the Interim Order or this Final Order, priority in payment over any and all administrative expense claims, priority claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of the kind specified in section 507(b) of the Bankruptcy Code, including but not limited to claims specified in sections 105, 328, 330, 331, 365, 503(b), 507(a)(other than section 507(a)(1)), 507(b), 1113 and 1114 (the "**507(b) Claims**"), which 507(b) Claims (subject to DIP Liens and DIP Superpriority Claims) shall have recourse to and be payable from all of the DIP Collateral (including, without limitation, the Avoidance Proceeds). The 507(b) Claims shall be subject and subordinate to the Carve-Out, the DIP Superpriority Claims, the DIP Liens, and the Permitted Prior Liens. Except to the extent expressly set forth in the Interim Order, this Final Order or the DIP Credit Agreement, the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and the DIP Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c)     <u>Adequate Protection Cash Payments</u>. Until entry of a Final Order approving the DIP Roll-Up Loans, and in each case subject to reallocation or recharacterization as payment of principal under section 506(a) and (b) of the Bankruptcy Code as may be ordered by the Court in connection with a timely and successful Challenge pursuant to paragraph 20 or 21 below, until the indefeasible discharge of the Prepetition Secured Debt, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, shall receive current payment in cash on the last business day of each month in an amount equal to the sum of all post-petition unpaid interest accruing on all outstanding

principal, interest, fees, and other amounts owing under the applicable Prepetition

Secured Debt (as of the Petition Date), in each case at the applicable default rate (the

payments in this subparagraph (c), the "**Adequate Protection Payments**").

   (d) <u>Prepetition Secured Parties Fees and Expenses</u>.  The Loan Parties shall

make current cash payments of the reasonable and documented prepetition and post-

petition fees and expenses incurred by the Prepetition Agent in connection with the

Chapter 11 Cases in any manner (limited, in the case of the advisors to the Prepetition

Secured Parties, to Huron Consulting Group Inc., Hunton Andrews Kurth LLP, and

Connolly Gallagher LLP, and including the allocated costs (with no profit margin) of the

Prepetition Lenders' internal counsel in connection with the Chapter 11 Cases) promptly

upon receipt of invoices therefor, which payments  shall be made in accordance with the

procedures set forth in paragraph 12 hereof with respect to payment of the fees and

expenses of the DIP Agent.

   (e) All Adequate Protection Liens and 507(b) Claims granted by the Interim

Order are subject to any appropriate remedy ordered by the Court, if and to the extent that

the underlying Prepetition Liens or Prepetition Claims of the Prepetition Secured Parties

are successfully challenged pursuant to paragraph 20 of the Interim Order.

   17. *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances

and given that the above-described adequate protection is consistent with the Bankruptcy Code,

including section 506(b) thereof, the Court finds that the adequate protection provided in the

Interim Order and herein is reasonable and sufficient to protect the interests of the Prepetition

Secured Parties; *provided* that any of the Prepetition Secured Parties may request further or

different adequate protection, and the Debtors or any other party may contest any such request.

33

18. *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    The DIP Agent, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent, on behalf of the DIP Secured Parties, or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination as of May 17, 2019. Upon the request of the DIP Agent, each of the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized (in the case of the Loan Parties) and directed (in the case of the Prepetition Secured Parties) to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve, and enforce the DIP Liens. All such documents shall be deemed to have been recorded and filed as of the Petition Date.

(b)    The Interim Order and this Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted in such orders,

34

including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over cash, deposit accounts, securities, or other assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Secured Parties to the priorities granted herein. Notwithstanding the foregoing, certified copies of the Interim Order and this Final Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copies of the Interim Order and this Final Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent and Prepetition Secured Parties to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

19.    *Preservation of Rights Granted Under the Interim Order and this Final Order.*

(a)    Other than the Carve-Out, Permitted Prior Liens and other claims and liens expressly granted by the Interim Order and this Final Order, no claim or lien having a priority superior to or that is *pari passu* with those granted by the Interim Order or this Final Order to the DIP Secured Parties or the Prepetition Secured Parties, respectively, shall be permitted while any of the DIP Obligations or the Adequate Protection

HW_US:74596792.1
#92083139v11

Obligations remain outstanding, and, except as otherwise expressly provided in the

Interim Order or this Final Order, the DIP Liens and the Adequate Protection Liens shall

not be (i) subject or junior to any lien or security interest that is avoided and preserved for

the benefit of the Loan Parties' estates under section 551 of the Bankruptcy Code,

(ii) subordinated to or made *pari passu* with any other lien or security interest, whether

under section 364(d) of the Bankruptcy Code or otherwise, (iii) subordinated to or made

*pari passu* with any liens arising after the Petition Date, including, without limitation, any

liens or security interests granted in favor of any federal, state, municipal, or other

domestic or foreign governmental unit (including any regulatory body), commission,

board, or court for any liability of the Loan Parties, or (iv) subject or junior to any

intercompany or affiliate liens or security interests of the Loan Parties.

(b)     Notwithstanding any order that may be entered converting any of the

Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of

the Chapter 11 Cases under section 1112 of the Bankruptcy Code or that otherwise is at

any time entered, (i) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens, and

the Adequate Protection Liens shall continue in full force and effect and shall maintain

their priorities as provided in the Interim Order or this Final Order until all DIP

Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full

in cash (and such DIP Superpriority Claims, 507(b) Claims, DIP Liens, and Adequate

Protection Liens shall, notwithstanding such dismissal or conversion, remain binding on

all parties in interest), (ii) the other rights granted by the Interim Order or this Final Order

shall not be affected, and (iii) the Court shall retain jurisdiction, for the purposes of

HW_US:74596792.1
#92083139v11

enforcing the claims, liens and security interests referred to in this paragraph 19 and otherwise in the Interim Order or this Final Order.

(c)     If any or all of the provisions of the Interim Order (except such provisions of the Interim Order as have been modified by this Final Order) or this Final Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay or (ii) the validity, priority, or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacatur, or stay of any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Loan Parties to the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of the Interim Order or this Final Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, the Interim Order, this Final Order and the DIP Documents.

(d)     Except as expressly provided in the Interim Order, this Final Order or in the DIP Documents, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the 507(b) Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the

37

Prepetition Secured Parties granted by the provisions of the Interim Order, this Final Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by the entry of an order (i) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other act or omission, (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents), or (iii) confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of the Interim Order, this Final Order and the DIP Documents shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the 507(b) Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of the Interim Order, this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the Commitments have been terminated.

20.     *Effect of Stipulations on Third Parties.*

(a)     The Debtors' stipulations, admissions, agreements and releases contained in the Interim Order (other than releases with respect to the DIP Secured Party Releasees,

HW_US:74596792.1
#92083139v11

which releases are binding upon all parties upon entry of the Interim Order) and this Final

Order shall be binding upon (i) the Debtors and their estates, in all circumstances and for

all purposes and (ii) all other parties in interest, including, without limitation, any

statutory or non-statutory committees appointed or formed in the Chapter 11 Cases

(including the Committee) and any other person or entity acting or seeking to act on

behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner

appointed or elected for any of the Debtors, in all circumstances and for all purposes

unless (A) such committee or any other party in interest (subject in all respects to any

agreement or applicable law that may limit or affect such entity's right or ability to do

so), in each case, with standing granted by the Court, has timely filed an adversary

proceeding (subject to the limitations contained herein, including, *inter alia*, in this

paragraph 20) (1) objecting to or challenging the amount, validity, perfection,

enforceability, priority, or extent of the Prepetition Secured Debt or the Prepetition Liens

or (2) otherwise asserting or prosecuting any action for preferences, fraudulent transfers

or conveyances, other avoidance power claims or any other claims, counterclaims or

causes of action, objections, contests, or defenses (collectively, a "**Challenge**") against

the Prepetition Secured Parties or their respective subsidiaries, affiliates, officers,

directors, managers, principals, employees, agents, financial advisors, attorneys,

accountants, investment bankers, consultants, representatives, and other professionals and

their respective successors and assigns thereof, in each case in their respective capacity as

such (each, a "**Representative**" and, collectively, the "**Representatives**") in connection

with matters related to any claims of the Debtors against the Prepetition Secured Parties,

the Prepetition Loan Documents, the Prepetition Secured Debt, the Prepetition Liens, the

39

Prepetition Collateral, or otherwise, *provided* that all pleadings filed in connection with a Challenge shall set forth the basis for such challenge or claim, (B) such Challenge has been filed prior to the latest of (1) (Y) with respect to parties in interest (other than the Committee), July 31, 2019 and (Z) with respect to the Committee, August 14, 2019, (2) any such later date as has been agreed to, in writing, by the Prepetition Agent, and (3) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable time period set forth in this paragraph 20 (the time period established by the foregoing clauses (1) through (3), the "**Challenge Period**"), provided, however, that if any of the Debtors' cases convert to a Chapter 7, or if a Chapter 11 trustee is appointed, *prior to* the expiration of the Challenge Period, the Challenge Period shall be extended for the Chapter 7 or Chapter 11 trustee to 40 days after their appointment; and (C) there is a final non-appealable order sustaining such Challenge in favor of the plaintiff in such timely filed adversary proceeding or contested matter.  Any Challenge not so specified and filed prior to the expiration of the Challenge Period shall be deemed forever, waived, released, and barred.

(b)     If no such Challenge is filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then (i) the Debtors' stipulations, admissions, agreements, and releases contained in the Interim Order and this Final Order shall be binding on all parties in interest, including, without limitation, the Committee, (ii) the obligations of the Loan Parties under the Prepetition Loan Documents, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset, or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s), (iii) the

40

Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense, (iv) the Prepetition Secured Debt and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, any trustee or examiner with enlarged powers appointed or elected in any of the Chapter 11 Cases or any subsequent chapter 7 case of the Debtors or any other party in interest acting or seeking to act on behalf of the Debtors' estates, and (v) any defenses, claims, causes of action, counterclaims, and offsets by the Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to the any claims of the Debtors against the Prepetition Secured Parties, the Prepetition Loan Documents or otherwise shall be deemed forever waived, released, and barred.  If any such Challenge is filed during the Challenge Period, the stipulations, admissions, agreements, and releases contained in the Interim Order and this Final Order shall nonetheless remain binding and preclusive (as provided in this subparagraph (b)) on the Committee, and on any other person or entity, except to the extent that such stipulations, admissions, agreements, and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of the Court or any other court of competent jurisdiction.  Nothing in the Interim Order or this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, or any non-statutory committees appointed

41

or formed in the Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Loan Documents, the Prepetition Secured Debt or the Prepetition Liens, or claims, counterclaims or causes of action of the Debtors against any Prepetition Secured Party.

(c)      With respect to the Committee only, the filing by the Committee of a standing motion or other application (collectively, a "**Standing Motion**") for authority and/or standing to commence a Challenge accompanied with a copy of the proposed complaint (the "**Proposed Complaint**") which details the alleged Challenge which the Committee seeks to pursue shall automatically extend the Challenge Period for the Committee only (provided such Standing Motion and Proposed Complaint are filed on or before expiration of the Challenge Period for the Committee), solely with respect to the Challenges subject to such Standing Motion and Proposed Complaint. The timely filing by the Committee of a Standing Motion before expiration of the Challenge Period for the Committee shall automatically extend the Challenge Period for the Committee solely for the matters raised in the Proposed Complaint until the date that is the third business day after the Court issues a ruling on such Standing Motion. The Committee agrees that any hearing on the Standing Motion shall be held within fourteen (14) days of filing of the Standing Motion unless otherwise agreed in writing by the Debtors and the DIP Agent. The Committee shall not use the pendency of its Challenge Period or any Standing Motion as a basis for objecting to the Milestones with respect to the sale process set forth in the DIP Credit Agreement.

HW_US:74596792.1
#92083139v11

21.     *Limitation on Use of DIP Financing Proceeds and Collateral.*  Notwithstanding anything herein, in the Interim Order or in any other order entered by the Court to the contrary, no proceeds of the DIP Facility, DIP Collateral, Prepetition Collateral (including Cash Collateral), or the Carve-Out may be used (a) for Professional Fees incurred for (i) any litigation or threatened litigation (whether by contested matter, adversary proceeding, or otherwise, including any investigation in connection with litigation or threatened litigation) against any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties or for the purpose of objecting to or challenging the validity, perfection, enforceability, extent, amount or priority of any claim, lien, or security interest held or asserted by any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties or (ii) asserting any defense, claim, cause of action, counterclaim, or offset with respect to the DIP Obligations, the Prepetition Secured Debt (including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise), the DIP Liens, or the Prepetition Liens or against any of the Prepetition Secured Parties or their respective Representatives, (b) to prevent, hinder, or otherwise delay any of the DIP Agent's or the Prepetition Secured Parties' assertion, enforcement, or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Loan Documents, the Interim Order or this Final Order other than to seek a determination that an Event of Default has not occurred or is not continuing, or in connection with a remedies hearing, (c) to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under the Interim Order, this Final Order or under the DIP Documents or the Prepetition Loan Documents, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole discretion, or (d) to

HW_US:74596792.1
#92083139v11

pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of the Court (including, without limitation, hereunder); *provided* that notwithstanding anything to the contrary in the Interim Order or this Final Order, the Committee, may use the proceeds of the DIP Collateral (including Cash Collateral), and/or the Carve-Out to investigate (but not prosecute or initiate the prosecution of, including the preparation of any complaint or motion on account of) prior to (but not after) the delivery of a Carve-Out Trigger Notice, (y) the claims and liens of the Prepetition Secured Parties, and (z) potential claims, counterclaims, causes of action, or defenses against the Prepetition Secured Parties; *provided further* that no more than an aggregate of $300,000 of the proceeds of the DIP Collateral (including Cash Collateral) and/or the Carve-Out may be used by the Committee, in respect of the investigations set forth in the preceding proviso (the "**Investigation Budget**").

     22.    *Binding Effect; Successors and Assigns.* The DIP Documents and the provisions of the Interim Order and this Final Order, including all findings therein and herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided* that the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall have no obligation to permit the use of the DIP Collateral or

HW_US:74596792.1
#92083139v11

Prepetition Collateral (including Cash Collateral) or to extend any financing to any chapter 7

trustee, chapter 11 trustee, or similar responsible person appointed for the estates of the Debtors.

23.     *Limitation of Liability.*  In determining to make any loan or other extension of

credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any

rights or remedies as and when permitted pursuant to the Interim Order, this Final Order or the

DIP Documents, the DIP Agent and the DIP Lenders (and the Prepetition Secured Parties in

respect of the use of Cash Collateral) shall not (a) be deemed to be in "control" of the operations

of the Debtors, (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders,

or estates, or (c) be deemed to be acting as a "Responsible Person," "Owner," or "Operator" with

respect to the operation or management of the Debtors, so long as the DIP Agent's and the DIP

Lenders' actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual

participation in the management or operational affairs of a vessel or facility owned or operated

by a Debtor, or otherwise cause liability to arise to the federal or state government or the status

of "responsible person" or "managing agent" to exist under applicable law (as such terms or

similar terms are used in the United States Comprehensive Environmental Response,

Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal

or state statute).

24.     *Inapplicability of Bar Date; Master Proof of Claim.*  Any order entered by the

Court establishing a bar date for any claims (including, without limitation, administrative claims)

in any of the Chapter 11 Cases or any subsequent chapter 7 case of any of the Debtors shall not

apply to any DIP Secured Party or any Prepetition Secured Party. The DIP Secured Parties and

the Prepetition Secured Parties shall not be required to file proofs of claim or requests for

allowance and payment of administrative expenses authorized by the Interim Order or this Final

HW_US:74596792.1
#92083139v11

Order in any of the Chapter 11 Cases or any subsequent chapter 7 case of any of the Debtors. The provisions of the Interim Order or this Final Order relating to the amount and/or priority of the DIP Loans, the Prepetition Secured Debt, the Adequate Protection Claims, the Adequate Protection Liens, any Adequate Protection Obligations pursuant to the Interim Order or this Final Order, the Prepetition Liens, the DIP Liens, the DIP Superpriority Claims and the Adequate Protection Liens shall constitute a sufficient and timely filed proof of claim and/or administrative expense request in respect of such obligations and such secured status. However, in order to facilitate the processing of claims, to ease the burden upon the Court, and to reduce an unnecessary expense to the Debtors' estates, the Prepetition Agent is authorized to, but not required to, file in the Debtors' lead Chapter 11 Case *In re EdgeMarc Energy Holdings, LLC, et al.,* Case No. 19-11104 (BLS), a single, master proof of claim on behalf of the Prepetition Secured Parties, on account of any and all of their respective claims arising under the applicable Prepetition Loan Documents and hereunder (each, a **"Master Proof of Claim"**) applicable against each of the Debtors.  Upon the filing of a Master Proof of Claim, the Prepetition Agent and the Prepetition Secured Parties, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Loan Documents, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of the Chapter 11 Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the

46

claims asserted therein resulting from the transfer of all or any portion of such claims. Nothing in the Interim Order or this Final Order shall waive the right of any DIP Secured Party or any Prepetition Secured Party to file its own proof of claim against any of the Debtors. The provisions of this paragraph 24 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in the Chapter 11 Cases. The Master Proofs of Claim shall not be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements, or other documents will be provided upon reasonable written request to counsel to the Prepetition Agent.

25. *Insurance*. To the extent that the Prepetition Agent or any Prepetition Lender is listed as loss payee or additional insured under any of the Borrower's or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee or additional insured, as applicable, under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, *first*, to the payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted), and *second*, to the payment of the applicable Prepetition Secured Debt.

26. *Approved Budget Reservation of Rights*. The Court may change the allocation of the fees and expenses of the Debtors' professionals, the Committee's professionals and the DIP Lenders' professionals provided for in the Approved Budget (and as stated on the record at the Final Hearing), either sua sponte or at the request of the Debtors and/or the Committee, and the rights of the DIP Agent, Debtors and Committee with respect to any change or any requested change to such allocation of fees and expenses are reserved.

47

27.    *Effectiveness.*  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rule 4001(a)(3), 6004(h), 7062, or 9014, any Local Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

28.    *Headings.*  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

29.    *Payments Held in Trust for the DIP Agent and DIP Lenders.*  Except as expressly permitted in the Interim Order, this Final Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral, or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such person, or entity shall be deemed to have received, and shall hold, such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by the Court, for application in accordance with the DIP Documents and this Final Order.

30.    *Disposition of DIP Collateral.*  Unless the DIP Obligations and the Prepetition Secured Debt are indefeasibly paid in full, in cash, upon the closing of a sale or other disposition of the DIP Collateral or Prepetition Collateral, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or any Prepetition Collateral

48

(or enter into any binding agreement to do so) (other than (x) the sale of crude oil, natural gas, or other hydrocarbons in the ordinary course of business, (y) other transactions permitted under the DIP Documents or (z) transactions for an aggregate consideration of less than $500,000) without the prior written consent of the DIP Agent and, solely with respect to the Prepetition Collateral, the Prepetition Agent, in each case such consent not to be unreasonably withheld (and no such consent shall be implied from any other action, inaction, or acquiescence by any DIP Secured Party or Prepetition Secured Party or any order of this Court), except as permitted in the DIP Documents and/or the Prepetition Loan Documents, as applicable, and/or the Interim Order. Except to the extent otherwise expressly provided in the DIP Documents or the Interim Order and subject to the Carve-Out, all proceeds from the sale, transfer, lease, encumbrance, or other disposition of any DIP Collateral (other than the sale of crude oil, natural gas, or other hydrocarbons in the ordinary course of business) shall be remitted to the DIP Agent for application to the DIP Obligations and then to the Prepetition Secured Debt, in each case, in accordance with the terms of the Interim Order and the DIP Documents or the Prepetition Loan Documents, as the case may be.

31.    *Credit Bidding.*  The DIP Secured Parties shall have the right to credit bid, in accordance with the DIP Documents and subject to the Carve-Out, up to the full amount of the DIP Obligations in any sale of the Prepetition Collateral, in each case pursuant to section 363(k) of the Bankruptcy Code and subject to any successful Challenge regarding the DIP Roll-Up Loans, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code or otherwise.  Subject to paragraph 20 hereof and section 363(k) of the Bankruptcy Code, each of the Prepetition Secured Parties shall have the

right to credit bid up to the full amount of the applicable Prepetition Secured Debt. The Debtors shall pay the fees and expenses of the DIP Secured Parties and Prepetition Secured Parties in connection with any such credit bid, subject to the procedures set forth in paragraph 12 hereof.

32. *No Marshalling.* In no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or Prepetition Collateral, *provided* that the DIP Secured Parties shall first satisfy the DIP Obligations from the Proceeds of DIP Collateral other than Avoidance Proceeds and the proceeds of estate claims (including, but not limited to claims against ETC Northeast Pipeline LLC and its affiliates) (the "**Potential Estate Claims**") before satisfying the DIP Obligations from Avoidance Proceeds and the proceeds of Potential Estate Claims, *provided further* the foregoing limited marshalling in this sentence shall not apply to the Potential Estate Claims if such Potential Estate Claims are determined to be Prepetition Collateral . For the avoidance of doubt, whether or not a Potential Estate Claim constitutes Prepetition Collateral is not an issue subject to the Challenge provisions contained in this Final Order. The DIP Secured Parties and the Prepetition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

33. *Reporting.* The Committee shall be entitled to receive copies of any financial or other reports required to be prepared by the Debtors pursuant to the DIP Credit Agreement within one (1) business day of delivery by the Debtors of such reports to the DIP Agent.

34. *Reservation of rights for Anchor Drilling Fluids USA, LLC and B&L Pipeco Services, Inc., and Phoenix Technology Services USA, Inc.* Nothing in this Final Order is intended to change or otherwise modify the prepetition priority of the statutory liens and all other rights and/or claims of Anchor Drilling Fluids USA, LLC ("**Anchor**"), B&L Pipeco Services,

50

Inc. ("**B&L Pipeco**") or Phoenix Technology Services USA, Inc. ("**Phoenix**"), all of which rights are hereby expressly preserved. To the extent Anchor, B&L Pipeco or Phoenix has a valid, enforceable, nonavoidable and perfected, including as permitted by section 546(b) of the Bankruptcy Code, prepetition Lien on any DIP Collateral and such Lien is junior in priority to the Prepetition Liens, Anchor, B&L Pipeco and Phoenix reserve their rights and nothing in this Final Order limits their rights, to request adequate protection equal to the diminution in value (if any) of Anchor, B&L Pipeco or Phoenix's interest in such collateral  and without prejudice to the right of the Debtors or any other party in interest to contest such request; *provided, however*, that in connection with any such request and any determination of whether adequate protection should be awarded, Anchor, B&L Pipeco and Phoenix shall not be prejudiced by anything in this Final Order nor shall this Final Order prevent or otherwise prejudice Anchor, B&L Pipeco or Phoenix's rights to seek the equitable remedy of "marshalling" or any similar remedy or doctrine with respect to the DIP Collateral or the Prepetition Collateral, with the Debtors, DIP Agent and any other party in interest reserving their rights regarding same.  For the avoidance of doubt, any lien of Anchor, B&L Pipeco or Phoenix that is not a Permitted Prior Lien is being primed pursuant to this Final Order.

35.    *Reservation of Rights for U.S. Specialty Insurance Company.*  Notwithstanding anything in the Interim Order or this Final Order to the contrary, nothing in this Final Order shall in any way affect the rights of U.S. Specialty Insurance Company or its past, present or future parents, subsidiaries or affiliates (the "Surety") as to (a) any funds it is holding and/or being held for it, whether in trust, as security or otherwise;  (b) any substitutions or replacements of said funds including accretions to and interest earned on said funds; and (c) any letters of credit related to any indemnity, collateral trust, bond or related agreements between the Surety and any

51

of the Debtors (collectively, (a) to (c), the "Surety Assets") and all rights of the Debtors, the DIP

Agent, and the Prepetition Agent and Committee are expressly reserved and preserved regarding

same. Nothing in the Interim Order or this Final Order shall affect the rights of the Surety under

any current and future indemnity, collateral trust, or related agreements between or involving any

of the Debtors as to the Surety Assets or otherwise and the Debtors, Prepetition Agent, DIP

Agent and Committee reserve all rights regarding same. In addition, nothing in the Interim

Order or this Final Order shall prime or otherwise impact: (x) current or future setoff and/or

recoupment rights and/or the lien rights of the Surety (to the extent the Surety is a holder of

Permitted Prior Lien) or of any party to whose rights the Surety has or may become subrogated

(to the extent such rights would qualify as a Permitted Prior Lien, including if and to the extent

such rights are granted priming lien status or other priming status under applicable law); and/or

(y) any existing or future subrogation or other common law rights of the Surety, and the Debtors,

Prepetition Agent, DIP Agent and Committee reserve all of their rights. In addition,

notwithstanding anything in this Final Order to the contrary, the rights, claims and defenses of

the Debtors and of the Surety, including, but not limited to, the Surety's rights under any

properly perfected liens and claims and/or claim for equitable rights of subrogration, and the

rights of the Debtors, the DIP Agent, the Prepetition Agent and the Committee to object to any

such liens, claims and/or equitable subrogation or other rights are fully preserved. Nothing

herein is an admission by the Surety or the Debtors, or a determination by the Bankruptcy Court,

regarding any claims under any bonds, and the Surety, Debtors, the Prepetition Agent, the DIP

Agent and the Committee reserve any and all rights, remedies and defenses in connection

therewith.

HW_US:74596792.1
#92083139v11

36.    *Reservation of Rights of Eureka Midstream, LLC f/k/a Eureka Hunter Pipeline, LLC and EQM Gathering OPCO, LLC.*  Nothing in this Final Order or the DIP Documents is intended to, or shall have the effect of voiding, changing or otherwise modifying (i) the terms of the contract provisions of the GGSA (as defined below) or (ii) the rights of any parties-in-interest with respect to a dedication interest or covenants created by or arising under a gas gathering contract or other real property interest under applicable law, and all parties' rights shall be reserved with respect to the foregoing.  Nothing included in the DIP Documents or this Final Order shall be deemed to be a determination of the validity, nature, extent, perfection, priority, avoidability, enforceability or effectiveness of any right, including contractual rights and rights of set-off and recoupment, covenants, claims, liens, interest or benefits that Eureka Midstream, LLC f/k/a Eureka Hunter Pipeline, LLC and EQM Gathering OPCO, LLC or any of their affiliates (collectively, "Eureka"), including, but not limited to, those (if any) that were granted to Eureka pursuant to (a) that certain Gas Gathering Services Agreement between EM Energy Ohio, LLC and Eureka Hunter Pipeline, LLC, dated March 27, 2015 (the "GGSA") (b) any other agreement or contract between or among Eureka and any Debtor or (c) any state or federal law, and all parties' claims, defenses and rights shall be reserved with respect to the foregoing.

37.    *Bankruptcy Rules.*  The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

38.    *Necessary Action.*  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

39.    *Retention of Jurisdiction.*  The Court shall retain jurisdiction to implement, interpret and enforce the provisions of the Interim Order, and this retention of jurisdiction shall

53

survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors.

40.   *Inconsistency.*  In the event of any inconsistency between the terms and conditions of the DIP Documents, the Interim Order or this Final Order, the provisions of this Final Order shall govern and control.

41.   The Debtors shall promptly serve copies of this Final Order on the parties having been given notice of the Final Hearing, including the Debtors' largest 20 unsecured creditors on a consolidated basis, as well as all parties known to the Debtors to be asserting liens against or security interest in, any of the Prepetition Collateral, DIP Collateral or reclamation claims; the Internal Revenue Service; all state taxing authorities in the states in which the Debtors have any tax liabilities; the Environmental Protection Agency and state environmental regulatory authorities in the states in which the Debtors operate, and any other federal or state regulatory authorities governing the Debtors' industry; the U.S. Attorney's Office; the Delaware Attorney General; the United States Trustee; to any party that has filed a request for notices with the Court; and to the Committee after the same has been appointed, or such Committee's counsel, if the same shall have been appointed.

Dated:   June 18, 2019
Wilmington, Delaware

JUDGE BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

54