## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>EDGEMARC ENERGY HOLDINGS, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-11104 (JTD)<br><br>(Jointly Administered)<br><br>**Ref. Nos. 247, 329, 401 & 443** |

## ORDER (I) DESIGNATING STALKING HORSE BIDDER, (II) APPROVING BID PROTECTIONS, AND (III) GRANTING RELATED RELIEF

In accordance with the *Order (i) Approving Bidding Procedures for Sale of Debtors' Assets, (ii) Setting Procedures to Seek Stalking Horse Bid Protections, (iii) Scheduling Auction for, and Hearing To Approve Sale of Debtors' Assets, (iv) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (v) Approving Assumption and Assignment Procedures and (vi) Granting Related Relief*, [D.I. 247] (as amended by the *Order Approving Amended Bidding Procedures for Sale of Debtors' Assets* [D.I. 329], the "**Bidding Procedures Order**")[2] approving, among other things, bidding procedures for the sale of any or all of the Debtors' assets; and upon consideration of the *Notice of Designation of Stalking Horse Bidder for Monroe/Washington Assets and Request for Approval of Stalking Horse Bid Protections* [D.I. 401] (the "**Notice of Stalking Horse Bid**") and the relevant terms and conditions of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: EdgeMarc Energy Holdings, LLC (6900), EM Energy Manager, LLC (5334), EM Energy Employer, LLC (8026), EM Energy Ohio, LLC (6935), EM Energy Pennsylvania, LLC (1541), EM Energy West Virginia, LLC (3771), EM Energy Keystone, LLC (7506), EM Energy Midstream Ohio, LLC (1268) and EM Energy Midstream Pennsylvania, LLC (3963). The Debtors' corporate headquarters and mailing address is 1800 Main Street, Suite 220, Canonsburg, PA 15317.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Stalking Horse Agreement.

the *Asset Purchase Agreement*, by and among EdgeMarc Energy Holdings, LLC, the EM Subsidiaries and Diversified Gas and Oil Corporation (the "**Stalking Horse Agreement**") appended thereto; and the Court having jurisdiction to consider the matters raised in the Notice of Stalking Horse Bid pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of this matter being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Bidding Procedures Order and the Notice of Stalking Horse Bid having been provided; and such notice having been adequate and appropriate under the circumstances; [and no objections to the Notice of Stalking Horse Bid having been filed;] and the Court having determined that the relief granted herein is in the best interests of the Debtors and their estates; and upon all of the proceedings had before the Court, and after due deliberation and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Notice of Stalking Horse Bid is hereby granted as set forth herein.

2.      All objections to the Notice of Stalking Horse Bid that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.      The Debtors are authorized to enter into the Stalking Horse Agreement with the Stalking Horse Bidder, subject to the terms and conditions set forth therein, in the Bidding Procedures Order, and this Order.

4.      In accordance with the Bidding Procedures Order, upon entry of this Order, each bid for the Monroe/Washington Assets will only constitute a Qualified Bid if the consideration provided equals at least **$52,250,000.00**, representing: (a) $50,000,000.00, the Unadjusted Purchase Price set forth in the Stalking Horse Agreement; *plus* (b) $2,000,000.00, the aggregate maximum amount of the Bid Protections; *plus* (c) a Minimum Overbid of $250,000.00.  If an Auction is required in accordance with the Bidding Procedures, the Stalking Horse Bidder shall receive a credit of $2,000,000, representing the aggregate amount of the Bid Protections, in each round of bidding.  For example, if at the Auction a Subsequent Bid submitted by the Stalking Horse Bidder is the Successful Bid (over another Qualified Bid that was submitted), then the purchase price that must be paid by the Stalking Horse Bidder pursuant to such Successful Bid shall be reduced by the amount of the Break-up Fee & Expense Reimbursement (such that the net amount received by the Debtors in respect of such Subsequent Bid submitted by the Stalking Horse Bidder shall be treated as the highest amount bid by any Qualified Bidder).

5.      Until paid, any Break-Up Fee or Expense Reimbursement due and owing under the terms and conditions set forth in the Stalking Horse Agreement, the Bidding Procedures Order and this Order shall constitute an allowed administrative expense claim arising in the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

6.      The Debtors are authorized to pay the Break-Up Fee and Expense Reimbursement as provided in the Stalking Horse Agreement, subject to the terms and conditions set forth therein, in the Bidding Procedures Order and this Order.  To the

extent the Break-Up Fee and Expenses Reimbursement become payable to the Buyer pursuant to section 12.03 of the Stalking Horse Agreement, the Break-Up Fee and Expense Reimbursement shall be payable from the first proceeds received by the Debtors from the Alternative Transaction (as defined in the Stalking Horse Agreement) upon consummation of such Alternative Transaction in priority to any other payments from proceeds of the Alternative Transaction.  To the extent the Expense Reimbursement becomes payable to the Buyer pursuant to 12.03 of the Stalking Horse Agreement, the Expenses Reimbursement shall be paid within five Business Days of termination of the Stalking Horse Agreement as set forth in 12.03(a)(3) of the Stalking Horse Agreement by the Debtors.  All such expenses to be reimbursed must be documented, with such documentation provided to the Debtors, the Committee and the US Trustee, who will have a 10-day review period.  If there is an objection to any portion of the fees during that time, the portion objected to will not be paid until the objection is resolved consensually or by the Court.

7.     The Stalking Horse Bidder shall constitute a Qualified Bidder, with respect to the Monroe/Washington Assets, for all purposes and in all respects with regard to the Auction, the Bidding Procedures Order, and the overall bidding process.

8.     To the extent the Deposit Amount held in the Trust Account (each as defined in the Stalking Horse Agreement) at Landis Rath & Cobb LLP is released to the Debtors, such Deposit Amount shall be placed into one of the Debtors' accounts at KeyBank, National Association.

9.     Entry of this Order shall not prejudice the relief set forth in the Bidding Procedures Order, unless explicitly stated herein.

10.     Nothing in this Order shall (a) impair the right of any party to file a claim against the Debtors or to assert that any claim against the Debtors is secured by a mechanic's, materialman's or other lien or (b) constitutes a determination by the court that an agreement of Halliburton Energy Services, Inc. listed on any schedule to the Stalking Horse Agreement constitutes an executory contract or unexpired lease. In determining the secured status of any claim against the Debtors with a lien against the Assets, the Allocation (as defined in the Stalking Horse Agreement) shall not be binding on any party other than the parties to the Stalking Horse Agreement.

11.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

12.     Proper, timely, adequate, and sufficient notice has been provided with respect to the designation of the Stalking Horse Bidder and Bid Protections in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules, and no other or further notice shall be required.

13.     To the extent this Order is inconsistent with the terms of the Stalking Horse Agreement, this Order shall govern.

14.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Dated: August 6th, 2019**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**