# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:

EDGEMARC ENERGY HOLDINGS, LLC, *et al.*,

Debtors.[1]

Chapter 11

Case No. 19-11104 (JTD)

(Jointly Administered)

Ref. No. 247, 329, 401, 443, 444 and 497

## ORDER (A) APPROVING SALE OF DEBTORS' MONROE/WASHINGTON ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] filed on May 15, 2019 [D.I. 19] of EdgeMarc Energy Holdings, LLC and its subsidiaries that are debtors and debtors in possession (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for, *inter alia*, entry of an order, pursuant to sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002-1, 6004-1, and 9006-1, and Rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") *(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: EdgeMarc Energy Holdings, LLC (80-0766900), EM Energy Manager, LLC (30-0745334), EM Energy Employer, LLC (80-0838026), EM Energy Ohio, LLC (80-0846935), EM Energy Pennsylvania, LLC (38-3881541), EM Energy West Virginia, LLC (90-0883771), EM Energy Keystone, LLC (82-0857506), EM Energy Midstream Ohio, LLC (46-3841268), EM Energy Midstream Pennsylvania, LLC (46-3843963). The Debtors' corporate headquarters and mailing address is 1800 Main Street, Suite 220, Canonsburg, PA 15317.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the that certain Asset Purchase Agreement, dated July 24, 2019, by and among EdgeMarc Energy Holdings, LLC, the EM Subsidiaries, and Diversified Gas and Oil Corporation (the "**Purchase Agreement**"), a copy of which is attached hereto as Exhibit A, the Motion, or the Bidding Procedures Order (as defined herein), as applicable.

*Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* and this Court having entered an order on June 21, 2019 [D.I. 247], as amended by an order on July 12, 2019 [D.I. 329] (together, the "**Bidding Procedures Order**") approving the Bidding Procedures in connection with the Sale of all or substantially all of the Debtors' assets and attached as **<u>Exhibit 1</u>** to the Bidding Procedures Order (the "**Bidding Procedures**"), including, among other things, the proposed form of notice of the Sale Hearing; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the *Declaration of Elliot Ross in Support of the Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving Stalking Horse Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests*

*and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* (the "**Ross Declaration**"); and the Court having held a hearing to consider the Motion on August 28, 2019 (the "**Hearing**"), at which time all interested parties were offered an opportunity to be heard regarding the Motion, the Purchase Agreement and the sale transaction (the "**Sale Transaction**") contemplated by the Purchase Agreement; and the Court having found that the relief granted by this Order is in the best interests of the Debtors, their creditors, their estates, and other parties in interest; and the Court having reviewed and considered the objections to the Motion (collectively, the "**Objections**"); and based upon and as demonstrated by the Ross Declaration, the evidence proffered or adduced at the Hearing, and the arguments of Counsel made on the record at the Hearing; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

### Background

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     On May 15, 2019 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "**Court**") commencing the Chapter 11 Cases.

3

C.      The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 42] entered by the Court on May 16, 2019, in each of the Chapter 11 Cases.

D.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

E.      The Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a statutory committee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on May 29, 2019 (the "**Committee**").

F.      As part of the Debtors' efforts to realize the highest and best value for their businesses, the Bankruptcy Court entered the Bidding Procedures Order that established Bidding Procedures for a sale or other transaction involving the Debtors' businesses and scheduled various dates relating to the Auction.  Specifically, the Bidding Procedures Order established August 14, 2019 as the deadline for the submission of bids by Potential Bidders (as defined in the Bidding Procedures) (the "**Bid Deadline**"), August 23, 2019 as the date for the Auction (if any), and August 28, 2019 as the date on which the Court would hold the Hearing to approve the successful bidder selected in accordance with the Bidding Procedures (the "**Successful Bidder**") and the Sale Transaction.

## Compliance with Bidding Procedures and Bidding Procedures Order

G.      The Debtors' marketing and sales process with respect to the Assets afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets.  The Debtors and their professionals conducted a marketing and sale process with respect to the Assets in a fair, good faith,

and non-collusive manner in accordance with, and have otherwise complied in all respects with, the Bidding Procedures and the Bidding Procedures Order.

H.      The Successful Bid (which is memorialized in the Purchase Agreement) constitutes the highest or otherwise best offer for the Assets, and the Debtors' determination that the Purchase Agreement maximizes value for the benefit of the Debtors' estates and constitutes the highest or otherwise best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment (exercised in consultation with the Consultation Parties) and is in accordance and compliance with the Bidding Procedures and the Bidding Procedures Order.

I.      The Purchase Agreement provides fair and reasonable terms for the purchase of the Assets, and reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Assets. Approval of the Motion and the Purchase Agreement, and the prompt consummation of the Sale Transaction contemplated thereby, will maximize the value of each of the Debtors' estates and are in the best interests of the Debtors, their chapter 11 estates, their creditors, and other parties in interest.

### The Stalking Horse Bidder

J.      Pursuant to the Bidding Procedures Order, the Debtors were authorized (but not obligated) to exercise their business judgment (in consultation with the Consultation Parties) to select a Stalking Horse Bidder, subject to entry of a Stalking Horse Approval Order (as defined below).  After extensive, arm's length, good faith negotiations, on July 24, 2019, the Debtors and Diversified Gas and Oil Corporation (together with its successors or any permitted designees or assignees under the Purchase Agreement, including one or more wholly-owned subsidiaries of Diversified Gas and Oil

Corporation as permitted under Section 13.05 of the Purchase Agreement, and it or their successors, the "**Buyer**") executed the Purchase Agreement wherein the Debtors and the Buyer agreed that the Buyer would serve as the Stalking Horse Bidder for the Debtors' Monroe/Washington Assets (as defined in the Bidding Procedures) and the transaction contemplated by the Purchase Agreement would serve as the Stalking Horse Bid.

K.    On July 24, 2019, the Debtors filed a supplement to the Bidding Procedures Motion (the "**Supplement**") seeking approval of Bid Protections for the Stalking Horse Bidder and setting forth the Stalking Horse Bid, the proposed Bid Protections and the Purchase Agreement, with ten calendar days' notice of the objection deadline (the "**Stalking Horse Objection Deadline**") to the U.S. Trustee, the DIP Agent, the Committee, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases, seeking entry of an order (the "**Stalking Horse Approval Order**") granting final approval of Bid Protections to such Stalking Horse Bidder.

L.    The Debtors did not receive any objections to the designation of a Stalking Horse Bidder or any of the Bid Protections by the Stalking Horse Objection Deadline and submitted the Stalking Horse Approval Order to the Court under certification of counsel.

M.    On August 6, 2019, the Court entered the Stalking Horse Approval Order [D.I. 444] approving, among other things, the Debtors (i) entering into the Purchase Agreement with the Buyer wherein the Buyer agreed to purchase the Assets free and clear of all Liens, Claims and/or Interests (other than the Permitted Encumbrances and the Assumed Liabilities), (ii) designating the Buyer as the Stalking Horse Bidder for the sale of the Assets, and (iii) providing the Bid Protections to the Buyer.

6

**No Qualified Bids and Cancellation of the Auction**

N.     No Qualified Bids were submitted by the Bid Deadline other than the Stalking Horse Bid.  Accordingly, the Debtors (in consultation with the Consultation Parties), by Notice filed with the Court on August 21, 2019 [D.I. 497], designated Buyer's Stalking Horse Bid as the Successful Bid for the Debtors' Monroe/Washington Assets and cancelled the Auction, in accordance with the Bidding Procedures.

O.     The solicitation of bids was conducted fairly and in good faith, without collusion, and in accordance with the Bidding Procedures Order.  The Debtors have determined that the Buyer is the Successful Bidder for the Assets in accordance with the Bidding Procedures Order.  The Debtors' determination (in consultation with the Consultation Parties) that the offer reflected in the Purchase Agreement constitutes the highest or otherwise best offer for the Assets is a valid and sound exercise of the Debtors' business judgment (exercised in consultation with the Consultation Parties).  The Buyer has complied in all respects with the Bidding Procedures Order and all other applicable orders of the Court in negotiating and entering into the Purchase Agreement.

P.     After the Debtors' selection of the Buyer as the Successful Bidder, the Debtors and the Buyer negotiated and finalized in good faith and at arm's length the Purchase Agreement and all related documents necessary to consummate the Sale Transaction.

**Sale Hearing**

Q.     The Court conducted the Hearing on August 28, 2019 at which time the Court considered (i) the Motion, the evidence and testimony presented, and the statements and argument of counsel in support of granting the relief requested in the

Motion and (ii) approval of the Purchase Agreement and the Sale Transaction contemplated by the Purchase Agreement.

R.       Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

**Sound Business Purpose**

S.       The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for consummation of the Sale Transaction contemplated by the Purchase Agreement in accordance with the requirements of section 363(b) of the Bankruptcy Code.  The value of the Debtors' estates will be maximized through a sale of the Assets on a going concern basis.

T.       A sale pursuant to sections 105(a), 365 and 363(b) of the Bankruptcy Code also may prevent the continued accrual of post-petition, administrative expense obligations under various unexpired leases and executory contracts that are proposed to be acquired by the Buyer under the Purchase Agreement.

U.       Approval of the Purchase Agreement pursuant to sections 105(a), 365 and 363 of the Bankruptcy Code is necessary to preserve the value of the Debtors' businesses. The Debtors have determined, in their reasonable business judgment (in consultation with the Consultation Parties), that the Assets will have the greatest value if promptly sold to the Buyer.

V.       As a result, the proposed Sale Transaction pursuant to sections 105(a), 365 and 363 of the Bankruptcy Code, upon the terms and conditions set forth in the Purchase Agreement, is the best alternative available to the Debtors for recovering value for the benefit of the Debtors' estates.  The Sale Transaction contemplated by the Purchase Agreement maximizes the value of the Assets because the Assets are being sold as part of

a going concern business, and the continuity and remaining goodwill value associated with the Assets are being preserved.

W.      Neither the Purchase Agreement nor the Sale Transaction contemplated thereunder constitute a *sub rosa* chapter 11 plan.  The Purchase Agreement does not specify the terms of, or any distributions under, any subsequent chapter 11 plan by the Debtors (other than provisions that are consistent with the sale of assets under the Purchase Agreement and the relief granted hereunder).

**Fair Purchase Price**

X.      The total consideration to be provided by the Buyer under the Purchase Agreement is the highest or otherwise best offer received by the Debtors and constitutes (i) fair value, (ii) fair, full, and adequate consideration, (iii) reasonably equivalent value, and (iv) reasonable market value for the Assets for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable laws of the United States, any state, territory, or possession thereof or the District of Columbia.

Y.      The terms of the Purchase Agreement and the Sale Transaction contemplated therein are fair and reasonable under the circumstances of the Debtors' businesses and the Chapter 11 Cases.

**Notice of the Motion**

Z.      As evidenced by the affidavits of service and publication previously filed with this Court [D.I. 92, 229, 235, 272, 285, 290, 359, 411, 412, 433, 456, 472 and 482], and based upon representations of counsel at the Sale Hearing, notice (the "**Notice**") was adequate and sufficient under the circumstances and provided sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase

Agreement, this Order, and the Sale Transaction.  The Notice was provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004-, including to:  (i) the U.S. Trustee; (ii) each of the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (iii) KeyBank National Association, (iv) the Debtors' prepetition equity owners; (v) the United States Attorney's Office for the District of Delaware; (vi) the attorneys general for the states in which the Debtors conduct business; (vii) local and state environmental authorities and the Environmental Protection Agency; (viii) counsel for the committee appointed in the chapter 11 cases; (ix) the Federal Energy Regulatory Commission; (x) the Internal Revenue Service; (xi) all known taxing authorities to which the Debtors are subject; (xii) all entities known or reasonably believe to have asserted a lien or encumbrance on any of the Assets; (xiii) counterparties to Debtors' executory contracts and unexpired leases, (xiv) those entities and individual appearing on the Debtors' creditor matrix; and (xv) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase Agreement, this Order, and the Sale Transaction as required by the Bidding Procedures Order.   The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase Agreement, this Order, or the Sale Transaction is or shall be required.

### **Good Faith of the Buyer**

AA.    The Buyer is purchasing the Assets and has entered into the Purchase Agreement at arm's length and in good faith.  Accordingly, the Buyer is a "good faith

purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and the Buyer is, therefore, entitled to the protections of such provision.  The good faith of the Buyer is evidenced by, among other things, the following facts:

i.  The sale process conducted by the Debtors, including, without limitation, providing for the Auction process pursuant to the Bidding Procedures set forth in the Bidding Procedures Order, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties.  The Debtors offered other parties the opportunity to top the initial bid submitted by the Buyer, and all other bidders or potential bidders declined to do so.  The Debtors evaluated each Bid prior to selecting the Buyer as the Successful Bidder;

ii.  All payments to be made by the Buyer and other agreements or arrangements in connection with the Purchase Agreement have been disclosed.

iii.  The Buyer has not violated the provisions of section 363(n) of the Bankruptcy Code by any action or inaction.

iv.  The Buyer is a third party purchaser and is unrelated to any of the Debtors.  Neither the Buyer, nor any of its Affiliates, subsidiaries, officers, directors, members, partners, principals, or any of their respective representatives, successors, or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

11

v.      The Debtors and the Buyer have engaged in substantial arm's length negotiations, in good faith.  The Purchase Agreement is the product of this bargaining among the parties.

BB.     The sale of the Assets pursuant to the Purchase Agreement, all covenants therein and conditions thereto, and all relief requested in the Motion are an integrated transaction, meaning that each component is an essential part of every other component and that the entire transaction can be consummated only if all of its components are consummated.  Accordingly, the entire transaction is subject to, and is protected by, the provisions of section 363(m) of the Bankruptcy Code.

## Sale Free and Clear

CC.     After the Closing, no entity shall have any Lien, Claim and/or Interest (as defined herein) in or against the Assets other than the Assumed Liabilities and the Permitted Encumbrances (each as defined in the Purchase Agreement).

DD.     Other than the Assumed Liabilities and the Permitted Encumbrances, all Liens, Claims and/or Interests that existed against the Assets prior to the Closing, including, without limitation, the DIP Liens, the Permitted Prior Liens, Prepetition Liens and Adequate Protection Liens (each as defined in the DIP Order[3]), shall attach to the sale proceeds the Debtors receive under the Sale Transaction (subject to the terms and conditions set forth in the DIP Order, Bidding Procedures Order, the Stalking Horse Approval Order and this Order, including without limitation, the Carve-Out).  Those Liens, Claims and/or Interests will attach to the proceeds of the Sale Transaction in the

---

[3] *See Final Order, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364, 503, 506, and 507, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Post-Petition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [D.I. 223] (the "**DIP Order**").

same order of relative priority and with the same validity, force, and effect that the holder of such Lien, Claim and/or Interest had against the Assets prior to Closing (including, for the avoidance of doubt, as set forth in the DIP Order), and will be subject to any claims and defenses the Debtors may possess with respect thereto. The interests of the holders of such Liens, Claims and/or Interests are being adequately protected pursuant to the provisions of this Order.

EE.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession is authorized to sell property of its estate free and clear of any liens, claims, interests, and encumbrances if any of the following requirements is satisfied: (i) applicable non-bankruptcy law permits the sale of such property free and clear of such interest (section 363(f)(1) of the Bankruptcy Code); (ii) the entity holding the alleged lien, claim, interest, or encumbrance consents (section 363(f)(2) of the Bankruptcy Code); (iii) such interest is a lien, and the price at which such property is to be sold is greater than the aggregate value of all liens on such property (section 363(f)(3) of the Bankruptcy Code); (iv) such lien, claim, interest, or encumbrance is subject to a *bona fide* dispute (section 363(f)(4) of the Bankruptcy Code); or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such lien, claim, interest, or encumbrance (section 363(f)(5) of the Bankruptcy Code).

FF.     For the following reasons, the provisions of section 363(f) of the Bankruptcy Code have been satisfied:

i.      All alleged holders of liens or claims who did not object or withdrew their objections to the Sale Transaction contemplated by the Purchase Agreement are deemed to have consented. Alleged

13

holders of liens or claims who did object either had their objections overruled or resolved or otherwise fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code, including those referenced below.

ii.    The Debtors are not aware of any remaining interests in the Assets, and, if any such interests exist, they are in *bona fide* dispute as to the extent, validity, perfection, and viability of those interests (*see* Bankruptcy Code section 363(f)(4)).

iii.    Other parties (if any) could be compelled to accept a money satisfaction of their liens, claims, interests, or encumbrances (*see* Bankruptcy Code section 363(f)(5)) or such interest is a lien and the price at which such encumbered property is to be sold under the Purchase Agreement is greater than the aggregate value of all liens on such encumbered property (*see* Bankruptcy Code section 363(f)(3)).

GG.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Assets will be transferred to the Buyer free and clear of all Liens, Claims and/or Interests (other than the Permitted Encumbrances and the Assumed Liabilities) with all other applicable Liens, Claims and/or Interests to attach to the proceeds of the sale of the Assets  in the order of their priority (for the avoidance of doubt, subject to the Carve-Out), with the validity, force, and effect that they now have as against the Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all interested parties with

respect to such Liens, Claims and/or Interests and with the net proceeds from the sale of the Assets to be available for the benefit of the Debtors' estates.

HH.     Accordingly, the Debtors have satisfied the standard set forth in section 363(f) of the Bankruptcy Code for selling the Assets free and clear of all Liens, Claims and/or Interests other than the Permitted Encumbrances and the Assumed Liabilities.

### Sale Free and Clear Required by the Buyer

II.     In connection with the Purchase Agreement, the Buyer expressly negotiated for the protection of obtaining the Assets free and clear of all Liens, Claims and/or Interests (including, without limitation, any potential successor liability claims) other than the Permitted Encumbrances and Assumed Liabilities. The Buyer would have paid substantially less consideration for the Assets or not purchased the Assets if the Buyer were not buying the Assets free and clear of any Liens, Claims and/or Interests (other than the Permitted Encumbrances and Assumed Liabilities).

### No Successor Liability

JJ.     To the greatest extent permitted by law, neither the Buyer nor its affiliates, officers, directors, members, partners, and principals or any of their respective Representatives, successors, or assigns shall be deemed, as a result of the consummation of the Sale Transaction contemplated by the Purchase Agreement or otherwise, to (i) be a legal successor, or otherwise be deemed a successor, to the Debtors or the Debtors' estates, (ii) have, de facto or otherwise, merged or consolidated with or into any of the Debtors or any of the Debtors' estates, (iii) be an alter ego, a continuation, or substantial continuation of any of the Debtors or any enterprise of any of the Debtors, or (iv) be liable for any claim based on successor liability, transferee liability, derivative liability, vicarious liability, or any similar theories under applicable state or federal law, or

otherwise.  Except as expressly set forth in the Purchase Agreement with respect to the Assumed Liabilities and Permitted Encumbrances, the Buyer shall have no liability or obligation of any of the Debtors and/or their respective estates and the Buyer is not expressly or impliedly agreeing under the terms and conditions of the Purchase Agreement to assume any of the debts or obligations of the Debtors.  Any so-called "bulk sales," "bulk transfer," or other similar laws are not applicable, and compliance with such any such laws in all necessary jurisdictions is not required, including those relating to taxes.

KK.    The Buyer and the Debtors are not entering into the Purchase Agreement fraudulently or in order to escape liability for the Debtors' obligations.

**Assumption and Assignment of the Assigned Contracts and Assigned Leases and Interests**

LL.    Section 365(a) of the Bankruptcy Code provides that "the [debtor in possession], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."   It is in the best interests of the Debtors and their respective estates to assume and assign the Assigned Contracts and Assigned Leases and Interests to the Buyer on the effective date of the assumption and assignment of such Assigned Contracts or Assigned Leases and Interests ("**Assumption and Assignment Effective Date**") in accordance with the terms and conditions of the Purchase Agreement, the Bidding Procedures Order, and this Order.  The Debtors' assumption and assignment of the Assigned Contracts and Assigned Leases and Interests to the Buyer meets the business judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code.   The Sale Transaction contemplated by the Purchase Agreement provides significant benefits to the Debtors' estates.  The Debtors cannot obtain these

16

benefits without the assumption and assignment of the Assigned Contracts and Assigned Leases and Interests, which are a material part of the Assets and the Sale Transaction contemplated by the Purchase Agreement.  Accordingly, the assumption and assignment of the Assigned Contracts and Assigned Leases and Interests constitutes an exercise of the Debtors' sound business judgment.

MM.   Section 365(b)(1) of the Bankruptcy Code requires a debtor in possession to cure any default and provide adequate assurance of future performance in order to assume an unexpired lease or executory contract under which a default has occurred. Subject to the terms and conditions set forth in the Bidding Procedures Order, the Purchase Agreement, and this Order, on the applicable Assumption and Assignment Effective Date (or as otherwise provided in the Bidding Procedures Order, the Purchase Agreement, or this Order), the Seller shall pay any outstanding Cure Costs, calculated in good faith as of the Petition Date, and any other applicable cure costs due pursuant to the Purchase Agreement, with respect to the Assigned Contracts or Assigned Leases and Interests and, therefore, this requirement has been satisfied, except that Buyer shall pay any Cure Costs to the extent required to be paid by Buyer under Section 2.05 of the Purchase Agreement.

NN.   Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, a debtor in possession may assign such contract or lease if such contract or lease is assumed by the debtor in possession in accordance with section 365 of the Bankruptcy Code, and the proposed assignee provides "adequate assurance of future performance" of the obligations arising

17

under such contract or lease from and after the date of the assignment.  The Debtors have satisfied the requirements necessary to assume the Assigned Contracts and Assigned Leases and Interests.  In addition, the Debtors have demonstrated that the Buyer has the resources to perform the obligations under such Assigned Contracts and Assigned Leases and Interests.  Accordingly, the requirements for assignment of such contracts and leases to the Buyer under section 365(f) of the Bankruptcy Code have been satisfied.  To the extent that any party's consent to assumption or assignment of any Assigned Contract or Assigned Lease or Interest is required by the Bankruptcy Code and applicable non-bankruptcy law, such party is deemed to have consented by not timely objecting to the Motion.

OO.     In accordance with the Bidding Procedures Order, and as evidenced by the Notice, due and proper notice of the proposed assumption and assignment of the Assigned Contracts and Assigned Leases and Interests to the Buyer was provided to the non-Debtor counterparties listed on Exhibit A-1, Schedule 2.01(b)(vii)-1 and Schedule 2.05(a), in each case, to the Purchase Agreement.

**No Fraudulent Intent**

PP.     The Purchase Agreement was not entered into, and the Sale Transaction contemplated by the Purchase Agreement will not be consummated, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors for purposes of the Bankruptcy Code, any other applicable laws of the United States, and any applicable laws of any state, territory, or possession thereof, or the District of Columbia.  Neither the Debtors nor the Buyer is entering into the Purchase Agreement or consummating the Sale Transaction contemplated by the Purchase Agreement with any fraudulent or otherwise improper purpose.

### Assets

QQ.    The Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors have all title, interest, and/or rights in the Assets required to transfer and to convey the Assets to the Buyer, as required by the Purchase Agreement.

### Corporate or Limited Liability Company Authority

RR.    The Debtors have (i) full power and authority to perform all of their obligations under the Purchase Agreement and the Debtors' prior execution and delivery of, and performance of obligations under, the Purchase Agreement is hereby ratified, (ii) all of the power and authority necessary to consummate the Sale Transaction contemplated by the Purchase Agreement, and (iii) taken all actions necessary to authorize, approve, execute, and deliver the Purchase Agreement and to consummate the Sale Transaction contemplated by the Purchase Agreement.

### Prompt Consummation

SS.    To maximize the value of the Assets, it is essential that the Sale Transaction occur within the timeframe set forth in the Purchase Agreement.  Time is of the essence in consummating the Sale Transaction contemplated by the Purchase Agreement.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts or Assigned Leases and Interests prior to, and outside of, a chapter 11 plan.  Accordingly, there is cause to lift the stay established by Bankruptcy Rules 6004 and 6006.

**Statutory Predicates**

TT.   The statutory authorization for the relief granted herein is found in sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Bankruptcy Rules 2002-1, 6004-1, and 6006-1.

**Section 363 Sale**

UU.   The proposed sale of the Assets to the Buyer pursuant to the Purchase Agreement constitutes a sale of property of the Debtors' respective estates outside the ordinary course of business within the meaning of section 363(b) of the Bankruptcy Code.

VV.   For good and valid reasons, the Court may authorize and approve a sale of assets of a chapter 11 debtor pursuant to section 363(b) of the Bankruptcy Code without the necessity of following the procedures and making the findings required for the confirmation of a chapter 11 plan.  Such legitimate and compelling reasons exist in this case.  Under the circumstances of the Chapter 11 Cases, the sale of the Assets to the Buyer pursuant to sections 105(a) and 363(b) and (f) of the Bankruptcy Code is both justified and appropriate.

WW.   The sale of the Assets to the Buyer free and clear of any and all Liens, Claims and/or Interests (other than the Permitted Encumbrances and Assumed Liabilities) upon the terms and conditions set forth in the Purchase Agreement is in the best interests of the Debtors and their respective estates.

XX.   Given the circumstances of the Chapter 11 Cases, including, without limitation, the adequate exposure of the Debtors' businesses to the marketplace, the reasonable opportunity afforded other parties to make competing bids or offers for all or a portion of the Debtors' businesses, and the adequacy and fair value of the consideration

being paid by the Buyer under the Purchase Agreement, the proposed sale of the Assets to the Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment and is hereby approved in all respects.

**Retention of Jurisdiction**

YY.    It is necessary and appropriate for the Court to retain jurisdiction to, *inter alia*, interpret and enforce the terms and provisions of this Order and the Purchase Agreement, and to adjudicate, if necessary, any and all disputes concerning the assumption and assignment of the Assigned Contracts and the Assigned Leases and Interests and any alleged right, title, or property interest, including ownership claims, relating to the Assets and the proceeds thereof, as well as the extent, validity, perfection, and priority of any alleged lien or claim relating to the Debtors and/or the Assets.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.    The relief requested in the Motion is granted and approved as set forth in this Order.

2.    The Sale Transaction contemplated by the Purchase Agreement is hereby approved as set forth in this Order.

3.    The Debtors are hereby authorized and directed to sell the Assets to the Buyer upon and subject to the terms and conditions set forth in the Purchase Agreement, the provisions of which are incorporated herein by reference as if set forth in full herein.

4.    Each of the Debtors is hereby authorized and directed to perform, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take any and all further actions as may be necessary or appropriate to the performance of its obligations as contemplated by the Purchase

Agreement or this Order, including paying, whether before or after the Closing, any expenses or costs that are required to be paid in order to consummate the Sale Transaction contemplated by the Purchase Agreement or to perform its obligations under the Purchase Agreement or any related agreements.

5. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Assets shall be transferred, sold, and delivered to the Buyer free and clear of all Liens, Claims and/or Interests, other than the Permitted Encumbrances and the Assumed Liabilities.  All other Liens, Claims and/or Interests that existed against the Assets prior to the Closing, including, without limitation, the DIP Liens, the Permitted Senior Liens, Prepetition Liens, and Adequate Protection Liens, shall attach to the sale proceeds the Debtors receive under the Sale Transaction (subject to the terms and conditions set forth in the DIP Order, Bidding Procedures Order, and this Order, including without limitation, the Carve-Out).  Those Liens, Claims and/or Interests will attach to the proceeds of the Sale Transaction in the same order of relative priority and with the same validity, force, and effect that the holder of such Lien, Claim and/or Interest had against the Assets prior to Closing (including, for the avoidance of doubt, as set forth in the DIP Order), and will be subject to any claims and defenses the Debtors may possess with respect thereto.  The interests of the holders of such Liens, Claims and/or Interests are being adequately protected pursuant to the provisions of this Order by having their Liens, Claims and/or Interests, if any, in each instance against the Debtors, their estates, or any of the Assets, attach to the proceeds of the Sale Transaction ultimately attributable to the Assets in which such creditor or interest holder alleges an interest, in the same order of priority and with the same validity, force, and effect that

such creditor or interest holder had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

6.      In accordance with the Purchase Agreement, all fee interests, rights-of-way, easements, real property interests, real rights, licenses, servitudes, permits, privileges, and leases (surface and subsurface) owned or held by the Debtors, or hereinafter acquired by the Debtors prior to the Closing, in each case to the extent constituting Assets under the Purchase Agreement, constitute real property or a real property interest, and together with the rights, tenements, appurtenant rights and privileges related thereto (collectively, the "**Real Property Interests**"), shall, in accordance with the Purchase Agreement, be transferred to the Buyer at the Closing notwithstanding any consent rights, anti-assignment provisions, or any other provisions purporting to prohibit or condition the transfer or assignment of such Real Property Interests contained in such Real Property Interests, or in any other document, and all such rights, provisions, prohibitions, and conditions shall be void and of no force and effect with respect to the Sale Transaction.

7.      To the greatest extent permitted by law, as a result of the Sale Transaction contemplated by the Purchase Agreement, the Buyer will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Buyer will have no liability, except as expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, for any Liens, Claims and/or Interests against or in any of the Debtors as a result of any application of successor liability theories.

8.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon Closing, and in accordance with the Purchase Agreement, the Assets shall be transferred to the Buyer free and clear of all liens, claims, encumbrances and interests (subject to the Assumed Liabilities and the Permitted Encumbrances), including, without limitation, each of the following, which are collectively referred to herein as the "**Liens, Claims and /or Interests**":

- liens (as that term is defined in the Bankruptcy Code), including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens, mortgages, hypothecations, charges, consents, judicial liens (as defined in the Bankruptcy Code), instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, Encumbrances, covenants, easements, servitudes, and liens and security interests granted under sections 361, 363 and/or 364 of the Bankruptcy Code or an order of the Court, including the interim order [D.I. 62] and final order [D.I. 223] authorizing the DIP Loans (as therein defined);

- interests, obligations, liabilities, demands, agreements, guaranties, options, restrictions, contractual or other commitments;

- rights, including, without limitation, rights of first refusal, rights of offset, rights to use, contract rights, Preferential Purchase Right, rights of recovery, and any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, consent, or termination of the Debtors' or the Buyer's interest in the Assets, or any similar rights, in each case with respect to the Sale Transaction;

- judgments and/or decrees of any court or foreign or domestic Governmental Authority or governmental entity (to the extent permitted by law);

- charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Assets, including, without limitation, consent of any person or entity to assign or transfer any of the Assets, in each case with respect to the Sale Transaction;

- debts (as that term is defined in the Bankruptcy Code), including but not limited to, debts arising in any way in connection with any agreements, loan documents, credit agreements, indentures, debtor-in-possession loans,

DIP Documents (as defined in Docket No. 223), acts, or failures to act of the Debtors, any of the Debtors' predecessors or Affiliates, or any Representative of any of the Debtors, their predecessors or Affiliates;

- claims (as that term is defined in the Bankruptcy Code), including but not limited to, all rights to payment, damages, losses, demands, judgments, claims, causes of action, charges, assessments, liabilities, suits, investigations, litigation, third-party actions, claims for reimbursement, contribution claims, penalties, indemnity claims, exoneration or exculpation claims, Royalties, Suspense Funds, alter-ego claims, environmental claims or liens arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under any Environmental Law (to the greatest extent permitted by law), claims arising under any bulk sales or similar law, Tax, claims arising under any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, any products liability, product warranty liability or similar claims, intercompany claims, loans and receivables between any Debtor and another Debtor or any Debtor and any non-Debtor subsidiary, Affiliate or Representative of any of the foregoing, escheat, administrative expenses, and pending or threatened litigation claims, arbitral proceedings or proceedings by or before any Governmental Authority or any other person, sanctions, penalties, costs, expenses, fees (including attorney or other professional and advisor fees and costs), Liabilities, setoff rights (to the greatest extent permitted by law), obligations, and claims and liabilities of any kind or nature under contract, agreement, understanding, or at law, in equity, or otherwise, whatsoever, whether or not reduced to judgment;

- claims or liens in any way whatsoever relating to or arising from the Assets or the Debtors' operations or use of the Assets, including, without limitation, claims or liens under the Assigned Contracts and Assigned Leases and Interests arising prior to the Closing, or any liabilities calculable by reference to the Debtors or their assets or operations or relating to continuing conditions existing at or prior to the Closing or the applicable Assumption and Assignment Effective Date;

- Excluded Liabilities; and

- to the maximum extent permitted by law, any other interest within the meaning of section 363(f) of the Bankruptcy Code,

in each instance for all of the foregoing, whether known or unknown, choate or inchoate,

filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded,

25

perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise.

9.      Without limiting the foregoing, and except as otherwise expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, the Buyer shall not be liable or responsible, as a successor or otherwise, for the Debtors' claims or liens, whether calculable by reference to the Debtors or their operations or under or in connection with (a) any employment or labor agreements, (b) any pension, welfare, compensation, fringe benefit, or other employee benefit plans, trust arrangements, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors, any medical, welfare, and pension benefits payable after retirement or other termination of employment, or any responsibility as a fiduciary, plan sponsor, or otherwise for making any contribution to, or in respect of the funding, investment, or administration of, any employee benefit plan, arrangement, or agreement (including, without limitation, pension plans) or the termination of or withdrawal from any such plan, arrangement, or agreement, (c) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Age Discrimination and Employment Act of 1967, (v) the Federal Rehabilitation Act of 1973,

(vi) the National Labor Relations Act, or (vii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (d) worker's compensation, occupational disease, or unemployment or temporary disability insurance claims.

10.     Except as expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, no person or entity, including, without limitation, any federal, state, or local governmental agency, department, or instrumentality, shall assert by suit or otherwise against the Buyer or its successors in interest any Lien, Claim and/or Interest that they had, have, or may have against the Debtors, or any Lien, Claim and/or Interest relating to or arising from the Assets or the Debtors' operations or use of the Assets.

11.     The terms and provisions of the Purchase Agreement and all related documents necessary to consummate the Sale Transaction, together with the terms and provisions of this Order, shall be binding in all respects upon the Debtors, their estates, their creditors, and all parties in interest, including any and all successors and assigns (including, without limitation, any trustee appointed under the Bankruptcy Code).

12.     Except as expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, all entities holding Liens, Claims and/or Interests against the Assets be, and they hereby are, barred from asserting such Liens, Claims and/or Interests against the Buyer and/or the Assets and all entities holding such Liens, Claims and/or Interests shall be deemed to have released the Assets to the Buyer and to have limited the assertion of their Liens, Claims and/or Interests against the Assets (subject, in all cases, to the priority set forth in the DIP Order and the Carve-Out) to the sale proceeds the Debtors receive for the sale of the Assets and any

other available property of the Debtors' respective estates that does not constitute the Assets.

13.     This Order shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

14.     All Liens, Claims and/or Interests of record against the Assets, other than the Permitted Encumbrances and Assumed Liabilities, shall, upon Closing, be terminated as against the Assets, and all the entities described in the immediately preceding paragraph of this Order are authorized and directed to (a) terminate all recorded Liens, Claims and/or Interests against the Assets from their records, official, and otherwise, in each case solely with respect to the Assets, and (b) accept for filing or recording all instruments made or delivered by or to any of the Debtors, and all deeds or other documents relating to the conveyance of the Assets to the Buyer.

15.     If any person or entity that has filed statements, documents or agreements evidencing liens or claims on or in the Assets shall not have delivered to the Debtors prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens,

Claims and/or Interests that the person or entity has or may assert with respect to the Assets, the Buyer is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets.

16.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, Debtors' assumption and assignment to the Buyer, and the Buyer's assumption of the Assigned Contracts and Assigned Leases and Interests, on the terms set forth in the Purchase Agreement, is hereby approved and the requirements of section 365 with respect thereto are hereby found and deemed to be satisfied.

17.    The Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer at Closing the Assigned Contracts and Assigned Leases and Interests free and clear of all Liens, Claims and/or Interests (other than the Permitted Encumbrances and the Assumed Liabilities) and (b) execute and deliver to the Buyer such documents or other instruments as Buyer deems may be necessary to assign and transfer the Assigned Contracts and Assigned Leases and Interests to the Buyer.

18.    Subject to the Closing, (a) to the extent provided in section 365 of the Bankruptcy Code, any provisions in any of the Assigned Contracts and Assigned Leases and Interests that prohibit or condition the assignment of such Assigned Contracts and Assigned Leases and Interests or allow the party to such Assigned Contracts and Assigned Leases and Interests to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such of the Assigned Contracts and Assigned Leases and Interests, constitute unenforceable anti-assignment provisions which are void and of no force and effect, (b) all other

requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each of the Assigned Contracts and Assigned Leases and Interests have been satisfied, and (c) effective upon the Closing, the Assigned Contracts and Assigned Leases and Interests shall be transferred and assigned to, and from and following the Closing remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any of the Assigned Contracts and Assigned Leases and Interests that prohibits, restricts, or conditions such assignment or transfer (including but not limited to any consents to assign) and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further post-Closing liability with respect to the Assigned Contracts and Assigned Leases and Interests after such assumption and assignment to the Buyer at Closing.

19.     All defaults or other obligations of the Debtors under the Assigned Contracts and Assigned Leases and Interests, arising or accruing prior to the Closing, or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts and Assigned Leases and Interests, shall be cured by the Debtors or the Buyer, as applicable, to the extent set forth in the Purchase Agreement.  Except as to any timely filed objection to the Debtors' proposed Cure Costs in respect of any of the Assigned Contracts and Assigned Leases and Interests, which objection will be resolved as provided in Paragraph 20 below, the Cure Costs set forth in the Potential Assumption and Assignment Notice, (the "**Assumption and Assignment Notice**") shall constitute the only amounts due to the Contract Counterparty under the Assigned Contracts and Assigned Leases and Interests as of Closing, and no other defaults exist and no other amounts are due on account of any

facts occurring prior to Closing, whether known or unknown, whether due or to become

due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise

out of or relate to events occurring prior to Closing.

20.     For Cure Costs in an amount greater than $0 or for which an objection was

timely filed in accordance with the Assumption and Assignment Notice, the Debtors or,

to the extent required to be paid by Buyer under Section 2.05 of the Purchase Agreement,

the Buyer, will pay such Cure Costs as follows:

(a)     if not disputed in good faith as to liability or amount, and such Cure Costs
arose or accrued before the objection deadline for Cure Costs in the
Assumption and Assignment Notice, such Cure Costs shall be paid at
Closing or within five Business Days thereafter;

(b)     if not disputed in good faith as to liability or amount, and such Cure Costs
arose or accrued after the objection deadline for Cure Costs in the
Assumption and Assignment Notice but before Closing, such Cure Costs
shall be paid when due in the ordinary course from the Holdback Amount
(as defined below) or promptly by the Buyer to the extent required under
the Purchase Agreement (as applicable); or

(c)     if disputed in good faith as to liability or amount, such Cure Costs, if any,
shall be paid as determined by the Court in a subsequent order on
September 18, 2019 or promptly thereafter resolving the controversy or as
may be resolved by agreement of the impacted parties (in consultation
with the Consultation Parties if an impacted party is a Debtor); *provided*,
*however*, that any undisputed portion of such Cure Costs shall be paid in
accordance with subsections (a) or (b), as applicable.

With respect to Cure Costs that (i) the Debtors are obligated to pay under the Purchase

Agreement and (ii) are disputed in good faith as to liability or amount, the Debtors will

establish a reserve of cash from the Holdback Amount (as defined below) for the disputed

amount of such Cure Costs.  The procedures provided herein provide adequate assurance

that the Debtors will promptly cure defaults and promptly compensate for any pecuniary

loss within the meaning of sections 365(b)(1)(A) and (B) of the Bankruptcy Code.  As

such, all Assigned Contracts and Assigned Leases and Interests shall be assigned to Buyer at Closing in accordance with the Purchase Agreement.

21.     Upon the Debtors' assignment of the Assigned Contracts or Assigned Leases and Interests to the Buyer under the provisions of this Order at Closing, no default or other obligations arising or accruing prior to Closing shall exist under any Assigned Contracts or Assigned Leases and Interests, and each Contract Counterparty is forever barred, estopped, and permanently enjoined from (a) declaring a default by the Debtors or the Buyer under any such Assigned Contract or Assigned Lease or Interest based on acts or occurrences arising prior to or existing as of Closing, (b) raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to any of the Assigned Contracts or Assigned Leases and Interests based on acts or occurrences arising prior to or existing as of Closing, or (c) taking any other action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contracts or Assigned Leases and Interests based on acts or occurrences arising prior to or existing as of Closing; provided, however, that a Counterparty to an Assigned Contract or an Assigned Lease shall not be barred from seeking from the Debtors or the Buyer to the extent required under the Purchase Agreement (as applicable) any additional amounts due on account of any defaults arising or accruing under such Assigned Contract or Assigned Lease, as applicable, after the deadline to object to the Cure Costs set forth in the Assumption and Assignment Notice and before the Closing. Each Contract Counterparty hereby is also forever barred, estopped, and permanently enjoined from (y) asserting against the

Debtors or the Buyer, or the property of any of them, any default or claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of Closing and (z) imposing or charging against Buyer or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to Buyer of the Assigned Contracts or Assigned Leases and Interests.

22.    Subject to the terms and conditions of the Purchase Agreement, and upon the Closing, the Buyer or Debtors, as applicable in accordance with the Purchase Agreement, shall have (a) to the extent necessary, cured or provided adequate assurance of cure of, any default existing prior to Closing under the Assigned Contracts or Assigned Leases and Interests within the meaning of sections 365(b)(l)(A) and 365(f)(2)(A) of the Bankruptcy Code and (b) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to Closing under the Assigned Contracts or Assigned Leases and Interests within the meaning of sections 365(b)(l)(B) and 365(f)(2)(B) of the Bankruptcy Code.  The Debtors' or Buyer's obligations to pay the Cure Costs, as applicable under the Purchase Agreement, and the Buyer's agreement to perform the obligations under the Assigned Contracts or Assigned Leases and Interests in accordance with the terms of the Purchase Agreement, shall constitute adequate assurance of future performance within the meaning of sections 365(b)(l)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the applicable Contract Counterparty.

23.     To the furthest extent permitted by law, any party that may have had the right to consent to the assumption or assignment of any of the Assigned Contracts or Assigned Leases and Interests is deemed to have consented to such assumption and assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to timely object to the assumption or assignment of such Assigned Contracts or Assigned Leases and Interests in accordance with the Bidding Procedures Order, and the Buyer shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assigned Contracts or Assigned Leases and Interests pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.   Any Contract Counterparty to any of the Assigned Contracts or Assigned Leases and Interests designated to be assumed and assigned to the Buyer who has not timely filed and served an objection in accordance with the Bidding Procedures Order shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Assigned Contracts or Assigned Leases and Interests, and such Assigned Contracts or Assigned Leases and Interests shall be deemed assumed by the Debtors and assigned to the Buyer at Closing in accordance with the Purchase Agreement.

24.     To the extent a Contract Counterparty failed to timely object to the Cure Costs for any Assigned Contract or Assigned Lease or Interest in accordance with the Bidding Procedures Order, such Cure Costs shall be deemed to be finally determined and any such Contract Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time.

25.     Upon and as of the Closing, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contract or Assigned

Lease or Interest, and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further post-Closing liability under the Assigned Contract or Assigned Lease or Interest.

26.     The Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction.

27.      From the date of the entry of this Order, the Debtors (with the consent of the Buyer) may, in their sole discretion, settle objections to assumption and assignment of any Assigned Contract or Assigned Lease or Interest, including to proposed Cure Costs, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Costs).     Subject to the occurrence of the Closing, contemporaneously with the resolution of any such objection, the executory contract or unexpired lease underlying such objection shall be deemed an Assigned Contract or Assigned Lease or Interest assumed by the Debtors and assigned to the Buyer without the necessity of obtaining any further order of the Court.

28.     Nothing in this Order, the Motion, the Bidding Procedures Order, any Applicable Assumption and Assignment Notice, or any other notice or any other document is or shall be deemed an admission by the Debtors that any contract is an executory contract or must be assumed and assigned pursuant to the Purchase Agreement or in order to consummate the Sale Transaction.

29.      All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the

Assigned Contracts and Assigned Leases and Interests have been satisfied.  Each of the Assigned Contracts and Assigned Leases and Interests shall be deemed to be valid, binding, and in full force and effect and enforceable in accordance with their terms as of the Closing, subject to any amendments or modifications agreed to between a Contract Counterparty and the Buyer.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assigned Contracts and Assigned Leases and Interests, and each of the Assigned Contracts and Assigned Leases and Interests shall be fully enforceable by the Buyer in accordance with its respective terms and conditions.  To the extent provided in the Purchase Agreement, the Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

30.      The assumption and assignment of the Assigned Contracts and the Assigned Leases and Interests will not be effectuated if the Closing does not occur and the Purchase Agreement is terminated.

31.      Within ten Business Days after the Closing, the Debtors shall file with the Court a list of Assigned Contracts, Assigned Leases and Interests, Excluded Contracts, Excluded Leases, and Designated Agreements and shall serve a copy of such list to each non-Debtor Contract Counterparty on the lists, and such lists shall be updated or supplemented from time to time as necessary or at the request of the Buyer, provided that any updated or supplemental list need only be served upon those non-Debtor Counterparties to such contracts or leases directly affected by such updated or supplemental list.

32.      Each non-Debtor counterparty to an Assigned Contract or Assigned Lease or Interest shall be forever barred, estopped, and permanently enjoined from asserting against the Buyer or its property (including, without limitation, the Assets), any fee, acceleration, increase, default, breach, claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing or on account of any facts occurring prior to Closing or as a result of the Petition Date.

33.      The Debtors are hereby authorized to (a) take such corporate action as may be necessary to implement the provisions of the Purchase Agreement and any other document executed by the Debtors in connection therewith and (b) execute and file any necessary document with any appropriate secretary of state.  This Order shall constitute all approvals and consents, if any, required by the laws of any state necessary to file, record, and accept such documents.

34.      To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing.

35.      The Purchase Agreement has been negotiated and executed, and the Sale Transaction contemplated by the Purchase Agreement are and have been undertaken, by Debtors, the Buyer, and their respective representatives at arm's length, without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein

to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, whether or not the Buyer knew or knows of the pendency of the appeal, unless such authorization and such Sale Transaction are stayed pending appeal.  The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

36.     None of the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale Transaction to be avoided, or damages or costs to be imposed, under section 363(n) of the Bankruptcy Code.  The consideration provided by the Purchaser for the Assets under the Purchase Agreement is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

37.     At the Closing, the Debtors shall retain an amount (the "**Holdback Amount**") from the proceeds from the Sale Transaction, which amount the Debtors shall be permitted to utilize as Cash Collateral pursuant to the terms of the DIP Order.  The Holdback Amount shall be no less than an amount equal to the sum of (i) the Carve-Out Amount, (ii) the amount of all post-petition trade claims relating to the Debtors' Monroe/Washington Assets that are not assumed or otherwise satisfied through the Closing, (iii) the amount of all post-Closing obligations of the Debtors under the Purchase Agreement, and (iv) to the extent not duplicative of clauses (i)-(iii) above, the amount of all Cure Costs that the Debtors are obligated to pay under the Purchase Agreement.  The Approved Budget (as defined in the DIP Order), solely for purposes of determining the ability of the Debtors to borrow under the DIP Credit Agreement, shall be amended to eliminate any amounts for items included in the Holdback Amount on a

dollar-for-dollar basis (*i.e.*, the Debtors will pay such amounts from the Holdback Amount and not from new borrowings under the DIP Credit Agreement).  Prior to the Closing, the Debtors, in consultation with the Committee, and the DIP Agent shall use good faith efforts to agree on the Holdback Amount and an estimate of the amount needed to satisfy Permitted Prior Liens (as defined in the DIP Order), if any, to be held in escrow, in each case, with any disagreements to be resolved by the Court.  Upon agreement as to the Holdback Amount and any escrow for Permitted Prior Liens (or determination of such amounts by the Court), the Debtors shall file a schedule setting forth such amounts.  Any funds retained in escrow on account of Permitted Prior Liens shall be payable only to the DIP Lender or to the holders of Permitted Prior Liens (if any), as applicable.  In full satisfaction of the Debtors' obligations under section 5.2(b) of the DIP Credit Agreement with regard to the Sale Transaction, the Debtors shall use the remaining proceeds from the Sale Transaction (*i.e.* after subtracting the Holdback Amount and any escrow for Permitted Prior Liens) to repay the DIP Loans at the Closing of the Sale Transaction or, if later, the determination by the Court of the Holdback Amount and any escrow for Permitted Prior Liens.  Evercore Fees (as defined in the DIP Order) payable from the Holdback Amount shall be deposited by or on behalf of the Debtors (notwithstanding anything to the contrary in the DIP Order) into an IOLTA account with Landis Rath & Cobb LLP ("**LRC**") and shall be released by LRC and paid to Evercore at the direction of the Debtors upon approval of a fee application therefor (whether pursuant to the Interim Compensation Order[4] or otherwise).

---

[4] The *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members* [D.I. 210].

38.     Nothing contained in any plan of reorganization (or liquidation) confirmed in the Chapter 11 Cases, any order confirming any plan of reorganization (or liquidation), or any other order of any type or kind entered in the Chapter 11 Cases or any related proceeding, including any subsequent chapter 7 case, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

39.     Notwithstanding anything set forth herein to the contrary, the attachment of any Liens to any sale proceeds and the payment of any sale proceeds to repay the DIP Loans shall be subject in all respects to the Committee's Challenge rights under the DIP Order (and any agreements between the Committee and the DIP Agent regarding the Committee's Challenge rights).  Further, in the event that the Committee prevails in respect of any Challenge, nothing in this Order shall affect the Court's ability to fashion any appropriate remedy in respect of such successful Challenge, which may include disgorgement of sale proceeds paid pursuant to this Order. For the avoidance of doubt, nothing in this paragraph 39 shall, or shall be deemed, to affect the Buyer or the validity of the Sale or the Sale Transaction.

40.     Notwithstanding anything set forth herein or in the Purchase Agreement to the contrary, the "Assets" as defined under the Purchase Agreement shall not include any rights, claims, causes of action or defenses of any Seller, under any Contract or otherwise, against ETC Northeast Pipeline, LLC or any subsidiary or affiliate thereof.

41.     As used herein, the "**Eureka Gathering Agreement**," also defined previously in the Purchase Agreement as that certain "Midstream Agreement," means that certain Gas Gathering Services Agreement dated March 27, 2015 between Eureka Midstream, LLC, formerly known as Eureka Hunter Pipeline, LLC ("**Eureka**") and EM

40

Energy Ohio, LLC (as the same may be supplemented, restated and/or amended, and together with all exhibits, schedules and attachments referenced in each therein or attached to each thereto).  Notwithstanding anything to the contrary in this Order or the Transaction Documents, (a) the Eureka Gathering Agreement shall be assumed by the Debtors and assigned to the Buyer at the Closing of the Sale Transaction and (b) the dedication and all other commitments, obligations and rights, including but not limited to any real property interest and covenants contained in the Eureka Gathering Agreement, are assumed and, except as may be agreed in writing by Buyer and Eureka, shall not be altered, modified, impaired, released, terminated or cleared from the Assets in the Sale Transaction, and shall be considered an "Assumed Liability" and "Permitted Encumbrance" as defined in the Purchase Agreement; *provided, however,* that nothing in this paragraph shall alter or change the Debtors' and Buyer's rights, commitments and obligations to each other, including without limitation the payment of Cure Costs and any adjustments to the Purchase Price, under the Transaction Documents.  Nothing in this Order is a finding or conclusion that the Eureka Gathering Agreement, or any portion thereof, is or is not subject to section 365 of the Bankruptcy Code.  To the extent the proposed bankruptcy sale to Buyer does not occur, all rights of the parties are preserved, including with respect to assumption and assignment, any future sale, bankruptcy plan or confirmation order.

42.    Notwithstanding any other provision of this Order (including, without limitation, any orders or purchase agreements related thereto and any amended versions of the foregoing, the "**Sale Documents**"), the rights of U.S. Specialty Insurance Company (the "**Surety**") against the Debtors in connection with: (i) the surety bonds

41

issued by the Surety in respect of the Monroe/Washington Assets (collectively, the "**Bonds**"); (ii) that certain Payment and Indemnity Agreement, No. 0988 dated February 20, 2013, between certain of the Debtors and the Surety (the "**Indemnity Agreement**"); and (iii) any related documents (collectively, the "**Surety Documents**") are neither affected nor impaired by the Sale Documents.  Notwithstanding any provision in the Sale Documents: (a) if any of the Bonds have not been fully released or otherwise fully discharged, as and to the extent set forth in the Purchase Agreement, Surety may make copies of any books and/or records that may be held by the Buyer related to such claim, provided that copies are made only during ordinary business hours of the Buyer, as applicable, and at the Surety's cost; (b) all set-off and recoupment rights of Surety and obligees pursuant to the Bonds are preserved against the Debtors and to the extent applicable, the setoff and recoupment rights shall attach to the proceeds of the Sale in the same priority as described the DIP Order and all parties rights and defenses with respect to any such setoff and recoupment rights are also preserved; (c) the Surety Documents may not be assumed, assumed and assigned, or otherwise used for the benefit of the Buyer, the Debtors, or any related entities without the Surety's express consent; (d) Buyer will, on or before the Closing, obtain or cause to be obtained in the name of Buyer, replacements for the Bonds; if any of the Bonds remain outstanding as of the Closing Date under the Purchase Agreement, then Buyer will indemnify the Surety and hold the Surety harmless against any debt, liability, or obligation, including costs and expenses related thereto, that the Surety may incur under the Bonds attributable to periods from and after the Closing under the Purchase Agreement until such time as the Bonds are replaced in accordance with paragraph (e) below; (e) Buyer will not assume the Surety

Documents at Closing. Buyer and Debtors intend to enter into a Transition Services Agreement or other transition or interim agreement ("**Transition Agreement**"), then Debtors shall provide Surety with a copy of the Transition Agreement, which Transition Agreement shall provide that the Buyer indemnifies the Surety for any liability of the Surety that arises during the period of the Transition Agreement in connection with the Bonds (and provides that the Surety is a third party beneficiary of the Transition Agreement), no less than three (3) business days prior to Closing with the opportunity for Surety to object to such Transition Agreement in the Bankruptcy Court; (f) the Surety reserves all of its rights to modify, extend, or cancel any and all existing Bonds in accordance with the Surety Documents to the extent permitted by law; (g) the Surety has no obligation to issue any new bonds to any entity; and (h) to the extent the Closing of the Sale Transaction does not occur, this paragraph will be of no force and effect, and all parties rights are reserved provided however that nothing in any other paragraph in this Order shall affect any and all rights of the Surety and obligees.

43.    Notwithstanding anything to the contrary in this Order, the rights of Anchor, B&L Pipeco, Phoenix (each as defined in the DIP Order), Bedrock Petroleum Consultants, LLC ("**Bedrock**") and Keystone Clearwater Solutions, LLC ("**Keystone**") to argue, solely to the extent that the proceeds of the Sale Transaction, together with any proceeds of any subsequent sale of any DIP Collateral (as defined in the DIP Order) are sufficient to (1) repay or otherwise satisfy in full the DIP Obligations (subject to a Challenge by the Committee as set forth in paragraph 39 of this Order with respect to the DIP Roll-Up Loans with the DIP Agent reserving all rights with respect to same (each as defined in the DIP Order)) and (2) pay all accrued and unpaid post-petition administrative

expense claims (as and to the extent set forth in the second paragraph 2(b)(i) of the Bidding Procedures), that such parties have any right of marshalling, subrogation, contribution, adequate protection or allocation of any aggregate excess proceeds from such sales as among the Debtors, is hereby expressly preserved (collectively, the "**Preserved Rights**"); *provided* that the rights and defenses of the Debtors, the Committee, the DIP Agent or any other party in interest regarding the Preserved Rights or to dispute any such arguments are hereby expressly preserved; *provided, further* that no such Preserved Right shall permit the turnover, clawback or other avoidance of any amounts paid to the DIP Secured Parties in accordance with paragraph 37 hereof; *provided, further* that, solely for purposes of determining any Preserved Rights, the fact that no proceeds of the Sale Transaction were escrowed pending a determination of the Preserved Rights shall not be a factor in determining the merits of any Preserved Rights.  In furtherance of the foregoing, solely for the purposes of the Preserved Rights, paragraph 34 of the DIP Order is hereby modified to include Keystone and Bedrock wherever reference is made to the reservation or preservation of the rights of Anchor, B&L Pipeco, and Phoenix in such paragraph.

44.   The Debtors are authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, and instruments of transfer, and to take such other actions as may be reasonably necessary to perform the terms and provisions of the Purchase Agreement and all other agreements related thereto (including any documents relating to the repayment of the DIP Loans (as such term is defined in the DIP Order)), and the Debtors are authorized to take any other action that reasonably may be requested by the Buyer for the purpose of assigning, transferring,

granting, and conveying any or all of the Assets, or by the DIP Secured Parties in connection with evidencing the repayment of the DIP Obligations or the release of any DIP Liens.

45.     Notwithstanding Bankruptcy Rules 6004, 6006, and 7062 and any other applicable Bankruptcy Rules or applicable Local Rules to the contrary, this Order shall be effective immediately upon entry and shall not be subject to any stay in the implementation, enforcement, or realization of the relief granted herein.

46.     The Court retains jurisdiction, even after the closing of the Chapter 11 Cases, with respect to all matters arising from or related to the enforcement of this Order, including the authority to do the following:

(a)     interpret, implement, and enforce the terms and provisions of this Order, the Purchase Agreement, and any other agreement executed in connection therewith;

(b)     protect the Buyer, or any of the Assets, against any Liens, Claims and/or Interests;

(c)     resolve any disputes arising under or related to the Purchase Agreement, the Sale Transaction, or the Buyer's peaceful use and enjoyment of the Assets, whether or not a plan of reorganization (or liquidation) has been confirmed in the Chapter 11 Cases and irrespective of the provisions of any such plan or order confirming any such plan;

(d)     adjudicate all issues concerning all Liens, Claims and/or Interests in and to the Assets, including the extent, validity, enforceability, priority, and nature of all such Liens, Claims and/or Interests;

(e)     adjudicate any and all issues and/or disputes relating to the Debtors' right, title, or interest in the Assets and the proceeds thereof, the Motion, and the Purchase Agreement; and

(f)     adjudicate any and all remaining issues concerning the Debtors' right and authority to assume and assign the Assigned Contracts and Assigned Leases and Interests to the Buyer and resolve any objections to Cure Costs or any other objections by non-Debtor counterparties to any additional contracts or leases that the Buyer may elect, in accordance with the Purchase Agreement and the Bidding Procedures Order, to become Assigned Contracts or Assigned Leases and Interests and determine the Buyer's rights and obligations with respect to such assignment and the existence of any default under any Assigned Contract or Assigned Lease or Interest.

47.     The provisions of this Order are nonseverable and mutually dependent.

48.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction contemplated by the Purchase Agreement.

49.     Nothing in this Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any valid police or regulatory liability to a governmental unit to which the Buyer may be subject to as the post-sale owner or

operator of any Asset after the date of entry of this Order.  Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

50.   The Purchase Agreement and any related agreements, documents, or instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, so long as any such modification, amendment, or supplement does not have an adverse effect in any material respect on the Debtors' estates. The Debtors shall promptly file all material modification, amendments, and supplements to the Purchase Agreement, whether or not they adversely affect the Debtors.

51.   The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court that the Purchase Agreement and each and every provision, term, and condition thereof be authorized and approved in its entirety.

**Dated: August 28th, 2019**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**