## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EDGEMARC ENERGY HOLDINGS, LLC, *et al.*,[1] | Case No. 19-11104 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 23, 2019 at 10:00 a.m. (ET)**<br>**Objection Deadline: September 25, 2019 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION FOR AN ORDER EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO PURSUANT TO BANKRUPTCY CODE SECTION 1121(d)

The above-captioned debtors and debtors-in-possession (the "Debtors"), by and through their undersigned counsel, hereby submit the *Debtors' Motion for an Order Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereto Pursuant to Bankruptcy Code Section 1121(d)* (the "Motion"). In support of the Motion, the Debtors state as follows:

### JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: EdgeMarc Energy Holdings, LLC (6900), EM Energy Manager, LLC (5334), EM Energy Employer, LLC (8026), EM Energy Ohio, LLC (6935), EM Energy Pennsylvania, LLC (1541), EM Energy West Virginia, LLC (3771), EM Energy Keystone, LLC (7506), EM Energy Midstream Ohio, LLC (1268), and EM Energy Midstream Pennsylvania, LLC (3963). The Debtors' corporate headquarters and mailing address is 1800 Main Street, Suite 220, Canonsburg, PA 15317.

1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[2]

2.      The statutory bases for the relief sought herein is section 1121(d) of title 11 of Chapter 11 of the United States Code, 11. U.S.C. § 101 *et seq*. (as amended or modified, the "Bankruptcy Code") together with rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

### General Background

3.      On May 15, 2019 (the "Petition Date"), the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5.      On May 29, 2019, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in these Chapter 11 Cases pursuant to Bankruptcy Code section 1102(a)(1).

6.      The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of Callum Streeter in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 3] (the "Streeter Declaration") filed on the Petition Date.

---

[2] Pursuant to Local Rule 9013-1(f), the Debtors hereby confirm their consent to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter

***The Sale Process***

7.       On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving Stalking Horse Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [D.I. 19] seeking approval of, among other things, (i) bid procedures (the "Bid Procedures") for the sale of substantially all of Debtors' assets (the "Sale"), (ii) stalking horse protections, (iii) scheduling a hearing to approve the Sale (the "Sale Hearing"), (iv) the form and manner of the notices of Sale, auction and Sale Hearing, (v) assumption and assignment procedures (the "Contract Procedures"), and (vi) related relief.

8.       On June 21, 2019, the Court entered an order [D.I. 247] (as amended on July 12, 2019 by the *Order Approving Amended Bidding Procedures for Sale of Debtors' Assets* [D.I. 329], the "Bidding Procedures Order") approving the Bid Procedures Motion, scheduling the Sale Hearing for August 28, 2019 and establishing, among other things, the Bid Procedures and the Contract Procedures.

9.       On August 21, 2019, the Debtors filed the *Notice of (I) Designation of Successful Bid and Cancellation of Auction for the Debtors' Monroe/Washington Assets and (II) Extension of Sale Timeline for the Sale of the Debtors' Butler Assets* [D.I. 497] which, among other things, (i) designated the successful bidder for the assets relating to their operations in Monroe and Washington Counties (the "Monroe/Washington Assets"), and (ii) extended the sale timeline for

---

final orders or judgments consistent with Article III of the United States Constitution.

the Debtors' assets relating to their operations in Butler County, Pennsylvania (the "Butler Assets"), setting September 19, 2019 as the auction and September 24, 2019 as the Sale Hearing.

10.    On August 28, 2019, the Court entered the *Order (A) Approving Sale of Debtors' Monroe/Washington Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [D.I. 530] approving the sale of the Monroe/Washington Assets to the Stalking Horse Bidder.

### *The Bar Dates*

11.    On July 16, 2019, the Court entered the *Order Granting Motion of the Debtors for Entry of an Order (A) Establishing Bar Dates for Filing Proofs of Claim, (B) Approving the Form and Manner for Filing Proofs of Claim and (C) Approving Notice Thereof* [D.I. 352] (the "Bar Date Order") establishing, among other things, August 21, 2019 as the general bar date and administrative bar date and November 12, 2019 as the governmental bar date (collectively, the "Bar Dates").

## **RELIEF REQUESTED**

12.    By this Motion, the Debtors request the entry of an order, pursuant to Bankruptcy Code section 1121(d) and Bankruptcy Rule 9006(b)(1), granting a ninety (90) day extension of the original period of one hundred twenty (120) days after the commencement of the Chapter 11 Cases during which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Plan Period"). The Debtors also seek a ninety (90) day extension of the original one hundred eighty (180) day period after the commencement of the Chapter 11 Cases to obtain acceptance of a plan, during which time competing plans may not be filed (the "Solicitation Period" and together with the Exclusive Plan Period, the "Exclusive Periods").

13.     The Exclusive Periods are set to expire on September 12, 2019 and November 12, 2019, respectively.[3] The Debtors request a ninety (90) day extension of the Exclusive Periods to December 11, 2019 and February 10, 2020, respectively, pursuant to Bankruptcy Code section 1121(d).

14.     Such an extension of the Exclusive Periods is without prejudice to the rights of the Debtors to seek further extensions thereof.

## BASIS FOR RELIEF

15.     The Court is authorized to extend a debtor's exclusive periods upon a demonstration of cause, pursuant to Bankruptcy Code section 1121(d), which provides:

> Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

16.     Although the Bankruptcy Code does not define the term "cause," the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231, 232 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interest by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties-in-interest).

17.     In determining whether a debtor has had an adequate opportunity to negotiate a chapter 11 plan, a court should consider a variety of factors to assess the totality of circumstances affecting whether or not "cause" exists to extend the Exclusive Periods. *In re*

---

[3] Pursuant to Local Rule 9006-2, the deadline shall be automatically extended until the Court acts on the motion, without the necessity for the entry of a bridge order.

*McLean Industries, Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).  The *McLean Industries* court held that the relevant factors are:

> (a)     the size and complexity of the debtor's case;
>
> (b)     the existence of good faith progress towards reorganization;
>
> (c)     a finding that the debtor is not seeking to extend exclusivity to pressure creditors "to accede to [the debtor's] reorganization demands";
>
> (d)     existence of an unresolved contingency; and
>
> (e)     the fact that the debtor is paying its bills as they come due.

*McLean Industries*, 87 B.R. at 834 (citations omitted).

18.     An application of the foregoing standards to the facts of the Chapter 11 Cases demonstrates sufficient "cause" to grant the Debtors' requested extensions.

**A.     The Size and Complexity of the Debtors' Cases**

19.     In *McLean Industries* and numerous other cases, courts have identified size and complexity of a chapter 11 case as a determining factor of whether a court should grant an extension of the exclusive periods.  *See, e.g.*, *In re Central Jersey Airport Services*, 282 B.R. 176, 184 (Bankr. D. N.J. 2002); *In re Texaco, Inc.*, 76 B.R. 322. 326 (Bankr. S.D. N.Y. 1987) (finding "cause" to extend exclusivity based on size of case); *In re Manville Forest Prods. Corp.*, 31 B.R. 991, 995 (S.D.N.Y. 1983) ("[T]he sheer mass, weight, volume and complications of the Manville filings undoubtedly justify a shakedown period").

20.     The size and complexities of the Chapter 11 Cases warrant extension of the Exclusive Periods.  As set forth in the Streeter Declaration, these cases involve nine (9) Debtors that are in the business of exploration and production of natural gas in the Appalachian Basin. The Debtors control approximately 45,000 net acres in Monroe and Washington Counties in Ohio and Butler County in Pennsylvania and have drilled and developed 60 producing wells

thereon.  The multifaceted nature of the Debtors' assets and business operations present unique complexity to these Chapter 11 Cases and as set forth below has resulted in a bi-furcated sale process which is not yet complete.  In addition, there have already been hundreds of claims filed against the Debtors and their estates.  As such, the size and complexity of these Chapter 11 Cases warrant extension of the Exclusive Periods.

21.    The Debtors have prepared and filed a number of other operational and procedural motions to ensure that these cases move forward as expeditiously as possible.  Since the Petition Date, the Debtors have expended considerable time and effort by:

    a.    handling countless operational issues, including responding to creditor, commercial counterparty, financial institution, and land owner concerns and questions;

    b.    preparing, filing, and amending the Debtors' schedules and statements of financial affairs and the amended versions thereof;

    c.    preparing for and attending the formation meeting of the Committee and the section 341 meeting of creditors;

    d.    preparing and filing the motion to establish the Bar Dates;

    e.    marketing, negotiating and preparing for the sale of the Debtors' businesses on both a company-wide and asset level basis;

    f.    finalizing the sale of the Monroe/Washington Assets; and

    g.    participating in extensive and lengthy discovery regarding the *Emergency Motion of the Official Committee of Unsecured Creditors for Leave to Conduct Discovery of ETC Northeast Pipeline LLC Under Rule 2004 of the Federal Rules of Bankruptcy Procedure* [D.I. 167].

22.    As noted above, the Debtors have devoted substantial time and effort to pursuing a marketing process to maximize value for the Debtors' estates.  The complexity of concurrently negotiating various transactions with a number of potential bidders has required a significant amount of time and energy from the Debtors and their advisors.  Further, this process is not yet complete. As a result, the Debtors require additional time for the Exclusive Periods to allow the sale process to run its course in accordance with the Court-approved Bid Procedures.

23.    Given the Court-approved Bid Procedures, the Debtors believe that it is reasonable to request an extension of the Exclusive Periods to a date beyond the Sale Hearing scheduled for September 24, 2019 to approve the sale of the Butler Assets.  Granting the requested extensions will afford the Debtors a full and fair opportunity to consummate the Monroe/Washington and Butler Asset sales, following which they will devote their efforts to the winding down of the Debtors' business pursuant to a plan process or otherwise without the distraction, cost and delay of a competing plan process. *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) (citation and internal quotation marks omitted) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the Debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan.  It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.").  As such, because of the timeline contemplated by the Bid Procedures, this factor supports an extension of the Exclusive Periods to afford the Debtors the opportunity to formulate a chapter 11 plan following the anticipated asset sales.

### B.    Good Faith Progress Towards Filing a Chapter 11 Plan

24.    While the Debtors' primary focus has been on negotiating one or more sale transactions for maximum consideration, the Debtors fully appreciate that the proceeds of any such transactions may need to be distributed pursuant to a plan and are desirous of doing so as quickly as feasible.

25.    It is difficult to formulate and negotiate a plan until transaction proceeds and claims asserted against the Debtors' estates are known.    Without this basic economic information, parties-in-interest cannot fully appreciate what the terms of a consensual plan should be.    However, as mentioned above, this information will be known in short order – the auction for the Butler Assets is scheduled for September 19, 2019 and a hearing to approve the sale is scheduled for September 24, 2019.    Additionally, the Bar Date for general and administrative claims was August 21, 2019 and the governmental Bar Date is November 12, 2019.    With these final pieces of the puzzle, the Debtors will be in a position to determine whether a plan is feasible.    Accordingly, this factor weighs in favor of the Court granting the relief sought herein.

### C.    The Debtors are Requesting Extensions of the Exclusive Periods for Appropriate Purposes

26.    The Debtors are seeking extensions of the Exclusive Periods to enable the Debtors to consummate the sale of the Monroe/Washington Assets, market and sell the Butler Assets, review and reconcile claims after the expiration of the Bar Dates, and negotiate a consensual plan with their constituents – not for the purpose of pressuring creditors to accede to any demands. *McLean Industries*, 87 B.R. at 834.

27.    Since the Petition Date, the Debtors have worked closely with their creditors and stakeholders and have complied with the obligations placed on the Debtors under the Bankruptcy

Code.  In meeting their fiduciary duties to their creditors, the Debtors have recognized the need to deal with all parties-in-interest in these Chapter 11 Cases and have consistently conferred with these constituencies on every major substantive and administrative matter, attempting to reach agreement or a compromise to avoid lengthy and expensive disputes.

28.    The Debtors' request to extend the Exclusive Periods is made in good faith and will afford the Debtors an opportunity to propose a realistic and viable chapter 11 plan. Extending the Exclusive Periods will provide the Debtors with the opportunity to negotiate with creditors and other parties-in-interest and propose a consensual or otherwise confirmable chapter 11 plan.  In light of this, it cannot be said that the Debtors have sought an extension of the Exclusive Periods for any improper purpose.

**D.    An Extension of the Exclusive Periods is Required to Resolve Contingencies**

29.    The Debtors' filing of a plan is contingent on, among other things, the filing of claims prior to the Bar Dates and the terms of any prevailing bid or bids for the Butler Assets, including such things as the purchase price, assumption of liabilities and assumption or rejection of contracts and leases.  The outcome of these contingencies will have a significant impact on the terms of a plan and the cash available to satisfy allowed claims and interests.

30.    Accordingly, an extension is required to allow the Debtors to solve these contingencies.

**E.    The Debtors are Paying their Ongoing Expenses as they Become Due**

31.    Since the inception of these Chapter 11 Cases, the Debtors have been satisfying their postpetition liabilities in the ordinary course of business.  The Debtors' prudent decisions regarding their assets and their diligent efforts to maximize value for all creditors and stakeholders through one or more sale transactions over the course of these Chapter 11 Cases have enhanced the Debtors' bankruptcy estates and the potential recovery for their creditors.

32.    The Debtors also note that relief similar to that requested in this Motion has been granted to other debtors in this jurisdiction in other chapter 11 cases. *See, e.g.*, *In re Southcross Energy Partners, L.P.*, No. 19-10702 (Walrath, J.) (Bankr. D. Del. July 15, 2019); *In re Imerys Talc America, Inc.*, No. 19-10289 (Silverstein, J.) (Bankr. D. Del. June 25, 2019); *In re CR Holding Liquidating, Inc.*, No. 19-10210 (Silverstein, J.) (Bankr. D. Del. May 31, 2019); *Claire's Stores, Inc., et al.*, No. 18-10584 (Bankr. D. Del. Aug. 17, 2018) (Walrath, J.); *Dendreon Corp., et al.*, No. 14-12515 (Bankr. D. Del. Apr. 10, 2015) (Silverstein, J.); *Phoenix Payment Systems, Inc.*, No. 14-11848 (Bankr. D. Del. Dec. 19, 2014) (Walrath, J.); *USEC Inc.*, No. 14-10475 (Bankr. D. Del. June 27, 2014) (Sontchi, J.); *NEC Holdings Corp.*, No. 10-11890 (Bank. D. Del. Oct. 4, 2010) (Walsh, J.); *Centaur, LLC*, No. 10-10799 (Bank. D. Del. July 28, 2010) (Carey, J.).

33.    The requested extension of the Exclusive Periods of ninety (90) days to December 11, 2019 and February 10, 2020, respectively, does not prejudice any parties in interest and avoids the potential encouragement of the Debtors or any other parties-in-interest to file an insufficient and non-consensual chapter 11 plan.

## **NOTICE AND NO PRIOR REQUEST**

34.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) U.S. Trustee; (b) the Committee; (c) KeyBank National Association, the administrative agent under the Debtors' postpetition secured credit facility; and (d) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

35.    No previous request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order: (i) granting the relief requested by the Motion and extend the Exclusive Plan Period through and including December 11, 2019 and extend the Solicitation Period through and up to February 10, 2020; and (ii) granting such other and further relief as is just and proper.

Dated: September 11, 2019
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Kimberly A. Brown (No. 5138)
Holly M. Smith (No. 6497)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  landis@lrclaw.com
       mumford@lrclaw.com
       brown@lrclaw.com
       smith@lrclaw.com

-and-

**DAVIS POLK & WARDWELL LLP**
Darren S. Klein (admitted *pro hac vice*)
Lara Samet Buchwald (admitted *pro hac vice*)
Aryeh E. Falk (admitted *pro hac vice*)
Jonah A. Peppiatt (admitted *pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: darren.klein@davispolk.com
        lara.buchwald@davispolk.com
        aryeh.falk@davispolk.com
        jonah.peppiatt@davispolk.com

*Counsel to the Debtors and Debtors-In-Possession*