# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>EDGEMARC ENERGY HOLDINGS, LLC,<br>*et al.,* [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11104 (JTD)<br><br>Jointly Administered<br><br>**Hearing Date**:<br>**November 5, 2019, at 11:00 a.m. (ET)**<br><br>**Objection Deadline**:<br>**October 29, 2019, at 4:00 p.m. (ET)** |

## MOTION OF THE OFFICIAL COMMITTEE FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTION 1112(b) CONVERTING THESE CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in these Chapter 11 cases, by and through its undersigned counsel, respectfully submits this Motion for an Order, substantially in the form attached hereto as **Exhibit A**, pursuant to Bankruptcy Code Section 1112(b) immediately converting these cases to proceedings under Chapter 7 and granting related relief.  In support of the Motion, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    These Chapter 11 cases have run their course, and do not have a viable path to conclusion.  Today, the case situation may be summed up in the following way:

- **No Operating Business**: The Debtors began these cases with operating wells in Ohio and non-operating (i.e., "shut-in") wells in Pennsylvania. The Ohio assets have been sold.  The Pennsylvania wells have not been sold, for the reason described in the next bullet.  The Debtors no longer

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: EdgeMarc Energy Holdings, LLC (6900), EM Energy Manager, LLC (5334), EM Energy Employer, LLC (8026), EM Energy Ohio, LLC (6935), EM Energy Pennsylvania, LLC (1541), EM Energy West Virginia, LLC (3771), EM Energy Keystone, LLC (7506), EM Energy Midstream Ohio, LLC (1268), and EM Energy Midstream Pennsylvania, LLC (3963).  The Debtors' corporate headquarters and mailing address is 1800 Main Street, Suite 220, Canonsburg, PA 15317.

produce income or have any sort of viable business enterprise. No reorganization or rehabilitation is possible.

- **The Pennsylvania Assets Failed To Attract Buyers.**  On September 19, 2019, the Debtors conducted an auction for the "shut-in" Pennsylvania wells. The auction failed to produce a sufficiently actionable bid. The auction and previously-scheduled sale hearing were cancelled.  <u>See</u> Docket Number 615 (Notice of Adjournment of Auction and Sale Hearing for the Sale of the Debtors' Butler Assets).

- **The Estates Do Not Have Liquidity And Are Administratively Insolvent**. Also on September 19, 2019, the Debtors' DIP lender (KeyBank) delivered to the Debtors a letter styled "Notice of Default and Reservation of Rights Regarding Event of Default" (the "**DIP Default Notice**").  A true and correct copy of the DIP Default Notice is attached hereto as **Exhibit B**.  The Debtors, consequently, no longer have access to post-petition financing and, given that they do not produce income, lack liquidity.  The estates are, in turn, administratively insolvent, with professionals working within the "carve-out."  <u>See</u> Docket Numbers 638-641 (KeyBank's objections to fee applications filed by Committee professionals).

- **The Estates' Other Valuable Asset (Claims Against ETC) Is Far From Monetization.** Much information has been provided to this Court about how ETC poorly constructed the Pennsylvania pipeline, racking up hundreds of citations for State law violations, resulting in an explosion and complete "shut-in" of the Debtors' Pennsylvania operations. <u>See</u>, <u>e.g.</u>, Adv. Pro. No. 19-50268, Docket No. 5 (Committee's motion to intervene in ETC litigation as co-plaintiff).  After 8 months, the litigation has not advanced even past the motion to dismiss phase.

- **The Parties Are At An Intractable Impasse**. Months of negotiations have failed to produce an actionable plan of reorganization or liquidation. A full day of judicial mediation, overseen by Chief Bankruptcy Court Judge David R. Jones on October 2, 2019, also failed to produce a path forward.  The Committee is unaware of any basis or reason to think this dynamic is going to change.

2.       Under the circumstances, there is no reason to continue these Chapter 11 cases. Pursuant to Bankruptcy Code Section 1112(b), the Committee moves for conversion of these cases to Chapter 7 because: (i) the Debtors are suffering substantial or continuing losses to or diminution of the estate; (ii) there is no reasonable likelihood of rehabilitation of the Debtors'

business; and (iii) the Debtors are unlikely to effectuate the confirmation of a Chapter 11 plan. The relief requested should be granted.

## JURISDICTION

3.      This Court has jurisdiction to hear this matter and enter a final Order granting the relief requested herein pursuant to 28 U.S.C. Sections 1334 and 157(b)(2).   Venue is proper pursuant to 28 U.S.C. Sections 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. Section 157(b)(2) upon which this Court has the authority to enter a final Order.  The statutory and rule predicates for this Motion are 11 U.S.C. Section 1112(b) and Bankruptcy Rules 1017 and 1019.

## RELEVANT BACKGROUND

4.      **General Case Background**.  On May 15, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code.  By Order of the Court, these Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered.  Since the Petition Date, the Debtors have continued to operate and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.  No trustee or examiner has been appointed in these Chapter 11 cases.

5.      On May 29, 2019, the Office of the United States Trustee for the District of Delaware formed the Committee in these Chapter 11 cases.  See Docket No. 114 (Notice of Appointment of Creditors' Committee).

6.      **Historical Business Operations**.  Pre-petition, the Debtors conducted drilling and exploration activities in Pennsylvania and Ohio.   The Debtors historically controlled contiguous positions of approximately 45,000 net acres, consisting of: (i) approximately 32,000 net core acres in Butler County, Pennsylvania (divided into two production areas, "Butler North"

(approximately 21,000 acres) located in the northeast corner of Butler County, and "Butler South" (approximately 11,000 acres) located in central Butler County) (the "**PA Assets**"); and (ii) approximately 11,000 net acres in Monroe County, Ohio and approximately 2,000 net acres in Washington County, Ohio. <u>See</u> Docket No. 3 at ¶ 20 (Declaration of Callum Streeter in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings).

7.     **ETC's Pipeline Explodes; The Resulting "Shut-In" Of Operations**.   On September 10, 2018, a segment of the high-pressure pipeline − part of the "Revolution System" that ETC Northeast Pipeline, LLC ("**ETC**") was constructing for processing and transporting the Debtors' Pennsylvania gas − slid down a hill and exploded. <u>Id</u>. at ¶ 6.   Thereafter, ETC refused to allow the Debtors to flow gas through any of its pipelines absent a release of all Debtor causes of action.   On January 29, 2019, the Debtors shut-in production and ceased operation at all of their Pennsylvania wells. <u>Id</u>. at ¶ 43.

8.     **The Litigation**.   On February 7, 2019, ETC filed a complaint against the Debtors seeking a declaration that it bore no liability.   <u>See</u> <u>ETC Northeast Pipeline, LLC v. EM</u> <u>Energy</u> <u>Pennsylvania, LLC</u>, No. GD-19-002052 (Ct. Com. Pl., Allegheny Cnty., Feb. 7, 2019).   On February 27, 2019, the Debtors filed an answer and counterclaims demanding, among other things, an award of damages.   On June 28, 2019, the litigation was transferred to this Court, and designated Adversary Proceeding Number 19-50268 (the "**Adversary Proceeding**").

9.     The Committee has conducted a substantial investigation of the nucleus of fact at issue in the litigation.   To date, the Committee has reviewed over 24,000 documents produced by the Debtors, ETC, and others, and has taken five depositions.   Based on this investigation, the Committee determined that substantial additional grounds exist to hold ETC liable.   On September 12, 2019, the Committee filed a motion to intervene in the Adversary Proceeding and

attached a draft complaint laying out a more fulsome factual recitation and additional causes of action.  See Adversary Proceeding Docket Number 5.[2]  As of the date of this filing, the intervention motion remains pending before this Court, subject to a to-be-scheduled hearing date.

10.  **Efforts To Sell The Business Assets**.  On August 28, 2019, the Court entered an Order approving a sale of the Debtors' Ohio assets, see Docket Number 530, yielding approximately $50 million in sale proceeds.  This sale, standing alone, was woefully insufficient to satisfy all outstanding obligations (today exceeding $100 million) under the Debtors' DIP loan.

11.  As indicated above, on October 19, 2019, the Debtors conducted an auction for the PA Assets,[3] but the auction failed to produce an actionable bid.  The auction and previously scheduled sale hearing were cancelled.  See Docket Number 615.

12.  **Administrative Insolvency**.  On June 18, 2019, the Court entered a final Order approving the DIP financing offered by KeyBank. See Docket Number 223.  Pursuant to the final Order, KeyBank was authorized to "roll-up" into the DIP loan approximately $78 million in pre-petition indebtedness, thus affording such pre-petition debt (as well as all post-petition borrowings) administrative expense status, among other repayment benefits.  In entering this final Order, the Court overruled an objection by the Committee.  See Docket Number 145.

---

[2]    The Committee fully incorporates by reference, as if fully set forth herein, the *Motion of the Official Committee of Unsecured Creditors to Intervene in Adversary Proceeding*, dated September 12, 2019 [Docket Number 5], including all attachments thereto.

[3]    In connection with the auction (but before the auction's conclusion), the Committee timely filed its *Objection of Official Committee of Unsecured Creditors to Motion of Debtors for Entry of Order (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief*, dated September 12, 2019 [Docket Number 577] (the "**Committee Sale Objection**").  The auction result rendered the Committee Sale Objection moot, but the factual recitation and points raised therein bear on, and thus inform, this Motion.  The Committee therefore fully incorporates by reference, as if fully set forth herein, the Committee Sale Objection, including all attachments thereto.

13.     Also as indicated above, on September 19, 2019, KeyBank delivered to the Debtors the DIP Default Notice, thus terminating all DIP loan funding.  See Exhibit B.  It has since objected to interim fee applications filed by Committee professionals.  See Docket Numbers 638-641.

14.     **The Parties Are At An Impasse**.  Negotiations have not produced a viable framework for moving these cases forward.  On September 29, 2019, the Court entered an Order appointing Chief Bankruptcy Court Judge David R. Jones as mediator.  See Docket Number 628.  Chief Judge Jones conducted a full mediation day on October 2, 2019, but those efforts also failed to produce a viable framework for moving these cases forward.

15.     Today, the Committee is unaware of any evidence or has any reason to believe that current circumstances will change.  Simply stated, there is nothing more here for Chapter 11 to do.

## BASES FOR RELIEF REQUESTED

16.     Bankruptcy Code Section 1112(b) provides that, on request of a party in interest, and after notice and a hearing, "the Court shall convert a case to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause."  11 U.S.C. § 1112(b)(1) (emphasis added).  Under Bankruptcy Code Section 1112(b), conversion or dismissal is mandatory upon a finding of "cause."  See 11 U.S.C. § 1112(b)(1);   DCNC North Carolina I, LLC v. Wachovia Bank, N.A., 2009 WL 3209728, *6 (E.D. Pa. Oct. 5, 2009); see also In re The Reserves Resort, Spa & Country Club LLC, 2013 WL 3523289, *2 (Bankr. D. Del. July 12, 2013) (Gross, Bankr. J.).

17.     Although "cause" is not defined, Bankruptcy Code Section 1112(b)(4) provides a non-exclusive list of sixteen "causes" for conversion.  11 U.S.C. § 1112(b)(4)(A)-(P); In re Am.

Capital Equip., LLC, 688 F.3d 145, 1662 n. 10 (3d Cir. 2012) ("the listed examples of cause are not exhaustive"); In re Mechanical Maintenance, Inc., 128 B.R. 382, 386 (E.D. Pa. 1991).  At least two separate and independent grounds under Bankruptcy Code Section 1112(b)(4) exist here and demand conversion of these cases.  Specifically, there is both: (A) a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and (M) an inability to effectuate substantial consummation of a confirmed plan. See 11 U.S.C. § 1112(b)(4)(A) and (M).

18.     If the movant establishes any basis for "cause," the burden then shifts to the debtor to prove it falls within the Section 1112(b)(2) "unusual circumstances" exception to Bankruptcy Code Section 1112(b)(1)'s mandatory conversion.  However, the Third Circuit instructs that "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." In re Brown, 951 F.2d 564, 572 (3d Cir.1991) (citing In re Canal Place Ltd. Partnership, 921 F.2d 569, 577 (5th Cir.1991)); see also In re Woodbrook Assocs., 19 F.E. 312, 317 (7th Cir. 1994) ("The very purpose of § 1112(b) is to cut short [the] plan and confirmation process where it is pointless.").  If cause to convert or dismiss is present, the Third Circuit has indicated that a court should then choose between conversion and dismissal based on "the best interest of creditors and the estate."  In re Am. Capital Equip., LLC, 688 F.3d at 161.

19.     Cause for conversion exists and, thus, the relief requested should be granted.

**A.     Cause Exists To Convert These Cases To**
**Chapter 7 Proceedings Under Section 1112(b)(4)(A).**

**1.     Anticipated Estate Diminution Satisfies Section 1112(b)(4)(A).**

20.     Conversion is warranted where a debtor is "suffering substantial or continuing losses to or diminution of the estate and there is no reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A).  The inquiry under Bankruptcy Code Section 1112(b)(4)(A) is two-fold.

<u>In re Gateway Access Sols., Inc.</u>, 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007). "First, the Court must look at the track record of the Debtor to determine if it is suffering losses or making gains. Second, the Court must determine whether rehabilitation is likely given the evidence presented at hearing." <u>Id.</u>

21.     Respecting the first prong, "[i]n the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash follow — including that resulting only from administrative expenses — effectively comes straight from the pockets of the creditors.  This is enough to satisfy the first element of [continuing loss to or diminution of the estate]." <u>Loop Corp. v. U.S. Trustee</u>, 379 F.3d 511, 516 (8th Cir. 2004).

22.     As noted above, the Debtors have ceased business operations.  Their sole business assets (the PA Assets) are fully "shut-in."  The Debtors do not have any prospects for a near-term change in circumstance.  The estates are, thus, necessarily and substantially cash-flow-negative going forward.

**2.      There Is No Likelihood of Rehabilitation, Thus <u>Satisfying The Second Prong of Section 1112(b)(4)(A).</u>**

23.     For purposes of Bankruptcy Code Section 1112(b), "rehabilitation" means an ability to re-establish the debtor-entity on a sound financial basis. <u>See</u> <u>In re BH S&B Holdings, LLC</u>, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010) ("[R]ehabilitation means to put back in good condition and reestablish on a sound basis.").

24.     An intention to "liquidate (rather than rehabilitate), demonstrates that there is no likelihood of rehabilitation." <u>Id.</u> at 347; <u>see also</u> <u>Loop Corp.</u>, 379 F.3d 511 (granting U.S. Trustee's motion after last round negotiations with lenders failed, the debtors were cash flow negative, there were mounting costs to the estate, and the plan of liquidation was evidence of a lack of likelihood of rehabilitation).  In <u>BH S&B</u>, the court noted that, although a Chapter 11

liquidation plan is permissible, courts have converted or dismissed cases on facts similar to <u>Loop</u> and <u>BH S&B</u>. <u>Id</u>. at 348 (citing <u>In re Natrl Plants & Lands Mgmt. Co., Ltd.</u>, 68 B.R. 394, 395 (Bankr.S.D.N.Y.1986) (converting Chapter 11 case, in part, because the debtor's proposed liquidating plan conceded that the business would be terminated and the debtor was losing $60,000 per month in chapter 11).

25.     Here, the Debtors have no business to rehabilitate.  The estates are today comprised of individual, non-operating assets (a proverbial "bundle of sticks").  At best, the bankruptcy is a liquidation and, so far at least, a failed one at that.  It is time for conversion.

**B.     Cause Also Exists To Convert These Cases To Chapter 7 Proceedings Under Section 1112(b)(4)(M).**

26.     Conversion is warranted where a debtor presents an "inability to effectuate substantial consummation of a confirmed plan." 11 U.S.C. § 1112(b)(4)(M).  A "debtor's ability to effectuate a plan may well turn on practical considerations, including whether confirmation can be achieved." <u>In re Babayoff</u>, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011); <u>see</u> Loop <u>Corp.</u>, 379 F.3d at 515, n. 2 (8th Cir. 2004) (discussing bankruptcy court's skepticism about whether any plan would be confirmable as grounds for cause to convert) (citing <u>In re Fossum</u>, 764 F.2d 520, 521-22 (8th Cir.1985) ("A finding that the [debtors] were unable to effectuate any plan which would be confirmable is a proper basis for dismissal of the [debtors'] chapter 11 case.")); <u>see also</u> <u>In re Lamar Estates, Inc.</u>, 6 B.R. 933 (Bankr. E.D. N.Y. 1980) (debtors' inability to effectuate plans of reorganization sufficient cause to convert); <u>In re DCNC North Carolina I, LLC</u>, 407 B.R. 651, 665 (Bankr. E. D. Pa. 2009) (same).

27.     As instructed by the Seventh Circuit Court of Appeals, "[t]he very purpose of § 1112(b) is to cut short [the] plan and confirmation process where it is pointless."  <u>In re Woodbrook Assocs.</u>, 19 F.R. 312, 317 (7th Cir. 1994) (citations omitted).  Further, the Supreme

Court has noted that the "preservation of business enterprises must not be at the expense of creditors." Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 119 n.14 (1939) (internal citations omitted); see also In re Gonic Realty Trust, 909 F.2d 624, 626-27 (1st Cir. 1990) ("The court [in exercising its discretion under Section 1112(b)] must exercise its sound judgment in reaching a determination and must ascertain that the decision is in the best interest of the creditors."). Stated differently by the Sixth Circuit Court of Appeals: "The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state . . . '[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, Chapter 11 has lost its *raison d'être.*'" In re Whiteshall Settlor's Trust, 758 F.2d 1136, 1137 (6th Cir, 1985) (internal citations omitted).

28.     Here, there is no reasonable likelihood of confirming a Chapter 11 plan.  Today, there is insufficient cash value realizable to the estates to satisfy KeyBank's administrative expense claim under its DIP loan.  Likewise, there is insufficient cash value realizable to satisfy other administrative expense claims, and KeyBank has already lodged objections to paying certain of them. See Docket Numbers 636-641 (KeyBank's objections to fee applications filed by Committee professionals).  There are no near-term prospects for improvements to this situation. There is nothing left to be done via a Chapter 11 plan that cannot be more effectively and efficiently achieved in Chapter 7.  It is time to convert these cases.

**C.     Matters Pertaining To The Election Of A Chapter 7 Trustee.**

29.     Upon conversion, creditors may request that the United States Trustee hold an election for the appointment of a Chapter 7 trustee.  11 U.S.C. § 702(b).  The Committee hereby makes such request.

30.     The election is to occur at a new meeting of creditors, to be conducted shortly after conversion.  See In re Richards, 43 B.R. 549, 552 (Bankr. D. Minn. 1984).  At such election, a creditor may vote only if it's claim: (i) is "allowable, undisputed, fixed, liquidated, [and] unsecured"; and (ii) only if such creditor "does not have an interest materially adverse … to the interest" of other unsecured creditors. 11 U.S.C. § 702(a).

31.     To ensure an efficient and appropriate election, the Committee hereby requests that this Court make two election-related determinations.  First, the Committee requests the Court find that KeyBank is not allowed to participate at the election, on account of any deficiency claim pertaining to its pre-petition debt.  As indicated above, all such debt has been "rolled-up" into the DIP loan and, today, enjoys administrative expense priority.  See Docket Number 223.  KeyBank, thus, does not qualify for voting per Bankruptcy Code Section 702(a)(1).  See Matter of Peter DelGrande Corp., 138 B.R. 458, 461 (Bankr. D.N.J. 1992).

32.     Second, the Committee requests that the Court find that ETC, any ETC-related and ETC-affiliated creditors also should be excluded from the election.  That includes Rover Pipeline LLC, an entity largely owned and controlled by ETC, which has filed proofs of claim (numbers 40, 41 and 42) each in the amount of approximately $800 million.  To be sure, all such entities hold "an interest materially adverse … to the interest" of the Debtors' general unsecured creditors.  **Axiomatic, ETC should not be allowed to vote for/against the person who will be responsible for zealously prosecuting estate litigation against ETC**.  See In re Williams, 277 B.R. 114, 119 (Bankr. C.D. Cal. 2002) ("To allow the other party to the lawsuit to select the trustee would put her in an enviable but unjust position. The law does not sanction having Swenson choose her opponent on appeal any more than it allows her to select debtor's attorney.")

## <u>NOTICE</u>

33.     Notice of this Motion has been given to (i) the U.S. Trustee; (ii) counsel to the Debtors; (iii) counsel to the Debtors' secured lenders; (iv) any party requesting notice under Bankruptcy Rule 2002; and (v) all creditors on the Debtors' creditors matrix.  The Committee submits that no other or further notice is required.

*(Remainder of Page Intentionally Left Blank)*

**WHEREFORE**, the Committee requests that the Court enter an Order substantially in the form attached hereto:  (i) immediately converting the Debtors' Chapter 11 cases to Chapter 7 cases, (ii) finding that, at the special meeting of creditors to elect a Chapter 7 trustee, neither KeyBank, ETC, nor any ETC-related or affiliated creditors (including Rover Pipeline LLC) shall be entitled to vote; and (iii) granting the Committee such other relief as is just and proper.

Dated: October 9, 2019
      Wilmington, Delaware

      **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

      */s/  Robert J. Dehney*
      Robert J. Dehney (No. 3578)
      Eric D. Schwartz (No. 3134)
      Andrew R. Remming (No. 5120)
      Eric W. Moats (No. 6441)
      1201 North Market Street, 16th Floor
      P. O. Box 1347
      Wilmington, DE 19899-1347
      Telephone:  (302) 658-9200
      Email:   rdehney@mnat.com
              eschwartz@mnat.com
              aremming@mnat.com
              emoats@mnat.com

      - and -

      **BROWN RUDNICK LLP**
      Robert J. Stark (admitted *pro hac vice*)
      Sigmund S. Wissner-Gross (admitted *pro hac vice*)
      Kenneth J. Aulet (admitted *pro hac vice*)
      Andrew M. Carty (admitted *pro hac vice*)
      Justin G. Cunningham (admitted *pro hac vice*)
      Seven Times Square
      New York, NY 10036
      Telephone:  (212) 209-4800
      Email:   rstark@brownrudnick.com
              swissnergross@brownrudnick.com
              kaulet@brownrudnick.com
              acarty@brownrudnick.com
              jcunningham@brownrudnick.com

      *Counsel for the Official Committee*
      *of Unsecured Creditors*