## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EDGEMARC ENERGY HOLDINGS, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-11104 (JTD)<br><br>(Jointly Administered)<br>**Hearing Date: February 7, 2020 at 10:00am**<br>**Butler Adequate Assurance Objection Deadline:**<br>**February 7, 2020**<br><br>**Ref. Nos. 247, 329, 497, 594, 615, 628, 735** |

### NOTICE OF SELECTION OF SUCCESSFUL BID, SALE HEARING AND CANCELLATION OF AUCTION FOR THE DEBTORS' BUTLER ASSETS

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court") on May 15, 2019 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE** that, on June 21, 2019, the Court entered the *Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Setting Procedures to Seek Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (V) Approving Assumption and Assignment Procedures and (VI) Granting Related Relief* [D.I. 247] (as amended on July 12, 2019 by the *Order Approving Amended Bidding Procedures for Sale of Debtors' Assets* [D.I. 329], the "Bidding Procedures Order")[2] which authorized the Debtors to extend the deadlines set forth therein in their Permitted Discretion.

**PLEASE TAKE FURTHER NOTICE** that, on August 21, 2019, the Debtors filed the *Notice of (I) Designation of Successful Bid and Cancellation of Auction for the Debtors' Monroe/Washington Assets and (II) Extension of Sale Timeline for the Sale of the Debtors' Butler Assets* [D.I. 497].

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: EdgeMarc Energy Holdings, LLC (6900), EM Energy Manager, LLC (5334), EM Energy Employer, LLC (8026), EM Energy Ohio, LLC (6935), EM Energy Pennsylvania, LLC (1541), EM Energy West Virginia, LLC (3771), EM Energy Keystone, LLC (7506), EM Energy Midstream Ohio, LLC (1268) and EM Energy Midstream Pennsylvania, LLC (3963). The Debtors' corporate headquarters and mailing address is 1800 Main Street, Suite 220, Canonsburg, PA 15317.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order and Bidding Procedures approved therein.

**PLEASE TAKE FURTHER NOTICE** that, on September 16, 2019, the Debtors filed the *Notice of Rescheduled Sale Hearing for the Debtors' Butler Assets* [D.I. 594].

**PLEASE TAKE FURTHER NOTICE** that, on September 20, 2019, the Debtors filed the *Notice of Adjournment of Auction and Sale Hearing for the Sale of the Debtors' Butler Assets* [D.I. 615].

**PLEASE TAKE FURTHER NOTICE** that, on September 27, 2019, the Court entered the *Order Referring Issues to Mediation and Appointing Mediator* [D.I. 628] authorizing the Debtors to pursue mediation with KeyBank, the Committee, and ETC Northeast Pipeline, LLC.

**PLEASE TAKE FURTHER NOTICE** that, on November 18, 2019, the Debtors filed the *Omnibus Motion for an Order, Pursuant to Section 105 and 365 of the Bankruptcy Code, Authorizing (I) the Debtors to Assume Certain Unexpired Leases and (II) Waiving the Requirements of Rule 6006(f)(6) of the Federal Rules of Bankruptcy Procedures* [D.I. 735] (the "Assumption Motion").

**PLEASE TAKE FURTHER NOTICE** that the Debtors, following their evaluation of the bids received have (in consultation with the Consultation Parties) determined that the bid submitted by KB OREO LLC and KeyBank (together, the "Successful Bidder") constitutes the highest and otherwise best bid for the Debtors' Butler Assets and have selected that bid as the Successful Bid, and executed the Asset Purchase Agreement (the "KeyBank APA") with the Successful Bidder attached hereto as Exhibit A. The purchase price payable to the Debtors under the KeyBank APA consists of a credit bid of all of the DIP Loans (expected to be at least $60 million as of the Closing Date)[3] and $9.68 million in cash (subject to adjustment pursuant to the terms of the KeyBank APA), as well as the assumption of certain of the Debtor's liabilities. A copy of the proposed Order (A) Approving Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief approving the sale to the Successful Bidder is attached hereto as Exhibit B.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the proposed sale of the Debtors' Butler Assets to the Successful Bidder shall be held on February 7, 2020 at 10:00am (prevailing Eastern Time) before the Honorable John T. Dorsey in the United States Bankruptcy Court for the District of Delaware, 824 N. Market St., 5th Floor, Courtroom 6, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that the deadline to file objections (other than the deadline to file objections relating to the adequate assurance of future

---

[3] As of January 17, 2020, the amount of DIP Loans outstanding was approximately $55.5 million before taking into account accrued and unpaid interest and fees from November through and including the Closing Date, which fees and expenses KeyBank has agreed shall be paid in kind pursuant to the Settlement Agreement.

#92661245v15

performance of the Successful Bidder for the Butler Assets (the "<u>Butler Adequate Assurance Objection Deadline</u>")) to the sale of the Debtors' Butler Assets, the calculation of Cure Claims with respect to executory contracts related to the Debtors' Butler Assets, or the assumption and assignment of executory contracts related to the Debtors' Butler Assets, passed on August 21, 2019 at 4:00 p.m. (prevailing Eastern Time) (except for the Creditors' Committee and each member thereof, the U.S. Trustee and ETC Northeast Pipeline LLC, whose objection deadlines were extended and passed on September 12, 2019, and with respect to any revised cure amounts set forth in the Assumption Motion, for which the objection deadline passed on November 25, 2019 at 4:00pm).  The Butler Adequate Assurance Objection Deadline is February 7, 2020.

[*Remainder of This Page Intentionally Left Blank*]

#92661245v15

Dated: January 24, 2020
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kerri K. Mumford*_____
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Kimberly A. Brown (No. 5138) Holly
M. Smith (No. 6497)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400 Facsimile:
(302) 467-4450
Email: landis@lrclaw.com
        mumford@lrclaw.com
        brown@lrclaw.com
        smith@lrclaw.com

*-and-*

**DAVIS POLK & WARDWELL LLP**
Darren S. Klein (admitted *pro hac vice*)
Lara Samet Buchwald (admitted *pro hac vice*)
Aryeh E. Falk (admitted *pro hac vice*)
Jonah A. Peppiatt (admitted *pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: darren.klein@davispolk.com
        lara.buchwald@davispolk.com
        aryeh.falk@davispolk.com
        jonah.peppiatt@davispolk.com

*Counsel to the Debtors and Debtors-In-Possession*

#92661245v15

<u>Exhibit A</u>

KeyBank APA

*Execution Version*

**ASSET PURCHASE AGREEMENT**

DATED AS OF JANUARY 24, 2020,

BY AND AMONG

EDGEMARC ENERGY HOLDINGS, LLC,

THE EM SUBSIDIARIES,

AND

KB OREO, LLC

AND

KEYBANK NATIONAL ASSOCIATION

AS ADMINISTRATIVE AGENT

# TABLE OF CONTENTS

PAGE

## ARTICLE 1
DEFINITIONS 2

Section 1.01. *Definitions.*.................................................................2
Section 1.02. *Other Definitions and Interpretive Matters.* .........................17

## ARTICLE 2
PURCHASE AND SALE 19

Section 2.01. *Purchase and Sale.* ................................................19
Section 2.02. *Excluded Assets.*....................................................21
Section 2.03. *Assumed Liabilities.* ...............................................23
Section 2.04. *Excluded Liabilities.* ...............................................24
Section 2.05. *Cure Costs; Desired 365 Contracts.*...............................24
Section 2.06. *Assignment of Assets Subject to Consent Requirements* ..............24
Section 2.07. *Misallocated Assets*................................................25
Section 2.08. *Further Assurances.* ................................................25

## ARTICLE 3
PURCHASE PRICE 26

Section 3.01. *Purchase Price* ......................................................26
Section 3.02. *Closing Payment and Post-Closing Adjustments*.....................26

## ARTICLE 4
CLOSING 27

Section 4.01. *Closing Date.* ......................................................27
Section 4.02. *Payments on the Closing Date.*....................................28
Section 4.03. *Buyer's Deliveries.*.................................................28
Section 4.04. *Sellers' Deliveries.*.................................................29
Section 4.05. *Actions of KeyBank at the Closing.* ...............................29
Section 4.06. *Withholding*.........................................................29

## ARTICLE 5
REPRESENTATIONS AND WARRANTIES OF SELLERS 30

Section 5.01. *Organization and Good Standing.* ................................30
Section 5.02. *Authority; Validity.* ................................................30
Section 5.03. *No Conflict.* ........................................................30
Section 5.04. *Material Contracts.*.................................................31
Section 5.05. *Permits.* .............................................................31
Section 5.06. *Wells; Plug and Abandon Notice.*.................................31
Section 5.07. *Imbalances.* .........................................................32

i

Section 5.08.    [Reserved] ............................................................................32
Section 5.09.    *Preferential Purchase Rights.* ..........................................32
Section 5.10.    *Intellectual Property.* ......................................................32
Section 5.11.    *Legal Proceedings.* ..........................................................32
Section 5.12.    *No Take-or-Pay Obligations.* ..........................................33
Section 5.13.    *Payments.* .........................................................................33
Section 5.14.    *Brokers or Finders.* .........................................................33
Section 5.15.    *Non-Consent Operations.* ................................................33
Section 5.16.    *Environmental Matters.* ...................................................34
Section 5.17.    *Title; Assets.* ...................................................................34
Section 5.18.    *Operatorship.* ..................................................................35
Section 5.19.    *Casualty Losses.* ..............................................................35
Section 5.20.    *Taxes.* ...............................................................................35
Section 5.21.    *Employees.* .......................................................................36
Section 5.22.    *AFEs; Capital Commitments.* ..........................................36

ARTICLE 6
REPRESENTATIONS AND WARRANTIES OF BUYER                    36

Section 6.01.    *Organization and Good Standing.* ...................................36
Section 6.02.    *Authority; Validity; Consents.* ........................................37
Section 6.03.    *No Conflict.* ......................................................................37
Section 6.04.    *Litigation.* ........................................................................37
Section 6.05.    *Bankruptcy.* ......................................................................38
Section 6.06.    *Brokers or Finders.* .........................................................38
Section 6.07.    *Financial Capability* .......................................................38

ARTICLE 7
ACTIONS PRIOR TO THE CLOSING DATE                    38

Section 7.01.    *Access and Reports.* .........................................................38
Section 7.02.    *Operations Prior to the Closing Date.* .............................40
Section 7.03.    *Commercially Reasonable Efforts* ...................................41
Section 7.04.    *Bankruptcy Court Approval.* ...........................................41
Section 7.05.    *Bidding Procedures* .........................................................42

ARTICLE 8
ADDITIONAL AGREEMENTS                    43

Section 8.01.    *Taxes.* ...............................................................................43
Section 8.02.    *Assigned Contracts; Adequate Assurance and Performance.* ...............44
Section 8.03.    *Employee Matters.* ...........................................................44
Section 8.04.    *Post-Closing Books and Records and Personnel.* .............45
Section 8.05.    *Disclaimers.* .....................................................................45
Section 8.06.    *Successor Operator.* .........................................................47
Section 8.07.    *Additional Transaction Documents.* .................................48

ARTICLE 9
CONDITIONS PRECEDENT TO OBLIGATIONS OF BUYER TO CLOSE          48

Section 9.01.    *Accuracy of Representations.* ...................................................48
Section 9.02.    *Sellers' Performance* .............................................................48
Section 9.03.    *Sellers' Deliveries.* ...............................................................48
Section 9.04.    *Sale Order.* ..........................................................................48
Section 9.05.    *Assumption and Assignment of Desired 365 Contracts.* .........49
Section 9.06.    *ETP Release.* ........................................................................49
Section 9.07.    *Waiver of Cure Costs.* ...........................................................49
Section 9.08.    *New ETP Agreements.* ...........................................................49

ARTICLE 10
CONDITIONS PRECEDENT TO THE OBLIGATION OF BUYER AND SELLERS TO CLOSE          50

Section 10.01.    *No Order.* ...........................................................................50
Section 10.02.    *9019/ETP Order* ...................................................................50

ARTICLE 11
CONDITIONS PRECEDENT TO THE OBLIGATION OF SELLERS TO CLOSE          50

Section 11.01.    *Accuracy of Representations* ..................................................50
Section 11.02.    *Buyer's Performance* .............................................................50
Section 11.03.    *Buyer's Deliveries.* ...............................................................50
Section 11.04.    *Sale Order.* ..........................................................................51

ARTICLE 12
TERMINATION          51

Section 12.01.    *Termination Events.* ..............................................................51
Section 12.02.    *Effect of Termination* ...........................................................52
Section 12.03.    *Procedures Upon Termination* ...............................................52

ARTICLE 13
GENERAL PROVISIONS          52

Section 13.01.    *No Survival of Representations and Warranties.* ...................52
Section 13.02.    *Notices.* ...............................................................................53
Section 13.03.    *Waiver; Waiver of Damages.* .................................................54
Section 13.04.    *Entire Agreement; Amendment.* ............................................54
Section 13.05.    *Assignment.* ..........................................................................54
Section 13.06.    *Severability.* .........................................................................55
Section 13.07.    *Expenses.* .............................................................................55
Section 13.08.    *Specific Performance.* ...........................................................55
Section 13.09.    *Governing Law; Consent to Jurisdiction and Venue; Jury Trial*
                  *Waiver.*  56

iii

Section 13.10.    *Counterparts.* ........................................................................56
Section 13.11.    *Parties in Interest; No Third Party Beneficiaries.*................................57
Section 13.12.    *No Recourse.* ..........................................................................57
Section 13.13.    *Disclosure Schedules; Materiality.*.........................................58
Section 13.14.    *Liquidating Trustee.* ...............................................................58
Section 13.15.    *Seller Representative.* ..............................................................58
Section 13.16.    *Frustration of Closing Conditions* ........................................59

**Schedules:**

| | |
|---|---|
| Schedule 1.01(a) | EM Subsidiaries |
| Schedule 1.01(b) | Sellers' Knowledge Persons |
| Schedule 1.01(c) | Buyer's Knowledge Persons |
| Schedule 1.01(d) | Allocated Values |
| Schedule 2.01(b)(v) | Miscellaneous Corporate Property |
| Schedule 2.02(e) | Excluded Records |
| Schedule 2.05(a) | Desired 365 Contracts |
| Schedule 5.03 | No Conflict |
| Schedule 5.04 | Material Contracts |
| Schedule 5.06 | Wells; Plug and Abandon Notice |
| Schedule 5.07 | Imbalances |
| Schedule 5.11 | Legal Proceedings |
| Schedule 5.13 | Payments |
| Schedule 5.14 | Brokers or Finders |
| Schedule 5.15 | Non-Consent Operations |
| Schedule 5.16 | Environmental Matters |
| Schedule 5.22 | AFE's; Capital Commitments |
| Schedule 7.02 | Operations Prior to the Closing Date |
| Schedule 8.03(c) | Seller Credit Obligations |

**Exhibits:**

| | |
|---|---|
| Exhibit A-1 | Assigned Leases and Interests |
| Exhibit A-2 | Excluded Leases and Interests |
| Exhibit B | Wells |
| Exhibit C | Form of Master Assignment and Assumption Agreement |
| Exhibit D | Equipment |
| Exhibit E | Surface Rights |
| Exhibit F | Transition Services Agreement |
| Exhibit G | Form of Sale Order |
| Exhibit H | Copy of New ETP Agreements |
| Exhibit I | Copy of MarkWest Amendment and Release Agreement |
| Exhibit J | 9019/ETP Order |
| Exhibit K | 9019 Settlement |

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "**Agreement**"), dated as of January 24, 2020 (the "**Execution Date**"), is by and among EdgeMarc Energy Holdings, LLC, a Delaware limited liability company, whose address is 1800 Main Street, Suite 220, Canonsburg, PA 15317 ("**EdgeMarc**"), the EM Subsidiaries set forth on Schedule 1.01(a), each of whose address is 1800 Main Street, Suite 220, Canonsburg, PA 15317 (collectively, the "**EM Subsidiaries**," each individually an "**EM Subsidiary**," and the EM Subsidiaries collectively with EdgeMarc, "**Sellers**", and, each individually, a "**Seller**"), and KB OREO, LLC, an Ohio limited liability company, whose address is 127 Public Square, Cleveland, OH 44114 (together with any permitted designees or assignees under this Agreement, "**Buyer**") and KeyBank, National Association, in its capacity as Administrative Agent under the DIP Credit Agreement and for purposes of Sections 3.01, 4.05 and 13.07 ("**KeyBank**"). Capitalized terms used but not otherwise defined herein have the meanings set forth in Article 1. Sellers and Buyer are sometimes referred to collectively herein as the "**Parties**" and individually as a "**Party**".

## RECITALS

WHEREAS, Sellers are engaged in the business of onshore oil and natural gas exploration, development and production in, among other areas, the Commonwealth of Pennsylvania, and own, in varying proportions, certain oil and gas leases and associated assets more particularly described in Section 2.01;

WHEREAS, on May 15, 2019 (the "**Petition Date**"), EdgeMarc and the EM Subsidiaries each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, concurrently with the execution and delivery of this Agreement, and as a condition to the willingness of the Parties to enter into this Agreement, Key EM Energy, LLC and ETC Northeast Pipeline, LLC have executed a Gathering and Processing Agreement, (the "**New ETP Base Agreement**"), together with Individual Transaction Confirmation No. 101 and Individual Transaction Confirmation No. 102 (the "**New ETP Transaction Confirmations**", and together with the New ETP Base Agreement, the "**New ETP Agreements**"), copies of which are attached hereto as Exhibit H;

WHEREAS, concurrently with the execution and delivery of this Agreement, and as a condition to the willingness of the Parties to enter into this Agreement, EM Energy Pennsylvania, LLC, MarkWest Liberty Bluestone, L.L.C., MarkWest Liberty Midstream & Resources, L.L.C. and Buyer have executed that certain Release and Second Amendment to Gas Processing Agreement, a copy of which is attached hereto as Exhibit I (the "**MarkWest Amendment and Release Agreement**");

WHEREAS, concurrently with the execution and delivery of this Agreement, and as a condition to the willingness of the Parties to enter into this Agreement, Buyer, KeyBank, Sellers and the other Debtors (as defined herein), the Committee (as defined herein), and ETC Northeast Pipeline, LLC, have executed the 9019 Settlement (as defined herein), a copy of which is attached hereto as Exhibit K;

WHEREAS, Sellers desire to sell to Buyer all of the Assets, and Buyer desires to purchase from Sellers all of the Assets, Free and Clear, and assume all of the Assumed Liabilities, upon the terms and conditions hereinafter set forth;

WHEREAS, the Parties intend to effectuate the transactions contemplated by this Agreement through a sale of the Assets, Free and Clear in exchange for the Purchase Price and the assumption of the Assumed Liabilities to the extent set forth herein pursuant to Sections 105, 363 and 365 of the Bankruptcy Code;

WHEREAS, pursuant to the Bidding Procedures Order and under the Bankruptcy Code, KeyBank is entitled to exercise its credit bid right pursuant to Section 363(k) of the Bankruptcy Code on account of its DIP Claims and cause the Assets to be conveyed from Sellers to the Buyer; and

WHEREAS, Sellers' ability to consummate the transactions set forth in this Agreement is subject to, among other things, the entry of the Sale Order by the Bankruptcy Court.

NOW, THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

<div align="center">

ARTICLE 1
DEFINITIONS

</div>

Section 1.01.  *Definitions.*

For purposes of this Agreement, the following terms have the meanings specified or referenced below.

"**365 Contracts**" means all unexpired leases and Contracts constituting or primarily related to the Assets that may be assumed and assigned by one or more Sellers pursuant to Section 365 of the Bankruptcy Code. For the avoidance of doubt, none of the Hedge Contracts shall be deemed to be 365 Contracts for purposes of this Agreement.

"**9019/ETP Order**" means an Order of the Bankruptcy Court, in the form of Exhibit J attached hereto, with such modifications as are reasonably acceptable to the Buyer, the Sellers, KeyBank, the Committee, and ETC Northeast Pipeline, LLC, approving: (i) the 9019 Settlement, and (ii) the mutual releases by and between the Debtors and ETC Northeast Pipeline, LLC and their respective affiliates for any claims or causes of action.

"**9019 Settlement**" means that certain settlement agreement, as set forth in the executed Exhibit K attached hereto, by and among the Buyer, the Sellers, KeyBank, the Committee, and ETC Northeast Pipeline, LLC.

"**Acquired Permits**" has the meaning set forth in Section 2.01(b)(vii).

"**Adverse Determination**" has the meaning set forth in Section 12.01(b)(ii).

<div align="center">2</div>

"**AFEs**" has the meaning set forth in Section 5.22(a).

"**Affiliate**" means, with respect to any Person, any other Person that directly or indirectly (through one or more intermediaries) Controls, is Controlled by or is under common Control with such specified Person.

"**Agreement**" has the meaning set forth in the introductory paragraph.

"**Allocated Value**" means, with respect to each Asset, the portion of the Purchase Price allocated to such Asset as set forth on Schedule 1.01(d), as such amount shall be increased or decreased by the portion of each adjustment to the Purchase Price under Section 2.1 of Appendix A attributable to such Asset, with the portion of the Purchase Price allocated to each specific Asset within such Asset to be determined as necessary. The Parties acknowledge and agree that the Allocated Value is solely for the purposes set forth in Appendix A.

"**Allocation**" has the meaning set forth in Appendix A.

"**Alternative Transaction**" means, other than the transactions contemplated by this Agreement and the other Transaction Documents, whether by one transaction or any series of transactions, any (a) sale, transfer, assignment, or other disposition, directly or indirectly, of all or a material portion of the Assets of one or more of the Sellers to any Person or Persons other than the Buyer or Buyer's designee in accordance with the terms of this Agreement, including any Successful Bid or Successful Bidder at the Auction if not submitted by Buyer or Buyer's designee; (b) issuance, sale, transfer or other disposition, in each case by any Seller, of any class of equity securities, ownership interests or voting securities of any Seller; (c) merger, consolidation, recapitalization, business combination, partnership, joint venture, reorganization, restructuring, dissolution, liquidation, tender offer, share exchange, debt-for-equity exchange, rights offering, structured dismissal or other similar transaction involving any Seller; (d) the consummation of any state court foreclosure action as to any material portion of the Properties; (e) successful credit bid transaction with respect to the Assets; and (f) the consummation of any of the foregoing (a)–(e) pursuant to a chapter 11 plan of reorganization or liquidation or pursuant to Section 363 of the Bankruptcy Code.

"**Applicable Employees**" means each of the employees and contractors of Sellers that are engaged as of the Execution Date in the conduct of Sellers' business related to the Assets.

"**Asset Taxes**" means ad valorem, sales or use, property, excise, severance, production and similar Taxes based upon or measured by the acquisition, operation or ownership of the Assets or the production of Hydrocarbons therefrom or the receipt of proceeds therefrom, but excluding, for the avoidance of doubt, any income, capital gains, franchise or similar Taxes and any Transfer Taxes.

"**Assets**" has the meaning set forth in Section 2.01(b).

"**Assigned Contracts**" has the meaning set forth in Section 2.01(b)(viii).

"**Assigned Leases and Interests**" has the meaning set forth in Section 2.01(b)(i).

"**Assignment**" means the Assignment, Bill of Sale, Deed, and Conveyance with respect to all Assets located in the Commonwealth of Pennsylvania, prepared by Sellers and in a form reasonably acceptable to Buyer.

"**Assumed Liabilities**" has the meaning set forth in Section 2.03.

"**Auction**" has the meaning set forth in the Bidding Procedures.

"**Bankruptcy Cases**" means the cases commenced by Sellers under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court, styled *In re Edgemarc Energy Holdings, LLC, et al.*, jointly administered under Case No. 19-11104 (JTD), and pending before the Bankruptcy Court.

"**Bankruptcy Code**" means Title 11 of the United States Code, Sections 101 *et seq.*

"**Bankruptcy Court**" has the meaning set forth in the recitals.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Bidding Procedures**" means the amended bidding procedures set forth in the Bidding Procedures Order.

"**Bidding Procedures Order**" means the *Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Setting Procedures to Seek Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (V) Approving Assumption and Assignment Procedures and (VI) Granting Related Relief*, entered by the Bankruptcy Court on June 21, 2019 [Docket No. 247], as amended by the Amended Bidding Procedures Order.

"**Business Day**" means any day, other than Saturday or Sunday, on which commercial banks are open for commercial business with the public in New York City, New York.

"**Buyer**" has the meaning set forth in the introductory paragraph.

"**Buyer Releasors**" has the meaning set forth in Section 13.12(b).

"**Cash Amount**" has the meaning set forth in Section 3.01(a).

"**Casualty Loss**" means any loss, damage or destruction of the Assets that occurs during the period between the Execution Date and the Closing for any reason, including any act of God, fire, explosion, collision, earthquake, windstorm, flood, hurricane, tropical storm, terrorism, or other casualty or condemnation taking under the right of eminent domain, but excluding any loss, damage, or destruction as a result of depreciation, ordinary wear and tear, and any change in condition of the Assets for production of Hydrocarbons through normal depletion (which exclusion will include the watering-out of any Well, collapsed casing, sand infiltration of any Well, or other reservoir changes relating to production issues).

"**Claim**" means a right to (a) a payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

legal, equitable, secured, or unsecured or (b) an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"**Closing**" has the meaning set forth in Section 4.01.

"**Closing Date**" has the meaning set forth in Section 4.01.

"**Closing Payment**" means an amount equal to the estimate of the Purchase Price determined in accordance with Section 3.02.

"**Closing Statement**" has the meaning set forth in Section 3.02(c).

"**Code**" means the Internal Revenue Code of 1986.

"**Committee**" means the official committee of unsecured creditors in the Bankruptcy Cases.

"**Consultation Parties**" has the meaning ascribed to such term in the Bidding Procedures.

"**Contract**" means any agreement, contract, undertaking, promise or obligation (in each case, whether written or oral) that is legally binding.

"**Control**" means the ability (directly or indirectly through one or more intermediaries) to direct or cause the direction of the management or affairs of a Person, whether through the ownership of voting interests, by contract or otherwise.

"**Copyrights**" means any copyright, any copyrightable work, any registration or recording of any copyright or copyrightable work, and any application in connection therewith, including any such registration, recording, or application in the United States Copyright Office or in any similar office or agency of the United States, any State thereof, or any other country, and any renewal of any of the foregoing.

"**Credit Bid**" has the meaning set forth in Section 3.01(b).

"**Cure Costs**" means all monetary Liabilities, including pre-petition monetary Liabilities, of Sellers that must be paid or otherwise satisfied to cure all of Sellers' monetary and other defaults under the Assigned Leases and Interests and Assigned Contracts pursuant to Section 365 of the Bankruptcy Code at the time of the assumption thereof and assignment of such Assigned Leases and Interests and Assigned Contracts to Buyer as provided hereunder as such amounts are determined by the Bankruptcy Court or approved pursuant to the assignment and assumption procedures provided for in the Bidding Procedures Order.

"**Defensible Title**" means the record and beneficial title in and to the Assets which, as of the Execution Date and through Closing:

(a)     as to each Well listed on Exhibit B, entitles Sellers (and Buyer as of immediately following the Closing) to receive and retain, in the aggregate, a Net Revenue Interest not less than the Net Revenue Interest set forth for such Well in Exhibit B, except for any decrease (A) caused by orders of the appropriate Governmental Authority having jurisdiction that are promulgated after the Execution Date that concern pooling, unitization, communization or spacing matters, or (B) caused by Buyer, its successors or assigns;

(b)     as to each Well listed on Exhibit B, obligates Sellers (and Buyer as of immediately following the Closing), to bear a Working Interest, in the aggregate, for such Well not more than the Working Interest set forth for such Well in Exhibit B, except for any increase (i) caused by Buyer, its successors or assigns, (ii) that also results in at least a proportional increase in the Net Revenue Interest associated with such Well, or (iii) caused by orders of the appropriate Governmental Authority having jurisdiction that are promulgated after the Execution Date that concern pooling, unitization, communization or spacing matters; and

(c)     is Free and Clear; excepting, in any case, matters of title that, individually and in the aggregate, would reduce the value of the Assets by an amount not in excess of $100,000 (and provided that if an Asset has not been given an Allocated Value, Sellers shall be deemed to have Defensible Title to such Asset).

"**Desired 365 Contracts**" has the meaning set forth in Section 2.05(a).

"**DIP Claim**" means the aggregate amount of all Obligations (as defined in the DIP Credit Agreement) outstanding under the DIP Credit Agreement, including all accrued and unpaid interest, fees and expenses (including professional fees of the administrative agent and lender thereunder) and any other Claim with respect to the DIP Credit Agreement.

"**DIP Credit Agreement**" means that certain Debtor-In-Possession Credit Agreement, dated as of May 15, 2019, among EM Energy Employer, LLC, as "Borrower", and KeyBank, National Association, as "Administrative Agent", as amended, supplemented or otherwise modified from time to time.

"**Effective Time**" means 12:01 a.m. (New York time) on the Closing Date.

"**EM Subsidiaries**" has the meaning set forth in the introductory paragraph.

"**Encumbrance**" means all liens, whether consensual or statutory (including mechanic's, materialman's, carrier's, repairer's, contractor's and other similar liens arising under any Legal Requirement), replacement liens, adequate protection liens or other liens granted under Sections 361, 363 or 364 of the Bankruptcy Code, mortgages, deeds of trust, hypothecations, pledges, security interests, charges, options and transfer restrictions, including without limitation, rights of first refusal or first offer, defect or objection liens, easements, encroachments or servitudes, including without limitation those charges or interests in property within the meaning of "lien" under Bankruptcy Code § 101(37) or any other limitation, restriction or interest that constitutes an "interest" for the purposes of Bankruptcy Code § 363(f).

"**Environmental Laws**" means any and all Legal Requirements in effect at the relevant date or for the relevant period relating to pollution or the protection of human health and safety (with respect to exposure to hazardous or toxic substances, materials or waste) or the environment or natural resources, including the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. §§ 9601, et seq.), the Hazardous Materials Transportation Act (49 U.S.C. App. §§ 1801, et seq.), the Resource Conservation and Recovery Act (42 U.S.C. §§ 6901, et seq.), the Clean Water Act (33 U.S.C. §§ 1251, et seq.), the Clean Air Act (42 U.S.C. §§ 7401, et seq.) the Toxic Substances Control Act (15 U.S.C. §§ 2601, et seq.), and the Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. §§ 136, et seq.).

"**Equipment**" has the meaning set forth in Section 2.01(b)(iv).

"**Estimated Closing Statement**" has the meaning set forth in Section 3.02(a).

"**Excluded Assets**" has the meaning set forth in Section 2.02.

"**Excluded Contracts**" means all Contracts of Sellers other than the Assigned Contracts.

"**Excluded Leases and Interests**" means, collectively, all Leases and Mineral Interests other than the Assigned Leases and Interests, including, for the avoidance of doubt, all Leases and Mineral Interests described on Exhibit A-2 attached hereto.

"**Excluded Liabilities**" has the meaning set forth in Section 2.04.

"**Excluded Records**" means (a) the general corporate files and records of Sellers, insofar as they relate to Sellers' business generally and are not required for the future ownership or operation of the Assets, (b) all legal files and records (other than title opinions with respect to the Assets and files exclusively related to Assumed Liabilities), (c) Sellers' federal, state, local or non-U.S. income, franchise or margin tax files and records, (d) employee files (other than files of Transferred Employees that are permitted to be transferred pursuant to applicable Legal Requirement), (e) records relating to the sale of the Assets, including competing bids, (f) proprietary data that is not specifically related to the Assets or the Assumed Liabilities, (g) information and data that is subject to Third Party contractual restrictions on assignment or disclosure, (h) privileged information that (A) is not specifically related to the Assets or the Assumed Liabilities, or (B) relates in any way to any Claims (as defined in the 9019 Settlement) that are being released, settled or assigned pursuant to the 9019 Settlement, including, for the avoidance of doubt, any of the claims that are the subject of the 9019/ETP Order, (i) copies of records stored for archival and/or back up purposes, and (j) any other files or records to the extent relating to any Excluded Assets or expressly excluded from the Assets pursuant to Section 2.01(b)(x).

"**Execution Date**" has the meaning set forth in the introductory paragraph.

"**Final Order**" means a judgment or Order of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in the Bankruptcy Cases (or the docket of such other court), which has not been modified, amended, reversed, vacated or stayed (other than such modifications or amendments

that are consented to by Buyer) and as to which (A) the time to appeal, petition for certiorari, or move for a new trial, stay, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, stay, re-argument or rehearing will then be pending or (B) if an appeal, writ of certiorari, new trial, stay, re-argument or rehearing thereof has been sought, such Order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) will have been affirmed by the highest court to which such Order was appealed, or certiorari will have been denied, or a new trial, stay, re-argument or rehearing will have expired, as a result of which such Proceeding or Order will have become final in accordance with Bankruptcy Rule 8002; *provided*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such Order, will not cause an Order not to be a Final Order.

"**Free and Clear**" means free and clear of all Claims, Encumbrances (other than Permitted Encumbrances) or Liabilities, in each case, other than the Assumed Liabilities to the maximum extent permitted under Section 363 of the Bankruptcy Code.

"**Governmental Authority**" means any court or tribunal in any jurisdiction (domestic or foreign) or any federal, tribal, state, parish, county, municipal or other governmental or quasi-governmental body, agency, authority, department, board, commission, bureau, official or other authority or instrumentality.

"**Governmental Authorization**" means any approval, consent, license, permit, waiver or other authorization issued, granted or otherwise made available by or under the authority of any Governmental Authority.

"**Hazardous Substance**" means any pollutants, contaminants, NORM and other radioactive materials, chemicals, polychlorinated biphenyls, asbestos and asbestos-containing materials, petroleum, petroleum products, crude oil, gasoline, natural gas, fuel oil, motor oil, waste oil, diesel fuel, and other petroleum hydrocarbons whether refined or unrefined or industrial, toxic or hazardous substances and any "contaminant," "hazardous waste," "hazardous material", "hazardous substance", "extremely hazardous substance" or "toxic substance" or words of similar import under any provision of Environmental Law.

"**Hedge Contracts**" means any Contract to which any Seller is a party with respect to any swap, forward, future or derivative transaction or option or similar agreement, whether exchange traded, "over the counter," or otherwise, involving, or settled by reference to, one or more rates, currencies, commodities, equity or debt instruments or securities, or economic, financial or pricing indices or measures of economic, financial or pricing risk or value or any similar transaction or any combination of these transactions.

"**Hydrocarbons**" means oil, gas, minerals, and other gaseous and liquid hydrocarbons, or any combination of the foregoing, produced from and attributable to the Properties.

"**Imbalances**" means over-production or under-production or over-deliveries or under-deliveries with respect to Hydrocarbons produced from or allocated to the Properties, regardless of whether such over- production or under-production or over-deliveries or under-deliveries arise at the wellhead, pipeline (taking into account any line fill), gathering

system, transportation system, processing plant, or other location, including any imbalances under gas balancing or similar agreements, imbalances under production handling agreements, imbalances under processing agreements, imbalances under the Assigned Leases and Interests, imbalances under gathering or transportation agreements, and imbalances under Operating Agreements.

"**Intellectual Property**" means all intellectual property, including all Copyrights, Patents, Trademarks and software, owned, used or licensed by Sellers (or any of them) that are used or held for use primarily in connection with the ownership and operation of the Assets, but specifically excluding, for the avoidance of doubt, all seismic, geological, geochemical or geophysical data owned or licensed by Sellers and any of Sellers' interpretations of such data (which data and interpretations thereof will constitute Records under this Agreement).

"**Interim Environmental Defect**" has the meaning set forth in Appendix A.

"**IRS**" means the Internal Revenue Service.

"**KeyBank**" has the meaning set forth in the introductory paragraph.

"**Knowledge**" means, with respect to any matter in question, (a) in the case of Sellers, the actual knowledge, following reasonable inquiry, as of the date hereof of any of the individuals listed on Schedule 1.01(b) with respect to such matter, and (b) in the case of Buyer, the actual knowledge, following reasonable inquiry, as of the date hereof of any of the individuals listed on Schedule 1.01(c) with respect to such matter.

"**Lease**" means any oil and gas lease, oil, gas and mineral lease or sublease, and other leasehold interest, and the leasehold estates created thereby, including carried interests, rights of recoupment, options, reversionary interests, convertible interests and rights to reassignment.

"**Legal Requirement**" means any applicable federal, state, provincial, local, municipal, foreign, international, multinational, or other administrative Order, constitution, law, statute, ordinance, principle of common law, regulation, rule, determination, directive or treaty, in each case issued or promulgated by a Governmental Authority.

"**Liability**" means any debt, liability or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), including costs or expenses related thereto.

"**Lowest Cost Response**" means, with respect to an Interim Environmental Defect, the response required or allowed under Environmental Laws that fully addresses such Interim Environmental Defect in the most cost-effective manner reasonably available and effective and in compliance with Environmental Laws (considered as a whole, taking into consideration any material negative impact such response may have on the operations of the relevant Assets and any potential material additional costs that may likely arise as a result of such response) as compared to any other response that is required or allowed under Environmental Laws, and may include taking no action, periodic monitoring or the recording of notices in lieu of remediation, to the extent permitted allowed under Environmental Laws. The Lowest Cost Response shall not

include remedial or corrective action that is designed to achieve standards that are more stringent than those required for similar facilities or that fails to reasonably take advantage of applicable risk reduction or risk assessment principles allowed under applicable Environmental Laws.

"**MarkWest Amendment and Release Agreement**" has the meaning set forth in the recitals.

"**MarkWest and Axip Agreements**" has the meaning set forth in Section 9.05.

"**Master Assignment**" means the Master Assignment, Bill of Sale, Deed, and Conveyance in the form attached hereto as Exhibit C.

"**Material Adverse Effect**" means any events, changes or circumstances that, individually or in the aggregate, has or would reasonably be expected to (a) result in a material adverse effect on the value, operation or financial condition of the Assets, considered as a whole; or (b) result in a material adverse effect on Sellers' ability to consummate the transactions contemplated by this Agreement or perform their obligations under this Agreement; *provided*, that, with respect to clause (a) only, none of the following will be taken into account in determining whether there is a Material Adverse Effect: (i) any change in the United States or foreign economies, financial markets, credit markets or political conditions, including any change in supply, demand, price levels or interest or exchange rates, embargo, sanctions or interruptions in trade; (ii) any change that generally affects the businesses or areas in which Assets operate, including changes in the prices of Hydrocarbons, any increase in operating costs or capital expenses or any reduction in drilling activity or production; (iii) any change arising in connection with earthquakes, hostilities, acts of war, civil unrest, sabotage or terrorism or military actions or any escalation or material worsening of any such hostilities, acts of war, sabotage or terrorism or military actions existing or underway as of the date hereof; (iv) any act of God, hurricane, flood, tornado, fire, explosion, weather event, earthquake, landslide or other act of nature or disaster; (v) any change in applicable Legal Requirements or accounting rules; (vi) any actions taken or proposed to be taken by Buyer or any of its Affiliates; (vii) any effect resulting from the public announcement of this Agreement, compliance with terms of this Agreement or the consummation of the transactions contemplated by this Agreement; (viii) any effect resulting from the filing of the Bankruptcy Cases, including Sellers' inability to pay certain obligations as a result of the filing of the Bankruptcy Cases; (ix) any natural decline in well performance, (x) any failure to meet any projections, budgets, forecasts, estimates, plans, predictions, performance metrics or operating statistics; and (xi) any matter disclosed on the Disclosure Schedules or in any filings by Sellers with the Bankruptcy Court prior to the date of this Agreement.

"**Material Contracts**" means any Contract (other than any master services agreements) relating to the Assets that are binding on a Seller that: (a) resulted in aggregate payments by or revenues to one or more Sellers of more than $250,000 during the fiscal year ended December 31, 2018 or is reasonably expected to result in aggregate payments by or revenues to one or more Sellers of more than $250,000 during the fiscal year ended December 31, 2019; (b) is a Hydrocarbon purchase and sale, exchange, marketing, compression, gathering, transportation, processing, refining, or similar Contract that is not terminable without penalty on 90 days or less notice (including any such Contract providing for volumetric or monetary commitments or

indemnification therefor or for dedication of future production); (c) binds any Seller to sell, lease, farmout, or otherwise dispose of or encumber any interest in any of the Assets after the Effective Time, other than (i) conventional rights of reassignment arising in connection with a Seller's surrender or release of any of the Assets or (ii) conventional rights of reassignment arising in connection with a payout, risk penalty, recoupment period or similar obligation where a Seller's Net Revenue Interest or after-payout interest is reflected on Exhibit B; (d) by its express terms would obligate Buyer to drill additional wells or conduct other material development operations after the Closing; (e) constitutes a non-competition agreement or purports to restrict, limit, or prohibit in any material respect the manner in which, or the locations in which, a Seller conducts business, including areas of mutual interest; (f) provides for any call upon, option to purchase, or similar rights with respect to the Assets or to the production therefrom or the processing thereof, or is a dedication of production or otherwise requires production to be transported, processed, or sold in a particular fashion; (g) constitutes an Operating Agreement; (h) constitutes a farmout agreement, partnership agreement, participation agreement, joint venture agreement, or similar Contract; and (i) is between a Seller and any Affiliate of such Seller.

"**Mineral Interests**" means all mineral fee interests, mineral interests, mineral rights (excluding Leases) and mineral servitudes in which Sellers own an interest, including royalty interests, mineral royalty interests, overriding royalty interests, net profits interests, production payments, carried interests, reversionary interests (including rights under non-consent provisions), possibilities of reverter, conversion rights and options and other rights of a similar nature, whether legal or equitable, whether vested or contingent.

"**Miscellaneous Corporate Property**" has the meaning set forth in Section 2.01(b)(v).

"**Necessary Consent**" has the meaning set forth in Section 2.06.

"**Net Revenue Interest**" means, with respect to any Asset, the percentage interest in and to all production of Hydrocarbons saved, produced and marketed from or allocated to such Asset after satisfaction of all Royalties.

"**New ETP Agreement**" has the meaning set forth in the recitals

"**New ETP Transaction Confirmations**" has the meaning set forth in the recitals.

"**NORM**" means naturally occurring radioactive materials.

"**Objection Statement**" has the meaning set forth in Section 3.02(c).

"**Ohio Sale Order**" means the Order (A) Approving Sale of Debtors' Monroe/Washington Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief [Docket No. 530].

"**Operating Agreement**" means an operating agreement, joint operating agreement or similar agreement governing the development and/or production operations from one or more Wells or otherwise burdening one or more Assigned Lease and Interests.

"**Order**" means any award, writ, injunction, judgment, order or decree entered, issued, made or rendered by any Governmental Authority.

"**Outside Date**" has the meaning set forth in Section 12.01(b)(i).

"**Party**" and "**Parties**" each have the meaning set forth in the introductory paragraph.

"**Party Affiliate**" has the meaning set forth in Section 13.11.

"**Patents**" means any letters patent, applications for letters patent, and any reissues, divisionals, continuations, and continuations-in-part thereof, including any patents or patent applications in the United States Patent and Trademark Office, the World Intellectual Property Organization, or any other country.

"**Permits**" means any approvals, authorizations, consents, licenses, permits, registrations or certificates of any Governmental Authority (including with respect to Environmental Laws).

"**Permitted Encumbrances**" means, subject to the proviso at the end of this definition, any of the following:

(a)    any rights, obligations, or duties reserved to or vested in any municipality or other Governmental Authority to: (i) control or regulate any Asset in any manner including all applicable Legal Requirements, (ii) purchase, condemn, expropriate, or recapture any Asset, (iii) consent to a purchase of any Asset, including the Necessary Consents, or (iv) use any Asset in any manner;

(b)    the terms and conditions of all options, servitudes, contracts for sale, purchase, exchange, refining or processing of Hydrocarbons, Operating Agreements, unitization, pooling, and communitization agreements, declarations, or orders, construction agreements, construction and operation agreements, participation agreements, shoot-to-earn agreements, exploration agreements, partnership agreements, processing agreements, plant agreements, pipeline, gathering, exchange, and transportation agreements, disposal agreements, permits, licenses, and any other agreements affecting the Assets, in each case, solely to the extent constituting Assigned Contracts;

(c)    easements, rights-of-way, servitudes, permits, surface leases and other similar rights on, over or in respect of any of the Assets that do not (i) materially impair the use, operation or ownership of the Assets for the purposes of Hydrocarbon development; (ii) operate to reduce the Net Revenue Interest of any Seller in any Well to an amount less than the Net Revenue Interest set forth on Exhibit B for such Well; nor (iii) obligate any Seller to bear a Working Interest for such Well in any amount greater than the Working Interest set forth on Exhibit B for such Well (unless there is at least a proportional increase in the Net Revenue Interest associated with such Well);

(d)    lessor's Royalties with respect to a Well; *provided* that, for the avoidance of doubt, all Royalties attributable to time periods prior to the Effective Time are an Excluded Liability;

(e)    defects or irregularities of title (i) as to which the relevant statute(s) of limitations or prescription would bar any attack or claim against Sellers' title, (ii) arising out of lack of corporate authorization or a variation in corporate name, (iii) consisting of the failure to recite marital status or omissions of heirship proceedings in documents, (iv) resulting from lack of survey unless a survey is required by applicable Legal Requirements, or (v) disclosed in policies of title insurance or any judicial lien searches which have been made available to Buyer (other than any judicial or other lien that will be released from the Assets pursuant to the Sale Order);

(f)    statutory liens for (i) Asset Taxes not yet due, or (ii) Asset Taxes that, if delinquent, are being contested in good faith by appropriate proceedings in the normal course of business, in each case with respect to Asset Taxes that accrued prior to the Effective Time, that will be released from the Assets pursuant to the Sale Order;

(g)    materialman's liens, mechanic's liens, repairman's liens, employee's liens, contractor's liens, operator's liens and other similar Encumbrances arising in the ordinary course of business and (i) existing prior to the commencement of the Bankruptcy Cases, or (ii) perfected after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code, in each case, that will be released from the Assets pursuant to the Sale Order;

(h)    Assumed Liabilities;

(i)    Imbalances associated with the Assets;

(j)    conventional rights of reassignment that have not been triggered on or prior to Closing;

(k)    calls on Hydrocarbon production under any Assigned Contract; and

(l)    any other Encumbrances to the extent released from the Assets by the Sale Order;

provided, however, and for the avoidance of doubt, the items described in (x) the parenthetical to sub-paragraph (e)(v) and (y) sub-paragraphs (f) (to the extent accrued prior to the Effective Time), (g), and (l) will not be considered Permitted Encumbrances for purposes of the Sale Order and the Free and Clear relief granted therein and rather all such items will be released by the Sale Order.

"**Permitted Prior Lien Cash Rights**" means any and all rights, title and interest KeyBank holds with respect to the Permitted Prior Lien Escrow.

"**Permitted Prior Lien Escrow**" means any funds retained in escrow on account of Permitted Prior Liens (as defined in the Ohio Sale Order) pursuant to paragraph 37 of the Ohio Sale Order.

"**Person**" means any individual, corporation (including any non-profit corporation), partnership, limited liability company, joint venture, estate, trust, association, organization or other entity or Governmental Authority.

"**Petition Date**" has the meaning ascribed to such term in the recitals.

13

"**Post-Closing Covenant**" means any covenant required to be performed by any Seller or by Buyer, as applicable, under this Agreement following the Closing, including, with respect to Buyer, the obligation to deliver to the applicable operator of a Well and/or Assigned Leases and Interests a copy of the recorded Assignment evidencing the conveyance of Sellers' interest in such Well and/or Assigned Leases and Interests to Buyer, as provided in Section 7.03.

"**Preferential Purchase Right**" means any right or agreement that enables any Person to purchase or acquire any Asset or any interest therein or portion thereof as a result of or in connection with the execution or delivery of this Agreement or the consummation of the transactions contemplated hereby.

"**Prepetition Credit Agreement**" means that certain Amended and Restated Credit Agreement, dated as of December 19, 2017, among the EM Energy Employer, LLC, KeyBank, National Association, as administrative agent, collateral agent, and letter of credit issuer, and the several lenders from time to time party thereto, as may have been amended, supplemented, or otherwise modified from time to time.

"**Proceeding**" means any action, arbitration, audit, hearing, litigation or suit (whether civil, criminal, administrative or investigative) commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Authority or arbitrator.

"**Properties**" has the meaning set forth in Section 2.01(b)(ii).

"**Property Costs**" means all direct operating expenses paid or payable to Third Parties and capital expenditures paid or payable to Third Parties incurred in the ownership and operation of the Assets and overhead costs charged by Third Parties to the Properties under any Operating Agreement that is an Assigned Contract, but excluding (without limitation): (a) liabilities, losses, costs, and expenses attributable to claims, investigations, administrative proceedings or litigation directly or indirectly arising out of or resulting from actual or claimed personal injury or death, property damage or violation of any Legal Requirements (including private rights or causes of action under any Legal Requirements); (b) any costs or expenses incurred with respect to any title defect, environmental defect, environmental conditions or matters or title claims other than costs or expenses that would be incurred by a reasonably prudent operator engaged in the business of owning and operating oil and natural gas properties; (c) Casualty Loss; (d) any penalties, fees and fines (including any applicable interest) attributable to any pre-Closing violation of Legal Requirements; (e) Taxes; and (f) any claims for indemnification, contribution, or reimbursement from any Third Party with respect to costs of the type described in the preceding clauses (a) through (e).

"**Purchase Price**" has the meaning set forth in Section 3.01.

"**Records**" has the meaning set forth in Section 2.01(b)(x).

"**Receivables**" means all accounts receivable, notes receivable, take or pay amounts receivable, checks in process of collection, trade credits, escrow accounts and escrow holdback, rights to the return or use of deposits and retainers, refunds, and all other accounts, instruments

and general intangibles, and other rights and economic benefits of every kind and character accruing or payable to a Seller or its Affiliates.

"**Release**" means any release, spill, emission, leaking, pumping, injection, deposit, disposal, discharge, dispersal or leaching into the environment.

 "**Remediation Cost**" means, with respect to any Interim Environmental Defect, the cost to implement and complete, including any post-completion maintenance and monitoring, any remedial, removal, response, construction, closure, disposal or other corrective actions, including any monitoring required under Environmental Laws to correct or remove such Interim Environmental Defect, in each case, employing the Lowest Cost Response for investigation, remediation, removal, corrective action, containment and/or monitoring permitted by applicable Environmental Laws determined from the perspective of a reasonable business person action (without regard to the availability of indemnification hereunder) to achieve compliance with applicable Environmental Law or to minimize liability under Environmental Laws or to third parties, it being understood that such Lowest Cost Response shall where appropriate include the use of risk-based remedies, institutional or engineering controls, or deed restrictions.

"**Representative**" means, with respect to a particular Person, any director, officer, member, manager, partner, employee, agent, consultant, advisor, investor, shareholder, contractor, subcontractor or other representative of such Person, including legal counsel, accountants and financial advisors.

"**Royalties**" means royalties (including landowner's and lessor's royalties), overriding royalties, nonparticipating royalties, convertible interests, sliding scale royalties, compensatory royalties, production payments, carried interests, net profits interests, reversionary interests and other burdens upon, measured by or payable out of production therefrom, and any delay rentals or shut in royalties or similar payments.

"**Sale Motion**" has the meaning assigned to such term in the Bidding Procedures Order.

"**Sale Order**" means an Order of the Bankruptcy Court substantially in the form of Exhibit G attached hereto, with such modifications, if any, as may be reasonably acceptable to the Parties, pursuant to, but not limited to, Sections 105, 363 and 365 of the Bankruptcy Code.

"**Seller Credit Obligations**" has the meaning set forth in Section 8.02(c).

"**Seller Group**" means each Seller, its respective Affiliates and the former, current or future partners, co-owners, equity holders and Representatives of each of the foregoing.

"**Seller Taxes**" means (a) any and all Taxes of, imposed on or attributable to any member of the Seller Group, or any affiliated, combined, consolidated or unitary group of which any member of the Seller Group is or was a member, including any such Taxes that become a liability of Buyer under any common law doctrine of de facto merger, as a result of assumption, transferee, or successor liability, by Contract or operation of Legal Requirement, or otherwise (but excluding any Asset Taxes allocable to Buyer pursuant to Section 8.01(b)(i) and any Transfer Taxes for which Buyer is responsible under Section 8.01(a)), (b) Asset Taxes allocable

to any Seller pursuant to Section 8.01(b)(i), (c) any Taxes imposed on or with respect to the ownership or operation of any Excluded Asset, (d) any Taxes (other than Asset Taxes and Taxes described in clauses (a), (b), or (c)) imposed on or with respect to the ownership or operation of the Assets or the production of Hydrocarbons therefrom or the receipt of proceeds therefrom for any Tax period (or portion thereof) ending at or before the Effective Time and (e) any Transfer Taxes for which Sellers are responsible under Section 8.01(a).

"**Sellers**" has the meaning set forth in the introductory paragraph, and "**Seller**" will mean any of them.

"**Straddle Period**" means any Tax period beginning before, and ending after, the Effective Time.

"**Subject Area**" means the Commonwealth of Pennsylvania.

"**Subsidiary**" means any entity with respect to which a specified Person (or a Subsidiary thereof) has the power, through the ownership of securities or otherwise, to elect a majority of the directors or similar managing body; *provided* that, for purposes of this Agreement, solely the Persons listed in Schedule 1.01(a) attached hereto will constitute Subsidiaries of EdgeMarc.

"**Successful Bid**" has the meaning set forth in the Bidding Procedures.

"**Successful Bidder**" has the meaning set forth in the Bidding Procedures.

"**Surface Rights**" means all transferable surface leases, subsurface leases, rights-of-way, licenses, easements, rights of ingress or egress, use or joint use agreements and other surface or subsurface rights agreements, used or held for use primarily in connection with the ownership, operation, maintenance or repair of, or the production, gathering, treatment, processing, fractionating, storing, sale or disposal of Hydrocarbons or produced water from, the Properties, together with all surface fee interests in the lands covered by the Assigned Leases and Interests.

"**Suspense Funds**" means proceeds of production and associated penalties and interest in respect of any of the Assets that are payable to Third Parties and are being held in suspense by a Seller as the operator of such Assets.

"**Tax**" or "**Taxes**" (and with correlative meaning, "**Taxable**", "**Taxation**" "**Taxing**") means (a) all federal, state, local and foreign taxes, including all net income, gross receipts, capital, sales, use, ad valorem, value added, transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment, social security, unemployment, excise, severance, stamp, occupation, disability, alternative or add-on minimum, escheat, transportation, production, unclaimed property, real property transfer or gain, real property, personal property, estimated and other taxes of any kind whatsoever, and all other fees, levies, assessments, customs, duties and other charges, in each case in the nature of a tax and (b) all interest, penalties, fines and additions to tax imposed by any Tax Authority in connection with any item described in clause (a), whether disputed or not, and (c) any Liability in respect of any item described in clause (a) or clause (b) that arises by reason of being a member of an affiliated, combined, consolidated or unitary group (including pursuant to Treasury Regulations

Section 1.1502-6), assumption, transferee or successor liability, by Contract or operation of Legal Requirement, or otherwise.

"**Tax Authority**" means any Governmental Authority charged with the administration of any Legal Requirement relating to Taxes, including the imposition, assessment or collection of Taxes.

"**Tax Return**" means any return, declaration, report, estimate, information return and statement required to be filed in respect of any Taxes (including any attachment thereto, and including any amendment thereof).

"**Third Party**" means any Person other than a Seller, Buyer or any of their respective Affiliates.

"**Trademarks**" means any trademark, trade name, corporate name, business name, domain name, trade style, trade dress, service mark, logo, source identifier, business identifier, or design of like nature, and all goodwill associated therewith, any registration of the foregoing, and any application in connection therewith, including any such registration or application in the United States Patent and Trademark Office or in any similar office or agency of the United States, any State thereof, or any other country, and all extensions or renewals of any of the foregoing.

"**Transaction Documents**" means this Agreement, the Transition Services Agreement and any other agreements, instruments or documents entered into pursuant to this Agreement.

"**Transfer Taxes**" has the meaning set forth in Section 8.01(a).

"**Transferred Employees**" has the meaning set forth in Section 8.03(a).

"**Transition Services Agreement**" has the meaning set forth in Section 8.07.

"**Trustee**" has the meaning set forth in Section 13.14.

"**Wells**" has the meaning set forth in Section 2.01(b)(ii).

"**Working Interest**" means, for any Asset, the percentage of costs and expenses associated with the exploration, drilling, development, operation, maintenance and abandonment on or in connection with such Asset required to be borne with respect thereto, but without regard to the effect of any Royalties, measured by or payable out of production.

Section 1.02.    *Other Definitions and Interpretive Matters.*

(a)    Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation will apply:

(i)    *Calculation of Time Period*.  When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period will be

17

excluded.  If the last day of such period is a day other than a Business Day, the period in question will end on the next succeeding Business Day.

(ii)     *Dollars*.  Any reference in this Agreement to "**Dollars**" or "**$**" means United States dollars.

(iii)     *Exhibits; Schedules; Disclosure Schedules*.  All Exhibits, Schedules and Disclosure Schedules attached or annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.  Any capitalized terms used in any Exhibit, Schedule or Disclosure Schedule but not otherwise defined therein will be defined as set forth in this Agreement.

(iv)     *Gender and Number*.  Any reference in this Agreement to gender includes all genders, and words imparting the singular number only include the plural and vice versa.

(v)     *Headings*.  The provision of a table of contents, the division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and will not affect or be utilized in the construction or interpretation of this Agreement.  All references in this Agreement to any "Section" or "Article" are to the corresponding Section or Article of this Agreement unless otherwise specified.

(vi)     *Herein*.  Words such as "herein," "hereof" and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear, unless the context otherwise requires.

(vii)     *Including*.  The word "including" or any variation thereof means "including, without limitation", and will not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

(viii)     *Statute*.  Unless otherwise specified, references to a statute means such statute as amended from time to time and includes any successor legislation thereto and any rules or regulations promulgated thereunder; *provided* that, for the purposes of the representations and warranties set forth herein, with respect to any violation of or non-compliance with, or alleged violation of or non- compliance with, any Legal Requirement, the reference to such Legal Requirement means such Legal Requirement as in effect at the time of such violation or non-compliance or alleged violation or non-compliance.

(ix)     *Contract*.  References to a Contract means such Contract as amended from time to time.

(x)     *Accounting Terms*. Each accounting term not defined herein will have the meaning given to it under GAAP as interpreted as of the date of this Agreement.

(b)     *No Strict Construction*.  Buyer, on the one hand, and Sellers, on the other hand, participated jointly in the negotiation and drafting of this Agreement, and, in the event an

18

ambiguity or question of intent or interpretation arises, this Agreement will be construed as jointly drafted by Buyer, on the one hand, and Sellers, on the other hand, and no presumption or burden of proof will arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement.  Without limitation as to the foregoing, no rule of strict construction construing ambiguities against the draftsperson will be applied against any Person with respect to this Agreement.

<div align="center">

ARTICLE 2

PURCHASE AND SALE

</div>

Section 2.01.  *Purchase and Sale.*

(a)    Upon the terms and subject to the conditions of this Agreement, at the Closing, Sellers will sell, transfer, assign, convey and deliver to Buyer, and Buyer will purchase, acquire and accept from Sellers, the Assets, Free and Clear (except for Permitted Encumbrances and Assumed Liabilities).

(b)    The "**Assets**" means all right, title and interest of any Seller in, to or solely under the following:

(i)    all Leases and Mineral Interests located within the Subject Area, including those described on Exhibit A-1 attached hereto but excluding those described on Exhibit A-2 attached hereto, and those Leases and Mineral Interests located in, under or that may be produced from or attributable to (1) the lands covered by such Leases or Mineral Interests, and (2) the Leases, Mineral Interests and lands included in any units with which such Leases, Mineral Interests or lands covered thereby may have been pooled, unitized or communitized (collectively, the "**Assigned Leases and Interests**"), and all other interests of every kind and character in, to, under or derived from the Assigned Leases and Interests, as to all lands and depths covered thereby;

(ii)    all of the oil, gas, water, disposal, observation, injection or other wells located on or traversing the Assigned Leases and Interests, on lands pooled, unitized or communitized with any portion thereof, on lands located within any governmental or voluntary drilling or spacing unit (if applicable) which includes any portion thereof, or on portions thereof associated with proved undeveloped reserves, whether producing, non-producing, plugged, unplugged, shut-in or permanently or temporarily abandoned located on or used in connection with the Assigned Leases and Interests, including those described on Exhibit B (collectively, the "**Wells**", and together with the Assigned Leases and Interests, the "**Properties**");

(iii)    all Hydrocarbons in, on, under or that may be produced from or attributable to the Properties, in each case, at or  after the Closing Date;

(iv)    all equipment, machinery, fixtures and other tangible personal property and improvements located in or on the Properties and primarily used in connection with the ownership or operation of the Properties, including tanks, boilers, plants, injection facilities, saltwater disposal facilities, compressors and other compression facilities

<div align="center">19</div>

(whether installed or not), pumping units, flow lines, pipelines, gathering systems, Hydrocarbon treating or processing systems or facilities, meters, machinery, pumps, motors, gauges, valves, power and other utility lines, roads, computer and automation equipment, telecommunications equipment, field radio telemetry and associated frequencies and licenses, pressure transmitters, central processing equipment and other appurtenances, improvements and facilities, including the items described on Exhibit D (collectively, the "**Equipment**");

(v)     all vehicles and other rolling stock, office leases, field offices (other than office leases and field offices used solely in connection with the Excluded Leases and Interests) and storage yards, in each case, primarily used in connection with the Properties, including those that are described on Schedule 2.01(b)(v) (collectively, the "**Miscellaneous Corporate Property**");

(vi)     all pipes, casing, tubing, tubulars, fittings, meters, and other spare parts, supplies, tools, and materials located on the Properties that are primarily used in connection with the ownership or operation of the Properties, or Equipment;

(vii)     to the extent they may be transferred or assigned under Legal Requirements, all Permits held by Sellers primarily for the ownership, operation or use of the Assets (collectively, the "**Acquired Permits**");

(viii)     all other Contracts that constitute, as of the Closing Date, Desired 365 Contracts, excluding Surface Rights, the Assigned Leases and Interests and the assignments or conveyances in Sellers' chain of title thereto (collectively, the "**Assigned Contracts**");

(ix)     all Surface Rights, including those described on Exhibit E;

(x)     subject to Section 2.02(s), all books, databases, files, records, reports and data (other than the Excluded Records) in Sellers' possession, whether in written or electronic format, to the extent specifically relating to any Asset, Transferred Employee and/or to any Assumed Liabilities, including, for the avoidance of doubt, all environmental reports and all seismic, geological, geochemical or geophysical data owned or licensed by Sellers to the extent specifically related to any Asset (collectively, the "**Records**");

(xi)     all Imbalances and Suspense Funds associated with the Assets;

(xii)     all rights to Receivables of Sellers to the extent related to or attributable to the ownership or operation of the Assets or the sale of Hydrocarbons produced from or attributable to the Properties on and after the Effective Time;

(xiii)     all insurance benefits, including rights and proceeds, to the extent arising from or relating to any Casualty Loss and not committed or applied by any Seller prior to the Closing to repair, restore or replace any lost, damaged, destroyed or taken portion of the Assets, and to the extent such insurance benefits are taken into account for

20

purposes of any adjustment to the Purchase Price as set forth in Section 3.2 of Appendix A;

      (xiv)    all Intellectual Property;

      (xv)    any rights, claims, causes of action and defenses of Seller under any Legal Requirement or Contracts, including any and all warranties and indemnities and all similar claims against Third Parties arising from or relating to any of the Assumed Liabilities;

      (xvi)    all claims of any Seller against Buyer or any of its Controlled Affiliates with respect to the Assets or the operation thereof, other than claims under this Agreement or any other Transaction Document;

      (xvii)    all avoidance actions or similar causes of action arising under Sections 544 through 553 of the Bankruptcy Code related to the Assets, including any proceeds thereof; and

      (xviii)    the proceeds (net of any reasonable transaction costs) received by Sellers from the sale of any Asset pursuant to the exercise of a Preferential Purchase Right.

Section 2.02.  *Excluded Assets.*

Notwithstanding the foregoing, nothing herein will be deemed to constitute an agreement to sell, transfer, assign or convey the Excluded Assets to Buyer, and Sellers will retain all right, title and interest to, in and under the Excluded Assets.  The term "**Excluded Assets**" means all assets of any Seller other than the Assets, including:

    (a)    the Cash Amount delivered to Sellers pursuant to this Agreement;

    (b)    cash and cash equivalents of Sellers (other than Suspense Funds);

    (c)    all rights to Receivables of Sellers to the extent attributable to the period prior to the Effective Time, including related to or attributable to the ownership or operation of the Assets or the sale of Hydrocarbons produced from or attributable to the Properties;

    (d)    any shares of capital stock or other equity interest of Sellers or any of Sellers' Subsidiaries or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interest of any Seller or any of Sellers' Subsidiaries;

    (e)    all minute books, stock ledgers, corporate seals and stock certificates of Sellers;

    (f)    all Hedge Contracts;

    (g)    all Excluded Records;

    (h)    all Excluded Leases and Interests;

(i)    all Excluded Contracts;

(j)    the Permitted Prior Lien Escrow;

(k)    all equipment, machinery, fixtures and other tangible personal property, other than the Equipment (including Wells) and the Miscellaneous Corporate Property;

(l)    all pipes, casing, tubing, tubulars, fittings, meters, and other spare parts, supplies, tools, and materials located on and used, or held for use, primarily as inventory in connection with the ownership or operation of the Excluded Leases and Interests;

(m)    all surface leases, subsurface leases, rights-of-way, licenses, easements, use or joint use agreements and other surface or subsurface rights agreements to the extent applicable to, or used or held in connection with, the ownership, operation, maintenance or repair of, or the production, gathering, treatment, processing, storing, sale or disposal of Hydrocarbons or produced water from, the Excluded Leases and Interests, together with all surface fee interests in the lands covered by the Excluded Leases and Interests (in each case, to the extent not constituting a Surface Right);

(n)    all rights to any refunds, credits, receivables or rebates for Taxes or other costs paid by Sellers and attributable to any period (or portion thereof) ending at or prior to the Effective Time; *provided*, that any such amounts received by Buyer shall be retained by Buyer to the extent necessary to offset the amount of Seller Taxes paid or otherwise economically borne by Buyer and not otherwise taken into account pursuant to this Agreement, if any;

(o)    all insurance policies and rights to proceeds thereof other than to the extent specifically provided in Section 2.01(b)(xiii);

(p)    all rights, claims or causes of action and defenses by or in the right of Sellers other than to the extent specifically provided in Section 2.01(b)(xv) through 2.01(b)(xviii) (including as against any current or former director or officer of Sellers and under this Agreement or any other Transaction Document);

(q)    all avoidance actions or similar causes of action arising under Sections 544 through 553 of the Bankruptcy Code, including any proceeds thereof, not constituting Assets pursuant to Section 2.01(b)(xvii);

(r)    each 365 Contract that, as of the Closing Date, is not designated as a Desired 365 Contract;

(s)    to the extent not transferable without consideration after the use of Seller's commercially reasonable efforts to obtain consent to such a transfer (provided that such commercially reasonable efforts shall not include any payment of any fee, penalty or other consideration, or grant of any accommodation, by Seller to any Person), any seismic, geological, geochemical or geophysical data or information covered by Section 2.01(b)(x) and any rights relating thereto arising under any associated Contracts; and

(t)    any rights or assets constituting "Assets" under that certain Asset Purchase Agreement, dated as of July 24, 2019, by and among EdgeMarc, the EM Subsidiaries and Diversified Gas & Oil Corporation.

Section 2.03.   *Assumed Liabilities.*

Upon the terms and subject to the conditions of this Agreement, at the Closing, Buyer will assume and agree to discharge, when due (in accordance with their respective terms and subject to the respective conditions thereof), the following Liabilities (and only the following Liabilities), other than any Liabilities related to, caused by or attributable to Seller Taxes (collectively, the "**Assumed Liabilities**"):

(a)    *Generally*.  All Liabilities (including Liabilities for Taxes) arising from the Assets or the ownership and operation of the Assets by Buyer after the Closing (including the amount of any Asset Taxes allocable to Buyer as determined pursuant to Section 8.01(b)(i);

(b)    *Assigned Contract*s.  All of Sellers' Liabilities under the Assigned Contracts, to the extent arising after the Closing or arising at or prior to the Closing to the extent requiring performance only (and not payment relating to periods prior to Closing) after the Closing;

(c)    *Assigned Leases and Interests*.  All of Sellers' Liabilities under the Assigned Leases and Interests, to the extent arising after the Closing or arising at or prior to the Closing to the extent requiring performance only (and not payment relating to periods prior to Closing) after the Closing;

(d)    *Properties*.  All of Sellers' unsatisfied plugging and abandonment obligations relating to the Properties, whether arising prior to, at or after the Closing Date (but, for clarity, excluding any plugging and abandonment obligations relating to the Excluded Assets);

(e)    *Cure Costs*.  All Cure Costs (if any) required to be paid by Buyer pursuant to Section 2.05;

(f)    *Suspense Funds*.  All obligations of Sellers in respect of the Suspense Funds, limited to the aggregate of the amount of cash in respect of the Suspense Funds actually transferred to Buyer by Sellers at the Closing and the amount of any adjustments to the Purchase Price pursuant to Section 2.1(d) of Appendix A;

(g)    *Transferred Employees*.  All Liabilities arising with respect to any Transferred Employee (if any) during periods from and after the Closing;

(h)    *Environmental*.  All Liabilities relating to the Properties or Assets arising from or relating to any Environmental Laws (i) arising on or after the Closing or (ii) arising prior to the Closing, in the case of this clause (ii), solely to the extent required by Environmental Laws or other Legal Requirements, including all plugging and abandonment obligations relating to the Properties or Assets or Liabilities arising from or relating to any presence or Release of any Hazardous Substance at, on, under or migrating from any Properties or Assets; and

(i)      *Property Costs*.   To the extent not already described in Section 2.03(a) through Section 2.03(g), all Property Costs arising from, related to or associated with the Properties, in each case, to the extent arising on or after, or relating to a period on or after, the Effective Time.

Section 2.04.   *Excluded Liabilities.*

Buyer will not assume and will not be obligated to assume or be obliged to pay, perform or otherwise discharge, and Sellers will remain liable with respect to, any Liability of Sellers or their predecessors (including any Liabilities caused by or attributable to Seller Taxes) other than the Assumed Liabilities (such Liabilities, collectively, the "**Excluded Liabilities**"). Notwithstanding anything herein to the contrary, in no event shall (i) Buyer or any of its Affiliates assert any Claim or right against any Seller or any of its Affiliates or (ii) Seller or any of its Affiliates have any Liability to Buyer or any of its Affiliates, in each case, with respect to any Liability relating to the Properties or Assets arising from or relating to any Environmental Laws arising prior to the Closing.

Section 2.05.   *Cure Costs; Desired 365 Contracts.*

(a)      Schedule 2.05(a) (and, for the purposes of this Agreement, Exhibit A-1, to the extent such Leases and Mineral Interests are subject to Section 365 of the Bankruptcy Code) sets forth a complete list of all 365 Contracts that Buyer intends to acquire as an Assigned Contract at the Closing (subject to additions pursuant to Section 2.05(b), the "**Desired 365 Contracts**"). Upon Closing, Sellers, subject to the entry of the Sale Order, will assign the Desired 365 Contracts and Assigned Leases and Interests to Buyer. Buyer will pay or cause to be paid, pursuant to Section 365 of the Bankruptcy Code and the Sale Order, all Cure Costs relating to the Desired 365 Contracts.

(b)      At any time prior to the third calendar day prior to the Closing Date, Buyer will have the right to provide written notice to Sellers of Buyer's election to designate a 365 Contract as a Desired 365 Contract, and upon such designation such 365 Contract will constitute an Asset and Assigned Contract or Assigned Lease and Interest, as applicable, and will be conveyed to Buyer under this Agreement at Closing (and, if applicable, will cease to constitute an Excluded Asset), so long as (1) such 365 Contract is added to the Assigned Contracts or the Assigned Leases and Interests, as applicable, prior to the entry of any Order of the Bankruptcy Court approving the rejection of such 365 Contract, and (2) the Third Party to such 365 Contract receives information evidencing Buyer's adequate assurance of future performance and has an opportunity to object within such period of time set forth in an Order of the Bankruptcy Court.

(c)      To the extent that Buyer makes a valid designation with respect to any 365 Contracts pursuant to Section 2.05(b), the applicable Exhibits and Schedules to this Agreement will be deemed to have automatically been updated (without action of any Party or Person) to reflect such designation.

Section 2.06.   *Assignment of Assets Subject to Consent Requirements*.   Notwithstanding any other provision of this Agreement to the contrary, this Agreement will not constitute an agreement to assign or transfer and will not implement the assignment or transfer of any Asset if (a) an attempted assignment or transfer thereof, without the approval, authorization or consent of,

or granting or issuance of any license or permit by, any Third Party thereto (each such action, a "**Necessary Consent**"), would (i) constitute a breach thereof or of any Legal Requirement or Order, (ii) in any material respect either adversely affect the rights or increase the obligations of Buyer thereunder, or (iii) reasonably be likely to result in assignment of the Assets to Buyer that is void or voidable and (b) the Bankruptcy Court has not entered an Order providing that such Necessary Consent is not required, and none of the Parties shall have any further obligations or Liability thereunder after Closing with respect to non-compliance with any consent provision as part of the consummation of the transactions contemplated by this Agreement.  In such event, Sellers and Buyer will use their commercially reasonable efforts to obtain the Necessary Consents with respect to any such Asset or any claim or right or any benefit arising thereunder for the assignment or transfer thereof to Buyer as Buyer may reasonably request; provided, however, that neither Sellers nor Buyer will be obligated to pay any consideration or grant any accommodation therefor to any Third Party from whom consent or approval is requested or to initiate any Proceedings to obtain any such consent or approval.  If such Necessary Consent is not obtained on or prior to Closing, then Buyer may elect to exclude the applicable Assets subject to such Necessary Consent from the Assets conveyed at Closing and such Assets shall no longer be considered Assets and shall instead constitute Excluded Assets for all purposes hereunder (without any reduction to the Purchase Price). If any such Necessary Consent requirement with respect to an Asset that Buyer elected to exclude from the Assets conveyed at Closing is subsequently satisfied within 120 days following the Closing Date, (1) Sellers shall, promptly after such Necessary Consent requirement is satisfied, convey the applicable Assets (including all net proceeds from the Assets from the Closing to the date of assignment) to Buyer, (2) the Parties shall deliver all instruments and documents that would have been required under the terms hereof to be delivered at Closing with respect to such Assets at Closing, and (3) such Assets shall no longer be deemed to be Excluded Assets and shall instead be considered Assets hereunder.

Section 2.07.  *Misallocated Assets*.  Subject to Section 2.06, if after the Closing (i) Buyer holds any Excluded Assets or Excluded Liabilities or (ii) any Seller holds any Assets or Assumed Liabilities, Buyer or the applicable Seller will promptly transfer (or cause to be transferred) such assets or assume (or cause to be assumed) such Liabilities to or from (as the case may be) the other Party.  Prior to any such transfer, the Party receiving or possessing any such asset will hold it in trust for such other Party.

Section 2.08.  *Further Assurances*.

From time to time following the Closing, the Parties will execute, acknowledge and deliver all such further conveyances, notices, assumptions, assignments, releases and other instruments, and will take such further actions, as may be reasonably necessary or appropriate to assure fully to Buyer and its respective successors or assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Buyer under this Agreement and to assure fully to each Seller and their successors and assigns, the assumption of the liabilities and obligations intended to be assumed by Buyer under this Agreement, and to otherwise make effective the transactions contemplated hereby; provided that nothing in this Section 2.08 will prohibit any Seller from ceasing operations or winding up its affairs following the Closing.

ARTICLE 3

PURCHASE PRICE

Section 3.01.  *Purchase Price.* The aggregate purchase price for the purchase, sale, assignment and conveyance of Sellers' right, title and interest in, to and under the Assets will consist of the following (collectively, the "**Purchase Price**"):

(a)    cash in an amount equal to Nine Million Six Hundred Eighty-Four Thousand Six Hundred and Thirty-Seven Dollars ($9,684,637.00) (the "**Cash Amount**"), which, for the avoidance of doubt, shall not be subject to adjustment pursuant to this Agreement, including the terms of Section 2.1 of Appendix A and Section 3.02 of this Agreement.

(b)    a credit bid and equivalent release of Sellers with respect to all debts owed by Sellers under the DIP Credit Agreement or the Prepetition Credit Agreement, being all principal, interest and fees, including, but not limited to, unused and exit fees of KeyBank, the fees of Hunton Andrews Kurth LLP and Huron Consulting Group and all other fees and expenses owed under the DIP Credit Agreement or the Prepetition Credit Agreement as of the Closing Date, as may be adjusted pursuant to the terms of Section 2.1 of Appendix A and Section 3.02 of this Agreement;

(c)    cash in an amount equal to the Cure Costs of the Desired 365 Contracts;

(d)    the assignment to one or more Sellers, as designated in writing by EdgeMarc prior to the Closing, of the Permitted Prior Lien Cash Rights; and

(e)    the assumption of the Assumed Liabilities.

The Cash Amount component of the Purchase Price will be delivered by Buyer as set forth in Section 4.02 of this Agreement. The Credit Bid component of the Purchase Price shall be credited to Sellers' debts by KeyBank contemporaneously with the Closing, and KeyBank shall deliver a statement reflecting such credit at the Closing in form and substance reasonably satisfactory to Sellers.

Section 3.02.  *Closing Payment and Post-Closing Adjustments.*

(a)    Not later than three Business Days prior to the Closing Date, or such later period as agreed to by Buyer and Sellers, Sellers shall prepare and deliver to Buyer a statement (the "**Estimated Closing Statement**") setting forth Sellers' good faith estimates of the Purchase Price as of the Closing Date after giving effect to all adjustments set forth in Section 2.1 of Appendix A.

(b)    The Parties shall attempt in good faith to agree upon the Estimated Closing Statement and the Estimated Closing Statement, as agreed upon by the Parties, will be used to adjust the Purchase Price at Closing; *provided*, *however*, that if the Parties cannot agree on all adjustments set forth in the Estimated Closing Statement prior to the Closing, then, with respect to any disputed adjustment, the amount of such adjustment as set forth in the Estimated Closing Statement as presented to Buyer will be used to adjust the Purchase Price at Closing.

26

(c)    As soon as reasonably practicable after the Closing, but in no event later than 30 days after the Closing Date, Sellers shall prepare and deliver to Buyer a statement (the "**Closing Statement**") setting forth the final calculation of the Purchase Price and showing the calculation of each adjustment under Sections 2.1 of Appendix A.  As soon as reasonably practicable, but not later than ten Business Days following its receipt of the Closing Statement hereunder, Buyer may deliver to Sellers a statement (the "**Objection Statement**") setting forth any changes that Buyer proposes be made to the amounts set forth in the Closing Statement.  If Buyer does not deliver an Objection Statement within such ten Business Day period, then the Closing Statement delivered by Sellers shall be conclusive, final and binding on the Parties.  If Buyer delivers an Objection Statement, during the 15 days following delivery of such Objection Statement, Sellers and Buyer shall use their commercially reasonable efforts to reach agreement on the Closing Statement.  Any such agreement in writing shall be conclusive, final and binding on the Parties.  In the event that the Parties are unable to reach agreement as to the Closing Statement, any Party may refer the items of adjustment which are in dispute or the interpretation or effect of this Section 3.02 or Section 2.1 of Appendix A to the Bankruptcy Court for review and final determination.

(d)    In determining the amount of any disputed adjustment to the Purchase Price, the Bankruptcy Court shall apply the terms of Section 2.1 of Appendix A and this Section 3.02 and shall select only the applicable adjustment as proposed by Buyer or by Sellers.  The Bankruptcy Court's determination of any disputed adjustment shall be conclusive, final and binding on the Parties.  The Parties waive any right to damages, interest or penalties with respect to any such disputed adjustment.  Buyer and each Seller shall bear its own legal fees and other costs of presenting its case.  No later than five days after the Closing Statement becomes final pursuant to this Section 3.02 (including following any resolution or adjudication by the Bankruptcy Court of any disputed adjustment to the Purchase Price), (i) Buyer shall pay to Sellers (by wire transfer of immediately available funds to accounts designated in writing by EdgeMarc) the amount, if any, by which (1) the final Purchase Price exceeds (2) the Closing Payment or (ii) Sellers shall pay to Buyer (by wire transfer of immediately available funds to accounts designated in writing by Buyer) the amount, if any, by which (1) the Closing Payment exceeds (2) the final Purchase Price.

(e)    Buyer shall assist Sellers in the preparation of the Closing Statement under Section 3.02 as may be reasonably requested by Sellers to facilitate such process.

<div align="center">

ARTICLE 4
CLOSING

</div>

Section 4.01.    *Closing Date.*

Subject to the satisfaction of the conditions set forth in Article 9, Article 10 and Article 11 hereof (or the waiver thereof by the Party entitled to waive that condition), the closing of the sale of the Assets and the assumption of the Assumed Liabilities contemplated hereby (the "**Closing**") will take place remotely via the exchange of electronic documents and signatures by electronic mail and/or facsimile, on the date that is three Business Days after the satisfaction or waiver of the conditions set forth in Article 9, Article 10 and Article 11 (other than conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of

such conditions), unless another place, date or time are agreed to in writing by EdgeMarc and Buyer.  The date and time at which the Closing actually occurs is hereinafter referred to as the "**Closing Date.**"

Section 4.02.  *Payments on the Closing Date.*

At the Closing:

(a)  Buyer will pay an amount equal to the Cash Amount, by wire transfer of immediately available funds to the accounts designated in writing by EdgeMarc; and

(b)  Buyer will pay the Cure Costs required to be paid by Buyer pursuant to Section 2.05 by wire transfer of immediately available funds to the accounts designated in writing by EdgeMarc, if applicable.

Section 4.03.  *Buyer's Deliveries.*

At the Closing, Buyer will deliver or cause to be delivered to Sellers (or such other Persons where so designated):

(a)  the payments required to be made at the Closing pursuant to Section 4.02;

(b)  a Master Assignment, an Assignment for each jurisdiction in which the Assets are located and each other Transaction Document to which Buyer is a party, duly executed (and acknowledged, where applicable) by Buyer, including letters-in-lieu of transfer orders, change of operator forms to be prepared by Sellers for Buyer's execution, change of operator notices required under applicable Operating Agreements, and any other applicable forms and declarations required by federal and state agencies relative to Buyer's assumption of operations and plugging and abandonment Liabilities with respect to all of the Assets, in each case, in form and substance reasonably acceptable to Buyer and Sellers;

(c)  the certificates of Buyer to be received by Sellers pursuant to Section 11.01 and Section 11.02;

(d)  the Transition Services Agreement, duly executed by Buyer;

(e)  letters-in-lieu of transfer orders with respect to the Properties, prepared by Sellers and in forms reasonably acceptable to Buyer, duly executed by Buyer;

(f)  evidence (including evidence of satisfaction of, or ability to satisfy upon Closing, all applicable bonding or insurance requirements) as Sellers may reasonably request demonstrating that Buyer is qualified with the applicable Governmental Authorities and pursuant to any applicable Operating Agreement to succeed Sellers as the owner and, where applicable, the operator of the Assets; and

(g)  such other assignments and other good and sufficient instruments of assumption and transfer, in form reasonably satisfactory to the Parties, as Sellers may request to transfer and assign the Assumed Liabilities to Buyer.

Section 4.04.   *Sellers' Deliveries.*

At the Closing, each Seller will deliver to Buyer:

(a)     a Master Assignment, an Assignment for each jurisdiction in which the Assets are located and each other Transaction Document to which such Seller is a party (including letters-in-lieu of transfer orders and change of operator forms), and any other applicable forms required by federal and state agencies relative to the transfer of the ownership and/or operation of the Assets from Sellers to Buyer, in each case in form and substance reasonably acceptable to Buyer and Sellers, duly executed (and acknowledged, where applicable) by such Seller;

(b)     the certificates of such Seller to be received by Buyer pursuant to Section 9.01 and Section 9.02;

(c)     the Transition Services Agreement, duly executed by the applicable Seller(s);

(d)     letters-in-lieu of transfer orders with respect to the Properties, prepared by Sellers and in forms reasonably acceptable to Buyer, duly executed by the applicable Seller(s);

(e)     counterparts of such documents as are required to transfer the regulatory authority to the Wells operated by a Seller to Buyer;

(f)     recordable releases (in sufficient counterparts to facilitate recording in the applicable counties where the Assets are located) in form reasonably acceptable to Buyer of any mortgages or security interests over the Assets, in each case, securing indebtedness for borrowed money of Sellers or any of their Affiliates;

(g)     a certificate of non-foreign status of each Seller (or, if such Seller is a disregarded entity within the meaning of Treasury Regulations Section 1.1445-2(b)(2)(iii), the Person that is treated as the transferor of property for U.S. federal income tax purposes) meeting the requirements of Treasury Regulations Section 1.1445-2(b)(2), in form and substance reasonably satisfactory to Buyer and dated as of the Closing Date; and

(h)     such other bills of sale, deeds, endorsements, assignments and other good and sufficient instruments of conveyance and transfer, in form reasonably satisfactory to the Parties, as Buyer may reasonably request to vest in Buyer all the right, title and interest of such Seller in, to or under any or all the Assets.

Section 4.05.   *Actions of KeyBank at the Closing.*

At the Closing, KeyBank shall credit the Credit Bid component of the Purchase Price to Sellers' then outstanding obligations under the DIP Credit Agreement (as applicable in accordance with Section 3.01).

Section 4.06.   *Withholding.*

Each of Buyer and any of its Affiliates shall be entitled to deduct and withhold from any proceeds payable to any Person pursuant to this Agreement such amounts that are required to be

deducted and withheld under applicable Tax Legal Requirements. Any amounts that are so deducted and withheld shall be treated for all purposes of this Agreement as having been paid to the Person in respect of which such deduction and withholding was made.

<div align="center">

ARTICLE 5

REPRESENTATIONS AND WARRANTIES OF SELLERS

</div>

Each Seller, severally and not jointly, represents and warrants the following to Buyer:

Section 5.01.  *Organization and Good Standing.*

Each Seller is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization.  Subject to the limitations imposed on such Seller as a result of having filed a petition for relief under the Bankruptcy Code, each Seller has the requisite power and authority to own or lease and to operate and use its properties and to carry on its business as now conducted.  Each Seller is duly qualified or licensed to do business and is in good standing in each jurisdiction where the character of its business or the nature of its properties makes such qualification or licensing necessary, except for such failures to be so qualified or licensed or in good standing as would not, individually or in the aggregate, have a Material Adverse Effect.

Section 5.02.  *Authority; Validity.*

Subject to entry of the Sale Order and such other authorization as is required by the Bankruptcy Court, each Seller has the requisite power and authority necessary to enter into and perform their obligations under this Agreement and the other Transaction Documents to which it is a party and to consummate the transactions contemplated hereby and thereby, and the execution, delivery and performance of this Agreement and such other Transaction Documents by Sellers and the consummation by Sellers of the transactions contemplated herein and therein have been duly and validly authorized by all requisite corporate action.  This Agreement has been duly and validly executed and delivered by each Seller and each other Transaction Document required to be executed and delivered by each Seller at the Closing will be duly and validly executed and delivered by such Seller at the Closing.  Subject to entry of the Sale Order and assuming the due authorization, execution and delivery by the other Parties, this Agreement and the other Transaction Documents constitute the legal, valid and binding obligations of Sellers, enforceable against Sellers in accordance with their respective terms, subject to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

Section 5.03.  *No Conflict.*

Except for (a) entry of the Sale Order, (b) notices, filings and consents required in connection with the Bankruptcy Cases, and (c) items listed on Disclosure Schedule 5.03, no Seller is required to give any notice to, make any filing with or obtain any consent from any Person (including any Governmental Authority) in connection with the execution and delivery of this Agreement and the other Transaction Documents or the consummation or performance of any of the transactions contemplated hereby and thereby.  When the consents and other actions

<div align="center">30</div>

described in the preceding sentence, including entry of the Sale Order, have been obtained and taken, the execution and delivery of this Agreement and the other Transaction Documents and the consummation of the transactions provided for herein and therein will not result in the breach of any of the terms and provisions of, or constitute a default (with or without notice or lapse of time or both) under, or conflict with, or cause any acceleration of any obligation of any Seller under (i) the certificate of incorporation, bylaws or other governing documents of any Seller, (ii) any Assigned Contract to which any Seller is or the Assets are bound, (iii) any Order applicable to any Seller or any of the Assets or (iv) any Legal Requirement, except, in the case of clauses (ii), (iii) and (iv), as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

Section 5.04. *Material Contracts.*

Disclosure Schedule 5.04 lists all Material Contracts in effect as of the Execution Date. Each Material Contract is a valid and binding obligation of Seller(s) party thereto and, to the Knowledge of Sellers, the other parties thereto in accordance with its terms and conditions, except as such validity and enforceability may be limited by (a) bankruptcy, insolvency, or other similar laws affecting the enforcement of creditors' rights generally and (b) equitable principles of general applicability (whether considered in a proceeding at law or in equity). No event has occurred which, with the passage of time or the giving of notice, or both, would constitute a default under or a violation of any Material Contract or would cause the acceleration of any obligation of any Seller or, to the Knowledge of Sellers, any other party thereto or the creation of a lien upon any Asset, except for such events that would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 5.05. *Permits.*

To Sellers' Knowledge, (a) all necessary Permits with regard to the ownership or operation of the Assets have been obtained and maintained except as would not reasonably be expected to be, individually or in the aggregate, material to Sellers, taken as a whole, (b) no Seller has received written notice of material default under any such material Permit and (c) no material violations exist in respect of such material Permits, except for such non-compliance and such facts, conditions or circumstances, the subject of which have been finally resolved.

Section 5.06. *Wells; Plug and Abandon Notice.*

Except as set forth on Disclosure Schedule 5.06, to the Knowledge of Sellers, as of the date of this Agreement:

(a)     There are no Wells (i) in respect of which a Seller has received a written notice, demand or order from any Governmental Authority or other Person requiring that such Wells be plugged and abandoned or requiring any mechanical integrity tests which have not been resolved to such Governmental Authority's or other Person's satisfaction, (ii) that are shut-in or are temporarily abandoned, or (iii) for which such Seller is currently obligated by applicable Legal Requirement or applicable Contract to plug and abandon;

(b)    During the period of Sellers' ownership and operation of the Assets, all Wells have been either in use for purposes of production or injection or suspended or temporarily abandoned in accordance with applicable Legal Requirements, Lease or Contract;

(c)    All Wells drilled by a Seller or any of its Affiliates and, to Sellers' Knowledge, all other Wells, have been drilled and completed within the limits permitted by all applicable Leases, contracts and pooling or unit agreements and by applicable Legal Requirements;

(d)    There are no Wells that are subject to exceptions to a requirement to plug and abandon issued by a Governmental Authority having jurisdiction over the applicable Well, Lease or Mineral Interest;

(e)    There are no temporarily abandoned or shut-in Wells; and

(f)    No consent or notice is required to be obtained by Sellers from, or delivered by Sellers to, any Third Party to transfer such operatorship to Buyer.

Section 5.07.    *Imbalances.*

Disclosure Schedule 5.07 lists the Imbalances relating to the Assets as of the date stated therein.

Section 5.08.    [Reserved]

Section 5.09.    *Preferential Purchase Rights.*

There are no Preferential Purchase Rights to which any Assets are subject, that are or will be triggered by this Agreement.

Section 5.10.    *Intellectual Property.*

Except as limited by Section 365(c)(1)(A) of the Bankruptcy Code, to the Knowledge of Sellers, Sellers own all material Intellectual Property or have valid licenses to use all material Intellectual Property used by them in the ordinary course of business.  As of the date hereof, no Proceedings are pending or, to the Knowledge of Sellers, threatened against Sellers before a Governmental Authority with regard to the ownership by Sellers of any material Intellectual Property.

Section 5.11.    *Legal Proceedings.*

(a)    Except for the Bankruptcy Cases and any adversary proceedings or contested motions commenced in connection therewith, or as set forth on Disclosure Schedule 5.11, after giving effect to the Sale Order, there is no Proceeding or Order pending, outstanding or, to Sellers' Knowledge, threatened relating to the Assets that would reasonably be expected to give rise to any material Liability of Buyer or be materially adverse to the ownership or use by Buyer of the Assets after the Closing, as such Assets are presently owned and used.  Except for the Bankruptcy Cases and any adversary proceedings or contested motions commenced in connection therewith or as set forth on Disclosure Schedule 5.11, there is no Proceeding or Order

32

pending, outstanding or, to Sellers' Knowledge, threatened against any Seller that seeks to restrain or prohibit or otherwise challenge the consummation, legality or validity of the transactions contemplated hereby.

(b)    Each Seller and each its Affiliates (a) are in material compliance with all Legal Requirements applicable to the operation of the Assets; and (b) have all material Permits, licenses, consents, authorizations, permit applications and other approvals of Governmental Authorities as are required for the operation of the Assets as presently operated.

Notwithstanding anything herein to the contrary, nothing in this Section 5.11(b) shall apply with respect to matters arising under or relating to environmental matters or Taxes.

Section 5.12.    *No Take-or-Pay Obligations.*

No Seller is obligated by virtue of any take-or-pay payment (including any process-or-pay or fractionate-or-pay), advance payment or other similar payment (other than gas balancing arrangements or Royalties that are reflected in the Net Revenue Interest figures set forth in Exhibit A-1 or Exhibit B) to deliver Hydrocarbons, or proceeds from the sale thereof, attributable to the Assets at some future time without receiving payment therefor at or within a customary period after the time of delivery.  No Seller or its Affiliates is obligated to pay any penalties or other amounts under any agreement as a result of the sale, gathering, delivery, processing, fractionation or transportation of quantities of Hydrocarbons produced from the Assets under or in excess of any such agreement's requirements.

Section 5.13.    *Payments.*

Except as set forth on Disclosure Schedule 5.13, and excluding the Suspense Funds, all Royalties due with respect to the Properties, in each case, to the extent attributable to the period of time prior to the Closing Date during which such Properties were owned by Sellers, have been properly and correctly paid by Sellers.

Section 5.14.    *Brokers or Finders.*

Except as set forth on Disclosure Schedule 5.14 of this Agreement, no Seller has incurred any obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payments in connection with this Agreement, the other Transaction Documents or the transactions contemplated hereby or thereby for which Buyer is or will become liable.

Section 5.15.    *Non-Consent Operations.*

Except as set forth on Disclosure Schedule 5.15, no operations are being conducted on the Assets with respect to which any Seller has elected to be a non-consenting party under the applicable Operating Agreement and with respect to which all of such Seller's rights have not yet reverted to it.  Disclosure Schedule 5.15 contains the payout status of each Well as of the Execution Date (or such other recent date as shown on such schedule) in which a possible reversion of interest may occur at payout.

33

Section 5.16.   *Environmental Matters.*

Except for facts, circumstances or conditions that have not had and would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect or as set forth on Disclosure Schedule 5.16:

(a)     To the Knowledge of Sellers, the Assets and their operations (and Sellers with respect thereto) are and have for the past three (3) years been in compliance with applicable Environmental Laws and such compliance includes (and for the past three (3) years has included) each Seller's or its Affiliates' obtaining, maintaining, renewing and complying with all Permits required or issued under Environmental Laws for the ownership or operation of the Assets;

(b)     With respect to Sellers' operation of the Assets and their operations (and Sellers with respect thereto), no Seller and no Affiliate of any Seller has received any written notice from any Governmental Authority or any other Person regarding (i) any actual or alleged non-compliance with or violation of applicable Environmental Law or (ii) any actual or potential Liability under Environmental Law, in each case, the subject of which is unresolved;

(c)     There is no Proceeding or Order pending, outstanding, or, to the Knowledge of Sellers, threatened in writing against any Seller or any Affiliate of any Seller pursuant to Environmental Law with respect to the Assets or their operations (or Sellers with respect thereto) that could reasonably be expected to result in a Seller or its Affiliates incurring any Liability pursuant to any applicable Environmental Law. No Seller and no Affiliate of Seller has entered into any commitments or restrictions under Environmental Laws or through voluntary conservation easements or agreements, in either case, with respect to protected species or their habitats that has created or would create a material burden on the use and enjoyment of the Assets; and

(d)     To the Knowledge of Sellers, with respect to the Assets and their operations (and Sellers with respect thereto), no Seller and no Affiliate of any Seller (and no other Person to the extent giving rise to a Liability of any Seller or any Affiliate of Seller) has disposed or arranged for disposal of any Hazardous Substance, so as to give rise to any Liability of any Seller or Affiliate of any Seller under Environmental Laws.

(e)     Sellers have provided to Buyer copies of all material environmental reports, audits and assessments relating to the Assets that are in their possession or control.

Section 5.17.   *Title; Assets.*

Sellers have Defensible Title to the Assets, including the Properties, and, subject to the entry of the Sale Order, Buyer will be vested with good title to the Assets Free and Clear, to the fullest extent permissible under Section 363(f) of the Bankruptcy Code.  Exhibit A-1 sets forth a true, correct and complete list of all Assigned Leases and Interests in which any Seller owns an interest, including Sellers' Working Interest, Net Revenue Interest and net acres.  Exhibit B sets forth a true, correct and complete list of all Wells owned by Sellers and used in connection with the Assets as of the Execution Date. All Equipment is in a state of reasonable repair (ordinary wear and tear excepted) so as to be suitable for the purposes of which such equipment was

constructed, obtained or is currently being used in all material respects. Sellers have made available to Buyer true and complete copies of each Lease that is an Assigned Lease and Interest, and any and all amendments, modifications, supplements, exhibits, restatements, guarantees and other agreements (whether written or oral), in each case related thereto, in its possession and control. To Seller's Knowledge, each Lease that is an Assigned Lease and Interest is in full force and effect, and is valid, binding and enforceable in accordance with its terms. As of the Execution Date, no Seller has received any written notice of (i) any default or event that with notice or lapse of time, or both, would constitute a default by a Seller under any of the Leases that are Assigned Leases and Interests, or (ii) any condemnation, zoning or other similar proceeding affecting any Property.

Section 5.18. *Operatorship.*

Exhibit B indicates the Wells in which a Seller is the operator as of the Execution Date. As of the date hereof, there is no pending vote, or any outstanding formal request for a vote (whether written or oral), to have the applicable Seller removed as operator of any of the Wells for which a Seller is currently designated as the operator.

Section 5.19. *Casualty Losses.*

As of the Execution Date, there has been no material Casualty Loss (whether or not covered by insurance) affecting any of the Assets that has not subsequently been completely repaired, replaced or restored.

Section 5.20. *Taxes.*

(a)    All Asset Taxes that have become due and payable by any Seller (whether or not shown on any Tax Return) have been properly and timely paid in full.

(b)    All Tax Returns that are required to be filed by any Seller with respect to Asset Taxes have been duly and timely filed and all such Tax Returns are true, correct and complete in all material respects.

(c)    There is not currently in effect any extension or waiver of any statute of limitations of any jurisdiction with respect to the assessment or collection of any Asset Tax. All Tax withholding and deposit requirements, including all information reporting and backup withholding requirements, imposed by applicable Tax Legal Requirements with respect to any of the Assets have been satisfied in all material respects.

(d)    No audits, examinations, lawsuits or other Proceedings are commenced, ongoing, pending or, to Sellers' Knowledge, proposed or threatened, against any Seller or the Assets with respect to any Asset Tax. Except for Encumbrances for Asset Taxes not yet due, (i) there are no Encumbrances for Taxes on any of the Assets, and (ii) no claim for unpaid Taxes has been made by any Governmental Authority that could give rise to any such Encumbrance.

(e)    No Asset is subject to any tax partnership agreement or provisions or is otherwise treated, or required to be treated, as held in an arrangement requiring a partnership income Tax

Return to be filed under Subchapter K of Chapter 1 of Subtitle A of the Code for U.S. federal income tax purposes.

Section 5.21.  *Employees.*

(a)    With respect to each Applicable Employee, Sellers have provided or made available to Buyer a list setting forth such Applicable Employee's (i) name; (ii) employer; (iii) department/function; (iv) title or job/position; (v) job designation (i.e., salaried or hourly); (vi) location of employment; (vii) employment status (active, on leave or on unpaid leave); and (viii) annual base rate of compensation and target bonus amount for the current fiscal year to which he or she is entitled.

(b)    No Seller is a party to any labor or collective bargaining agreement and there are no labor or collective bargaining agreements that pertain to the Applicable Employees. No labor organization or group of employees of Sellers that includes any Applicable Employee has made a pending demand for recognition, and there are no representation proceedings or petitions seeking a representation currently pending or, to the Knowledge of Sellers, threatened to be brought or filed with the National Labor Relations Board or other labor relations tribunal. There is no organizing activity involving a Seller pending, or to the Knowledge of Sellers, threatened by any labor organization or group of employees of a Seller. There are no strikes, work stoppages, slowdowns, lockouts or similar labor disputes, unfair labor practice charges, arbitrations, material grievances, unfair employment practice charges or complaints, or other claims or complaints against a Seller, pending or, to the Knowledge of Sellers, threatened by or on behalf of any Applicable Employee.

Section 5.22.  *AFEs; Capital Commitments.*

(a)    Disclosure Schedule 5.22 contains a list, true and correct as of the date of this Agreement, of all authorities for expenditures (collectively, "**AFEs**") for capital expenditures with respect to the Properties that have been proposed by any Person having authority to do so (including internal AFEs of a Seller not delivered to Third Parties) or other commitment to make expenditures in respect of the ownership or operation of the Properties requiring expenditures after the Closing Date, in each case, in an amount in excess of $100,000 (net to Sellers' interest).

(b)    Sellers are not legally obligated to make any future capital commitments under any Material Contract requiring an expenditure by Sellers in excess of $350,000 (net to Sellers' interest) relating to any of the Assets.

## ARTICLE 6
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Sellers as follows:

Section 6.01.  *Organization and Good Standing.*

Buyer is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Ohio.  Buyer has the requisite power and authority to own

36

or lease and to operate and use its properties and to carry on its business as now conducted. Buyer is (or at the Closing will be) duly qualified or licensed to do business in the State(s) where the Assets are located and Buyer or Buyer's Affiliates will be duly qualified or licensed to own or lease and to operate and use oil and gas assets in the State(s) where the Assets are located.

Section 6.02.  *Authority; Validity; Consents.*

Buyer has the requisite power and authority necessary to enter into and perform its obligations under this Agreement and the other Transaction Documents to which it is a party and to consummate the transactions contemplated hereby and thereby.  The execution, delivery and performance of this Agreement by Buyer and the consummation by Buyer of the transactions contemplated herein have been duly and validly authorized by all requisite limited liability company or corporate actions in respect thereof.  This Agreement has been duly and validly executed and delivered by Buyer and each other Transaction Document to which Buyer is a party will be duly and validly executed and delivered by Buyer, as applicable, at the Closing.  This Agreement and the other Transaction Documents to which Buyer is a party constitute the legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with their respective terms, except in each case as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, fraudulent conveyance, moratorium or other similar Legal Requirements affecting the enforcement of creditors' rights generally and by general principles of equity, regardless of whether such principles are considered in a proceeding at law or in equity.

Section 6.03.  *No Conflict.*

Except for any applicable notices, filing, consents or approvals under any applicable antitrust, competition or trade regulation or other Legal Requirements, Buyer is not and will not be required to give any notice to, make any filing with or obtain any consent from any Person (including any Governmental Authority) in connection with the execution and delivery of this Agreement and the other Transaction Documents or the consummation or performance of any of the transactions contemplated hereby and thereby, except as would not, individually or in the aggregate, reasonably be expected to affect Buyer's ability to perform its obligations under this Agreement or any other Transaction Documents or to consummate the transactions contemplated hereby or thereby.  When the consents and other actions described in the preceding sentence have been obtained and taken, the execution and delivery of this Agreement and the other Transaction Documents and the consummation of the transactions provided for herein and therein will not result in the breach of any of the terms and provisions of, or constitute a default (with or without notice or lapse of time or both) under, or conflict with, or cause any acceleration of any obligation of any Buyer under (i) any agreement, indenture or other instrument to which it or its assets is bound, (ii) the certificate of incorporation, bylaws or other governing documents of Buyer, (iii) any Order applicable to Buyer or its assets or (iv) any Legal Requirement, except as would not, individually or in the aggregate, reasonably be expected to affect Buyer's ability to perform its obligations under this Agreement or any other Transaction Documents or to consummate the transactions contemplated hereby or thereby.

Section 6.04.  *Litigation.*

37

There are no Proceedings or Orders pending, outstanding or, to the Knowledge of Buyer, threatened against Buyer, that seek to restrain or prohibit or otherwise challenge the consummation, legality or validity of the transactions contemplated hereby or that would, individually or in the aggregate, reasonably be expected to have an adverse effect on Buyer's performance of any of its obligations and covenants hereunder that are to be performed prior to, at or after Closing.

Section 6.05.   *Bankruptcy.*

There are no bankruptcy, reorganization or arrangement proceedings pending, being contemplated by or, to the Knowledge of Buyer, threatened against Buyer.

Section 6.06.   *Brokers or Finders.*

Neither Buyer nor any Person acting on behalf of Buyer has paid or become obligated to pay any fee or commission to any broker, finder, investment banker, agent or intermediary for or on account of the transactions contemplated by this Agreement for which Sellers are or will become liable.

Section 6.07.   *Financial Capability.*   Buyer has, and will have at the Closing, sufficient funds available in cash to pay the Cash Amount, the Cure Costs required to be paid by Buyer pursuant to Section 2.05, if any, and any fees and expenses incurred by or otherwise required to be paid by Buyer in connection with the transactions contemplated by this Agreement.   Upon the consummation of the transactions contemplated hereby, (a) Buyer will not be insolvent as defined in Section 101 of the Bankruptcy Code, (b) Buyer will not be left with unreasonably small capital, (c) Buyer will not have incurred debts beyond its ability to pay such debts as they mature, and (d) the capital of Buyer will not be impaired.   For the avoidance of doubt, Buyer's obligations to complete the transactions contemplated hereby are not dependent upon or conditioned on receipt of financing.

## ARTICLE 7
## ACTIONS PRIOR TO THE CLOSING DATE

Section 7.01.   *Access and Reports.*

(a)     Subject to applicable Legal Requirements, upon receipt of written request from Buyer of any such activities no less than three Business Days in advance, Sellers will afford Buyer's officers and other authorized Representatives reasonable access, during normal business hours until the Closing, to its officers, consultants and authorized Representatives (including its legal advisors and accountants), to make such investigation of the Assets and the Assumed Liabilities as it reasonably requests; *provided*, *however*, in connection with such access, Buyer's authorized Representatives will (i) abide by any safety rules, regulations and operating policies provided in writing in advance by Sellers or its Representatives and (ii) at Seller's option, be accompanied by at least one Representative of Sellers (at Sellers' sole cost and expense). All requests for information made pursuant to this Section 7.01 must be submitted in accordance with Section 13.02.   Notwithstanding anything herein to the contrary, no such investigation or examination will be permitted to the extent that it would unreasonably interfere with the conduct

38

of the business of Sellers, would require Sellers to disclose information that would cause material competitive harm to a Seller, would violate the attorney-client privilege or any other applicable privileges or immunities or involves intrusive sampling or monitoring of any environmental media.  For the avoidance of doubt, Sellers' provision of access to Buyer under this Section 7.01(a) shall not be construed to provide Buyer with the right to conduct or cause to be conducted any Phase I environmental site assessments of any of the Assets, except with respect to actual or alleged Interim Environmental Defects. In conducting such inspections, Buyer shall not conduct any intrusive sampling or testing of environmental media without Sellers' prior written consent, which consent may be withheld in Sellers' sole discretion. Buyer shall indemnify each member of the Seller Group and hold them harmless against any Liabilities, damages, penalties, costs and expenses, including reasonable attorneys' fees, that the Seller Group incurs by reason of the activities of Buyer and its Representatives in connection with the access afforded to Buyer and its Representatives pursuant to this Section 7.01(a), except to the extent resulting on the account of the bad faith, gross negligence or willful misconduct of any member of the Seller Group.

(b)    Buyer acknowledges that Confidential Information (as defined in the DIP Credit Agreement) has been, and in the future will be, provided to it in connection with this Agreement, including under Section 7.01(a), and is subject to the terms of the DIP Credit Agreement, the terms of which are incorporated herein by reference.  Buyer acknowledges and understands that this Agreement may be provided to the Consultation Parties or be publicly filed in the Bankruptcy Court and further made available by Sellers to prospective bidders and that, except as prohibited herein, such disclosure will not be deemed to violate any confidentiality obligations owing to Buyer, whether pursuant to this Agreement, the DIP Credit Agreement or otherwise.  In addition, notwithstanding anything to the contrary in this Agreement or the DIP Credit Agreement, Sellers acknowledge and understand that this Agreement or the transactions contemplated hereby may be disclosed by Buyer to the extent required by applicable Legal Requirements; *provided*, that, prior to making any such disclosure, Buyer shall have (i) provided notice to EdgeMarc of such disclosure, (ii) provided EdgeMarc with a reasonable opportunity to comment on the form of such disclosure and (iii) considered in good faith any comments made by EdgeMarc with respect to the form of such disclosure.  Sellers acknowledge that from and after the Closing, all non-public information relating to the Assets and the Assumed Liabilities will be valuable and proprietary to Buyer and its Affiliates.  Sellers agree that, from and after the Closing, no Seller will disclose to any Person any information relating to the Assets or the Assumed Liabilities, except as required by Legal Requirements or as otherwise becomes available (i) in the public domain other than through any action by any Seller in violation of its obligations under this Section 7.01(b) or (ii) from a source that is not known by Sellers to have a confidentiality obligation with respect to such information.  Sellers acknowledge and agree that the remedies at law for any breach or threatened breach of this Section 7.01(b) by any Seller are inadequate to protect Buyer and its Affiliates and that the damages resulting from any such breach are not readily susceptible to being measured in monetary terms.  Accordingly, without prejudice to any other rights or remedies otherwise available to Buyer or its Affiliates, each party acknowledges and agrees that upon any breach or threatened breach by a Seller of the terms and conditions of this Section 7.01(b), Buyer and its Affiliates, as applicable, will be entitled to seek immediate injunctive relief and an order restraining any threatened or future breach from any court of competent jurisdiction without proof of actual damages or posting of any bond in

39

connection with any such remedy. The provisions of this Section 7.01(b) will survive the Closing.

Section 7.02.   *Operations Prior to the Closing Date.*

Except (1) as expressly contemplated by this Agreement, (2) as disclosed in Disclosure Schedule 7.02, (3) with the prior written consent of Buyer (which consent will not be unreasonably withheld, conditioned or delayed) or the approval of the Bankruptcy Court, (4) as otherwise required by Legal Requirements or any Contract to which Sellers are bound, or (5) as ordered by the Bankruptcy Court or limited by restrictions or limitations under the Bankruptcy Code on Chapter 11 debtors, including (x) the exercise of its fiduciary duties to maximize the value of its estate and (y) limitations on Sellers' ability to pay amounts relating to the period prior to the Petition Date and the impact of Sellers' filing for bankruptcy with respect to any Contract to which it is a party, from the Execution Date until the Closing Date:

(a)     Sellers will use commercially reasonable efforts to (i) operate the Assets operated by Sellers in the ordinary course of business consistent with past practices, (ii) maintain books, accounts and records relating to the Assets in accordance with past custom and practice, (iii) preserve the present business operations, organization and goodwill related to the Assets and the present relationships with customers, (iv) pay or cause to be paid when due all Asset Taxes and file all Tax Returns with respect thereto, (v) pay or cause to be paid all Royalties, development and operating expenses, and other payments incurred with respect to the Properties in the same manner as a reasonably prudent operator engaged in the business of owning and operating oil and natural gas properties, (vi) maintain all Leases that are Assigned Leases and Interests in full force and effect and (vii) maintain Suspense Funds in the ordinary course of business and not exercise any rights of set off against the Suspense Funds or otherwise against the Assets.

(b)     No Seller will:

(i)     abandon or permit any material Asset to lapse (except any abandonment of Leases to the extent any such Leases terminate pursuant to their terms or as required by any Governmental Authority pursuant to applicable Legal Requirement);

(ii)     (A) enter into any Contract that would constitute a Material Contract or (B) terminate, reject, cancel, materially amend or modify, or extend any Assigned Contract that has been identified as such as of the Execution Date or Assigned Lease and Interest;

(iii)     enter into any Hydrocarbon sales, supply, exchange, processing or transportation contract with respect to the Assets, other than in the ordinary course of business consistent with past practice;

(iv)     sell, lease, encumber, transfer, assign or otherwise dispose any portion of any Assigned Leases or Interests or other material Assets, except sales of Hydrocarbons in the ordinary course of business;

(v)    commence, propose, or agree to participate in any single operation with respect to the Properties with an anticipated cost in excess of $75,000 individually or $250,000 in the aggregate (in each case, net to Sellers' interest), except for emergency operations, AFEs existing as of the date hereof and set forth on Disclosure Schedule 5.22(a) or operations required by any Governmental Authority;

(vi)    increase the compensation payable or potentially payable to any Applicable Employee other than in the ordinary course of business consistent with past practice or as required by the terms of any employee benefit plan or compensation arrangement of Sellers applicable to such Applicable Employee;

(vii)    voluntarily relinquish its position as operator with respect to any Properties operated by any such Seller; or

(viii)    agree to do anything prohibited by this Section 7.02(b).

(c)    Sellers will inform Buyer as promptly as practicable, but in no event later than two Business Days after receipt thereof, of having Knowledge of any written notice delivered to Sellers regarding (i) any default or event that, with notice or lapse of time or both, would constitute a material default by a Seller under any of the Leases that are Assigned Leases and Interests or (ii) any material condemnation, zoning or other similar proceeding affecting any Property.

Section 7.03.    *Commercially Reasonable Efforts.*    Sellers, on the one hand, and Buyer, on the other hand, will use commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other in doing, all things necessary, proper or advisable to consummate and make effective, in the most expeditious manner practicable, the transactions contemplated hereby, including using commercially reasonable efforts to accomplish the following: (i) the taking of all reasonable acts necessary to cause the conditions precedent to the other party's obligations to consummate the Closing set forth in Article 9, Article 10 and Article 11 to be satisfied, (ii) the obtaining, at the earliest practicable date, of all necessary Governmental Authorizations and the making of all necessary registrations, declarations and filings (including registrations, declarations and filings with Governmental Authorities, if any) and the taking of all reasonable steps as may be necessary to avoid any Proceeding by any Governmental Authority, and (iii) the execution or delivery of any additional instruments necessary to consummate the transactions contemplated hereby and to fully carry out the purposes of this Agreement, including the conveyance of any Assets. Additionally, with regard to each Well operated by a party other than a Seller, Buyer will, as soon as reasonably practicable after the Closing Date, deliver to the applicable operator of such Well a copy of the recorded Assignment evidencing the conveyance of Sellers' interest in such Well to Buyer, as well as any other documentation reasonably requested by such operator to evidence such conveyance.    Nothing in this Section 7.03 will require a Seller to pay any consideration to any Third Party, to initiate any Proceedings or to incur any obligation or to waive any right under this Agreement.

Section 7.04.    *Bankruptcy Court Approval.*

(a)    Sellers will take commercially reasonable efforts to obtain entry of the Sale Order by February 15, 2020.

(b)    Sellers will not seek to reject any 365 Contract without Buyer's consent.

(c)    From and after the Execution Date and prior to the Closing or the termination of this Agreement in accordance with Section 12.01, Sellers shall not take any action which is intended to (or is reasonably likely to), or fail to take any action the intent (or the reasonably likely result) of which failure to act is to, result in the delay in entry, reversal, withdrawal, voiding, modification, or staying of this Agreement.

(d)    Sellers and Buyer each acknowledge that this Agreement and the sale of the Assets and the assumption of the Assigned Contracts by Buyer and assignment of the Assets to Buyer are subject to Bankruptcy Court approval.  Buyer acknowledges that (i) to obtain such approval, Sellers must demonstrate that they have taken reasonable steps to obtain the highest and otherwise best offer possible for the Assets, and that such demonstration shall include giving notice of the transactions contemplated by this Agreement to creditors and other interested parties as ordered by the Bankruptcy Court, and, if necessary, conducting the Auction, and (ii) Buyer must provide adequate assurance of future performance as required under the Bankruptcy Code with respect to each Applicable Contract.

(e)    Buyer agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining entry of the Sale Order and a finding of adequate assurance of future performance by Buyer of the Assigned Contracts, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement and demonstrating that Buyer is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code.  In the event the entry of or the Sale Order is appealed, Sellers and Buyer will use their respective commercially reasonable efforts to defend such appeal(s).

(f)    Sellers shall, prior to filing, and as early in advance as is practicable, provide Buyer with a reasonable opportunity to review and comment on all proposed pleadings, motions, notices, statements schedules, applications, reports and other material papers to be filed by the Sellers in the Bankruptcy Court to the extent related to the consummation or approval of the transactions contemplated hereby or by the other Transaction Documents and shall include in any such filing thereof such revisions as may be reasonably requested by Buyer.  Sellers shall provide Buyer with a reasonable opportunity to review all notice and mailing lists to be used to notify known and potential creditors and parties-in-interest of the proposed Free and Clear sale of the Assets, and Sellers shall accept Buyer's reasonable comments.  Seller shall not seek to amend the Bidding Procedures Order, the Order Approving Amended Bidding procedure for Sale of Debtor's Assets [Docket No. 329] entered in the Bankruptcy Cases on July 12, 2019, or the Sale Order in a manner that would reasonably be expected to adversely impact Buyer without Buyer's prior written consent, not to be unreasonably withheld, conditioned or delayed.

Section 7.05. *Bidding Procedures*.    Buyer agrees and acknowledges that Sellers, including through their representatives, are and may continue soliciting inquiries, proposals, or offers from third parties for the Assets, in accordance with the Bidding Procedures.

ARTICLE 8
ADDITIONAL AGREEMENTS

Section 8.01.  *Taxes.*

(a)  *Transfer Taxes.*  Buyer, on the one hand, and Sellers, on the other hand, will each be responsible for 50% of the documentary, stamp, transfer (including real property transfer), motor vehicle registration, sales, use, value added, excise and other similar non-income Taxes and all filing and recording fees (and any interest, penalties and additions with respect to such Taxes and fees) arising from or relating to the consummation of the transactions contemplated by this Agreement (collectively, "**Transfer Taxes**"), regardless of the party on whom liability is imposed under the provisions of the Legal Requirements relating to such Transfer Taxes.  Sellers and Buyer will consult and cooperate on a reasonable basis in preparing and timely filing all Tax Returns with respect to any Transfer Taxes and will cooperate on a reasonable basis and otherwise take commercially reasonable efforts to obtain any available exemptions from or reductions in such Transfer Taxes.

(b)  *Asset Taxes.*

(i)  Sellers shall be allocated and bear all Asset Taxes attributable to any Tax period ending prior to the Effective Time and the portion of any Straddle Period ending at the Effective Time.  Buyer shall be allocated and bear all Asset Taxes attributable to any Tax period that begins after the Effective Time and the portion of any Straddle Period beginning immediately after the Effective Time.

(ii)  For purposes of determining the allocations in Section 8.01(b)(i), (A) Asset Taxes that are attributable to the severance or production of Hydrocarbons (other than such Asset Taxes described in clause (C), below) shall be allocated to the period in which the severance or production giving rise to such Asset Taxes occurred, (B) Asset Taxes that are based upon or related to sales or receipts or imposed on a transactional basis (other than such Asset Taxes described in clause (A) or (C)), shall be allocated to the period in which the transaction giving rise to such Asset Taxes occurred, and (C) Asset Taxes that are ad valorem, property or other Asset Taxes imposed on a periodic basis pertaining to a Straddle Period shall be allocated between the portion of such Straddle Period ending at the Effective Time and the portion of such Straddle Period beginning immediately after the Effective Time by prorating each such Asset Tax based on the number of days in the applicable Straddle Period that occur on or before the date on which the Effective Time occurs, on the one hand, and the number of days in such Straddle Period that occur after the date on which the Effective Time occurs, on the other hand.

(iii)  To the extent the actual amount of an Asset Tax or Transfer Tax is not known at the time an adjustment is to be made with respect to such Asset Tax or Transfer Tax pursuant to Section 2.1 of Appendix A or Section 3.02, as applicable, the Parties shall utilize the most recent information available in estimating the amount of such Asset Tax or Transfer Tax for purposes of such adjustment.

(c)    *Cooperation and Audits.*  Buyer and Sellers will, and will cause their respective Affiliates to, cooperate on a reasonable basis with each other regarding the filing of Tax Returns, any audit, litigation ,or other Proceeding with respect to Taxes relating to the Assets and any other Tax matters governed by this Agreement, and will make available to the other Party as reasonably requested all information, records and documents relating to Taxes governed by this Agreement until the expiration of the applicable statute of limitations or extension thereof or the conclusion of all audits, appeals, litigation or other Proceedings with respect to such Taxes.

Section 8.02.  *Assigned Contracts; Adequate Assurance and Performance.*

(a)    With respect to each Assigned Contract, Buyer will deliver within 24 hours of being declared by Sellers as the Successful Bidder information sufficient to demonstrate Buyer's adequate assurance of the future performance by Buyer of each such Assigned Contract as required under Section 365 of the Bankruptcy Code, which information Sellers will be permitted to disseminate to any Third Party to any 365 Contract.

(b)    From and after Closing, Buyer will pay, perform or satisfy the Assumed Liabilities from time to time and as such Assumed Liabilities become due and payable or are required to be performed or satisfied in accordance with their respective terms.

(c)    Without limiting the provisions of Section 8.02(a), Buyer acknowledges that, except to the extent necessary for Seller to perform its obligation under the Transition Services Agreement, Sellers have no duty to maintain any bonds, letters of credit, guarantees, cash deposits and insurance to secure performance or payment under any Assigned Contracts (collectively, the "**Seller Credit Obligations**") after the Closing, and Buyer agrees to reasonably cooperate with Sellers in Sellers' efforts to secure the release of any Seller Credit Obligations posted by Sellers set forth on Disclosure Schedule 8.03(c).  On or before the Closing, Buyer will obtain, or cause to be obtained in the name of Buyer, replacements for the Seller Credit Obligations.  If any Seller Credit Obligation remains outstanding as of the Closing Date, Buyer will indemnify each member of the Seller Group and hold them harmless against any Liabilities that the Seller Group may incur under any such Seller Credit Obligations attributable to periods from and after the Closing Date.

Section 8.03.  *Employee Matters.*

(a)    *Transferred Employees.*  Effective as of the Execution Date, EdgeMarc hereby agrees that Buyer and its Affiliates may (but shall not be required to) solicit for employment, or hire, any of the Applicable Employees on employment terms that are in Buyer's sole discretion. Such individuals who accept such offer prior to the Closing Date are hereinafter referred to as the "**Transferred Employees.**"  For the avoidance of doubt, in no event shall any of the matters contemplated by this Section 8.03(a) (including the acceptance of such offer by any Applicable Employee) be a condition to Closing.

(b)    *No Obligations.*  No provision in this Section 8.03 or otherwise in this Agreement, whether express or implied, will (i) create any third-party beneficiary or other rights in any employee or former employee of Sellers or any of their subsidiaries or Affiliates (including any beneficiary or dependent thereof), any other participant in any seller benefit plan or any other

Person; (ii) create any rights to continued employment with Sellers, Buyer or any of their respective subsidiaries or Affiliates or in any way limit the ability of Sellers, Buyer or any of their respective subsidiaries or Affiliates to terminate the employment of any individual at any time and for any reason; or (iii) constitute or be deemed to constitute an amendment to any seller benefit plan or any other employee benefit plan, program, policy, agreement or arrangement sponsored or maintained by Sellers, Buyer or any of their subsidiaries or Affiliates. For the avoidance of doubt, Buyer shall not be obligated to take any existing employment agreements or arrangements, including benefit plans or benefit arrangements, with respect to any Transferred Employee.

Section 8.04. *Post-Closing Books and Records and Personnel.*

For three (3) years after the Closing Date, (a) Buyer will not dispose of or destroy any of the Records received by Buyer as Assets and (b) Buyer will allow Sellers (including, for clarity, any trust established under a Chapter 11 plan of Sellers or any other successors of Sellers) and any of its directors, officers, employees, counsel, representatives, accountants and auditors reasonable access during normal business hours, upon reasonable advance notice, to any Records included in the Assets for purposes relating to the Bankruptcy Cases, the wind-down of the operations of Sellers or any such trusts or successors and Sellers (including any such trust or successors) and such directors, officers, employees, counsel, representatives, accountants and auditors will have the right to make copies of any such Records for such purposes. Until the liquidation and winding up of Sellers' estate, Sellers may keep a copy of the Records. In the event any Party desires to destroy any such Records prior to the time during which they must be maintained pursuant to this Section 8.04, such Party will first give 90 days' prior written notice to the other Party and such other Party will have the right at their option and expense, upon prior written notice given within such 90 day period to the Party desiring to destroy such Records or records, to take possession of the Records within 180 days after the date of such notice, or such shorter period as the liquidation and winding up of Sellers' estate will permit. Except as required by Legal Requirements or to the extent required to enforce its rights with respect to the Excluded Liabilities, from and after the Closing, each Seller will keep confidential and not use the Records and any proprietary or non-proprietary engineering, geological, geophysical and seismic data, files and records that would have been included in the Records but for the failure to obtain a material Third Party consent.

Section 8.05. *Disclaimers.*

(a) *General Disclaimer.* To the extent required by applicable Legal Requirements to be operative, the disclaimers of certain warranties contained in this Section 8.05 are "conspicuous disclaimers" for purposes of any applicable Legal Requirements.

(b) **EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES OF THE PARTIES EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY TRANSACTION DOCUMENT (AS MODIFIED BY THE SCHEDULES HERETO), (I) NO PARTY HERETO NOR ANY OTHER PERSON MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESS, STATUTORY OR IMPLIED OR OTHERWISE, WITH RESPECT TO, OR IN RELATION TO, ANY OF THE ASSETS OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, AND EACH**

45

OF THE PARTIES EXPRESSLY WAIVES AND ACKNOWLEDGES THAT NONE OF THE OTHER PARTIES MAKES ANY SUCH WARRANTY OR REPRESENTATION, AND SUCH PARTY IS NOT RELYING ON ANY SUCH WARRANTY OR REPRESENTATION BY ANY OTHER PARTY, (II) EACH PARTY EXPRESSLY DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, STATEMENT OR INFORMATION MADE OR COMMUNICATED (ORALLY, IN WRITING OR OTHERWISE) TO THE OTHER PARTIES OR ANY OF THEIR AFFILIATES, EMPLOYEES, AGENTS, CONSULTANTS OR REPRESENTATIVES (INCLUDING ANY STATEMENT, OPINION, INFORMATION, PROJECTION OR ADVICE THAT MAY HAVE BEEN PROVIDED TO BUYER BY ANY OFFICER, DIRECTOR, EMPLOYEE, AGENT, CONSULTANT, REPRESENTATIVE OR ADVISOR OF SELLERS OR ANY OF THEIR AFFILIATES) AND (III) ALL PROPERTIES INCLUDED IN THE ASSETS WILL BE CONVEYED BY SELLERS AND ACCEPTED BY BUYER PRECISELY AND ONLY AS IS, WHERE IS, AND WITH ALL DEFECTS AND FAULTS WITHOUT RECOURSE AND WITHOUT WARRANTY (INCLUDING WITHOUT ANY WARRANTY OF TITLE).

(c)    EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES OF SELLERS EXPRESSLY SET FORTH IN ARTICLE 5 OR ANY TRANSACTION DOCUMENT, BUYER ACKNOWLEDGES AND AGREES THAT SELLERS ARE CONVEYING THE ASSETS WITHOUT REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED AT COMMON LAW, BY STATUTE, OR OTHERWISE (ALL OF WHICH SELLERS HEREBY DISCLAIM), RELATING TO (I) TITLE, (II) THE MERCHANTABILITY, DESIGN, OPERATING CONDITION, OR QUALITY OF THE WELLS AND THE EQUIPMENT, (III) THE FITNESS OF THE WELLS AND THE EQUIPMENT FOR ANY PARTICULAR PURPOSE, (IV) THE ABSENCE OF PATENT, LATENT OR REDHIBITORY VICES OR DEFECTS, (V) THE ENVIRONMENTAL OR PHYSICAL CONDITION OF THE ASSETS (SURFACE AND SUBSURFACE), (VI) THE QUANTITY, RECOVERABILITY, OR VALUE OF HYDROCARBON RESERVES, (VII) COMPLIANCE WITH LEGAL REQUIREMENTS, (VIII) THE CONTENTS, CHARACTER OR NATURE OF ANY INFORMATION MEMORANDUM, OR ANY REPORT OF ANY PETROLEUM ENGINEERING CONSULTANT, OR ANY ENGINEERING, GEOLOGICAL OR SEISMIC DATA OR INTERPRETATION, RELATING TO THE ASSETS, (IX) GEOGRAPHIC, GEOLOGIC OR GEOPHYSICAL CHARACTERISTICS, OR THE EXISTENCE, QUANTITY, QUALITY OR RECOVERABILITY OF HYDROCARBONS IN OR FROM THE ASSETS, (X) ANY ESTIMATES OF THE VALUE OF THE ASSETS OR FUTURE REVENUES GENERATED BY THE ASSETS, (XI) CONTRACTUAL, ECONOMIC, FINANCIAL INFORMATION AND/OR OTHER DATA AND ANY RELATED MAPS, ESTIMATIONS OR PROJECTIONS MADE IN SALE PRESENTATIONS, MARKETING MATERIALS, (XII) CONTINUED FINANCIAL VIABILITY, INCLUDING PRESENT OR FUTURE VALUE OR ANTICIPATED INCOME OR PROFITS, (XIII) THE CONTENT, CHARACTER OR NATURE OF ANY INFORMATION MEMORANDUM, REPORTS, BROCHURES, CHARTS OR STATEMENTS PREPARED BY THIRD PARTIES, (XIV) ANY OTHER MATERIALS

**OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE OR COMMUNICATED TO BUYER OR ITS AFFILIATES, OR ITS OR THEIR EMPLOYEES, AGENTS, CONSULTANTS, REPRESENTATIVES OR ADVISORS IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY DISCUSSION OR PRESENTATION RELATING THERETO, (XV) ANY IMPLIED OR EXPRESS WARRANTY OF FREEDOM FROM PATENT OR TRADEMARK INFRINGEMENT, (XVI) THE CONTINUING EXISTENCE OR MAINTENANCE OF ANY LEASE, (XVII) ABILITY TO PRODUCE, INCLUDING PRODUCTION DECLINE RATES, (XVIII) COSTS, EXPENSES, REVENUES, RECEIPTS, PRICES, ACCOUNTS RECEIVABLE, OR ACCOUNTS PAYABLE, OR (XIX) ANY OTHER MATTER WHATSOEVER, IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES THAT BUYER WILL BE DEEMED TO BE OBTAINING THE ASSETS IN THEIR PRESENT STATUS, CONDITION AND STATE OF REPAIR, "AS IS" AND "WHERE IS" WITH ALL FAULTS AND THAT BUYER HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS AS BUYER DEEMS APPROPRIATE AND BUYER IRREVOCABLY WAIVES ANY AND ALL CLAIMS THEY MAY HAVE AGAINST SELLERS ASSOCIATED WITH SAME.**

(d)    **EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES OF SELLERS EXPRESSLY SET FORTH IN ARTICLE 5 OR ANY TRANSACTION DOCUMENT, SELLERS HAVE NOT AND WILL NOT MAKE ANY REPRESENTATION OR WARRANTY REGARDING ANY MATTER OR CIRCUMSTANCE RELATING TO ENVIRONMENTAL LAW, ASSUMED LIABILITIES RELATING TO ENVIRONMENTAL LAW, THE RELEASE OF MATERIALS INTO THE ENVIRONMENT OR THE PROTECTION OF HUMAN HEALTH, SAFETY, NATURAL RESOURCES OR THE ENVIRONMENT, OR ANY OTHER ENVIRONMENTAL CONDITION OF THE ASSETS, AND NOTHING IN THIS AGREEMENT OR OTHERWISE WILL BE CONSTRUED AS SUCH A REPRESENTATION OR WARRANTY, AND BUYER IS DEEMED TO BE TAKING THE ASSETS "AS IS" AND "WHERE IS" FOR PURPOSES OF THEIR ENVIRONMENTAL CONDITION.**

(e)    Buyer hereby acknowledges and agrees that Buyer's sole remedy with respect to any failure of Sellers to have Defensible Title to the Assets (or to deliver the Assets Free and Clear) shall be the closing condition set forth in Section 9.01 with respect to the representations and warranties made in Section 5.17, and in no event shall Seller or any of its Affiliates have any Liability to Buyer or any of its Affiliates with respect to any such failure at any time after the Closing or, following a termination of this Agreement, other than as provided in Section 12.02.

Section 8.06.   *Successor Operator.*

Sellers will use commercially reasonable efforts to support Buyer's efforts to be appointed or to have a designee appointed as the successor operator of those Properties that any Seller currently operates; *provided*, *however*, that Sellers will not be obligated to pay any consideration or grant any accommodation in connection therewith.   Notwithstanding the foregoing, Sellers make no representations or warranties to Buyer as to the transferability of operatorship of any Properties which a Seller currently operates.   Rights and obligations

47

associated with operatorship of the Properties are governed by operating agreements or similar agreements and, to the extent such agreements are Assigned Contracts, will be determined in accordance with the terms of such agreements.

Section 8.07.  *Additional Transaction Documents.*

At the Closing, the Parties shall execute a definitive transition services agreement (the "**Transition Services Agreement**"), in substantial form and substance as attached hereto as Exhibit F, pursuant to which one or more Seller shall agree to provide transition services to Buyer with respect to the Assets. In furtherance of the transactions contemplated under the Transition Services Agreement, Buyer will use commercially reasonable efforts, on behalf of its or its applicable Affiliates, to be qualified and approved as the operator of the Assets by the Department of Environmental Protection of the Commonwealth of Pennsylvania as soon as practicable after the Closing Date.

ARTICLE 9
CONDITIONS PRECEDENT TO OBLIGATIONS OF BUYER TO CLOSE

The obligation of Buyer to consummate the transactions contemplated by this Agreement is subject to the satisfaction or waiver in writing by Buyer, at or prior to the Closing, of each of the following conditions:

Section 9.01.  *Accuracy of Representations.*

The representations and warranties of Sellers contained in Section 5.01, Section 5.02 and Section 5.14 shall be true and correct in all material respects on and as of the Closing, except to the extent expressly made as of an earlier date, in which case as of such earlier date, and the other representations and warranties of Sellers contained in this Agreement (without giving effect to any qualifications or exceptions as to "materiality" or "Material Adverse Effect" set forth therein) shall be true and correct on and as of the Closing, except to the extent expressly made as of an earlier date, in which case as of such earlier date, except for such failures to be so true and correct, individually or in the aggregate, as would not have a Material Adverse Effect, and Buyer shall have received a certificate of EdgeMarc to such effect signed by a duly authorized officer thereof.

Section 9.02.  *Sellers' Performance.*  Sellers shall not have materially breached their covenants that they are required to perform pursuant to this Agreement prior to the Closing, and Buyer shall have received a certificate of each Seller to such effect signed by a duly authorized officer thereof.

Section 9.03.  *Sellers' Deliveries.*

Each of the deliveries required to be made to Buyer pursuant to Section 4.04 shall have been delivered (or Sellers shall be ready, willing and able to make such deliveries).

Section 9.04.  *Sale Order.*

The Bankruptcy Court shall have entered the Sale Order and the Sale Order shall be a Final Order.

Section 9.05.  *Assumption and Assignment of Desired 365 Contracts.*

The Bankruptcy Court shall have entered an order approving the assumption and assignment of the following Desired 365 Contracts to Buyer pursuant to section 365 of the Bankruptcy Code, (i) the Gas Processing Agreement, dated as of August 14, 2014, by and between MarkWest Liberty Bluestone, L.L.C. and EM Energy Pennsylvania, L.L.C., as amended by that certain First Amendment to Gas Processing Agreement, dated as of January 31, 2019, by and between MarkWest Liberty Bluestone, L.L.C. and EM Energy Pennsylvania, L.L.C., and as amended by the MarkWest Amendment and Release Agreement, (ii) Natural Gas Liquids Exchange and Marketing Agreement, dated as of August 14, 2014, by and between MarkWest Liberty Midstream & Resources, L.L.C. and EM Energy Pennsylvania, L.L.C., as amended by that certain First Amendment to Natural Gas Liquids Exchange and Marketing Agreement, dated as of January 31, 2019, by and between MarkWest Liberty Midstream & Resources, L.L.C. and EM Energy Pennsylvania, L.L.C., and (iii) Gas Compression Agreement, dated as of May 1, 2014, by and among EM Energy Pennsylvania, L.L.C., EdgeMarc Energy Holdings, L.L.C. and Axip Energy Services, LP, as amended by that certain Amendment to the Gas Compression Agreement, dated as of May 1, 2018, by and among Axip Energy Services, LP, EdgeMarc Energy Holdings, L.L.C., EM Energy Midstream Pennsylvania, L.L.C. and EM Energy Pennsylvania, L.L.C., and as amended by that certain Letter Agreement re Additional Pressure Reduction Request, dated as of September 14, 2018, by and among Axip Energy Services, LP, EdgeMarc Energy Holdings, L.L.C., EM Energy Midstream Pennsylvania, L.L.C. and EM Energy Pennsylvania, L.L.C. (the collectively, the "**MarkWest and Axip Agreements**"). The MarkWest and Axip Agreements may be amended by agreement of the parties and such amended MarkWest and Axip Agreements shall be deemed Desired 365 Contracts and assumed by the Seller and assigned to Buyer.

Section 9.06.  *ETP Release.*

The Bankruptcy Court shall have entered the 9019/ETP Order and the 9019/ETP Order shall be a Final Order and the effectiveness of such 9019/ETP Order shall not be stayed.

Section 9.07.  *Waiver of Cure Costs.*

The agreements concerning Cure Costs between MarkWest Liberty Midstream & Resources, L.L.C. and Buyer and between Axip Energy Services, LP and Buyer as set forth in the form of Sale Order shall have been approved.

Section 9.08.  *New ETP Agreements.*

The New ETP Agreements shall have been duly executed by Buyer and ETC Northeast Pipeline, LLC and approved as part of the ETP Order, with such modifications, if any, as may be reasonably acceptable to the Buyer.

ARTICLE 10

CONDITIONS PRECEDENT TO THE OBLIGATION OF BUYER AND SELLERS TO CLOSE

The respective obligations of Buyer and Sellers to consummate the transactions contemplated by this Agreement are subject to the satisfaction or waiver in a joint writing by Buyer and Sellers (except for the conditions precedent set forth in Section 10.02, which shall not be waivable by the Parties), at or prior to the Closing, of each of the following conditions:

Section 10.01. *No Order.*

There shall not be in effect any Order by a Governmental Authority of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby.

Section 10.02. *9019/ETP Order*

The Bankruptcy Court shall have entered the 9019/ETP Order and the 9019/ETP Order shall be a Final Order and the effectiveness of such 9019/ETP Order shall not be stayed.  For the avoidance of doubt, notwithstanding anything set forth in this Article 10 or anything else in this Agreement to the contrary, the requirement that the 9019/ETP Order be entered and be a Final Order: (i) shall be a condition precedent to the Closing and the consummation of the transactions contemplated under this Agreement; and (ii) shall not be waived or waivable by the Buyer, the Sellers, or any other Parties.  The Buyer, Sellers, and all other Parties expressly acknowledge and agree that the Committee is a third party beneficiary of and may enforce this Section 10.02.

ARTICLE 11

CONDITIONS PRECEDENT TO THE OBLIGATION OF SELLERS TO CLOSE

Sellers' obligation to consummate the transactions contemplated by this Agreement is subject to the satisfaction or waiver in writing by EdgeMarc, at or prior to the Closing, of each of the following conditions:

Section 11.01. *Accuracy of Representations.*  The representations and warranties of Buyer contained in this Agreement that are not qualified by materiality shall be true and correct in all material respects on and as of the Closing, except to the extent expressly made as of an earlier date, in which case as of such earlier date, and the representations and warranties of Buyer contained in this Agreement that are qualified by materiality shall be true and correct in all respects on and as of the Closing, except to the extent expressly made as of an earlier date, in which case as of such earlier date, and Sellers shall have received a certificate of Buyer to such effect signed by a duly authorized officer thereof.

Section 11.02. *Buyer's Performance.*  Buyer shall not have materially breached its covenants that it is required to perform pursuant to this Agreement prior to the Closing, and Sellers shall have received a certificate of Buyer to such effect signed by a duly authorized officer thereof.

Section 11.03. *Buyer's Deliveries.*

50

Each of the deliveries required to be made to Sellers pursuant to Section 4.03 shall have been delivered (or Buyer shall be ready, willing and able to make such deliveries).

Section 11.04. *Sale Order.*

The Bankruptcy Court shall have entered the Sale Order and the effectiveness of such Sale Order shall not be stayed.

<div align="center">

ARTICLE 12

TERMINATION

</div>

Section 12.01. *Termination Events.*

Notwithstanding anything herein to the contrary, this Agreement may be terminated at any time prior to the Closing:

(a)     by mutual written agreement of EdgeMarc and Buyer;

(b)     by written notice of either EdgeMarc or Buyer to such other Party if:

(i)     the Closing has not occurred by the close of business on March 2, 2020 (the "**Outside Date**"); *provided*, *however*; that a Party may not terminate this Agreement pursuant to this Section 12.01(b)(i) if such Party is in material breach of any of its representations, warranties, covenants or agreements contained herein;

(ii)     there is in effect a final and non-appealable Order by a Governmental Authority of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement (an "**Adverse Determination**"); or

(iii)     the Bankruptcy Court shall have entered an Order approving or authorizing any Alternative Transaction or Sellers shall have entered into any definitive agreement with respect to an Alternative Transaction; *provided*, *however*, that EdgeMarc shall not be permitted to terminate this Agreement pursuant to this Section 12.01(b)(iii) if Buyer is the Successful Bidder;

(c)     so long as Buyer is not in material breach under this Agreement, by Buyer by written notice to EdgeMarc if:

(i)     (A) Sellers breach any representation or warranty or any covenant or agreement contained in this Agreement, (B) such breach would result in a failure of a condition set forth in Article 9 or Article 10 and (C) such breach has not been cured by the earlier of (1) 20 Business Days after the giving of written notice by Buyer to Sellers of such breach and (2) the Outside Date;

(ii)     Sellers file a motion to have the Bankruptcy Court enter an Order dismissing, or converting the Bankruptcy Cases into cases under chapter 7 of the Bankruptcy Code or appointing a trustee in the Bankruptcy Cases or appointing an

<div align="center">51</div>

examiner with enlarged power related to the operation of the Assets (beyond those set forth in Section 1106(a)(3) or (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code; or

(iii)    Sellers (x) withdraw or seek authority to withdraw the Bidding Procedures, or the Sale Motion at any time after the filing thereof without Buyer's written consent or (y) announce any stand-alone plan of reorganization or liquidation with respect to the Assets, a support agreement in respect of any such plan of reorganization or liquidation, or support any such plan filed by another party;

(d)    so long as Sellers are not in breach of their obligations under this Agreement, by EdgeMarc by written notice to Buyer if (i) Buyer breaches any representation or warranty or any covenant or agreement contained in this Agreement, (ii) such breach would result in a failure of a condition set forth in Article 10 or Article 11 and (iii) such breach has not been cured by the earlier of (1) 20 Business Days after the giving of written notice by EdgeMarc to Buyer of such breach and (2) the Outside Date;

(e)    by EdgeMarc, if (i) Buyer fails to consummate the transactions contemplated hereby, including payment of the Purchase Price, as and when required by Article 4 hereof, or (ii) the board of managers of EdgeMarc determines, in good faith based on the advice of outside legal counsel, that proceeding with the transactions contemplated hereby or failing to terminate this Agreement would be inconsistent with the board's fiduciary obligations under applicable Legal Requirements.

Section 12.02. *Effect of Termination*.    In the event of a valid termination of this Agreement by Buyer or Sellers pursuant to this Article 12, all rights and obligations under this Agreement will terminate without any Liability of any Party or Person to any other Party or Person; *provided*, *however*, that nothing herein will relieve any Party from Liability for any intentional and knowing breach of this Agreement prior to such termination.  The provisions of this Section 12.02, Section 7.01(b), Section 12.03 and Section 13.07 (and, to the extent applicable to the interpretation or enforcement of such provisions, Article 1 and Article 13) will expressly survive the termination of this Agreement.

Section 12.03. *Procedures Upon Termination*.    In the event of termination pursuant to Section 12.01, the terminating Party will give written notice thereof to the other Party or Parties, and this Agreement will terminate (subject to Section 12.02) and the purchase of the Assets hereunder will be abandoned without further action by Buyer or Sellers.  If this Agreement is terminated as provided herein, each Party will redeliver all documents, work papers and other materials of any other Party relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof, to the Party furnishing the same.

## ARTICLE 13
## GENERAL PROVISIONS

Section 13.01. *No Survival of Representations and Warranties.*

The representations and warranties contained herein and in any certificate or other Transaction Document delivered by any Party pursuant to this Agreement will terminate upon and not survive the Closing and there will be no Liability thereafter in respect thereof. Each Party's covenants and other agreements contained in this Agreement will terminate upon the Closing, except the Post-Closing Covenants applicable to such Party, which will survive the Closing until the earlier of (a) performance of such Post-Closing Covenant in accordance with this Agreement or, (b) (i) if time for performance of such Post-Closing Covenant is specified in this Agreement, thirty (30) days following the expiration of the time period for such performance, or (ii) if time for performance of such Post-Closing Covenant is not specified in this Agreement, the expiration of the applicable statute of limitations with respect to any claim for any failure to perform such Post-Closing Covenant; *provided* that if a written notice of any claim with respect to any Post-Closing Covenant is given prior to the expiration thereof then such Post-Closing Covenant will survive until, but only for purposes of, the resolution of such claim by final, non-appealable judgment or settlement.

Section 13.02. *Notices.*

All notices, consents, waivers and other communications under this Agreement must be in writing and will be deemed to have been duly given (a) when delivered by hand (with written confirmation of receipt), (b) when sent by email (with read receipt received), (c) one Business Day following the day sent by overnight courier (with written confirmation of receipt), or (d) when received by the addressee, if sent by registered or certified mail (postage prepaid, return receipt requested), in each case to the appropriate addresses and representatives (if applicable) set forth below (or to such other addresses and representatives as a Party may designate by notice to the other Parties):

(i)    If to any Seller, then to:

EdgeMarc Energy Holdings, LLC.
Attn: Callum Streeter
1800 Main Street, Suite 220
Canonsburg, PA 15317
Phone: 412-564-1290
E-mail: CStreeter@edgemarcenergy.com

with a copy (which will not constitute notice) to:

Davis Polk & Wardwell LLP
Attn: Darren S. Klein
        Brian Wolfe
450 Lexington Avenue
New York, New York 10017
Phone: (212) 450-4725
        (212) 450-4140
E-mail: darren.klein@davispolk.com
        brian.wolfe@davispolk.com

(ii)     If to Buyer:

> KB OREO, LLC
> Attn: Dale Conder
> 702 West Idaho Street, 5th Floor
> Boise, Idaho 83702
> Phone: (208) 364-8755
> E-mail: dale_conder@keybank.com
>
> with a copy (which will not constitute notice) to:
>
> Hunton Andrews Kurth, LLC
> Attn: Timothy A ("Tad") Davidson II
> 600 Travis, Suite 4200
> Houston, TX 77002
> Phone: (713) 220-3810
> E-mail: taddavidson@huntonak.com

Section 13.03. *Waiver; Waiver of Damages.*

(a)     Neither the failure nor any delay by any Party in exercising any right, power or privilege under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege.  To the maximum extent permitted by applicable Legal Requirements, (i) no waiver that may be given by a Party will be applicable except in the specific instance for which it is given, and (ii) no notice to or demand on one Party will be deemed to be a waiver of any right of the party hereto that gives such notice or demand to take further action without notice or demand.

(b)     NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, NO PARTY WILL BE LIABLE TO ANY OTHER PARTY HERETO FOR SPECIAL, INDIRECT, EXEMPLARY, CONSEQUENTIAL (INCLUDING LOST PROFITS) OR PUNITIVE DAMAGES ARISING OUT OF, ASSOCIATED WITH, OR RELATING TO THIS AGREEMENT AND THE PARTIES HEREBY WAIVE ALL CLAIMS FOR ANY SUCH DAMAGES.

Section 13.04. *Entire Agreement; Amendment.*

This Agreement (including the Schedules, Disclosure Schedules and the Exhibits) and the other Transaction Documents supersede all prior agreements between Buyer and Sellers with respect to its subject matter and constitute a complete and exclusive statement of the terms of the agreements between Buyer and Sellers with respect to the subject matter hereof and thereof. This Agreement, including all exhibits hereto, may not be amended, modified or supplemented, or the terms hereof waived, except by a written agreement executed by all of the Parties.

Section 13.05. *Assignment.*

This Agreement, and the rights, interests and obligations hereunder, may not be assigned by any Party (by operation of law or otherwise) without the express written consent of the other Parties; *provided*, however, that, upon prior written notice to Buyer, Sellers may assign some or all of their rights or delegate some or all of their obligations hereunder to successor entities pursuant to a plan of reorganization confirmed by the Bankruptcy Court; *provided*, *further*, that, Buyer may assign some or all of its rights or delegate some or all of its obligations hereunder to (i) Key EM Energy, LLC (so long as such Person remains an Affiliate of Buyer) or (ii) upon prior written notice to EdgeMarc, one or more other Affiliates of Buyer so long as, in each case, Buyer remains fully responsible for the performance of the delegated obligations. Any assignment in violation of this Section 13.05 will be deemed void *ab initio*. This Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

Section 13.06. *Severability.*

The provisions of this Agreement will be deemed severable, and the invalidity or unenforceability of any provision will not affect the validity or enforceability of the other provisions hereof. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) the Parties will negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances will not be affected by such invalidity or unenforceability.

Section 13.07. *Expenses.*

Each of Sellers, on the one hand, and Buyer, on the other hand, will bear its own respective expenses incurred in connection with the negotiation and execution of this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby. Notwithstanding anything to the contrary in this Agreement, KeyBank's professionals' fees shall be paid directly by KeyBank and shall not be included in or otherwise reduce the Cash Amount.

Section 13.08. *Specific Performance.*

The Parties agree that irreparable damage would occur if any provision of this Agreement is not performed in accordance with the terms hereof, including if any of the Parties fails to take any action required of it hereunder to consummate the transactions contemplated by this Agreement, and, accordingly, (a) prior to the Closing, each Party will be entitled to an injunction or injunctions without proof of damages or posting a bond or other security to prevent breaches of this Agreement or to enforce specifically the performance of the terms and provisions hereof, including specific performance of such covenants, promises or agreements or an order enjoining such party hereto from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in this Agreement, and (b) from and after the Closing, any Party will be entitled to an injunction or injunctions without proof of damages or posting a bond or other security to prevent breaches of this Agreement or to enforce specifically the performance of the terms and provisions hereof, in addition to any other remedy to which

they are entitled at law or in equity. Unless otherwise expressly stated in this Agreement, no right or remedy described or provided in this Agreement is intended to be exclusive or to preclude a Party from pursuing other rights and remedies to the extent available under this Agreement, at law or in equity. The right of specific performance and other equitable relief is an integral part of the transactions contemplated by this Agreement and without that right, neither Sellers nor Buyer would have entered into this Agreement.

Section 13.09. *Governing Law; Consent to Jurisdiction and Venue; Jury Trial Waiver.*

(a)    **Except (i) to the extent the mandatory provisions of the Bankruptcy Code apply and (ii) except for any real or immovable property issues, which will be governed by and construed and enforced in accordance with the internal laws of the State in which such real or immovable property is located (without reference to the choice of law rules of such State), this Agreement will be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of Delaware applicable hereto.**

(b)    Without limitation of any Party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing will be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Proceeding; *provided*, however, that, if the Bankruptcy Cases are closed pursuant to Section 350 of the Bankruptcy Code, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the state courts of Pennsylvania and any state appellate court within the Commonwealth of Pennsylvania (or, in the event (but only in the event) that such court does not have subject matter jurisdiction over such Proceeding, in the United States District Court for the Western District of Pennsylvania) and any appellate court from any thereof for the resolution of any such claim or dispute. The Parties each hereby irrevocably waive, to the fullest extent permitted by applicable Legal Requirements, the defense of an inconvenient forum to the maintenance of any such Proceeding. The Parties each consent to service of process by mail (in accordance with Section 13.02) or any other manner permitted by law.

(c)    THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF ANY PARTY OR SUCH PARTY'S REPRESENTATIVES IN THE NEGOTIATION OR PERFORMANCE HEREOF.

Section 13.10. *Counterparts.*

This Agreement and any amendment hereto may be executed in one (1) or more counterparts, each of which will be deemed to be an original of this Agreement or such

amendment and all of which, when taken together, will constitute one and the same instrument. Notwithstanding anything to the contrary in Section 13.02, delivery of an executed counterpart of a signature page to this Agreement or any amendment hereto by facsimile or email attachment will be effective as delivery of a manually executed counterpart of this Agreement or such amendment, as applicable.

Section 13.11. *Parties in Interest; No Third Party Beneficiaries.*

This Agreement will inure to the benefit of and be binding upon Buyer, Sellers and their respective successors and permitted assigns. This Agreement is for the sole benefit of the Parties and their permitted assigns, and nothing herein, express or implied, is intended to or will confer upon any other Person any legal or equitable benefit, claim, cause of action, remedy or right of any kind, except that (i) Section 13.02 is intended for the benefit of and is enforceable by any former, current or future Affiliate, incorporator, controlling Person, fiduciary, Representative, co-owner or equity holder of any Party (or any of their successors or permitted assignees) (the "**Party Affiliates**"), *provided* that in each case such party will be subject to all the limitations and procedures of this Agreement as if it were a Party hereunder, and (ii) Section 10.02 is intended for the benefit of and is enforceable by the Committee.

Section 13.12. *No Recourse.*

(a)     Any claim or cause of action based upon, arising out of, or related to this Agreement or any agreement, document or instrument contemplated hereby may only be brought against the Parties hereto, and then only with respect to the specific obligations set forth herein or therein. Other than the Parties hereto, no other Person (including any Party Affiliate) shall have any liability or obligation for any of the representations, warranties, covenants, agreements, obligations or Liabilities of any Party under this Agreement, the other Transaction Documents, or any other agreement contemplated hereto and thereto or of or for any Proceeding based on, in respect of, or by reason of, the transactions contemplated hereby or thereby (including the breach, termination or failure to consummate such transactions), in each case whether based on contract, tort, fraud, strict liability, other Legal Requirements or otherwise and whether by piercing the corporate veil, by a claim by or on behalf of a Party hereto or another Person or otherwise.

(b)     Effective at and after the Closing, Buyer hereby waives and releases on behalf of itself and each of its Party Affiliates (the "**Buyer Releasors**"), to the fullest extent permitted by applicable Legal Requirements, any and all rights and claims (whether absolute or contingent, liquidated or unliquidated, known or unknown, determined, determinable or otherwise) that any of the Buyer Releasors may now or hereafter have against any of the Sellers or their respective Party Affiliates, whether in law or in equity, to the extent relating to the Assets or the management or operation thereof (other than any relationships wholly unrelated to the transactions contemplated hereby entered into after the Closing), or the Assumed Liabilities, except that Buyer Releasors expressly retain all rights and claims arising under this Agreement or any other Transaction Document. The rights and claims waived and released by the Buyer Releasors hereunder include claims for damages, indemnification, contribution and other rights of recovery arising out of or relating to any breach of contract, misrepresentation or breach of warranty, negligent misrepresentation and all other claims for breach of duty. From and after the

Closing, the Buyer shall not, and shall cause each of the other Buyer Releasors not to, bring any action, suit or proceeding against any of the Seller Indemnified Persons, whether at law or in equity, with respect to any of the rights or claims waived and released by the Buyer Releasors hereunder.

Section 13.13. *Disclosure Schedules; Materiality.*

The inclusion of any matter in any Disclosure Schedule will be deemed to be a disclosure in all other Disclosure Schedules, without the need for repetition or cross reference, to the extent that the relevance of such disclosure to the other Disclosure Schedules is reasonably apparent. The inclusion of any matter in any Disclosure Schedule will not be deemed to constitute an admission, or otherwise imply, that any such matter is material or creates a measure for materiality for purposes of this Agreement. The disclosure of any particular fact or item in any Disclosure Schedule will not be deemed an admission as to whether the fact or item is "material" or would constitute a "Material Adverse Effect." From time to time prior to the Closing, Sellers will have the right to supplement or amend the Disclosure Schedules with respect to any matter hereafter arising or discovered after the delivery of the Disclosure Schedules pursuant to this Agreement; *provided* that no such supplement or amendment after the execution of this Agreement will have any effect on the satisfaction of the condition to Closing set forth in Section 9.01.

Section 13.14. *Liquidating Trustee.*

If at any time any Seller liquidates, its estate is converted to Chapter 7, or otherwise has a trustee or other representative appointed by the Bankruptcy Court (as applicable, a "**Trustee**"), then (a) such Trustee will be bound to perform the obligations of Sellers and will be entitled to exercise the rights of Sellers under this Agreement, and (b) with respect to all of Sellers' assets that are abandoned (if any) following the Execution Date, Sellers grant to such Trustee a power of attorney for purposes performing Sellers' obligations under Section 2.06 with respect to such abandoned assets. Sellers acknowledge and agree that the power of attorney granted to such Trustee (if any) pursuant to the foregoing clause (b) is coupled with an interest and will be irrevocable. Further, such power of attorney will also be granted to Buyer for purposes of performing Sellers' obligations under Section 2.06 with respect to such abandoned assets, as determined by Buyer, and in the event Buyer exercises such power of attorney, the Trustee will not commit any act or take any action that is inconsistent with such exercise by Buyer, except as requested in writing by Buyer.

Section 13.15. *Seller Representative.*

(a)    Each EM Subsidiary, by executing this Agreement, irrevocably constitutes and appoints EdgeMarc and its successors, acting as hereinafter provided, as such appointing Person's attorney-in- fact to act on behalf of such Person in connection with the authority granted to EdgeMarc pursuant to this Section 13.15, and acknowledges that such appointment is coupled with an interest.

(b)    Each EM Subsidiary, by the appointment described in Section 13.15(a), (i) authorizes EdgeMarc subsequent to the Execution Date (A) to give and receive written

consents, reports, notices and communications to or from Buyer relating to this Agreement, the transactions contemplated by this Agreement and the other Transaction Documents, (B) to act on such appointing Person's behalf with respect to any and all matters affecting such appointing Person in this Agreement, including giving and receiving all notices and communications to be given or received with respect to any such matters, and (C) to negotiate, compromise and resolve any dispute that may arise under this Agreement; *provided*, however, that in each of clauses (A) through (C) preceding, EdgeMarc will not have the authority to execute any agreements or documents (other than consents, reports, notices and communications) on behalf of each EM Subsidiary, and (ii) agrees to be bound by all agreements and determinations made by and documents executed and delivered by EdgeMarc pursuant to the authority granted to EdgeMarc hereunder.

(c)    Each EM Subsidiary, by the execution of this Agreement, expressly acknowledges and agrees that (i) EdgeMarc is authorized to act on its behalf with respect to this Agreement, notwithstanding any dispute or disagreement between such appointing Person and EdgeMarc, and (ii) Buyer will be entitled to solely interact with, and rely on any and all actions taken by, EdgeMarc under this Agreement without any liability to, or obligation to inquire of, such appointing Person. Any notice or communication given or received by, and any decision, action, failure to act within a designated period of time, agreement, consent, settlement, resolution or instruction of, EdgeMarc that is within the scope of EdgeMarc's authority under this Section 13.15 will constitute a notice or communication to or by, or a decision, action, failure to act within a designated period of time, agreement, consent, settlement, resolution or instruction of Sellers and will be final, binding and conclusive upon such appointing Person. Buyer will be entitled to rely upon any such notice, communication, decision, action, failure to act within a designated period of time, agreement, consent, settlement, resolution or instruction as being a notice or communication to or by, or a decision, action, failure to act within a designated period of time, agreement, consent, settlement, resolution or interaction of, such appointing Person and Sellers.

Section 13.16. *Frustration of Closing Conditions*.  No Party may rely on the failure of any condition set forth in Articles 9, 10 or 11, as the case may be, if such failure was caused by such Party's failure to comply with any provision of this Agreement.

[Signature pages follow.]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their duly authorized representatives, all as of the day and year first above written.

**EdgeMarc Energy Holdings, LLC**

By: _____
Name: _ALAN SHEPARD_
Title: _CFO_

**EM Subsidiaries:**

**EM Energy Manager, LLC**

By: _____
Name: _ALAN SHEPARD_
Title: _CFO_

**EM Energy Employer, LLC**

By: _____
Name: _ALAN SHEPARD_
Title: _CFO_

**EM Energy Ohio, LLC**

By: _____
Name: _ALAN SHEPARD_
Title: _CFO_

**EM Energy Pennsylvania, LLC**

By: _____
Name: _ALAN SHEPARD_
Title: _CFO_

Signature Page
Asset Purchase Agreement

**EM Energy West Virginia, LLC**

By: _____

Name: _____ALAN SHEPARD_____

Title: _____CFO_____


**EM Energy Midstream Ohio, LLC**

By: _____

Name: _____ALAN SHEPARD_____

Title: _____CFO_____


**EM Energy Midstream Pennsylvania, LLC**

By: _____

Name: _____ALAN SHEPARD_____

Title: _____CFO_____


**EM Energy Keystone, LLC**

By: _____

Name: _____ALAN SHEPARD_____

Title: _____CFO_____


Signature Page
Asset Purchase Agreement

**KB OREO, LLC**

By: _____

Name: Dale Conder

Title:  Designated Signer


**KeyBank National Association,**
for the purposes set forth herein

By: _____

Name:  Dale Conder

Title:  Senior Vice President

Signature Page
Asset Purchase Agreement

**Appendix A**
**Oil and Gas Provisions**

## ARTICLE 1

## DEFINITIONS

Section 1.1    **Certain Definitions**. As used herein, capitalized terms either have the meanings set forth (a) below or (b) in that certain Asset Purchase Agreement, dated January 24, 2020 (the "**Agreement**"), among EdgeMarc Energy Holdings, LLC, KB OREO, LLC, and the other parties thereto, to which this Appendix A forms a part.

## ARTICLE 2

## PURCHASE AND SALE

Section 2.1    **Adjustments to Purchase Price**. The Credit Bid component of the Purchase Price shall be adjusted, without duplication, as follows:

(a)    decreased in accordance with (i) Section 3.2 of this Appendix A with respect to Casualty Losses, and (ii) Section 3.3 of this Appendix A with respect to Interim Environmental Defects;

(b)    increased by the amount of all Asset Taxes that are allocated to Buyer in accordance with Section 8.01(b)(i) of the Agreement but that have been paid by Sellers on or before the Closing Date (which increase, for the avoidance of doubt, shall satisfy Buyer's obligations for such Asset Taxes under Section 8.01(b)(i));

(c)    decreased by the amount of all Asset Taxes that are allocated to any Seller in accordance with Section 8.01(b)(i) of the Agreement but that have not been paid by Sellers on or before the Closing Date (which reduction, for the avoidance of doubt, shall satisfy Sellers' obligations for such Asset Taxes under Section 8.01(b)(i));

(d)    decreased by the difference between the aggregate amount of the Suspense Funds and the amount of cash transferred to Buyer in respect of Suspense Funds pursuant to this Agreement; and

(e)    decreased by the amount of 50% of Transfer Taxes (which reduction, for the avoidance of doubt, shall satisfy Sellers' obligation for Transfer Taxes pursuant to Section 8.01(a)).

Section 2.2    **Allocation of Purchase Price**. EdgeMarc and Buyer shall use commercially reasonable efforts to agree within 30 days after the Closing Date to an allocation of the Purchase Price, the Assumed Liabilities and any other items properly treated as consideration for U.S. federal income tax purposes among the Assets in accordance with Section 1060 of the Code and the Treasury Regulations promulgated thereunder and, to the extent

allowed by any Legal Requirement, in a manner consistent with the Allocated Values (the "**Allocation**"). If EdgeMarc and Buyer reach an agreement with respect to the Allocation, (i) Buyer and EdgeMarc shall use commercially reasonable efforts to update the Allocation in accordance with Section 1060 of the Code following any adjustment to the Purchase Price pursuant to the Agreement (including this Appendix A), and (ii) Buyer and Seller shall, and shall cause their Affiliates to, report consistently with the Allocation, as adjusted, on all Tax Returns, including IRS Form 8594 (Asset Acquisition Statement under Section 1060), which Buyer and Seller shall timely file with the IRS, and neither Seller nor Buyer shall take any position for Tax purposes that is inconsistent with the Allocation, as adjusted, unless otherwise required by any Legal Requirement or with the consent of the other Party; *provided, however*, that neither Party shall be unreasonably impeded in its ability and discretion to negotiate, compromise and/or settle any Tax audit, claim or similar Proceeding in connection with such Allocation. In the event that EdgeMarc and Buyer are unable to agree to the Allocation within 30 days after the Closing Date, then each Party shall be entitled to adopt its own position regarding the Allocation; *provided,* that such position shall, to the extent allowed under applicable federal income Tax Legal Requirements, be consistent with the Allocated Values.

## ARTICLE 3

## COVENANTS OF THE PARTIES

Section 3.1    **Notice to Holders of Consent and Preferential Purchase Rights**. Promptly after the execution of the Agreement by all Parties, EdgeMarc shall use commercially reasonable efforts to prepare and send, or cause to be prepared and sent, (a) notices to the holders of any Necessary Consents, approvals and authorizations that are set forth on Disclosure Schedule 5.03, requesting consents to the transactions contemplated by the Agreement, and (b) notices to the holders of any applicable Preferential Purchase Rights in compliance with the terms of such rights and requesting waivers of such rights. Sellers and Buyer shall cooperate and use commercially reasonable efforts to cause such consents, approvals and authorizations required to be obtained and delivered prior to Closing and all such Preferential Purchase Rights to be waived; *provided*, that Seller shall not be required to make payments or undertake obligations or grant any accommodation therefor to obtain the Necessary Consents, approvals or authorizations (but any such payments actually made shall be the sole expense of Sellers); *provided*, *further*, that in no event will there be any adjustment to the Purchase Price in respect of the failure to obtain any Necessary Consent or in connection with the exercise of Preferential Purchase Rights. If prior to Closing, Buyer discovers any Necessary Consents or Preferential Purchase Rights that are not set forth on the applicable Disclosure Schedules and that are applicable to the Assets, Buyer shall promptly (but in any event within three Business Days) after discovery provide written notice to EdgeMarc of such Necessary Consents or Preferential Purchase Rights, whereupon Sellers shall promptly thereafter address such Necessary Consents and Preferential Purchase Rights in accordance with this Article 3 and Section 2.06 of the Agreement, as applicable.

Section 3.2    **Casualty and Condemnation**. If, after the Execution Date but prior to or on the Closing Date, any portion of the Assets is subject to a Casualty Loss, Buyer and Sellers shall, subject to the satisfaction (or waiver) of the conditions to Closing set forth in Articles 9, 10

and 11 of the Agreement, nevertheless be required to proceed with Closing and, unless Sellers have caused the portion of the Assets affected by such Casualty Loss to be completely repaired, remediated, replaced or restored prior to Closing, the Purchase Price shall be reduced by (i) the aggregate cost to completely remediate, repair, restore or replace such Assets affected by such Casualty Loss (A) to the extent (x) with respect to any individual Casualty Loss, the cost to completely remediate, repair, restore or replace such Assets affected is greater than $25,000 and (y) the aggregate costs to completely remediate, repair, restore or replace such Assets affected by all such Casualty Losses exceeds $100,000 and (B) up to a maximum of the amount of the Allocated Value of such Assets (in all cases, less any reasonable and documented amounts applied by any Seller prior to Closing to remediate, repair, restore or replace such Assets affected by such Casualty Loss), *minus* (ii) any insurance proceeds actually received by Sellers prior to Closing under third-party, non-captive insurance policies in connection with such Casualty Loss attributable to periods after the Execution Date.

Section 3.3    **Interim Environmental Defects**.

(a)    If, after the Execution Date but prior to the Interim Environmental Defect Claim Date, a condition first arises with respect to or related to any Asset that causes (i) such Asset to fail to be in compliance with any Environmental Law or (ii) any environmental pollution, contamination or degradation requiring remedial or corrective action by Sellers under Environmental Laws (either or both of clauses (i) and (ii), an "**Interim Environmental Defect**"), Buyer may deliver to Sellers a notice specifying in reasonable detail a description of such Interim Environmental Defect and the anticipated Remediation Cost associated therewith (the "**Interim Environmental Defect Notice**"). Buyer shall deliver any such Interim Environmental Defect Notice as soon as reasonably practical after the discovery of such condition but in no event after three calendar days prior to the Closing Date (the "**Interim Environmental Defect Claim Date**"). Sellers shall notify Buyer of any conditions of which they have Knowledge that arise after the date hereof and before the Interim Environmental Defect Claim Date that may constitute an Interim Environmental Defect. To be effective, each Interim Environmental Defect Notice shall be in writing, and shall include (i) a description of the alleged Interim Environmental Defect(s) (including the applicable Environmental Law violated or implicated thereby), (ii) a description of the Assets that are affected by the alleged Interim Environmental Defect (each, an "**Interim Environmental Defect Property**"), (iii) supporting documents reasonably sufficient for Sellers to verify the existence of the alleged Interim Environmental Defect, and (iv) a calculation of the cost to implement and complete, including any post-completion maintenance and monitoring, any remedial, removal, response, construction, closure, disposal or other corrective actions, including any monitoring required under Environmental Laws to correct or remove such Interim Environmental Defect for which Buyer would be liable after Closing, in each case, by employing the Lowest Cost Response (the "**Remediation Cost**") (itemized in reasonable detail) that Buyer asserts is attributable to such alleged Interim Environmental Defect. For the purposes of this Agreement and notwithstanding anything herein to the contrary, Buyer shall be deemed to have waived, and Sellers shall have no liability for, any Interim Environmental Defect that Buyer fails to assert by an Interim Environmental Defect Notice received by Sellers on or before the Interim Environmental Defect Claim Date. For the avoidance of doubt, none of the matters disclosed on Disclosure Schedule 5.16 shall constitute an Interim Environmental Defect.

Appendix A
Asset Purchase Agreement

(b)     Upon delivery of an Interim Environmental Defect Notice, Sellers and Buyer will in good faith negotiate the validity of Interim Environmental Defect and the amount of the Remediation Cost. If the Parties are unable to agree on the existence, cure, remediation, or Remediation Cost of any Interim Environmental Defect within three calendar days prior to the Closing (the "**Interim Environmental Dispute**"), the Parties shall submit such Interim Environmental Dispute to an environmental expert with at least 10 years' experience in environmental matters involving properties in Pennsylvania (the "**Environmental Consultant**"), as selected by Buyer and EdgeMarc. If Buyer and EdgeMarc are unable to agree on any Environmental Consultant, then EdgeMarc, on the one hand, and Buyer, on the other hand, will each appoint one Environmental Consultant and the two Environmental Consultants will appoint a third Environmental Consultant, and the three Environmental Consultants collectively will resolve such matter. The cost of each Environmental Consultant shall be paid 50% by EdgeMarc and 50% by Buyer. Buyer and EdgeMarc shall each present to the Environmental Consultant(s), with a simultaneous copy to the other applicable Party, a single written statement of its position on the Interim Environmental Dispute, together with a copy of this Agreement and any supporting material that such Party desires to furnish, not later than three Business Days after the appointment of the final Environmental Consultant. In making their determination, the Environmental Consultant(s) shall be bound by the terms of this Agreement and, without any additional or supplemental submissions by either Party, may consider available legal and industry matters as in their opinion are necessary or appropriate to make a property determination. By the 10th day following the submission of the matter to the Environmental Consultant(s), applying the principles set forth in this Section 3.3 of this Appendix A, the Environmental Consultant(s) shall make a determination of the matter submitted. The decision of the Environmental Consultant(s) shall be in writing and conclusive and binding on the Sellers and Buyer and shall be enforceable against the Parties in any court of competent jurisdiction.

(c)     With respect to any Interim Environmental Defect that is the subject of mutual agreement of the Parties or the determination of the Environmental Consultant in accordance with this Section 3.3, Sellers shall at their sole option, elect to:

(i)     reduce the Purchase Price by the Remediation Cost subject to the financial limitations set forth in Section 3.3(e) of this Appendix A;

(ii)     retain the entirety of the Interim Environmental Defect Property that is subject to such Interim Environmental Defect, in which event the Purchase Price shall be reduced by an amount equal to the Allocated Value of such Interim Environmental Defect Property (or, solely with respect to any Interim Environmental Defect Property that does not have an Allocated Value, by an amount equal to the Allocated Value of related or associated Assets to the extent applicable or relating to, used in connection with, servicing or burdening the subject Interim Environmental Defect Property); or

(iii)     take such actions to cure such Interim Environmental Defect by the Closing; provided further, that if Buyer disputes whether any such Interim Environmental Defect has been cured, such dispute shall be determined pursuant to Section 3.3(b) of this Appendix A, except that (1) Sellers shall pay 100% of the costs of the Environmental Consultant if it is determined that such Interim Environmental Defect has not been cured, abated or otherwise

mitigated and (2) Buyer shall pay 100% of the costs of the Environmental Consultant if it is determined that such Interim Environmental Defect has been cured, abated or otherwise mitigated.

(d)    Notwithstanding any other provision of this Agreement, Section 3.3 of this Appendix A shall be the exclusive right and remedy of Buyer with respect to any Interim Environmental Defect.

(e)    Notwithstanding anything to the contrary, Buyer shall not be entitled to any of the remedies in this Section 3.3 (i) with respect to any individual Interim Environmental Defect if the associated Remediation Cost does not exceed $50,000, or (ii) unless the aggregate Remediation Costs with respect to all Interim Environmental Defects exceed $250,000, after which point Buyer shall be entitled to remedies for such Interim Environmental Defects only to the extent of the excess of such amounts.

## Introduction

This Seller Disclosure Schedule (the "**Disclosure Schedule**") has been prepared and delivered in accordance with, and is incorporated into as part of, the Asset Purchase Agreement (the "**Agreement**"), dated as of January 24, 2020, by and among EdgeMarc Energy Holdings, LLC, a Delaware limited liability company ("**EdgeMarc**"), the EM Subsidiaries (as defined therein) (together with EdgeMarc, the "**Sellers**", and, each individually, a "**Seller**") and KB OREO, LLC, an Ohio limited liability company("**Buyer**"). Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Agreement.

This Disclosure Schedule is qualified in its entirety by reference to the Agreement (including Section 13.13 thereof) and does not constitute, and shall not be construed as constituting, representations, warranties or covenants of the Sellers, except as, and only to the extent, provided in the Agreement. This Disclosure Schedule may include certain items and information solely for informational purposes. The mere inclusion of an item in this Disclosure Schedule shall not be deemed an admission that such item is required to be disclosed by the terms of the Agreement or that the matter is material. It is expressly understood and acknowledged that any exceptions set forth herein shall not constitute a basis for a claim of a breach of any of the representations and warranties or covenants related to Confidential Information (as defined in the DIP Credit Agreement).

No disclosure in this Disclosure Schedule relating to any possible or alleged breach or violation of any law or contract shall be construed as an admission or indication that any such breach or violation exists or has actually occurred, or as an admission against any interest of the Sellers or any of their directors or officers. All references in this Disclosure Schedule as to the enforceability of agreements with third parties, the existence or non-existence of third-party rights, the absence of breaches or defaults by third parties, or similar matters or statements, are intended only to allocate rights and risks between the parties to the Agreement and are not intended to be admissions against interests, give rise to any inference or proof of accuracy, be admissible against any party to the Agreement by any person who is not a party to the Agreement, or give rise to any claim or benefit to any person who is not a party to the Agreement. In addition, the disclosure of any matter in this Disclosure Schedule is not to be deemed an admission that such matter actually constitutes noncompliance with, or a violation of, any Legal Requirement, contract, agreement or other topic to which such disclosure is applicable. In disclosing the information in this Disclosure Schedule, the Sellers expressly do not waive any attorney-client privilege associated with such information or any protection afforded by the work-product doctrine with respect to any of the matters disclosed or discussed herein. References in this Disclosure Schedule to any agreement include references to such agreement's exhibits and schedules. Where the terms of a contract or other disclosure item have been referenced, summarized or described, such reference, summary or description does not purport to be a complete statement of the material terms of such contract or disclosure item and such disclosures are qualified in their entirety by the specific details of such contract or disclosure item.

The Sellers have set forth information on this Disclosure Schedule in a section thereof that corresponds to the section of the Agreement to which it relates. A matter set forth in one section of this Disclosure Schedule need not be set forth in any other section so long as its

relevance to such other section of this Disclosure Schedule or section of the Agreement is reasonably apparent on the face of the information disclosed therein to the Person to which such disclosure is being made.

The information disclosed herein shall only be used in conjunction with the Agreement, constitutes confidential information, and is subject to the confidentiality provisions set forth in the Agreement.

The Sellers do not assume any responsibility to any person or entity that is not a party to the Agreement for the accuracy of any information contained in this Disclosure Schedule.  The information was not prepared or disclosed with a view to its potential disclosure to others.  This information is disclosed in confidence for the purposes contemplated in the Agreement.

Headings have been inserted on this Disclosure Schedule for convenience of reference only and do not affect, and will not be utilized in construing or interpreting, this Disclosure Schedule.

**Schedule 1.01(a)**
**EM Subsidiaries**

1.     EM Energy Manager, LLC

2.     EM Energy Employer, LLC

3.     EM Energy Ohio, LLC

4.     EM Energy Pennsylvania, LLC

5.     EM Energy West Virginia, LLC

6.     EM Energy Midstream Ohio, LLC

7.     EM Energy Midstream Pennsylvania, LLC

8.     EM Energy Keystone, LLC

**Schedule 1.01(b)**
**Sellers' Knowledge Persons**

1.      Callum Streeter, CEO

2.      Alan Shepard, CFO

**Schedule 1.01(c)**
**Buyer's Knowledge Persons**

1.    Dale Conder, Designated Signer

**Schedule 1.01(d)**
**Allocated Values**

[*See Attached*]

**Allocated Values**

**Purchase Price Calculation**

| | | | |
|---|---|---:|---|
| | KeyBank DIP BID | $ | 60,177,886 |
| | | | |
| | Cash Payment Gross | $ | 10,250,000 |
| | Less: 12/3 DIP Draw | | (565,363) |
| | Adjusted Payment | $ | 9,684,637 |
| | | | |
| | Permitted Lien  Assignment | $ | 4,100,000 |
| | | | |
| Total | | $ | 73,962,523 |

**Schedule 1.01(d)**

| | Allocated Purchase Price |
|---|---:|
| CANIS MAJOR 1 MH | $ 3,657,354.09 |
| CANIS MAJOR 3 MH | 4,154,618.74 |
| CANIS MAJOR 5 MH | 3,796,268.37 |
| CANIS MAJOR 7 MH | 4,045,910.97 |
| CRATTY 1 MH | 1,162,496.51 |
| CRATTY 7 BH | 932,566.60 |
| DORADO 1 MH | 2,112,508.34 |
| DORADO 11 BH | 1,673,386.67 |
| DORADO 19 BH | 2,214,437.54 |
| DORADO 3 MH | 1,882,078.96 |
| DORADO 5 MH | 1,503,429.17 |
| DORADO 9 MH | 2,673,318.62 |
| SCULPTOR 1 MH | 3,081,737.78 |
| SCULPTOR 10 MH | 1,295,350.31 |
| SCULPTOR 2 MH | 2,105,163.52 |
| SCULPTOR 3 MH | 3,321,335.84 |
| SCULPTOR 4 MH | 1,951,137.63 |
| SCULPTOR 5 MH | 3,542,741.00 |
| SCULPTOR 6 MH | 1,662,180.81 |
| SCULPTOR 7 MH | 3,496,057.17 |
| SCULPTOR 8 MH | 1,366,270.53 |
| SCULPTOR 9 MH | 3,039,677.85 |
| DRACO 1 MH | 436,853.59 |
| DRACO 11 BH | 396,501.79 |
| DRACO 3 MH | 481,498.25 |
| DRACO 5 BH | 296,123.97 |
| DRACO 7 BH | 307,931.20 |
| DRACO 9 MH | 647,276.59 |
| LYNX 17 BH | 577,113.24 |
| LYNX 3 MH | 1,387,372.16 |
| LYNX 4 MH | 1,272,683.44 |
| LYNX 9 MH | 1,108,851.58 |
| MORROW 1 MH | 722,478.44 |
| MORROW 7 BH | 325,007.87 |
| POLARIS 1 MH | 1,811,428.08 |
| POLARIS 5 MH | 1,754,665.84 |
| URSA MAJOR 12 BH | 532,357.88 |
| URSA MAJOR 3 MH | 431,292.85 |
| URSA MAJOR 6 MH | 1,099,094.74 |
| URSA MAJOR 9 BH | 399,198.44 |
| URSA MINOR 1 MH | 903,897.79 |
| URSA MINOR 11 BH | 550,892.04 |
| URSA MINOR 13 BH | 494,885.35 |
| URSA MINOR 15 BH | 875,846.52 |
| URSA MINOR 3 MH | 584,966.54 |
| URSA MINOR 5 MH | 475,959.33 |
| URSA MINOR 7 MH | 513,626.00 |
| URSA MINOR 9 BH | 904,692.19 |
| | $ 73,962,522.73 |
| | $ - |

**Schedule 2.01(b)(v)**
**Miscellaneous Corporate Property**

[*See Attached*]

Schedule 2.01(b)(v)

**Computing Hardware**

2 Dell Latitude E5580 Laptops
2 Dell Latitude Laptops
2 Dell Latitudes
2 Dell M4800 Laptops
3 Computers and 6 Monitors
3 Dell Latitude E5580 Laptops
3 Precision M3800s
4 Computers and 2 Monitors
4 Dell Latitude E5580 Laptops
4 Dell Latitude Laptops
5 Copmuter/10 Monitors
Computer Equipment
Computer Hardware
Computing Hardware - 5 Dells
DELL - Mobile Precision 7510
Dell Computer
Dell Computing Hardware
Dell Latitude E5570 Laptops
Dell Precision BTX M3800
Dell Precision M3800
Dell Precision M3800 CTO
Dell Precision M3800, etc.
Laptops and Accessories
Laptops and Monitors
Scanner

**Computing Software**

2 PHDWin Software
5k Directional Advanced Packag
ARIES
ARIES Software
Asset Dev. Software
Asset Develop. Software
Autodesk Plant Design Suite
Computing Software - PHDWIN
Discovery Suite Premier
DocVue - 2 users
DTN Propet X Pricing Software
Mfrac package - single user
Ogsys Fixed Asset Module
OGSys Increase/DocVue Bridge
Ogsys Land Module
Ogsys License - 5 users
Ogsys Software - AP Upload
Ogsys SQL Software - 2 users
Quorum Land Mgmt Software
Quorum Land Software
Salesforce
Salesforce pre-deployment
SES Geosteering Software

**Office Equipment**

HP Designjet T790PS 44
Phone System
Server Equipment
Workcentre 7525 Copier/Printer

**Office Furniture**

Town Center Office Furniture

**Vehicles**

| Description | VIN |
| --- | --- |
| 2013 Ford F150 Crew Cab 4X4 SS | 1FTFW1EF4DFA13512 |
| 2013 Ford F150 Crew Cab 4X4 SS | 1FTFW1EFXDFA59023 |
| 2013 Ford F150 Crew Cab 4X4 SS | 1FTFW1EF5DFA08805 |
| 2014 Ford F150 XL 4WD SUPERCREW | 1FTFW1EF3EFA99980 |
| 2014 Ford F150 XL 4WD SUPERCREW | 1FTFW1EF1EFD06611 |
| 2014 Ford Ford Explorer Limited 4WD | 1FM5K8FGA13047 |
| 2014 Ford F150 SuperCrew XL 4WD | 1FTFW1EF5EFC64315 |
| 2015 Ford F150 XL 4WD | 1FTEW1E89FKD14672 |
| 2017 Ford F150 Supercrew | 1FTEW1E81HFC44497 |
| 2018 Ford F150 Supercrew | 1FTEW1EB1JFB03706 |
| 2018 Ford F150 Supercrew | 1FTEW1EB7JFB66924 |
| 2018 Ford F150 Supercrew | 1FTEW1EB1JFB65509 |
| 2018 Ford F-150 XL 4WD | 1FTEW1EP8JFE02542 |
| 2018 Ford F-150 XL 4WD | 1FTEX1E54JKF51923 |

**Schedule 2.02(e)**
**Excluded Records**

None.

## Schedule 2.05(a)
## Desired 365 Contracts

1.      Gas Compression Agreement, dated as of May 1, 2014, by and among EM Energy Pennsylvania, L.L.C., EdgeMarc Energy Holdings, L.L.C. and Axip Energy Services, LP.

2.      Amendment to the Gas Compression Agreement, dated as of May 1, 2018, by and among Axip Energy Services, LP, EdgeMarc Energy Holdings, L.L.C., EM Energy Midstream Pennsylvania, L.L.C. and EM Energy Pennsylvania, L.L.C.

3.      Letter Agreement re Additional Pressure Reduction Request, dated as of September 14, 2018, by and among Axip Energy Services, LP, EdgeMarc Energy Holdings, L.L.C., EM Energy Midstream Pennsylvania, L.L.C. and EM Energy Pennsylvania, L.L.C.

4.      Gas Processing Agreement, dated as of August 14, 2014, by and between MarkWest Liberty Bluestone, L.L.C. and EM Energy Pennsylvania, L.L.C.

5.      First Amendment to Gas Processing Agreement, dated as of January 31, 2019, by and between MarkWest Liberty Bluestone, L.L.C. and EM Energy Pennsylvania, L.L.C.

6.      Natural Gas Liquids Exchange and Marketing Agreement, dated as of August 14, 2014, by and between MarkWest Liberty Midstream & Resources, L.L.C. and EM Energy Pennsylvania, L.L.C.

7.      First Amendment to Natural Gas Liquids Exchange and Marketing Agreement, dated as of January 31, 2019, by and between MarkWest Liberty Midstream & Resources, L.L.C. and EM Energy Pennsylvania, L.L.C.

**Schedule 5.03**
**No Conflict**

None.

**Schedule 5.04**
**Material Contracts**

1. Gas Processing Agreement between EM Energy Pennsylvania, LLC and MarkWest Liberty Bluestone, LLC, dated August 14, 2014.

2. First Amendment to Gas Processing Agreement between EM Energy Pennsylvania, LLC and MarkWest Liberty Bluestone, LLC, dated January 31, 2019.

3. Natural Gas Liquids Exchange and Marketing Agreement between EM Energy Pennsylvania, LLC and MarkWest Liberty Midstream & Resources, LLC, dated August 14, 2014.

4. First Amendment to Natural Gas Liquids Exchange and Marketing Agreement between EM Energy Pennsylvania, LLC and MarkWest Liberty Midstream & Resources, LLC, dated January 31, 2019.

5. Gas Compression Agreement between EM Energy Pennsylvania, LLC and EdgeMarc Energy Holdings, LLC and Axip Energy Services, LP, dated May 1, 2014.

6. Amendment to the Gas Compression Agreement, between EM Energy Pennsylvania, LLC, EM Energy Midstream Pennsylvania and EdgeMarc Energy Holdings, LLC, dated July 23, 2018.

7. Settlement and Release of Claims, between EM Energy Pennsylvania, LLC, EM Energy Midstream Pennsylvania and EdgeMarc Energy Holdings, LLC.

8. Letter Agreement – Additional Pressure Reduction Request between EM Energy Pennsylvania, LLC, EM Energy Midstream Pennsylvania and EdgeMarc Energy Holdings, LLC, dated September 14, 2018.

9. Amended and Restated Gathering and Processing Agreement between EM Energy Pennsylvania, LLC and ETC Northeast Pipeline, LLC, dated November 13, 2017.

10. Amended and Restated Individual Transaction Confirmation (Gatherer's Contract No. 9532-101) To Amended and Restated Gathering and Processing Agreement between EM Energy Pennsylvania, LLC and ETC Northeast Pipeline, LLC, dated November 13, 2017.

11. Amended and Restated Individual Transaction Confirmation (Gatherer's Contract No. 9532-102) To Amended and Restated Gathering and Processing Agreement between EM Energy Pennsylvania, LLC and ETC Northeast Pipeline, LLC, dated November 13, 2017.

12. Service Agreement Applicable to Transportation of Natural Gas Under Rate Schedule FT between EM Energy Pennsylvania, LLC and Dominion Transmission Inc (FT Contract 200690), dated September 25, 2015.

13. Discount Letter Agreement, Service Agreement Applicable to Transportation of Natural Gas Under Rate Schedule FT between EM Energy Pennsylvania, LLC and Dominion Energy Transmission Inc. Contract No. 200690, dated January 4, 2019.

14. Service Agreement Applicable to Transportation of Natural Gas Under Rate Schedule FT between EM Energy Pennsylvania, LLC and Dominion Transmission Inc (FT Contract 200690), dated March 21, 2019.

15. Discount Letter Agreement, Service Agreement Applicable to Transportation of Natural Gas Under Rate Schedule FT between EM Energy Pennsylvania, LLC and Dominion Energy Transmission Inc. Contract No. 200690, dated March 21, 2019.

16. Consolidated Amended and Restated License Agreement to Access Site between Pennsylvania American Water and EM Energy Pennsylvania, LLC, dated Jan 19, 2016.

17. Security Deposit Agreement, dated September 30, 2015.

18. Service Agreement Applicable to the Capacity Release Program, dated July 30, 2015.

19. Service Agreement Applicable to Transportation of Natural Gas Under Rate Schedule FT, dated September 25, 2015.

20. Service Agreement Applicable to Transportation of Natural Gas Under Rate Schedule FT, dated March 21, 2019.

**Schedule 5.06**
**Wells; Plug and Abandon Notice**

None.

**Schedule 5.07**
**Imbalances**

As of 07/18/2019, the Imbalances relating to the Assets was -28,441 dth (due MarkWest).

**Schedule 5.11**
**Legal Proceedings**

None.

**Schedule 5.13**
**Payments**

None.

**Schedule 5.14**
**Brokers or Finders**

None.

**Schedule 5.15**
**Non-Consent Operations**

None.

## Schedule 5.16
## Environmental Matters

1. During a November 8, 2018 routine onsite partial inspection, Pennsylvania Department of Environmental Protection ("PA DEP") personnel at the Aries, Pennsylvania site identified three Environmental, Health, and Safety ("EHS") violations related to erosion and sediment control (25 Pa. Code §78a.53; 25 Pa. Code §102.11(a)1; and Clean Streams Law ("CSL") 35 P.S. §691.402(b)). There were logging operations on site and the area was missing required erosion and sediment controls. On March 21, 2019 EdgeMarc signed a consent agreement requiring a penalty payment of $4,450 total, resulting from issues at this site and the Dorado site.

2. During an October 10, 2018 spill response inspection, regulators reported a 30-gallon spill of a mixture of hydraulic fluid and water at the Monoceros, Pennsylvania site. Regulators noted three violations (Solid Waste Management Act ("SWMA") 35 P.S. §6018.301, §6018.302(a), §6018.610(1)). The spill was remediated by removing the contaminated material and replacing the gravel fill.

3. During a September 5, 2018 spill response inspection, regulators reported a 10-gallon spill of produced water from an above-ground storage tank at the Sculptor, Pennsylvania site due to a faulty paddle valve on the manifold (SWMA 35 P.S. §6018.301). The operator replaced the malfunctioning part of the tank and hired a third party contractor to remediate the contaminated area of the well pad.

4. On July 15, 2018 the operator of the Sculptor, Pennsylvania site reported that approximately one barrel of produced water was released as a result of vandalism. Regulators inspected the site and noted three EHS violations (SWMA 35 P.S. §6018.301, §6018.302(a), §6018.610(1)). Once the release was discovered, operations were stopped, the lines were repaired, the area contaminated with produced water was excavated, and soil samples were taken.

5. During a July 11, 2018 incident inspection at the Sculptor, Pennsylvania site, regulators reported eight EHS violations, most of which related to an incident involving a leaking frac tank that caused a fire and then ruptured (SWMA 35 P.S. §6018.301, §6018.302(a), §6018.610(1); CSL 35 P.S. §691.402(b); and 25 Pa. Code §78a.56(a)(10), §78a.64(b), §78a.74, §79.15(a)). Two adjacent tanks, filled with gas, also ruptured. Emergency services responded and the fire was put out using fire foam and water. An unknown amount of liquid was spilled to the ground during this incident.

6. During a May 11, 2018 routine partial inspection, regulators noted an EHS violation at the Monoceros, Pennsylvania site (CSL 35 P.S. §691.402(b)). The violation related to discharge of pipeline water into a tributary.

7. During an April 20, 2018 routine partial inspection, PA DEP noted two EHS violations related to site restoration at the Dorado, Pennsylvania site (25 Pa. Code

§78a.65(a)1(i) and Oil & Gas Act ("OGA") 58 Pa. C.S. §3216(a)). On March 21, 2019 EdgeMarc signed a consent agreement requiring a penalty payment of $4,450 total, resulting from issues at this site and the Aries site. Restoration work is complete, and the area of concern has been reseeded. EdgeMarc is currently awaiting vegetative growth here to reach the 70% level required by the PA DEP.

8.  During a January 22, 2018 routine partial inspection, regulators noted two EHS violations related to storm water runoff, erosion, and sediment at the Dorado, Pennsylvania site (25 Pa. Code §102.11(a)1 and CSL 35 P.S. §691.401).

9.  During a December 27, 2017 incident response inspection at the Butler North Temporary Waterline (Beach Road), Pennsylvania site, regulators noted a violation relating to a release of water, drill cutting and sedimentation into a stream and wetland (CSL 35 P.S. § 691.401).

10. During a December 21, 2017 incident response inspection, regulators noted three EHS violations at the Butler North Temporary Waterline (Kuhn Road), Pennsylvania site (25 Pa. Code §78a.68a(h); CSL 35 P.S. §691.401; and SWMA 35 P.S. §6018.301). The violations related to releases of sedimentation, water, and wastes into a nearby wetland.

11. On December 1, 2017, operators at the Butler North Temporary Waterline (Bell Road), Pennsylvania site released 40 to 50 gallons of bentonite/water slurry into a wetland resulting in five EHS violations (25 Pa. Code §78a.68a(h), §78a.68b(a), §78a.68a(c); CSL 35 P.S. §691.401; and SWMA P.S. § 6018.301). Crews on the scene used filter sock in an attempt to contain the release. They then placed compost filter socks in the stream channel to filter bentonite from the water.

12. On May 15, 2017, operators at the Draco, Pennsylvania site spilled 30 gallons of acid on the well pad (SWMA P.S. § 6018.301). The area where the spill occurred was promptly cleaned up and contaminated materials were removed and disposed of. New material was used to fill the excavated area.

**Schedule 5.22**
**AFE's; Capital Commitments**

None.

**Schedule 7.02**
**Operations Prior to the Closing Date**

None.

**Schedule 8.03(c)**
**Seller Credit Obligations**

[*See Attached*]

Schedule 8.03(c)

| Company | POL# | Eff Date | Exp Date | Bond Amount | Principal | Obligee | Description |
|---|---|---|---|---|---|---|---|
| INDEMCO, L.P. | B007887 | 02/22/2019 | 02/22/2020 | $140,875.00 | EM Energy Pennsylvania LLC | PENN DOT | $140,875 Weight Restricted Highways Program Bond for Penn DOT, Agreement NO. |
| INDEMCO, L.P. | B007888 | 02/22/2019 | 02/22/2020 | $26,250.00 | EM Energy Pennsylvania, LLC | Township of Allegheny, PA | $26,250 Excess Maintenance Bond for Township of Allegheny, PA |
| INDEMCO, L.P. | B007947 | 03/26/2019 | 03/26/2020 | $6,000.00 | EM Energy Pennsylvania, LLC | Concord Township | $6,000 Road Permit Bond for Concord Township, PA  Boydstown Road / Clark Road |
| INDEMCO, L.P. | B007902 | 03/01/2019 | 03/01/2020 | $12,000.00 | EM Energy Pennsylvania LLC | Concord Township, PA | $12,000 Road Use Bond for Concord Township, PA |
| INDEMCO, L.P. | B008019 | 05/07/2019 | 05/07/2020 | $1,000.00 | EM Energy Pennsylvania LLC | Oakland Township | Renewal Premium for $1,000 Excess Maintenance Agreement Bond |
| INDEMCO, L.P. | B008020 | 05/07/2019 | 05/07/2020 | $8,750.00 | EM Energy Pennsylvania, LLC | Oakland Township | Renewal Premium for $8,750 Excess Maintenance Agreement For Oakland |
| INDEMCO, L.P. | B008774 | 06/09/2019 | 06/09/2020 | $27,125.00 | EM Energy Pennsylvania, LLC | Center Township | Premium for $27,125 Excesss Maintenance Agreement Bond for Center Township |
| INDEMCO, L.P. | B008086 | 06/26/2019 | 06/26/2020 | $59,000.00 | EM Energy Pennsylvania, LLC | Allegheny Township | Renewal Premium for $59000 Excess Maintenance Agreement Bond for Allegheny Town |
| INDEMCO, L.P. | B010333 | 08/04/2019 | 08/04/2020 | $70,000.00 | Edgemarc Energy Holdings, LLC | Concord Township | Premium for Road Agreement Bond for temporary waterline |
| INDEMCO, L.P. | B010958 | 08/22/2019 | 08/22/2020 | $88,000.00 | EM Energy Pennsylvania | Concord Township | Premium for Road Bond Agreement with Concord Township for Construction |
| INDEMCO, L.P. | B010959 | 08/22/2019 | 08/22/2020 | $7,625.00 | EM Energy Pennsylvania, LLC | Allegheny Township, PA | Premium for Bond for Allegheny Township for Excess Maintenance Agreement |
| INDEMCO, L.P. | B010960 | 08/22/2019 | 08/22/2020 | $29,000.00 | EM Energy Pennsylvania, LLC | Washington Township, PA | PRemium for Road Bond for Washington Township for construction and operation |
| INDEMCO, L.P. | B011068 | 10/24/2019 | 10/24/2020 | $12,250.00 | EM Energy Pennsylvania, LLC | Washington Township | Premium for #12,250 Road Bond for Washington Township for Annisville Road |
| INDEMCO, L.P. | B011127 | 11/29/2019 | 11/29/2020 | $26,000.00 | EM Energy Pennsylvania LLC | Parker Township | Premium for Excess Maintenance Agreement Bond for West Eldorado Road |
| INDEMCO, L.P. | B009202 | 02/06/2019 | 02/06/2020 | $455,000.00 | EM Energy Pennsylvania, LLC | PA DEP | $455,000 Surety Bond for Oil and Gas Wells to the PA DEP |
| INDEMCO, L.P. | B010519 | 03/23/2019 | 03/23/2020 | $290,000.00 | EM Energy Keystone LLC | PA DEP | Premium for Oil and Gas Well bond for PA DEP on behalf of EM Energy Keystone, LLC |

**Exhibit A-1**
**Assigned Leases and Interests**

[*See Attached*]

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| 483 SAND ROAD, LLC | 5002 ESSEX CT, PITTSBURGH, PA 15237, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201707060014242 | $0.00 |
| AARON S. PENNINGTON | 159 WHITMIRE RD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201210240030617 | $0.00 |
| ADAM AND AMANDA JAMES | 119 MORRIS ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803230005410 | $0.00 |
| ADAM C. TERWILLIGER & BRADY L. TERWILLIGER | 929 MAPLE FURNACE RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311150032930 | $0.00 |
| AGNES TOTH | 130 DUNKLE RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032570 | $0.00 |
| AL J. MOLETZ | 5036 BAKERSTOWN ROAD, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201712190002768 | $0.00 |
| ALAN B. CAMPBELL | 1164 ONEIDA VALLEY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201201060000573 | $0.00 |
| ALAN E. ZARNICK | 2515 ONEIDA VALLEY ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201704110007600 | $0.00 |
| ALAN L. NUTT AND SUSANE E. KACHURAK | 151 EAST JEFFERSON ROAD, PITTSFORD, NY 14534, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001034 | $0.00 |
| ALAN T. ANKROM | 110 BOYDSTOWN ROAD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #200906040012191 | $0.00 |
| ALBERT HARRY DEAL AND ELIZABETH ANN DEAL, ETA | 422 GIBSON ST EXT BOX 134, EAU CLAIRE, PA 16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201301300003251 | $0.00 |
| ALBERT J. MOLETZ LIVING TRUST DATED DEC. 1, 2005 | 5036 BAKERSTOWN ROAD, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408290020580 | $0.00 |
| ALBERT R. MILLER & KARLA J. MILLER | 604 HOOKER ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201206060016203 | $0.00 |
| ALBERT V. BRAMMER, JR. | 329 PARKER PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201410290026036 | $0.00 |
| ALENE L. CAMPBELL | 1153 ONEIDA VALLEY RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309060026054 | $0.00 |
| ALICE M. WATTS | 1426 AVENUE N 1/2, GALVESTON, TX 77550, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201202240005194 | $0.00 |
| ALLEGHENY CHURCH CEMETERY ASSOICIATION | 221 DELYBRO ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201407250017215 | $0.00 |
| ALLEGHENY TOWNSHIP | 824 FOXBURG ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201406270014604 | $0.00 |
| ALLEGHENY-CLARION VALLEY DEVELOPMENT CORPORATION | PO BOX 311, FOXBURG, PA 16036, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201304020009346 | $0.00 |
| ALLEN D. & DEANNA J. SCHEERBAUM | 237 RED BUD RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610310022864 | $0.00 |
| AMANDA M. CATALFANO, ET AL | 104 ELISE DRIVE, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027595 | $0.00 |
| AMY J. AND HAROLD J. BOLLINGER | 51 MAY AVENUE, MCKEES ROCKS, PA 15136, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201710100022064 | $0.00 |
| ANDREW A. BAIRD AND MARY E. BAIRD | 992 KEEFER RD, GIRARD, OH 44420, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309300028320 | $0.00 |
| ANDREW E. & SANDRA L. MARIANI | 7289 MURIEL LANE, JAMESTOWN, PA 16134, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201610180021748 | $0.00 |
| ANDREW P. MEURER | 5 MISTY LANE, GREENVILLE, SC 29615, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001043 | $0.00 |
| ANGELA M. BOMIA | 2703 ONEIDA VALLEY RD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201305100013605 | $0.00 |
| ANITA SUE KRENEK | 15011 CAROLS WAY, HOUSTON, TX 77070, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009112 | $0.00 |
| ANTHONY J. & FRANCES D. LOMINSKI | 454 W. ELDORADO ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020296 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| ANTHONY J. BLUMLING AND JESSICA LYNN BLUMLING | 2930 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201707270015828 | $0.00 |
| ARMAND AND PATRICIA MARY CASTELLI | 4802 SANDY DRIVE, MONROEVILLE, PA  15146, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007244 | $0.00 |
| ARMELLA C. AND HOWARD C. MCELHENY | 524 MCELHENY RD, GLENSHAW, PA  15116, USA | EM Energy Pennsylvania, LLC | SURFACE USE AGREEMENT - BUTLER NORTH - Instrument #201712200027762 | $0.00 |
| ARTHUR G. BLAIR | 119 DUSTY LANE, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022667 | $0.00 |
| ARTHUR G. BLAIR | PO BOX 987, TOK, AK  99780, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009096 | $0.00 |
| ARTHUR J. BARTON AND ROXANNE BARTON | 1350 MAHOOD RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201211280034242 | $0.00 |
| ARTHUR J. BARTON AND ROXANNE BARTON | 1350 MAHOOD ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER SOUTH - Tax Parcel - 250-02F24-000001AA-0000 | $0.00 |
| ARTHUR L. MORROW | 326 CLARK ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022670 | $0.00 |
| AUDIE D. SMITH | 463 HILLIARDS ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411260028348 | $0.00 |
| BARBARA CHAMBERS | 22325 ELM LANE, MEDICAL LAKE, WA  99001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201502170003282 | $0.00 |
| BARBARA E. & LEONARD K. KELLERMAN | 337 EAST MAIN ST, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201609200019382 | $0.00 |
| BARBARA J. BACHMAN | 161 WASHINGTON STREET, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201801170001048 | $0.00 |
| BARBARA J. SCHMUDE | 1147 HOOKER RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201609200019383 | $0.00 |
| BARBARA L. AND DONALD A. SOPHER | 1031 E. GILMORE ROAD, GROVE CITY, PA  16127, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003894 | $0.00 |
| BARBARA M. YOHE | 123 FOXBURG ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020278 | $0.00 |
| BARRY C. PORTER & KATHY L. PORTER | 230 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401140001055 | $0.00 |
| BARRY D. RAY AND MARIA A. RAY | 342 ASPEN ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201712190027678 | $0.00 |
| BARRY S. EILER | 106 CRATTY LANE, PO BOX 28, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310220030426 | $0.00 |
| BARRY W. LOUISE AND MARILYN LOUISE | PO BOX 378, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024933 | $0.00 |
| BERNADETTE CLAWSON | 1885 ITAWAMBA TR, LONDON, OH  43140, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310220030464 | $0.00 |
| BERNIE LANE AND MARCIA ANN LANE | 4038 PELELIV DR, TARAWA TERRACE, NC  28543, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309300028332 | $0.00 |
| BETTE JANE PEOPLES | 122 THIRD AVENUE, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003895 | $0.00 |
| BETTY J. BLAUSER, A SINGLE WOMAN | 116 ALLEGHENY CHURCH ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201409160022077 | $0.00 |
| BETTY J. BLAUSER, A SINGLE WOMAN | 116 ALLEGHENY CHURCH ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201409160022081 | $0.00 |
| BEVERLY A JONES AKA BEVERLY A S JONES | 1235 ONEIDA VALLEY ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808150016735 | $0.00 |
| BEVERLY J. HOFFMAN | 168 SOUTH OTTER STREET, MERCER, PA  16137, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001035 | $0.00 |
| BLAINE P. WILSON, JR. AND BONNIE J. WILSON | 169 ZION CHURCH ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201508190018334 | $0.00 |
| BLAIR BARGER | 231 PARKER PK, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009107 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| BONNIE JEAN MCQUISTON, A SINGLE WOMAN | 517 WALNUT STREET, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027578 | $0.00 |
| BONNIE S. BECKMAN | 276 13TH STREET APT 1, AMBRIDGE, PA 15003, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201710100022063 | $0.00 |
| BOW AND ARROW LAND COMPANY, LLC | 2660 MONROEVILLE BLVD, MONROEVILLE, PA 15146, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201403280006423 | $0.00 |
| BRADEN HOWARD AND STEPHANIE HOWARD | 812 HOOKER ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015863 | $0.00 |
| BRADLEY P. MCNANY & LINDSAY M. MCNANY | 111 RUSTIC WOODS ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018346 | $0.00 |
| BRADYN R. LOUISE AND JAYME L. LOUISE | 316 ALLEGHENY CHURCH ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024931 | $0.00 |
| BRANDY L. AND WILLIAM J. KAISER | 220 TROUTMAN ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010107 | $0.00 |
| BRENT A. MOCULSKI & LINDA M. MOCULSKI | 98 VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201409260023165 | $0.00 |
| BRETT R. DOWNES, MSSP | 150 SANDY POINT RD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035985 | $0.00 |
| BRIAN C BROWN AND AMY E BROWN | 832 NORTH WASHINGTON RD NORTH, PO BOX 7, WASHINGTON, PA 16048, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015860 | $0.00 |
| BRIAN CURRY | 8 ROOSEVELT AVENUE, GLEN BURNIE, MD 21061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201511090024861 | $0.00 |
| BRIAN J. EAKIN | 430 ANNISVILLE ROAD, PETROLIA, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803230005414 | $0.00 |
| BRIAN J. NEFF | 449 W SLIPPERY ROCK ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805100009103 | $0.00 |
| BRIAN K. BODNAR | 139 SAUL ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020286 | $0.00 |
| BRIAN M. HORNER AND RACHEL K. HORNER | 102 RUSTIC WOODS ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020289 | $0.00 |
| BRIAN M. KARENBAUER & PENNY L. KARENBAUER | 300 BOYDSTOWN RD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201002020002239 | $0.00 |
| BRIAN P. AND LAURA J. EURY | 1141 ANNISVILLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003898 | $0.00 |
| BRIAN S ARENDOSH AND CARRIE ITALIANO | 390 CHERRY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015872 | $0.00 |
| BRUCE A. HORLICK | 1111 FLORA ST., PITTSBURGH, PA 15212, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310220030466 | $0.00 |
| BRUCE D. AND DIANA L. HUFNAGLE | 119 WATERS EDGE DRIVE, EAST BRADY, PA 16028, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201904260007367 | $0.00 |
| BRUCE D. AND DIANA L. HUFNAGLE | 119 WATERS EDGE DRIVE, EAST BRADY, PA 16028, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201809200019270 | $0.00 |
| BRUCE D. AND VIVIAN E. GROOM | 573 FAIRVIEW ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805230010083 | $0.00 |
| BRUCE D. HUFNAGLE AND DIANA L. HUFNAGLE | 119 WATERS EDGE DRIVE, EAST BRADY, PA 16028, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001053 | $0.00 |
| BRUCE J. TOTH AND LANA J. TOTH | 201 SOUTH BEATTY AVENUE, EAU CLAIRE, PA 16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018342 | $0.00 |
| BRUCE M BIRCKBICHLER AND SHIRLEY J BIRCKBICHLER | 147 BIRCKBICHLER ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014143 | $0.00 |
| BRUCE T. GRUVER, II | 325 HOOK CITY ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706050011677 | $0.00 |
| BUFFALO VALLEY, LTD | ONE GLADE PARK EAST P.O BOX 1022, KITTANNING, PA 16201, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201401140001039 | $0.00 |
| BUFFALO VALLEY, LTD | ONE GLADE PARK EAST, PO BOX 1022, KITTANNING, PA 16201, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201505150010342 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| C. STEVEN BLAUSER | 3824 KIM LN, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312060034467 | $0.00 |
| C. STEVEN BLAUSER, TRUSTEE OF THE RICHARD F. BLAUS | 3824 KIM LANE, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312060034468 | $0.00 |
| C.H. SNYDER COMPANY | PO BOX 1022, KITTANNING, PA 16201, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401140001041 | $0.00 |
| C.H. SNYDER COMPANY | PO BOX 1022, KITTANNING, PA 16201, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201504290008906 | $0.00 |
| C.H. SNYDER COMPANY | PO BOX 1022, KITTANNING, PA 16201, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201505150010341 | $0.00 |
| C.H. SNYDER COMPANY AND BUFFALO VALLEY, LTD | PO BOX 1022, KITTANNING, PA 16201, USA | EM Energy Pennsylvania, LLC | SURFACE USE AGREEMENT - Instrument #201410170025052 | $0.00 |
| CALVIN E. FRY & PAMELA M. FRY | 611 CHERRY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201511090024866 | $0.00 |
| CAREY D. DORGAN | 103 NORTH DIVISION AVENUE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007241 | $0.00 |
| CARL F. WITTMANN JR. AND SUZANNE E. WITTMANN | 1645 CORDWELL DRIVE, SOUTH PARK, PA 15129, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506300014181 | $0.00 |
| CARL G. AND FRANKIE ELAINE KERN | 1143 SILVER OAK DRIVE, RENFREW, PA 16053, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003908 | $0.00 |
| CARL R. SHULER & MARILYN JUNE SHULER | 265 STEIGHNER RD, FENELTON, PA 16034, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #200705170012417 | $0.00 |
| CARLA D. CAMPBELL AND BARRY D. RUGG | 255 HILLIARDS ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805230010086 | $0.00 |
| CAROL A, TOTH | 2744 ONEIDA VALLEY ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201204120009892 | $0.00 |
| CAROL ADKINS | 131 FOXBURG ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020264 | $0.00 |
| CAROL L. BURSIC | 342 PARKER PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201410290026039 | $0.00 |
| CAROL ROZUM AND MAX ROSUM | 711 TAMARACK DRIVE, IMPERIAL, PA 15126, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027583 | $0.00 |
| CATHERINE E SLACK | 441 ANNISVILLE ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014141 | $0.00 |
| CATHERINE E. SLACK | 441 ANNISVILLE ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER NORTH - Instrument #201710170022654 | $0.00 |
| CATHRYN A. BLAUSER | 2807 ONEIDA VALLEY ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020281 | $0.00 |
| CECIL S. WILLIAMS JR. AND CHARLOTTE M. WILLIAMS, H | 457 WEST ELDORADO RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201305100013606 | $0.00 |
| CENTRAL ELECTRIC COOPERATIVE, INC | 716 ROUTE 368, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201406170013326 | $0.00 |
| CHAD P & LORAINE HARTMAN & BRYAN K. HARTMAN | 4828 WEXFORD RUN ROAD, BRADFORD WOODS, PA 15015, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018350 | $0.00 |
| CHARDIE LYNN BAIRD AND ETHAN MICHAEL BERNICK, W/H | 1611 SUNNY SLONE LN, MANHATTAN, KS 66502, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309300028350 | $0.00 |
| CHARLES A. LATIMORE & CLAIRE LORRAINE LATIMORE ET | 160 CLARK ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201505150010344 | $0.00 |
| CHARLES AND CONNIE WILLIAMSON | 2969 ONEIDA VALLEY ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007247 | $0.00 |
| CHARLES BLAUSER | 3824 KIM LANE, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032579 | $0.00 |
| CHARLES DENNIS BELL | 1074 HOOKER ROAD, KARN CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201608260017548 | $0.00 |
| CHARLES F. FISCHER AND ELAINE FISCHER | 164 BERRY HILL ROAD, GLENSHAW, PA 15116, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411260028349 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| CHARLES HOWARD, A.K.A. CHARLES H. ANCHORS AND DIXI | 610 N. RIVERVIEW DR, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311150032929 | $0.00 |
| CHARLES L. DUNKEL | 518 MERCER ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201407110015797 | $0.00 |
| CHARLES L. DUNKEL | 518 MERCER ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201208080022513 | $0.00 |
| CHARLES M. FELLER AND CYNTHIA L. FELLER | 5313 RICHLAND ROAD, GIBSONIA, PA  15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201712190027660 | $0.00 |
| CHARLES O. STOWE & MARY A. STOWE | 213 FOXBURG ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201205180014298 | $0.00 |
| CHARLES RONALD THOMPSON AND DEBORAH LOUISE THOMPSO | 156 BLAUSER RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311040031805 | $0.00 |
| CHARLES T. MARSHALL & WANDA M. MARSHALL | 118 PARKER ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201111290029413 | $0.00 |
| CHARLES T. MARSHALL II & CLARISSA A. MARSHALL | 132 SAUL ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201201060000606 | $0.00 |
| CHARLES THOMAS CRATTY, A.K.A. CHARLES T. CRATTY AN | 226 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201403140005339 | $0.00 |
| CHARLES V RITZ JR AND LINDA D RITZ | 410 BUENA VISTA ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014129 | $0.00 |
| CHARLES W NEFF | 1370 HOOKER RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014125 | $0.00 |
| CHARLES W. SHAFFER JR. AND BETTY SHAFFER | 223 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310110029636 | $0.00 |
| CHARLES WAYNE AND CAROL A HINCHBERGER | 109 GREEN MANOR DR, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019296 | $0.00 |
| CHARLOTTE D. CRATTY | 167 MCKEES ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201410140024607 | $0.00 |
| CHARMAINE M. WULFF | 129 KREGAR LN, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201302280006101 | $0.00 |
| CHAZ M. SMITH AND AMANDA L. SMITH | 336 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201610110021094 | $0.00 |
| CHERYL J. HOWARD | 1049 EAST ELDORADO ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003890 | $0.00 |
| CHESTER L SEYBERT AND JACKIE L SEYBERT | 116 GREENHILL ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014127 | $0.00 |
| CHRIS ALLEN DETRICK AND MARY E. DETRICK | 220 WHITMIRE RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201304020009356 | $0.00 |
| CHRISTIE D STAMM AND CHRISTOPHER STAMM W/H | 840 NORTH WASHINGTON RD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808150016725 | $0.00 |
| CHRISTINE J. MEURER | 552 SE NOME STREET, PORT ST. LUCIE, FL  34984, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001040 | $0.00 |
| CHRISTOPHER A. MCELHATTEN | 1318D CENTRAL AVENUE, CHARLOTTE, NC  28205, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027580 | $0.00 |
| CHRISTOPHER L. AND SHERRY L. SMITH | 852 GLYNN ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010099 | $0.00 |
| CHRISTOPHER R. AND TRACY J. N/K/A TRACY J. SCOTT | 660 CHERRY ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010091 | $0.00 |
| CHRISTOPHER W. AND KRISTY L. STEWART | 683 FAIRVIEW ROAD, NORTH WASHINGTON, PA  16048, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803010003891 | $0.00 |
| CHURCH OF GOD OF PROPHECY OF SIX POINTS, INC. | 126 MCKEE RD., PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018324 | $0.00 |
| CHURCH OF GOD PROPHECY, BY ITS TRUSTEES, WILBERT P | PO BOX 153, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035924 | $0.00 |
| CLARK MANLEY COFFIN | 28 CAMWOOD TRAIL, AUSTIN, TX  78738, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201607190014506 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| CLETUS C. MILLER | 16 LOU LIN MAR LN, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310110029641 | $0.00 |
| CLIFFORD E. BLAUSER AND SANDRA BLAUSER | 182 SQUAW VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201404240008668 | $0.00 |
| CLIFFORD EDWARD BLAUSER AND SANDRA L. BLAUSER | 182 SQUAW VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401100007694 | $0.00 |
| CLIFFORD JAMES EDWARD BLAUSER | 182 SQUAW VALLEY RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311040031784 | $0.00 |
| CLIFFORD JAMES EDWARD BLAUSER | 182 SQUAW VALLEY RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | SURFACE USE AGREEMENT - Instrument #201705190010523 | $0.00 |
| CLIFFORD JAMES EDWARD BLAUSER | 182 SQUAW VALLEY RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201805230010080 | $0.00 |
| CLIFFORD LEE CRANMER | 110 CRANMER LANE, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019286 | $0.00 |
| CLIFFORD LEE CRANMER AND EDWARD LEMONT CRANMER | 324 CRANMER LANE, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019295 | $0.00 |
| CLIFFORD M. EILER | 333 HOOK CITY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706050011681 | $0.00 |
| CLIFTON E. AND LISA A. WOOD | 139 RED BUD RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803070004337 | $0.00 |
| CLIFTON E. AND LISA A. WOOD ET AL | 139 RED BUD RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803070004332 | $0.00 |
| CODY AND BONNIE FREEMAN | 20401 ROUTE 19, CRANBERRY, PA  16066, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803230005416 | $0.00 |
| CONFESSOR AYALA AND LAUREEN AYALA | 128 BUSCAYNE ROAD, PITTSBURGH, PA 15210, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027587 | $0.00 |
| CONSOLIDATED BUILDERS, LLP | 556 S. BENBROOK ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504290008903 | $0.00 |
| CRAIG R. MCMILLEN AND NANCY R. MCMILLEN | PO BOX 118 NORTH, WASHINGTON, PA  16048, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035915 | $0.00 |
| CYNTHIA D SWITZER AND KEVIN E SWITZER W/H | 111 GREENHILL ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014133 | $0.00 |
| D. KEVIN WELLS AND TERESA L. WELLS | 2836 ONEIDA VALLEY RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309300028329 | $0.00 |
| DALE ANDREW RILEY & TANYA GREGOR RILEY | 234 WHITMIRE RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201312240035987 | $0.00 |
| DALE E AND ELMA A CUMBERLAND REV LIVING TRUST | 111 CALICO ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014158 | $0.00 |
| DALE F. FAIR AND JANET L. FAIR | 2412 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010346 | $0.00 |
| DALE F. GRIMM | 153 WASHINGTON STREET, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201712190027670 | $0.00 |
| DALE M. PENNINGTON AND VIVIAN L. PENNINGTON | 117 WHITMIRE RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201312240035910 | $0.00 |
| DALE R. NIGGEL | 883 SEVEN HILLS RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201701090000499 | $0.00 |
| DANA P. MOYSTER AND APRILLE M. MOYSTER | 2024 PLATEAU ST, PITTSBURGH, PA  15210, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201611210024518 | $0.00 |
| DANE E. FELTY & SANDRA E. HILLWIG | 145 WEILAND RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610180021739 | $0.00 |
| DANIEL A. AND LORA A. GREIL | 342 NAIL ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003903 | $0.00 |
| DANIEL CALL AND PATRICIA CALL | 117 KATIE WAY, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309300028351 | $0.00 |
| DANIEL E. GEIBEL AND BARBARA A. GEIBEL | 110 UP THE LANE, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201605200009787 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| DANIEL J MCGUIRE | 1426 KITTANNING PIKE, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019283 | $0.00 |
| DANIEL J. AND SANDRA D. CONNORS | 231 BEBOUT ROAD, VENETIA, PA 15367, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022647 | $0.00 |
| DANIEL J. AND TINA L. BEST | 429 ANNISVILLE ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007242 | $0.00 |
| DANIEL J. BEST AND TINA L. BEST | 429 ANNISVILLE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009093 | $0.00 |
| DANIEL L. WOLFE & LORI S. WOLFE | 411 FOXBURG RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201402180003516 | $0.00 |
| DANIEL S. HODGKISS | 114 TROUTMAN ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201608230017268 | $0.00 |
| DANIEL T. AND KATHY J. MILLER | 1016 E ELDORADO RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706260013323 | $0.00 |
| DANNY L. WOLFE & APRIL WOLFE | 407 FOXBURG RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201402180003515 | $0.00 |
| DARIN C. BALL & DANIELLE K. BALL | 13110 JONUS BOULEVARD, FORT WAYNE, IN  46845, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408290020549 | $0.00 |
| DARREL B. BLAUSER & MICHELLE L. BLAUSER | 199 SQUAW VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201509150020265 | $0.00 |
| DARREL BRYAN BLAUSER AND MICHELLE LYNN BLAUSER, H/ | 199 SQUAW VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031080 | $0.00 |
| DARRELL R. AND GAIL E. GONZALES | PO BOX 567, LAKEMORE, OH  44250, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001038 | $0.00 |
| DAVID A STRIEGEL & LISA M. STRIEGEL | 5103 COLLEGE ST, FINLEYVILLE, PA  15332, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032607 | $0.00 |
| DAVID A. & SHARON D. CRAMER | 186 ZION CHURCH RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610180021737 | $0.00 |
| DAVID A. OLENIC AND DIANE E. OLENIC | 246 GRANDVIEW BLVD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310280031054 | $0.00 |
| DAVID AND JUDITH A. HUBER ET AL | 126 PENTLAND AVENUE, PITTSBURGH, PA  15227, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201741219027673 | $0.00 |
| DAVID B MILLER AND DIANE E MILLER & MOLLY D MILLER | 1410 KITTANNING PIKE, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014142 | $0.00 |
| DAVID C. BAIRD AND CAROLYN H. BAIRD | 960 GLENWOOD DR, ATLANTA, GA  30316, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310110029630 | $0.00 |
| DAVID C. MCCANDLESS | 109 WINDY WAY LANE, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010338 | $0.00 |
| DAVID C. MEIER AND SANDRA K. MEIER | 109 WEST BREWSTER RD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309300028334 | $0.00 |
| DAVID C. SIBENAC & LAUREN R. SIBENAC | 2037 PITTVIEW AVE, PITTSBURGH, PA  15212, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311150032940 | $0.00 |
| DAVID C. SIBENAC & LAUREN R. SIBENAC | 2037 PITTVIEW AVE, PITTSBURGH, PA  15212, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311150032941 | $0.00 |
| DAVID E. KASMOCH & EDNA M. KASMOCH | 1081 S ATLANTIC AVE, COCOA BEACH, FL  32931, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401140001037 | $0.00 |
| DAVID E. KASMOCH & EDNA M. KASMOCH | 1081 S ATLANTIC AVE, COCOA BEACH, FL  32931, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #2013-007221 | $0.00 |
| DAVID E.MCFADDEN AND TRACIE A. MCFADDEN | 2929 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506010011530 | $0.00 |
| DAVID H. & SARA L. ELLENBERGER | 177 BUTTERNUT RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610200021960 | $0.00 |
| DAVID HELCH JR AND DANIELLE HELCH | 523 BUENA VISTA ROAD, CHIRCORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019293 | $0.00 |
| DAVID J. SHERMAN AND DONNA L. SHERMAN | 18540 RT 322, STRATTANVILLE, PA  16258, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311040031782 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| DAVID L. AND RHONDA ALWORTH | 1019 E ELDORADO RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706260013325 | $0.00 |
| DAVID L. BLAUSER AND DONNA F. BLAUSER | 371 COAL BANK ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408190019401 | $0.00 |
| DAVID L. CAMPBELL AND JENNIFER A. CAMPBELL | 109 SULLIVAN LANE, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506300014168 | $0.00 |
| DAVID L. CAMPBELL AND JENNIFER A. CAMPBELL | 109 SULLIVAN LANE, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201712190027677 | $0.00 |
| DAVID L. COLLIER | 740 SEVEN HILLS RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610180021741 | $0.00 |
| DAVID LAVERNE BLAUSER & DONNA F. BLAUSER | 371 COAL BANK ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022185 | $0.00 |
| DAVID M EHRMENTROUT | 241 MUSHRUSH ROAD, BUTLER, PA 16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808150016723 | $0.00 |
| DAVID M. AND KRISTINE A. ALWORTH | 117 W ELDORADO ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024935 | $0.00 |
| DAVID P. FRIES, JR. AND DEENA M. FRIES | 2504 ONEIDA VALLEY ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201205040012592 | $0.00 |
| DAVID RIDER AND SHERRY R RIDER | 161 BORO VU DRIVE, NORTHAMPTON, PA 18067, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER NORTH - Instrument #201710170022681 | $0.00 |
| DAVID VANCE SNYDER | 178 MURTLAND ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020267 | $0.00 |
| DAVID W. & TINA M. BREHM | 110 RIDER ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201411240028093 | $0.00 |
| DAVID W. DALEY | 103 TOWERVIEW DRIVE, BUTLER, PA 16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020280 | $0.00 |
| DAYNE A O'DONNELL AND AMBER C O'DONNELL | 122 CHERRY RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014137 | $0.00 |
| DEAN R SNOW | 367 E SLIPPERY ROCK STREET, PO BOX 3, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014145 | $0.00 |
| DEAN R. AND DEBRA J. FAIR | 334 BUENA VISTA ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803010003882 | $0.00 |
| DEAN V. BROWN & PATRICIA L. BROWN, ET AL | 1373 MAHOOD RD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201305030012889 | $0.00 |
| DEAN V. BROWN AND PATRICIA L. BROWN | 1373 MAHOOD RD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER SOUTH - Tax Parcel - 250-02F24-0000002B-0000 | $0.00 |
| DEAN V. BROWN AND PATRICIA L. BROWN | 1373 MAHOOD ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201203060006350 | $0.00 |
| DEBBIE PANCIONE | 112 LLONA COURT, STAFFORD, VA 22554, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201502170003285 | $0.00 |
| DEBORAH JEAN BAIRD | 140 STOOPS RD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310110029634 | $0.00 |
| DEBRA S. AND RANDY D. WILKINS | 2266 COUNTY ROAD 33, YUMA, CO 80759, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009094 | $0.00 |
| DELORES A. GIZIENSKI | 1532 MAHOOD RD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201312240035928 | $0.00 |
| DENISE L. MAINS | 6711 EMLENTON CLINTONVILLE ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001055 | $0.00 |
| DENISE M. ALTMIRE AND JENNIFER M. THOMAS | 2107 COPPER VALLEY ROAD, CREEKSIDE, PA 15732, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201806180011904 | $0.00 |
| DENNIS C. AND SANDRA L. GEIBEL | 250 HAZELNUT ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010088 | $0.00 |
| DENNIS C. KELLY | 175 HAYSVILLE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201411180027593 | $0.00 |
| DENNIS J. BAIRD | 410 NORTH WASHINGTON RD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309300028340 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| DENNIS N. AND KATHLEEN S. BROWN | 228 HAYSVILLE RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803070004336 | $0.00 |
| DENNIS N. AND KATHLEEN S. BROWN A/K/A KATHY BROWN | 228 HAYSVILLE RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803070004335 | $0.00 |
| DENNIS N. AND KATHLEEN S. BROWN ET AL | 228 HAYSVILLE RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803070004334 | $0.00 |
| DENNIS R. SULLIVAN AND SUZANN M. SULLIVAN | 113 WINDY WAY LANE, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010336 | $0.00 |
| DENNIS WAYNE AND DARLENE MAE MCCOLLOUGH | 1407 HOOKER RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803010003881 | $0.00 |
| DERRICK L. FEASER AND RACHELLE L. FEASER | 515 ASPEN ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201712190027661 | $0.00 |
| DIANE E. CLARK, NOW KNOWN AS DIANE E. KASMOCH, BY | PO BOX 184, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Tax Parcel - 020-01F45-00000014-0000 | $0.00 |
| DIANNA M. AND CHARLES J. PFENDER | 22 KUHN STREET, PITTSBURGH, PA  15211, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201710100022062 | $0.00 |
| DIANNE M. LASKY, SINGLE WOMAN | 7223 MIDDLE ROAD, MIDDLETOWN, VA  22645, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201501230001511 | $0.00 |
| DOLORES E. AND LESLIE E. HALL ET AL | 2155 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022652 | $0.00 |
| DON W. NEFF & LINDA J. NEFF | 111 BEACH ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408140019033 | $0.00 |
| DONA JEAN DEMPSEY | 136 SENECA DRIVE, APT. 235, SENECA, PA  16346, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024937 | $0.00 |
| DONALD C AND EDNA MAE NEFF | 411 W SLIPPERY ROCK ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010090 | $0.00 |
| DONALD E. CLARK AND SHELLEY L. CLARK | 111 WILDWOOD DRIVE, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309060026061 | $0.00 |
| DONALD E. YOUNG & ANDREA K. YOUNG | 2846 ONEIDA VALLEY RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311150032928 | $0.00 |
| DONALD EUGENE AND ROBIN ANN FAIR | 336 BUENA VISTA RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201804270008040 | $0.00 |
| DONALD GERBER | 5040 SARDIS ROAD, NEW KENSINGTON, PA  15068, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504130007561 | $0.00 |
| DONALD J. ACE & SHIRLEY P. ACE | 235 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401270001872 | $0.00 |
| DONALD J. VANLIEU AND LISA C. VANLIEU | 464 WEST ELDORADO RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401140001044 | $0.00 |
| DONALD L. ANGERT AND E. JANE ANGERT | 923 CENTER DR, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201305100013600 | $0.00 |
| DONALD P. FLEMING IRREVOCABLE TRUST | 54 SENECA DRIVE, GREENSBURG, PA  15601, USA | EM Energy Pennsylvania, LLC | ROAD ROW - BUTLER SOUTH - Instrument #201504210008191 | $0.00 |
| DONALD R. EILER AND JANICE EILER | 115 QUICK LN, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201403280006414 | $0.00 |
| DONNA L DAY-WRIGHT | 741 BRUIN RD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019319 | $0.00 |
| DONNA M. DARKOWSKI | 1108 ANNISVILLE ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408290020581 | $0.00 |
| DONNA V. BECKER | 200 GRANT STREET, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201608260017547 | $0.00 |
| DORINDA S. AND WILLIAM J. WHEELER | 396 MERCER ROAD, FRANKLIN, PA  16323, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024942 | $0.00 |
| DORIS A. RAYBURG | 416 SUMMIT STREET, GROVE CITY, PA  16127, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001058 | $0.00 |
| DOROTHY E. BURDICK AKA DOROTHY E. ANDERSON | 110 CRATTY LANE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201610310022863 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| DOROTHY J. NICHOL GRANTOR TRUST | 1416 OAK KNOLL DR, CINCINNATI, OH 45224, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201311040031795 | $0.00 |
| DOROTHY M. BLACK | 14918 EAST BLACK OAK STREET, WICHITA, KS 67230, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022180 | $0.00 |
| DOUG A. AND LINETTE R. HILLIARD | 677 FAIRVIEW ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201712190027672 | $0.00 |
| DOUG HILLIARD & LINETTE HILLIARD | 677 FAIRVIEW ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201111180028728 | $0.00 |
| DOUG MCANALLEN | 116 WEILAND ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201510070022167 | $0.00 |
| DOUGLAS ALAN RAABE AND SHERRY LYNN RAABE | 106 CHERRY RIDGE LN, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310280031078 | $0.00 |
| DOUGLAS AND THERESA MORROW | 1025 HOOKER ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010106 | $0.00 |
| DOUGLAS E. MCNAUGHTON & MARIE MCNAUGHTON | 303 ALLEGHENY CHURCH ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020271 | $0.00 |
| DOUGLAS J RANKIN AND BRENDA L RANKIN | 105 QUICK LANE, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015857 | $0.00 |
| DOUGLAS J. TURNER AND JANET V. TURNER | 781 ROBIN DRIVE, PITTSBURGH, PA 15220, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201501070000348 | $0.00 |
| DOUGLAS L. BAIRD AND NANCY K. BAIRD | 394 KYBER RUN CI, JOHNSTOWN, OH 43031, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310280031049 | $0.00 |
| DUENE R. DOUGLASS & DONNA B. DOUGLASS | 405 FOXBURG RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401270001871 | $0.00 |
| DUWAYNE L. BAIRD JR. | 423 NORTH WASHINGTON RD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201311040031806 | $0.00 |
| DWAYNE L PASKORZ, SINGLE | 2214 FREEPORT RD, NATRONA HEIGHTS, PA 15065, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015868 | $0.00 |
| EARNEST BOYD ALWORTH AND NANCY A. ALWORTH | 107 MAPLE FURNACE ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706260013324 | $0.00 |
| EARNEST BOYD AND NANCY A. ALWORTH | 107 MAPLE FURNACE ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022625 | $0.00 |
| EDWARD A. ALLEN | 1784 SAXONBURG BLVD APT 1, TARENTUM, PA 15084, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007249 | $0.00 |
| EDWARD A. MABLE AND AMY J. MABLE | 131 SAUL ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311220033485 | $0.00 |
| EDWARD C. BECK AND PATRICIA S. BECK | 127 CARTWRIGHT ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201506300014183 | $0.00 |
| EDWARD G. MCFARREN AND RITA MARQUERTA | 442 CHARLOTTE DRIVE, PITTSBURGH, PA 15236, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506300014172 | $0.00 |
| EDWARD LEMONT CRANMER | 324 CRANMER LANE, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019308 | $0.00 |
| EDWARD WAYNE FREEDLINE AND BARBARA ANN FREEDLINE | 115 WEED ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201502170003279 | $0.00 |
| ELIZABETH A. CARTWRIGHT | 176 CARTWRIGHT ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201411070026878 | $0.00 |
| ELIZABETH CRAWLEY | 5 MISTY LANE, GREENVILLE, SC 29615, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803230005408 | $0.00 |
| ELIZABETH JANE TITLEY | 123 LAKEVIEW DRIVE, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805100009110 | $0.00 |
| ELLIE SULLIVAN | 2257 BRANCHTON ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010334 | $0.00 |
| ELMER SCHERDER AND LOU SCHERDER | 352 SLATER RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311040031799 | $0.00 |
| ELSIE S. MCGARVEY | 2616 ONEIDA VALLEY ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201111020027021 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| EMILY E. MULLIGAN | 925 CENTRAL AVENUE EXTENSION, OIL CITY, PA  16301, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201710100022065 | $0.00 |
| ERIC J. STEGMAN & DENISE S. STEGMAN | 2433 ROLLING FARMS RD, GLENSHAW, PA  15116, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309300028319 | $0.00 |
| ERIC KLINE AND JUDI KLINE | 776 LARCHMONT ROAD, PITTSBURGH, PA  15052, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201712190027663 | $0.00 |
| ERNEST J. AND KAREN E. ENGEL | 1115 NORTH LEMON STREET, FULLERTON, CA  92832, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001060 | $0.00 |
| ERNEST R. CHIAPPINI & PATRICIA A. CHIAPPINI | 940 MERCER ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035971 | $0.00 |
| ESTATE OF CHRISGI A. HASENFLU, BY MICHAEL J. & DIR | 115 SHANAHAN ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408290020571 | $0.00 |
| ESTATE OF WALTER A. FISHER | 2800 CARDINAL DRIVE, ERIE, PA  16509, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201311130032610 | $0.00 |
| EUGENE A. KUSNER | 215 TROUTMAN RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610180021745 | $0.00 |
| EUGENE S. AND BETTY JANE DANIELS | 305 BOYDSTOWN ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022669 | $0.00 |
| EUGENE S. DANIELS & BETTY J. DANIELS | 305 BOYDSTOWN RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201002020002238 | $0.00 |
| EUGENE S. DANIELS & BETTY J. DANIELS | 305 BOYDSTOWN RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201105060010881 | $0.00 |
| FAY S. LOCK | 31 DELWARE STREET, ELLIJAY, GA  30540, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001039 | $0.00 |
| FLORENCE E. EARLY | 2203 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022165 | $0.00 |
| FRANK D GILLEN AND TAMMIE L GILLEN | 250 BLAIR RD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014136 | $0.00 |
| FRANK J. AND RENATE BLAIR | 279 HILLIARD ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803230005412 | $0.00 |
| FRANK J. PELKOFER JR. AND MELANIE J. PELKOFER | 990 HOOKER ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022689 | $0.00 |
| FRANK L. PASCOE AND BELINDA L. PASCOE, ETAL | 160 GRIM RD, VOLANT, PA  16156, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311040031808 | $0.00 |
| FRANK M. BROWN, JR. AND LINDA M. BROWN | 114 BROWN LN, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201305100013608 | $0.00 |
| FRANK M. BROWN, JR. AND LINDA M. BROWN | 114 BROWN LN, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201211280034251 | $0.00 |
| FRANK R. PAPCIAK | PO BOX 206, IRWIN, PA  15642, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020276 | $0.00 |
| FRANK ROSS AND MARGARET E. ROSS | 156 MCJUNKIN RD, BOYERS, PA  16020, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #200503140005956 | $0.00 |
| FRANK THEODORE AND PAULA G SMITH | 2387 ONEIDA VALLEY ROAD, PO BOX 164, NORTH WASHINGTON, PA  16048, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019318 | $0.00 |
| FRANK W. HINES, NOW BY: JAMES AND LORI BLAUSER | 138 MCKEE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035929 | $0.00 |
| FRED C. KRAUSE, III & ANDREA G. KRASUE | 14516 WILLIAM CARR LANE, CENTREVILLE, VA  20120, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027584 | $0.00 |
| FRED R. HOFFMANN AND CAROL ANN HOFFMANN | 112 FERGUSON LANE, VALENCIA, PA  16059, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309300028324 | $0.00 |
| FREDERICK D CALLIHAN AND MICHELE MILLIRON CALLIHAN | 1460 OMARA ROAD, WESTMINSTER, MD  21157, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201708170017514 | $0.00 |
| FREDERICK G. HAEFNER AND LINDA J. HAEFNER | 345 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201412170029926 | $0.00 |
| FREDERICK L. AND MARTHA I. RUPP | 264 HAZELNUT ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010098 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| FREDERICK M. EMIGH AND LALANDA M. STROMP | 3629 WM FLYNN HWY, SLIPPERY ROCK, PA  16057, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310230030589 | $0.00 |
| FREDERICK P. WOOD AND JAMIE R. BOYLE | 401 ANNISVILLE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706260013320 | $0.00 |
| GAIL L. EAKIN | 1534 TERWILLIGER ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201710100022066 | $0.00 |
| GARDEN SCAPE INC. | PO BOX 184, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309060026053 | $0.00 |
| GARRETT J. & DIANE R. STAHOVIAK | 876 HOOKER RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201611030023154 | $0.00 |
| GARY A. PAVLO | 22 MORENO POINT RD #5, DESTIN, FL  32541, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201305030012830 | $0.00 |
| GARY A. PEDEN | BOX 363, LYMAN, WY  82937, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010331 | $0.00 |
| GARY C. RANKIN AND TRACY M. RANKIN | 149 RIDGE DR, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201410290026032 | $0.00 |
| GARY C. RANKIN AND TRACY M. RANKIN | 149 RIDGE DR, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201410290026031 | $0.00 |
| GARY E. BOWSER AND VIRGINIA L. BOWSER | 108 BOWSER ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408290020579 | $0.00 |
| GARY G. GRAFTON AND CYNTHIA L. GRAFTON | 2946 ONEIDA VALLEY RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201709110019487 | $0.00 |
| GARY J. WULFF AND CINDY L. WULFF | 128 WHITMIRE RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #200703060005150 | $0.00 |
| GARY KEVIN BELLES AND JENIFER ANN BELLES | 116 FAIRVIEW ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201712190027675 | $0.00 |
| GARY L. BALL | 123 BALL LANE, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201510070022160 | $0.00 |
| GARY L. BERKLEY | 725 THREE DEGREE ROAD, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201109190022420 | $0.00 |
| GARY LEE THOMPSON AND NAOMI P. THOMPSON | 222 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201403280006421 | $0.00 |
| GARY M. WHITTINGTON | 308 YOUNG AVENUE, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020285 | $0.00 |
| GARY PAVLO | 22 MORENO POINT RD #5, DESTIN, FL  32541, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201704110007594 | $0.00 |
| GARY R. AND PENNY L. MOURER | 354 CHERRY ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201806180011914 | $0.00 |
| GARY R. WALKER JR. & NADIA M. WALKER | 228 GREEN LANE, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610200021963 | $0.00 |
| GARY W. MULLEN | 750 SEVEN HILLS ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #0 | $0.00 |
| GENE A. AND LINDA J. WIRTH | 2166 GEORGE ST., NORTH HUNTINGTON, PA  15642, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022675 | $0.00 |
| GENE A. WIRTH AND LINDA J. WIRTH | 2166 GEORGE STREET, NORTH HUNTINGDON, PA  15642, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201605190009663 | $0.00 |
| GEORGE A. AND ARLENE B. SAYE | 753 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201806110011362 | $0.00 |
| GEORGE ALLEN WEED AND PATRICIA ANN WEED | 44 NORTH ROAD, PALMETTO, FL  34221, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310110029632 | $0.00 |
| GEORGE ALLEN WEED, JR. AND PATRICIA ANN WEED | 44 NORTH ROAD, PALMETTO, FL  34221, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201505150010327 | $0.00 |
| GEORGE BURKE | 302 RED BUD ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610200021969 | $0.00 |
| GEORGE J. AND MICHELLE R. CURL | 1137 ANNISVILLE ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003900 | $0.00 |
| GEORGE L. AND THERESA M. CARR | 1307 MAPLE AVENUE, VERONA, PA  15147, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007223 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| GEORGE R. AND PAULA MAE BLAIR | 1362 PORT SHELDON, JENISON, MI  49429, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009098 | $0.00 |
| GEORGE R. AND PAULA MAR BLAIR | 3051 OTTAWA AVE SW, GRANDVIEW, MI  49418, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022684 | $0.00 |
| GEORGE R. JAMISON AND JOANNE M. JAMISON, ETAL | 107 STONEY HILL DR, FOLSOM, CA  95630, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035932 | $0.00 |
| GEORGE T. MCQUISTION, AS POA,  ELEANOR MCQUISTION | 163 SLIPPERY ROCK CREEK ROAD, HARRISVILLE, PA  16038, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201502170003286 | $0.00 |
| GERALD E. DAY AND SANDRA J. DAY | 118 DUNKLE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201406270014602 | $0.00 |
| GERALD G BEACH AND JANET M BEACH | 3406 TAMARIND DRIVE, EDGEWATER, FL  32141, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015844 | $0.00 |
| GERALD J. AND KEVIN P. HARTNETT | 37 GOPHER GAP LANE, WHITE HAVEN, PA  18661, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201712040026515 | $0.00 |
| GERALD L. HOLBEN AND TAMARA J. HOLBEN | 930 HOOKER RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201704110007597 | $0.00 |
| GERALD R. CAMPBELL AND KAREN E. CAMPBELL | 138 BOYDSTOWN RD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201210240030621 | $0.00 |
| GERALD R. FESTER AND EILEEN H. FESTER, HW | 325 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201410290026033 | $0.00 |
| GERALDINE K. GUTKOWSKI | 420 SPENCER AVENUE, PITTSBURGH, PA  15227, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009100 | $0.00 |
| GERLAD L. HOLBEN AND TAMARA J. HOLBEN | 930 HOOKER RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610200021958 | $0.00 |
| GINO PASCAZI AND SHERI PASCAZI | 169 OLD EAST BUTLER ROAD, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201204200010966 | $0.00 |
| GLENDA J. ROZZO, ETAL | 7310 BEACON HILL DR., PITTSBURGH, PA  15221, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310230030588 | $0.00 |
| GLENN A. & JUDITH M. MILLER ET AL | 604 HOOKER ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201604280008055 | $0.00 |
| GLENN A. MILLER ET AL | 604 HOOKER RD., WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER SOUTH - Instrument #201710170022678 | $0.00 |
| GLENN A. MILLER, DIVORCED | 105 BEECH ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018341 | $0.00 |
| GLENN R. GROSS AND CAROLE R. GROSS | 770 TRALER DRIVE, BETHAL PARK, PA  15102, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201505150010333 | $0.00 |
| GRANT CHANCELLOR | 15606 N. 174TH AVENUE, SURPRISE, AZ  85388, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022178 | $0.00 |
| GRANT M RIDER AND MELISSA A RIDER | 161 BORO VU DRIVE, NORTHAMPTON, PA  18067, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER NORTH - Instrument #201710170022683 | $0.00 |
| GREGG D RIDER AND KATHIE A RIDER | 161 BORO VU DRIVE, NORTHAMPTON, PA  18067, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022684 | $0.00 |
| GREGORY A. MCELHATTEN, ET AL | 63 BIESKI LANE, WAPWALLOPEN, PA  18660, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027582 | $0.00 |
| GREGORY A. SMITH | 114 BELL AVENUE, PO BOX 13, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201510020021820 | $0.00 |
| GREGORY D. ZOZULA AND RHONDA S. ZOZULA | 35 STOLLAR RD, CLAYSVILLE, PA  15323, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201307310022322 | $0.00 |
| GREGORY J. COOPER AND TAMMY L. COOPER | 116 DUNKLE RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312060034481 | $0.00 |
| GREGORY J. PAUMIER & MARY T. PAUMIER | 254 WHITMIRE ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408140019026 | $0.00 |
| GREGORY L. FITZGERALD | 5419 MILL STREET, ERIE, PA  16509, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803230005409 | $0.00 |
| GREGORY P. HATFIELD AND CYNTHIA P. HATFIELD | 310 STONELEDGE DRIVE, PITTSBURGH, PA  15235, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201412170029925 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| GREGORY P. SCHMID & ANDREA A. SCHMID | 204 OLD STATE ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201409260023139 | $0.00 |
| GUY E. JOHNSON AND EVANGELINE JOHNSON | 272 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311220033510 | $0.00 |
| HAROLD B. BURDICK | 110 CRATTY LANE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #2016103100022862 | $0.00 |
| HAROLD J. SCHNEIDER | 217 HILLTOP CIRCLE, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022694 | $0.00 |
| HAROLD L. BLAIR | 119 DUSTY LANE, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009097 | $0.00 |
| HAROLD L. BLAIR | 119 DUSTY LANE, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022666 | $0.00 |
| HARRY E. CRATTY AND EMMA A. CRATTY | 286 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #200809220021573 | $0.00 |
| HARRY JAMES LEIGHTON AND JOAN B. LEIGHTON & R | 109 GRAHAM RD, KITTANNING, PA  16201, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201405230011374 | $0.00 |
| HARRY JAMES LEIGHTON ET AL | 102 SHROYER MILL ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022635 | $0.00 |
| HARRY L. ALCORN | 2753 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018343 | $0.00 |
| HARRY WILSON INNES | 645 5TH STREET, OAKMONT, PA  15139, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201203020005930 | $0.00 |
| HAZEL E. VOGEL | 3729 RICH VALLEY RD, EMPORIUM, PA  15834, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310230030587 | $0.00 |
| HAZEL M. CRAWLEY | 41 SIBLEY AVE, TORONTO, ON  M4C 5E8, CAN | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812130025219 | $0.00 |
| HELEN L. BROWN | 153 OAKWOOD DR, DAYTONA BEACH, FL  32117, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201407280017411 | $0.00 |
| HENRY G. HORWITZ, INDIVIDUALLY, AND AS CO-TRUSTEE | 651 WEST WASHINGTON ST, CHICAGO, IL  60661, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201404110007691 | $0.00 |
| HENRY HAYES MEURER | 5 MISTY LANE, GREENVILLE, SC  29615, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001042 | $0.00 |
| HENRY J. AND SUSAN J. DUCKSTEIN | 910 HOOKER ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201902150002828 | $0.00 |
| HENRY J. AND SUSAN J. DUCKSTEIN | 910 HOOKER ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201902150002827 | $0.00 |
| HENRY J. AND SUSAN J. DUCKSTEIN | 910 HOOKER ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201902150002826 | $0.00 |
| HENRY J. DUCKSTEIN AND SUSAN J. DUCKSTEIN | 910 HOOKER ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201407110015789 | $0.00 |
| HENRY J. DUCKSTEIN AND SUSAN J. DUCKSTEIN | 910 HOOKER ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201410140024606 | $0.00 |
| HOPE D WINKOWSKI AND KEITH S WINKOWSKI W/H | 109 GREENHILL ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015869 | $0.00 |
| HOWARD D. AND ELLEN L. PISOR | 133 HUGHES ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003889 | $0.00 |
| HOWARD J. & ARMELLA G. MCELHENY | 524 MCELHENY RD, GLENSHAW, PA  15116, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201608230017260 | $0.00 |
| HOWARD J. NORMAN II | 222 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035906 | $0.00 |
| INDEPENDENT MOUNTAIN MEN LIVING HISTORY SOCIETY | PO BOX 841, SAXONBURG, PA  16056, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027579 | $0.00 |
| J. M. BEATTY FURNITURE, INC. | 2780 ONEIDA VALLEY RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031006 | $0.00 |
| JACK A. FRY & BONNIE D. FRY | 253 ZION CHURCH ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201510070022184 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| JACK D. THOMPSON AND ROSALIE A. THOMPSON | 2407 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504290008904 | $0.00 |
| JACK D. THOMPSON AND ROSALIE A. THOMPSON | 2407 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER NORTH - Instrument #201905100008412 | $0.00 |
| JACK MICHAEL AYALA AND MAUREEN AYALA | 3775 WAPELLO ST, PITTSBURGH, PA  15212, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014146 | $0.00 |
| JAMES A. SLATER & LINDA L. SLATER | 116 OLD STATE ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201409120021784 | $0.00 |
| JAMES AND JANET MARIE O'ROURKE | 337 ASPEN ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201801170001061 | $0.00 |
| JAMES C. & PATRICIA A. FLEEGER | 108 FLEEGER LN, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610180021747 | $0.00 |
| JAMES C. AND KATHRYN S. BAKER | 246 ADAMS DRIVE, BELLE VERNON, PA  15012, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805100009099 | $0.00 |
| JAMES C. AND PATRICIA A. FLEEGER | 108 FLEEGER LN, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201806180011905 | $0.00 |
| JAMES D. FETTERMAN AND TRUDY A. MCDONALD | 295 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027591 | $0.00 |
| JAMES E. BLAUSER & LORI L. BLAUSER | 138 MCKEE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201201240002165 | $0.00 |
| JAMES E. DAVIS, III AND MONICA S. DAVIS | 822 SEVEN HILLS ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201508190018325 | $0.00 |
| JAMES E. PHILLIPS | PO BOX 3480, OIL & GAS DEPT, OMAHA, NE  68103, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201307310022324 | $0.00 |
| JAMES E. RIEGER AND SUZIE L. RIEGER | 156 BOYDSTOWN RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310220030450 | $0.00 |
| JAMES H HOWELL AND LINDA L HOWELL | 620 DOC WALKER RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019271 | $0.00 |
| JAMES J. LOMBARDI & ROSEMARY S. LOMBARDI | 3875 SAXONBURG BLVD., CHESWICK, PA  15024, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201205040012585 | $0.00 |
| JAMES L. KUSNER AND BEVERLY A. KUSNER | 1223 HOOKER ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201506160012822 | $0.00 |
| JAMES L. PAPKE AND TITANIA A. PASHKOV | PO BOX 144, SLIGO, PA  16255, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009095 | $0.00 |
| JAMES L. SCOTT AND MARIE L. SCOTT | 101 RUSTIC WOODS, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018340 | $0.00 |
| JAMES L. THOMPSON AND LINDA M. THOMPSON | 1582 MAHOOD ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201112130031040 | $0.00 |
| JAMES L. WAGNER | 1261 HOOKER RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610200021966 | $0.00 |
| JAMES L. ZANELLA | PO BOX 252, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310280031056 | $0.00 |
| JAMES LEE MEYER AND JOYCE MARIE MEYER | 573 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201511090024858 | $0.00 |
| JAMES M. MCDONNELL | 876 STATE ROUTE 130, TRAFFORD, PA  15085, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310110029639 | $0.00 |
| JAMES P. VONDREY | 2425 EDGEBROOK AVENUE, PITTSBURGH, PA  15226, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201203280008536 | $0.00 |
| JAMES R FRAZER AND PATRICIA ANN FRAZER | 394 CHERRY ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014124 | $0.00 |
| JAMES R. AND BARBARA J. ALLEN | 1157 E ELDORADO ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007253 | $0.00 |
| JAMES R. CHAMBERS AND VIRGINIA L. CHAMBERS | 405 SW CESSNA COURT, LAKE CITY, FL  32025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504290008909 | $0.00 |
| JAMES R. JACKSON AND ETHAN F. JACKSON, AS TENANTS | 150 PARKER RD, SARVER, PA  16055, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201403280006418 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| JAMES R. JAMISON, JR. AND NANCY S. JAMISON | 2737 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201206060016196 | $0.00 |
| JAMES R. SULLIVAN & HELEN F. SULLIVAN | 2235 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201206060016208 | $0.00 |
| JAMES T FAIR | 218 W. SLIPPERY ROCK ST, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201810020020151 | $0.00 |
| JAMES T. AND JANET M. O'ROURKE | 337 ASPEN ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201801170001050 | $0.00 |
| JAMES W. AND JOYCE WHITMIRE | 200 MORRIS RD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007234 | $0.00 |
| JAMIE L. BURK | 4028 KITTANING PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506010011528 | $0.00 |
| JANET D. EVANS | 308 FLACK ST, PITTSBURGH, PA  15210, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035927 | $0.00 |
| JANET G. GIBSON | PO BOX 21, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201804270008034 | $0.00 |
| JANET L. MURRAY, ET AL, FORMERLY MARIAN G. MURRAY | 1094 HOOKER ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309060026050 | $0.00 |
| JANET RACHEL WOLFE | 424 CHEROKEE DR, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309300028343 | $0.00 |
| JANET ZIPF | 23 BUTLER STREET, MILLVALE, PA  15209, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504290008905 | $0.00 |
| JANICE L. VOGEL | 1603 SANTA FE TRAIL DRIVE, SAN ANTONIO, TX  78232, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001044 | $0.00 |
| JARROD P SANKEY AND CHRISTINA M SANKEY | 2072 BRANCHTON RD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014152 | $0.00 |
| JASON A. WETZEL & STEPHANIE A. WETZEL | 202 CARTWRIGHT ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201411070026882 | $0.00 |
| JASON CRAIG AND KATIE L CRAIG | 4600 43RD AVE SOUTH, MINNEAPOLIS, MN  55406, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015846 | $0.00 |
| JASON M. SAELER & KIMBERLY J. SAELER | 2736 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201204240011281 | $0.00 |
| JASON P. EHRMAN | 780 BEAVER DAM ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201205290015278 | $0.00 |
| JAY D. EILER AND TRACIE L. EILER | 2135 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201406270014601 | $0.00 |
| JAY D. MOHN AND DENISE E. MOHN | 242 SPRUCE ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020293 | $0.00 |
| JEAN M. BESTER | 150 BOYDSTOWN RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310280031058 | $0.00 |
| JEFF FORINGER AND SONIA FORINGER | 120 GREENHILL ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015859 | $0.00 |
| JEFFERY L. AND KATHERINE L. GROVES | 269 HAZELNUT ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010085 | $0.00 |
| JEFFERY L. MYERS & SUSAN L. MYERS | 2146 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201112060030178 | $0.00 |
| JEFFREY A. AND MICHELLE L. DAVIS | 1012 E ELDORADO ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706260013321 | $0.00 |
| JEFFREY A. AND SHARON L. HOLT | 431 HILLIARDS ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007240 | $0.00 |
| JEFFREY A. AND SHARON L. HOLT | 431 HILLIARDS ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022650 | $0.00 |
| JEFFREY AND CINDY RAE MACTAGGART | 119 ASPEN RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803010003885 | $0.00 |
| JEFFREY B. BROWN AND LISA J. BROWN | 101 MOUNTAIN LAUREL DR, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201304150010776 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| JEFFREY B. BROWN AND LISA J. BROWN | 101 MOUNTAIN LAUREL DR, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201304150010777 | $0.00 |
| JEFFREY B. SHIVELY AND PAMELA G. SHIVELY | 1311 HOOKER RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201704110007596 | $0.00 |
| JEFFREY E. CRESS AND JOHN N. CRESS | 307 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311150032925 | $0.00 |
| JEFFREY G. WOOD | 445 DAUBENSPECK ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706050011682 | $0.00 |
| JEFFREY L. & CAROLYN COFFIN | 310 KERRY COURT, CRANBERRY, PA  16066, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201607190014505 | $0.00 |
| JEFFREY L. AND BELINDA KIHN | 2382 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201806180011907 | $0.00 |
| JEFFREY P. AND DENA M. HUTCHISON | 173 HAZELNUT RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805100009111 | $0.00 |
| JEFFREY SINZ AND DIANNE SINZ | 110 SPRING HOLLOW LANE, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014144 | $0.00 |
| JEFFREY W. HILLWIG & CINDY L. HILLWIG | 956 MAPLE FURNACE RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035941 | $0.00 |
| JEFFREY WALTERS | 106 RUSTIC WOODS ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020290 | $0.00 |
| JENNIFER A. AND RYAN J. CALLENDER | 2949 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001047 | $0.00 |
| JENNIFER MARIE DANIELS-WELLS & JOHN DAVID WELLS, H | 126 HENLEY DR, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035942 | $0.00 |
| JENNIFER S AND SHYLE FULLER, HER HUSBAND | 141 OLD BRICK ROAD, HILLARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019294 | $0.00 |
| JEREMY DEAL AND RENEE WALKER | 2964 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007233 | $0.00 |
| JERRY & PAMALA STEINER | 201 PARSONVILLE ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010330 | $0.00 |
| JERRY A. LOWERS, A SINGLE MAN | 322 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027585 | $0.00 |
| JERRY W WIENAND AND CAROL J WIENAND | 108 LYNDON LANE, BADEN, PA  15005, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808150016729 | $0.00 |
| JESSE A. RAABE AND HELENC. RAABE | 139 KEMAR DR, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310220030442 | $0.00 |
| JOAN BENGE NEIGHBORS | 4327 BRIAR RIDGE ROAD, ENID, OK  73703, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804270008031 | $0.00 |
| JOAN BIRCH FISER | 1399 HOOKER RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201704110007595 | $0.00 |
| JOAN C. BALL | 106 OLD STATE ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408140019075 | $0.00 |
| JOAN CAROLE MACKAY BUNDY | 2320 NORTH NORDICA #310, CHICAGO, IL  60707, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022671 | $0.00 |
| JOAN CAROLE MACKAY BUNDY | 879 JEFFERSON DRIVE, PALMYRA, VA  22963, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201111180028706 | $0.00 |
| JOAN GIBSON | 618 CREST LANE, MURRYSVILLE, PA  15668, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027581 | $0.00 |
| JOE E. LONDON AND REBECCA F. LONDON | 4048 KITTANNING PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504130007562 | $0.00 |
| JOEL A. & PATRICIA M. MANN | 860 SEVEN HILLS ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610200021970 | $0.00 |
| JOEL RODERICK AND SHIRLEY MACKAY | 155 STEWART DRIVE, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022672 | $0.00 |
| JOEL RODERICK MACKAY AND SHIRLEY S. MACKAY | 155 STEWART DRIVE, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201111020026987 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| JOHN A. BARKLEY AND RUTH ANN BARKLEY | 322 CLARK RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201304150010785 | $0.00 |
| JOHN A. STARKS, BY KARIN R. SHOOK POA | 11 WAGON WHEEL LANE, ELLIJAY, GA  30536, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009090 | $0.00 |
| JOHN B. PHILLIPS | 110 EAST WARRINGTON AVENUE, PITTSBURGH, PA  15210, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022623 | $0.00 |
| JOHN BRUCE CRAIG | 145 COLLEGE AVE, ELIZABETHTOWN, PA  17022, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015851 | $0.00 |
| JOHN BUSS AND SHERRY BUSS | 309 POWHATAN COURT, STAFFORD, VA  22556, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201502170003284 | $0.00 |
| JOHN C. CLYDE AND KAREN C. CLYDE | 101 SHAWNEE LANE, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408190019398 | $0.00 |
| JOHN C. LEE III, MSSP | 12169 BROOKS ROAD, MEADVILLE, PA  16335, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035923 | $0.00 |
| JOHN CHUPKA, ETAL | 309 CHICORA RD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201305030012826 | $0.00 |
| JOHN CLIFFORD AND MILDRED JANE KELLY | 228 HILLIARD ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805230010084 | $0.00 |
| JOHN D. & SARAH DELLICH | 2234 BRANCHTON RD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201607190014467 | $0.00 |
| JOHN D. ADAMS | 2060 TWIN SIX LN, DUMFRIES, VA  22026, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201501200001164 | $0.00 |
| JOHN D. BOOFER | 107 TAYLOR ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022176 | $0.00 |
| JOHN E. AND ROBIN L. POPINSKI | 93 LAKE DAWN ROAD, PORT ANGELES, WA  98362, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022665 | $0.00 |
| JOHN E. AND SHARON J. OGDEN | 603 CALAIS DRIVE APT 2111, PITTSBURGH, PA  15237, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201709220020656 | $0.00 |
| JOHN E. KARNES AND JUDY A. KARNES | 209 MCKEES RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201707270015826 | $0.00 |
| JOHN E. KARNES AND JUDY A. KARNES | 209 MCKEES RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310110029648 | $0.00 |
| JOHN E. SHERMAN | 104 BOYDSTOWN RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201312240035943 | $0.00 |
| JOHN FRANK CHAMBERS AND JOYCE EILEEN CHAMBERS | 159 SQUAW VALLEY RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311040031788 | $0.00 |
| JOHN I. BAIRD AND GERALDINE C. BAIRD | 541 SUNSET DR, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309300028341 | $0.00 |
| JOHN J DORBEN AND JOANNE E POPE-DORBEN | 130 DROOD LANE, PITTSBURGH, PA  15237, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808270017547 | $0.00 |
| JOHN J. AND CATHY L. BAUMGARD | 615 RUSSELL ROAD, ENON VALLEY, PA  16120, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201801170001049 | $0.00 |
| JOHN J. AND TARRA L. BOPP | 1896 LES ROBINSON ROAD, COLUMBIA, TN  38401, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201712190027668 | $0.00 |
| JOHN J. DERUNK & PATRICIA J. DERUNK | 3891 ASH DR, ALLISON PARK, PA  15101, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #200910290025603 | $0.00 |
| JOHN J. DERUNK & PATRICIA J. DERUNK | 3891 ASH DR, ALLISON PARK, PA  15101, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #200910290025604 | $0.00 |
| JOHN J. DERUNK, SR. & PATRICIA J. DERUNK | 3891 ASH DR, ALLISON PARK, PA  15101, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309060026047 | $0.00 |
| JOHN J.AND TARA L. BOPP | 1896 LES ROBINSON ROAD, COLUMBIA, TN  38401, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803010003876 | $0.00 |
| JOHN KUSS, A SINGLE MAN | 4478 BIRCHWOOD LANE, ALLISON PARK, PA  15101, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010329 | $0.00 |
| JOHN L, ANITA C., AND JAMES L. ZANELLA | 989 ONEIDA VALLEY ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022690 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| JOHN L. AND ANITA C. ZANELLA | PO BOX 252, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201506160012821 | $0.00 |
| JOHN L. AND KAREN A. MCCARRIER | 170 EVANS ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506300014173 | $0.00 |
| JOHN L. ZANELLA AND ANITA C. ZANELLA ET AL | PO BOX 252, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201704110007598 | $0.00 |
| JOHN LAUGHERY & ROBERT LAUGHERY | 14991 ADARA RD, NORTH HUNTINGDON, PA  15642, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035934 | $0.00 |
| JOHN MCNANY & DONNA MCNANY | 122 OLD STATE ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408290020500 | $0.00 |
| JOHN N. CRESS AND JEFFERY E. CRESS | 307 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311150032934 | $0.00 |
| JOHN RALPH BURKETT SR. | 1107 ONEIDA VALLEY RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201311040031785 | $0.00 |
| JOHN ROBERT BOYER AND MICHELLE DAWN BOYER | 297 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027590 | $0.00 |
| JOHN ROSENBERG AND DORIS ROSENBERG | 331 BRUIN ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808150016734 | $0.00 |
| JOHN S. KLECHA JR. AND CAROLE L. KLECHA | PO BOX 172, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007245 | $0.00 |
| JOHN V ROB AND SALLY D ROB | 20202 CRISTOFORO PLACE, VENICE, FL  34293, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014131 | $0.00 |
| JOHN W. MCCAY JR. | 524 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022168 | $0.00 |
| JON MILLER AND THERESA MILLER | 2251 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020269 | $0.00 |
| JOSEPH A. SULLIVAN AND TERRI L. SULLIVAN | 137 HUGHES ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506010011532 | $0.00 |
| JOSEPH C. FABER AND REBECCA A. FABER | 1622 BROOKLINE BOULEVARD, PITTSBURGH, PA  15226, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201406170013327 | $0.00 |
| JOSEPH D CAROTHERS | 242 WEILAND ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014134 | $0.00 |
| JOSEPH D. AND DYANE KEITH BRATKOVICH ET AL | 4015 NIGHTINGALE DRIVE, VALENCIA, PA  16059, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803010003879 | $0.00 |
| JOSEPH G. GRAF | 780 DOTTERER ROAD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311220033499 | $0.00 |
| JOSEPH L. CAFEO AND DIANNE M. CAFEO | 436 SAPPHIRE WAY, PITTSBURGH, PA  15224, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201410290026035 | $0.00 |
| JOSEPH M. LEVIER, A SINGLE MAN | 509 BUENA VISTA ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408290020577 | $0.00 |
| JOSEPH M. SCHMIDT & JUNE I. SCHMIDT | 2830 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201203230008045 | $0.00 |
| JOSEPH R. STEFANACCI | 172 TIMBER LANE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805230010093 | $0.00 |
| JOSEPH R. STEFANACCI ET AL | 172 TIMBER LANE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805230010092 | $0.00 |
| JOSEPH THOMA AND AIMEE MILLER | 117 SUNSET LANE, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014147 | $0.00 |
| JOSEPH W. NEFF & PENNY J. WEAVER | PO BOX 53, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018352 | $0.00 |
| JOSHUA G. MELLETTE | 700 NORTH FLAMINGO DRIVE, HOLLY HILL, FL  32117, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001037 | $0.00 |
| JOSHUA L. SULLIVAN AND KRYSTAL E. SULLIVAN | 141 HUGHES ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506010011529 | $0.00 |
| JOYCE CONNOR | 101 OLD STATE ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201505150010345 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| JOYCE E. AND JOHN W. BAIRD | 132 MOORE ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805230010094 | $0.00 |
| JOYCE S. COOPER | 155 HARPER ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022685 | $0.00 |
| JUDI S. VANO | 239 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310110029638 | $0.00 |
| JUNELE A. BLACK | 959 E. KENSINGTON LANE, STREETSBORO, OH  44241, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801090000516 | $0.00 |
| JUSTIN L. STROUP, MARRIED | 328 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201410290026030 | $0.00 |
| KANDY I PFLUGH AND FREDERICK  F PFLUGH | 2018 ONEIDA VALLEY ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015873 | $0.00 |
| KARA L. WOOD AND KYLE E. WOOD, W&H | 503 BUENA VISTA RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610200021968 | $0.00 |
| KAREN E. AUGUSTYN | 2633 LOS ARCOS CIRCLE, THOUSAND OAKS, CA  91360, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201801170001059 | $0.00 |
| KAREN MILASINCIC AND RHONDA JEWART, POAS | 1426 AVENUE N - 1/2, GALVESTON, TX  77550, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER SOUTH - Tax Parcel - 250-02F24-00000004-0000 | $0.00 |
| KAREN S. LINDENBERGER | 204 TROUMAN ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201608230017266 | $0.00 |
| KAREN T. MCCLELLAN & RALPH L. MCCLELLAN JR. | 28 FRUITTREE ROAD, LEVITTOWN, PA  19056, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411260028346 | $0.00 |
| KARIN R. AND JAMES J. SHOOK | 11 WAGON WHEEL LANE, ELLIJAY, GA  30536, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003887 | $0.00 |
| KARLA M. ANGERT-MCEACHIN & PAUL A. MCEACHIN | 1511 MAHOOD ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #200810290024320 | $0.00 |
| KARMA AND FRANK L. BREEDLOVE | 14 JANES STREET, JEFFERSONVILLE, OH  43128, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201806180011911 | $0.00 |
| KATHERINE SCHERDER | 261 HAZELNUT ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010089 | $0.00 |
| KATHLEEN DENNISON | 121 SAYER STREET, BROOKVILLE, PA  15825, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411260028345 | $0.00 |
| KATHLEEN E. SELFRIDGE | 243 REDBUD ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201510070022177 | $0.00 |
| KATHLEEN M. DAVIS & MARK S. DAVIS | 1444 SARVER ROAD, WORTHINGON, PA  16262, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201409120021821 | $0.00 |
| KBH RESOURCES, LLC, BY: KEITH B. HARVEY | 1139 ONEIDA VALLEY RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310110029649 | $0.00 |
| KEITH A SAY | 276 WEILAND ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015854 | $0.00 |
| KEITH A. CHOFF | 101 SPRINGVIEW LANE, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408290020548 | $0.00 |
| KEITH D. CORNETTI | 2138 BRANCHTON RD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035926 | $0.00 |
| KEITH D. PEINDL AND KATHERINE M. PEINDL | 2779 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020282 | $0.00 |
| KEITH G. MILLER & JOLOYN B. MILLER | 1423 ONEIDA VALLEY ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408220019838 | $0.00 |
| KELLEY AND KIM D. ARMSTRONG | 110 BOWSER ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201712040026513 | $0.00 |
| KELLEY ARMSTRONG AND KIM D. ARMSTRONG | 110 BOWSER ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201409300023469 | $0.00 |
| KENNETH A. & PAULINE F. SKOMO | PO BOX 182, NORTH WASHINGTON, PA  16048, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201608120016454 | $0.00 |
| KENNETH A. AND PAULINE F. SKOMO | PO BOX 182, NORTH WASHINGTON, PA  16048, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022648 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| KENNETH A. AND PAULINE SKOMO | PO BOX 182, NORTH WASHINGTON, PA  16048, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022649 | $0.00 |
| KENNETH C. HESPENHEIDE | 137 HEPLER RD, SARVER, PA  16055, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803010003878 | $0.00 |
| KENNETH E CLAYPOOLE AND RUTH I CLAYPOOLE | 503 W SLIPPERY ROCK ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180860015867 | $0.00 |
| KENNETH F. & JOAN TEJCHMAN | 231 TROUTMAN RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610180021743 | $0.00 |
| KENNETH L. AND TERESA MONTIEL-RASP | 829 NORTH WASHINGTON ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022695 | $0.00 |
| KENNETH L. MCKEE JR. AND JUNE L. MCKEE | PO BOX 34, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309060026055 | $0.00 |
| KENNETH L. MCKEE JR. AND JUNE S. MCKEE | PO BOX 34, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031077 | $0.00 |
| KENNETH P. BAITS, JR. AND BETH ANN BAITS | 116 PLEASANTVIEW DRIVE, MCMURRAY, PA  15317, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010328 | $0.00 |
| KENNETH P. BAITS, SR. | 132 DOUBLETREE DRIVE, VENETIA, PA  15367, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504130007557 | $0.00 |
| KENNETH R CHIAPPINI AND ALEXANDRA CHIAPPINI | 210 EAST SLIPPERY ROCK STREET, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201810020020154 | $0.00 |
| KENNETH R TACK JR AND B MAXINE TACK | 2243 CHICORA ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019287 | $0.00 |
| KENNETH R. AND HELEN M. TUPPER | 38 ROXBURY RD, PITTSBURGH, PA  15221, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009116 | $0.00 |
| KENNETH R. AND RUTH A. BOWSER | 250 MOUNT PLEASANT ROAD, WARRENDALE, PA  15086, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001052 | $0.00 |
| KENNETH V. & MARIE A. STROUP | 623 CHERRY RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201611030023153 | $0.00 |
| KENNETH W. FULKERSON AND ANGIE M. FULKERSON | 275 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201501200001165 | $0.00 |
| KEVIN J. CAMPBELL AND JANET E. CAMPBELL | 1027 E ELDORADO RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201707060014241 | $0.00 |
| KEVIN L. SR. AND LISA M. BOWSER | 1038 BUTLER ROAD, KITTANNING, PA  16201, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003886 | $0.00 |
| KEVIN R. AND LYNN M. PATTISON | 2102 MERCER BUTLER PIKE, GROVE CITY, PA  16127, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007238 | $0.00 |
| KIM MURRAY | 1094 HOOKER ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201608260017546 | $0.00 |
| KIMBERLY M.& MARTIN FALMLEN | 115 BEACH ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201608230017264 | $0.00 |
| KIRBY LITZENBERG | 1734 ONEIDA VALLEY RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201409300023466 | $0.00 |
| KRISTY L. HERSHEY | 1025 HOOKER ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010102 | $0.00 |
| KRYSTAL S. KING AND MICHAEL S. WEISENSTEIN | 826 SEVEN HILLS ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018331 | $0.00 |
| KYLIE T HUTCHINS AKA KYLIE T DAVIS & JOSHUA DAVIS | 6807 ERINDALE DRIVE, REYNOLDSBURG, OH  43068, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808150016724 | $0.00 |
| KYM M. BRINKLEY | 2811 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022173 | $0.00 |
| LANE T. BREISCH | 131 FOXBURG ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201707270015827 | $0.00 |
| LARRY A. & KIMBERLY A. SEYBERT | 251 REDBUD ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201609130018786 | $0.00 |
| LARRY A. THOMPSON AND DARCY L. THOMPSON | 961 ONEIDA VALLEY ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201201200001786 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| LARRY BRADEN FELIX ET AL | 235 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007252 | $0.00 |
| LARRY CRATTY AND CHARLOTTE CRATTY | 167 MCKEES ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309060026051 | $0.00 |
| LARRY DALE YOUNG | 315 SLATER ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201708310018657 | $0.00 |
| LARRY E JACK AND SHARON S JACK | 3101 KENSINGTON COURT, RENFREW, PA  16053, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014132 | $0.00 |
| LARRY J. RUDOLPH & DIANE M. RUDOLPH | 2883 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408220019871 | $0.00 |
| LARRY KORTYNA | 108 LOVE ROAD, VALENCIA, PA  16059, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024940 | $0.00 |
| LARRY L. BAIRD | 216 RIDGEDALE WAY, LAWRENCEVILLE, GA  30044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201311150032923 | $0.00 |
| LARRY L. LUMLEY JR. AND BRENDA G. LUMLEY | 322 BUENA VISTA RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201804170007246 | $0.00 |
| LARRY L. SHOUP AND JANICE K. SHOUP | 707 NORTH RIVERVIEW DRIVE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505803 | $0.00 |
| LARRY LEE MURPHY AND KAREN MURPHY | 3608 WILDERNESS BOULEVARD W, PARRISH, FL  34219, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015841 | $0.00 |
| LARRY M. BALL | 1203 ONEIDA VALLEY ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201210160029775 | $0.00 |
| LARRY STOCKLIN AKA LARRY G STOCKLIN | 152 ZION CHURCH ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014123 | $0.00 |
| LARRY T. AND SHARI L. MCCALL | PO BOX 302, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506160012824 | $0.00 |
| LAUREN L. KINCAID | 8481 FARM GATE PATH, CICERO, NY  13039, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504290008910 | $0.00 |
| LAURENCE S. LEHERE AND PAMELA J. LEHERE | 202 BOYDSTOWN RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310280031001 | $0.00 |
| LAURIE ANNE AND JOHN L. WILMES | 2415 GILMORE STREET, NEW CASTLE, PA  16102, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003893 | $0.00 |
| LAVERNE B. JOHNSTON | 221 BYRON CENTER RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309060026046 | $0.00 |
| LAWRENCE E LAGUT | PO BOX 62, TROY, TX  76579, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022632 | $0.00 |
| LAWRENCE E. EAKIN AND CAROLYN A. EAKIN | 739 HENDERSON STATION ROAD, STONEBORO, PA  16153, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001033 | $0.00 |
| LAWRENCE E. LAGUT | PO BOX 62, TROY, TX  76579, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408290020576 | $0.00 |
| LAWRENCE R. FARRINGTON | 120 GARVER AVE., PO BOX 224, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408190019405 | $0.00 |
| LAWRENCE R. FARRINGTON | 120 GARVER AVE., PO BOX 224, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201701090000493 | $0.00 |
| LAWRENCE R. FARRINGTON, A SINGLE MAN | 120 GARVER AVE., PO BOX 224, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201407250017212 | $0.00 |
| LAWRENCE R. FARRINGTON, A SINGLE MAN | 120 GARVER AVE., PO BOX 224, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201407250017209 | $0.00 |
| LAWRENCE R. FARRINGTON, ET AL | 120 GARVER AVE., PO BOX 224, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201407250017214 | $0.00 |
| LAWRENCE R. FARRINGTON, ET AL | 120 GARVER AVE., PO BOX 224, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201409160022071 | $0.00 |
| LAWRENCE R. FARRINGTON, ET AL | 120 GARVER AVE., PO BOX 224, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201407250017213 | $0.00 |
| LAWRENCE R. MILLER AND PAULA J. MILLER | 181 SPILLWAY LANE, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201406270014593 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| LEE D. AND CHARLOTTE L. SUNDBERG | 482 SAND ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706260013319 | $0.00 |
| LELAND H. WALTERS & ESTHER WALTERS | 2243 BRANCHTON ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201204240011266 | $0.00 |
| LENNY D. PORTER AND CATHERINE N. PORTER | 832 SEVEN HILLS RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201508190018329 | $0.00 |
| LEONARD J. AND ROBYN L. SYBERT | 110 FIR ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201806180011909 | $0.00 |
| LEONARD K. KELLERMAN AND BARBARA E. KELLERMAN | 337 EAST MAIN ST, EAU CLAIRE, PA 16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035913 | $0.00 |
| LEROY J. BAPTISTE JR. & DENA A. BAPTISTE | 1446 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201502020002261 | $0.00 |
| LESLEY F. MCGREGOR AND DAVID M. MCGREGOR, W/H | 1071 ANNISVILLE RD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031041 | $0.00 |
| LESLIE P. KING AND ROBIN L. KING | 163 CHRISTIE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER SOUTH - Instrument #20170170022656 | $0.00 |
| LESLIE P. KING AND ROBIN L. KING | 163 CHRISTIE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER SOUTH - Instrument #2017010170022663 | $0.00 |
| LESLIE P. KING AND ROBIN L. KING | 163 CHRISTIE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER SOUTH - Instrument #2017010170022655 | $0.00 |
| LINDA & THOMAS HILLIARD ET AL | 176 CARTWRIGHT ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201410300026135 | $0.00 |
| LINDA ALLISON | 2236 BRANCHTON ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509140020186 | $0.00 |
| LINDA D GUNTRUM AND WILLIAM A GUNTRUM W/H | 187 ROHRBACH ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015877 | $0.00 |
| LINDA S. AND KEVIN L. MCCANN | 443 HIGHLAND AVENUE, PITTSBURGH, PA 15229, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007248 | $0.00 |
| LINDSAY M. ENSCOE | 671 FAIRVIEW ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201206060016202 | $0.00 |
| LISA A. WHITE | 19901 MASTENBROOK PL, MONTGOMERY VILLAGE, MD 20886, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201305030012831 | $0.00 |
| LISA D. HOFFMAN | 191 ZION CHURCH ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201605200009786 | $0.00 |
| LLEUELLYN F. MCGINNIS | 1647 TOWNSHIP ROAD 655, ASHLAND, OH 44805, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201206060016258 | $0.00 |
| LONNIE W. FELIX AND SANDRA S. FELIX | 2649 ONEIDA VALLEY RD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201311040031787 | $0.00 |
| LORETTA J SMITH REV LIVING TRUST DATED 9/19/2014 | 511 6TH AVE, CARNEGIE, PA 15106, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015861 | $0.00 |
| LOUIS V. AND DEBORAH A. KAMINSKI | 106 CHERRY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201806180011908 | $0.00 |
| LUKE RAMSTEAD | 5302 E. COURTNEY AVENUE, CASTLE ROCK, CO 80104, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022182 | $0.00 |
| L'VONNE RICHERT & KENNETH RICHERT, W/H | 1157 LINKS WAY, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311150032924 | $0.00 |
| LYNDA C. BROWN | 2499A ESQUE SHARP ROAD, MOUT PLEASANT, TN 38474, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901220001188 | $0.00 |
| LYNNE M. NIGGEL-CONROE AND MARK F. CONROE | 50 JANNEY LANE, FREDERICKSBURG, VA 22406, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201211280034249 | $0.00 |
| MARC S. LUTZ AND HEATHER LUTZ | 220 DODDS RD, BUTLER, PA 16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311150032944 | $0.00 |
| MARGARET A. BURKETT | 1103 ONEIDA VALLEY RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201211280034254 | $0.00 |
| MARGARET A. BURKETT | 1103 ONEIDA VALLEY RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201112130031020 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| MARGARET RUTH COVERT | 668 TEETER ROAD, LITTLESTOWN, PA 17340, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020273 | $0.00 |
| MARGARET RUTH COVERT & MARY C. CURRY | 668 TEETER ROAD, LITTLESTOWN, PA 17340, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020274 | $0.00 |
| MARIA C. INNES | 121 EDGEMEADE DRIVE, MONROEVILLE, PA 15146, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201203020005944 | $0.00 |
| MARK A. & DIANE L. MCGARVEY | 2101 BRANCHTON ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201601060000291 | $0.00 |
| MARK ALLEN BARR, ET AL | 297 PARKER PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201501200001163 | $0.00 |
| MARK AND MARTHA A. PFLUGH | 556 CHICORA RD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803010003904 | $0.00 |
| MARK C. & ADRIENNE R. CHALMERS | 126 MCKEE ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201511090024863 | $0.00 |
| MARK C. SYMCOX | 3125 SPRING LAKE DRIVE, BEDFORD, TX 76021, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022183 | $0.00 |
| MARK C. TABAKA, MSSP AND DARLENE F. TABAKA, MSSP | 102 WEST LITTLEWOOD ST, PITTSBURGH, PA 15223, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032609 | $0.00 |
| MARK CURRY | 3528 34TH STREET APT. 1B, ASTORIA, NY 11106, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022164 | $0.00 |
| MARK E. ENDLISH AND ELAINE P. ENDLISH | 507 W SLIPPERY ROCK ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014155 | $0.00 |
| MARK T. STEWART & JUDITH C. STEWART | 1675 ONEIDA VALLEY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408220019807 | $0.00 |
| MARLA A. REDICK | 1457 MAHOOD RD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201301300003258 | $0.00 |
| MARSHA MURPHY AKA MARSHA BURCH AND LLOYD BURCH | 2171 FIRESTONE WAY, LOUISVILLE, CO 80027, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015842 | $0.00 |
| MARSHALL J. MARTIN, SSP AND DEBRA A. MARTIN, SSP | 4001 STATE ROUTE 73 WEST, WILIMINGTON, OH 45177, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010343 | $0.00 |
| MARSHALL J. MARTIN, SSP AND DEBRA A. MARTIN, SSP | 4001 STATE ROUTE 73 WEST, WILIMINGTON, OH 45177, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018335 | $0.00 |
| MARSHALL J. MARTIN, SSP AND DEBRA A. MARTIN, SSP | 4001 STATE ROUTE 73 WEST, WILIMINGTON, OH 45177, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010340 | $0.00 |
| MARSHALL J. MARTIN, SSP AND DEBRA A. MARTIN, SSP | 4001 STATE ROUTE 73 WEST, WILIMINGTON, OH 45177, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506010011526 | $0.00 |
| MARTHA S. SCHLOTTACH | 1715 QULLIAN AVENUE, PUEBLO, OH 81005, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804270008027 | $0.00 |
| MARY A. ERKENS, A SINGLE WOMAN | 4437 OAKDALE RD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201403140005345 | $0.00 |
| MARY ANN HASENFLU AND C.R. HASENFLU | 302 EMLENTON STREET, PO BOX 216, ST. PETERSBURG, PA 16054, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408190019400 | $0.00 |
| MARY BETH TRUVER | 1163 MARS EVANS CITY RD, MARS, PA 16046, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311220033501 | $0.00 |
| MARY E. SUTTON | 503 ONEIDA VALLEY RD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310220030443 | $0.00 |
| MARY K. AND SEAN K. DAVIDSON | 3109 CLEAR CREEK ROAD, ELLIJAY, GA 30536, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003897 | $0.00 |
| MARY M. STERRETT | 1862 FARM TRAIL, SANIBEL, FL 33957, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201311040031796 | $0.00 |
| MARY S ALLEN ET AL | 443 HIGHLAND AVENUE, PITTSBURGH, PA 15229, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014148 | $0.00 |
| MATTHEW B. SYMCOX | 9509 FOX HILL DRIVE, FORT WORTH, TX 76131, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022179 | $0.00 |
| MATTHEW J. AND AMANDA L. AMBROSE | 430 DAUBENSPECK ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706260013326 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| MATTHEW P THURNER AND KATHRYN G THURNER | 273 HILLIARD ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019292 | $0.00 |
| MATTHEW R. ALBERT & TRACY L. ALBERT | 313 PARKER PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201501230001513 | $0.00 |
| MATTHEW W. JAMISON & JENNIFER JAMISON | 2721 ONEIDA VALLEY ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201204240011267 | $0.00 |
| MAX A. WEEKS | 124 KREGAR LANE, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201111020027001 | $0.00 |
| MAXINE RICHARDSON, A SINGLE WOMAN | 193 CROUSE ROAD, GRAYSVILLE, PA 15337, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401270001892 | $0.00 |
| MCCREA HOLDINGS, LLC | 176 WOODVIEW RD WEST, GROVE, PA 19390, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #200806120013189 | $0.00 |
| MELVIN G. AND HEIDI M. SCHEERBAUM | 560 NORTH WASHINGTON ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER NORTH - Instrument #201710170022696 | $0.00 |
| MICHAEL A. PAGA | 261 BLAIR ROAD, BOX 34, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201811190023517 | $0.00 |
| MICHAEL A. SIBENAC, JR. & MARGARET A. SIBENAC | 710 SKYVIEW DR, CRANBERRY TOWNSHIP, PA 16066, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311150032942 | $0.00 |
| MICHAEL AND DIRA G. HASENFLU | 115 SHANAHAN RD., BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022633 | $0.00 |
| MICHAEL AND DIRA G. HASENFLU | 115 SHANAHAN RD., BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022631 | $0.00 |
| MICHAEL C. & CYNTHIA L. MORRISON | 1357 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201502170003350 | $0.00 |
| MICHAEL C. MILES AND ANDREA M. MILES | 601 CAMERON ROAD, NEW CASTLE, PA 16101, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201409160022074 | $0.00 |
| MICHAEL D. BRADLEY AND LINDA F. BRADLEY | 274 FOXBURG RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031081 | $0.00 |
| MICHAEL D. WOKUTCH AND NINA M. IVERSEN | 521 ASPEN ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201712190027669 | $0.00 |
| MICHAEL E. AND CARA A. HENRY A/K/A CARA ANN HENRY | 1246 KITTANING PIKE, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805100009114 | $0.00 |
| MICHAEL E. JEWART AND HEATHER D. JEWART | 107 RIDER ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201514007022166 | $0.00 |
| MICHAEL F. AND STEPHANIE LYNN LEWIS | 500 EASTON ROAD, HERMITAGE, PA 16148, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803230005417 | $0.00 |
| MICHAEL FRADY & NICOLE RETHAGE & VERGIL&CONNIE FRA | 451 PARKER PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015849 | $0.00 |
| MICHAEL G BRULA BY SHANE T HELCH AS AGENT | 407 BUENA VISTA ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019323 | $0.00 |
| MICHAEL G SMITH AND SANDRA D SMITH | 1313 MERRYFIELD ST, PITTSBURGH, PA 15204, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015876 | $0.00 |
| MICHAEL J. EILER AND LINDA C. EILER | 1104 ANNISVILLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024943 | $0.00 |
| MICHAEL J. ELLIOTT AND RITA M. ELLIOTT | 108 RUSTIC WOODS ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020291 | $0.00 |
| MICHAEL J. GRONER | 4965 EMLENTON-CLINTONVILLE ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018349 | $0.00 |
| MICHAEL J. HASENFLU AND DIRA G. HASENFLU | 115 SHANAHAN ROAD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408190019402 | $0.00 |
| MICHAEL J. KOEHLER AND SUSAN M. KOEHLER | 5474 OLD NC HWY 49, ASHBORO, NC 27205, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812130025218 | $0.00 |
| MICHAEL J. METRICK | 343 RED BUD ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201608230017267 | $0.00 |
| MICHAEL JOHNSTON AND TRACEY JOHNSTON | 896 VICTORY CHURCH RD, FRANKLIN, PA 16323, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201403280006426 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| MICHAEL L. AND AMY S. MANUEL | 530 ASPEN ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803230005413 | $0.00 |
| MICHAEL M. STEELE JR. | 938 HOOKER RD., WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201902150002828 | $0.00 |
| MICHAEL M. STEELE, JR. AND KAY S. STEELE | 938 HOOKER ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201504290008916 | $0.00 |
| MICHAEL P. JOHNSTON AND TRACEY B. JOHNSTON, E | 238 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201405230011367 | $0.00 |
| MICHAEL PAUL JOHNSTON AND TRACEY B. JOHNSTON, | 18540 RTE 322, STRATTANVILLE, PA  16258, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311040031791 | $0.00 |
| MICHAEL R. AND TIFFANY JO CHRISTIE | 1036 ANNISLIDE RD., PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022645 | $0.00 |
| MICHAEL R. BARNHART | 103 CARTWRIGHT ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010103 | $0.00 |
| MICHAEL R. CHRISTIE AND TIFFANY JO CHRISTIE | 1036 ANNISLIDE RD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309060026058 | $0.00 |
| MICHAEL R. MILLER AND CARLA L. MILLER | 126 COVEWOOD DRIVE, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201409160022082 | $0.00 |
| MICHAEL R. WHITE & DENISE M. WHITE | 736 SEVEN HILLS ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201510070022175 | $0.00 |
| MICHAEL RICHARD & MARSHA L. RICHARD | 139 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312060034485 | $0.00 |
| MICHAEL RUCKDESCHEL AND AMANDA R. RUCKDES | 151 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311040031804 | $0.00 |
| MICHAEL T. AND RACHAEL M. TILKO | 108 WALKER DRIVE, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201707060014239 | $0.00 |
| MICHAEL W. CLIFFORD AND DEBORAH A. CLIFFORD | 513 JAY STREET, SEBASTIAN, FL  32958, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504290008908 | $0.00 |
| MICHELE E. MAUTHE | 148 WASHINGTON STREET, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504290008912 | $0.00 |
| MICHELLE R. CLARK & PATRICK K. CLARK | 100 VALLEY ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408290020555 | $0.00 |
| MILDRED C. MARTERELLA | 372 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311040031797 | $0.00 |
| MILDRED E DELOST | 265 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015879 | $0.00 |
| MIRIAM MCCASLIN | PO BOX 303, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201406170013323 | $0.00 |
| MORROW FARM, LLC, BY ARTHUR L. MORROW | 326 CLARK RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201109230022969 | $0.00 |
| MYRON P. GREENERT & DIANE J. GREENERT | 2641 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201407140016072 | $0.00 |
| NANCY J. AND JAMES S. OLSON | 1688 WOODRIDGE CIRCLE, HICKORY, NC  28602, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007236 | $0.00 |
| NANCY J. KARCH | 359 BONNIEBROOK ROAD, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201711140024939 | $0.00 |
| NANCY J. WELSH AND MICHAEL J. WELSH SR. | 238 INDEPENDENCE WAY, SEWICKLEY, PA  15143, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201301300003249 | $0.00 |
| NANCY L. CAHALL GROVES & RICHARD L. GROVES | 1622 ONEIDA VALLEY ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201503230005857 | $0.00 |
| NANCY L. CAMPBELL | 1117 ONEIDA VALLEY RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310220030451 | $0.00 |
| NAOMI L. WAGNER & JOSEPH WAGNER | 175 CARTWRIGHT ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201411070026877 | $0.00 |
| NEW SALEM CEMETERY ASSOCIATION, INC. | 2737 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018353 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| NICK FOLINO AND ENRICO D. ARZENTI, HIS NEWPHEW, SU | 176 CRESTVIEW DR, PITTSBURGH, PA 15236, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201402180003513 | $0.00 |
| NICOLE M. SKOGMAN | 521 PRAIRIE CREEK DRIVE, DELANO, MN 55328, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201502170003283 | $0.00 |
| NORMA J. MILLER | 1275 HOOKER ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201409160022073 | $0.00 |
| NORMA J. PRITTS | 280 W. ELDORADO ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706050011679 | $0.00 |
| NORMAN C. PATTISON | 213 WEST ELM STREET, TITUSVILLE, PA 16354, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007239 | $0.00 |
| NORMAN F. AND ELAINE E. MILLER | 145 FIR ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019315 | $0.00 |
| NORMAN S. GREER | 249 PARKER PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007235 | $0.00 |
| NORRIS R. AND WANDA E. ELTZROTH | 2665 BROAD STREET, BETHEL PARK, PA 15102, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009101 | $0.00 |
| OREN T. KERN & NICHOLLE D. KERN | 107 RUSTIC WOODS ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510020021819 | $0.00 |
| OTIS L. AND DOREEN L. PENNINGTON | 1053 EAST ELDORADO ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001045 | $0.00 |
| OTTO N. SCHIBERL & VICTORIA S. WHITMER, ET AL | PO BOX 83, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020283 | $0.00 |
| PAMELA E. AND NORMAN L. BYRD | 2684 CANAL ROAD NE, DOVER, OH 44622, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003906 | $0.00 |
| PATRICIA BRUCKER BY POA DANIEL BREWER | 188 VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022676 | $0.00 |
| PATRICIA EDWARDS AND THOMAS EDWARDS | 703 W POPLAR STREET, GROVE CITY, PA 16127, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020279 | $0.00 |
| PATRICIA EDWARDS AND THOMAS EDWARDS | 703 W POPLAR STREET, GROVE CITY, PA 16127, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020279 | $0.00 |
| PATRICIA EDWARDS AND THOMAS EDWARDS | 703 W POPLAR STREET, GROVE CITY, PA 16127, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201406170013324 | $0.00 |
| PATRICIA L PARKER AND WARREN E PARKER | 120 SPRUCE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019314 | $0.00 |
| PATRICK E. BUTLER | 430 SAND ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201707060014243 | $0.00 |
| PATRICK J MOHN AND GINA M MOHN | 844 NORTH WASHINGTON RD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808015001619 | $0.00 |
| PATRICK J. MARRON & LISA M. MARRON | 1363 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201410140024615 | $0.00 |
| PATRICK L. POWERS AND LESLIE A. POWERS | 231 CLARK ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201202240005276 | $0.00 |
| PATRICK LOVETT AND A. LUCINDA BAIRD | 36 BELL ST, QUINCY, MA 02169, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309060026063 | $0.00 |
| PATRICK T. HARREL AND PATRICIA A. HARRELL | 2909 ONEIDA VALLEY ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018344 | $0.00 |
| PAUL D. BAIRD AND JOYCE K. BAIRD | 500 RIVERVIEW, DR NATCHEZ, LA 71456, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310220030453 | $0.00 |
| PAUL D. LEWANDOWSKI AND CARA C. LEWANDOWSKI | 140 ENGLISH ROAD, WEXFORD, PA 15090, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408290020570 | $0.00 |
| PAUL E DUNLAP | 117 GREENHILL ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014126 | $0.00 |
| PAUL E. DORR AND PAULA DORR | 139 APPLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201409160022075 | $0.00 |
| PAUL E. ENSCOE & JAMIE SUE ENSCOE | 2399 ONEIDA VALLEY ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018345 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| PAUL HERRIN & JULIE BROWN HERRIN | 13437 TYLER AVENUE, CLEVELAND, OH  44111, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020263 | $0.00 |
| PAUL J. AND DEBORAH K. SAMEK | 2172 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001046 | $0.00 |
| PAUL L. GLADD AND MARCI LYNN GLADD | 153 COTTAGE AVENUE, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201302280006096 | $0.00 |
| PAUL R. WALTER AND CHRISTINE L. WALTER | 410 S. CRISSWELL ROAD, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201712190027665 | $0.00 |
| PAUL SWIATEK AND KATHLEEN SWIATEK | 114 DRESHMAN LN, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401140001047 | $0.00 |
| PAULA KAY AND MERLE E. TERRY SR. | 5355 ROUTE 474, ASHVILLE, NY  14710, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009113 | $0.00 |
| PEGGY J. AND ROBERT A. SPICHER | 3730 W 32ND STREET, ERIE, PA  16506, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001057 | $0.00 |
| PENNSYLVANIA-AMERICAN WATER COMPANY | PO BOX 822192, PHILADELPHIA, PA  19182, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201401140001040 | $0.00 |
| PETER D. AD MICHELLE R. BEST | 1044A E ELDORADO ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007243 | $0.00 |
| PETER J. EURY & PAULA H. EURY | 1512 ONEIDA VALLEY ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408140019030 | $0.00 |
| PHILIP R KRAUSE | 116 PHILLIPS LANE, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014139 | $0.00 |
| PHILLIP HARRISON WAIN | 816 SAXONBURG ROAD, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201210160029781 | $0.00 |
| PHILLIP J. AND KATHY A. DORR | 645 CENTER DR, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803070004339 | $0.00 |
| PHYLLIS D DODD | 107 MAGNOLIA ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808150016722 | $0.00 |
| R.E. GAS DEVELOPMENT, LLC | 366 WALKER DRIVE, STATE COLLEGE, PA  16801, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201503310006520 | $0.00 |
| R.E. GAS DEVELOPMENT, LLC. | 366 WALKER DRIVE, STATE COLLEGE, PA  16801, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201608090016071 | $0.00 |
| RALPH E. GRAHAM | 12 BEDIN AVENUE, LYNDORA, PA  16045, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022637 | $0.00 |
| RALPH E. GRAHAM | 12 BREDIN AVENUE, LYNDORA, PA  16045, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201111180028671 | $0.00 |
| RALPH STEPHAN HUTCHINS AND KATHLEEN HUTCHINS | 6795 E CALLE LA PAZ, #8202, TUCSON, AZ  85715, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015843 | $0.00 |
| RALPH X. HOFFMANN AND MARLEEN HOFFMANN | 161 SUGAR VALLEY LN, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031067 | $0.00 |
| RANDAL G. SMITH | 2320 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201608180016961 | $0.00 |
| RANDALL G. AND PAMELA J. SMITH ET AL | 100 MAY LANE, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022659 | $0.00 |
| RANDALL G. AND PAMELA J. SMITH ET AL | 100 SLY LANE, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022658 | $0.00 |
| RANDALL J. ROCK SR. & KIMBERLY J. ROCK | 160 CARTWRIGHT ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408220019820 | $0.00 |
| RANDOLPH C. AND VIRGINIA L. NEFF | 165 CARTWRIGHT ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010105 | $0.00 |
| RANDY L. MORRISON & KIMBERLY A. MORRISON | 1291 BIG BEND ROAD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035945 | $0.00 |
| RAYMOND L. AND PEGGY D. FRIEND | 419 W SLIPPERY ROCK ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805100009106 | $0.00 |
| RAYMOND T. STIGLITZ & LINDA M. STIGLITZ | 896 VICTORY CHURCH RD, FRANKLIN, PA  16323, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020272 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| RAYMOND W. MONG AND PAIGE L. MONG | 2933 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506160012823 | $0.00 |
| REBECCA A YOUNG | 582 WEST SLIPPERY ROCK ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201807160014138 | $0.00 |
| REBECCA JAMISON | 2686 ONEIDA VALLEY RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201305100013597 | $0.00 |
| REGAL ROBERT MOBREY ET AL | 209 VENEZE DRIVE, PITTSBURGH, PA  15205, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022657 | $0.00 |
| REGIS H. KOSICK AND DIANE B. KOSICK | 2803 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018338 | $0.00 |
| RENEE K. EAKIN | 136 LAWRENCE AVE, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803230005415 | $0.00 |
| REX D. HAEFNER AND BEVERLY E. HAEFNER | 251 WHITAKER WAY, HOMESTEAD, PA  15120, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506300014170 | $0.00 |
| REX E. WALTER AND PAMELA K. WALTER | 133 SQUAW VALLEY RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201306260018698 | $0.00 |
| REX E. WALTER AND PAMELA K. WALTER | 133 SQUAW VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201805230010079 | $0.00 |
| RICHARD A. AND ELIZABETH F. DAY | 263 FORSYTHE ROAD, MARS, PA  16046, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022651 | $0.00 |
| RICHARD A. MCNANY AND ANN M. MCNANY | 305 EMLENTON ST ST., PETERSBURG, PA  16054, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035922 | $0.00 |
| RICHARD B LOWERS, DAVID L LOWES & DANIEL M ROXBU | 329 ALLEGHENY CHURCH ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015845 | $0.00 |
| RICHARD BLAUSER REVOCABLE TRUST | 109 DUNKLE RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032571 | $0.00 |
| RICHARD BLAUSER REVOCABLE TRUST | 109 DUNKLE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | SURFACE USE AGREEMENT - BUTLER NORTH - Instrument #201712200027763 | $0.00 |
| RICHARD BLAUSER REVOCABLE TRUST | 109 DUNKLE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022636 | $0.00 |
| RICHARD D. & CAROL L. CHRISTIE | 113 RIDER ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201505080009736 | $0.00 |
| RICHARD F. BLAUSER TRUST | 109 DUNKLE RD #3, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #200905140010122 | $0.00 |
| RICHARD G. ULANOSKY | 104 RUSTIC WOODS ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020275 | $0.00 |
| RICHARD H. KING AND MERIBETH KING | 6 CHRISTLER ST, PITTSBURGH, PA  15223, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312060034458 | $0.00 |
| RICHARD H. SMITH ET AL | 2320 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022660 | $0.00 |
| RICHARD J. BLAUSER & DIANE BLAUSER | 135 SIGNOR LANE, VERONA, PA  15147, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401270001877 | $0.00 |
| RICHARD J. BLAUSER AND DIANE BLAUSER | 135 SIGNOR LN, VERONA, PA  15147, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032569 | $0.00 |
| RICHARD J. GORDON, BY POA LYNN A. WALLEN | 1222 SOUTH 15TH STREET, MANITOWOC, WI  54220, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022159 | $0.00 |
| RICHARD J. HOCKENBERRY | 2645 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201305100013601 | $0.00 |
| RICHARD L. BAIRD | 356 NORTH WASHINGTON RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309300028337 | $0.00 |
| RICHARD L. CARSON | 174 PARKER ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020287 | $0.00 |
| RICHARD L. CARSON | 174 PARKER ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201205290015273 | $0.00 |
| RICHARD L. GEIBEL AND BEVERLY A. GEIBEL | 145 BEACH ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201608230017265 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| RICHARD L. HILLWIG AND MARILYN J. HILLWIG | 267 ZION CHURCH ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201508190018327 | $0.00 |
| RICHARD M. RUCKDESCHELL | 433 SLATER ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027588 | $0.00 |
| RICHARD R. ALTMAN AND LOIS M. ALTMAN | 211 PARSONVILLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010339 | $0.00 |
| RICHARD W. ALTMAN AND KAREN E. ALTMAN | 133 CLARK ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201508190018328 | $0.00 |
| RICHARD W. FARRINGTON AND ALICE R. FARRINGTON | 824 FOXBURG ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201407250017210 | $0.00 |
| RICHARD W. FARRINGTON AND ALICE R. FARRINGTON | 824 FOXBURG ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201407250017211 | $0.00 |
| RICHARD W. SCHMIDT & BARBARA D. SCHMIDT | 105 RUSTIC WOODS ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020295 | $0.00 |
| RICHARD W. WAGNER AND KATHLEEN WAGNER | 3884 SHERWOOD AVE, ALLISON PARK, PA 15101, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031008 | $0.00 |
| RICKIE L. SULLIVAN & LYNNE A. SULLIVAN | 157 WINDY WAY LANE, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201205290015253 | $0.00 |
| RITA G. MILLER | 106 BEECH ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201508190018339 | $0.00 |
| ROBERT A. AND KATHRYN A. WERTZBERGER | 105 BAYBERRY COURT, MCMURRAY, PA 15317, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201202070003523 | $0.00 |
| ROBERT A. PEARCE AND RHONDA L. PEARCE | 3741 ONEIDA VALLEY ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201408190019399 | $0.00 |
| ROBERT A. THOMAS | 171 OLD ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201806180011903 | $0.00 |
| ROBERT B. BLAUSER AND MARIANNE T. BLAUSER | 33815 HALEY RD, WALLER, TX 77484, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311220033493 | $0.00 |
| ROBERT BOBACK AND AMY BOBACK | 5705 80TH STREET, N., 310, ST. PETERSBURG, FL 33709, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201712190027662 | $0.00 |
| ROBERT BRUCE AND BEVERLY M. PERRY | 359 W. WASHINGTON STREET, BRADFORD, PA 16701, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001041 | $0.00 |
| ROBERT C. & SHERRY Y. STILLWAGON | 218 TROUTMAN ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408140019077 | $0.00 |
| ROBERT D. AND DEBORAH J. SAPER | 1501 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022677 | $0.00 |
| ROBERT D. GRINNIK & TERRY L. GRINNIK | 119 SUNBURY RD, SLIPPERY ROCK, PA 16057, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035969 | $0.00 |
| ROBERT D. GUNTRUM & RITA GUNTRUM | 2215 BRANCHTON ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201203230008039 | $0.00 |
| ROBERT E. BARCLAY | 447 WEST ELDORADO RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311220033480 | $0.00 |
| ROBERT E. BARCLAY | 447 WEST ELDORADO RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031057 | $0.00 |
| ROBERT E. MORRIS AND DONNA K. MORRIS | 249 BRYAN ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER SOUTH - Tax Parcel - 110-03F08-00000019-0000 | $0.00 |
| ROBERT E. STONE & FREDA B. STONE | 12 WARD PLACE, CALDWELL, NJ 07006, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401270001870 | $0.00 |
| ROBERT G HILE JR AND BONNIE L HILE | 238 PARKER PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015848 | $0.00 |
| ROBERT G. BALL & LINDA S. BALL | 14814 CHESTNUT COURT, GLENELG, MD 21737, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201410140024645 | $0.00 |
| ROBERT G. HILE JR. AND BONNIE L. HILE | 238 PARKER PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031079 | $0.00 |
| ROBERT G. UBER LIVING TRUST & SHIRLEY M. UBER LIVI | 1404 MEADOW GLENN DR, VALPARISO, IN 46383, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #200810160023415 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| ROBERT G. YOKEL | PO BOX 479, GIBSONIA, PA  15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201109200022621 | $0.00 |
| ROBERT G. YOKEL & KRISTI YOKEL | PO BOX 479, GIBSONIA, PA  15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201205090013161 | $0.00 |
| ROBERT H. BRUNO | 567 W SLIPPERY ROCK ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201806180011931 | $0.00 |
| ROBERT HOEGLE | 109 HORIZON DRIVE, PITTSBURGH, PA  15367, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER SOUTH - Instrument #201710170022653 | $0.00 |
| ROBERT J SMITH AND GLORIA SMITH | 31 GLADDEN ROAD, MCDONALD, PA  15057, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015875 | $0.00 |
| ROBERT J. BACHNER, A SINGLE MAN | 2369 ROCHESTER RD, SWICKLEY, PA  15143, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201410290026038 | $0.00 |
| ROBERT J. CAHALAN AND DIANE E. CAHALAN | 2115 STRATFORD PLACE, STROUDSBURG, PA  18360, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504130007560 | $0.00 |
| ROBERT J. SMITH | 2626 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201111180028683 | $0.00 |
| ROBERT L. BIRCKBICHLER | 125 ASPEN RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803010003884 | $0.00 |
| ROBERT L. CLAWSON JR. AND BERNADETTE H. CLAWSON | 1885 ITAWAMBA TRAIL, LONDON, OH  43140, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #200809080020542 | $0.00 |
| ROBERT L. CUMBERLAND AND LEAH A. CUMBERLAND | 127 BOYDSTOWN RD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310230030586 | $0.00 |
| ROBERT M DUNKLE JR AND DEBORAH L DUNKLE | 241 PINE RD, KARN CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015852 | $0.00 |
| ROBERT M FLICK JR AND KIMBERLY S FLICK | 572 BUENA VISTA RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019298 | $0.00 |
| ROBERT M JR & DEBORAH L DUNKLE  AND RYAN DUNKLE | 241 PINE RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019285 | $0.00 |
| ROBERT M. AND JEANNE D. KEPPLE | 133 OLD BRICK ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003891 | $0.00 |
| ROBERT M. GREENBERGER & JUDITH M. GREENBERGER | 156 BLAZING STAR DRIVE, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018351 | $0.00 |
| ROBERT P. & MARIE GEIBEL | 115 UP THE LANE, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201703230006057 | $0.00 |
| ROBERT P. AND MARIE GEIBEL | 115 UP THE LANE, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010100 | $0.00 |
| ROBERT R AND CAROL A BLAKELY | 2052 SONOMA VALLEY DRIVE, RENFREY, PA  16053, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019322 | $0.00 |
| ROBERT R. MCGUIRE | 102 BYRON CENTER RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309300028328 | $0.00 |
| ROBERT ROTTMAN AND JENNIFER ROTTMAN | 120 SULLIVAN LANE, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506010011527 | $0.00 |
| ROBERT V. AND IONE C. MATHIAS | 157 CHERRY ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010095 | $0.00 |
| ROBERT W. MCGINNIS AND JENNY MCGINNIS, ETAL | 110 APRICOT LN, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031004 | $0.00 |
| ROBERT W. MCGINNIS ET AL | 110 APRICOT LANE, BUTLER, PA  16002, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201805230010074 | $0.00 |
| ROBIN C AND PATRICIA C JAYNES | 1300 EAST LAFAYETTE ST APT 2507, DETROIT, MI  48207, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812130025216 | $0.00 |
| RODGER P. & KATRINA B. MOORE | 261 ZION CHURCH ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201510070022169 | $0.00 |
| ROGER L. AND BETTY J. SIGWORTH | PO BOX 327, BRUIN, PA  16022, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201707060014240 | $0.00 |
| ROGER L. SIGWORTH ET AL - CHAMAELEON | PO BOX 327, BRUIN, PA  16022, USA | EM Energy Pennsylvania, LLC | SURFACE USE AGREEMENT - BUTLER NORTH - Tax Parcel - 260-1F116-00000004-0000 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| ROGER MILLER AND LESLIE MILLER | 161 BORO VU DRIVE, NORTHAMPTON, PA 18067, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER NORTH - Instrument #201710170022682 | $0.00 |
| RONALD A DODD JR AND JODI M DODD | 185 POPLAR ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180806001585 | $0.00 |
| RONALD A. KOCIAN & INA M. KOCIAN | 682 CHERRY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201510020021821 | $0.00 |
| RONALD D. ELLENBERGER SR. & THERESA L. ELLENBERGER | 820 DAVID DRIVE, PROSPECT, PA 16052, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201409260023164 | $0.00 |
| RONALD E. & KAREN L. HOFFMAN | 155 BOOZEL ROAD, SLIPPERY ROCK, PA 16057, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201610200021971 | $0.00 |
| RONALD E. CUMBERLAND AND SHERRY L. CUMBERLAND | 212 MORRIS ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804270008037 | $0.00 |
| RONALD E. WILSON | 439 FOXBURG ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201712190027671 | $0.00 |
| RONALD G CLAYPOOL AND MONICA M CLAYPOOL | 112 W MCQUISTIION ROAD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019284 | $0.00 |
| RONALD J. DELISIO & JUDY R. DELISIO | 2633 ONEIDA VALLEY ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201207090019246 | $0.00 |
| RONALD J. YOUNG AND ANN F. YOUNG | 158 BOYDSTOWN RD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310280031050 | $0.00 |
| RONALD L STEWART AND AMELIA L STEWART | 280 OLD BRICK ROAD, HILLARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201810220020152 | $0.00 |
| RONALD M. NALEPA & NANCY J. NALEPA | 2482 ONEIDA VALLEY ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201407210016690 | $0.00 |
| RONALD SMITH & MARIANNE SMITH | 4477 MOUNT TROY ROAD EXT, PITTSBURGH, PA 15317, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201312240035935 | $0.00 |
| RONALD W. THOMPSON AND THERESA M. THOMPSON | 1584 MAHOOD RD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201210240030610 | $0.00 |
| ROSE MARY MURRIN & MARGARET MURRIN MOSER | 117 BEAUMONT ST, MARTIN, TN 28237, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311150032926 | $0.00 |
| ROSEMARY AND GEORGE R. PFENDER | 1000 SAXONBURG BLVD., SAXONBURG, PA 15056, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024941 | $0.00 |
| ROXANNE L. BARCLAY | 253 SAND ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201705190010521 | $0.00 |
| ROY C. RAIDA | 162 OAK LANE, FOMBELL, PA 16123, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201804170007250 | $0.00 |
| ROY C. RAIDA | 162 OAK LANE, FOMBELL, PA 16123, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010097 | $0.00 |
| ROY J SEYBERT AND BEVERLY J SEYBERT | 257 BUTTERNUT ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180806015853 | $0.00 |
| RUSSELL A. MCNANY AND MARLENE MCNANY | 106 QUICK LN, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309300028348 | $0.00 |
| RUSSELL E. JOHNSON & LILLIAN D. JOHNSON | 1415 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408220019843 | $0.00 |
| RUSSELL H. BARGER | 1030 ANNISVILLE RD., PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022644 | $0.00 |
| RUSSELL H. BARGER | 1030 ANNISVILLE RD., PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022643 | $0.00 |
| RUSSELL H. BARGER & DORIS L. BARGER | 1030 ANNISVILLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201204120009907 | $0.00 |
| RUSSELL J. WALTER | 204 HILLIARDS ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805230010094 | $0.00 |
| RUSSELL L. MILLER JR. | 229 HARPER ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201504020006857 | $0.00 |
| RUSSELL M. DIGIACOMO | 1823 ONEIDA VALLEY ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022693 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| RUSSELL R. AND CHRISTINE O. HARRISON | 3386 WM PENN HWY, PITTSBURGH, PA  15235, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201806110011360 | $0.00 |
| RUSSELL R. HARRISON AND CHRISTEL O. HARRISON | 3386 WM PENN HWY, PITTSBURGH, PA  15235, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310110029633 | $0.00 |
| RUTH ANN AND WILLIAM HOWARD | 103 SCOTT LN, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804270008036 | $0.00 |
| RYAN L. SCHMOLL & TONYA L. SCHMOLL | 188 SLATER RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201111020027017 | $0.00 |
| SALLY R. BAIRD | 1506 NORTH PASTEUR ST, NEW BERN, NC  28560, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309300028327 | $0.00 |
| SAMUEL L SHEPPECK | 951 MAPLE FURNACE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019279 | $0.00 |
| SAMUEL L SHEPPECK | 951 MAPLE FURNACE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | ROAD ROW - BUTLER NORTH - Tax Parcel - 020-01f47-00000015-0000 | $0.00 |
| SAMUEL L. SHEPPECK | 951 MAPLE FURNACE RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #200503140005955 | $0.00 |
| SAMUEL L. SHEPPECK | 951 MAPLE FURNACE RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311220033486 | $0.00 |
| SAMUEL L. SHEPPECK | 951 MAPLE FURNACE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201712190027667 | $0.00 |
| SAMUEL L. SHEPPECK | 951 MAPLE FURNACE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | SURFACE USE AGREEMENT - BUTLER NORTH - Instrument #201710170022622 | $0.00 |
| SAMUEL L. SHEPPECK | 951 MAPLE FURNACE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201810110020667 | $0.00 |
| SAMUEL L. SHEPPECK - ARIES | 951 MAPLE FURNACE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | SURFACE USE AGREEMENT - BUTLER NORTH - Instrument #201810110020667 | $0.00 |
| SAMUEL L. SHEPPECK AKA SAMUEL L. SHEPPECK JR. | 951 MAPLE FURNACE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201805230010076 | $0.00 |
| SAMUEL L. SHEPPECK AKA SAMUEL L. SHEPPECK JR. | 951 MAPLE FURNACE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201806110011359 | $0.00 |
| SAMUEL L. SHEPPECK AKA SAMUEL L. SHEPPECK JR. | 951 MAPLE FURNACE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201805230010077 | $0.00 |
| SAMUEL L. SHEPPECK AND MARY ANN ERKENS | 951 MAPLE FURNACE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #200503140005951 | $0.00 |
| SAMUEL L. SHEPPECK AND MARY ANN ERKENS | 951 MAPLE FURNACE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201805230010075 | $0.00 |
| SAMUEL M. ORTON AND LOUIS M. ORTON, ET AL | 221 DELYBRO ROAD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201407250017216 | $0.00 |
| SAMUEL W. BURNS AND LINDA A. BURNS | 349 LANCELOT LOOP, CLAYTON, GA  30525, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201502170003288 | $0.00 |
| SANDRA D. STONER AND CAROLYN GREENAWALT | 402 ANNISVILLE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706050011678 | $0.00 |
| SANDRA J. AND DONALD F. FRAZIER JR. | 3300 AZALEA STREET, PUEBLO, CO  81005, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804270008032 | $0.00 |
| SANDRA L. WIERDAK | 801 PERRY HIGHWAY, PITTSBURGH, PA  15229, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201502170003278 | $0.00 |
| SANTA MARIE LEWIS | 317 AIKEN ROAD, NEW CASTLE, PA  16101, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808150016716 | $0.00 |
| SCOTT & CHERYL L. JOHNSTON | 244 RED BUD ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201712190027664 | $0.00 |
| SCOTT A. LYNN AND LISA A. LYNN | 1510 MAHOOD ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201202070003539 | $0.00 |
| SCOTT C. VOGEL & TERESA D. VOGEL, ET AL | 2149 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010332 | $0.00 |
| SCOTT C. VOGEL AND TERESA D. VOGEL | 2149 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506010011533 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| SCOTT CURRY | 55 EAST 6TH STREET, DUNKIRK, NY 14048, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201601060000290 | $0.00 |
| SEAN C. SCHMOLL | 1131 ANNISVILLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003902 | $0.00 |
| SEAN R HUTCHINS AND SHANA HUTCHINS | 102 MAR VEL DRIVE, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015840 | $0.00 |
| SETH ELDER AND CAITLIN ELDER | 156 ALLEGHENY CHURCH ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201409160022078 | $0.00 |
| SHARON L. TWENTIER AND CHARLES DAVID SCHWEINSBURG | 296 W. ELDORADO ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706260013322 | $0.00 |
| SHAWN C. KELLY AND RACHEL J. KELLY | 187 HAYSVILLE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201411180027592 | $0.00 |
| SHAWN CONNOR & MAUREEN CONNOR | 856 FALCK ROAD, MCKEES ROCKS, PA 15136, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201510020021818 | $0.00 |
| SHAWN R. AND CARRIE L. ARMAGOST | 253 SANDY POINT RD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201805100009108 | $0.00 |
| SHELLY M. WHITTINGTON | 2292 WILLIAM FLYNN HIGHWAY, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020284 | $0.00 |
| SHIRLEY ANN ANDERSON | 946 HOOKER ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022688 | $0.00 |
| SHIRLEY ANN MCKINNEY | 1021 ONEIDA VALLEY RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401270001897 | $0.00 |
| SHIRLEY C. SCHMIDT BY ROBERT N. SCHMIDT AIF | 12001 LONGHORN PKWY C256, AUSTIN, TX 78732, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807260014927 | $0.00 |
| SHIRLEY R. GEIBEL | 169 APPLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803010003880 | $0.00 |
| SHIRLEY V. BLAUSER | 109 DUNKLE RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032578 | $0.00 |
| SHIRLEY V. BLAUSER | 109 DUNKLE RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310110029620 | $0.00 |
| SHIRLEY V. BLAUSER | 109 DUNKLE ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020288 | $0.00 |
| SPENCER KENNETH BAIRD AND SARA ROMANO BAIRD | 2719 BRONSON BLVD, KALAMAZOO, MI 49008, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310280031053 | $0.00 |
| ST PAUL'S BENEVOLENT EDU AND MISSIONARY INS INC | 111 SOUTH RIDGE ST STE 302, RYE BROOK, NY 10573, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808150016717 | $0.00 |
| STACEY CRATTY AND JODI M. CRATTY | 3033 MATTHEWS RUN RD, YOUNGSVILLE, PA 16371, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201405230011361 | $0.00 |
| STACEY CRATTY AND JODI M. CRATTY | 3033 MATTHEWS RUN ROAD, YOUNGSVILLE, PA 16371, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310280031075 | $0.00 |
| STANLEY I GRUVER AND GLORIA A GRUVER | 1432 KITTANNING PIKE, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015865 | $0.00 |
| STEPHEN AND RANDY M. MILLIRON | PO BOX 757, SOLDOTNA, AK 99669, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201708170017517 | $0.00 |
| STEPHEN B. AND BARBARA A. TENNEY | 285 KILDOO ROAD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003907 | $0.00 |
| STEPHEN CLIFFORD | PO BOX 66, ORWELL, NY 13426, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504290008907 | $0.00 |
| STEVE BLAUSER | 3824 KIM LANE, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201311130032573 | $0.00 |
| STEVE BLAUSER | 3824 KIM LN, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032576 | $0.00 |
| STEVE BLAUSER | 3824 KIM LN, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032574 | $0.00 |
| STEVE BLAUSER | 3824 KIM LN, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201204110009687 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| STEVE BLAUSER | 3824 KIM LN, GIBSONIA, PA  15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312060034469 | $0.00 |
| STEVE BLAUSER | 3824 KIM LN, GIBSONIA, PA  15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032565 | $0.00 |
| STEVE BLAUSER | 3824 KIM LN, GIBSONIA, PA  15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311220033481 | $0.00 |
| STEVE BLAUSER | 3824 KIM, LN GIBSONIA, PA  15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032572 | $0.00 |
| STEVE BLAUSER | 3824 KIM, LN GIBSONIA, PA  15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032576 | $0.00 |
| STEVEN E. LUCAS AND VAUGHN M. LUCAS | 280 BOY SCOUT ROAD, EVANS CITY, PA  16033, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201112130031028 | $0.00 |
| STEVEN L. AND CHRISTINA M. PROKAY | 103 W ELDORADO ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201706050011680 | $0.00 |
| STEVEN L. AND CHRISTINA M. PROKAY | 103 WEST EL DORADO ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022626 | $0.00 |
| STEVEN W. AND KATE E. LADEBU | 1125 ANNISVILLE ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003901 | $0.00 |
| SUE ELLEN ZELLEFROW | 139 RED BUD RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803070004338 | $0.00 |
| SUNSET RIDERS MOTORCYCLE CLUB INC | 311 MOHICAN TRAIL - VIRGINA STEWART, MERCER, PA  16137, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015862 | $0.00 |
| SUPERIOR ADSORBENTS, INC. | PO BOX 566, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035939 | $0.00 |
| SUSAN E. CAMPBELL | 2239 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201109060021220 | $0.00 |
| SUSAN E. CAMPBELL | 2239 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201205290015250 | $0.00 |
| SUSAN P. BLAIR | 180 BLAIR ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803230005411 | $0.00 |
| TAMMY L. FELIX F/K/A TAMMY L. BENNETTI | 396 WHITEHALL ROAD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007251 | $0.00 |
| TEM HENRY HORWITZ, INDIVIDUALLY, AS EXECUTOR OF TH | 651 WEST WASHINGTON ST, CHICAGO, IL  60661, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201404110007692 | $0.00 |
| TERESA B. AND MICHAEL F. MILNE | 77 COLIN'S MEADOW LANE, ALFRED, ME  04002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003896 | $0.00 |
| TERRA L. DAMICO | 763 NORTH WASHINGTON ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022697 | $0.00 |
| TERRENCE L MOORE AND SHERRI L MOORE | 141 CALICO RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201810290021989 | $0.00 |
| TERRI L STEFANACCI NKA TERRI L LEASE | 77 HARVEY ROAD, PO BOX 63, FOXBURG, PA  16036, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014157 | $0.00 |
| TERRY & ILLA HORTERT ET AL | 139 HORTERT LN, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201611210024521 | $0.00 |
| TERRY J. AND RUTH A. BARGER | 418 DAUBENSPECK ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201705190010520 | $0.00 |
| TERRY J. AND RUTH A. BARGER | 418 DAUBENSPECK ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201705190010519 | $0.00 |
| TERRY L. SULLIVAN AND MICHELE SULLIVAN | 2229 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201505150010335 | $0.00 |
| TERRY L. SULLIVAN AND MICHELE SULLIVAN | 2229 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506010011531 | $0.00 |
| TERRY M. MCGINNIS & SHIRLEY D. MCGINNIS | 634 TWP ROAD 1804, ASHLAND, OH  44805, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201206220017712 | $0.00 |
| TERRY SHIELDS AND REBECCA L. GRAHAM | 305 REDBUD ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408290020578 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| TERRY W. ARBLASTER AND CATHY J. ARBLASTER | 434 WEST ELDORADO RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201301300003252 | $0.00 |
| THADEUS S. CARR AND TANYA L. CARR | PO BOX 234, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201409160022079 | $0.00 |
| THE ARTHUR P. RUSSO REVOCABLE LIVING TRUST | 409 DAUBENSPECK ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024934 | $0.00 |
| THE CUSTEAD FAMILY REVOCABLE LIVING TRUST | 221 BLAUSER ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201409300028349 | $0.00 |
| THE GRACE M. JOHNS REV LVG TRST DATED 3/3 | 1115 E ELDORADO ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201712190027676 | $0.00 |
| THE NIGGEL ASSET PROTECTION TRUST DATED 6/24/2016 | 905 SEVEN HILLS RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201701090000497 | $0.00 |
| THE NORMAN R. FAIR, SR. AND HELEN C. FAIR REVOCABL | 204 SILVER SEA ROAD, WINTER SPRINGS, FL  32708, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309060026060 | $0.00 |
| THE PEARCE FAMILY TRUST DATED NOVEMBER 15, 2007 | 3739 ONEIDA VALLEY RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804170007221 | $0.00 |
| THE SHIRLEY V. BLAUSER REVOCABLE TRUST | 109 DUNKLE RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032568 | $0.00 |
| THE SHIRLEY V. BLAUSER REVOCABLE TRUST | 109 DUNKLE RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032567 | $0.00 |
| THE SHIRLEY V. BLAUSER REVOCABLE TRUST, ETAL | 109 DUNKLE RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032577 | $0.00 |
| THE SIMEON L. HARDY AND MARGARETTA E. HARDY REVOCA | 1109 ONEIDA VALLEY RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310280031025 | $0.00 |
| THE TERENCE J. BLACK AND MARY ANN BLACK TRUST | 1113 THATCHER TRAIL, WEST DUNDEE, IL  60118, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801090000518 | $0.00 |
| THE WALTER SERTIK REVOCABLE LIVING TRUST | 529 INDIANS ROCK ROAD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201111290029402 | $0.00 |
| THOMAS A. KOCZYNSKI | 128 BOYDSTOWN RD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201309060026057 | $0.00 |
| THOMAS BARNHART AND SANDRA BARNHART | 1425 MAHOOD RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201311040031781 | $0.00 |
| THOMAS C. MILLER AND LOUISE L. MILLER | 4036 KITTANNING PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027589 | $0.00 |
| THOMAS C. SHOAF AND SANDRA L. SHOAF | 1602 ONEIDA VALLEY ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201508190018330 | $0.00 |
| THOMAS D. MCMILLEN | 450 W SLIPPERY ROCK ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805100009095 | $0.00 |
| THOMAS E. HILLIARD & LINDA G. HILLIARD | 195 CARTWRIGHT ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201410300026136 | $0.00 |
| THOMAS G. RAY AND KIMIKO RAY | 2179 ONEIDA VALLEY RD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024932 | $0.00 |
| THOMAS H. CLARK | 208 CLARK RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201310280031071 | $0.00 |
| THOMAS J. KELLEY AND ALMA J. KELLEY | 105 JAY LN, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312060034456 | $0.00 |
| THOMAS J. KELLEY AND ALMA J. KELLEY, ETAL | 506 TIMBER RIDGE LN, FOXBURG, PA  16036, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201305100013621 | $0.00 |
| THOMAS J. MABOLD AND KRISTINE M. MABOLD | 1326 MAHOOD RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | SURFACE USE AGREEMENT - BUTLER SOUTH - Instrument #201504290008902 | $0.00 |
| THOMAS J. MABOLD AND KRISTINE M. MABOLD | 1326 MAHOOD ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201202160004472 | $0.00 |
| THOMAS J. MABOLD AND KRISTINE M. MABOLD | 1326 MAHOOD ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER SOUTH - Instrument #201504290008902 | $0.00 |
| THOMAS J. MUSCATELLO | 106 RIDER ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201501200001185 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| THOMAS JAMES KELLEY | 139 BLAUSER RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032564 | $0.00 |
| THOMAS L SMITH AND ARLENE J SMITH | 19 HARRISON ST, PITTSBURGH, PA 15205, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201808060015874 | $0.00 |
| THOMAS L. AUGHTON AND DARLA F. AUGHTON | 119 QUICK LN, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311040031821 | $0.00 |
| THOMAS L. WALTERS AND STACY J. WALTERS | 181 PARKER ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201407070015413 | $0.00 |
| THOMAS M. BROWN JR. & TINA C. BROWN | 2499 ESQUE SHARP ROAD, MOUNT PLEASANT, TN 38474, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020294 | $0.00 |
| THOMAS MILLER, EXEC OF THE ESTATE OF LOUISE MILLER | 4305 WABASH AVENUE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201411180027577 | $0.00 |
| THOMAS R. COOPER AND SHAWNA L. COOPER | 677 FOXBURG RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201709110019488 | $0.00 |
| THOMAS S. EDINGER AND REBECCA S. CAMPBELL | 1103 ANNISVILLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003899 | $0.00 |
| TIMMY L SHEPARD AND PAMELA S SHEPARD | 151 CHERRY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019272 | $0.00 |
| TIMOTHY A SUCHONIC AND GLENNA D SUCHONIC | 161 BORO VU DRIVE, NORTHAMPTON, PA 18067, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - BUTLER NORTH - Instrument #201710170022680 | $0.00 |
| TIMOTHY BLEVINS AND PATRICIA BLEVINS | 37 THELMA DRIVE, WEST NEWTON, PA 15089, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020277 | $0.00 |
| TIMOTHY C. WILSON AND SUSAN C. WILSON | 27 PIONEER DRIVE, FAIRPORT, NY 14450, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201504290008911 | $0.00 |
| TIMOTHY D. AND TAMMY J. BOWSER | 110 CHERRY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010087 | $0.00 |
| TIMOTHY J. AND DENISE M. KULAK | 130 KNOX STREET, BRIDGEVILLE, PA 15017, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024938 | $0.00 |
| TIMOTHY J. AND SHERRY A. CHAMBERS | 965 METZ ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201705190015254 | $0.00 |
| TIMOTHY J. AND SHERRY A. CHAMBERS | 965 METZ ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | SURFACE USE AGREEMENT - Instrument #201805230010078 | $0.00 |
| TIMOTHY J. CHAMBERS AND SHERRY A. CHAMBERS | 965 METZ ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312060034476 | $0.00 |
| TIMOTHY JOSEPH SIMON & KERRI GAYLE SIMON | 127 KIRBY LANE, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201110030023830 | $0.00 |
| TIMOTHY JOSEPH VOGEL & PATRICIA ANN VOGEL | 220 CLARK ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201205090013076 | $0.00 |
| TIMOTHY M. SULLIVAN | 114 WINDY WAY LANE, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506300014169 | $0.00 |
| TIMOTHY R. AND BARBARA E. WALLACE | 205 HAZELNUT RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805100009109 | $0.00 |
| TIMOTHY R. CONNER AND SHAWNA M. CONNER | 2678 ONEIDA VALLEY RD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201304150010780 | $0.00 |
| TODD A. WEINER AND WENDI R. WEINER | 1261 BRINKERTON RD, GREENSBURG, PA 15601, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309060026062 | $0.00 |
| TODD L. HOVIS & TERESA M. HOVIS | 122 BALL LANE, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201203230008068 | $0.00 |
| TRAVIS A. BASHLINE AND MEGAN K. BASHLINE | 130 SLATER ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032584 | $0.00 |
| TRICIA R DAVIS | 150 GILLESPIE LANE, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014150 | $0.00 |
| TRI-STATE GARDEN SUPPLY INC., BY ITS PRESIDENT DAV | PO BOX 184, EAU CLAIRE, PA 16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201401140001038 | $0.00 |
| TROY D. MOORE & SHARON MOORE | 2626 ONEIDA VALLEY ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201111180028682 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| TROY D. MOORE AND SHARON MOORE | 2626 ONEIDA VALLEY ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018332 | $0.00 |
| TWILA BEST | 1044 E ELDORADO ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201712190027684 | $0.00 |
| TYLER BASSETT | 241 PARSONVILLE ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201305100013607 | $0.00 |
| VERNIE S. HILLIARD | 2275 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201111290029412 | $0.00 |
| VERNIE SUE HILLIARD | 2275 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022641 | $0.00 |
| VERNIE SUE HILLIARD | 2275 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022640 | $0.00 |
| VERNIE SUE HILLIARD | 2275 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022639 | $0.00 |
| VERNIE SUE HILLIARD | 2275 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022638 | $0.00 |
| VERNIE SUE HILLIARD | 2275 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | SURFACE USE AGREEMENT - Instrument #201506010011534 | $0.00 |
| VICKI L. THOMPSON | 360 OLD FRYBURG RD, LUCINDA, PA  16235, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031029 | $0.00 |
| VINCENT L. PENNINGTON | 207 WHITMIRE RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201210240030616 | $0.00 |
| VIRGINIA A. STANFIELD | 548 120TH STREET, EUREKA, KS  67045, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022181 | $0.00 |
| VIRGINIA L. BLACK, ACTING BY REBECCA A. HURT, AIF | 14918 E. BLACK OAK ST., WICHITA, KS  67230, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022188 | $0.00 |
| VIRGINIA LEE MARTIN | 1245 MERRICK AVENUE, PITTSBURGH, PA  15226, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201711140024936 | $0.00 |
| WADE J. POTSUBAY & AMANDA POTSUBAY | 402 GIBSON STREET, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201510070022170 | $0.00 |
| WALTER B. AND ALBERTA M. FRINT | 3916 N POTSDAM AVE #4355, SIOUX FALLS, SD  57042, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804270008028 | $0.00 |
| WALTER D. AND NANCY F. KAY BELL ET AL | 106 SAVANNAH AVENUE, GRANDY, NC  27939, USA | EM Energy Pennsylvania, LLC | SURFACE USE AGREEMENT - Instrument #201803010003871 | $0.00 |
| WALTER D. BELL AND NANCY F. KAY BELL | 106 SAVANNAH AVENUE, GRANDY, NC  27939, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801090000517 | $0.00 |
| WALTER D. BELL ET AL | 106 SAVANNAH AVENUE, GRANDY, NC  27939, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022630 | $0.00 |
| WALTER L. AND RANDA S. ANTHONY | 1024 EAST ELDORADO ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003907 | $0.00 |
| WANDA J. UNVERZAGT | 2275 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201607190014468 | $0.00 |
| WANDA J. UNVERZAGT AND VERNIE SUE HILLIARD | 2275 BRANCHTON ROAD, HILLIARDS, PA  16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201803010003905 | $0.00 |
| WARREN E. AND PATRICIA L. PARKER | 120 SPRUCE ROAD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201805230010104 | $0.00 |
| WAYNE E. PHILLIPS AND MARGARET M. PHILLIPS | 602 WAGON WHEEL LN, LINCOLN, CA  95648, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201307310022323 | $0.00 |
| WAYNE JOHNSON ESTATE, BY: DARREN WIDEMAN | 224 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201405230011373 | $0.00 |
| WAYNE L. BLAIR AND ELIZABETH A. BLAIR | 197 ZION CHURCH ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201508190018326 | $0.00 |
| WAYNE M. NERONE AND SUSAN MCGARVEY NERONE | 118 OLD EBERHART ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018333 | $0.00 |
| WESTERN PENNSYLVANIA COON AND FOX HUNTING ASSOC | 131 TINKER ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001054 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| WIILIAM LEO NEFF AND THERESA D. NEFF | 222 TROUTMAN RD., CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201704110007593 | $0.00 |
| WILBERT D MCNEISH AND MARY S MCNEISH | 150 PEACEFUL VALLEY RD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201810290021990 | $0.00 |
| WILBERT P. THOMPSON JR. AND HAZEL M. THOMPSON | 826 GROVE ST, PO BOX 12, ST PETERSBURG, PA  16054, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031060 | $0.00 |
| WILLIAM BARTLEY AND LISA A. BARTLEY | 217 WASHINGONT ST, PO BOX 192, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201307310022325 | $0.00 |
| WILLIAM C FISHER AND KAREN A FISHER BENZ | 205 WILKINS AVENUE, PITTSBURGH, PA  15112, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014154 | $0.00 |
| WILLIAM C. RUTH, ETAL | BOX 44, EAU CLAIRE, PA  16030, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201304150010784 | $0.00 |
| WILLIAM D. MAYHEW AND WANDA L. MAYHEW | 1104 EVANS CITY ROAD, RENFREW, PA  16053, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020270 | $0.00 |
| WILLIAM DAVID HAZLET IV & JODEE E. HAZLET ET AL | 573 CLAYTONIA RD, SLIPPERY ROCK, PA  16057, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201704110007599 | $0.00 |
| WILLIAM E. BEST AND MARTY E. BEST | 339 SANDY POINT RD, EMLENTON, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310110029642 | $0.00 |
| WILLIAM E. SNYDER III | 724 BEAR PAW LANE, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022674 | $0.00 |
| WILLIAM F GRAHAM JR AND BETTY ANN MCCOLLOUGH ET AL | 1407 HOOKER RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019299 | $0.00 |
| WILLIAM F. HICKS, JR. AND BETTY J. HICKS | 309 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201501230001515 | $0.00 |
| WILLIAM G CHRISTY AND NANCY L CHRISTY | 5425 DONOVAN AVE, ST LOUIS, MO  631092621, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014140 | $0.00 |
| WILLIAM G. BLACK | 124 MILLWOOD AVENUE, MUNROE FALLS, OH  44262, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801090000519 | $0.00 |
| WILLIAM GOMBOS & JACQUE GOMBOS | 310 PARKER PIKE, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201312240035984 | $0.00 |
| WILLIAM H. BLAUSER | 135 SIGNOR LANE, VERONA, PA  15147, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022624 | $0.00 |
| WILLIAM H. BROWN | 1405 HOOKER RD, KARNS CITY, PA  16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201803070004333 | $0.00 |
| WILLIAM H. HOFFMAN JR. | 221 VILLAGE ACRE CIRCLE, PO BOX 363, CLINTONVILLE, PA  16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201310280031051 | $0.00 |
| WILLIAM H. MCCUNE & DELAINE J. MCCUNE | 1359 ONEIDA VALLEY ROAD, WEST SUNBURY, PA  16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201408220019844 | $0.00 |
| WILLIAM J. HUGUS | 926 NORTH HALIFAX AVENUE, DAYTONA BEACH, FL  32118, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001036 | $0.00 |
| WILLIAM J. JR. AND DEBBIE J. SMITH | 220 HARPER ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022662 | $0.00 |
| WILLIAM J. JR. AND DEBBIE J. SMITH | 220 HARPER ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022661 | $0.00 |
| WILLIAM J. REGES III & RACHEL H. REGES | 770 HOLYOKE ROAD, BUTLER, PA  16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509140020187 | $0.00 |
| WILLIAM J. WAUGAMAN JR. & NICOLE E. WAUGAMAN | 2787 ONEIDA VALLEY ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020266 | $0.00 |
| WILLIAM L. AND SUZANNE R. HUTSON | PO BOX 29, MARIENVILLE, PA  16239, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201801170001056 | $0.00 |
| WILLIAM MAYNARD MACKAY | 197 LAKES AT LITCHFIELD DRIVE, PAWLEY ISLAND, SC  29585-5524, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022673 | $0.00 |
| WILLIAM MAYNARD MACKAY AND ANN MARIE MACKAY | 197 LAKES AT LITCHFIELD DRIVE, PAWLEYS ISLAND, SC  29585-5524, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201111020026988 | $0.00 |
| WILLIAM P. RODGERS & JULIE R. RODGERS | 142 CARTWRIGHT RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201510070022171 | $0.00 |

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| WILLIAM P. RODGERS AND JULIE R. RODGERS | 142 CARTWRIGHT RD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201309060026052 | $0.00 |
| WILLIAM P. SWANIK | 1043 ANNISVILLE RD., PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022642 | $0.00 |
| WILLIAM R. MARTIN | 2505 CLINTONVILLE ROAD, HARRISVILLE, PA  16038, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201508190018336 | $0.00 |
| WILLIAM R. MARTIN | 2505 CLINTONVILLE ROAD, HARRISVILLE, PA  16038, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201506300014171 | $0.00 |
| WILLIAM R. SCHLOTTACH | 1715 QUILLIAN AVENUE, PUEBLO, OH  81005, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201804270008030 | $0.00 |
| WILLIAM T. MCKEE AND ANNE L. MCKEE | 220 MCKEES RD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311040031800 | $0.00 |
| WILLIAM V YOUNG | 203 FAIRMONT ROAD, CHICORA, PA  16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812130025220 | $0.00 |
| WILLIAM W. MCDEVITT | 11909 LAMAR AVENUE #109, OVERLAND PARK, KS  66209, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201509150020268 | $0.00 |
| WILSON L. JACK JR. AND BRENDA L. JACK | 265 BLAIR ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #2018120440024449 | $0.00 |
| WILSON M. MASTER AND SHIRLEY MASTER | 563 FOXBURG ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201403040004451 | $0.00 |
| YVONNE C. ORLOSKI | 1074 ANNISVILLE RD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201311130032599 | $0.00 |
| YVONNE C. ORLOSKI | 1074 ANNISVILLE ROAD, PETROLIA, PA  16050, USA | EM Energy Pennsylvania, LLC | WATER TRANSFER EASEMENT - Instrument #201710170022646 | $0.00 |
| ZANE SLATER | 433 ANNISVILLE ROAD, PARKER, PA  16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201707270015829 | $0.00 |

**Exhibit A-2**
**Excluded Leases and Interests**

[*See Attached*]

| COUNTERPARTY | COUNTERPARTY NOTICE ADDRESS | DEBTOR ENTITY | CONTRACT DESCRIPTION | Cure Amount |
|---|---|---|---|---|
| ALBERT VOGT AND BERNICE VOGT | 821 SLEEPY HOLLOW RD APT N PITTSBURGH, UNKNOWN, PA 15234, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901100000540 | $0.00 |
| AMBER D. OVERLY AND ADAM B. OVERLY | 225 PARSONVILLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812200025771 | $0.00 |
| ANDREW T MUISINER | 96 VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019304 | $0.00 |
| ANGELA L. MERCHANT | 104 MERCHANT LANE, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812060024711 | $0.00 |
| APRIL L. CAMPBELL AND MATTHEW R. CAMPBELL | 231 PARSONVILLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812120025121 | $0.00 |
| ARTHUR A. PELLEGRINI SR. AND CHRISTINE PELLEGRINI | 9542 FARGO DRIVE, HUDSON, FL 34667, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201810290021988 | $0.00 |
| AUDRAY R. MUSCATELLO YOST & CHARLES THOMAS YOST | 5 PINE NEEDLES LANE, BUTLER, PA 16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812130025217 | $0.00 |
| BARBARA BARTOLETTI | 7768 ARTHUR STREET, MASURY, OH 44438, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201903210004927 | $0.00 |
| BARBARA JANE GERWICK | 215 GERWICK ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901300001783 | $0.00 |
| BETTY J. DALLOS | 118 BRANDON ROAD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812120025131 | $0.00 |
| BETTY J. ZIMMEL, MICHAEL P. ZIMMEL, NICOLE ZIMMEL | 229 REDWOOD ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901100000547 | $0.00 |
| BEVERLY J. BENZ | 2020 15TH ST, WINTER HAVEN, FL 33880, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901140000747 | $0.00 |
| BRENDA MORAN | 155 THORN RUN ROAD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901646    5182 234 | $0.00 |
| BRENT PATTEN | 151 THORN RUN ROAD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901036    5178 318 | $0.00 |
| BRETT A. STIVASON | 103 SPRUCE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901090000366 | $0.00 |
| BRIAN E. CHRISTY | 260 OLD BRICK ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812130025238 | $0.00 |
| BRUCE I. MCQUISTON AND TINA N. MCQUISTON | 4545 ODELL PL #1, JAMESVILLE, NY 13078, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201811190013515 | $0.00 |
| BRUCE R. LOWERS AND ROBERTA G. LOWERS | 15853 US ROUTE 422, WORTHINGTON, PA 16262, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812120025129 | $0.00 |
| BRYAN LEE FLEEGER AND ALISA SHARELLE FLEEGER | 102 APPLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901100000529 | $0.00 |
| CARL & KATHLEEN ANDERSON/JOHN & CHRISTEEN KAYLOR | 499 RATTIGAN ROAD, CHICORA, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812120025117 | $0.00 |
| CARL J. HOEFT AND CAREN A. HOEFT | 4363 WILLESDON AVENUE, HOLT, MI 48842, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812060024705 | $0.00 |
| CARL J. KLEINFELDER AND TAMARA A. KLEINFELDER | 110 DEBBIE AVENUE, SLIPPERY ROCK, PA 16057, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901090000363 | $0.00 |
| CARL L. NOBLE AND PAULINE M. NOBLE | 4118 STEUBENVILLE ROAD SE, AMSTERDAM, OH 43903, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901220001193 | $0.00 |
| CARL MUSCATELLO AND BEVERLY LYNN MUSCATELLO | 1301 NORTHSIDE DRIVE, ORMAND BEACH, FL 32174, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812060024713 | $0.00 |
| CASEY L. GRUBBS | 157 HAYSVILLE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201811130023162 | $0.00 |
| CASEY L. GRUBBS AND HEATHER L. GRUBBS | 362 CHERRY RD, CHICORA, PA 160025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201811130023164 | $0.00 |
| CATHERINE A BELL | 176 ASH LANE, TIONESTA, PA 16353, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201810290021973 | $0.00 |
| CATHERINE DOWLING | 4220 DAVISON AVE. APT. 311, ERIE, PA 16504, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008399 | $0.00 |
| CATHERINE R. COLLWELL AND DAVID COLLWELL | 215 CATALPA RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901090000360 | $0.00 |
| CECILIA DONNA CUMBERLAND AND RICHARD B. CUMBERLAND | PO BOX 43, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812200025765 | $0.00 |
| CHARLES K. KISSLING AND ANDREA LYNN KISSLING | 9331 1ST STREET, ESPYVILLE, PA 16424, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812130025252 | $0.00 |
| CHARLES R. CAMPBELL | 103 DESSA LANE, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812060024706 | $0.00 |
| CHARLES W AND KIMARIE N HALL | 215 BASSWOOD ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019306 | $0.00 |
| CHERRY TIMBER ASSOCIATION | 30799 PINETREE ROAD #434, PEPPER PIKE, OH 44124, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901220001173 | $0.00 |
| CHERYL A. ROUDEBUSH AND RONALD E. ROUDEBUSH | 1506 KITTANNING PIKE, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901220001191 | $0.00 |
| CHERYL EKIS | 730 SLIPPERY ROCK ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201811190023510 | $0.00 |
| CHRISTOPHER I. PROKAY AND ELIZABETH PROKAY | PO BOX 53, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201902150002836 | $0.00 |
| CINDY S. RENICKER AND JERRY A. RENICKER | 5180 WILLOW DR. NW, MALVERN, OH 44644, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201902150002843 | $0.00 |
| CLAYTON THOMAS ROZIC AND KELLY MARIE ROZIC | 1136 ANNISVILLE RD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201905100008407 | $0.00 |
| CLYDE HOLDING INC, BY VINCENT NEISWONGER, PRES | 17592 ROUTE 322, STRATTANVILLE, PA 16258, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201810290021968 | $0.00 |
| CODY A. ANTHONY AND HEATHER L. ANTHONY | 106 DRESHMAN LANE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812120025128 | $0.00 |
| CONRAD D. PEACHEY AND DONNA M. PEACHEY | 5262 HEISEY RD, SHIPPENSBURG, PA 17257, USA | EM Energy Pennsylvania, LLC | #N/A | $0.00 |
| COUNTRY COURT PROPERTIES, LLC | 348 CHURCH ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201902150002825 | $0.00 |
| CYNTHIA L ELDER | 1419 BULLION ROAD, POLK, PA 16342, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201810290021970 | $0.00 |
| DANIEL A. MARKS | 120 KOTTRABA LN, PORTERSVILLE, PA 16051, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901035 | $0.00 |
| DANIEL J BISHOP AND BEVERLY E BISHOP | PO BOX 35, NORTH WASHINGTON, PA 16048, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808015016718 | $0.00 |
| DARIN G. MONG | 250 BUTTERNUT ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812200025772 | $0.00 |
| DAVID B MILLER AND DIANE E MILLER & MOLLY D MILLER | 1410 KITTANNING PIKE, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201811130023159 | $0.00 |
| DAVID H. MCMASTER | 448 CHRISTIE ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812060024707 | $0.00 |
| DAVID J PISTORIUS AND SHERRIDYN E PISTORIUS | 225 CATALPA RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015866 | $0.00 |
| DAVID PATRICK RODGERS AND SUSAN LYNN RODGERS | 447 EAST SLIPPERY ROCK ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901100000549 | $0.00 |
| DAVID R AND THERESA I STEWART | 1243 ONEIDA VALLEY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901140000743 | $0.00 |
| DAVID R. BRAY AND JENNIFER J. BRAY | 344 FAIRMONT ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201810290021980 | $0.00 |
| DAVID W SURRENA AND SUSAN M SURRENA | 227 CATALPA RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808060015871 | $0.00 |
| DEAN M. TASCARELLA AND PATRICIA A. TASCARELLA | 1270 KITTANNING PIKE, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901220001197 | $0.00 |
| DEAN S. HERSHEY AND RHONDA LYNN HERSHEY | 238 OLD BRICK ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901300001775 | $0.00 |

| Name | Address | Entity | Lease | Amount |
|---|---|---|---|---|
| DEAN W. FEDOREK AND TINA M. FEDOREK | 572 CHERRY RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181212002S140 | $0.00 |
| DENISE E. MOHN AND JAY D. MOHN | 242 SPRUCE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190144000074S | $0.00 |
| DENNIS C. KELLY | 175 HAYSVILLE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | #N/A | $0.00 |
| DENNIS D. SMITH | 2801 BERTHA STREET, BETHEL PARK, PA 15102, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181113002315 | $0.00 |
| DENNIS N. FALLECKER AND JEAN M. FALLECKER | 106 EVERLY LN, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201905100008418 | $0.00 |
| DIANA LOUISE CAMPBELL AND DAVID RALPH CAMPBELL | 734 FREEPORT RD, BUTLER, PA 16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901300001773 | $0.00 |
| DIANNE L SHENOT | 141 CARTWRIGHT ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180920001912 | $0.00 |
| DIRK C. ECKERT AND PAMELA S. ECKERT | 123 CLARK ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190122001189 | $0.00 |
| DONALD BENSON AND YVONNE BENSON | 2431 ONEIDA VALLEY RD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181029002198 | $0.00 |
| DONALD C, IRENE L MCCULLOUGH & LORI, JOHN PLUNKARD | 704 CHICORA ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901100000543 | $0.00 |
| DONALD D. SHOUP | PO BOX 102, ST. PETERSBURG, PA 16054, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901100000541 | $0.00 |
| DONALD DIVERS AND BERNICE S. DIVERS | 1215 ONEIDA VALLEY RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181119002350 9 | $0.00 |
| DONALD P HINDMAN | 439 AIRPORT ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181002002015 3 | $0.00 |
| DONNA MARIE MCCLURE AND EUGENE L. MCCLURE | 135 BLAZING STAR DRIVE, BUTLER, PA 16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901090000037 9 | $0.00 |
| DOROTHY E GANNOE SLOAN AND DONALD R SLOAN | 3737 ONEIDA VALLEY RD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #2018092000192 78 | $0.00 |
| DOUGLAS S. HIWILLER AND LISA A. HIWILLER | 427 SAWGRASS DRIVE, FAIRLAWN, OH 44333, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201903200004850 | $0.00 |
| EARL E. LUMLEY AND DIANE L. LUMLEY | 656 BRUIN ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181213002S239 | $0.00 |
| ELIZABETH A. KARENBAUER | 640 CHERRY RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #2018121300252 36 | $0.00 |
| ELIZABETH ANN COOK | 494 N. DUFFY RD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901220001187 | $0.00 |
| ELIZABETH J RAGAN | 134 OLD STATE ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180920001930 7 | $0.00 |
| ELLEN C. SMYCZYNSKI AND THOMAS O. SMYCZYNSKI | 8780 EAST ARNOLD LAKE ROAD, HARRISON, MI 48625, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #2018121200251 16 | $0.00 |
| ERIC GRIFFITHS AND SARAH GRIFFITHS | PO BOX 34, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901220001201 | $0.00 |
| ERIC R SNOW | 121 CROSBIE LANE, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180092000192 97 | $0.00 |
| ERIC T. MENTEL AND VALERIE E. MENTEL | 408 CHRISTIE ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #2018121300252 43 | $0.00 |
| ESTHER YVONNE GERWICK | 215 GERWICK ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #2018121300252 35 | $0.00 |
| FELLOWSHIP BAPTIST CHURCH OF PENNSYLVANIA | 3727 ONEIDA VALLEY ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901220001175 | $0.00 |
| FRANK H. MONG AND JOYCE E. MONG | 569 BUENA VISTA RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181206002471 9 | $0.00 |
| FREDERICK J. WELDING AND LAVERNE A. WELDING | 438 CHRISTIE ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181206002471 0 | $0.00 |
| GARRETT E  AND DANIELLE CONAWAY | 101 ARROWHEAD RD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180920001927 7 | $0.00 |
| GARY HILL AND JANET M. HILL | 901 UNITY CENTER ROAD, PITTSBURGH, PA 15239, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #2018121200251 26 | $0.00 |
| GARY L. STEWART AND BRENDA R. STEWART | 222 STEWART ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181220002S773 | $0.00 |
| GARY MILLER AND PAMELA B MILLER | 225 MEDICAL CENTER RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808150016728 | $0.00 |
| GEORGE DELLEN AND MARIE DELLEN | 1109 DELLEN DRIVE, EAST BRADY, PA 16028, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181204002445 8 | $0.00 |
| GEORGE DELLEN AND MELINDA K. WOOD | 213 REDWOOD ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181204002445 9 | $0.00 |
| GEORGE M. BECK AND LINDA J. BECK | 111 BECK ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901220001198 | $0.00 |
| GERALD D. TOMASZEWSKI AND CHARLOTTE A. TOMASZEWSKI | 1114 ZENOBIA DRIVE, CORAOPOLIS, PA 15108, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #2018121300252 51 | $0.00 |
| GERALD R. LANDERS | 108 GERWICK RD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901300001781 | $0.00 |
| GERALD VINCENT YOUNG & VICKIE LYNN TRUST | 101 THIRSTY LANE, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181119002315 6 | $0.00 |
| GLENN A MILLER | 105 BEECH ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201808150016721 | $0.00 |
| GLORIA A. GILLESPIE | 335 OLD BRICK RD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901090000381 | $0.00 |
| GREG N. WALOWEN AND ABBY G. WALOWEN | 110 COON DOG LANE, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181029002198 3 | $0.00 |
| GREGORY C. KIFFER AND GLENNESSA N. ROSE | 829 BONNIEBROOK ROAD, BUTLER, PA 16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #2018121200251 24 | $0.00 |
| HAROLD L. IRWIN AND DARLA R. IRWIN | 2045 SILVER RUN FALLS, GROVETOWN, GA 30813, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008400 | $0.00 |
| HEATHER L. GRUBBS | 362 CHERRY RD, CHICORA, PA 160025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181113002351 3 | $0.00 |
| HEIDI A. COYLE | 202 TURNER ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181119002351 2 | $0.00 |
| HENRY J. DUCKSTEIN AND SUSAN J. DUCKSTEIN | 910 HOOKER ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | #N/A | $0.00 |
| HENRY J. DUCKSTEIN AND SUSAN J. DUCKSTEIN | 910 HOOKER ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | #N/A | $0.00 |
| HENRY J. DUCKSTEIN AND SUSAN J. DUCKSTEIN | 910 HOOKER ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER SOUTH - Instrument #201902150002841 | $0.00 |
| HOMER H. YODER AND MARTHA L. YODER | 4500 CLARK RD, WEST FARMINGTON, OH 44491, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181220002S776 | $0.00 |
| HOWARD P. LUBBERT | 1114 EAST ELDORADO, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181204002445 1 | $0.00 |
| HUBERT F. LYKINS JR. AND BRENDA LYKINS | 221 BYRON CENTER ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #2018121200251 20 | $0.00 |
| ICLE GARNER SCOTT | 102 CENTER STREET SW, WINTER HAVEN, FL 33880, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901300001765 | $0.00 |
| J. K. RYAN RESOURCES, LLC | 170 PETROLIA STREET, PO BOX 162, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181206002471 2 | $0.00 |
| JAMES C. SHERRICK AND DEBRA L. SHERRICK | 105 TROUTMAN RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190215002822 | $0.00 |
| JAMES C. WILEY SR. AND BARBARA A. WILEY | 2419 WEST SUNBURY ROAD, BOYERS, PA 16020, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008410 | $0.00 |
| JAMES D. WELDING | 438 CHRISTIE ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181220002S766 | $0.00 |
| JAMES E. WALKER JR. AND DIANE K. WALKER | 169 CHERRY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181113002315 8 | $0.00 |

| | | | | |
|---|---|---|---|---|
| JAMES EDWARD WALKER JR. AND DIANE K. WALKER | 169 CHERRY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181130023161 | $0.00 |
| JAMES F AND BETH L JOHNSTON | 112 MONTCLAIRE AVE, PITTSBURGH, PA 15229, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180920001917 | $0.00 |
| JAMES L. MEYER | 573 PARKER PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190110000536 | $0.00 |
| JAMES L. NOBLE | 4122 STEUBENVILLE ROAD SE, AMSTERDAM, OH 43903, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190122000192 | $0.00 |
| JAMES MACURAK AND DEBORA L. MACURAK | 1296 HOOKER RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181029002198S | $0.00 |
| JAMES P. BENGELE | 261 KOOSER ROAD, SCOTTDALE, PA 15683, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181206002470 | $0.00 |
| JAMES R. PARKER AND JUDITH PARKER | 168 HAZELNUT ROAD, CHICORA, PA 16365, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190510000841 | $0.00 |
| JANE M NICHOLSON | PO BOX 231, MANITOWISH WATERS, WI 54545, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180920001920 | $0.00 |
| JANICE L. JAMISON | 235 PARSONVILLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190109000383 | $0.00 |
| JANICE M. JONES AND PAUL L. JONES | 826 GROVE ST, PO BOX 12, ST PETERSBURG, PA 16054, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190122000119 | $0.00 |
| JENNIFER L. RUSSELL | 573 PARKER PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181212002513 | $0.00 |
| JERRY CHESTER LUKAVICH AND TONI LUKAVICH | 849 NORTH WASHINGTON ROAD, NORTH WASHINGTON, PA 16048, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180815500167201 | $0.00 |
| JOAN M. SUTTER | 1213 SAVANNAH AVE., PITTSBURGH, PA 15218, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190130000177 | $0.00 |
| JODEE E HAZLET AND W. DAVID HAZLET, IV | 848 NORTH WASHINGTON RD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180806001878 | $0.00 |
| JOHN A. WARNER JR. AND BERNADINE WARNER | 120 NAGY ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190110000053 | $0.00 |
| JOHN A. WARNER JR. AND BERNADINE WARNER | 120 NAGY ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181213002232 | $0.00 |
| JOHN J. SZERSYNSKI | 613 W SLIPPERY ROCK ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180618001902 | $0.00 |
| JOHN L. ZANELLA AND ANITA C. ZANELLA | PO BOX 252, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181113002315J | $0.00 |
| JOHN P. EHRMAN AND SHARON J. EHRMAN | 1239 ONEIDA VALLEY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181119002350? | $0.00 |
| JOHN RUSSELL AND MARGARET LYNN MCKINNIS | 862 NORTH WASHINTON RD, PO BOX 63, NORTH WASHINGTON, PA 160480063, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180920001901 | $0.00 |
| JOHN T. HOEFT | 10580 EAST BACON ROAD, PITTSFORD, MI 49271, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181204002454 | $0.00 |
| JOHN W. LANDERS JR. AND VICKY H. MILLS-LANDERS | 1109 GENESEE AVE NE, WARREN, OH 44483, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190130000178? | $0.00 |
| JOSEFA H HERBST | 1230 ROYAL DRIVE APT 274, SOUTH PARK, PA 15129, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181029002972 | $0.00 |
| JOSEPH A EVERETTS LIFE TENANT At AL | 270 W ELDORADO RD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Tax Parcel - 260-01F51-0000019A-0000 | $0.00 |
| JOSEPH C. LANDERS AND LINDA A. LANDERS | 4591 ASPEN DR, YOUNGSTOWN, OH 44515, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180215000282A | $0.00 |
| JOSEPH E AND ANNA L EVERETTS | 2314 ONEIDA VALLEY ROAD, PO BOX 56, NORTH WASHINGTON, PA 16048, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180920001929O | $0.00 |
| JOSEPH E. FLYNN | 5106 16TH AVENUE SOUTH, GULFPORT, FL 33707, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181204002456 | $0.00 |
| JOSEPH E. HENDERSON | 281 VOGEL ROAD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190109000357 | $0.00 |
| JOSHUA L SMITH | 301 PARKER PIKE, PARKER, PA 16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180920001928O | $0.00 |
| JOYCE A CAMPBELL | 1800 ONEIDA VALLEY RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180920001929I | $0.00 |
| JUANITA JEAN MARTIN | 854 NORTH WASHINGTON RD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180815001673O | $0.00 |
| JUDITH A. LANDGRAF AND RICHARD L. LANDGRAF | 224 OLD STATE ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180209021981 | $0.00 |
| JUSTIN KARCH AND SARAH KARCH | 229 PINE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190109000036J | $0.00 |
| KAIN DRAKE AND RACHEL SHEAKLEY | 122 ARROWHEAD ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180920001928J | $0.00 |
| KAREN D. SHOUP | 24 MEISENHELDER ROAD, WRIGHTSVILLE, PA 17368, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181212002513O | $0.00 |
| KAREN L. SARNOSKY | 1449 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190130000176? | $0.00 |
| KATHE L. SANTILLO AND JEFFREY DAVID SANTILLO | 208 MAPLEWOOD ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181204002445? | $0.00 |
| KEITH B LITZENBERG | 907 HOOKER ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180815001672? | $0.00 |
| KEITH B. LITZENBERG | 907 HOOKER ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190109000038S | $0.00 |
| KEITH B. LITZENBERG | 907 HOOKER ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | #N/A | $0.00 |
| KEITH G MILLER AND JOLOYN B MILLER | 1423 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180815001673? | $0.00 |
| KEITH G. MILLER AND JOLOYN B. MILLER | 1423 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER SOUTH - Instrument #20190122000118O | $0.00 |
| KEITH WILLIAM CRIDER AND KANDICE L. CRIDER | 345 CHERRY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181213002524? | $0.00 |
| KENNETH C. PAUGH | 121 OLD STATE ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190122000117? | $0.00 |
| KENNETH I. MCALPINE JR. AND KRISTIN MCALPINE | 846 SUNSET CIRCLE, CRANBERRY TWP, PA 16066, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181204002450O | $0.00 |
| KENNETH KNAUSS AND KAREN KNAUSS | 219 OAKVALE BLVD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180920001930S | $0.00 |
| KENWIN LLC | 849 STATE ROUTE 68, EAST BRADY, PA 16028, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190122000119O | $0.00 |
| KERRY J. WEIBEL AND SUSAN E. WEIBEL | 223 CATALPA RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190130000177I | $0.00 |
| KEVIN HINDMAN, J. STEWART HINDMAN, KELLIE MCMURDY | 276 HINDMAN ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190515000878I | $0.00 |
| KIMBERLY ZEDRECK AND RICHARD ZEDRECK | 461 CHRISTIE ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181220002574 | $0.00 |
| KIRBY K. LITZENBERG | 1734 ONEIDA VALLEY RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190122000183 | $0.00 |
| KIRBY K. LITZENBERG | 1734 ONEIDA VALLEY RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER SOUTH - Instrument #20190122000185 | $0.00 |
| KIRBY K. LITZENBERG | 1734 ONEIDA VALLEY RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER SOUTH - Instrument #20190122000181 | $0.00 |
| KIRBY K. LITZENBERG AND KEITH B. LITZENBERG | 1734 ONEIDA VALLEY RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER SOUTH - Instrument #20190122000186 | $0.00 |
| KIRBY LITZENBERG | 1734 ONEIDA VALLEY RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER NORTH - Instrument #20190122000182 | $0.00 |
| KIRBY LITZENBERG | 1734 ONEIDA VALLEY RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER SOUTH - Instrument #20190122000184 | $0.00 |
| KIRSTIN A. ELSER | PO BOX 479, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190510000841? | $0.00 |

| Name | Address | Entity | Description | Amount |
|---|---|---|---|---|
| KYLE K. ROTTMAN AND KRISTEN R. ROTTMAN | 1361 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190215002834 | $0.00 |
| LARRY E. KRILEY AND DIANE CUMBERLAND | 332 MAPLEWOOD ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812040024455 | $0.00 |
| LARRY E. NOBLE | 3100 SWALLEN AVE., LOUISVILLE, OH 44641, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008398 | $0.00 |
| LARRY G. POLLOCK AND VIRGINIA L. POLLOCK | 420 BUENA VISTA RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812130025250 | $0.00 |
| LAUREL MYERS, JAMES D. HINDMAN, RONALD F. HINDMAN | 922 BONNIEBROOK ROAD, BUTLER, PA 16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201902150002832 | $0.00 |
| LEROY C. DEWOEHREL AND PENNY SUE DEWOEHREL | 522 PARKER PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812130025245 | $0.00 |
| LIMESTONE SPRING ACQUISITIONS LLC | 5541 WALNUT STREET, SUITE 202, PITTSBURGH, PA 15232, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901100000537 | $0.00 |
| LINDA D. KELLY AND CHARLES T. KELLY | 257 HINDMAN ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201810290021975 | $0.00 |
| LINDA L. WELDING | 437 CHRISTIE ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812060024709 | $0.00 |
| LINDA S. STEELE, TRAVIS & KAITLIN ROSE | 845 SEVEN HILLS ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901220001196 | $0.00 |
| LINDA SLATER | 116 OLD STATE ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201811130023155 | $0.00 |
| LINDA SLATER | 116 OLD STATE ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER SOUTH - Instrument #201812120025138 | $0.00 |
| LYLE HUTCHISON AND NANCY HUTCHISON | 118 GREENHILL ROAD, PO BOX 172, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008417 | $0.00 |
| LYNDA C. BROWN | 2499 ESQUE SHARP RD, MOUNT PLEASANT, TN 38474, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201509150020292 | $0.00 |
| MARC D. CHRISTIE AND HEATHER A. CHRISTIE | 427 ASPEN ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812200025775 | $0.00 |
| MARCIA A MCALPINE | 2900 TUSCARAWAS ROAD, BEAVER, PA 15009, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201810290021971 | $0.00 |
| MARK W GARRIS | 510 W. FRONT STREET, OIL CITY, PA 16301, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019273 | $0.00 |
| MARY BEATTY | 128 JENNY DRIVE, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812130025247 | $0.00 |
| MARY E. DUNLAP | 535 10TH STREET NW, CARROLLTON, OH 44615, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901220001194 | $0.00 |
| MARYBETH E. HINDS TRUST | PO BOX 346, FOXBURG, PA 16036, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812220 | $0.00 |
| MAXIME A. RACAUDE & TYLER J. BASSETT | 241 PARSONVILLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901220001202 | $0.00 |
| MERLE PETERS | 1409 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008406 | $0.00 |
| MICHAEL A. CUMBERLAND AND AMY L. CUMBERLAND | 1365 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901220001179 | $0.00 |
| MICHAEL A. MARINO | 24 KENMORE AVENUE, PITTSBURGH, PA 15221, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901090000359 | $0.00 |
| MICHAEL B AND THELMA G HENRY | 172 HAZELNUT ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201810020020155 | $0.00 |
| MICHAEL C. & JESSICA F. MILES & ANDREA M. MILES | 601 CAMERON ROAD, NEW CASTLE, PA 16101, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER NORTH - Instrument #201905100008409 | $0.00 |
| MICHAEL CAMPBELL AND DIANE CAMPBELL | 426 CHRISTIE ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812130025234 | $0.00 |
| MICHAEL CAMPBELL AND DIANE CAMPBELL | 426 CHRISTIE ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812060024708 | $0.00 |
| MICHAEL D. HOEFT AND COLLETTE M. HOEFT | 1459 PINE RIVER TRAIL, GAYLORD, MI 49735, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008397 | $0.00 |
| MICHAEL D. METCALFE | 319 FAIRMONT RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812200025770 | $0.00 |
| MICHAEL J. ANDREASSI AND LEAH DAWN ANDREASSI | 1071 KITTANNING PIKE, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901100000538 | $0.00 |
| MICHAEL J. FLYNN AND PATRICIA H. FLYNN | 3309 CLANDON PARK DRIVE, RALEIGH, NC 27613, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008396 | $0.00 |
| MICHAEL J. LANDERS AND ITALA LANDERS | 880 BIRD BAY DR. W. #204 BLDG. 63, VENICE, FL 34285, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201902150002823 | $0.00 |
| MICHAEL J. NICODEMUS AND RANI L. NICODEMUS | 500 NICO LANE, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201811190023511 | $0.00 |
| MICHAEL J. VIRDEN AND MARGO VIRDEN | 2925 REPLICA LANE, PORTSMOUTH, VA 23703, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008395 | $0.00 |
| MICHAEL KLIXBULL AND MARCEE KLIXBULL | 231 CALICO ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901300001768 | $0.00 |
| MICHAEL M. ALWORTH AND MELISSA D. ALWORTH | 317 NORTH ASH AVENUE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201810290021987 | $0.00 |
| MICHAEL MARKIW II AND DEBORAH J. MARKIW | 1327 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201902150002833 | $0.00 |
| MICHAEL T. POTCHAK AND SANDRA L. POTCHAK | 1303 KITTANNING PIKE, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201902150002821 | $0.00 |
| MICHELLE R. CLARK AND PATRICK R. CLARK | 100 VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER SOUTH - Instrument #201905100008413 | $0.00 |
| MITCHELL DANCIK JR AND LEEANN DANCIK | 281 BUENA VISTA RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014135 | $0.00 |
| MYRTLE E. MCCLURE | 2014 KITTANNING PIKE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201811130023160 | $0.00 |
| NANCY GILLESPIE AND JAMES A. GILLESPIE | 1634 BRANCHTON RD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901090000382 | $0.00 |
| NANCY L HINDMAN | 439 AIRPORT ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019316 | $0.00 |
| NAOMI POPENEY | 3682 STATE HIGHWAY 8, TITUSVILLE, PA 16354, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008403 | $0.00 |
| NICHOLAS R AND ERIN M ALBERT | 266 SANDY POINT RD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019282 | $0.00 |
| NOAH GERSHAK | 453 BUTTERNUT ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812120025122 | $0.00 |
| NORTH WASHINGTON VOLUNTEER FIRE DEPARTMENT | PO BOX 94, NORTH WASHINGTON, PA 16048, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901300001776 | $0.00 |
| PATRICIA A. KNOLL | 311 FIFTH ST, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201901090000365 | $0.00 |
| PATRICK LEE WALKER AND MARY KRISTIN WALKER | 148 CHERRY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201902150002831 | $0.00 |
| PATTY K MILLER | 154 ASPEN ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019309 | $0.00 |
| PAUL A. MOORE AND MELISSA R. MOORE | 237 OLD BRICK ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812120025125 | $0.00 |
| PAUL E. ENSCOE AND JAMIE S. ENSCOE | 2399 ONEIDA VALLEY ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201409160022080 | $0.00 |
| PAUL E. IRWIN AND BARBARA C. IRWIN | 2195 SYCAMORE ROAD, YORK, PA 17408, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201902150002842 | $0.00 |
| PAUL ENSCOE AND JAMIE SUE ENSCOE | 2399 ONEIDA VALLEY ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER NORTH - Instrument #201905100008408 | $0.00 |
| PAUL G. KOLLINGER AND MARJORIE J. KOLLINGER | 510 DODDS ROAD, BUTLER, PA 16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201812120025123 | $0.00 |

| | | | | |
|---|---|---|---|---|
| PAUL J HENRY | 172 HAZELNUT ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180920015289 | $0.00 |
| PAUL L. ANDERSON AND BETTY D. ANDERSON | 143 HINDMAN ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER SOUTH - Instrument #20190110000548 | $0.00 |
| PETER P. BARTUS | 2016 SPRING STREET, PITTSBURGH, PA 15210, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181206002471? | $0.00 |
| PETROLEUM VALLEY YOUTH COALITION | PO BOX 226, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190130001764 | $0.00 |
| PHILIP L. LANDERS AND MARYANN G. LANDERS | P. O. BOX 3706, YOUNGSTOWN, OH 44513, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190130001779 | $0.00 |
| PHILLIP M. SHAFFER AND BRENDA L. SHAFFER | 130 HINDMAN ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181113023157 | $0.00 |
| PHYLLIS M EVERLY | 102 EVERLY LANE, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180920019302 | $0.00 |
| PRYOR O. BERRY JR. | 1259 KITTANNING PIKE, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190122000174 | $0.00 |
| R P K & G LIMITED PARTNERSHIP | 222 STEWART ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181220025768 | $0.00 |
| RANDY L. CAMPBELL AND LINDA L. CAMPBELL | 211 PEACEFUL VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190122000195 | $0.00 |
| RAYMOND D. RAMELLI | 111 VERNDALE ROAD, BUTLER, PA 16002, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181213002524? | $0.00 |
| RAYMOND L MCCONNELL | 282 KUHN RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180920019311 | $0.00 |
| REBECCA M. BROWN AND TIM BROWN | 623 PERRY STREET, ELLWOOD CITY, PA 16117, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190215002829 | $0.00 |
| REGINA SUZAN MCFARLAND | 115 FLEEGER RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181113002316? | $0.00 |
| RENEE DUNMIRE | 828 NORTH WASHINGTON RD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181029002197? | $0.00 |
| RICHARD KEITH CAWTHORNE | 1412 COLUMBUS AVE, PITTSBURG, PA 15233, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181029002196? | $0.00 |
| RICHARD L. LANDGRAF JR. AND TAMMI L. LANDGRAF | 245 OLD STATE ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181029002198? | $0.00 |
| RICHARD R. ALTMAN AND LOIS M. ALTMAN | 211 PARSONVILLE ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER NORTH - Instrument #20190114000074? | $0.00 |
| RICHARD STEFANACCI AND PEGGY L. STEFANACCI | 141 TIMBER LANE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181212002517 | $0.00 |
| RICHARD STEFANACCI AND PEGGY L. STEFANACCI | 141 TIMBER LANE, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190109*0000361 | $0.00 |
| RICKARD G SMITH | 4815 STATE ROAD 144, SLINGER, WI 53086, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180920019321 | $0.00 |
| ROBERT C AND JOANNA R RAIDA & ROY C RAIDA | 103 ROCK RIDGE ROAD, PITTSBURGH, PA 15209, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181022002015? | $0.00 |
| ROBERT D. VIRDEN | 704 MATCH POINT DRIVE APT. 202, VIRGINIA BEACH, VA 23462, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190130001774 | $0.00 |
| ROBERT E. MCCOLLOUGH | 871 LAKE REEDY DRIVE, FROSTPROOF, FL 33843, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190109000387 | $0.00 |
| ROBERT G. YOKEL | PO BOX 479, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190110000546 | $0.00 |
| ROBERT G. YOKEL, JR. | PO BOX 479, GIBSONIA, PA 15044, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190510008415 | $0.00 |
| ROBERT H. & DONNA FRY, FRY REV. TR. DATED 11/4/02 | 232 BUTTERNUT ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190215002830 | $0.00 |
| ROBERT LEE DUNN JR. | 119 DUNN LANE, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20190215002835 | $0.00 |
| ROBERT M JR AND KIMBERLY S FLICK | 572 BUENA VISTA RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180920019288 | $0.00 |
| ROBERT M. SHOUP | 854 FOXBURG ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190110000542 | $0.00 |
| ROBERT N. ADAMS AND BONNIE L. ADAMS | 147 WALNUT ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190122000176 | $0.00 |
| RODNEY V. MCCLAINE AND LOIS M. MCCLAINE | 511 FAIRVIEW ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181212002513? | $0.00 |
| ROGER SCHMOLL AND SHARON R SCHMOLL | 550 ASPEN ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181029002196? | $0.00 |
| RONALD A SWARTZLANDER AND LANA J SWARTZLANDER | 628 W SLIPPERY ROAD ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20180806001586? | $0.00 |
| RONALD J. LOUISE AND DONNA G. LOUISE | PO BOX 277, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190110000550 | $0.00 |
| RONALD L. MULLEN | 266 CATALPA ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20180806001587? | $0.00 |
| RONALD L. HILLIARD AND PATRICIA A. HILLIARD | 149 COTTONWOOD ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190130001778 | $0.00 |
| ROY J. VIRDEN AND SUSAN VIRDEN | 8771 KENTVILLE STREET, RIVERSIDE, CA 92508, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190130001772 | $0.00 |
| SANDRA JEAN BRIGHT AND ERIC L. BRIGHT | 322 LAKEWOOD DRIVE, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181213002524? | $0.00 |
| SCOTT A. ESHENBAUGH AND DONNA D. ESHENBAUGH | 109 VIDIC ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181220025767 | $0.00 |
| SCOTT E. COLLIER | 465 FAIRVIEW ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181213002524? | $0.00 |
| SCOTT K. THOMPSON | 207 HINDMAN ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181212002513? | $0.00 |
| SHARON L. BAPTISTE | 119 ASH ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181029002197? | $0.00 |
| SHARON R. WIAND | 262 PEACEFUL VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190109000358 | $0.00 |
| SHARON RENEE SNOW | 307 EAST SLIPPERY ROCK STREET, PO BOX 354, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181212002515 | $0.00 |
| SHAWN CONNERY KELLY AND RACHEL JANINE KELLY | 187 HAYSVILLE ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER SOUTH - Instrument #20190109000038? | $0.00 |
| SPRING FED FARMS LLC | 545 RANDALL DRIVE, NEW CASTLE, PA 16105, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181206002471? | $0.00 |
| STANLEY C. MAY | 3096 HARTSWOOD DR, ALLISON PARK, PA 15101, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181029002197? | $0.00 |
| STEPHEN JORDAN | 480 STRATHMORE LANE APT. 111, LAFAYETTE, CO 80026, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181212002513? | $0.00 |
| STEPHEN M. DUDAS | 557 W. SLIPPERY ROCK ROAD, PO BOX A, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181213002541 | $0.00 |
| STEPHEN W. KERNIC | 411 SUNSET DRIVE, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190109000038? | $0.00 |
| SUSAN E. HOEFT | 1608 WEST LYONS STREET, MOUNT PLEASANT, MI 48858, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181206002471? | $0.00 |
| TAMAR LEE HARTLE AND RONALD L. HARTLE | 168 STEWART ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190130001770 | $0.00 |
| TAMMY S. SUTTON | 824 NORTH WASHINGTON RD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20181029002197? | $0.00 |
| TERRY BOWSER AND RHONDA BOWSER | 254 CATALPA RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #20190130001769 | $0.00 |
| TERRY L. TERWILLIGER AND DEBRA J. TERWILLIGER | 464 CHICORA ROAD, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #20181213002523? | $0.00 |

| | | | | |
|---|---|---|---|---|
| TERRY R. SNYDER AND SHARON L. SNYDER | 123 MURTLAND RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812130025244 | $0.00 |
| THADEUS S. CARR AND TANYA L. CARR | PO BOX 234, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER NORTH - Instrument #201812120025119 | $0.00 |
| THE ALLEGHENY RIVER IRREV. FAM TRUST DATED 7/29/16 | PO BOX 83, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812120025139 | $0.00 |
| THE BODA FAM. TRUST, BY ROBERT D. & SANDRA K. BODA | 121 VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812120025139 | $0.00 |
| THE DAYEN FAMILY PROTECTOR TRUST DATED 5-11-2010 | 125 ELIZABETH DR, BUTLER, PA 16001, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812120025136 | $0.00 |
| THE MICHAEL L & KATHLEEN J. BAUMAN REV TRUST | 2418 GEORGETOWN DAMASCUS, BELOIT, OH 44609, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812060024715 | $0.00 |
| THOMAS A. LANDERS | 108 GERWICK RD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901300001782 | $0.00 |
| THOMAS E. LYNCH | 566 WEST SLIPPERY ROCK ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812040024452 | $0.00 |
| THOMAS F. SHOUP | 170 DWELLINGTON DRIVE, VALENCIA, PA 16059, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008405 | $0.00 |
| THOMAS G. YOUNG | 1015 MAIN HILL STREET, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812200025769 | $0.00 |
| THOMAS R. HUFF, III AND RITA M. HUFF | 134 CHERRY ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201811190023508 | $0.00 |
| THOMAS T AND CATHERINE BLANCE JORDAN | 8722 E SADDLEBACK DRIVE, TUCSON, AZ 85749, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019274 | $0.00 |
| THOMAS W AND SHELLEY B BARTLEY | 192 DIVISION ROAD, PARKER, PA 16049, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019300 | $0.00 |
| TIMOTHY J. JEWART AND LEANNA M. JEWART | 1359 ONEIDA VALLEY ROAD, WEST SUNBURY, PA 16061, USA | EM Energy Pennsylvania, LLC | TOP LEASE - BUTLER SOUTH - Instrument #201901220001177 | $0.00 |
| TIMOTHY SABICH AND GEORGE SABICH | 148 REDWOOD ROAD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812130025246 | $0.00 |
| TIMOTHY SLATER, GINA SLATER, WILLIAM T. SLATER | 268 KUHN RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901090000379 | $0.00 |
| TODD CHARLES AND JENNI LEE HARTLE | 226 DOGWOOD ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019310 | $0.00 |
| TRACY FUTCHER AND TAMMIE FUTCHER | 110 MOSSY OAK DIRVE, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901100000545 | $0.00 |
| TRAVIS ALAN STEELE AND KAITLIN ROSE STEELE | 845 SEVEN HILLS ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812040024448 | $0.00 |
| TRAVIS G AND AMBER L ICE | 189 BYRON CENTER ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019276 | $0.00 |
| TROY ANGERT AND BRIDGETTE ANGERT | 1421 KITTANNING PIKE, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901090000364 | $0.00 |
| VAUNDA LEE SPAULDING | 944 HENDERSON DR. APT. 1, OGDEN, UT 84404, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901140000746 | $0.00 |
| VICKIE LYNN BECK | 2443 ONEIDA VALLEY ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201811130023154 | $0.00 |
| VINCENT PAUL WARNER AND CAROL A. WARNER | 138 NAGY ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901100000533 | $0.00 |
| VINCENT PAUL WARNER AND CAROL WARNER | 138 NAGY ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901100000534 | $0.00 |
| WANDA A. STROUP | 1003 HOOKER RD, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812130025237 | $0.00 |
| WENDY BENSON POUNDS | 159 CARTWRIGHT ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201809200019313 | $0.00 |
| WENDY JO GALENUS AND NATHAN GREY MURRAY | 2734 BROAD STREET, GUM SPRING, VA 23065, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901090000356 | $0.00 |
| WILBERT C. THOMPSON AND JULIE A. THOMPSON | 1180 COMO PARK BLVD, DEPEW, NY 14043, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901300001766 | $0.00 |
| WILLIAM A. SLATER | 145 MORRIS ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008411 | $0.00 |
| WILLIAM B. STONE AND CINDY T. STONE | 12 WARD PLACE, CALDWELL, NJ 07006, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201901100000544 | $0.00 |
| WILLIAM C. FEDOREK AND JACOBINE A. FEDOREK | 111 ASH ROAD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201810290021978 | $0.00 |
| WILLIAM E. MARTIN | 1733 FOLLETT RUN ROAD, WARREN, PA 16365, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008419 | $0.00 |
| WILLIAM E. UENKING AND MARY ANN UENKING | 112 KINGFORD LANE, KARNS CITY, PA 16041, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812040024453 | $0.00 |
| WILLIAM J. SCHOENTAG AND DIANE M. SCHOENTAG | 1469 BRANCHTON ROAD, HILLIARDS, PA 16040, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201810290021986 | $0.00 |
| WILLIAM L SCOTT AND PATRICIA E SCOTT | 236 CATALPA RD, CHICORA, PA 16025, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201807160014153 | $0.00 |
| WILLIAM O JAYNES AND JOAN JAYNES | 2611 MEADE CT, ANN ARBOR, MI 48102, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201809200019275 | $0.00 |
| WILLIAM TAYLOR | 241 GERWICK ROAD, EMLENTON, PA 16373, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER SOUTH - Instrument #201812120025118 | $0.00 |
| WINONA B. DELAIR | 2764 SHADLEY STREET, STREETSBORO, OH 44241, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201902150002838 | $0.00 |
| ZACHARY W. R. SLATER AND JESSICA J. SLATER | 150 MORRIS ROAD, PETROLIA, PA 16050, USA | EM Energy Pennsylvania, LLC | LEASE-OIL AND GAS - BUTLER NORTH - Instrument #201905100008404 | $0.00 |

**Exhibit B**
**Wells**

[*See Attached*]

| API # | Well Name | NSAI Name | County | State | Reservoir | Location | Unit Name | Total Unit Acreage | EM Unit Acreage | WI | NRI |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 37-019-22061 | MORROW 01-MH | MORROW 1 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | MORROW | 136.8 | 136.8 | 1.00000000 | 0.822154099 |
| 37-019-22075 | MORROW 07-BH | MORROW 7 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | MORROW | 136.8 | 136.8 | 1.00000000 | 0.822154099 |
| 37-019-22076 | CRATTY 01-MH | CRATTY 1 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | CRATTY | 263.8 | 263.8 | 1.00000000 | 0.839798183 |
| 37-019-22126 | URSA MAJOR 03-MH | URSA MAJOR 3 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | URSA MAJOR | 623.0 | 623.0 | 1.00000000 | 0.838502540 |
| 37-019-22127 | URSA MAJOR 09-BH | URSA MAJOR 9 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | URSA MAJOR | 623.0 | 623.0 | 1.00000000 | 0.838502540 |
| 37-019-22128 | URSA MAJOR 12-BH | URSA MAJOR 12 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | URSA MAJOR | 623.0 | 623.0 | 1.00000000 | 0.838502540 |
| 37-019-22129 | URSA MAJOR 06-MH | URSA MAJOR 6 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | URSA MAJOR | 623.0 | 623.0 | 1.00000000 | 0.838502540 |
| 37-019-22172 | CRATTY 07-BH | CRATTY 7 BH | BUTLER | PA | BURKETT | BUTLER NORTH | CRATTY | 263.8 | 263.8 | 1.00000000 | 0.839798183 |
| 37-019-22210 | DRACO 03-MH | DRACO 3 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | DRACO | 312.5 | 312.5 | 1.00000000 | 0.846874532 |
| 37-019-22249 | DRACO 01-MH | DRACO 1 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | DRACO | 312.5 | 312.5 | 1.00000000 | 0.846874532 |
| 37-019-22250 | DRACO 05-BH | DRACO 5 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | DRACO | 312.5 | 312.5 | 1.00000000 | 0.846874532 |
| 37-019-22251 | DRACO 07-BH | DRACO 7 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | DRACO | 312.5 | 312.5 | 1.00000000 | 0.846874532 |
| 37-019-22296 | DRACO 09-MH | DRACO 9 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | DRACO | 312.5 | 312.5 | 1.00000000 | 0.846874532 |
| 37-019-22297 | DRACO 11-BH | DRACO 11 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | DRACO | 312.5 | 312.5 | 1.00000000 | 0.846874532 |
| 37-019-22322 | URSA MINOR 01-MH | URSA MINOR 1 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | URSA MINOR | 393.1 | 393.1 | 1.00000000 | 0.841655114 |
| 37-019-22323 | URSA MINOR 03-MH | URSA MINOR 3 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | URSA MINOR | 393.1 | 393.1 | 1.00000000 | 0.841655114 |
| 37-019-22324 | URSA MINOR 05-MH | URSA MINOR 5 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | URSA MINOR | 393.1 | 393.1 | 1.00000000 | 0.841655114 |
| 37-019-22325 | URSA MINOR 07-MH | URSA MINOR 7 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | URSA MINOR | 393.1 | 393.1 | 1.00000000 | 0.841655114 |
| 37-019-22326 | URSA MINOR 09-BH | URSA MINOR 9 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | URSA MINOR | 393.1 | 393.1 | 1.00000000 | 0.841655114 |
| 37-019-22327 | URSA MINOR 11-BH | URSA MINOR 11 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | URSA MINOR | 393.1 | 393.1 | 1.00000000 | 0.841655114 |
| 37-019-22329 | URSA MINOR 13-BH | URSA MINOR 13 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | URSA MINOR | 393.1 | 393.1 | 1.00000000 | 0.841655114 |
| 37-019-22331 | URSA MINOR 15-BH | URSA MINOR 15 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | URSA MINOR | 393.1 | 393.1 | 1.00000000 | 0.841655114 |
| 37-019-22403 | LYNX 01-MH | LYNX 1 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.0000000000 | 0.845000904 |
| 37-019-22404 | LYNX 02-MH | LYNX 2 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.0000000000 | 0.845000904 |
| 37-019-22405 | LYNX 03-MH | LYNX 3 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.00000000 | 0.845000904 |
| 37-019-22406 | LYNX 04-MH | LYNX 4 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.00000000 | 0.845000904 |
| 37-019-22407 | LYNX 06-BH | LYNX 6 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.00000000 | 0.845000904 |
| 37-019-22408 | LYNX 07-MH | LYNX 7 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.0000000000 | 0.845000904 |
| 37-019-22409 | LYNX 08-BH | LYNX 8 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.0000000000 | 0.845000904 |
| 37-019-22410 | LYNX 09-MH | LYNX 9 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.00000000 | 0.845000904 |
| 37-019-22411 | LYNX 11-BH | LYNX 11 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.0000000000 | 0.845000904 |
| 37-019-22412 | LYNX 13-BH | LYNX 13 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.0000000000 | 0.845000904 |
| 37-019-22413 | LYNX 15-BH | LYNX 15 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.0000000000 | 0.845000904 |
| 37-019-22414 | LYNX 17-BH | LYNX 17 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | LYNX | 425.2 | 425.2 | 1.00000000 | 0.845000904 |
| 37-019-22427 | POLARIS 15-BH | POLARIS 15 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | POLARIS | 630.1 | 630.1 | 1.0000000000 | 0.8400429823 |
| 37-019-22431 | POLARIS 13-BH | POLARIS 13 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | POLARIS | 630.1 | 630.1 | 1.0000000000 | 0.8400429823 |
| 37-019-22432 | POLARIS 11-BH | POLARIS 11 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | POLARIS | 630.1 | 630.1 | 1.0000000000 | 0.8400429823 |
| 37-019-22433 | POLARIS 09-BH | POLARIS 9 BH | BUTLER | PA | BURKETT | BUTLER SOUTH | POLARIS | 630.1 | 630.1 | 1.0000000000 | 0.8400429823 |
| 37-019-22434 | POLARIS 07-MH | POLARIS 7 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | POLARIS | 630.1 | 630.1 | 1.0000000000 | 0.8400429823 |
| 37-019-22435 | POLARIS 05-MH | POLARIS 5 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | POLARIS | 630.1 | 630.1 | 1.00000000 | 0.840042982 |
| 37-019-22436 | POLARIS 03-MH | POLARIS 3 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | POLARIS | 630.1 | 630.1 | 1.0000000000 | 0.8400429823 |
| 37-019-22437 | POLARIS 01-MH | POLARIS 1 MH | BUTLER | PA | MARCELLUS | BUTLER SOUTH | POLARIS | 630.1 | 630.1 | 1.00000000 | 0.840042982 |
| 37-019-22459 | DORADO 01-MH | DORADO 1 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | ALPHA CHAMAELEONTIS | 1073.0 | 1050.4 | 1.00000000 | 0.841418549 |
| 37-019-22460 | DORADO 03-MH | DORADO 3 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | DORADO | 531.1 | 531.1 | 1.00000000 | 0.840797515 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 37-019-22461 | DORADO 05-MH | DORADO 5 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | DORADO | 531.1 | 531.1 | 1.00000000 | 0.840797515 |
| 37-019-22462 | DORADO 07-MH | DORADO 7 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | DORADO | 531.1 | 531.1 | 1.0000075153 | 0.8407975153 |
| 37-019-22463 | DORADO 11-BH | DORADO 11 BH | BUTLER | PA | BURKETT | BUTLER NORTH | ALPHA CHAMAELEONTIS | 1073.0 | 1050.4 | 1.00000000 | 0.841418549 |
| 37-019-22464 | DORADO 13-BH | DORADO 13 BH | BUTLER | PA | BURKETT | BUTLER NORTH | DORADO | 531.1 | 531.1 | 1.0000075153 | 0.8407975153 |
| 37-019-22465 | DORADO 15-BH | DORADO 15 BH | BUTLER | PA | BURKETT | BUTLER NORTH | DORADO | 531.1 | 531.1 | 1.00000000 | 0.8407975153 |
| 37-019-22466 | DORADO 17-BH | DORADO 17 BH | BUTLER | PA | BURKETT | BUTLER NORTH | DORADO | 531.1 | 531.1 | 1.0000075153 | 0.8407975153 |
| 37-019-22467 | DORADO 19-BH | DORADO 19 BH | BUTLER | PA | BURKETT | BUTLER NORTH | ORION | 945.9 | 945.9 | 1.00000000 | 0.837628144 |
| 37-019-22468 | DORADO 09-MH | DORADO 9 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | ORION | 945.9 | 945.9 | 1.00000000 | 0.837628144 |
| 37-019-22665 | SCULPTOR 01-MH | SCULPTOR 1 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | DELTA SCULPTORIS | 551.4 | 551.4 | 1.00000000 | 0.896320700 |
| 37-019-22666 | SCULPTOR 02-MH | SCULPTOR 2 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | ALPHA SCULPTORIS | 621.1 | 621.1 | 1.00000000 | 0.844303559 |
| 37-019-22667 | SCULPTOR 04-MH | SCULPTOR 4 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | BETA SCULPTORIS | 593.5 | 593.5 | 1.00000000 | 0.851014485 |
| 37-019-22668 | SCULPTOR 05-MH | SCULPTOR 5 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | ETA SCULPTORIS | 495.2 | 495.2 | 1.00000000 | 0.854916905 |
| 37-019-22669 | SCULPTOR 03-MH | SCULPTOR 3 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | ETA SCULPTORIS | 495.2 | 495.2 | 1.00000000 | 0.854916905 |
| 37-019-22670 | SCULPTOR 07-MH | SCULPTOR 7 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | ZETA SCULPTORIS | 458.2 | 458.2 | 1.00000000 | 0.837791856 |
| 37-019-22671 | SCULPTOR 06-MH | SCULPTOR 6 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | BETA SCULPTORIS | 593.5 | 593.5 | 1.00000000 | 0.851014485 |
| 37-019-22672 | SCULPTOR 08-MH | SCULPTOR 8 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | GAMMA SCULPTORIS | 508.2 | 508.2 | 1.00000000 | 0.855195975 |
| 37-019-22673 | SCULPTOR 09-MH | SCULPTOR 9 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | ZETA SCULPTORIS | 458.2 | 458.2 | 1.00000000 | 0.837791856 |
| 37-019-22674 | SCULPTOR 10-MH | SCULPTOR 10 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | GAMMA SCULPTORIS | 508.2 | 508.2 | 1.00000000 | 0.855195975 |
| 37-019-22706 | CANIS MAJOR 01-MH | CANIS MAJOR 1 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | ALPHA CANIS MAJORIS | 296.8 | 296.8 | 1.00000000 | 0.849724741 |
| 37-019-22707 | CANIS MAJOR 02-MH | CANIS MAJOR 2 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | ALPHA CANIS MAJORIS | 296.8 | 296.8 | 1.00000000 | 0.8497247413 |
| 37-019-22708 | CANIS MAJOR 04-MH | CANIS MAJOR 4 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | BETA CANIS MAJORIS | 514.2 | 514.2 | 1.00000000 | 0.8516863016 |
| 37-019-22709 | CANIS MAJOR 03-MH | CANIS MAJOR 3 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | BETA CANIS MAJORIS | 514.2 | 514.2 | 1.00000000 | 0.851686302 |
| 37-019-22710 | CANIS MAJOR 06-MH | CANIS MAJOR 6 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | GAMMA CANIS MAJORIS | 510.8 | 510.8 | 1.00000000 | 0.8514021474 |
| 37-019-22711 | CANIS MAJOR 07-MH | CANIS MAJOR 7 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | DELTA CANIS MAJORIS | 639.9 | 639.9 | 1.00000000 | 0.853117102 |
| 37-019-22712 | CANIS MAJOR 05-MH | CANIS MAJOR 5 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | GAMMA CANIS MAJORIS | 510.8 | 510.8 | 1.00000000 | 0.851402147 |
| 37-019-22713 | CANIS MAJOR 08-MH | CANIS MAJOR 8 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | DELTA CANIS MAJORIS | 639.9 | 639.9 | 1.00000000 | 0.8531171016 |
| 37-019-22731 | MONOCEROS 06-MH | MONOCEROS 6 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | ALPHA MONOCEROTIS | 465.1 | 465.1 | 1.0000000000 | 0.8544000000 |
| 37-019-22733 | MONOCEROS 08-MH | MONOCEROS 8 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | ALPHA MONOCEROTIS | 465.1 | 465.1 | 1.0000000000 | 0.8544000000 |
| 37-019-22734 | MONOCEROS 10-MH | MONOCEROS 10 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | BETA MONOCEROTIS | 598.3 | 598.3 | 1.0000000000 | 0.8544000000 |
| 37-019-22736 | MONOCEROS 14-MH | MONOCEROS 14 MH | BUTLER | PA | MARCELLUS | BUTLER NORTH | BETA MONOCEROTIS | 598.3 | 598.3 | 1.0000000000 | 0.8544000000 |

**Exhibit C**
**FORM OF MASTER ASSIGNMENT AND ASSUMPTION AGREEMENT**

This MASTER ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Agreement**"), dated as of [●], 2020, is made and entered into by and among EdgeMarc Energy Holdings, LLC, a Delaware limited liability company, and each of the EM Subsidiaries (collectively, the "**Assignors**"), and KB OREO, LLC, an Ohio limited liability company (the "**Assignee**").

Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in that certain Asset Purchase Agreement dated January 24, 2020 (as amended, modified or supplemented from time to time in accordance with its terms, the "**Purchase Agreement**") among the Assignors and the Assignee.

**WHEREAS**, pursuant to this Agreement, each of the Assignors shall sell, convey, assign, transfer and deliver to the Assignee, and the Assignee shall purchase, acquire and accept from the Assignor, all of such Assignor's right, title and interest in, to, and under the Assets and the Assumed Liabilities, in each case on the terms and subject to the conditions set forth in the Purchase Agreement;

**NOW, THEREFORE**, in consideration of the premises and covenants hereinafter contained, in consideration of the representations, warranties and covenants contained in the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto desire to enter into this Agreement on the terms set forth herein.

Section 1.  *Assignment of Assets*. Upon the terms and subject to the conditions of the Purchase Agreement, each of the Assignors does hereby convey, transfer, assign and deliver to the Assignee, and the Assignee hereby accepts from each such Assignor, all of such Assignor's right, title and interest in and to the Assets, Free and Clear; provided, that nothing herein will be deemed to constitute an assignment to convey, transfer, assign or delivery the Excluded Assets.

Section 2.  *Assignment and Assumption of Assumed Liabilities*. Upon the terms and subject to the conditions of the Purchase Agreement, each of the Assignors hereby assigns to Assignee, and the Assignee hereby assumes from the Assignors, all of the Assumed Liabilities.

Section 3.  *Purchase Agreement*. The respective rights of the Assignors and the Assignee with respect to the Assets sold, conveyed, assigned, transferred and delivered hereby and the Assumed Liabilities assumed hereby shall be governed exclusively by the Purchase Agreement, and nothing in this Agreement shall alter any right, Liability or obligation arising under the Purchase Agreement, which shall (without limiting the generality of the foregoing) govern, and shall contain the sole and exclusive representations, warranties and obligations of the parties with respect to such Assets and such Assumed Liabilities. If there is any conflict or inconsistency between the provisions of the Purchase Agreement and this Agreement, the provisions of the Purchase Agreement shall govern.

Section 4.        *Effective Date*. This Agreement shall be effective as of the Closing.

Section 5.        *Miscellaneous*. The provisions of Sections 13.04 (*Entire Agreement; Amendment*), 13.05 (*Assignment*), 13.06 (*Severability*), 13.07 (*Expenses*), 13.09 (*Governing Law, Consent to Jurisdiction and Venue; Jury Trial Waiver*), 13.10 (*Counterparts*) and 13.11 (*Parties in Interest; No Third Party Beneficiaries*) of the Purchase Agreement shall apply to this Agreement mutatis mutandis.

**[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the Assignee and the Assignors have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

**ASSIGNORS**:

**EDGEMARC ENERGY HOLDINGS, LLC**

By: _____

Name: _____

Title: _____

**EM SUBSIDIARIES**:

[_____]

*[Signature Page to Master Assignment and Assumption Agreement]*

**ASSIGNEE**:

**KB OREO, LLC**

By: _____
Name: _____
Title: _____

[*Signature Page to Master Assignment and Assumption Agreement*]

**Exhibit D**
**Equipment**

1. **Butler South**

   - Lake Oneida Pump Station:  (2) Water Transfer pumps (redundant system) with controls contained in a sound attenuated container

   - Hydra Water Line:  ~3.4 miles of buried HDPE line from Lake Oneida to Morrow Junction

   - Aquarius Fresh Water Impoundment (In Ground FWI):  ~8mmg Capacity

   - Above Ground Storage Tank (AST):  (1) EdgeMarc Owned 30k fresh water above ground storage tank located at Lynx

2. **Butler North**

   - Tigris Waterline:  ~27 miles EM owned above ground HDPE line from Morrow Junction to Aries well pad

   - Argo Impoundment:  ~7mmg In Ground Fresh Water Impoundment

   - AST:  (1) EM owned Tank in Tank Produced Water Above Ground storage tank at Sculptor (40k Interior/46k Exterior)

**Exhibit E**
**Surface Rights**

[*See Attached*]

| Agreement Number | Agreement Type | Agreement Name | Original Lessee/Grantee | Gross Acres | Net Acres | Royalty Type | Royalty Interest | Working Interest | NRI | Agreement Date | Effective Date | Expiration Date | Prospect | Title Status | Status | Instrument Number | Recording Date | Book | Page | Monday payment due dates | delay rental payment due dates | Monday Status | Amount due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 107541000 | SURFACE USE AGR | C.H. Snyder Company | EM Energy Pennsylvania, LLC | 105.94 | 0 | | | | | 9/25/2014 | 9/25/2014 | 9/24/2024 | | Paid | Active | 20140170025052 | 41929 | | | | | | |
| 107666000 | SURFACE USE AGR | Thomas J. Mabold anc | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 1/27/2015 | 1/27/2015 | 12/31/2099 | BUTLER SO | Paid | Active | 201504290008902 | 42123 | | | | | | |
| 107689000 | ROAD ROW | Donald P. Fleming Irre | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 2/16/2015 | 2/16/2015 | 12/31/2099 | BUTLER SO | Paid | Active | 201504210008191 | 42115 | | | | | | |
| 108298000 | WATER TRANSFER | Leslie P. King and Rob | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/25/2017 | 7/25/2017 | 7/25/2019 | BUTLER SO | Paid | Active | 20170170022656 | 43025 | | | | | | |
| 108299000 | WATER TRANSFER | Leslie P. King and Rob | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/25/2017 | 7/25/2017 | 7/25/2019 | BUTLER SO | Paid | Active | 201710170022663 | 43025 | | | | | | |
| 108300000 | WATER TRANSFER | Leslie P. King and Rob | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/25/2017 | 7/25/2017 | 7/25/2019 | BUTLER SO | Paid | Active | 201710170022655 | 43025 | | | | | | |
| 108301000 | WATER TRANSFER | Robert Hoegle | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/11/2017 | 8/11/2017 | 8/11/2019 | BUTLER SO | Paid | Active | 201710170022653 | 43025 | | | | | | |
| 108302000 | WATER TRANSFER | Robert E. Morris and D | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/24/2017 | 8/24/2017 | 8/23/2029 | BUTLER SO | Paid | Active | TBR | | | | | | | |
| 108303000 | WATER TRANSFER | Catherine E. Slack | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/10/2017 | 8/10/2017 | 8/9/2019 | BUTLER NO | Paid | Active | 201710170022654 | 43025 | | | | | | |
| 108309000 | WATER TRANSFER | Bruce D. and Diana L. | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 10/19/2017 | 10/19/2017 | 10/30/2020 | | Paid | Active | 201904260007367 | 43581 | | | | | | |
| 108312000 | WATER TRANSFER | Eugene S. and Betty J | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/5/2017 | 6/5/2017 | 6/5/2020 | | Paid | Active | 201710170022669 | 43025 | | | | | | |
| 108313000 | WATER TRANSFER | Arthur L. Morrow | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/7/2017 | 6/7/2017 | 6/7/2020 | | Paid | Active | 201710170022670 | 43025 | | | | | | |
| 108314000 | WATER TRANSFER | Joan Carole MacKay E | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/30/2017 | 6/30/2017 | 6/30/2019 | | Paid | Active | 201710170022671 | 43025 | | | | | | |
| 108315000 | WATER TRANSFER | Joel Roderick and Shir | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/21/2017 | 6/21/2017 | 6/21/2019 | | Paid | Active | 201710170022672 | 43025 | | | | | | |
| 108316000 | WATER TRANSFER | William Maynard Mack | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/23/2017 | 6/23/2017 | 6/23/2019 | | Paid | Active | 201710170022673 | 43025 | | | | | | |
| 108317000 | WATER TRANSFER | William E. Snyder III | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/15/2017 | 8/15/2017 | 8/15/2019 | | Paid | Active | 201710170022674 | 43025 | | | | | | |
| 108318000 | WATER TRANSFER | Gene A. and Linda J. V | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/24/2017 | 6/24/2017 | 6/24/2020 | | Paid | Active | 201710170022675 | 43025 | | | | | | |
| 108319000 | WATER TRANSFER | Patricia Brucker by PO | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/27/2017 | 6/27/2017 | 6/27/2020 | | Paid | Active | 201710170022676 | 43025 | | | | | | |
| 108320000 | WATER TRANSFER | Robert D. and Deborah | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/29/2017 | 6/29/2017 | 6/29/2019 | | Paid | Active | 201710170022677 | 43025 | | | | | | |
| 108321000 | WATER TRANSFER | Glenn A. Miller et al | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/14/2017 | 6/14/2017 | 6/14/2020 | BUTLER SO | Paid | Active | 201710170022678 | 43025 | | | | | | |
| 108322000 | WATER TRANSFER | Gregg D Rider and Ka | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/30/2017 | 6/30/2017 | 6/30/2019 | | Paid | Active | 201710170022684 | 43025 | | | | | | |
| 108322000 | WATER TRANSFER | David Rider and Sherr | EM Energy Pennsylvania LLC | 0 | 0 | | | | | 7/6/2017 | 7/6/2017 | 7/6/2020 | BUTLER NO | Paid | Active | 201710170022681 | 43025 | | | | | | |
| 108322000 | WATER TRANSFER | Grant M Rider and Mel | EM Energy Pennsylvania LLC | 0 | 0 | | | | | 7/5/2017 | 7/5/2017 | 7/5/2020 | BUTLER NO | Paid | Active | 201710170022683 | 43025 | | | | | | |
| 108322000 | WATER TRANSFER | Roger Miller and Leslie | EM Energy Pennsylvania LLC | 0 | 0 | | | | | 7/8/2017 | 7/8/2017 | 7/8/2020 | BUTLER NO | Paid | Active | 201710170022682 | 43025 | | | | | | |
| 108322000 | WATER TRANSFER | Timothy A Suchonic ar | EM Energy Pennsylvania LLC | 0 | 0 | | | | | 7/25/2017 | 7/25/2017 | 7/25/2019 | BUTLER NO | Paid | Active | 201710170022680 | 43025 | | | | | | |
| 108323000 | WATER TRANSFER | Joyce S. Cooper | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/6/2017 | 7/6/2017 | 7/6/2019 | | Paid | Active | 201710170022685 | 43025 | | | | | | |
| 108324000 | WATER TRANSFER | Henry J. and Susan J. | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 5/1/2019 | 5/1/2019 | 11/1/2020 | | Paid | Active | 201902150002828 | 43511 | | | | | | |
| 108325000 | WATER TRANSFER | Michael M. Steele Jr. | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/7/2017 | 6/7/2017 | 6/7/2020 | | Paid | Active | 201902150002828 | 43511 | | | | | | |
| 108326000 | WATER TRANSFER | Shirley Ann Anderson | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/17/2017 | 6/17/2017 | 6/17/2020 | | Paid | Active | 201710170022688 | 43025 | | | | | | |
| 108327000 | WATER TRANSFER | Frank J. Pelkofer Jr. ar | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/16/2017 | 6/16/2017 | 6/16/2020 | | Paid | Active | 201710170022689 | 43025 | | | | | | |
| 108328000 | WATER TRANSFER | John L, Anita C., and J | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/15/2017 | 6/15/2017 | 6/15/2020 | | Paid | Active | 201710170022690 | 43025 | | | | | | |
| 108329000 | WATER TRANSFER | Henry J. and Susan J. | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 5/1/2019 | 5/1/2019 | 11/1/2020 | | Paid | Active | 201902150002827 | 43511 | | | | | | |
| 108330000 | WATER TRANSFER | Henry J. and Susan J. | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 5/1/2019 | 5/1/2019 | 11/1/2020 | | Paid | Active | 201902150002826 | 43511 | | | | | | |
| 108331000 | WATER TRANSFER | Russell M. Digiacomo | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/19/2017 | 6/19/2017 | 6/19/2020 | | Paid | Active | 201710170022693 | 43025 | | | | | | |
| 108332000 | WATER TRANSFER | Harold J. Schneider | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/2/2017 | 8/2/2017 | 8/2/2019 | | Paid | Active | 201710170022694 | 43025 | | | | | | |
| 108333000 | WATER TRANSFER | Melvin G. and Heidi M. | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/1/2017 | 7/1/2017 | 7/1/2019 | BUTLER NO | In Title | Active | 201710170022696 | 43025 | | | | | | |
| 108335000 | WATER TRANSFER | Kenneth L. and Teresa | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/28/2017 | 6/28/2017 | 6/28/2020 | | Paid | Active | 201710170022695 | 43025 | | | | | | |
| 108336000 | WATER TRANSFER | Gerald J. and Kevin P. | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/11/2017 | 8/11/2017 | 8/11/2019 | | Paid | Active | 201712040026515 | 43073 | | | | | | |
| 108337000 | WATER TRANSFER | Jeffrey A. and Sharon | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/24/2017 | 6/24/2017 | 6/24/2020 | | Paid | Active | 201710170022650 | 43025 | | | | | | |
| 108338000 | WATER TRANSFER | Harold L. Blair | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/21/2017 | 8/21/2017 | 8/21/2019 | | Paid | Active | 201710170022666 | 43025 | | | | | | |
| 108339000 | WATER TRANSFER | Arthur G. Blair | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/28/2017 | 8/28/2017 | 8/28/2019 | | Paid | Active | 201710170022667 | 43025 | | | | | | |
| 108340000 | WATER TRANSFER | George R. and Paula M | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/25/2017 | 8/25/2017 | 8/25/2019 | | Paid | Active | 201710170022668 | 43025 | | | | | | |
| 108341000 | WATER TRANSFER | Kenneth A. and Paulin | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/21/2017 | 6/21/2017 | 6/21/2020 | | Paid | Active | 201710170022649 | 43025 | | | | | | |
| 108342000 | WATER TRANSFER | Kenneth A. and Paulin | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/21/2017 | 6/21/2017 | 6/21/2020 | | Paid | Active | 201710170022648 | 43025 | | | | | | |
| 108343000 | WATER TRANSFER | Daniel J. and Sandra D | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/27/2017 | 6/27/2017 | 6/27/2020 | | Paid | Active | 201710170022647 | 43025 | | | | | | |
| 108344000 | WATER TRANSFER | Yvonne C. Orloski | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/15/2017 | 6/15/2017 | 6/15/2020 | | Paid | Active | 201710170022646 | 43025 | | | | | | |
| 108345000 | WATER TRANSFER | Michael R. and Tiffany | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/28/2017 | 6/28/2017 | 6/28/2020 | | Paid | Active | 201710170022645 | 43025 | | | | | | |
| 108346000 | WATER TRANSFER | Russell H. Barger | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/11/2017 | 7/11/2017 | 7/11/2019 | | Paid | Active | 201710170022644 | 43025 | | | | | | |
| 108347000 | WATER TRANSFER | Russell H. Barger | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/11/2017 | 7/11/2017 | 7/11/2019 | | Paid | Active | 201710170022643 | 43025 | | | | | | |
| 108348000 | WATER TRANSFER | William P. Swanik | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/24/2017 | 6/24/2017 | 6/24/2020 | | Paid | Active | 201710170022642 | 43025 | | | | | | |
| 108349000 | WATER TRANSFER | Vernie Sue Hilliard | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/2/2017 | 6/2/2017 | 6/2/2020 | | Paid | Active | 201710170022641 | 43025 | | | | | | |
| 108350000 | WATER TRANSFER | Vernie Sue Hilliard | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/2/2017 | 6/2/2017 | 6/2/2020 | | Paid | Active | 201710170022640 | 43025 | | | | | | |
| 108351000 | WATER TRANSFER | Vernie Sue Hilliard | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/2/2017 | 6/2/2017 | 6/2/2020 | | Paid | Active | 201710170022639 | 43025 | | | | | | |
| 108352000 | WATER TRANSFER | Vernie Sue Hilliard | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/2/2017 | 6/2/2017 | 6/2/2020 | | Paid | Active | 201710170022638 | 43025 | | | | | | |
| 108353000 | WATER TRANSFER | Ralph E. Graham | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/7/2017 | 7/7/2017 | 7/7/2019 | | Paid | Active | 201710170022637 | 43025 | | | | | | |
| 108354000 | WATER TRANSFER | Kelley and Kim D. Arm | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/14/2017 | 7/14/2017 | 7/14/2019 | | Paid | Active | 201712040026513 | 43073 | | | | | | |
| 108354000 | WATER TRANSFER | Kelley and Kim D. Arm | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/14/2017 | 7/14/2017 | 7/14/2019 | | Paid | Active | 201712040026514 | 43073 | | | | | | |
| 108355000 | WATER TRANSFER | Harry James Leighton | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/13/2017 | 7/13/2017 | 7/13/2019 | | Paid | Active | 201710170022635 | 43025 | | | | | | |
| 108355000 | WATER TRANSFER | Harry James Leighton | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/13/2017 | 7/13/2017 | 7/13/2019 | | Paid | Active | 201710170022634 | 43025 | | | | | | |
| 108356000 | WATER TRANSFER | Michael and Dira G. H | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/9/2017 | 6/9/2017 | 6/9/2020 | | Paid | Active | 201710170022633 | 43025 | | | | | | |
| 108357000 | WATER TRANSFER | Lawrence E Lagut | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/24/2017 | 6/24/2017 | 6/24/2020 | | Paid | Active | 201710170022632 | 43025 | | | | | | |
| 108358000 | WATER TRANSFER | Michael and Dira G. H | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/9/2017 | 6/9/2017 | 6/9/2020 | | Paid | Active | 201710170022631 | 43025 | | | | | | |
| 108359000 | WATER TRANSFER | Walter D. Bell et al | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/2/2017 | 8/2/2017 | 8/2/2019 | | Paid | Active | 201710170022630 | 43025 | | | | | | |
| 108359000 | WATER TRANSFER | Walter D. Bell et al | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/2/2017 | 8/2/2017 | 8/2/2019 | | Paid | Active | 201710170022629 | 43025 | | | | | | |
| 108359000 | WATER TRANSFER | Walter D. Bell et al | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/2/2017 | 8/2/2017 | 8/2/2019 | | Paid | Active | 201710170022628 | 43025 | | | | | | |
| 108359000 | WATER TRANSFER | Walter D. Bell et al | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/2/2017 | 8/2/2017 | 8/2/2019 | | Paid | Active | 201710170022627 | 43025 | | | | | | |
| 108360000 | WATER TRANSFER | Steven L. and Christin | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/10/2017 | 6/10/2017 | 6/10/2020 | | Paid | Active | 201710170022626 | 43025 | | | | | | |
| 108361000 | WATER TRANSFER | Earnest Boyd and Nan | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/9/2017 | 6/9/2017 | 6/9/2020 | | Paid | Active | 201710170022625 | 43025 | | | | | | |
| 108362000 | WATER TRANSFER | William H. Blauser | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/8/2017 | 6/8/2017 | 6/8/2020 | | Paid | Active | 201710170022624 | 43025 | | | | | | |
| 108363000 | WATER TRANSFER | John B. Phillips | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/25/2017 | 7/25/2017 | 7/25/2019 | | Paid | Active | 201710170022623 | 43025 | | | | | | |
| 108364000 | WATER TRANSFER | Richard Blauser Revoc | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/12/2017 | 6/12/2017 | 6/12/2020 | | Paid | Active | 201710170022636 | 43025 | | | | | | |
| 108365000 | WATER TRANSFER | Samuel L. Sheppeck | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/23/2017 | 6/23/2017 | 6/23/2020 | | Paid | Active | 201710170022622 | 43025 | | | | | | |
| 108367000 | WATER TRANSFER | Terra L. Damico | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 10/6/2017 | 10/6/2017 | 10/6/2019 | | Paid | Active | 201710170022697 | 43025 | | | | | | |
| 108368000 | WATER TRANSFER | John E. and Robin L. F | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/22/2017 | 7/22/2017 | 7/22/2019 | | Paid | Active | 201710170022665 | 43025 | | | | | | |
| 108369000 | WATER TRANSFER | Richard H. Smith ET A | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/21/2017 | 7/21/2017 | 7/21/2019 | | Paid | Active | 201710170022660 | 43025 | | | | | | |
| 108370000 | WATER TRANSFER | William J. JR. and Deb | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/21/2017 | 7/21/2017 | 7/21/2019 | | Paid | Active | 201710170022662 | 43025 | | | | | | |
| 108371000 | WATER TRANSFER | William J. JR. and Deb | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/21/2017 | 7/21/2017 | 7/21/2019 | | Paid | Active | 201710170022661 | 43025 | | | | | | |
| 108372000 | WATER TRANSFER | Regal Robert Mobrey E | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/20/2017 | 7/20/2017 | 7/20/2019 | | Paid | Active | 201710170022657 | 43025 | | | | | | |
| 108373000 | WATER TRANSFER | Richard A. and Elizabe | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/15/2017 | 7/15/2017 | 7/15/2019 | | Paid | Active | 201710170022651 | 43025 | | | | | | |
| 108374000 | WATER TRANSFER | Dolores E. and Leslie E | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/15/2017 | 7/15/2017 | 7/15/2019 | | Paid | Active | 201710170022652 | 43025 | | | | | | |
| 108375000 | WATER TRANSFER | Randall G. and Pamela | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/21/2017 | 7/21/2017 | 7/21/2019 | | Paid | Active | 201710170022659 | 43025 | | | | | | |
| 108376000 | WATER TRANSFER | Randall G. and Pamela | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/21/2017 | 7/21/2017 | 7/21/2019 | | Paid | Active | 201710170022658 | 43025 | | | | | | |
| 108380000 | WATER TRANSFER | Bruce D. and Diana L. | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 10/19/2017 | 10/19/2017 | 10/30/2020 | | Paid | Active | 201809200019270 | 43363 | | | | | | |
| 108413000 | SURFACE USE AGR | Timothy J. and Sherry | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 9/12/2015 | 9/12/2015 | 12/31/2099 | | Paid | Active | 201705190010524 | 42874 | | | | | | |
| 108414000 | SURFACE USE AGR | Clifford James Edward | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 4/28/2017 | 4/28/2017 | 12/31/2099 | | Paid | Active | 201705190010523 | 42874 | | | | | | |
| 108461000 | SURFACE USE AGR | Armella C. and Howard | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 12/1/2017 | 12/1/2017 | 12/31/2099 | BUTLER NO | In Title | Active | 201712200027762 | 43089 | | | | | | |
| 108462000 | SURFACE USE AGR | Richard Blauser Revoc | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 11/8/2017 | 11/8/2017 | 12/31/2099 | BUTLER NO | In Title | Active | 201712200027763 | 43089 | | | | | | |
| 108475000 | SURFACE USE AGR | Walter D. and Nancy F | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 1/31/2018 | 1/31/2018 | 12/31/2099 | | Paid | Active | 201803010003871 | 43160 | | | | | | |
| 108475000 | SURFACE USE AGR | Walter D. and Nancy F | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 1/31/2018 | 1/31/2018 | 12/31/2099 | | Paid | Active | 201803010003872 | 43160 | | | | | | |
| 108475000 | SURFACE USE AGR | Walter D. and Nancy F | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 1/31/2018 | 1/31/2018 | 12/31/2099 | | Paid | Active | 201803010003873 | 43160 | | | | | | |
| 108639000 | SURFACE USE AGR | Vernie Sue Hilliard | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 4/29/2015 | 4/29/2015 | 12/31/2099 | | Paid | Active | 201506010011534 | 42156 | | | | | | |
| 108640000 | SURFACE USE AGR | Samuel L. Sheppeck | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 4/20/2018 | 4/20/2018 | 12/31/2099 | BUTLER NORTH | | Active | 201810110020667 | 43384 | | | | | | |
| 108727000 | WATER TRANSFER | Robert W. McGinnis E | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/7/2017 | 7/7/2017 | 7/7/2019 | | Paid | Active | 201805230010074 | 43243 | | | | | | |
| 108728000 | WATER TRANSFER | Samuel L. Sheppeck a | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/23/2017 | 6/23/2017 | 6/23/2020 | | Paid | Active | 201805230010075 | 43243 | | | | | | |
| 108729000 | WATER TRANSFER | Samuel L. Sheppeck a | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/23/2017 | 6/23/2017 | 6/23/2020 | | Paid | Active | 201805230010076 | 43243 | | | | | | |
| 108730000 | WATER TRANSFER | Samuel L. Sheppeck a | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/23/2017 | 6/23/2017 | 6/23/2020 | | Paid | Active | 201806110011359 | 43262 | | | | | | |
| 108731000 | WATER TRANSFER | Samuel L. Sheppeck a | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/23/2017 | 6/23/2017 | 6/23/2020 | | Paid | Active | 201805230010077 | 43243 | | | | | | |
| 108732000 | WATER TRANSFER | Russell R. and Christir | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/28/2017 | 6/28/2017 | 6/28/2019 | | Paid | Active | 201806110011360 | 43262 | | | | | | |
| 108733000 | WATER TRANSFER | Rex E. Walter and Par | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 6/12/2017 | 6/12/2017 | 6/12/2019 | | Paid | Active | 201805230010079 | 43243 | | | | | | |
| 108734000 | WATER TRANSFER | Timothy J. and Sherry | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/13/2017 | 7/13/2017 | 7/13/2019 | | Paid | Active | 201805230010078 | 43243 | | | | | | |
| 108735000 | WATER TRANSFER | Clifford James Edward | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/11/2017 | 7/11/2017 | 7/11/2019 | | Paid | Active | 201805230010080 | 43243 | | | | | | |
| 109000000 | SURFACE USE AGR | Roger L. Sigworth ET A | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/24/2018 | 7/24/2018 | 12/31/2099 | BUTLER NORTH | | Active | | | | | | | | |
| 109003000 | SURFACE USE AGR | Samuel L. Sheppeck - | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 4/20/2018 | 4/20/2018 | 12/31/2099 | BUTLER NORTH | | Active | 201810110020667 | 43384 | | | | | | |
| 109004000 | WATER TRANSFER | Dean V. Brown and Pa | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/26/2018 | 7/26/2018 | 7/26/2019 | BUTLER SOUTH | | Active | | not recorded | | | | | | |
| 109005000 | WATER TRANSFER | Thomas J. Mabold and | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/26/2018 | 7/26/2018 | 7/26/2019 | BUTLER SOUTH | | Active | | not recorded | | | | | | |
| 109006000 | WATER TRANSFER | Arthur J. Barton and R | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 7/26/2018 | 7/26/2018 | 7/26/2019 | BUTLER SO | In Title | Active | | not recorded | | | | | | |
| 109007000 | WATER TRANSFER | Karen Milasincic and F | EM Energy Pennsylvania, LLC | 0 | 0 | | | | | 8/8/2018 | 8/8/2018 | 8/8/2019 | BUTLER SO | In Title | Active | | not recorded | | | | | | |
| 109039000 | ROAD ROW | Samuel L Sheppeck | EM Energy Pennsylvania LLC | 0 | 0 | | | | | 11/21/2018 | 11/21/2018 | 12/31/2099 | BUTLER NO | Paid | Active | | | | | | | | |
| 109058000 | OTHER ROW | Samuel L Sheppeck | EM Energy Pennsylvania LLC | 0 | 0 | | | | | 6/17/2013 | 9/17/2013 | 12/31/2099 | | Paid | Active | 201307310022328 | 41486 | | | | | | |

**Exhibit F**
**Transition Services Agreement**

[*See Attached*]

**TRANSITION SERVICES AGREEMENT**

by and between

**[EDGEMARC ENERGY EMPLOYER, LLC][1]**

and

**KB OREO, LLC**

Dated as of [●], 2020

---

[1] <u>NTD</u>: To be confirmed.

# TABLE OF CONTENTS

**PAGE**

### ARTICLE 1
### Definitions

Section 1.01    Definitions..................................................................................................1

### ARTICLE 2
### Purchase And Sale Of Services

Section 2.01    Purchase and Sale of Services.................................................................1
Section 2.02    Recipient and Provider Entities...............................................................2

### ARTICLE 3
### Monthly Fees; Other Charges

Section 3.01    Monthly Fees Generally..........................................................................3
Section 3.02    Taxes.......................................................................................................3
Section 3.03    Invoicing and Settlement of Monthly Fees............................................4

### ARTICLE 4
### The Services

Section 4.01    Standards of Service...............................................................................5
Section 4.02    Management of Services.........................................................................5

### ARTICLE 5
### Disclaimer, Liability And Indemnification

Section 5.01    EXCLUSION OF WARRANTIES...........................................................6
Section 5.02    Limitation of Liability............................................................................6
Section 5.03    Indemnification by the Service Recipient...............................................6
Section 5.04    Indemnification by the Service Provider.................................................7
Section 5.05    Indemnification Procedures....................................................................7

### ARTICLE 6
### Term And Termination

Section 6.01    Term........................................................................................................7
Section 6.02    Termination.............................................................................................8
Section 6.03    Additional Termination Events................................................................8
Section 6.04    Effect of Termination..............................................................................8

### ARTICLE 7
### Additional Agreements

Section 7.01    Confidential Information.........................................................................9

i

Section 7.02    Ownership of Assets ........................................................................10
Section 7.03    Security ...........................................................................................10
Section 7.04    Access to Information ......................................................................11
Section 7.05    Labor Matters ..................................................................................11

## ARTICLE 8
Miscellaneous

Section 8.01    No Agency; Independent Contractor Status.....................................11
Section 8.02    Subcontractors.................................................................................12
Section 8.03    Force Majeure .................................................................................12
Section 8.04    Entire Agreement; Amendment .......................................................12
Section 8.05    Information.......................................................................................13
Section 8.06    Notices .............................................................................................13
Section 8.07    Governing Law; Consent to Jurisdiction and Venue; Jury Trial Waiver......14
Section 8.08    Severability ......................................................................................14
Section 8.09    Waiver..............................................................................................15
Section 8.10    Assignment.......................................................................................15
Section 8.11    Counterparts .....................................................................................15

Schedule A    Services
Schedule B    Recipient Entities

**TRANSITION SERVICES AGREEMENT**

This Transition Services Agreement (this "**Agreement**") is entered into as of [●], 2020 by and between KB OREO, LLC, an Ohio limited liability company (the "**Service Recipient**"), and [EdgeMarc Energy Employer, LLC], a [Delaware limited liability company] (the "**Service Provider**").

**RECITALS**

WHEREAS, EdgeMarc Energy Holdings, LLC, a Delaware limited liability company and parent to the Service Provider, the EM Subsidiaries set forth on Schedule 1.01(a) to the Purchase Agreement (as defined below) and KB OREO, LLC, an Ohio limited liability company, among others, have entered into an Asset Purchase Agreement dated as of [●], 2020 (as such agreement may be amended from time to time, the "**Purchase Agreement**") providing for the sale to the Service Recipient of the Assets, and the assumption by the Service Recipient of the Assumed Liabilities, in each case, on the terms and subject to the conditions set forth in the Purchase Agreement; and

WHEREAS, in connection with the consummation of the transactions contemplated by the Purchase Agreement, the Service Recipient and the Service Provider desire to enter into this Agreement for the provision of certain transitional services to the Service Recipient, on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing and the representations, warranties, covenants and agreements contained herein, the parties hereto agree as follows:

ARTICLE 1
DEFINITIONS

Section 1.01    *Definitions*.  Any capitalized term that is used, but not defined, herein shall have the meaning assigned to such term in the Purchase Agreement.

ARTICLE 2
PURCHASE AND SALE OF SERVICES

Section 2.01    *Purchase and Sale of Services.*

(a)      On the terms and subject to the conditions of this Agreement, from and after the date hereof, the Service Provider shall provide or cause to be provided to the Service Recipient or, subject to Section 2.02, the Service Recipient's applicable Affiliates, the services set forth on Schedule A hereto.  Each of the services set forth on Schedule A hereto, as such Schedule may be amended from time to time in accordance with this Agreement, is referred to individually as a "**Service**" and collectively the "**Services.**"  The Service Provider or its applicable Affiliate which provides any Service pursuant to this Agreement shall be referred to as the "**Provider Entity**" with respect to such Service and the Service Recipient or, subject to Section 2.02, its applicable Affiliates which receives any Service pursuant to this Agreement shall be referred to as the "**Recipient Entity**" with respect to such Service.  Except for the Services expressly contemplated to be provided in accordance with the provisions of this Agreement, neither the Service Provider

nor any of its Affiliates shall have any obligation under this Agreement or otherwise to provide any services to the Service Recipient or its Affiliates.

(b)    Notwithstanding anything herein to the contrary, it is understood that the Services to be provided to the Service Recipient or its controlled Affiliates under this Agreement shall only be provided for the purpose of the continued safe operation and orderly transition of the Assets, as determined in good faith by the Service Provider.

(c)    The Service Recipient hereby agrees to provide or cause to be provided to the Service Provider, its Affiliates or any third-party service providers, as applicable, reasonable access to the facilities, assets, books and records or personnel of the Service Recipient (or their Affiliates), as applicable, in each case, that are reasonably necessary for the provision of the Services hereunder and as needed to assist Service Provider with the preparation, solicitation and effectuation of its Chapter 11 plan of liquidation and the winding up of its Chapter 11 cases; *provided*, however, that the Service Provider shall remain responsible at all times for such accessing Person's compliance with the terms of this Agreement, including Section 7.01(a). The Service Recipient's failure to provide or cause to be provided such access, information or assistance with respect to the provision of the Services will relieve the Service Provider of its obligations with respect to the applicable Services, or portion thereof, for such period to the extent the Service Provider is unable to provide such Services or portion thereof as a result of such failure by the Service Recipient.

(d)    The Service Provider agrees to use commercially reasonable efforts to provide or cause to be provided to the Service Recipient or its applicable Affiliates, in a timely manner, at the Service Recipient's reasonable request, information related to the Service Recipient's receipt of the Services that is readily available to the Service Provider and related to the Services.

Section 2.02    *Recipient and Provider Entities*.   It is understood and agreed that (a) the Services to be provided to the Service Recipient under this Agreement shall, at the Service Recipient's request, be provided to any Person that is a controlled Affiliate of the Service Recipient as identified by the Service Recipient as of the date hereof on Schedule B hereto (in which case, such controlled Affiliate shall be included in the definition of "Recipient Entity" for all purposes hereof in respect of such Service), which controlled Affiliates it may change at the Service Recipient's discretion from time to time, *provided* that the Service Recipient provides the Service Provider with three Business Days' prior written notice (email to the applicable notice parties set forth in Section 8.06 being sufficient) before such change goes into effect, and (b) the Service Provider may satisfy its obligation to provide or procure Services hereunder by causing one or more of its Affiliates to provide or procure such Services (in which case, such Affiliates shall be included in the definition of "Provider Entity" for all purposes hereof in respect of such Service), which Affiliates it may change at the Service Provider's discretion from time to time, *provided* that the Service Provider shall remain responsible for the performance and provision of Services by all such Affiliates.

Section 2.03    *Third Party Licenses and Consents*.   Each Provider Entity shall use commercially reasonable efforts to obtain, and to keep and maintain in effect, all governmental or third party licenses and consents required for the provision of any Service provided by a Provider Entity in accordance with the terms of this Agreement; *provided*, however, that no Provider Entity

2

shall be obligated to pay any consideration or grant any accommodation therefor to any third party in connection with such governmental or third party licenses or consents.  In the event any Provider Entity is unable to obtain any such license or consent, such Provider Entity shall promptly notify the Service Recipient in writing, and the Service Recipient shall, and shall cause its controlled Affiliates to, use commercially reasonable efforts to implement an appropriate alternative arrangement.  The costs relating to obtaining any such licenses or consents shall be borne by the Service Recipient.  If any such license, consent or alternative arrangement is not available despite the commercially reasonable efforts of the Service Provider and its Affiliates or as a result of the Recipient Entity failing to agree to the incurrence of costs relating to obtaining any such license or consent, the Service Provider or its applicable Affiliates will be relieved of their obligations to provide the affected Services, or the affected portion of such Services, only to the extent and only for such period of time as the Service Provider or its applicable Affiliates are unable to provide such Services, or portion thereof, without such license, consent or alternative arrangement as a result of such unavailability or such failure by the Service Recipient.

Section 2.04    *Third Party Providers*.  If any Provider Entity receives written notice from any third party service provider that such Person intends to terminate a service pursuant to which such Provider Entity provides a Service to the Recipient Entity, then such Provider Entity shall provide a copy of such written notice to the Recipient Entity and shall use commercially reasonable efforts to secure the continued provision of that Service from such third party or an alternative service provider; *provided*, however, that no Provider Entity shall be obligated to pay any consideration or grant any accommodation therefor to any third party in connection with the continued provision of that Service. If the Provider Entity is unable to secure the continued provision of that service from such third party or an alternative service provider, or the applicable Recipient Entity fails to agree to the incurrence of costs relating to securing the continued provision of that Service from such third party or an alternative service provider, the Service Provider or its applicable Affiliates shall not be required to provide the affected Service, or portion of such Service, only to the extent and only for such period of time as the Service Provider or its applicable Affiliates, as a result of such inability of the Service Provider or such failure by the Recipient Entity, are unable to provide such Services, or portion thereof, without procuring such continued provision, and any Monthly Fees (as defined below) shall be adjusted accordingly.

ARTICLE 3
MONTHLY FEES; OTHER CHARGES

Section 3.01    *Monthly Fees Generally*.  The fee to be paid by the Service Recipient to the Service Provider for each Service to be provided under this Agreement shall be the Monthly Fee (as defined on Schedule A hereto) per Service Month.  As used herein, the term "**Service Month**" shall mean each calendar month occurring during the Service Terms (as defined below). If a Service Month is less than a full calendar month, the Monthly Fee with respect to such Service Month shall be payable on a pro rata basis (calculated assuming a 30-day Service Month), based on the number of days in such Service Month.

Section 3.02    *Taxes*.

(a)    The Service Recipient shall pay all applicable value-added, sales, use, excise, goods and services, transaction, transfer or similar taxes incurred with respect to provision of the Services

provided to it (or any other Recipient Entity) or with respect to any fees payable to the Service Provider hereunder; *provided* that to the extent any Services are subject to any such taxes, the Service Provider shall separately identify on the invoice for such Services pursuant to Section 3.03 the portion of the Monthly Fee attributable to such Services, and the Service Recipient's taxes hereunder shall be calculated and paid only upon such portion.  These taxes shall be in addition to any other payments or charges identified in this Agreement.

(b)    All sums payable under this Agreement shall be paid free and clear of all deductions or withholdings unless the deduction or withholding is required by applicable Legal Requirements, in which event the Service Recipient and any of its Affiliates (and any Person acting on their behalf) shall be entitled to deduct and withhold from any sum payable under this Agreement any amounts that are required to be deducted and withheld under applicable Legal Requirements.  To the extent that amounts are so deducted and withheld, such amounts shall be treated for all purposes of this Agreement as having been delivered and paid to the Person in respect of which such deduction and withholding was made.  The parties agree to cooperate in good faith to reduce or eliminate taxes imposed with respect to the Services to be provided under this Agreement.

Section 3.03    *Invoicing and Settlement of Monthly Fees.*

(a)    Unless a Schedule hereto provides otherwise or the parties agree in writing to a different arrangement, the Service Provider shall invoice or notify in writing the Service Recipient reasonably promptly (and in any event, no later than 15 days) following the end of each Service Month for all Monthly Fees (as defined in Schedule A hereto) incurred therein (the date of delivery of such invoice or notification, the "**Invoice Date**").

(b)    The Service Recipient agrees to pay, or cause to be paid, on or before the date that is 15 days after the Invoice Date (such date, the "**Payment Date**"), by wire transfer of immediately available funds payable to the order of the Service Provider or to such account or accounts designated in writing by the Service Provider, all amounts specified in the invoice or notification delivered pursuant to Section 3.03(a), except to the extent a portion or all of any such amounts are disputed in accordance with Section 3.03(c).

(c)    The Service Recipient may object in good faith to any invoiced amounts for any Services at any time before, at the time of or after payment is made, provided such objection is made in writing, with a reasonable description of the Service Recipient's reason for disputing such amount, to the Service Provider no later than 60 days after expiration of the Service Terms or 15 days after receipt by the Service Recipient of written notice from the Service Provider that such amount is past due.  Payment of any amount set forth in an invoice shall not constitute approval thereof.  The parties shall meet as expeditiously as possible to attempt to resolve any dispute in good faith.  For the avoidance of doubt, any dispute that is not resolved between the parties within 30 days of the objection by the Service Recipient shall be subject to Section 8.07.

(d)    If the Service Recipient fails to make payment of any Monthly Fees for a period of 15 days after the Payment Date in accordance with this Section 3.03, it shall be required to pay, in addition to the amount of such unpaid Monthly Fees, interest on such amount accruing from the Payment Date at a rate per annum equal to the Benchmark Rate plus 2% (but not to exceed the maximum lawful rate of interest).  Any interest due hereunder will be calculated daily on the basis

of a 365-day year and the actual number of days elapsed.  As used herein, the "**Benchmark Rate**" means the rate of interest last quoted by The Wall Street Journal as the "Prime Rate" in the United States.

## ARTICLE 4
### THE SERVICES

Section 4.01    *Standards of Service.*

(a)    Unless a Schedule hereto expressly states otherwise or the parties agree in writing to a different arrangement, the level or volume of any specific Service required to be provided to the applicable Recipient Entity shall be no more than the level or volume, as the case may be, of such specific Service as utilized by the Service Provider and its Affiliates with respect to the Assets during the last twelve-month period that the Assets were producing, and not shut-in (the "**Baseline Period**"); *provided* that, for the avoidance of doubt, the level or volume of such specific Service may be reasonably reduced by the Service Provider and its Affiliates from time to time as the result of any employees of Service Provider and its Affiliates ceasing to be employed by Service Provider or such Affiliate at any time after the Baseline Period.

(b)    Unless a Schedule hereto expressly states otherwise or the parties agree in writing to a different arrangement, the standard of care applicable to the delivery by the applicable Provider Entity of any Service shall be substantially the same as that of similar services that such Provider Entity and/or its Affiliates provided to the Service Provider and its Affiliates with respect to the Assets during the Baseline Period.

(c)    The Services shall only be provided with respect to the operation of the Assets or the disposition or management of the Assumed Liabilities (and not any other businesses, assets or properties of the Service Recipient or any of its Affiliates).

Section 4.02    *Management of Services.*  Except as may otherwise be expressly provided in this Agreement, the management of, and control over, the provision of the Services by the Provider Entity shall reside solely with such Provider Entity and, notwithstanding anything to the contrary, the Provider Entity shall be permitted to choose the methodology, systems and applications it utilizes in the provision of such Services; *provided* that the Provider Entity shall comply with the standards of service in Section 4.01 and remain responsible for the performance of the Services in accordance with this Agreement.  The provision, use of and access to the Services shall be subject to (1) any technical and operational changes that may be required to manage any reasonable restrictions imposed by the Recipient Entity in respect of data access; (2) any third party services, resources or dependencies; (3) any applicable Legal Requirements; and (4) the terms of this Agreement.  Notwithstanding anything to the contrary herein, in providing the Services, the Provider Entity shall not be obligated to (A) advance funds, (B) hire any additional employees, (C) maintain the employment of any specific employee, or (D) purchase, lease or license any additional equipment, hardware, intellectual property rights or software.

## ARTICLE 5
### DISCLAIMER, LIABILITY AND INDEMNIFICATION

Section 5.01  *EXCLUSION OF WARRANTIES*.  EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE SERVICES ARE PROVIDED "AS-IS" WITH NO WARRANTIES, AND THE PROVIDER ENTITY EXPRESSLY EXCLUDES AND DISCLAIMS ANY WARRANTIES UNDER OR ARISING AS A RESULT OF THIS AGREEMENT, WHETHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, NON-INFRINGEMENT OR ANY OTHER WARRANTY WHATSOEVER.

Section 5.02  *Limitation of Liability*.

(a)    The Service Recipient agrees that each of the Service Provider, its Affiliates, and their respective directors, officers, agents, employees or other Representatives (each, a "**Provider Indemnified Person**") shall not have any liability, whether direct or indirect, in contract or tort or otherwise, to the Service Recipient, its Affiliates or any other Person for or in connection with the Services rendered or to be rendered by or on behalf of any Provider Indemnified Person, or any actions or inactions by or on behalf of any Provider Indemnified Person in connection with any such Services, except to the extent any damage, loss, liability, obligation, cost, award, judgment, fine, penalty, deficiency, charge or expense (collectively, "**Damages**") are indemnifiable by the Service Provider as provided under Section 5.04.

(b)    Notwithstanding anything to the contrary, except in the case of fraud, gross negligence or willful misconduct, neither the Service Recipient nor any Provider Indemnified Person shall be liable for any special, indirect, incidental, consequential or punitive Damages of any kind whatsoever in any way due to, resulting from or arising in connection with any of the Services or the performance of or failure to perform the party's obligations under this Agreement (except, in each case, to the extent payable to a third party).  The foregoing disclaimer shall apply, without limitation: (i) to claims arising from the provision of the Services or any failure or delay in connection therewith; and (ii) to claims for lost profits, in each case, regardless of the form of action, whether in contract, tort (including negligence), strict liability or otherwise and regardless of whether such Damages are foreseeable or whether any party has been advised of the possibility of such Damages.

(c)    In addition to the foregoing, the Recipient Entity agrees that it shall, in all circumstances, use commercially reasonable efforts to mitigate and otherwise minimize its Damages and those of any of its Affiliates, whether direct or indirect, due to, resulting from or arising in connection with any failure by the Provider Entity to comply fully with its obligations under this Agreement; *provided*, that any reasonable out-of-pocket costs incurred in such mitigation or minimization (up to the Damages mitigated thereby) shall be taken into account when determining Damages.

Section 5.03  *Indemnification by the Service Recipient*.  The Service Recipient agrees to indemnify, defend and hold harmless each Provider Indemnified Person from and against any Damages, and to reimburse each Provider Indemnified Person for all reasonable expenses as they

6

are incurred in investigating, preparing, pursuing or defending any third party claim, action, proceeding, or investigation (collectively, "**Actions**"), whether or not in connection with pending or threatened litigation and whether or not any Provider Indemnified Person is a party, arising out of, in connection with or related to Services rendered or to be rendered by or on behalf of any Provider Indemnified Person pursuant to this Agreement, or any actions or inactions by or on behalf of any Provider Indemnified Person in connection with (i) any such Services or (ii) a breach by the Service Recipient of its payment obligations hereunder; *provided* that the Service Recipient shall not be responsible for any Damages of any Provider Indemnified Person to the extent such Damages have resulted from a Provider Indemnified Person's gross negligence, fraud or willful misconduct in connection with any such Services, actions or inactions.  The Service Recipient also agrees to indemnify, defend and hold harmless U.S. Specialty Insurance Company (the "**Surety**") for any liability of the Surety that arises during the term of this Agreement in connection with the surety bonds issued by the Surety in respect of the Assets, and agrees that Surety shall be a third party beneficiary of this Agreement.

Section 5.04   *Indemnification by the Service Provider*.  The Service Provider agrees to indemnify, defend and hold harmless each Recipient Entity, its Affiliates, and its and their respective directors, officers, agents, employees or other representatives (each, a "**Recipient Indemnified Person**") from and against any Damages, and to reimburse each Recipient Indemnified Person for all reasonable expenses as they are incurred in investigating, preparing, pursuing or defending any Action, whether or not in connection with pending or threatened litigation and whether or not any Recipient Indemnified Person is a party, in each case solely to the extent such Damages have resulted from a Provider Indemnified Person's gross negligence, fraud or willful misconduct in connection with (i) any Services or (ii) breach of this Agreement; *provided*, that, the maximum aggregate liability of the Service Provider with respect to all such Damages shall not exceed an amount equal to the aggregate Monthly Fees paid by the Service Recipient under this Agreement at such time.

Section 5.05   [Reserved]

Section 5.06   *Indemnification Procedures*.  All indemnification obligations hereunder shall be satisfied by wire transfer of immediately available funds by the indemnifying party immediately upon their becoming due and payable hereunder.  Nothing in this Agreement shall release, waive, or supersede any rights or obligations of the parties under the Purchase Agreement.

ARTICLE 6
TERM AND TERMINATION

Section 6.01   *Term*.  Except as otherwise provided in this Article 6, in Section 8.03, in a Schedule hereto or as otherwise agreed in writing by the parties, the term of this Agreement with respect to each Service shall commence as of the date hereof and continue until (i) the earliest of (A) March 31, 2020, (B) except with respect to the access and assistance to be provided by the Service Recipient pursuant to Section 2.01(c), a point in time mutually agreed to in writing by the Parties that is no later than five (5) Business Days after the date on which the Service Recipient, or its applicable Affiliate, is qualified and approved as the operator of the Assets by the Department of Environmental Protection of the Commonwealth of Pennsylvania and (C) the effective date of a Chapter 11 plan of Service Provider, or (ii) such earlier date as determined in accordance with

Section 6.02 or Section 6.03 (the "**Service Terms**").  This Agreement shall terminate in its entirety upon the expiration of all Service Terms; *provided* that the provisions of Article 5, this Article 6, Sections 7.01, 7.02(a), 7.02(b), 8.01, 8.04 and 8.06 through 8.11 shall survive any such termination indefinitely.

Section 6.02    *Termination*.    Except as otherwise provided in a Schedule hereto, this Agreement may be terminated as follows:

(a)      by the Service Recipient, at any time with respect to all or part of the Services, upon giving at least five Business Days' prior written notice (email to the applicable notice parties set forth in Section 8.06 being sufficient) to the Service Provider;

(b)      by the Service Recipient, at any time with respect to all or part of the Services, if (i) the Provider Entity shall have failed to perform any of its material obligations under this Agreement relating to any such Service, (ii) the Service Recipient shall have notified the Service Provider in writing of such failure and (iii) such failure (A) shall have continued uncured for a period of 10 days or more after receipt by the Service Provider of such written notice thereof or (B) is incapable of remedy; or

(c)      by the Service Provider, at any time with respect to all or part of the Services, if (i) the Recipient Entity shall have failed to perform any of its material obligations under this Agreement relating to any such Service (including, for the avoidance of doubt, if the Service Recipient has failed to make payment of any Monthly Fees in accordance with Section 3.03 on or before the Payment Date), (ii) the Service Provider shall have notified the Service Recipient in writing of such failure and (iii) such failure (A) shall have continued uncured for a period of 10 days or more after receipt by the Service Recipient of such written notice thereof or (B) is incapable of remedy (for the avoidance of doubt, it is understood and agreed by the parties that the failure by the Service Recipient to pay the full undisputed and unresolved portion of any invoice within the period provided in subsection (iii)(A) above shall be considered a breach by such Service Recipient of a material obligation of such Person under this Agreement).

Section 6.03    *Additional Termination Events*.    Upon completion of a sale or other disposition of (i) the Assets, or a portion thereof, (ii) the portion of the Service Recipient's business concerning the Assets, or (iii) all of the Service Recipient's business, a Provider Entity's obligation to provide any Service in respect of the business or the Assets so disposed shall terminate automatically and without any notice or other action by any Person, and the aggregate level or volume of such Service required to be provided to the Recipient Entity and (if applicable) the Monthly Fees payable by the Recipient Entity in respect thereof shall be reduced appropriately.

Section 6.04    *Effect of Termination*.

(a)      Other than as required by applicable Legal Requirements, upon termination of any Service pursuant to Section 6.02 or Section 6.03, the Provider Entity shall have no further obligation to provide the terminated Service and the Recipient Entity shall have no obligation to pay any Monthly Fees relating to such Services; *provided* that notwithstanding such termination, the Service Recipient shall remain liable to the Service Provider for (i) all Monthly Fees owed and payable in respect of Services provided prior to the effective date of the termination (including

8

pursuant to Section 3.03(d)) and (ii) in the case of a termination under Section 6.02(a), 6.02(c) or 6.03, any costs incurred by the Provider Entity between the time of such termination and the time the provision of the relevant Service(s) would have terminated absent such early termination to the extent the Provider Entity cannot avoid or mitigate the incurrence of such costs using commercially reasonable efforts (taking into account the cost of such avoidance or mitigation).

(b)    Termination of this Agreement as provided for herein shall not prejudice or affect any rights or remedies which shall have accrued or shall thereafter accrue to either party, including under the Purchase Agreement.

(c)    Following notice of termination of any Service, the parties agree to cooperate in providing for an orderly transition of such Service to the Recipient Entity or a successor service provider.

ARTICLE 7
ADDITIONAL AGREEMENTS

Section 7.01    *Confidential Information.*

(a)    The parties hereby covenant and agree to keep confidential all Confidential Information relating to the other party or any of such other party's Affiliates, to the extent provided or received in connection with the Services or the transactions contemplated thereby.  Without limiting the generality of the foregoing, each party shall cause its employees, agents and other Representatives to exercise the same level of care with respect to Confidential Information relating to the other party or any of its Affiliates as it would with respect to proprietary information, materials and processes relating to itself or any of its Affiliates.  For purposes of this Agreement, "**Confidential Information**" shall mean all information, materials and processes relating to a party or any Affiliate of such party obtained by the other party or any Affiliate thereof at any time (whether prior to or after the date hereof) in any format whatsoever (whether orally, visually, in writing, electronically or in any other form) relating to, arising out of or in connection with the Services rendered or to be rendered hereunder and shall include, but not be limited to, economic and business information or data, tax information, business plans, computer software and information relating to employees, vendors, customers, products, financial performance and projections, processes, strategies and systems but shall not include (1) information which becomes generally available to the public other than by release in violation of the provisions of this Section 7.01(a), (2) information which becomes available on a non-confidential basis to a party from a source other than the other party to this Agreement, *provided* that the party in question reasonably believes that such source is not or was not bound to hold such information confidential, and (3) information acquired or developed independently by a party without violating this Section 7.01(a) or any other confidentiality agreement with the other party.  Except with the prior written consent of the other party, each party will use the other party's Confidential Information only in connection with the performance of its obligations hereunder and each party shall use commercially reasonable efforts to restrict access to the other party's Confidential Information to those employees of such party and its Affiliates and its and their representatives requiring access for the purpose of providing Services hereunder.  Notwithstanding any provision of this Section 7.01(a) to the contrary, a party may disclose such portion of the Confidential Information relating to the other party to the extent, but only to the extent, the disclosing party reasonably believes that such

disclosure is required by judicial or administrative process or by other requirements of applicable Legal Requirements or pursuant to any listing agreement with any national securities exchange to which a party is subject; *provided* that if permissible under applicable Legal Requirements and practicable, the disclosing party first notifies the other party hereto of such requirement and allows such party a reasonable opportunity to seek a protective order or other appropriate remedy to prevent such disclosure. The parties acknowledge that money damages would not be a sufficient remedy for any breach of the provisions of this Section 7.01(a) and that the non-breaching party shall be entitled to equitable relief in a court of law in the event of, or to prevent, a breach or threatened breach of this Section 7.01(a).

(b)    Upon the termination of this Agreement, except to the extent otherwise required by applicable Legal Requirements and/or its internal policies and procedures, each party shall, upon the written request of the other party, promptly return to the other party or destroy all Confidential Information of the other received under or pursuant to the performance of this Agreement (including, to the extent practicable, all copies (in any and all media) and summaries thereof) that is within such party's or its Affiliates' or its or their representatives' possession, power, custody or control; *provided* that any Confidential Information retained by such party or its Affiliates shall continue to be subject to Section 7.01(a) for a term of 18 months from the end of the Service Terms. Promptly upon the request of a party, the other party shall confirm in writing to such first party that it has complied with this Section 7.01(b). Notwithstanding anything in this Section 7.01, to the extent information is required to be held in confidence under both this Section 7.01 and any provision of the Purchase Agreement, the provisions of the Purchase Agreement shall control.

Section 7.02    *Ownership of Assets*.

(a)    All Provider Systems and any and all enhancements thereof or improvements thereto are and shall remain the sole exclusive property of the Provider Entity or its Affiliates and/or their suppliers as applicable. From and after the creation of any and all such Provider Systems or enhancements thereof or improvements thereto by the Recipient Entity or by any contractor, Affiliate or other third party on the Recipient Entity's behalf, in each case, pursuant to this Agreement, the Recipient Entity agrees to assign and hereby assigns to the Provider Entity any and all right, title and interest that the Recipient Entity or such contractor, Affiliate or third party may have in such Provider Systems or enhancements thereof or improvements thereto. For purposes of this Agreement, "**Provider Systems**" means any data, computer software program or routine or part thereof owned, licensed or provided by any Provider Entity or its suppliers on any Provider Entity's behalf, each as modified, maintained or enhanced from time to time by any Provider Entity, any Recipient Entity or any third party. For the avoidance of doubt, the Provider Systems do not include any Assets transferred pursuant to the Purchase Agreement.

(b)    As between any Provider Entity, on the one hand, and any Recipient Entity, on the other hand, all right, title and interest in and to all data processed hereunder shall be owned exclusively by the Recipient Entity.

Section 7.03    *Security*. Each party, its Affiliates and their respective employees, authorized agents and subcontractors shall only use or access such other party's systems, premises or data to the extent such Person is authorized by the other party or pursuant to the terms hereof. Each party, its Affiliates and their employees, authorized agents and subcontractors shall comply

with the other party's policies and procedures in relation to the use and access of the other party's systems provided that they do not conflict with the terms of this Agreement; *provided* that to the extent such policies and procedures of the Recipient Entity make the provision of a given Service commercially unfeasible, the Provider Entity will be relieved of the obligation to provide such Service, but only to the extent providing such Service is commercially unfeasible.

Section 7.04   *Access to Information*.   Subject to applicable Legal Requirements and the confidentiality provisions of Section 7.01, during the Service Terms of a Service, each party shall, and shall cause its Affiliates to, upon three Business Days' prior notice, afford the other party and its Representatives reasonable access, during normal business hours, to the employees, properties, books and records and other documents that are reasonably requested in connection with the provision and receipt of the applicable Service hereunder; *provided* that any such access shall not unreasonably interfere with the conduct of the business of the party providing such access; *provided*, *further*, that in the event any party reasonably determines that affording any such access to the other party would be commercially detrimental in any material respect or violate any applicable Legal Requirement or agreement to which such party or any Affiliate thereof is a party, or waive any attorney-client privilege applicable to such party or any Affiliate thereof, the parties shall use reasonable efforts to permit the compliance with such request in a manner that avoids any such harm or consequence.

Section 7.05   *Labor Matters*.   All labor matters relating to employees of any Provider Entity (including, without limitation, employees involved in the provision of Services to any Recipient Entity) shall be within the exclusive control of the Provider Entity, and the Recipient Entity shall not take any action affecting such matters.   Nothing in this Agreement is intended to transfer the employment of employees engaged in the provision of any Service from one party to the other.   All employees and representatives of a party and any of its Affiliates will be deemed for all compensation, employee benefits, tax and social security contribution purposes to be employees or representatives of such party or its Affiliates (or their subcontractors) and not employees or representatives of the other party or any of its Affiliates (or their subcontractors).   At all times during the performance of the Services by a Provider Entity, all persons performing such Services (including agents, contractors, temporary employees and consultants) shall be independent from the Service Recipient and Recipient Entity and shall not be entitled to any payment, benefit or perquisite from the Service Recipient and Recipient Entity, including, but not limited to, group insurance and participation in any employee benefit and pension plans maintained by the Service Recipient, Recipient Entity or any Affiliate thereof. In providing the Services, such employees and representatives of the Provider Entity and its Affiliates (or their subcontractors) will be under the direction, control and supervision of the Provider Entity or its Affiliates (or their subcontractors) and not of the Recipient Entity or its Affiliates.

ARTICLE 8
MISCELLANEOUS

Section 8.01   *No Agency; Independent Contractor Status*.   Nothing in this Agreement shall constitute or be deemed to constitute a partnership or joint venture between the parties hereto or constitute or be deemed to constitute any party the agent or employee of the other party for any purpose whatsoever and neither party shall have authority or power to bind the other or to contract in the name of, or create a liability against, the other in any way or for any purpose.   The parties

hereto acknowledge and agree that the Provider Entity is an independent contractor in the performance of each and every part of this Agreement and nothing herein shall be construed to be inconsistent with this status.  Subject to the express provisions of this Agreement, the Provider Entity shall have the authority to select the means, methods and manner by which any Service is performed.

Section 8.02   *Subcontractors*.  The Service Provider may hire or engage one or more subcontractors to perform all or any of its obligations under this Agreement; *provided* that (i) such subcontractors have been used by the Service Provider during the Baseline Period, (ii) if such subcontractors in clause (i) are not available or do not exist, upon the prior written consent of the Service Recipient (such consent not to be unreasonably withheld, conditioned or delayed), the Service Provider may hire other subcontractors so long as the Service Provider uses the same degree of care in selecting any subcontractors as it would if such subcontractors were being retained to provide similar services to the Service Provider and (iii) the Service Provider shall in all cases remain responsible for ensuring that obligations with respect to the standards of services set forth in this Agreement are satisfied with respect to any Service provided by a subcontractor hired or engaged by the Service Provider.

Section 8.03   *Force Majeure*.

(a)      For purposes of this Section 8.03, "**force majeure**" means an event beyond the reasonable control of either party, which by its nature could not have been foreseen by such party, or, if it could have been foreseen, was unavoidable, and includes without limitation, acts of God, storms, floods, riots, fires, sabotage, civil commotion or civil unrest, interference by civil or military authorities, threat, declaration, continuation, escalation or acts of war (declared or undeclared) or acts of terrorism, failure or shortage of energy sources, raw materials or components, strike, walkout, lockout or other labor trouble or shortage, delays by unaffiliated suppliers or carriers, and acts, omissions or delays in acting by any Governmental Authority or the other party.

(b)      Without limiting the generality of Section 5.02(a), neither party shall be under any liability for failure to fulfill any obligation under this Agreement, so long as and to the extent to which the fulfillment of such obligation is prevented, frustrated, hindered, or delayed as a consequence of circumstances of force majeure; *provided* that nothing in this Section 8.03 shall be construed to require the settlement of any strike, walkout, lockout or other labor dispute on terms which, in the reasonable judgment of the affected party, are contrary to its interests.  It is understood that the settlement of a strike, walkout, lockout or other labor dispute will be entirely within the discretion of the affected party.  The party affected by the force majeure event shall use commercially reasonable diligence to remedy such force majeure event, and shall notify the other party of that fact as soon as practicable and thereafter fully inform the other party of the nature of the delay and the expected duration and consequences thereof.

Section 8.04   *Entire Agreement; Amendment*.  This Agreement (including the Schedules hereto constituting a part of this Agreement), the Purchase Agreement and the other Transaction Documents supersede all prior agreements between the parties hereto with respect to its subject matter and constitute a complete and exclusive statement of the terms of the agreements between the parties hereto with respect to the subject matter hereof and thereof.  This Agreement, including

any Schedule or Exhibit hereto, may not be amended, modified or supplemented, or the terms hereof waived, except by a written agreement executed by both of the parties hereto.

Section 8.05    *Information*.  Subject to applicable Legal Requirements and privileges, each party hereto covenants and agrees to provide the other party with all information regarding itself and transactions under this Agreement that the other party reasonably believes, in consultation with legal counsel, are required to comply with all applicable federal, state, county and local laws, ordinances, regulations and codes, including, but not limited to, securities laws and regulations.

Section 8.06    *Notices*.  All notices, consents, waivers and other communications under this Agreement must be in writing and will be deemed to have been duly given (a) when delivered by hand (with written confirmation of receipt), (b) when sent by email (with read receipt received), (c) one Business Day following the day sent by overnight courier (with written confirmation of receipt), or (d) when received by the addressee, if sent by registered or certified mail (postage prepaid, return receipt requested), in each case to the appropriate addresses and representatives (if applicable) set forth below (or to such other addresses and representatives as a party hereto may designate by notice to the other party):

(a)    If to the Service Recipient to:

KB OREO, LLC
Attn: Dale Conder
702 W. Idaho St., Suite 500
Boise, Idaho 83702
Phone: (208) 364-8755
E-mail: dale_conder@keybank.com

with a copy to:

Hunton Andrews Kurth, LLC
Attn: Timothy A ("Tad") Davidson II
600 Travis, Suite 4200
Houston, TX 77002
Phone: (713) 220-3810
E-mail: taddavidson@huntonak.com

(b)    If to the Service Provider to:

[EdgeMarc Energy Employer, LLC]
c/o EdgeMarc Energy Holdings, LLC
Attn: Callum Streeter
1800 Main Street, Suite 220
Canonsburg, PA 15317
Phone: (412) 564-1290
E-mail: CStreeter@edgemarcenergy.com

with a copy to:

13

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Attention: Darren S. Klein
          Brian Wolfe
Phone:    (212) 450-4725
          (212) 450-4140
E-mail:   darren.klein@davispolk.com
          brian.wolfe@davispolk.com

Section 8.07    *Governing Law; Consent to Jurisdiction and Venue; Jury Trial Waiver.*

(a)    Except (i) to the extent the mandatory provisions of the Bankruptcy Code apply and (ii) for any real or immovable property issues, which will be governed by and construed and enforced in accordance with the internal laws of the State in which such real or immovable property is located (without reference to the choice of law rules of such State), this Agreement will be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of Delaware applicable hereto.

(b)    Without limitation of any party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing will be filed and maintained only in the Bankruptcy Court, and the parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Proceeding; *provided*, however, that, if the Bankruptcy Case is closed pursuant to Section 350 of the Bankruptcy Code, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the state courts of Pennsylvania and any state appellate court within the State of Pennsylvania (or, in the event (but only in the event) that such court does not have subject matter jurisdiction over such Proceeding, in the United States District Court for the Western District of Pennsylvania) and any appellate court from any thereof for the resolution of any such claim or dispute.  The parties each hereby irrevocably waive, to the fullest extent permitted by applicable Legal Requirements, the defense of an inconvenient forum to the maintenance of any such Proceeding.  The parties each consent to service of process by mail (in accordance with Section 8.06) or any other manner permitted by law.

(c)    THE PARTIES HERETO HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF ANY PARTY OR SUCH PARTY'S REPRESENTATIVES IN THE NEGOTIATION OR PERFORMANCE HEREOF.

Section 8.08    *Severability*.  The provisions of this Agreement will be deemed severable, and the invalidity or unenforceability of any provision will not affect the validity or enforceability

of the other provisions hereof.  If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) the parties hereto will negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances will not be affected by such invalidity or unenforceability.

Section 8.09   *Waiver*.  Neither the failure nor any delay by any party in exercising any right, power or privilege under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege.  To the maximum extent permitted by applicable Legal Requirements, (i) no waiver that may be given by a party hereto will be applicable except in the specific instance for which it is given, and (ii) no notice to or demand on one party will be deemed to be a waiver of any right of the party that gives such notice or demand to take further action without notice or demand.

Section 8.10   *Assignment*.  This Agreement, and the rights, interests and obligations hereunder, may not be assigned by any party (by operation of law or otherwise) without the express written consent of the other party hereto; *provided*, *however*, that, upon prior written notice to the Service Recipient, the Service Provider may assign some or all of their rights or delegate some or all of its obligations hereunder to successor entities pursuant to a plan of reorganization confirmed by the Bankruptcy Court; *provided*, *further*, that, upon prior written notice to the Service Provider, the Service Recipient may assign some or all of its rights or delegate some or all of its obligations hereunder to one or more wholly-owned Subsidiaries or controlled Affiliates of the Service Recipient so long as the Service Recipient remains fully responsible for the performance of the delegated obligations.  Any assignment in violation of this Section 8.10 will be deemed void *ab initio*.  This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

Section 8.11   *Counterparts*.  This Agreement and any amendment hereto may be executed in one or more counterparts, each of which will be deemed to be an original of this Agreement or such amendment and all of which, when taken together, will constitute one and the same instrument.  Notwithstanding anything to the contrary in Section 8.06, delivery of an executed counterpart of a signature page to this Agreement or any amendment hereto by facsimile or email attachment will be effective as delivery of a manually executed counterpart of this Agreement or such amendment, as applicable.

[*Remainder of page intentionally left blank*]

15

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the date first above written.

**KB OREO, LLC**

By: _____
     Name:
     Title:

**[EDGEMARC ENERGY EMPLOYER, LLC]**

By: _____
     Name:
     Title:

**Schedule A**

**Services; Service Fees**

For purposes of this Schedule A, the "**Start Date**" shall mean the date of this Agreement and the "**End Date**" shall mean the date of expiration of the Service Terms.

1.    **Services**.

1.1    **Accounting, Finance, Marketing and Administrative Services**.

> (a)    <u>Accounting Matters</u>.  The Service Provider shall effect continuous operation of the revenue distribution, joint interest billing, and other accounting functions of the operator for all costs, expenses, production, and sales incurred or completed through the End Date pursuant to the agreements in effect relating to the Assets, and other accounting-related duties, including, without limitation, the following:

> (b)    <u>Joint-Interest Billings</u>.  The Service Provider shall be responsible for processing joint interest billings, including without limitation billings for all work on Wells being drilled, if any, and other continuing operations, under the agreements and applicable orders governing the Assets incurred through the End Date.

> (c)    <u>Marketing Services</u>.  The Service Provider shall be responsible for endeavoring to market and sell all production from the Assets in the same manner as the Service Provider was marketing its own production immediately prior to the Start Date.

> (d)    <u>Revenue Distribution</u>.  From the Start Date until the End Date, the Service Provider shall receive, collect and hold for the benefit of the Service Recipient all revenues generated from the Assets to the extent attributable to periods after the Effective Time and disburse and pay all third party royalties, costs and expenses (excluding the Services) attributable to the operation of the Assets.  The Service Provider shall pay to the Service Recipient revenues on or before the fifth (5th) day of the month after the month in which such revenues were received.  After the End Date, such excess cash will be promptly remitted to the Service Recipient.

> (e)    <u>Payments of Payables</u>.  Invoices and amounts due and payable arising from operations on or with respect to the Assets on or after the Effective Time and received by the Service Provider prior to the End Date shall be paid by the Service Provider, for the account of the Service Recipient; *provided*, *however*, in no event shall the Service Provider be obligated to make any payments on behalf of the Service Recipient if the Service Provider does not have sufficient cash of the Service Recipient on hand to make such payments.  Prior to the End Date, the Service Provider shall pay, within ten (10) days after receipt, any invoice for costs arising from operations on or with respect to the Assets prior to the Effective Time to the extent received by the Service Provider or the Service Recipient prior to the End Date.]

1

(f)     Computer Data.  Subject to software and data licensing restrictions, as applicable Legal Requirements and the limitations of the Service Provider's existing computer programs, the Service Provider shall provide to the Service Recipient, as soon as practicable after the Start Date, copies of all computer tapes and electronic spreadsheets constituting part of the data which the Service Provider has in its possession, and to the extent necessary, for purposes of the Service Recipient's data conversion.

(g)     Audit Adjustments.  The Service Provider shall pay or receive for its own accounting any audit adjustments (as to costs and revenues) which arise out of the operation of the Assets prior to the Effective Time.

(h)     Receivables.  With respect to portions of the Assets operated by the Service Provider, the Service Provider shall use reasonable efforts to collect all receivables in the ordinary course of business prior to the End Date.  Within thirty (30) days after such date, the Service Recipient shall bear the risk of nonpayment for, any accounts receivable arising out of the invoices sent by the Service Provider on behalf of the Service Recipient during the period from the Start Date through the End Date.  The Service Recipient shall be responsible, after the End Date, for collection of all receivables arising out of the invoices sent by the Service Provider or by the Service Recipient for such period.  During the time that the Service Provider is responsible for distributing revenues under this Agreement, the Service Provider may exercise any right that the operator has under the applicable agreements and orders governing the Assets to set off and retain amounts receivable out of revenues otherwise distributable to third parties.

(i)     Cooperation.  The Service Provider shall cooperate with Service Recipient, its Affiliates and their respective Representatives (including independent auditors) in the preparation of any reports or materials reasonably requested by Service Recipient.

**1.2    Land Administration Services**.

(a)     The Service Provider shall provide all lease, division order, and other land administration services (collectively, "**Land Administration Services**") in a timely manner related to production from the Assets produced during the Service Terms as follows:

(i)     Administering and maintaining all leases and agreements relating to the Assets;

(ii)    Maintaining and updating all lease, ownership, contract and property records and databases relating to the Assets;

(iii)   Maintaining and updating all royalty payment, suspense funds, and division order reports and databases;

(iv)    Generating, verifying, processing, approving and signing all internal and external division orders and transfer orders required in the normal course of business;

2

(v)     Identifying, paying, and appropriately invoicing all rentals, rights of way, shut in payments, minimum royalty payments and other payments required by the oil and gas leases or other agreements relating to the Assets;

(vi)    Maintaining all land, contract, division of interest, lease files and other files relating to the subject land administration functions in the ordinary course of business;

(vii)   Performing such other reasonable and customary land administration services as the parties deem necessary to administer or maintain the contracts affecting the Assets;

(viii)  Within ten (10) Business Days after the Start Date, and within ten (10) Business Days after the End Date, the Service Provider shall deliver to the Service Recipient in a consistent digital format the information listed on Exhibit A hereto;

(ix)    Paying (or causing its Affiliates to pay) to the applicable jurisdictions (and not to the Service Recipient) those suspended royalties that, at any time prior to the End Date, have escheated or are escheatable to the applicable jurisdictions under applicable Legal Requirements; and

(x)     Providing to the Service Recipient all information and documentation to allow the Service Recipient to identify all known parties for which the Service Provider or its Affiliates is currently holding funds in suspense, together with the production history attributable to such funds and such other information as reasonably necessary to allow the Service Recipient to assume payment obligations and/or discharge its legal requirements to timely escheat such funds to any applicable governmental authorities.

1.3   **Information**.

(a)     From and after the Start Date through the End Date, as applicable, with respect to each of the Services, the Service Provider shall provide to the Service Recipient (i) the daily statements for the Assets as soon as reasonably practical after such statements are generated, and (ii) electronic copies of all third party notices, applications, orders, AFEs, proposals, waivers, well data, and daily drilling reports related to the Assets within one Business Day of the Service Provider's receipt thereof.

1.4   **Field Services**.

(a)     Per instruction from the Service Recipient, the Service Provider shall cause its available employees to perform production operations services in accordance with applicable Legal Requirements and contracts from and after the Start Date through the day immediately preceding the End Date.

2.     **<u>Compensation</u>**.

3

2.1    The Service Recipient shall pay the Service Provider an amount equal to the sum of Two Hundred Twenty Thousand and No/100 Dollars ($220,000) per Service Month (the "**Monthly Fee**"). Except as expressly agreed to in writing by the Service Recipient, the Service Provider will not be entitled to reimbursement of any expenses incurred in connection with the Service Provider's performance of its obligations to provide any Services under this Agreement (including amounts charged by third-party contractors, subcontractors, vendors or other third parties hired by the Service Provider to provide any of the Services). The Monthly Fee constitutes the entire cost to the Service Recipient for the Services rendered by the Service Provider under this Agreement. For the avoidance of doubt, there shall be no separate charge by the Service Provider relating to its overhead (including but not limited to office overhead, field overhead, and employee salaries, bonuses and severances) and the Monthly Fee to be paid by the Service Recipient to the Service Provider under this Agreement is intended to compensate the Service Provider fully for its overhead.

**Schedule B**

**Recipient Entities**

[*KB OREO, LLC to insert*.]

**Exhibit A**
**Land Administration Information**

3.    Pursuant to Section 1.2(a)(viii) of Schedule A, the Service Provider shall provide:

    3.1    Name, address and Taxpayer ID for each owner associated with any well;

    3.2    Full export of the current decks used in the most recent JIB and REV run decks by property for all wells included in the sale, including but not limited to:

(a)    JIB decks:

    (i)      Deck #

    (ii)     Deck Description

    (iii)    Deck Type (BPO/APO, etc.)

    (iv)     Well #

    (v)      Well name

    (vi)     API

    (vii)    Owner #

    (viii)   Owner Name

    (ix)     WI type

    (x)      Interest Type

    (xi)     Interest decimal

(b)    REV decks:

    (i)      Deck #

    (ii)     Deck Description

    (iii)    Deck Type (BPO/APO, etc.)

    (iv)     Well #

    (v)      Well name

    (vi)     API

    (vii)    Owner #

1

(viii)   Owner Name

(ix)   Interest Type

(x)   Gross Working Interest

(xi)   Net Revenue Interest

(xii)   Entitlement/PPI

(xiii)   Suspense Code

(xiv)   Burdened by information for all Working Interest Parties

(xv)   Burdening information for all RI, ORRI, and NPRI Parties

**Exhibit G**
**Form of Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| EDGEMARC ENERGY HOLDINGS, LLC, *et al.*, | Case No. 19-11104 (JTD) |
| Debtors.[1] | (Jointly Administered) |
|  | Ref. No. 247, 329, 401, 443, 444, 497 and 594 |

## ORDER (A) APPROVING SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] filed on May 15, 2019 [D.I. 19] of EdgeMarc

Energy Holdings, LLC and its subsidiaries that are debtors and debtors in possession

(the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for,

*inter alia*, entry of an order, pursuant to sections 105(a), 363, 365, 503 and 507 of the

Bankruptcy Code, Bankruptcy Rules 2002-1, 6004-1, and 9006-1, and Rules 2002-1, 6004-

1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "**Local Rules**") *(A) Approving Sale of*

*Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances,*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: EdgeMarc Energy Holdings, LLC (80-0766900), EM Energy Manager, LLC (30-0745334), EM Energy Employer, LLC (80-0838026), EM Energy Ohio, LLC (80-0846935), EM Energy Pennsylvania, LLC (38-3881541), EM Energy West Virginia, LLC (90-0883771), EM Energy Keystone, LLC (82-0857506), EM Energy Midstream Ohio, LLC (46-3841268), EM Energy Midstream Pennsylvania, LLC (46-3843963). The Debtors' corporate headquarters and mailing address is 1800 Main Street, Suite 220, Canonsburg, PA 15317.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the that certain Asset Purchase Agreement, dated January 24, 2020, by and among EdgeMarc Energy Holdings, LLC, the EM Subsidiaries, KB OREO, LLC and KeyBank, National Association, as Administrative Agent (the "**Purchase Agreement**"), a copy of which is attached hereto as **Exhibit A**, the Motion, or the Bidding Procedures Order (as defined herein), as applicable.

*(B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* and this Court having entered an order on June 21, 2019 [D.I. 247], as amended by an order entered on July 12, 2019 [D.I. 329] (together, the "**Bidding Procedures Order**") approving the Bidding Procedures in connection with the sale of all or substantially all of the Debtors' assets and attached as <u>Exhibit 1</u> to the Bidding Procedures Order (the "**Bidding Procedures**"), including, among other things, the proposed form of notice of the Sale Hearing; and upon the *Notice of (I) Designation of Successful Bid and Cancellation of Auction for the Debtors' Monroe/Washington Assets and (II) Extension of Sale Timeline for the Sale of the Debtors' Butler Assets* [D.I. 497] (the "**Notice of Extension of Sale Timeline**"); and upon the *Notice of Rescheduled Sale Hearing for the Debtors' Butler Assets* [D.I. 594] (the "**Notice of Rescheduled Sale Hearing**"); and upon the *Notice of Adjournment of Auction and Sale Hearing for the Sale of the Debtors' Butler Assets* [D.I. 615] (the "**Notice of Adjournment**"); and upon the *Notice of Selection of Successful Bid, Sale Hearing and Cancellation of Auction for the Debtors' Butler Assets* [D.I. [__]] (the "**Notice of Successful Bid**") and the Debtors having determined after an extensive marketing and sale process that Key EM Energy, LLC, as assignee to KB OREO, LLC (together, the "**Buyer**") has submitted the highest or otherwise best bid for the Debtors' Assets; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being

2

a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the [*Declaration in Support of Sale* (the "**Sale Declaration**")]; and the Court having held a hearing to consider the Motion on February 7, 2020 (the "**Sale Hearing**"), at which time all interested parties were offered an opportunity to be heard regarding the Motion, the Purchase Agreement and the sale transaction contemplated by the Purchase Agreement (the "**Sale Transaction**"); and the Court having found that the relief granted by this Order is in the best interests of the Debtors, their creditors, their estates, and other parties in interest; and the Court having reviewed and considered the objections to the Motion (collectively, the "**Objections**"); and based upon and as demonstrated by the [Sale Declaration], the evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

    <u>Background</u>

    A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

    B.    On May 15, 2019 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States

<div align="center">3</div>

Bankruptcy Court for the District of Delaware (the "**Court**") commencing the Chapter 11 Cases.

C.      The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 42] entered by the Court on May 16, 2019, in each of the Chapter 11 Cases.

D.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

E.      The Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a statutory committee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on May 29, 2019 [D.I. 114] (the "**Committee**").

F.      As part of the Debtors' efforts to realize the highest and best value for their businesses, the Court entered the Bidding Procedures Order that established Bidding Procedures for a sale or other transaction involving the Assets and scheduled various dates relating to the Auction.  Subsequently, on August 21, 2019, the Debtors filed the Notice of Extension of Sale Timeline, and on September 16, 2019, the Notice of Rescheduled Sale Hearing, establishing September 10, 2019 as the deadline for the submission of bids by Potential Bidders (as defined in the Bidding Procedures) (the "**Bid Deadline**"), September 19, 2019 as the date for the Auction (if any), and October 7, 2019 as the date on which the Court would hold the Sale Hearing to approve the successful bidder selected at the Auction in accordance with the Bidding Procedures (the "**Successful Bidder**") and the Sale Transaction.  On September 20, 2019, the Debtors filed the Notice of Adjournment

4

adjourning the Auction.  On January 24, 2020, the Debtors filed the Notice of Successful

Bidder designating Buyer as the Successful Bidder.

### Compliance with Bidding Procedures and Bidding Procedures Order

G.    The Debtors' marketing and sales process with respect to the Assets

afforded a full, fair, and reasonable opportunity for any person or entity to make a higher

or otherwise better offer to purchase the Assets.  The Debtors and their professionals

conducted a marketing and sale process with respect to the Assets in a fair, good faith, and

non-collusive manner in accordance with, and have otherwise complied in all respects with,

the Bidding Procedures and the Bidding Procedures Order.

H.    The Successful Bid (which is memorialized in the Purchase Agreement)

constitutes the highest or otherwise best offer for the Assets, and the Debtors'

determination that the Purchase Agreement maximizes value for the benefit of the Debtors'

estates and constitutes the highest or otherwise best offer for the Assets constitutes a valid

and sound exercise of the Debtors' business judgment (exercised in consultation with the

Consultation Parties) and is in accordance and compliance with the Bidding Procedures

and the Bidding Procedures Order.

I.    The Purchase Agreement provides fair and reasonable terms for the

purchase of the Assets, and reasonable opportunity has been given to any interested party

to make a higher or otherwise better offer for the Assets.  Approval of the Motion and the

Purchase Agreement, and the prompt consummation of the Sale Transaction contemplated

thereby, will maximize the value of each of the Debtors' estates and are in the best interests

of the Debtors, their chapter 11 estates, their creditors, and other parties in interest.

5

**The Buyer**

J.      Pursuant to the Bidding Procedures and under the Bankruptcy Code, KeyBank is entitled to exercise its credit bid right pursuant to section 363(k) of the Bankruptcy Code on account of its DIP Claims (the "**Credit Bid**") and cause the Assets to be conveyed from the Debtors to the Buyer.  After extensive, arm's length, good faith negotiations, on January 24, 2020, the Debtors, Buyer, and KeyBank, National Association, in its capacity as Administrative Agent under the DIP Credit Agreement ("**KeyBank**"), executed the Purchase Agreement wherein the Debtors and the Buyer agreed that the Buyer would purchase the Assets pursuant to the Credit Bid and additional cash purchase price (the **"Bid"**).

**The Auction**

K.      On September 19, 2019, the Auction was commenced.  The Debtors (in consultation with the Consultation Parties) elected to adjourn the Auction and pursue mediation (the "**Mediation**") with the KeyBank, ETC Northeast Pipeline, LLC ("**ETC**") and the Committee pursuant to the *Order Referring Issues to Mediation and Appointing Mediator* [D.I. 628] (the "**Mediation Order**").

L.      The solicitation of bids and the Auction were conducted fairly and in good faith, without collusion, and in accordance with the Bidding Procedures Order.  After adjourning the Auction, participating in the Mediation, and continued negotiations and discussions by and among the Debtors, ETC, the Committee, and KeyBank, and evaluating the other bids received by the Debtors for the Assets, the Debtors have determined that the Buyer is the Successful Bidder for the Assets in accordance with the Bidding Procedures Order.  The Debtors' determination (in consultation with the Consultation Parties) that the offer reflected in the Purchase Agreement constitutes the highest or otherwise best offer

6

for the Assets is a valid and sound exercise of the Debtors' business judgment (exercised in consultation with the Consultation Parties). The Buyer has complied in all respects with the Bidding Procedures Order and all other applicable orders of the Court in negotiating and entering into the Purchase Agreement.

M.    After completion of the Auction and the Debtors' selection of the Buyer as the Successful Bidder, the Debtors and the Buyer negotiated and finalized in good faith and at arm's length the Purchase Agreement and all related documents necessary to consummate the Sale Transaction.

**Sale Hearing**

N.    The Court conducted the Sale Hearing on February 7, 2020 at which time the Court considered (i) the Motion, the evidence and testimony presented, and the statements and argument of counsel in support of granting the relief requested in the Motion and (ii) approval of the Purchase Agreement and the Sale Transaction.

O.    Notice of the Sale Hearing was adequate, fair, and equitable under the circumstances. All objections and responses concerning the Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. Any objections, reservations of rights, and/or other statements in response to the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

**Sound Business Purpose**

P.    The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for consummation of the Sale Transaction in accordance with the requirements of section 363(b) of the Bankruptcy Code. The value of the Debtors' estates will be maximized through a sale of the Assets on a going concern basis.

7

Q.      A sale pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the assignment of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code also may prevent the continued accrual of post-petition, administrative expense obligations under various unexpired leases and executory contracts that are proposed to be acquired by the Buyer under the Purchase Agreement.

R.      Approval of the Purchase Agreement pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code is necessary to preserve the value of the Debtors' businesses. The Debtors have determined, in their reasonable business judgment (in consultation with the Consultation Parties), that the Assets will have the greatest value if promptly sold to the Buyer.

S.      As a result, the proposed Sale Transaction pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, upon the terms and conditions set forth in the Purchase Agreement, is the best alternative available to the Debtors for recovering value for the benefit of the Debtors' estates.  The Sale Transaction maximizes the value of the Assets because the Assets are being sold as part of a going concern business, and the continuity and remaining goodwill value associated with the Assets are being preserved.

T.      Neither the Purchase Agreement nor the Sale Transaction contemplated thereunder constitute a *sub rosa* chapter 11 plan.  The Purchase Agreement does not specify the terms of, or any distributions under, any subsequent chapter 11 plan by the Debtors (other than provisions that are consistent with the sale of assets under the Purchase Agreement and the relief granted hereunder).

**Fair and Equivalent Value**

U.      The total consideration to be provided by the Buyer under the Purchase Agreement is the highest or otherwise best offer received by the Debtors and constitutes

8

(i) fair value, (ii) fair, full, and adequate consideration, (iii) reasonably equivalent value, and (iv) reasonable market value for the Assets for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable laws of the United States, any state, territory, or possession thereof or the District of Columbia.

V.      The terms of the Purchase Agreement and the Sale Transaction contemplated therein are fair and reasonable under the circumstances of the Debtors' businesses and the Chapter 11 Cases.

**Notice of the Motion**

W.      As evidenced by the affidavits of service and publication previously filed with this Court [D.I. 92, 229, 235, 272, 285, 290, 359, 411, 412, 433, 456, 472, 482, 513, and 524], and based upon representations of counsel at the Sale Hearing, notice (the "**Notice**") was adequate and sufficient under the circumstances and provided sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase Agreement, this Order, and the Sale Transaction.  The Notice was provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004-1, including to: (i) the U.S. Trustee; (ii) each of the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (iii) KeyBank National Association; (iv) the Debtors' prepetition equity owners; (v) the United States Attorney's Office for the District of Delaware; (vi) the attorneys general for the states in which the Debtors conduct business; (vii) local and state environmental authorities and the Environmental Protection Agency; (viii) counsel for the Committee; (ix) the Federal Energy Regulatory Commission; (x) the Internal Revenue Service; (xi) all known taxing authorities to which the Debtors are subject; (xii) all entities known or

9

reasonably believe to have asserted a lien or encumbrance on any of the Assets; (xiii) counterparties to Debtors' executory contracts and unexpired leases; (xiv) those entities and individual appearing on the Debtors' creditor matrix; and (xv) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase Agreement, this Order, and the Sale Transaction as required by the Bidding Procedures Order.  The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase Agreement, this Order, or the Sale Transaction is or shall be required.

### Good Faith of the Buyer

X.    The Buyer is purchasing the Assets and the Buyer and KeyBank have entered into the Purchase Agreement at arm's length and in good faith.  Accordingly, the Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and the Buyer is, therefore, entitled to the protections of such provision.  The good faith of the Buyer and KeyBank is evidenced by, among other things, the following facts:

> i.    The sale process conducted by the Debtors, including, without limitation, conducting the Auction process pursuant to the Bidding Procedures set forth in the Bidding Procedures Order, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties.  The Debtors offered other parties the opportunity to top the Bid submitted by the Buyer and at the Auction offered all parties that submitted Qualified Bids an opportunity to match or top the Bid submitted by the Buyer, and all other bidders

10

or Potential Bidders declined to do so.  The Debtors evaluated each bid received prior to selecting the Buyer as the Successful Bidder.

ii.    All payments to be made by the Buyer and other agreements or arrangements in connection with the Purchase Agreement have been disclosed.

iii.    The Buyer has not violated the provisions of section 363(n) of the Bankruptcy Code by any action or inaction.

iv.    The Buyer is a third party purchaser and is unrelated to any of the Debtors.  Neither the Buyer, nor any of its Affiliates, subsidiaries, officers, directors, members, partners, principals, or any of their respective representatives, successors, or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

v.    The Debtors, the Buyer, and KeyBank have engaged in substantial arm's length negotiations in good faith.  The Purchase Agreement is the product of this bargaining among the parties.

Y.    The sale of the Assets pursuant to the Purchase Agreement, all covenants therein and conditions thereto, and all relief requested in the Motion are an integrated transaction, meaning that each component is an essential part of every other component and that the entire transaction can be consummated only if all of its components are consummated.  Accordingly, the entire transaction is subject to, and is protected by, the provisions of section 363(m) of the Bankruptcy Code.

11

**Sale Free and Clear**

Z.      After the Closing, no entity shall have any Lien, Claim and/or Interest (as defined herein) in or against the Assets other than the Assumed Liabilities and the Permitted Encumbrances (each as defined in the Purchase Agreement).

AA.      All other liens and claims that existed against the Assets prior to the Closing, including, without limitation, the Permitted Prior Liens (as defined in the Final DIP Order),[3] shall attach to the sale proceeds the Debtors receive under the Sale Transaction (subject to the terms and conditions set forth in the Final DIP Order, Bidding Procedures Order, and this Order, including without limitation, the Carve-Out[4]).  Those liens and claims will attach to the proceeds of the Sale Transaction in the same order of relative priority and with the same validity, force, and effect that the holder of such lien or claim had against the Assets prior to Closing (including, for the avoidance of doubt, as set forth in the Final DIP Order), and will be subject to any claims and defenses the Debtors may possess with respect thereto. The interests of the holders of such liens or claims are being adequately protected pursuant to the provisions of this Order.

BB.      Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession is authorized to sell property of its estate free and clear of any liens, claims, interests, and encumbrances if any of the following requirements is satisfied: (i) applicable non-bankruptcy law permits the sale of such property free and clear of such interest (section

---

[3] *See Final Order, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364, 503, 506, and 507, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Post-Petition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [D.I. 223] (the "**Final DIP Order**").

[4] As used in this Order, Carve-Out shall have the meaning set forth in the Final DIP Order.

#92851088v1

363(f)(1) of the Bankruptcy Code); (ii) the entity holding the alleged lien, claim, interest, or encumbrance consents (section 363(f)(2) of the Bankruptcy Code); (iii) such interest is a lien, and the price at which such property is to be sold is greater than the aggregate value of all liens on such property (section 363(f)(3) of the Bankruptcy Code); (iv) such lien, claim, interest, or encumbrance is subject to a *bona fide* dispute (section 363(f)(4) of the Bankruptcy Code); or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such lien, claim, interest, or encumbrance (section 363(f)(5) of the Bankruptcy Code).

CC.    For the following reasons, the provisions of section 363(f) of the Bankruptcy Code have been satisfied:

    i.    All alleged holders of liens or claims who did not object or withdrew their objections to the Sale Transaction are deemed to have consented.  Alleged holders of liens or claims who did object either had their objections overruled or resolved or otherwise fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code, including those referenced below.

    ii.    The Buyer is an entity holding a lien, claim, interest, or encumbrance and is purchasing the Assets upon the terms and conditions set forth in the Purchase Agreement (*see* Bankruptcy Code section 363(f)(2)).

    iii.    The Debtors are not aware of any remaining interests in the Assets, and, if any such interests exist, they are in *bona fide* dispute as to the

13

extent, validity, perfection, and viability of those interests (*see* Bankruptcy Code section 363(f)(4)).

iv.    Other parties (if any) could be compelled to accept a money satisfaction of their liens, claims, interests, or encumbrances (*see* Bankruptcy Code section 363(f)(5)) or such interest is a lien and the price at which such encumbered property is to be sold under the Purchase Agreement is greater than the aggregate value of all liens on such encumbered property (*see* Bankruptcy Code section 363(f)(3)).  Further, any liens and claims other than liens and claims constituting part of the purchase price as a credit bid (which includes all DIP Liens and Claims, all Adequate Protection Liens and Claims and all Prepetition Liens and Claims[5]) shall attach to the proceeds of the Sale Transaction to the same extent and in the same priority as existed in the Assets.

DD.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Assets will be transferred to the Buyer free and clear of all Liens, Claims and/or Interests (other than the Permitted Encumbrances and the Assumed Liabilities) with all other applicable liens and claims to attach to the proceeds of the sale of the Assets in the order of their priority, with the validity, force, and effect that they now have as against the Assets (for the avoidance of doubt, subject to the Carve-Out), subject to the rights, claims, defenses, and objections, if any, of the Debtors and all interested parties with respect to such liens

---

[5] As used in this Order, DIP Liens and Claims, Adequate Protection Liens and Claims, and Prepetition Liens and Claims shall each have the meaning set forth in the Final DIP Order.

14

and claims and with the net proceeds from the sale of the Assets to be available for the benefit of the Debtors' estates.

EE.    Accordingly, the Debtors have satisfied the standard set forth in section 363(f) of the Bankruptcy Code for selling the Assets free and clear of all Liens, Claims and/or Interests other than the Permitted Encumbrances and the Assumed Liabilities.

### Sale Free and Clear Required by the Buyer

FF.    In connection with the Purchase Agreement, the Buyer expressly negotiated for the protection of obtaining the Assets free and clear of all Liens, Claims and/or Interests (including, without limitation, any potential successor liability claims) other than the Permitted Encumbrances and Assumed Liabilities, or as otherwise explicitly provided in the Purchase Agreement.  The Buyer would have paid substantially less consideration for the Assets or not have purchased the Assets if the Buyer were not buying the Assets free and clear of any Liens, Claims and/or Interests (other than the Permitted Encumbrances and Assumed Liabilities, or as otherwise explicitly provided in the Purchase Agreement).

### No Successor Liability

GG.    To the greatest extent permitted by law, neither the Buyer nor its affiliates, officers, directors, members, partners, and principals, including, but not limited to, KeyBank, or any of their respective Representatives, successors, or assigns shall be deemed, as a result of the consummation of the Sale Transaction or otherwise, to (i) be a legal successor, or otherwise be deemed a successor, to the Debtors or the Debtors' estates, (ii) have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors or any of the Debtors' estates, (iii) be an alter ego, a continuation, or substantial continuation of any of the Debtors or any enterprise of any of the Debtors, or (iv) be liable for any claim based on successor liability, transferee liability, derivative liability, vicarious liability, or

15

any similar theories under applicable state or federal law, or otherwise.  Except as expressly set forth in the Purchase Agreement with respect to the Assumed Liabilities and Permitted Encumbrances, the Buyer shall have no liability or obligation of any of the Debtors and/or their respective estates and the Buyer is not expressly or impliedly agreeing under the terms and conditions of the Purchase Agreement to assume any of the debts or obligations of the Debtors.  Any so-called "bulk sales," "bulk transfer," or other similar laws are not applicable, and compliance with any such laws in all necessary jurisdictions is not required, including those relating to taxes.

HH.    The Buyer and the Debtors are not entering into the Purchase Agreement fraudulently or in order to escape liability for the Debtors' obligations.

**Assumption and Assignment of the Assigned Contracts and Assigned Leases and Interests**

II.    Section 365(a) of the Bankruptcy Code provides that "the [debtor in possession], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  It is in the best interests of the Debtors and their respective estates to assume and assign the Assigned Contracts and Assigned Leases and Interests to the Buyer on the effective date of the assumption and assignment of such Assigned Contracts or Assigned Leases and Interests ("**Assumption and Assignment Effective Date**") in accordance with the terms and conditions of the Purchase Agreement, the Bidding Procedures Order, and this Order.  The Debtors' assumption and assignment of the Assigned Contracts and Assigned Leases and Interests to the Buyer is a valid exercise of the Debtors' business judgment and satisfies the requirements of section 365 of the Bankruptcy Code.  The Sale Transaction provides significant benefits to the Debtors' estates.  The Debtors cannot obtain these benefits without the assumption and assignment

16

of the Assigned Contracts and Assigned Leases and Interests, which are a material part of the Assets and the Sale Transaction. Accordingly, the assumption and assignment of the Assigned Contracts and Assigned Leases and Interests constitutes an exercise of the Debtors' sound business judgment.

JJ.     Section 365(b)(1) of the Bankruptcy Code requires a debtor in possession to cure any default and provide adequate assurance of future performance in order to assume an unexpired lease or executory contract under which a default has occurred. Subject to the terms and conditions set forth in the Bidding Procedures Order, the Purchase Agreement, and this Order, and except to the extent waived by the applicable contractual counterparty, on the applicable Assumption and Assignment Effective Date (or as otherwise provided in the Bidding Procedures Order, the Purchase Agreement, or this Order), the Seller shall pay any outstanding Cure Costs, calculated in good faith as of the Petition Date, and any other applicable cure costs due pursuant to the Purchase Agreement, with respect to the Assigned Contracts or Assigned Leases and Interests and, therefore, this requirement has been satisfied, except that Buyer shall pay any Cure Costs to the extent required to be paid by Buyer under Section 2.05 of the Purchase Agreement.

KK.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, a debtor in possession may assign such contract or lease if such contract or lease is assumed by the debtor in possession in accordance with section 365 of the Bankruptcy Code, and the proposed assignee provides "adequate assurance of future performance" of the obligations arising under such contract or lease from and after the date of the assignment. The Debtors have satisfied the

17

requirements necessary to assume the Assigned Contracts and Assigned Leases and Interests. In addition, the Debtors have demonstrated that the Buyer has the resources to perform the obligations under such Assigned Contracts and Assigned Leases and Interests. Accordingly, the requirements for assignment of such contracts and leases to the Buyer under section 365(f) of the Bankruptcy Code have been satisfied. To the extent that any party's consent to assumption or assignment of any Assigned Contract or Assigned Lease or Interest is required by the Bankruptcy Code and applicable non-bankruptcy law, such party is deemed to have consented by not timely objecting to the Motion.

LL.    In accordance with the Bidding Procedures Order, and as evidenced by the Notice and the Affidavits of Service, due and proper notice of the proposed assumption and assignment of the Assigned Contracts and Assigned Leases and Interests to the Buyer was provided to the non-Debtor counterparties listed on Exhibit A-1, Schedule 2.01(b)(vii)-1 and Schedule 2.05(a), in each case, to the Purchase Agreement.

**No Fraudulent Intent**

MM.    The Purchase Agreement was not entered into, and the Sale Transaction will not be consummated, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors for purposes of the Bankruptcy Code, any other applicable laws of the United States, and any applicable laws of any state, territory, or possession thereof, or the District of Columbia. Neither the Debtors nor the Buyer is entering into the Purchase Agreement or consummating the Sale Transaction with any fraudulent or otherwise improper purpose.

**Assets**

NN.    The Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

#92851088v1

The Debtors have all title, interest, and/or rights in the Assets required to transfer and to convey the Assets to the Buyer, as required by the Purchase Agreement.

### Corporate or Limited Liability Company Authority

OO.    The Debtors have (i) full power and authority to perform all of their obligations under the Purchase Agreement and the Debtors' prior execution and delivery of, and performance of obligations under, the Purchase Agreement is hereby ratified, (ii) all of the power and authority necessary to consummate the Sale Transaction, and (iii) taken all actions necessary to authorize, approve, execute, and deliver the Purchase Agreement and to consummate the Sale Transaction.

### Prompt Consummation

PP.    To maximize the value of the Assets, it is essential that the Sale Transaction occur within the timeframe set forth in the Purchase Agreement.  Time is of the essence in consummating the Sale Transaction.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts or Assigned Leases and Interests prior to, and outside of, a chapter 11 plan.  Accordingly, there is cause to lift the stays established by Bankruptcy Rules 6004 and 6006.

### Statutory Predicates

QQ.    The statutory authorization for the relief granted herein is found in sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Bankruptcy Rules 2002-1, 6004-1, and 6006-1.

**Section 363 Sale**

RR.    The proposed sale of the Assets to the Buyer pursuant to the Purchase Agreement constitutes a sale of property of the Debtors' respective estates outside the ordinary course of business within the meaning of section 363(b) of the Bankruptcy Code.

SS.    For good and valid reasons, the Court may authorize and approve a sale of assets of a chapter 11 debtor pursuant to section 363(b) of the Bankruptcy Code without the necessity of following the procedures and making the findings required for the confirmation of a chapter 11 plan.  Such good and valid reasons exist in this case.  Under the circumstances of the Chapter 11 Cases, the sale of the Assets to the Buyer pursuant to sections 105(a) and 363(b) and (f) of the Bankruptcy Code is both justified and appropriate.

TT.    The sale of the Assets to the Buyer free and clear of any and all Liens, Claims and/or Interests (other than the Permitted Encumbrances and Assumed Liabilities) upon the terms and conditions set forth in the Purchase Agreement is in the best interests of the Debtors and their respective estates.

UU.    Given the circumstances of the Chapter 11 Cases, including, without limitation, the adequate exposure of the Debtors' businesses to the marketplace, the reasonable opportunity afforded other parties to make competing bids or offers for all or a portion of the Debtors' businesses, and the adequacy and fair value of the consideration being provided by the Buyer under the Purchase Agreement, the proposed sale of the Assets to the Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment and is hereby approved in all respects.

**Retention of Jurisdiction**

VV.    It is necessary and appropriate for the Court to retain jurisdiction to, *inter alia*, interpret and enforce the terms and provisions of this Order and the Purchase

Agreement, and to adjudicate, if necessary, any and all disputes concerning the assumption and assignment of the Assigned Contracts and the Assigned Leases and Interests and any alleged right, title, or property interest, including ownership claims, relating to the Assets and the proceeds thereof, as well as the extent, validity, perfection, and priority of any alleged lien or claim relating to the Debtors and/or the Assets.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.      The relief requested in the Motion is granted and approved in all respects as set forth in this Order.

2.      The Sale Transaction is hereby approved in all respects as set forth in this Order.

3.      The Debtors are hereby authorized and directed to sell the Assets to the Buyer upon and subject to the terms and conditions set forth in the Purchase Agreement, the provisions of which are incorporated herein by reference as if set forth in full herein.

4.      Each of the Debtors is hereby authorized and directed to perform, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take any and all further actions as may be necessary or appropriate to the performance of its obligations as contemplated by the Purchase Agreement or this Order, including paying, whether before or after the Closing, any expenses or costs that are required to be paid in order to consummate the Sale Transaction or to perform its obligations under the Purchase Agreement or any related agreements.

5.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Assets shall be transferred, sold, and delivered to the Buyer free and clear of all Liens, Claims and/or Interests, other than the Permitted Encumbrances and the Assumed

Liabilities, or as otherwise explicitly set forth in the Purchase Agreement. All other liens and claims that existed against the Assets prior to the Closing, including, without limitation, the Permitted Prior Liens, if any (but excluding the DIP Liens, Prepetition Liens, and Adequate Protection Liens[6]), shall attach to the sale proceeds the Debtors receive under the Sale Transaction (subject to the terms and conditions set forth in the Final DIP Order, Bidding Procedures Order, and this Order, including without limitation, the Carve-Out). Those liens and claims will attach to the proceeds of the Sale Transaction in the same order of relative priority and with the same validity, force, and effect that the holder of such lien or claim had against the Assets prior to Closing (including, for the avoidance of doubt, the priority of the Carve-Out as set forth in the Final DIP Order), and will be subject to any claims and defenses the Debtors may possess with respect thereto. The interests of the holders of such liens or claims are being adequately protected pursuant to the provisions of this Order by having their liens or claims, if any, in each instance against the Debtors, their estates, or any of the Assets, attach to the proceeds of the Sale Transaction ultimately attributable to the Assets in which such creditor or interest holder alleges an interest, in the same order of priority and with the same validity, force, and effect that such creditor or interest holder had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

6.        In accordance with the Purchase Agreement, all fee interests, rights-of-way, easements, real property interests, real rights, licenses, servitudes, permits, privileges, and leases (surface and subsurface) owned or held by the Debtors, or hereinafter acquired by

---

[6] As used in this Order, DIP Liens, Prepetition Liens and Adequate Protection Liens shall each have the meaning set forth in the Final DIP Order.

22

the Debtors prior to the Closing, in each case to the extent constituting Assets, constitute real property or a real property interest, and together with the rights, tenements, appurtenant rights and privileges related thereto (collectively, the "**Real Property Interests**"), shall, in accordance with the Purchase Agreement, be transferred to the Buyer at the Closing notwithstanding any consent rights, anti-assignment provisions, or any other provisions purporting to prohibit or condition the transfer or assignment of such Real Property Interests contained in such Real Property Interests, or in any other document, and all such rights, provisions, prohibitions, and conditions shall be void and of no force and effect with respect to the Sale Transaction.

7.     To the greatest extent permitted by law, as a result of the Sale Transaction, neither the Buyer nor KeyBank will be a successor to any of the Debtors by reason of any theory of law or equity, and neither the Buyer nor KeyBank will have any liability, except as expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, for any Liens, Claims and/or Interests against or in any of the Debtors as a result of any application of successor liability theories.

8.     Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon Closing, and in accordance with the Purchase Agreement, the Assets shall be transferred to the Buyer free and clear of all liens, claims, encumbrances and interests (subject to the Assumed Liabilities and the Permitted Encumbrances), including, without limitation, each of the following, which are collectively referred to herein as the "**Liens, Claims and/or Interests**":

- liens (as that term is defined in the Bankruptcy Code), including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens, mortgages, hypothecations, charges, consents, judicial liens (as defined in the Bankruptcy Code), instruments,

leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, Encumbrances, covenants, easements, servitudes, and liens and security interests granted under sections 361, 363 and/or 364 of the Bankruptcy Code or an order of the Court, including the interim order [D.I. 62] and final order [D.I. 223] authorizing the DIP Loans (as therein defined);

- interests, obligations, liabilities, demands, agreements, guaranties, options, restrictions, contractual or other commitments;

- rights, including, without limitation, rights of first refusal, rights of offset, rights to use, contract rights, Preferential Purchase Right, rights of recovery, and any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, consent, or termination of the Debtors' or the Buyer's interest in the Assets, or any similar rights, in each case with respect to the Sale Transaction;

- judgments and/or decrees of any court or foreign or domestic Governmental Authority or governmental entity (to the extent permitted by law);

- charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Assets, including, without limitation, consent of any person or entity to assign or transfer any of the Assets, in each case with respect to the Sale Transaction;

- debts (as that term is defined in the Bankruptcy Code), including but not limited to, debts arising in any way in connection with any agreements, loan documents, credit agreements, indentures, debtor-in-possession loans, DIP Documents (as defined in D.I. 223), acts, or failures to act of the Debtors, any of the Debtors' predecessors or Affiliates, or any Representative of any of the Debtors, their predecessors or Affiliates;

- claims (as that term is defined in the Bankruptcy Code), including but not limited to, all rights to payment, damages, losses, demands, judgments, claims, causes of action, charges, assessments, liabilities, suits, investigations, litigation, third-party actions, claims for reimbursement, contribution claims, penalties, indemnity claims, exoneration or exculpation claims, Royalties, Suspense Funds, alter-ego claims, environmental claims or liens arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under any Environmental Law (to the greatest extent permitted by law), claims arising under any bulk sales or similar law, Tax, claims arising under any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, any products liability, product warranty liability or similar claims, intercompany claims,

24

loans and receivables between any Debtor and another Debtor or any Debtor and any non-Debtor subsidiary, Affiliate or Representative of any of the foregoing, escheat, administrative expenses, and pending or threatened litigation claims, arbitral proceedings or proceedings by or before any Governmental Authority or any other person, sanctions, penalties, costs, expenses, fees (including attorney or other professional and advisor fees and costs), Liabilities, setoff rights (to the greatest extent permitted by law), obligations, and claims and liabilities of any kind or nature under contract, agreement, understanding, or at law, in equity, or otherwise, whatsoever, whether or not reduced to judgment;

- claims or liens in any way whatsoever relating to or arising from the Assets or the Debtors' operations or use of the Assets, including, without limitation, claims or liens under the Assigned Contracts and Assigned Leases and Interests arising prior to the Closing, or any liabilities calculable by reference to the Debtors or their assets or operations or relating to continuing conditions existing at or prior to the Closing or the applicable Assumption and Assignment Effective Date;

- Excluded Liabilities; and

- to the maximum extent permitted by law, any other interest within the meaning of section 363(f) of the Bankruptcy Code,

in each instance for all of the foregoing, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise.

9. Without limiting the foregoing, and except as otherwise expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, neither the Buyer nor KeyBank shall be liable or responsible, as a successor or otherwise, for the Debtors' claims or liens, whether calculable by reference to the Debtors or their operations or under or in connection with (a) any employment or labor agreements, (b) any pension, welfare, compensation, fringe benefit, or other employee benefit plans,

25

trust arrangements, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors, any medical, welfare, and pension benefits payable after retirement or other termination of employment, or any responsibility as a fiduciary, plan sponsor, or otherwise for making any contribution to, or in respect of the funding, investment, or administration of, any employee benefit plan, arrangement, or agreement (including, without limitation, pension plans) or the termination of or withdrawal from any such plan, arrangement, or agreement, (c) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Age Discrimination and Employment Act of 1967, (v) the Federal Rehabilitation Act of 1973, (vi) the National Labor Relations Act, or (vii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (d) worker's compensation, occupational disease, or unemployment or temporary disability insurance claims.

10.     Except as expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, no person or entity, including, without limitation, any federal, state, or local governmental agency, department, or instrumentality, shall assert by suit or otherwise against the Buyer or its successors in interest any Lien, Claim and/or Interest that they had, have, or may have against the Debtors, or any Lien, Claim and/or Interest relating to or arising from the Assets or the Debtors' operations or use of the Assets.

11.     The terms and provisions of the Purchase Agreement and all related documents necessary to consummate the Sale Transaction, together with the terms and provisions of this Order, shall be binding in all respects upon the Debtors, their estates, their creditors, and all parties in interest, including any and all successors and assigns (including, without limitation, any trustee appointed under the Bankruptcy Code).

12.     Except as expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, all entities holding Liens, Claims and/or Interests against the Assets shall be, and hereby are, barred from asserting such Liens, Claims and/or Interests against the Buyer and/or the Assets and all entities holding such Liens, Claims and/or Interests shall be deemed to have released the Assets to the Buyer and to have limited the assertion of their liens or claims against the Assets (subject, in all cases, to the priority set forth in the Final DIP Order, including the priority of the Carve-Out) to the sale proceeds the Debtors receive for the sale of the Assets and any other available property of the Debtors' respective estates that does not constitute the Assets

13.     This Order shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

27

14.     All Liens, Claims and/or Interests of record against the Assets, other than the Permitted Encumbrances and Assumed Liabilities, shall, upon Closing, be terminated as against the Assets, and all the entities described in the immediately preceding paragraph of this Order are authorized and directed to (a) terminate all recorded Liens, Claims and/or Interests against the Assets from their records, official, and otherwise, in each case solely with respect to the Assets, and (b) accept for filing or recording all instruments made or delivered by or to any of the Debtors, and all deeds or other documents relating to the conveyance of the Assets to the Buyer.

15.     If any person or entity that has filed statements, documents or agreements evidencing liens or claims on or in the Assets shall not have delivered to the Debtors prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens, Claims and/or Interests that the person or entity has or may assert with respect to the Assets, the Buyer is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets.

16.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors' assumption (if applicable) and assignment to the Buyer, and the Buyer's assumption of the Assigned Contracts and Assigned Leases and Interests, on the terms set forth in the Purchase Agreement, are hereby approved and the requirements of section 365(b)(1) with respect thereto are hereby found and deemed to be satisfied.

17.     The Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer at Closing the

28

Assigned Contracts and Assigned Leases and Interests free and clear of all Liens, Claims and/or Interests (other than the Permitted Encumbrances and the Assumed Liabilities) and (b) execute and deliver to the Buyer such documents or other instruments as Buyer deems may be necessary to assign and transfer the Assigned Contracts and Assigned Leases and Interests to the Buyer.

18.     Subject to the Closing, (a) to the extent provided in section 365 of the Bankruptcy Code, any provisions in any of the Assigned Contracts and Assigned Leases and Interests that prohibit or condition the assignment of such Assigned Contracts and Assigned Leases and Interests or allow the party to such Assigned Contracts and Assigned Leases and Interests to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such of the Assigned Contracts and Assigned Leases and Interests, constitute unenforceable anti-assignment provisions which are void and of no force and effect, (b) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each of the Assigned Contracts and Assigned Leases and Interests have been satisfied, and (c) effective upon the Closing, the Assigned Contracts and Assigned Leases and Interests shall be transferred and assigned to, and from and following the Closing remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any of the Assigned Contracts and Assigned Leases and Interests that prohibits, restricts, or conditions such assignment or transfer (including but not limited to any consents to assign) and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further post-Closing liability with respect to

29

the Assigned Contracts and Assigned Leases and Interests after such assumption and assignment to the Buyer at Closing.

19.     All defaults or other obligations of the Debtors under the Assigned Contracts and Assigned Leases and Interests, arising or accruing prior to the Closing, or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts and Assigned Leases and Interests, shall be cured by the Debtors or the Buyer, as applicable, to the extent set forth in the Purchase Agreement.  Except as to any timely filed objection to the Debtors' proposed Cure Costs in respect of any of the Assigned Contracts and Assigned Leases and Interests, which objection will be resolved as provided in Paragraph 20 below, the Cure Costs set forth in the Potential Assumption and Assignment Notice, or Exhibit 1 to the *Debtors' Omnibus Motion for an Order, Pursuant to Sections 105 and 365 of the Bankruptcy Code, Authorizing (I) the Debtors to Assume Certain Unexpired Leases and (II) Waiving the Requirements of Rule 6006(f)(6) of the Federal Rules of Bankruptcy Procedure* [D.I. 735], as applicable (together, the "**Assumption and Assignment Notice**") to the extent not already paid shall constitute the only amounts due to the Counterparty under the Assigned Contracts and Assigned Leases and Interests as of Closing, and no other defaults exist and no other amounts are due on account of any facts occurring prior to Closing, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to Closing.

30

20.     For Cure Costs in an amount greater than $0 or for which an objection was timely filed in accordance with the Assumption and Assignment Notice, Buyer will pay such Cure Costs as follows:

(a)     if not disputed in good faith as to liability or amount, and such Cure Costs arose or accrued before the objection deadline for Cure Costs in the Assumption and Assignment Notice, such Cure Costs shall be paid at Closing or within five Business Days thereafter;

(b)     if not disputed in good faith as to liability or amount, and such Cure Costs arose or accrued after the objection deadline for Cure Costs in the Assumption and Assignment Notice but before Closing, such Cure Costs shall be paid when due in the ordinary course promptly by the Buyer; or

(c)     if disputed in good faith as to liability or amount, such Cure Costs, if any, shall be paid as determined by the Court in a subsequent order the Court enters in the Bankruptcy Cases on, prior to, or after the Closing, or promptly thereafter, resolving the controversy or as may be resolved by agreement of the impacted parties (in consultation with the Consultation Parties if an impacted party is a Debtor); *provided*, *however*, that any undisputed portion of such Cure Costs shall be paid in accordance with subsections (a) or (b), as applicable.

The procedures provided herein provide adequate assurance that the Debtors will promptly cure defaults and promptly compensate for any pecuniary loss within the meaning of sections 365(b)(1)(A) and (B) of the Bankruptcy Code.  As such, all Assigned Contracts and Assigned Leases and Interests shall be assigned to Buyer at Closing in accordance with the Purchase Agreement.

21.     Upon the Debtors' assignment of the Assigned Contracts or Assigned Leases and Interests to the Buyer under the provisions of this Order at Closing, no default or other obligations arising or accruing prior to Closing shall exist under any Assigned Contracts or Assigned Leases and Interests, and each Contract Counterparty is forever barred, estopped, and permanently enjoined from (a) declaring a default by the Debtors or the Buyer under any such Assigned Contract or Assigned Lease or Interest based on acts

31

or occurrences arising prior to or existing as of Closing, (b) raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to any of the Assigned Contracts or Assigned Leases and Interests based on acts or occurrences arising prior to or existing as of Closing, or (c) taking any other action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contracts or Assigned Leases and Interests based on acts or occurrences arising prior to or existing as of Closing; provided, however, that a Contract Counterparty to an Assigned Contract or an Assigned Lease shall not be barred from seeking from the Debtors or the Buyer (as applicable) any additional amounts due on account of any defaults arising or accruing under such Assigned Contract or Assigned Lease, as applicable, after the deadline to object to the Cure Costs set forth in the Assumption and Assignment Notice and before the Closing.  Each Contract Counterparty hereby is also forever barred, estopped, and permanently enjoined from (y) asserting against the Debtors or the Buyer, or the property of any of them, any default or claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of Closing and (z) imposing or charging against Buyer or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to Buyer of the Assigned Contracts or Assigned Leases and Interests.

22.     Subject to the terms and conditions of the Purchase Agreement, and upon the Closing, the Buyer in accordance with the Purchase Agreement, shall have (a) to the extent necessary, cured or provided adequate assurance of cure of, any default existing

prior to Closing under the Assigned Contracts or Assigned Leases and Interests within the meaning of sections 365(b)(l)(A) and 365(f)(2)(A) of the Bankruptcy Code and (b) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to Closing under the Assigned Contracts or Assigned Leases and Interests within the meaning of sections 365(b)(l)(B) and 365(f)(2)(B) of the Bankruptcy Code.  The Buyer's obligations to pay the Cure Costs, as applicable under the Purchase Agreement, and the Buyer's agreement to perform the obligations under the Assigned Contracts or Assigned Leases and Interests in accordance with the terms of the Purchase Agreement, shall constitute adequate assurance of future performance within the meaning of sections 365(b)(l)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the applicable Contract Counterparty.

23.    To the furthest extent permitted by law, any party that may have had the right to consent to the assumption or assignment of any of the Assigned Contracts or Assigned Leases and Interests is deemed to have consented to such assumption and assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to timely object to the assumption or assignment of such Assigned Contracts or Assigned Leases and Interests in accordance with the Bidding Procedures Order, and the Buyer shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assigned Contracts or Assigned Leases and Interests pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.   Any Contract Counterparty to any of the Assigned Contracts or Assigned Leases and Interests designated to be assumed and/or assigned to the Buyer who has not timely filed and served an

33

objection in accordance with the Bidding Procedures Order shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Assigned Contracts or Assigned Leases and Interests, and such Assigned Contracts or Assigned Leases and Interests shall be deemed assumed by the Debtors and assigned to the Buyer at Closing in accordance with the Purchase Agreement.

24.     To the extent a Contract Counterparty failed to timely object to the Cure Costs for any Assigned Contract or Assigned Lease or Interest in accordance with the Bidding Procedures Order, such Cure Costs shall be deemed to be finally determined and any such Contract Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time.

25.     Upon and as of the Closing, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contract or Assigned Lease or Interest, and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further post-Closing liability under the Assigned Contract or Assigned Lease or Interest.

26.     The Contract Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction.

27.     From the date of the entry of this Order, the Debtors (with the consent of the Buyer) may settle objections to assumption and assignment of any Assigned Contract or Assigned Lease or Interest, including to proposed Cure Costs, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Costs).

34

Subject to the occurrence of the Closing, contemporaneously with the resolution of any such objection, the executory contract or unexpired lease underlying such objection shall be deemed an Assigned Contract or Assigned Lease or Interest assumed by the Debtors and assigned to the Buyer without the necessity of obtaining any further order of the Court.

28.     Nothing in this Order, the Motion, the Bidding Procedures Order, any applicable Assumption and Assignment Notice, or any other notice or any other document is or shall be deemed an admission by the Debtors or the Buyer that any contract is an executory contract or must be assumed and assigned pursuant to the Purchase Agreement or in order to consummate the Sale Transaction.

29.     All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts and Assigned Leases and Interests have been satisfied.  Each of the Assigned Contracts and Assigned Leases and Interests shall be deemed to be valid, binding, and in full force and effect and enforceable in accordance with their terms as of the Closing, subject to any amendments or modifications agreed to in writing between a Contract Counterparty and the Buyer.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assigned Contracts and Assigned Leases and Interests, and each of the Assigned Contracts and Assigned Leases and Interests shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by this Order, the Bidding Procedures Order, or other order of the Court.  To the extent provided in the Purchase Agreement, the Debtors shall

cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

30.    Notwithstanding anything to the contrary herein or in the Purchase Agreement, the (i) Gas Processing Agreement dated August 14, 2014 between MarkWest Liberty Bluestone, L.L.C. and EM Energy Pennsylvania, L.L.C., as amended by that certain First Amendment to Gas Processing Agreement dated January 31, 2019 (the "**MarkWest Gas Processing Agreement**"), and (ii) Natural Gas Liquids Exchange and Marketing Agreement (Bluestone) dated August 14, 2014 between MarkWest Liberty Midstream & Resources, L.L.C. and EM Energy Pennsylvania, L.L.C., as amended by the First Amendment to Natural Gas Liquids Exchange and Marketing Agreement (Bluestone) dated January 31, 2019 (the "**MarkWest NGL Exchange and Marketing Agreement**", and together with the MarkWest Gas Processing Agreement, the "**MarkWest Agreements**") shall each be assumed and assigned to Buyer at the Closing, subject to the terms of the executed Release and Second Amendment to Gas Processing Agreement, attached to the Purchase Agreement as Exhibit I.  For the avoidance of doubt, upon the closing of the Sale Transaction neither the Buyer nor the Debtors shall be responsible to make any cure payment with respect to the MarkWest Agreements, and MarkWest Liberty Bluestone, L.L.C. and MarkWest Liberty Midstream & Resources, L.L.C. are deemed to waive their right to any Cure Cost with respect to the MarkWest Agreements.

31.    Notwithstanding anything to the contrary herein or in the Purchase Agreement, the Gas Compression Agreement, dated as of May 1, 2014, by and among EM Energy Pennsylvania, L.L.C., EdgeMarc Energy Holdings, L.L.C. and Axip Energy Services, LP ("**Axip**"), as amended by that certain Amendment to the Gas Compression

Agreement, dated as of May 1, 2018, by and among Axip, EdgeMarc Energy Holdings, L.L.C., EM Energy Midstream Pennsylvania, L.L.C. and EM Energy Pennsylvania, L.L.C., and as amended by that certain Letter Agreement re Additional Pressure Reduction Request, dated as of September 14, 2018, by and among Axip, EdgeMarc Energy Holdings, L.L.C., EM Energy Midstream Pennsylvania, L.L.C. and EM Energy Pennsylvania, L.L.C., and the Sublease Agreement, dated June 30, 2014, by and among Valerus Compression Services, LP, d/b/a Axip, and EM Energy Pennsylvania, L.L.C. (collectively, the "**Axip Agreements**") shall, upon the Closing, be assumed and assigned to Buyer.  As a condition to the assumption and assignment of the Axip Agreements, Buyer shall pay $750,000 to Axip at Closing as the Cure Cost to cure any continuing defaults under the Axip Agreements through the Closing (the "**Axip Cure Payment**").  Other than the Axip Cure Payment, neither the Buyer nor the Debtors shall be responsible to make any other cure payment with respect to the Axip Agreements, and Axip is deemed to waive its right to any other cure claim with respect to the Axip Agreements.  Upon Closing and payment of the Axip Cure Payment, Axip shall be deemed to release the Debtors and the Debtors shall be deemed to release Axip, in each case along with their respective current and former directors, officers, agents, representatives, employees, insurers, trustee beneficiaries, settlors, trustees, attorneys, assigns, and/or successors from any and all claims, counterclaims, defenses, actions, causes of action, demands, liabilities, suits, administrative proceedings, payments, charges, obligations, and judgments, whether arising by statute, in contract or tort, at law or in equity, under any theory of liability, whether presently known or unknown, whether asserted or unasserted or recognized by the law of any jurisdiction, relating in any way to the Axip Agreements and/or the Debtors'

chapter 11 cases.  Axip shall be included as a released party and releasing party pursuant to any releases included in any plan of reorganization or liquidation proposed in the Debtors' chapter 11 cases, and/or any order confirming such proposed plan, as applicable.

32.    The assumption (as applicable) and assignment of the Assigned Contracts and the Assigned Leases and Interests will not be effectuated if the Closing does not occur and the Purchase Agreement is terminated.

33.    Within ten Business Days after the Closing, the Debtors shall file with the Court a list of Assigned Contracts, Assigned Leases and Interests, Excluded Contracts, Excluded Leases, and Designated Agreements and shall serve a copy of such list to each non-Debtor Contract Counterparty on the lists, and such lists shall be updated or supplemented from time to time as necessary or at the request of the Buyer, provided that any updated or supplemental list need only be served upon those non-Debtor Counterparties to such contracts or leases directly affected by such updated or supplemental list.

34.    Each non-Debtor Contract Counterparty to an Assigned Contract or Assigned Lease or Interest shall be forever barred, estopped, and permanently enjoined from asserting against the Buyer or its property (including, without limitation, the Assets), any fee, acceleration, increase, default, breach, claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing or on account of any facts occurring prior to Closing or as a result of the Petition Date.

35.    The Debtors are authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental

units any and all certificates, the Purchase Agreement, and any amendments thereto necessary or appropriate to effectuate the transactions contemplated by the Purchase Agreement, any related agreements, and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the laws of the State of Delaware, and all other applicable business corporation, trust and other laws of the applicable governmental units, with respect to the implementation and consummation of the Purchase Agreement, any related agreements, this Order, and the transactions contemplated thereby and hereby.

36.    To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing.

37.    The Purchase Agreement has been negotiated and executed, and the Sale Transaction has been undertaken, by the Debtors, the Buyer, and their respective Representatives at arm's length, without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code.    Accordingly, the reversal or

39

modification on appeal of this Order or the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, whether or not the Buyer knew or knows of the pendency of the appeal, unless this Order, such authorization and such Sale Transaction are stayed pending appeal.  The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

38.     None of the Debtors nor the Buyer or KeyBank has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale Transaction to be avoided, or damages or costs to be imposed, under section 363(n) of the Bankruptcy Code.  The consideration provided by the Buyer and KeyBank for the Assets under the Purchase Agreement is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

39.     Upon the closing of the sale, all obligations, including all "Obligations" (as defined in the DIP Credit Agreement) under the DIP Credit Agreement and the DIP Liens and Claims, the Adequate Protection Liens and Claims and the Prepetition Liens and Claims, and any related obligations, shall be deemed permanently discharged against the Debtors, extinguished, and satisfied in full in consideration for KeyBank's credit bid pursuant to § 363(k) of the Bankruptcy Code.

40.     Nothing contained in any plan of reorganization (or liquidation) confirmed in the Chapter 11 Cases, any order confirming any plan of reorganization (or liquidation), or any other order of any type or kind entered in the Chapter 11 Cases or any related proceeding, including any subsequent chapter 7 case, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

40

41.    Notwithstanding anything set forth herein or in the Purchase Agreement to the contrary, to the extent that the Closing does not occur and/or the Sale Transaction is not consummated, then this Order, the Sale Transaction, the Purchase Agreement, and all of the transactions, agreements, and settlements contemplated or required thereunder or hereunder, including, without limitation, the 9019 Settlement and the mutual releases by and between the Debtors and ETC Northeast Pipeline, LLC and their respective affiliates, (a) shall be deemed void *ab initio*, and (b) the Debtors, KeyBank, the Committee, and ETC shall be returned to the status quo ante that existed immediately prior to their respective entries into the foregoing agreements, transactions, and/or settlements.

42.    Upon Closing of the Sale, the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims on Behalf of the Debtors' Estates* [D.I. 579] (the "**Standing Motion**") shall be deemed withdrawn.  Upon Closing of the Sale, any claims asserted in the Standing Motion or in the accompanying complaint and any other Challenge (as defined in the Final DIP Order [D.I. 223]) shall be barred pursuant to the Final DIP Order, and the Debtors' stipulations, admissions, agreements and releases contained in the Final DIP Order shall be binding upon all parties-in-interest.  The Committee shall submit a notice of withdrawal, with prejudice, of the Standing Motion within two business days of the Closing of the Sale.

43.    Upon Closing of the Sale Transaction, Evercore Fees (as defined in the Final DIP Order) earned upon the consummation of the Sale Transaction shall be deposited by or on behalf of the Debtors (notwithstanding anything to the contrary in the Final DIP Order) into an IOLTA account with Landis Rath & Cobb LLP ("**LRC**") and shall be

#92851088v1

released by LRC and paid to Evercore at the direction of the Debtors upon approval of a fee application therefor (whether pursuant to the Interim Compensation Order or otherwise).

44.     Upon entry of this Order, the *Objection of Official Committee of Unsecured Creditors to Motion of Debtors for Entry of Order (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [D.I. 577] shall be deemed withdrawn without prejudice, and the Committee shall file a notice of withdrawal on the Court's docket within two business days of entry of this Order.

45.     Notwithstanding anything to the contrary herein or in the Purchase Agreement, no rights, interests, or titles to any payment, claims, causes of action, suits, or litigation relating to or arising under (i) that certain Amended and Restated Gathering and Processing Agreement (Contract No. 9532-100), between EM Energy Pennsylvania, LLC and ETC Northeast Pipeline, LLC, dated November 13, 2017, (ii) that certain Amended and Restated Individual Transaction Confirmation (Contract No. 9532-101) to the EM Agreement, (iii) that certain Amended and Restated Individual Transaction Confirmation (Gatherer's Contract No. 9532-102) to the EM Agreement; and (iv) any claims of the Debtors against ETC Northeast Pipeline, LLC and its affiliates being released under and pursuant to the 9019 Settlement shall be transferred, assigned or sold to the Buyer pursuant to the terms of this Order.

46.     The Debtors are authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, and instruments of transfer, and to take such other actions as may be reasonably necessary to perform the terms and

42

provisions of the Purchase Agreement and all other agreements related thereto (including any documents relating to the repayment of the DIP Loans (as such term is defined in the Final DIP Order)), and the Debtors are authorized to take any other action that reasonably may be requested by the Buyer for the purpose of assigning, transferring, granting, and conveying any or all of the Assets, or by the DIP Secured Parties (as such term is defined in the Final DIP Order) in connection with evidencing the repayment of the DIP Obligations (as such term is defined in the Final DIP Order) or the release of any DIP Liens.

47.     Notwithstanding Bankruptcy Rules 6004, 6006, and 7062 and any other applicable Bankruptcy Rules or applicable Local Rules to the contrary, this Order shall be effective immediately upon entry and shall not be subject to any stay in the implementation, enforcement, or realization of the relief granted herein.

48.     The Debtors, the Buyer, and Affiliates of the Buyer, are authorized to take all actions necessary to effectuate the relief granted in this Order.

49.     The Court retains jurisdiction, even after the closing of the Chapter 11 Cases, with respect to all matters arising from or related to the enforcement of this Order, including the authority to do the following:

(a)     interpret, implement, and enforce the terms and provisions of this Order, the Purchase Agreement, and any other agreement executed in connection therewith;

(b)     protect the Buyer, or any of the Assets, against any Liens, Claims and/or Interests;

(c)     resolve any disputes arising under or related to the Purchase Agreement, the Sale Transaction, or the Buyer's peaceful use and

43

enjoyment of the Assets, whether or not a plan of reorganization (or liquidation) has been confirmed in the Chapter 11 Cases and irrespective of the provisions of any such plan or order confirming any such plan;

(d)    adjudicate all issues concerning all Liens, Claims and/or Interests in and to the Assets, including the extent, validity, enforceability, priority, and nature of all such Liens, Claims and/or Interests;

(e)    adjudicate any and all issues and/or disputes relating to the Debtors' right, title, or interest in the Assets and the proceeds thereof, the Motion, and the Purchase Agreement; and

(f)    adjudicate any and all remaining issues concerning the Debtors' right and authority to assume and assign the Assigned Contracts and Assigned Leases and Interests to the Buyer and resolve any objections to Cure Costs or any other objections by non-Debtor counterparties to any additional contracts or leases that the Buyer may elect, in accordance with the Purchase Agreement and the Bidding Procedures Order, to become Assigned Contracts or Assigned Leases and Interests and determine the Buyer's rights and obligations with respect to such assignment and the existence of any default under any Assigned Contract or Assigned Lease or Interest.

50.    The provisions of this Order are nonseverable and mutually dependent.

51.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.

#92851088v1

52.     Nothing in this Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any valid police or regulatory liability to a governmental unit to which the Buyer may be subject to as the post-sale owner or operator of any Asset after the date of entry of this Order.  Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

53.     The Purchase Agreement and any related agreements, documents, or instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, so long as any such modification, amendment, or supplement does not have an adverse effect in any material respect on the Debtors' estates. The Debtors shall promptly file all material modifications, amendments, and supplements to the Purchase Agreement, whether or not they adversely affect the Debtors, with the Court.

54.     The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court that the Purchase Agreement and each and every provision, term, and condition thereof be authorized and approved in its entirety.

#92851088v1

Dated:    [            ], 2020
          Wilmington, Delaware


                                    _____
                                    THE HONORABLE JOHN T. DORSEY
                                    UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**Asset Purchase Agreement**

**[Intentionally Omitted]**

#92851088v1
120911.0000001 EMF_US 77387928v7

**Exhibit H**
**Copy of New ETP Agreements**

**[Exhibits D and E to the Settlement Agreement]**

**Exhibit I**
**Copy of MarkWest Amendment and Release Agreement**

**[Exhibit F to the Settlement Agreement]**

**Exhibit J**
**Form of 9019/ETP Order**

[**Exhibit A** to the Settlement Agreement]

**Exhibit K**

**9019 Settlement [See**

**Docket No. 829]**

Exhibit B

Proposed Sale Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>EDGEMARC ENERGY HOLDINGS, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-11104 (JTD)<br><br>(Jointly Administered)<br><br>Ref. No. 247, 329, 401, 443, 444, 497 and 594 |

## ORDER (A) APPROVING SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] filed on May 15, 2019 [D.I. 19] of EdgeMarc

Energy Holdings, LLC and its subsidiaries that are debtors and debtors in possession

(the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for,

*inter alia*, entry of an order, pursuant to sections 105(a), 363, 365, 503 and 507 of the

Bankruptcy Code, Bankruptcy Rules 2002-1, 6004-1, and 9006-1, and Rules 2002-1, 6004-

1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "**Local Rules**") *(A) Approving Sale of*

*Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances,*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: EdgeMarc Energy Holdings, LLC (80-0766900), EM Energy Manager, LLC (30-0745334), EM Energy Employer, LLC (80-0838026), EM Energy Ohio, LLC (80-0846935), EM Energy Pennsylvania, LLC (38-3881541), EM Energy West Virginia, LLC (90-0883771), EM Energy Keystone, LLC (82-0857506), EM Energy Midstream Ohio, LLC (46-3841268), EM Energy Midstream Pennsylvania, LLC (46-3843963). The Debtors' corporate headquarters and mailing address is 1800 Main Street, Suite 220, Canonsburg, PA 15317.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the that certain Asset Purchase Agreement, dated January 24, 2020, by and among EdgeMarc Energy Holdings, LLC, the EM Subsidiaries, KB OREO, LLC and KeyBank, National Association, as Administrative Agent (the "**Purchase Agreement**"), a copy of which is attached hereto as **Exhibit A**, the Motion, or the Bidding Procedures Order (as defined herein), as applicable.

*(B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* and this Court having entered an order on June 21, 2019 [D.I. 247], as amended by an order entered on July 12, 2019 [D.I. 329] (together, the "**Bidding Procedures Order**") approving the Bidding Procedures in connection with the sale of all or substantially all of the Debtors' assets and attached as <u>Exhibit 1</u> to the Bidding Procedures Order (the "**Bidding Procedures**"), including, among other things, the proposed form of notice of the Sale Hearing; and upon the *Notice of (I) Designation of Successful Bid and Cancellation of Auction for the Debtors' Monroe/Washington Assets and (II) Extension of Sale Timeline for the Sale of the Debtors' Butler Assets* [D.I. 497] (the "**Notice of Extension of Sale Timeline**"); and upon the *Notice of Rescheduled Sale Hearing for the Debtors' Butler Assets* [D.I. 594] (the "**Notice of Rescheduled Sale Hearing**"); and upon the *Notice of Adjournment of Auction and Sale Hearing for the Sale of the Debtors' Butler Assets* [D.I. 615] (the "**Notice of Adjournment**"); and upon the *Notice of Selection of Successful Bid, Sale Hearing and Cancellation of Auction for the Debtors' Butler Assets* [D.I. [___]] (the "**Notice of Successful Bid**") and the Debtors having determined after an extensive marketing and sale process that Key EM Energy, LLC, as assignee to KB OREO, LLC (together, the "**Buyer**") has submitted the highest or otherwise best bid for the Debtors' Assets; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being

2

a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the [*Declaration in Support of Sale* (the "**Sale Declaration**")]; and the Court having held a hearing to consider the Motion on February 7, 2020 (the "**Sale Hearing**"), at which time all interested parties were offered an opportunity to be heard regarding the Motion, the Purchase Agreement and the sale transaction contemplated by the Purchase Agreement (the "**Sale Transaction**"); and the Court having found that the relief granted by this Order is in the best interests of the Debtors, their creditors, their estates, and other parties in interest; and the Court having reviewed and considered the objections to the Motion (collectively, the "**Objections**"); and based upon and as demonstrated by the [Sale Declaration], the evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

### Background

A.       The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.       On May 15, 2019 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States

3

Bankruptcy Court for the District of Delaware (the "**Court**") commencing the Chapter 11 Cases.

C.    The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 42] entered by the Court on May 16, 2019, in each of the Chapter 11 Cases.

D.    The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

E.    The Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a statutory committee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on May 29, 2019 [D.I. 114] (the "**Committee**").

F.    As part of the Debtors' efforts to realize the highest and best value for their businesses, the Court entered the Bidding Procedures Order that established Bidding Procedures for a sale or other transaction involving the Assets and scheduled various dates relating to the Auction.  Subsequently, on August 21, 2019, the Debtors filed the Notice of Extension of Sale Timeline, and on September 16, 2019, the Notice of Rescheduled Sale Hearing, establishing September 10, 2019 as the deadline for the submission of bids by Potential Bidders (as defined in the Bidding Procedures) (the "**Bid Deadline**"), September 19, 2019 as the date for the Auction (if any), and October 7, 2019 as the date on which the Court would hold the Sale Hearing to approve the successful bidder selected at the Auction in accordance with the Bidding Procedures (the "**Successful Bidder**") and the Sale Transaction.  On September 20, 2019, the Debtors filed the Notice of Adjournment

4

adjourning the Auction.  On January 24, 2020, the Debtors filed the Notice of Successful

Bidder designating Buyer as the Successful Bidder.

**<u>Compliance with Bidding Procedures and Bidding Procedures Order</u>**

G.    The Debtors' marketing and sales process with respect to the Assets

afforded a full, fair, and reasonable opportunity for any person or entity to make a higher

or otherwise better offer to purchase the Assets.  The Debtors and their professionals

conducted a marketing and sale process with respect to the Assets in a fair, good faith, and

non-collusive manner in accordance with, and have otherwise complied in all respects with,

the Bidding Procedures and the Bidding Procedures Order.

H.    The Successful Bid (which is memorialized in the Purchase Agreement)

constitutes the highest or otherwise best offer for the Assets, and the Debtors'

determination that the Purchase Agreement maximizes value for the benefit of the Debtors'

estates and constitutes the highest or otherwise best offer for the Assets constitutes a valid

and sound exercise of the Debtors' business judgment (exercised in consultation with the

Consultation Parties) and is in accordance and compliance with the Bidding Procedures

and the Bidding Procedures Order.

I.    The Purchase Agreement provides fair and reasonable terms for the

purchase of the Assets, and reasonable opportunity has been given to any interested party

to make a higher or otherwise better offer for the Assets.  Approval of the Motion and the

Purchase Agreement, and the prompt consummation of the Sale Transaction contemplated

thereby, will maximize the value of each of the Debtors' estates and are in the best interests

of the Debtors, their chapter 11 estates, their creditors, and other parties in interest.

**The Buyer**

J.        Pursuant to the Bidding Procedures and under the Bankruptcy Code, KeyBank is entitled to exercise its credit bid right pursuant to section 363(k) of the Bankruptcy Code on account of its DIP Claims (the "**Credit Bid**") and cause the Assets to be conveyed from the Debtors to the Buyer.  After extensive, arm's length, good faith negotiations, on January 24, 2020, the Debtors, Buyer, and KeyBank, National Association, in its capacity as Administrative Agent under the DIP Credit Agreement ("**KeyBank**"), executed the Purchase Agreement wherein the Debtors and the Buyer agreed that the Buyer would purchase the Assets pursuant to the Credit Bid and additional cash purchase price (the **"Bid"**).

**The Auction**

K.        On September 19, 2019, the Auction was commenced.  The Debtors (in consultation with the Consultation Parties) elected to adjourn the Auction and pursue mediation (the "**Mediation**") with the KeyBank, ETC Northeast Pipeline, LLC ("**ETC**") and the Committee pursuant to the *Order Referring Issues to Mediation and Appointing Mediator* [D.I. 628] (the "**Mediation Order**").

L.        The solicitation of bids and the Auction were conducted fairly and in good faith, without collusion, and in accordance with the Bidding Procedures Order.  After adjourning the Auction, participating in the Mediation, and continued negotiations and discussions by and among the Debtors, ETC, the Committee, and KeyBank, and evaluating the other bids received by the Debtors for the Assets, the Debtors have determined that the Buyer is the Successful Bidder for the Assets in accordance with the Bidding Procedures Order.  The Debtors' determination (in consultation with the Consultation Parties) that the offer reflected in the Purchase Agreement constitutes the highest or otherwise best offer

6

#92851088v1

for the Assets is a valid and sound exercise of the Debtors' business judgment (exercised in consultation with the Consultation Parties). The Buyer has complied in all respects with the Bidding Procedures Order and all other applicable orders of the Court in negotiating and entering into the Purchase Agreement.

M.     After completion of the Auction and the Debtors' selection of the Buyer as the Successful Bidder, the Debtors and the Buyer negotiated and finalized in good faith and at arm's length the Purchase Agreement and all related documents necessary to consummate the Sale Transaction.

**Sale Hearing**

N.     The Court conducted the Sale Hearing on February 7, 2020 at which time the Court considered (i) the Motion, the evidence and testimony presented, and the statements and argument of counsel in support of granting the relief requested in the Motion and (ii) approval of the Purchase Agreement and the Sale Transaction.

O.     Notice of the Sale Hearing was adequate, fair, and equitable under the circumstances. All objections and responses concerning the Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. Any objections, reservations of rights, and/or other statements in response to the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

**Sound Business Purpose**

P.     The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for consummation of the Sale Transaction in accordance with the requirements of section 363(b) of the Bankruptcy Code. The value of the Debtors' estates will be maximized through a sale of the Assets on a going concern basis.

Q.      A sale pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the assignment of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code also may prevent the continued accrual of post-petition, administrative expense obligations under various unexpired leases and executory contracts that are proposed to be acquired by the Buyer under the Purchase Agreement.

R.      Approval of the Purchase Agreement pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code is necessary to preserve the value of the Debtors' businesses. The Debtors have determined, in their reasonable business judgment (in consultation with the Consultation Parties), that the Assets will have the greatest value if promptly sold to the Buyer.

S.      As a result, the proposed Sale Transaction pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, upon the terms and conditions set forth in the Purchase Agreement, is the best alternative available to the Debtors for recovering value for the benefit of the Debtors' estates.  The Sale Transaction maximizes the value of the Assets because the Assets are being sold as part of a going concern business, and the continuity and remaining goodwill value associated with the Assets are being preserved.

T.      Neither the Purchase Agreement nor the Sale Transaction contemplated thereunder constitute a *sub rosa* chapter 11 plan.  The Purchase Agreement does not specify the terms of, or any distributions under, any subsequent chapter 11 plan by the Debtors (other than provisions that are consistent with the sale of assets under the Purchase Agreement and the relief granted hereunder).

**Fair and Equivalent Value**

U.      The total consideration to be provided by the Buyer under the Purchase Agreement is the highest or otherwise best offer received by the Debtors and constitutes

8

(i) fair value, (ii) fair, full, and adequate consideration, (iii) reasonably equivalent value, and (iv) reasonable market value for the Assets for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable laws of the United States, any state, territory, or possession thereof or the District of Columbia.

V.     The terms of the Purchase Agreement and the Sale Transaction contemplated therein are fair and reasonable under the circumstances of the Debtors' businesses and the Chapter 11 Cases.

### Notice of the Motion

W.     As evidenced by the affidavits of service and publication previously filed with this Court [D.I. 92, 229, 235, 272, 285, 290, 359, 411, 412, 433, 456, 472, 482, 513, and 524], and based upon representations of counsel at the Sale Hearing, notice (the "**Notice**") was adequate and sufficient under the circumstances and provided sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase Agreement, this Order, and the Sale Transaction.  The Notice was provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004-1, including to: (i) the U.S. Trustee; (ii) each of the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (iii) KeyBank National Association; (iv) the Debtors' prepetition equity owners; (v) the United States Attorney's Office for the District of Delaware; (vi) the attorneys general for the states in which the Debtors conduct business; (vii) local and state environmental authorities and the Environmental Protection Agency; (viii) counsel for the Committee; (ix) the Federal Energy Regulatory Commission; (x) the Internal Revenue Service; (xi) all known taxing authorities to which the Debtors are subject; (xii) all entities known or

<center>9</center>

reasonably believe to have asserted a lien or encumbrance on any of the Assets; (xiii) counterparties to Debtors' executory contracts and unexpired leases; (xiv) those entities and individual appearing on the Debtors' creditor matrix; and (xv) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase Agreement, this Order, and the Sale Transaction as required by the Bidding Procedures Order. The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase Agreement, this Order, or the Sale Transaction is or shall be required.

**Good Faith of the Buyer**

X.    The Buyer is purchasing the Assets and the Buyer and KeyBank have entered into the Purchase Agreement at arm's length and in good faith. Accordingly, the Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and the Buyer is, therefore, entitled to the protections of such provision. The good faith of the Buyer and KeyBank is evidenced by, among other things, the following facts:

  i.    The sale process conducted by the Debtors, including, without limitation, conducting the Auction process pursuant to the Bidding Procedures set forth in the Bidding Procedures Order, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties. The Debtors offered other parties the opportunity to top the Bid submitted by the Buyer and at the Auction offered all parties that submitted Qualified Bids an opportunity to match or top the Bid submitted by the Buyer, and all other bidders

10

or Potential Bidders declined to do so.  The Debtors evaluated each bid received prior to selecting the Buyer as the Successful Bidder.

ii.    All payments to be made by the Buyer and other agreements or arrangements in connection with the Purchase Agreement have been disclosed.

iii.    The Buyer has not violated the provisions of section 363(n) of the Bankruptcy Code by any action or inaction.

iv.    The Buyer is a third party purchaser and is unrelated to any of the Debtors.  Neither the Buyer, nor any of its Affiliates, subsidiaries, officers, directors, members, partners, principals, or any of their respective representatives, successors, or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

v.    The Debtors, the Buyer, and KeyBank have engaged in substantial arm's length negotiations in good faith.  The Purchase Agreement is the product of this bargaining among the parties.

Y.    The sale of the Assets pursuant to the Purchase Agreement, all covenants therein and conditions thereto, and all relief requested in the Motion are an integrated transaction, meaning that each component is an essential part of every other component and that the entire transaction can be consummated only if all of its components are consummated.  Accordingly, the entire transaction is subject to, and is protected by, the provisions of section 363(m) of the Bankruptcy Code.

11

**Sale Free and Clear**

Z.      After the Closing, no entity shall have any Lien, Claim and/or Interest (as defined herein) in or against the Assets other than the Assumed Liabilities and the Permitted Encumbrances (each as defined in the Purchase Agreement).

AA.      All other liens and claims that existed against the Assets prior to the Closing, including, without limitation, the Permitted Prior Liens (as defined in the Final DIP Order),[3] shall attach to the sale proceeds the Debtors receive under the Sale Transaction (subject to the terms and conditions set forth in the Final DIP Order, Bidding Procedures Order, and this Order, including without limitation, the Carve-Out[4]).  Those liens and claims will attach to the proceeds of the Sale Transaction in the same order of relative priority and with the same validity, force, and effect that the holder of such lien or claim had against the Assets prior to Closing (including, for the avoidance of doubt, as set forth in the Final DIP Order), and will be subject to any claims and defenses the Debtors may possess with respect thereto. The interests of the holders of such liens or claims are being adequately protected pursuant to the provisions of this Order.

BB.      Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession is authorized to sell property of its estate free and clear of any liens, claims, interests, and encumbrances if any of the following requirements is satisfied: (i) applicable non-bankruptcy law permits the sale of such property free and clear of such interest (section

---

[3] *See Final Order, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364, 503, 506, and 507, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Post-Petition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [D.I. 223] (the "**Final DIP Order**").

[4] As used in this Order, Carve-Out shall have the meaning set forth in the Final DIP Order.

#92851088v1

363(f)(1) of the Bankruptcy Code); (ii) the entity holding the alleged lien, claim, interest, or encumbrance consents (section 363(f)(2) of the Bankruptcy Code); (iii) such interest is a lien, and the price at which such property is to be sold is greater than the aggregate value of all liens on such property (section 363(f)(3) of the Bankruptcy Code); (iv) such lien, claim, interest, or encumbrance is subject to a *bona fide* dispute (section 363(f)(4) of the Bankruptcy Code); or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such lien, claim, interest, or encumbrance (section 363(f)(5) of the Bankruptcy Code).

CC.    For the following reasons, the provisions of section 363(f) of the Bankruptcy Code have been satisfied:

    i.    All alleged holders of liens or claims who did not object or withdrew their objections to the Sale Transaction are deemed to have consented.  Alleged holders of liens or claims who did object either had their objections overruled or resolved or otherwise fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code, including those referenced below.

    ii.    The Buyer is an entity holding a lien, claim, interest, or encumbrance and is purchasing the Assets upon the terms and conditions set forth in the Purchase Agreement (*see* Bankruptcy Code section 363(f)(2)).

    iii.    The Debtors are not aware of any remaining interests in the Assets, and, if any such interests exist, they are in *bona fide* dispute as to the

#92851088v1

extent, validity, perfection, and viability of those interests (*see* Bankruptcy Code section 363(f)(4)).

iv.    Other parties (if any) could be compelled to accept a money satisfaction of their liens, claims, interests, or encumbrances (*see* Bankruptcy Code section 363(f)(5)) or such interest is a lien and the price at which such encumbered property is to be sold under the Purchase Agreement is greater than the aggregate value of all liens on such encumbered property (*see* Bankruptcy Code section 363(f)(3)).  Further, any liens and claims other than liens and claims constituting part of the purchase price as a credit bid (which includes all DIP Liens and Claims, all Adequate Protection Liens and Claims and all Prepetition Liens and Claims[5]) shall attach to the proceeds of the Sale Transaction to the same extent and in the same priority as existed in the Assets.

DD.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Assets will be transferred to the Buyer free and clear of all Liens, Claims and/or Interests (other than the Permitted Encumbrances and the Assumed Liabilities) with all other applicable liens and claims to attach to the proceeds of the sale of the Assets in the order of their priority, with the validity, force, and effect that they now have as against the Assets (for the avoidance of doubt, subject to the Carve-Out), subject to the rights, claims, defenses, and objections, if any, of the Debtors and all interested parties with respect to such liens

---

[5] As used in this Order, DIP Liens and Claims, Adequate Protection Liens and Claims, and Prepetition Liens and Claims shall each have the meaning set forth in the Final DIP Order.

and claims and with the net proceeds from the sale of the Assets to be available for the benefit of the Debtors' estates.

EE.     Accordingly, the Debtors have satisfied the standard set forth in section 363(f) of the Bankruptcy Code for selling the Assets free and clear of all Liens, Claims and/or Interests other than the Permitted Encumbrances and the Assumed Liabilities.

### Sale Free and Clear Required by the Buyer

FF.     In connection with the Purchase Agreement, the Buyer expressly negotiated for the protection of obtaining the Assets free and clear of all Liens, Claims and/or Interests (including, without limitation, any potential successor liability claims) other than the Permitted Encumbrances and Assumed Liabilities, or as otherwise explicitly provided in the Purchase Agreement.  The Buyer would have paid substantially less consideration for the Assets or not have purchased the Assets if the Buyer were not buying the Assets free and clear of any Liens, Claims and/or Interests (other than the Permitted Encumbrances and Assumed Liabilities, or as otherwise explicitly provided in the Purchase Agreement).

### No Successor Liability

GG.     To the greatest extent permitted by law, neither the Buyer nor its affiliates, officers, directors, members, partners, and principals, including, but not limited to, KeyBank, or any of their respective Representatives, successors, or assigns shall be deemed, as a result of the consummation of the Sale Transaction or otherwise, to (i) be a legal successor, or otherwise be deemed a successor, to the Debtors or the Debtors' estates, (ii) have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors or any of the Debtors' estates, (iii) be an alter ego, a continuation, or substantial continuation of any of the Debtors or any enterprise of any of the Debtors, or (iv) be liable for any claim based on successor liability, transferee liability, derivative liability, vicarious liability, or

#92851088v1

any similar theories under applicable state or federal law, or otherwise.  Except as expressly set forth in the Purchase Agreement with respect to the Assumed Liabilities and Permitted Encumbrances, the Buyer shall have no liability or obligation of any of the Debtors and/or their respective estates and the Buyer is not expressly or impliedly agreeing under the terms and conditions of the Purchase Agreement to assume any of the debts or obligations of the Debtors.  Any so-called "bulk sales," "bulk transfer," or other similar laws are not applicable, and compliance with any such laws in all necessary jurisdictions is not required, including those relating to taxes.

HH.    The Buyer and the Debtors are not entering into the Purchase Agreement fraudulently or in order to escape liability for the Debtors' obligations.

**Assumption and Assignment of the Assigned Contracts and Assigned Leases and Interests**

II.    Section 365(a) of the Bankruptcy Code provides that "the [debtor in possession], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  It is in the best interests of the Debtors and their respective estates to assume and assign the Assigned Contracts and Assigned Leases and Interests to the Buyer on the effective date of the assumption and assignment of such Assigned Contracts or Assigned Leases and Interests ("**Assumption and Assignment Effective Date**") in accordance with the terms and conditions of the Purchase Agreement, the Bidding Procedures Order, and this Order.  The Debtors' assumption and assignment of the Assigned Contracts and Assigned Leases and Interests to the Buyer is a valid exercise of the Debtors' business judgment and satisfies the requirements of section 365 of the Bankruptcy Code.  The Sale Transaction provides significant benefits to the Debtors' estates.  The Debtors cannot obtain these benefits without the assumption and assignment

16

of the Assigned Contracts and Assigned Leases and Interests, which are a material part of the Assets and the Sale Transaction.  Accordingly, the assumption and assignment of the Assigned Contracts and Assigned Leases and Interests constitutes an exercise of the Debtors' sound business judgment.

JJ.    Section 365(b)(1) of the Bankruptcy Code requires a debtor in possession to cure any default and provide adequate assurance of future performance in order to assume an unexpired lease or executory contract under which a default has occurred. Subject to the terms and conditions set forth in the Bidding Procedures Order, the Purchase Agreement, and this Order, and except to the extent waived by the applicable contractual counterparty, on the applicable Assumption and Assignment Effective Date (or as otherwise provided in the Bidding Procedures Order, the Purchase Agreement, or this Order), the Seller shall pay any outstanding Cure Costs, calculated in good faith as of the Petition Date, and any other applicable cure costs due pursuant to the Purchase Agreement, with respect to the Assigned Contracts or Assigned Leases and Interests and, therefore, this requirement has been satisfied, except that Buyer shall pay any Cure Costs to the extent required to be paid by Buyer under Section 2.05 of the Purchase Agreement.

KK.    Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, a debtor in possession may assign such contract or lease if such contract or lease is assumed by the debtor in possession in accordance with section 365 of the Bankruptcy Code, and the proposed assignee provides "adequate assurance of future performance" of the obligations arising under such contract or lease from and after the date of the assignment.  The Debtors have satisfied the

#92851088v1

requirements necessary to assume the Assigned Contracts and Assigned Leases and Interests.  In addition, the Debtors have demonstrated that the Buyer has the resources to perform the obligations under such Assigned Contracts and Assigned Leases and Interests. Accordingly, the requirements for assignment of such contracts and leases to the Buyer under section 365(f) of the Bankruptcy Code have been satisfied.  To the extent that any party's consent to assumption or assignment of any Assigned Contract or Assigned Lease or Interest is required by the Bankruptcy Code and applicable non-bankruptcy law, such party is deemed to have consented by not timely objecting to the Motion.

LL.     In accordance with the Bidding Procedures Order, and as evidenced by the Notice and the Affidavits of Service, due and proper notice of the proposed assumption and assignment of the Assigned Contracts and Assigned Leases and Interests to the Buyer was provided to the non-Debtor counterparties listed on Exhibit A-1, Schedule 2.01(b)(vii)-1 and Schedule 2.05(a), in each case, to the Purchase Agreement.

**No Fraudulent Intent**

MM.   The Purchase Agreement was not entered into, and the Sale Transaction will not be consummated, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors for purposes of the Bankruptcy Code, any other applicable laws of the United States, and any applicable laws of any state, territory, or possession thereof, or the District of Columbia.  Neither the Debtors nor the Buyer is entering into the Purchase Agreement or consummating the Sale Transaction with any fraudulent or otherwise improper purpose.

**Assets**

NN.     The Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

18

#92851088v1

The Debtors have all title, interest, and/or rights in the Assets required to transfer and to convey the Assets to the Buyer, as required by the Purchase Agreement.

### **Corporate or Limited Liability Company Authority**

OO.    The Debtors have (i) full power and authority to perform all of their obligations under the Purchase Agreement and the Debtors' prior execution and delivery of, and performance of obligations under, the Purchase Agreement is hereby ratified, (ii) all of the power and authority necessary to consummate the Sale Transaction, and (iii) taken all actions necessary to authorize, approve, execute, and deliver the Purchase Agreement and to consummate the Sale Transaction.

### **Prompt Consummation**

PP.    To maximize the value of the Assets, it is essential that the Sale Transaction occur within the timeframe set forth in the Purchase Agreement.  Time is of the essence in consummating the Sale Transaction.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts or Assigned Leases and Interests prior to, and outside of, a chapter 11 plan.  Accordingly, there is cause to lift the stays established by Bankruptcy Rules 6004 and 6006.

### **Statutory Predicates**

QQ.    The statutory authorization for the relief granted herein is found in sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Bankruptcy Rules 2002-1, 6004-1, and 6006-1.

19

**Section 363 Sale**

RR.    The proposed sale of the Assets to the Buyer pursuant to the Purchase Agreement constitutes a sale of property of the Debtors' respective estates outside the ordinary course of business within the meaning of section 363(b) of the Bankruptcy Code.

SS.    For good and valid reasons, the Court may authorize and approve a sale of assets of a chapter 11 debtor pursuant to section 363(b) of the Bankruptcy Code without the necessity of following the procedures and making the findings required for the confirmation of a chapter 11 plan.  Such good and valid reasons exist in this case.  Under the circumstances of the Chapter 11 Cases, the sale of the Assets to the Buyer pursuant to sections 105(a) and 363(b) and (f) of the Bankruptcy Code is both justified and appropriate.

TT.    The sale of the Assets to the Buyer free and clear of any and all Liens, Claims and/or Interests (other than the Permitted Encumbrances and Assumed Liabilities) upon the terms and conditions set forth in the Purchase Agreement is in the best interests of the Debtors and their respective estates.

UU.    Given the circumstances of the Chapter 11 Cases, including, without limitation, the adequate exposure of the Debtors' businesses to the marketplace, the reasonable opportunity afforded other parties to make competing bids or offers for all or a portion of the Debtors' businesses, and the adequacy and fair value of the consideration being provided by the Buyer under the Purchase Agreement, the proposed sale of the Assets to the Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment and is hereby approved in all respects.

**Retention of Jurisdiction**

VV.    It is necessary and appropriate for the Court to retain jurisdiction to, *inter alia*, interpret and enforce the terms and provisions of this Order and the Purchase

#92851088v1

Agreement, and to adjudicate, if necessary, any and all disputes concerning the assumption and assignment of the Assigned Contracts and the Assigned Leases and Interests and any alleged right, title, or property interest, including ownership claims, relating to the Assets and the proceeds thereof, as well as the extent, validity, perfection, and priority of any alleged lien or claim relating to the Debtors and/or the Assets.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.      The relief requested in the Motion is granted and approved in all respects as set forth in this Order.

2.      The Sale Transaction is hereby approved in all respects as set forth in this Order.

3.      The Debtors are hereby authorized and directed to sell the Assets to the Buyer upon and subject to the terms and conditions set forth in the Purchase Agreement, the provisions of which are incorporated herein by reference as if set forth in full herein.

4.      Each of the Debtors is hereby authorized and directed to perform, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take any and all further actions as may be necessary or appropriate to the performance of its obligations as contemplated by the Purchase Agreement or this Order, including paying, whether before or after the Closing, any expenses or costs that are required to be paid in order to consummate the Sale Transaction or to perform its obligations under the Purchase Agreement or any related agreements.

5.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Assets shall be transferred, sold, and delivered to the Buyer free and clear of all Liens, Claims and/or Interests, other than the Permitted Encumbrances and the Assumed

Liabilities, or as otherwise explicitly set forth in the Purchase Agreement. All other liens and claims that existed against the Assets prior to the Closing, including, without limitation, the Permitted Prior Liens, if any (but excluding the DIP Liens, Prepetition Liens, and Adequate Protection Liens[6]), shall attach to the sale proceeds the Debtors receive under the Sale Transaction (subject to the terms and conditions set forth in the Final DIP Order, Bidding Procedures Order, and this Order, including without limitation, the Carve-Out). Those liens and claims will attach to the proceeds of the Sale Transaction in the same order of relative priority and with the same validity, force, and effect that the holder of such lien or claim had against the Assets prior to Closing (including, for the avoidance of doubt, the priority of the Carve-Out as set forth in the Final DIP Order), and will be subject to any claims and defenses the Debtors may possess with respect thereto. The interests of the holders of such liens or claims are being adequately protected pursuant to the provisions of this Order by having their liens or claims, if any, in each instance against the Debtors, their estates, or any of the Assets, attach to the proceeds of the Sale Transaction ultimately attributable to the Assets in which such creditor or interest holder alleges an interest, in the same order of priority and with the same validity, force, and effect that such creditor or interest holder had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

6. In accordance with the Purchase Agreement, all fee interests, rights-of-way, easements, real property interests, real rights, licenses, servitudes, permits, privileges, and leases (surface and subsurface) owned or held by the Debtors, or hereinafter acquired by

[6] As used in this Order, DIP Liens, Prepetition Liens and Adequate Protection Liens shall each have the meaning set forth in the Final DIP Order.

the Debtors prior to the Closing, in each case to the extent constituting Assets, constitute real property or a real property interest, and together with the rights, tenements, appurtenant rights and privileges related thereto (collectively, the "**Real Property Interests**"), shall, in accordance with the Purchase Agreement, be transferred to the Buyer at the Closing notwithstanding any consent rights, anti-assignment provisions, or any other provisions purporting to prohibit or condition the transfer or assignment of such Real Property Interests contained in such Real Property Interests, or in any other document, and all such rights, provisions, prohibitions, and conditions shall be void and of no force and effect with respect to the Sale Transaction.

7.    To the greatest extent permitted by law, as a result of the Sale Transaction, neither the Buyer nor KeyBank will be a successor to any of the Debtors by reason of any theory of law or equity, and neither the Buyer nor KeyBank will have any liability, except as expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, for any Liens, Claims and/or Interests against or in any of the Debtors as a result of any application of successor liability theories.

8.    Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon Closing, and in accordance with the Purchase Agreement, the Assets shall be transferred to the Buyer free and clear of all liens, claims, encumbrances and interests (subject to the Assumed Liabilities and the Permitted Encumbrances), including, without limitation, each of the following, which are collectively referred to herein as the "**Liens, Claims and/or Interests**":

- liens (as that term is defined in the Bankruptcy Code), including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens, mortgages, hypothecations, charges, consents, judicial liens (as defined in the Bankruptcy Code), instruments,

23

leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, Encumbrances, covenants, easements, servitudes, and liens and security interests granted under sections 361, 363 and/or 364 of the Bankruptcy Code or an order of the Court, including the interim order [D.I. 62] and final order [D.I. 223] authorizing the DIP Loans (as therein defined);

- interests, obligations, liabilities, demands, agreements, guaranties, options, restrictions, contractual or other commitments;

- rights, including, without limitation, rights of first refusal, rights of offset, rights to use, contract rights, Preferential Purchase Right, rights of recovery, and any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, consent, or termination of the Debtors' or the Buyer's interest in the Assets, or any similar rights, in each case with respect to the Sale Transaction;

- judgments and/or decrees of any court or foreign or domestic Governmental Authority or governmental entity (to the extent permitted by law);

- charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Assets, including, without limitation, consent of any person or entity to assign or transfer any of the Assets, in each case with respect to the Sale Transaction;

- debts (as that term is defined in the Bankruptcy Code), including but not limited to, debts arising in any way in connection with any agreements, loan documents, credit agreements, indentures, debtor-in-possession loans, DIP Documents (as defined in D.I. 223), acts, or failures to act of the Debtors, any of the Debtors' predecessors or Affiliates, or any Representative of any of the Debtors, their predecessors or Affiliates;

- claims (as that term is defined in the Bankruptcy Code), including but not limited to, all rights to payment, damages, losses, demands, judgments, claims, causes of action, charges, assessments, liabilities, suits, investigations, litigation, third-party actions, claims for reimbursement, contribution claims, penalties, indemnity claims, exoneration or exculpation claims, Royalties, Suspense Funds, alter-ego claims, environmental claims or liens arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under any Environmental Law (to the greatest extent permitted by law), claims arising under any bulk sales or similar law, Tax, claims arising under any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, any products liability, product warranty liability or similar claims, intercompany claims,

24

loans and receivables between any Debtor and another Debtor or any Debtor and any non-Debtor subsidiary, Affiliate or Representative of any of the foregoing, escheat, administrative expenses, and pending or threatened litigation claims, arbitral proceedings or proceedings by or before any Governmental Authority or any other person, sanctions, penalties, costs, expenses, fees (including attorney or other professional and advisor fees and costs), Liabilities, setoff rights (to the greatest extent permitted by law), obligations, and claims and liabilities of any kind or nature under contract, agreement, understanding, or at law, in equity, or otherwise, whatsoever, whether or not reduced to judgment;

- claims or liens in any way whatsoever relating to or arising from the Assets or the Debtors' operations or use of the Assets, including, without limitation, claims or liens under the Assigned Contracts and Assigned Leases and Interests arising prior to the Closing, or any liabilities calculable by reference to the Debtors or their assets or operations or relating to continuing conditions existing at or prior to the Closing or the applicable Assumption and Assignment Effective Date;

- Excluded Liabilities; and

- to the maximum extent permitted by law, any other interest within the meaning of section 363(f) of the Bankruptcy Code,

in each instance for all of the foregoing, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise.

9.     Without limiting the foregoing, and except as otherwise expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, neither the Buyer nor KeyBank shall be liable or responsible, as a successor or otherwise, for the Debtors' claims or liens, whether calculable by reference to the Debtors or their operations or under or in connection with (a) any employment or labor agreements, (b) any pension, welfare, compensation, fringe benefit, or other employee benefit plans,

#92851088v1

trust arrangements, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors, any medical, welfare, and pension benefits payable after retirement or other termination of employment, or any responsibility as a fiduciary, plan sponsor, or otherwise for making any contribution to, or in respect of the funding, investment, or administration of, any employee benefit plan, arrangement, or agreement (including, without limitation, pension plans) or the termination of or withdrawal from any such plan, arrangement, or agreement, (c) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Age Discrimination and Employment Act of 1967, (v) the Federal Rehabilitation Act of 1973, (vi) the National Labor Relations Act, or (vii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (d) worker's compensation, occupational disease, or unemployment or temporary disability insurance claims.

10.     Except as expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, no person or entity, including, without limitation, any federal, state, or local governmental agency, department, or instrumentality, shall assert by suit or otherwise against the Buyer or its successors in interest any Lien, Claim and/or Interest that they had, have, or may have against the Debtors, or any Lien, Claim and/or Interest relating to or arising from the Assets or the Debtors' operations or use of the Assets.

11.     The terms and provisions of the Purchase Agreement and all related documents necessary to consummate the Sale Transaction, together with the terms and provisions of this Order, shall be binding in all respects upon the Debtors, their estates, their creditors, and all parties in interest, including any and all successors and assigns (including, without limitation, any trustee appointed under the Bankruptcy Code).

12.     Except as expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, all entities holding Liens, Claims and/or Interests against the Assets shall be, and hereby are, barred from asserting such Liens, Claims and/or Interests against the Buyer and/or the Assets and all entities holding such Liens, Claims and/or Interests shall be deemed to have released the Assets to the Buyer and to have limited the assertion of their liens or claims against the Assets (subject, in all cases, to the priority set forth in the Final DIP Order, including the priority of the Carve-Out) to the sale proceeds the Debtors receive for the sale of the Assets and any other available property of the Debtors' respective estates that does not constitute the Assets

13.     This Order shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

27

14.      All Liens, Claims and/or Interests of record against the Assets, other than the Permitted Encumbrances and Assumed Liabilities, shall, upon Closing, be terminated as against the Assets, and all the entities described in the immediately preceding paragraph of this Order are authorized and directed to (a) terminate all recorded Liens, Claims and/or Interests against the Assets from their records, official, and otherwise, in each case solely with respect to the Assets, and (b) accept for filing or recording all instruments made or delivered by or to any of the Debtors, and all deeds or other documents relating to the conveyance of the Assets to the Buyer.

15.      If any person or entity that has filed statements, documents or agreements evidencing liens or claims on or in the Assets shall not have delivered to the Debtors prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens, Claims and/or Interests that the person or entity has or may assert with respect to the Assets, the Buyer is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets.

16.      Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors' assumption (if applicable) and assignment to the Buyer, and the Buyer's assumption of the Assigned Contracts and Assigned Leases and Interests, on the terms set forth in the Purchase Agreement, are hereby approved and the requirements of section 365(b)(1) with respect thereto are hereby found and deemed to be satisfied.

17.      The Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer at Closing the

Assigned Contracts and Assigned Leases and Interests free and clear of all Liens, Claims and/or Interests (other than the Permitted Encumbrances and the Assumed Liabilities) and (b) execute and deliver to the Buyer such documents or other instruments as Buyer deems may be necessary to assign and transfer the Assigned Contracts and Assigned Leases and Interests to the Buyer.

18.    Subject to the Closing, (a) to the extent provided in section 365 of the Bankruptcy Code, any provisions in any of the Assigned Contracts and Assigned Leases and Interests that prohibit or condition the assignment of such Assigned Contracts and Assigned Leases and Interests or allow the party to such Assigned Contracts and Assigned Leases and Interests to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such of the Assigned Contracts and Assigned Leases and Interests, constitute unenforceable anti-assignment provisions which are void and of no force and effect, (b) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each of the Assigned Contracts and Assigned Leases and Interests have been satisfied, and (c) effective upon the Closing, the Assigned Contracts and Assigned Leases and Interests shall be transferred and assigned to, and from and following the Closing remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any of the Assigned Contracts and Assigned Leases and Interests that prohibits, restricts, or conditions such assignment or transfer (including but not limited to any consents to assign) and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further post-Closing liability with respect to

#92851088v1

the Assigned Contracts and Assigned Leases and Interests after such assumption and assignment to the Buyer at Closing.

19.    All defaults or other obligations of the Debtors under the Assigned Contracts and Assigned Leases and Interests, arising or accruing prior to the Closing, or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts and Assigned Leases and Interests, shall be cured by the Debtors or the Buyer, as applicable, to the extent set forth in the Purchase Agreement.  Except as to any timely filed objection to the Debtors' proposed Cure Costs in respect of any of the Assigned Contracts and Assigned Leases and Interests, which objection will be resolved as provided in Paragraph 20 below, the Cure Costs set forth in the Potential Assumption and Assignment Notice, or Exhibit 1 to the *Debtors' Omnibus Motion for an Order, Pursuant to Sections 105 and 365 of the Bankruptcy Code, Authorizing (I) the Debtors to Assume Certain Unexpired Leases and (II) Waiving the Requirements of Rule 6006(f)(6) of the Federal Rules of Bankruptcy Procedure* [D.I. 735], as applicable (together, the "**Assumption and Assignment Notice**") to the extent not already paid shall constitute the only amounts due to the Counterparty under the Assigned Contracts and Assigned Leases and Interests as of Closing, and no other defaults exist and no other amounts are due on account of any facts occurring prior to Closing, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to Closing.

20.     For Cure Costs in an amount greater than $0 or for which an objection was timely filed in accordance with the Assumption and Assignment Notice, Buyer will pay such Cure Costs as follows:

(a)     if not disputed in good faith as to liability or amount, and such Cure Costs arose or accrued before the objection deadline for Cure Costs in the Assumption and Assignment Notice, such Cure Costs shall be paid at Closing or within five Business Days thereafter;

(b)     if not disputed in good faith as to liability or amount, and such Cure Costs arose or accrued after the objection deadline for Cure Costs in the Assumption and Assignment Notice but before Closing, such Cure Costs shall be paid when due in the ordinary course promptly by the Buyer; or

(c)     if disputed in good faith as to liability or amount, such Cure Costs, if any, shall be paid as determined by the Court in a subsequent order the Court enters in the Bankruptcy Cases on, prior to, or after the Closing, or promptly thereafter, resolving the controversy or as may be resolved by agreement of the impacted parties (in consultation with the Consultation Parties if an impacted party is a Debtor); *provided*, *however*, that any undisputed portion of such Cure Costs shall be paid in accordance with subsections (a) or (b), as applicable.

The procedures provided herein provide adequate assurance that the Debtors will promptly cure defaults and promptly compensate for any pecuniary loss within the meaning of sections 365(b)(1)(A) and (B) of the Bankruptcy Code.  As such, all Assigned Contracts and Assigned Leases and Interests shall be assigned to Buyer at Closing in accordance with the Purchase Agreement.

21.     Upon the Debtors' assignment of the Assigned Contracts or Assigned Leases and Interests to the Buyer under the provisions of this Order at Closing, no default or other obligations arising or accruing prior to Closing shall exist under any Assigned Contracts or Assigned Leases and Interests, and each Contract Counterparty is forever barred, estopped, and permanently enjoined from (a) declaring a default by the Debtors or the Buyer under any such Assigned Contract or Assigned Lease or Interest based on acts

31

or occurrences arising prior to or existing as of Closing, (b) raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to any of the Assigned Contracts or Assigned Leases and Interests based on acts or occurrences arising prior to or existing as of Closing, or (c) taking any other action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contracts or Assigned Leases and Interests based on acts or occurrences arising prior to or existing as of Closing; provided, however, that a Contract Counterparty to an Assigned Contract or an Assigned Lease shall not be barred from seeking from the Debtors or the Buyer (as applicable) any additional amounts due on account of any defaults arising or accruing under such Assigned Contract or Assigned Lease, as applicable, after the deadline to object to the Cure Costs set forth in the Assumption and Assignment Notice and before the Closing.  Each Contract Counterparty hereby is also forever barred, estopped, and permanently enjoined from (y) asserting against the Debtors or the Buyer, or the property of any of them, any default or claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of Closing and (z) imposing or charging against Buyer or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to Buyer of the Assigned Contracts or Assigned Leases and Interests.

22.    Subject to the terms and conditions of the Purchase Agreement, and upon the Closing, the Buyer in accordance with the Purchase Agreement, shall have (a) to the extent necessary, cured or provided adequate assurance of cure of, any default existing

prior to Closing under the Assigned Contracts or Assigned Leases and Interests within the meaning of sections 365(b)(l)(A) and 365(f)(2)(A) of the Bankruptcy Code and (b) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to Closing under the Assigned Contracts or Assigned Leases and Interests within the meaning of sections 365(b)(l)(B) and 365(f)(2)(B) of the Bankruptcy Code.  The Buyer's obligations to pay the Cure Costs, as applicable under the Purchase Agreement, and the Buyer's agreement to perform the obligations under the Assigned Contracts or Assigned Leases and Interests in accordance with the terms of the Purchase Agreement, shall constitute adequate assurance of future performance within the meaning of sections 365(b)(l)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the applicable Contract Counterparty.

23.      To the furthest extent permitted by law, any party that may have had the right to consent to the assumption or assignment of any of the Assigned Contracts or Assigned Leases and Interests is deemed to have consented to such assumption and assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to timely object to the assumption or assignment of such Assigned Contracts or Assigned Leases and Interests in accordance with the Bidding Procedures Order, and the Buyer shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assigned Contracts or Assigned Leases and Interests pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.   Any Contract Counterparty to any of the Assigned Contracts or Assigned Leases and Interests designated to be assumed and/or assigned to the Buyer who has not timely filed and served an

#92851088v1

objection in accordance with the Bidding Procedures Order shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Assigned Contracts or Assigned Leases and Interests, and such Assigned Contracts or Assigned Leases and Interests shall be deemed assumed by the Debtors and assigned to the Buyer at Closing in accordance with the Purchase Agreement.

24.    To the extent a Contract Counterparty failed to timely object to the Cure Costs for any Assigned Contract or Assigned Lease or Interest in accordance with the Bidding Procedures Order, such Cure Costs shall be deemed to be finally determined and any such Contract Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time.

25.    Upon and as of the Closing, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contract or Assigned Lease or Interest, and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further post-Closing liability under the Assigned Contract or Assigned Lease or Interest.

26.    The Contract Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction.

27.    From the date of the entry of this Order, the Debtors (with the consent of the Buyer) may settle objections to assumption and assignment of any Assigned Contract or Assigned Lease or Interest, including to proposed Cure Costs, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Costs).

34

Subject to the occurrence of the Closing, contemporaneously with the resolution of any such objection, the executory contract or unexpired lease underlying such objection shall be deemed an Assigned Contract or Assigned Lease or Interest assumed by the Debtors and assigned to the Buyer without the necessity of obtaining any further order of the Court.

28.    Nothing in this Order, the Motion, the Bidding Procedures Order, any applicable Assumption and Assignment Notice, or any other notice or any other document is or shall be deemed an admission by the Debtors or the Buyer that any contract is an executory contract or must be assumed and assigned pursuant to the Purchase Agreement or in order to consummate the Sale Transaction.

29.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts and Assigned Leases and Interests have been satisfied.  Each of the Assigned Contracts and Assigned Leases and Interests shall be deemed to be valid, binding, and in full force and effect and enforceable in accordance with their terms as of the Closing, subject to any amendments or modifications agreed to in writing between a Contract Counterparty and the Buyer.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assigned Contracts and Assigned Leases and Interests, and each of the Assigned Contracts and Assigned Leases and Interests shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by this Order, the Bidding Procedures Order, or other order of the Court.  To the extent provided in the Purchase Agreement, the Debtors shall

#92851088v1

cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

30.     Notwithstanding anything to the contrary herein or in the Purchase Agreement, the (i) Gas Processing Agreement dated August 14, 2014 between MarkWest Liberty Bluestone, L.L.C. and EM Energy Pennsylvania, L.L.C., as amended by that certain First Amendment to Gas Processing Agreement dated January 31, 2019 (the "**MarkWest Gas Processing Agreement**"), and (ii) Natural Gas Liquids Exchange and Marketing Agreement (Bluestone) dated August 14, 2014 between MarkWest Liberty Midstream & Resources, L.L.C. and EM Energy Pennsylvania, L.L.C., as amended by the First Amendment to Natural Gas Liquids Exchange and Marketing Agreement (Bluestone) dated January 31, 2019 (the "**MarkWest NGL Exchange and Marketing Agreement**", and together with the MarkWest Gas Processing Agreement, the "**MarkWest Agreements**") shall each be assumed and assigned to Buyer at the Closing, subject to the terms of the executed Release and Second Amendment to Gas Processing Agreement, attached to the Purchase Agreement as Exhibit I.  For the avoidance of doubt, upon the closing of the Sale Transaction neither the Buyer nor the Debtors shall be responsible to make any cure payment with respect to the MarkWest Agreements, and MarkWest Liberty Bluestone, L.L.C. and MarkWest Liberty Midstream & Resources, L.L.C. are deemed to waive their right to any Cure Cost with respect to the MarkWest Agreements.

31.     Notwithstanding anything to the contrary herein or in the Purchase Agreement, the Gas Compression Agreement, dated as of May 1, 2014, by and among EM Energy Pennsylvania, L.L.C., EdgeMarc Energy Holdings, L.L.C. and Axip Energy Services, LP ("**Axip**"), as amended by that certain Amendment to the Gas Compression

Agreement, dated as of May 1, 2018, by and among Axip, EdgeMarc Energy Holdings, L.L.C., EM Energy Midstream Pennsylvania, L.L.C. and EM Energy Pennsylvania, L.L.C., and as amended by that certain Letter Agreement re Additional Pressure Reduction Request, dated as of September 14, 2018, by and among Axip, EdgeMarc Energy Holdings, L.L.C., EM Energy Midstream Pennsylvania, L.L.C. and EM Energy Pennsylvania, L.L.C., and the Sublease Agreement, dated June 30, 2014, by and among Valerus Compression Services, LP, d/b/a Axip, and EM Energy Pennsylvania, L.L.C. (collectively, the "**Axip Agreements**") shall, upon the Closing, be assumed and assigned to Buyer.  As a condition to the assumption and assignment of the Axip Agreements, Buyer shall pay $750,000 to Axip at Closing as the Cure Cost to cure any continuing defaults under the Axip Agreements through the Closing (the "**Axip Cure Payment**").  Other than the Axip Cure Payment, neither the Buyer nor the Debtors shall be responsible to make any other cure payment with respect to the Axip Agreements, and Axip is deemed to waive its right to any other cure claim with respect to the Axip Agreements.  Upon Closing and payment of the Axip Cure Payment, Axip shall be deemed to release the Debtors and the Debtors shall be deemed to release Axip, in each case along with their respective current and former directors, officers, agents, representatives, employees, insurers, trustee beneficiaries, settlors, trustees, attorneys, assigns, and/or successors from any and all claims, counterclaims, defenses, actions, causes of action, demands, liabilities, suits, administrative proceedings, payments, charges, obligations, and judgments, whether arising by statute, in contract or tort, at law or in equity, under any theory of liability, whether presently known or unknown, whether asserted or unasserted or recognized by the law of any jurisdiction, relating in any way to the Axip Agreements and/or the Debtors'

chapter 11 cases.  Axip shall be included as a released party and releasing party pursuant to any releases included in any plan of reorganization or liquidation proposed in the Debtors' chapter 11 cases, and/or any order confirming such proposed plan, as applicable.

32.    The assumption (as applicable) and assignment of the Assigned Contracts and the Assigned Leases and Interests will not be effectuated if the Closing does not occur and the Purchase Agreement is terminated.

33.    Within ten Business Days after the Closing, the Debtors shall file with the Court a list of Assigned Contracts, Assigned Leases and Interests, Excluded Contracts, Excluded Leases, and Designated Agreements and shall serve a copy of such list to each non-Debtor Contract Counterparty on the lists, and such lists shall be updated or supplemented from time to time as necessary or at the request of the Buyer, provided that any updated or supplemental list need only be served upon those non-Debtor Counterparties to such contracts or leases directly affected by such updated or supplemental list.

34.    Each non-Debtor Contract Counterparty to an Assigned Contract or Assigned Lease or Interest shall be forever barred, estopped, and permanently enjoined from asserting against the Buyer or its property (including, without limitation, the Assets), any fee, acceleration, increase, default, breach, claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing or on account of any facts occurring prior to Closing or as a result of the Petition Date.

35.    The Debtors are authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental

#92851088v1

units any and all certificates, the Purchase Agreement, and any amendments thereto necessary or appropriate to effectuate the transactions contemplated by the Purchase Agreement, any related agreements, and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the laws of the State of Delaware, and all other applicable business corporation, trust and other laws of the applicable governmental units, with respect to the implementation and consummation of the Purchase Agreement, any related agreements, this Order, and the transactions contemplated thereby and hereby.

36.    To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing.

37.    The Purchase Agreement has been negotiated and executed, and the Sale Transaction has been undertaken, by the Debtors, the Buyer, and their respective Representatives at arm's length, without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code.    Accordingly, the reversal or

39

modification on appeal of this Order or the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, whether or not the Buyer knew or knows of the pendency of the appeal, unless this Order, such authorization and such Sale Transaction are stayed pending appeal.  The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

38.     None of the Debtors nor the Buyer or KeyBank has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale Transaction to be avoided, or damages or costs to be imposed, under section 363(n) of the Bankruptcy Code.  The consideration provided by the Buyer and KeyBank for the Assets under the Purchase Agreement is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

39.     Upon the closing of the sale, all obligations, including all "Obligations" (as defined in the DIP Credit Agreement) under the DIP Credit Agreement and the DIP Liens and Claims, the Adequate Protection Liens and Claims and the Prepetition Liens and Claims, and any related obligations, shall be deemed permanently discharged against the Debtors, extinguished, and satisfied in full in consideration for KeyBank's credit bid pursuant to § 363(k) of the Bankruptcy Code.

40.     Nothing contained in any plan of reorganization (or liquidation) confirmed in the Chapter 11 Cases, any order confirming any plan of reorganization (or liquidation), or any other order of any type or kind entered in the Chapter 11 Cases or any related proceeding, including any subsequent chapter 7 case, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

41.     Notwithstanding anything set forth herein or in the Purchase Agreement to the contrary, to the extent that the Closing does not occur and/or the Sale Transaction is not consummated, then this Order, the Sale Transaction, the Purchase Agreement, and all of the transactions, agreements, and settlements contemplated or required thereunder or hereunder, including, without limitation, the 9019 Settlement and the mutual releases by and between the Debtors and ETC Northeast Pipeline, LLC and their respective affiliates, (a) shall be deemed void *ab initio*, and (b) the Debtors, KeyBank, the Committee, and ETC shall be returned to the status quo ante that existed immediately prior to their respective entries into the foregoing agreements, transactions, and/or settlements.

42.     Upon Closing of the Sale, the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims on Behalf of the Debtors' Estates* [D.I. 579] (the "**Standing Motion**") shall be deemed withdrawn.  Upon Closing of the Sale, any claims asserted in the Standing Motion or in the accompanying complaint and any other Challenge (as defined in the Final DIP Order [D.I. 223]) shall be barred pursuant to the Final DIP Order, and the Debtors' stipulations, admissions, agreements and releases contained in the Final DIP Order shall be binding upon all parties-in-interest.  The Committee shall submit a notice of withdrawal, with prejudice, of the Standing Motion within two business days of the Closing of the Sale.

43.     Upon Closing of the Sale Transaction, Evercore Fees (as defined in the Final DIP Order) earned upon the consummation of the Sale Transaction shall be deposited by or on behalf of the Debtors (notwithstanding anything to the contrary in the Final DIP Order) into an IOLTA account with Landis Rath & Cobb LLP ("**LRC**") and shall be

released by LRC and paid to Evercore at the direction of the Debtors upon approval of a fee application therefor (whether pursuant to the Interim Compensation Order or otherwise).

44. Upon entry of this Order, the *Objection of Official Committee of Unsecured Creditors to Motion of Debtors for Entry of Order (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [D.I. 577] shall be deemed withdrawn without prejudice, and the Committee shall file a notice of withdrawal on the Court's docket within two business days of entry of this Order.

45. Notwithstanding anything to the contrary herein or in the Purchase Agreement, no rights, interests, or titles to any payment, claims, causes of action, suits, or litigation relating to or arising under (i) that certain Amended and Restated Gathering and Processing Agreement (Contract No. 9532-100), between EM Energy Pennsylvania, LLC and ETC Northeast Pipeline, LLC, dated November 13, 2017, (ii) that certain Amended and Restated Individual Transaction Confirmation (Contract No. 9532-101) to the EM Agreement, (iii) that certain Amended and Restated Individual Transaction Confirmation (Gatherer's Contract No. 9532-102) to the EM Agreement; and (iv) any claims of the Debtors against ETC Northeast Pipeline, LLC and its affiliates being released under and pursuant to the 9019 Settlement shall be transferred, assigned or sold to the Buyer pursuant to the terms of this Order.

46. The Debtors are authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, and instruments of transfer, and to take such other actions as may be reasonably necessary to perform the terms and

provisions of the Purchase Agreement and all other agreements related thereto (including any documents relating to the repayment of the DIP Loans (as such term is defined in the Final DIP Order)), and the Debtors are authorized to take any other action that reasonably may be requested by the Buyer for the purpose of assigning, transferring, granting, and conveying any or all of the Assets, or by the DIP Secured Parties (as such term is defined in the Final DIP Order) in connection with evidencing the repayment of the DIP Obligations (as such term is defined in the Final DIP Order) or the release of any DIP Liens.

47.    Notwithstanding Bankruptcy Rules 6004, 6006, and 7062 and any other applicable Bankruptcy Rules or applicable Local Rules to the contrary, this Order shall be effective immediately upon entry and shall not be subject to any stay in the implementation, enforcement, or realization of the relief granted herein.

48.    The Debtors, the Buyer, and Affiliates of the Buyer, are authorized to take all actions necessary to effectuate the relief granted in this Order.

49.    The Court retains jurisdiction, even after the closing of the Chapter 11 Cases, with respect to all matters arising from or related to the enforcement of this Order, including the authority to do the following:

(a)    interpret, implement, and enforce the terms and provisions of this Order, the Purchase Agreement, and any other agreement executed in connection therewith;

(b)    protect the Buyer, or any of the Assets, against any Liens, Claims and/or Interests;

(c)    resolve any disputes arising under or related to the Purchase Agreement, the Sale Transaction, or the Buyer's peaceful use and

43

enjoyment of the Assets, whether or not a plan of reorganization (or liquidation) has been confirmed in the Chapter 11 Cases and irrespective of the provisions of any such plan or order confirming any such plan;

(d)     adjudicate all issues concerning all Liens, Claims and/or Interests in and to the Assets, including the extent, validity, enforceability, priority, and nature of all such Liens, Claims and/or Interests;

(e)     adjudicate any and all issues and/or disputes relating to the Debtors' right, title, or interest in the Assets and the proceeds thereof, the Motion, and the Purchase Agreement; and

(f)     adjudicate any and all remaining issues concerning the Debtors' right and authority to assume and assign the Assigned Contracts and Assigned Leases and Interests to the Buyer and resolve any objections to Cure Costs or any other objections by non-Debtor counterparties to any additional contracts or leases that the Buyer may elect, in accordance with the Purchase Agreement and the Bidding Procedures Order, to become Assigned Contracts or Assigned Leases and Interests and determine the Buyer's rights and obligations with respect to such assignment and the existence of any default under any Assigned Contract or Assigned Lease or Interest.

50.     The provisions of this Order are nonseverable and mutually dependent.

51.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.

44

52.     Nothing in this Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any valid police or regulatory liability to a governmental unit to which the Buyer may be subject to as the post-sale owner or operator of any Asset after the date of entry of this Order.  Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

53.     The Purchase Agreement and any related agreements, documents, or instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, so long as any such modification, amendment, or supplement does not have an adverse effect in any material respect on the Debtors' estates. The Debtors shall promptly file all material modifications, amendments, and supplements to the Purchase Agreement, whether or not they adversely affect the Debtors, with the Court.

54.     The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court that the Purchase Agreement and each and every provision, term, and condition thereof be authorized and approved in its entirety.

#92851088v1

Dated:    [        ], 2020
             Wilmington, Delaware

_____

THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**Asset Purchase Agreement**

**[Intentionally Omitted]**

#92851088v1
120911.0000001 EMF_US 77387928v7